# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGER REIFF,<br><br>        Plaintiff,<br><br>v.<br><br>FRANK A. METZ, JR., SHEILA FELDMAN, HELEN L. NELLING, SUSAN E. BEVINGTON, NANCY STEMME, CHRISTOPHER N. AST, EMPLOYEE BENEFITS PLAN COMMITTEE, PENSION AND SAVINGS FUND COMMITTEE, JOHN HUNTER, ROBERT CLAUSEN, ROBERT POTTER, MICHAEL E. MILLER, PAUL H. HATFIELD, J. PATRICK MULCAHY, SALLY G. NARODICK, PAUL DONOVAN, ROBERT H. JENKINS, WILLIAM D. RUCKELSHAUS, JOHN B. SLAUGHTER, PHILIP R. LOCHNER, JR., ROBERT T. BLAKELY, NORTHERN TRUST COMPANY, and JOHN DOES 1-100,<br><br>        Defendants. | CIVIL ACT NO. 07-cv-6011 (LAP)<br>(ECF Matter)<br><br>Judge Loretta A. Preska<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE SOLUTIA DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |

Karen M. Wahle (KW 0716)
Robert M. Stern (RS 3005)
Khuong G. Phan (KP 7014)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

*Attorneys for Defendants Metz, Feldman, Nelling, Bevington, Stemme, Ast, Employee Benefits Plan Committee, Pension and Savings Fund Committee, Hunter, Clausen, Potter, Miller, Hatfield, Mulcahy, Narodick, Donovan, Jenkins, Ruckelshaus, Slaughter, Lochner, and Blakely*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................. 2

    I.    PARTICIPANT INVESTMENT IN THE PLAN DURING THE
        PUTATIVE CLASS PERIOD ............................................................ 2

    II.    PLAN GOVERNANCE ..................................................................... 5

ARGUMENT ................................................................................................. 6

I.    STANDARD OF REVIEW ......................................................................... 6

II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED ............................................. 7

III.    PLAINTIFF CANNOT BRING THIS ACTION UNDER ERISA § 502(a)(2) .............. 10

IV.    PLAINTIFF DOES NOT SEEK AUTHORIZED RELIEF UNDER ERISA
        § 502(a)(3) .................................................................................. 12

V.    PLAINTIFF FAILS TO SATISFY THE PLEADING REQUIREMENTS OF
        FED. R. CIV. P. 8(a) ..................................................................... 17

VI.    PLAINTIFF HAS NOT SUFFICIENTLY PLED THAT THE DIRECTOR
        DEFENDANTS, AND DEFENDANTS NELLING, STEMME, AND AST
        WERE FIDUCIARIES UNDER THE PLAN ............................................. 19

    A.    The Director Defendants Were Not Fiduciaries ................................. 20

    B.    Defendants Nelling, Stemme, and Ast Were Not Fiduciaries ............................ 23

VII.    COUNT I OF THE COMPLAINT SHOULD BE DISMISSED ..................................... 24

    A.    Plaintiff's Claim of Imprudent Investment is Without Merit ............................ 24

        1.    Only the Fund Committee had fiduciary responsibility for the
            investment of Solutia stock under the Plan ............................ 24

        2.    Selling Solutia stock based on alleged insider information would
            have violated securities laws ............................................. 25

        3.    The design and amendment of the Plan are not fiduciary acts ................ 27

    B.    Plaintiff's Misrepresentation and Nondisclosure Claims Should Be
        Dismissed .................................................................................. 29

        1.    Plaintiff's misrepresentation and nondisclosure claims fail because
            they rest on non-fiduciary speech or disclosures not required by
            ERISA .......................................................................... 30

## TABLE OF CONTENTS

**Page**

      2.    Plaintiff's misrepresentation and nondisclosure claims should be dismissed because he cannot properly bring them under ERISA § 502(a)(2) and he does not seek equitable relief under ERISA § 502(a)(3) ................................................................................. 33

C.    Plaintiff's Conflict of Interest Claim Should Be Dismissed ............................... 34

D.    Plaintiff's Claim that the Solutia Defendants Failed to Bring Suits Against Other Fiduciaries Should Be Dismissed ............................................. 36

VIII.    PLAINTIFF'S MONITORING CLAIM (COUNT III) SHOULD BE DISMISSED ......................................................................................................... 37

IX.    PLAINTIFF'S CO-FIDUCIARY LIABILITY CLAIM (COUNT IV) SHOULD BE DISMISSED ......................................................................................... 39

CONCLUSION ..................................................................................................... 40

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. Bosch Auto. Sys., Inc.*
  No. 05-6010, 2007 U.S. App. LEXIS 11694 (6th Cir. May 14, 2007)...................................... 16

*Alfarone v. Bernie Wolff Constr. Corp.*
  788 F.2d 76 (2d Cir. 1986) ...................................................................................................... 37

*Ambris v. Bank of N.Y.*
  No. 96 Civ. 0061 (LAP), 1997 U.S. Dist. LEXIS 2575 (S.D.N.Y. Mar. 10, 1997) .................. 7

*Anoka Orthopaedic Assoc., P.A. v. Mutschler*
  709 F. Supp. 1475 (D. Minn. 1989)......................................................................................... 23

*Appalachian Enters. v. ePayment Solutions Ltd.*
  2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 7, 2004) ......................................................... 18

*Arevalo v. Herman*
  2002 U.S. Dist. LEXIS 7076 (E.D. Va. Apr. 12, 2002) .......................................................... 22

*Bell Atl. Corp. v. Twombly*
  127 S. Ct. 1955 (2007)..................................................................................................... 6, 18

*Bell v. Pfizer Inc.*
  No. 03 Civ. 9945(KMW), 2007 WL 1610205 (S.D.N.Y. June 1, 2007)........................... 30, 32

*Bergquist v. Aetna*
  289 F. Supp. 2d 400 (S.D.N.Y. 2003) ..................................................................................... 31

*Bidwill v. Garvey*
  943 F.2d 498 (4th Cir. 1991) ................................................................................................... 36

*Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*
  107 F.3d 139 (2d Cir. 1997) .................................................................................................... 32

*Broga v. Northeast Utils.*
  No. 3:96CV02114 (DJS), 1999 U.S. Dist. LEXIS 21617 (D. Conn. Aug. 19,
  1999) .......................................................................................................................................... 8

*Calhoon v Trans World Airlines, Inc.*, 400 F.3d 593 (8th Cir. 2005)........................................... 15

*Caputo v. Pfizer, Inc.*
  267 F.3d 181 (2d Cir. 2001) ........................................................................................... 7, 8, 9

*Carey v. IBEW Local 363 Pension Plan*
  201 F.3d 44 (2d Cir. 1999) ....................................................................................................... 7

*Chalmers v. Quaker Oats Co.*
  61 F.3d 1340 (7th Cir. 1995) ................................................................................................... 36

*Coan v. Kaufman*
  457 F.3d 250 (2d Cir. 2006) ............................................................................................. 13, 16

*Confer v. Custom Engineering Co.*
  952 F.2d 34 (3d Cir. 1991) ...................................................................................................... 22

## TABLE OF AUTHORITIES

**Page**

*Cortec Indus., Inc. v. Sum Holding L.P.*
  949 F.2d 42 (2d Cir. 1991) ................................................................ 7

*Crowley v. Corning, Inc.*
  234 F. Supp. 2d 222 (W.D.N.Y. 2002) .......................................... 25, 31

*CWA v. AT&T*
  40 F.3d 426 (D.C. Cir. 1994) ........................................................... 36

*Daly v. United Ass'n of Plumbers & Pipefitters*
  No. 96 Civ. 9096 (DAB), 1997 WL 566186 (S.D.N.Y. Sept. 11, 1997) ................ 10

*Donovan v. Bierwirth*
  538 F. Supp. 463 (E.D.N.Y. 1981) ................................................... 35

*Doron Precision Sys., Inc. v. FAAC, Inc.*
  23 F. Supp. 2d 173 (S.D.N.Y. 2006) ................................................. 21

*Downes v. JP Morgan Chase*
  No. 03 Civ. 8991 (GEL), 2004 U.S. Dist. LEXIS 10510 (S.D.N.Y. June 8, 2004) ........ 9

*Edes v. Verizon Comm'ns, Inc.*
  417 F.3d 133 (1st Cir. 2005) ............................................................ 10

*Edgar v. Avaya, Inc.*
  No. Civ.A. 05-3598 SRC, 2006 WL 1084087 (D.N.J. Apr. 25, 2006) ................... 27

*Faircloth v. Lundy Packing Co.*
  91 F.3d 648 (4th Cir. 1996) ............................................................ 32

*Fisher v. J.P. Morgan Chase & Co.*
  230 F.R.D. 370 (S.D.N.Y. 2005) ................................................... 11, 12

*Fisher v. J.P. Morgan Chase & Co.*
  No. 03 Civ. 3252 (SHS), 2006 U.S. Dist. LEXIS 71850 (S.D.N.Y. Sept. 29, 2006) ................................................................................ 12

*Flanigan v. General Elec. Co.*
  242 F.3d 78 (2d Cir. 2001) ......................................................... 30, 35

*Gerosa v. Savasta & Co.*
  329 F.3d 317 (2d Cir. 2003) .................................................... 12, 13, 16

*Ghartey v. St. John's Queens Hosp.*
  869 F.2d 160 (2d Cir. 1989 ............................................................ 10

*Grindstaff v. Green*
  133 F.3d 416 (6th Cir. 1998) ........................................................... 36

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*
  302 F.3d 18 (2d Cir. 2002) ............................................................. 20

*Henderson v. Casciato-Northrup*
  No. MO-00-CA-079, 2001 WL 681578 (W.D. Tex. Jan. 10, 2001) ................... 37

iv

# TABLE OF AUTHORITIES

**Page**

*Henrietta D. v. Giuliani*
  246 F.3d 176 (2d Cir. 2001) ...................................................... 17

*Hudson v. Delta Air Lines*
  90 F.3d 451 (11th Cir. 1996) ................................................... 33

*Hughes Aircraft Co. v. Jacobson*
  525 U.S. 432 (1999)............................................................ 28, 35

*Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*
  72 F.3d 686 (9th Cir. 1995) ..................................................... 32

*Hull v. Policy Mgmt. Sys. Corp.*
  2001 U.S. Dist. LEXIS 22343 (D.S.C. Feb. 9, 2001)...................... 27, 39

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*
  No. 02 Civ. 8853 (SWK), 2005 U.S. Dist. LEXIS 3715 (S.D.N.Y. Mar. 10, 2005) ...................................................................... 22

*In re Boston Scientific Corp. ERISA Litig.*
  No. 06-10105-JLT, 2007 U.S. Dist. LEXIS 62926 (D. Mass. Aug. 27, 2007) ...... 14

*In re Calpine Corp. ERISA Litig.*
  2005 U.S. Dist. LEXIS 9719 (N.D. Cal. Mar. 30, 2005)....................... 38

*In re Cardinal Health, Inc. ERISA Litig.*
  24 F. Supp. 2d 1002, 1026 (S.D. Ohio 2006) .............................. 14

*In re Duke Energy ERISA Litig.*
  281 F. Supp. 2d 786 (W.D.N.C. 2003) ..................................... 38

*In re Elec. Data Sys. Corp. "ERISA" Litig.*
  224 F.R.D. 613 (E.D. Tex. 2004) ........................................... 33

*In re Livent, Inc. Noteholders Sec. Litig.*
  151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................................... 21

*In re Marsh ERISA Litig.*
  No. 04 Civ. 8157 (SWK), 2006 U.S. Dist. LEXIS 90631 (S.D.N.Y. Dec. 14, 2006) ...................................................................... 14, 16

*In re McKesson HBOC, Inc. ERISA Litig.*
  No. C00-20030, 2002 U.S. Dist. LEXIS 19473 (N.D. Cal. Sept. 30, 2002) ............ 19

*In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*
  No. 05-2369 (SRC), 2006 U.S. Dist. LEXIS 53729 (D.N.J. July 11, 2006) ..................... 22, 30

*In re Polaroid ERISA Litig.*
  362 F. Supp. 2d 461 (S.D.N.Y. 2005) ...................................... 36

*In re Providian Fin. Corp. ERISA Litig.*
  No. C 01-05027, 2002 U.S. Dist. LEXIS 25676 (N.D. Cal. Nov. 14, 2002.......... 19

*In re RCN Litig.*
  No. 04-5068 (SRC), 2006 U.S. Dist. LEXIS 12930 (D.N.J. Mar. 21, 2006) ......... 23

# TABLE OF AUTHORITIES

**Page**

*In re Syncor ERISA Litig.*
351 F. Supp. 2d 970 (C.D. Cal. 2004) ................................................................... 36

*In re Tyco Int'l*
2004 U.S. Dist. LEXIS 24272 (D.N.H. Dec. 2, 2004)........................................... 23

*In re Uniphase Corp. ERISA Litig.*
No. C 03-04743 CW (WWS), 2005 U.S. Dist. LEXIS 17503 (N.D. Cal. July 14,
2005) ........................................................................................................................ 22

*In re Unisys Sav. Plan Litig.*
1997 WL 732473 (E.D. Pa. Nov. 24, 1997) .......................................................... 34

*In re Williams Cos. ERISA Litig.*
271 F. Supp. 2d 1328 (N.D. Okla. 2003)........................................................... 25, 31

*In re WorldCom, Inc. ERISA Litig.*
263 F. Supp. 2d 745 (S.D.N.Y. 2003) ...................................................... 22, 23, 30

*In re Xerox Corp. ERISA Litig.*
483 F. Supp. 2d 206 (D. Conn. 2007)..................................................................... 17

*Indep. Ass'n of Publrs. Employees, Inc. v. Dow Jones & Co.*
671 F. Supp. 1365 (S.D.N.Y. 1987) ...................................................................... 39

*International Union, United Auto., Aerospace & Agric. Implement Workers of Am.*
*v. Skinner Engine Co.*
188 F.3d 130 (3d Cir. 1999) ................................................................................... 33

*Koert v. GE Group Life Assurance Co.*
No. 05-4892, 2007 U.S. App. LEXIS 4715 (3d Cir. Feb. 27, 2007) ....................... 8

*Kurz v. Philadelphia Elec. Co.*
96 F.3d 1544 (3d Cir. 1996) ..................................................................................... 8

*Lee v. Burkhart*
991 F.2d 1004 (2d Cir. 1993) ................................................................................. 11

*Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984) ............................................................ 38

*Lockheed Corp. v. Spink*
517 U.S. 882 (1996)...................................................................................... 20, 28, 30

*Mass. Mutual Life Ins. Co. v. Russell*
473 U.S. 134 (1985)................................................................................................. 11

*McMunn v. Pirelli Tire, LLC*
161 F. Supp. 2d 97 (D. Conn. 2001)....................................................................... 30

*Mertens v. Hewitt Assocs.*
508 U.S. 248 (1993)............................................................................................ 13, 20

*Nechis v. Oxford Health Plans, Inc.*
421 F.3d 96 (2d Cir. 2005) ..................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

*Newton v. Van Otterloo*
  756 F. Supp. 1121 (N.D. Ind. 1991) ..................................................... 38

*O'Reilly v. Cont'l Cas. Co.*
  No. 02 C 5214, 2003 U.S. Dist. LEXIS 16396 (N.D. Ill. Sept. 17, 2003)............................... 17

*Pedraza v. Coca-Cola Co.*
  456 F. Supp. 2d 1262 (N.D. Ga. 2006) ........................................................... passim

*Pegram v. Herdrich*
  530 U.S. 211 (2000)........................................................................ 19

*Sackman v. Teaneck Nursing Ctr.*
  86 Fed. Appx. 483 (3d Cir. 2003)........................................................... 16

*Schied v. Dynegy, Inc.*
  309 F. Supp. 2d 861 (S.D. Tex. 2004) ...................................................... 38

*Sereboff v. Mid Atl. Med. Servs.*
  126 S. Ct. 1869 (2006)..................................................................... 15

*Siskind v. Sperry Retirement Program*
  47 F.3d 498 (2d Cir. 1995) ................................................................ 35

*Smith v. Delta Air Lines, Inc.*
  422 F. Supp. 2d 1310 (N.D. Ga. 2006)................................................... 28, 38

*Thomas v. Aris Corp. of Am.*
  219 F.R.D. 338  (M.D. Pa. 2003)........................................................... 33

*Tootle v. ARINC, Inc.*
  222 F.R.D. 88 (D. Md. 2004)............................................................... 32

*Trustees of the Health & Welfare v. Schlesinger Bros., Inc.*
  931 F. Supp. 204 (S.D.N.Y. 1996) ........................................................ 20

*U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*
  879 F.2d 20 (2d Cir. 1989) ................................................................ 21

*United States v. O'Hagan*
  521 U.S. 642 (1997)....................................................................... 26

*Varity Corp. v. Howe*
  516 U.S. 489 (1996).................................................................. 12, 30, 34

*Wells v. Dean Machs. Prods., Inc.*
  No. 3:97cv2603 JBA, 2000 WL 502677 (D. Conn. Mar. 10, 2000) ........................ 9

*Young v. Washington Gas Light Co.*
  206 F.3d 1200 (D.C. Cir. 2000) ........................................................... 32

## STATUTES

ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4)........................................... 31, 32

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)............................................... 20

# TABLE OF AUTHORITIES

**Page**

ERISA § 402(a), 29 U.S.C. § 1102(a) ............................................................................... 19

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) ........................................................ 32

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ........................................................ 32

ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C) ........................................................ 32

ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) ........................................................ 32

ERISA § 404, 29 U.S.C. § 1104 ....................................................................................... 19

ERISA § 405(a), 29 U.S. C. § 1105(a) ...................................................................... 39, 40

ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3) .................................................................... 35

ERISA § 409(a), 29 U.S.C. § 1109(a) .............................................................................. 11

ERISA § 413, 29 U.S.C. § 1113 ......................................................................................... 7

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ........................................................... passim

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ........................................................... passim

ERISA § 514(d), 29 U.S.C. § 1144(d) .............................................................................. 26

# OTHER AUTHORITIES

S.E.C. Rule 10b-5 ............................................................................................................. 26

SEC Release, Employee Benefit Plans, 1980 WL 29482 (Feb. 1, 1980) ..................... 26

# RULES

Fed. R. Civ. P. 8(a) ...................................................................................................... 2, 29

# REGULATIONS

29 C.F.R. § 2509.75-8................................................................................................. 23, 37

Defendants Frank A. Metz, Jr., Sheila Feldman, Helen L. Nelling, Susan E. Bevington, Nancy Stemme, Christopher N. Ast, Employee Benefits Plan Committee, Pension and Savings Fund Committee, John Hunter, Robert Clausen, Robert Potter, Michael E. Miller, Paul H. Hatfield, J. Patrick Mulcahy, Sally G. Narodick, Paul Donovan, Robert H. Jenkins, William D. Ruckelshaus, John B. Slaughter, Philip R. Lochner, Jr., and Robert T. Blakely (collectively, the "Solutia Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Class Action Complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff brings this putative class action under the Employee Retirement Income Security Act ("ERISA") seeking to recover losses allegedly sustained by a subset of participants and beneficiaries of the Solutia Inc. Savings and Investment Plan (the "Plan") as a result of their investment in common stock of Solutia Inc. ("Solutia" or the "Company") during the period from September 1, 1997 to December 15, 2003 (the "Class Period"). (Compl. ¶ 1.) Solutia, which was created as an independent company on September 1, 1997 from a spin-off of Monsanto Company's chemical businesses (*id.* ¶ 100), adopted the Plan to encourage retirement savings for its employees and to provide them with an opportunity to acquire ownership interests in the Company. (*Id.* ¶ 51; 2002 Plan, § 1.2 (Attached as Ex. B to Declaration of Jennipher Politte).)[1]

---

[1] The Plan was amended and modified during the putative Class Period, with the result that there are two versions of the governing plan document that were effective during portions of that period. Copies of both versions have been filed with the Court as exhibits to the Declaration of Jennipher Politte ("Politte Decl."), ¶¶ 2-3. Unless otherwise addressed herein, the terms of the Plan have not been amended in a way that would significantly affect the issues raised in this motion. As such, for ease of reference, except as otherwise stated, citations to the Plan will refer to the latest version of the Plan, which was effective as of January 1, 2002. It should be noted that there were slight differences in the terms of the Plan for union and non-union employees from 1997 to 1999, and thus there were separate summary plan descriptions ("SPD") for that period for union and non-union employees. (Politte Decl. ¶¶ 4-5.) In 1999, the Plan was amended to eliminate any differences between union and non-union employees. (2002

1

Like other sponsors of similar ERISA plans, Solutia designed the Plan to allow participants to control their own investments.  (Compl. ¶ 53.)  During the putative Class Period, Plan participants were permitted to invest a percentage of their eligible base pay in a variety of investment options, including a fund consisting mostly of Solutia common stock (the "Solutia Stock Fund" or "Fund").  (*Id.* ¶¶ 53, 57.)  Plaintiff alleges, however, that Solutia common stock was "an imprudent investment since it was both artificially inflated in price and too speculative to serve as a retirement investment."  (*Id.* ¶ 2.)  Moreover, Plaintiff alleges that the Plan's fiduciaries were aware of Solutia's "precarious financial condition," but nevertheless continued to invest Plan assets in Solutia stock until two days before the Company's bankruptcy in December 2003, in violation of their ERISA fiduciary duties.  (*Id.*)

As demonstrated below, the Complaint should be dismissed for failure to state a claim upon which relief can be granted for several reasons.  As an initial matter, Plaintiff's suit is time-barred because he had actual knowledge of the alleged fiduciary breaches more than three years before this suit was filed.  In addition, although Plaintiff purports to bring his breach of fiduciary duty claims under ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), (a)(3), he cannot properly maintain these claims under either section.  Furthermore, the Complaint should be dismissed because it does not satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a), and because it fails to state any cognizable breach of fiduciary duty claim under ERISA.

## **BACKGROUND**

## I.    **PARTICIPANT INVESTMENT IN THE PLAN DURING THE PUTATIVE CLASS PERIOD**

Solutia established the Plan effective September 1, 1997.  (2002 Plan, § 1.1.)  As set forth in Section 1.2 of the Plan:

---

Plan, § 1.1.)  For ease of reference, unless otherwise stated, citations to the 1997 SPD for the Plan will refer to the SPD for non-union employees.

> The Plan is maintained by the Employers to provide savings
> opportunities and supplemental benefits for eligible employees of
> the Employers.  The Plan is intended to be a profit sharing plan
> qualified under Sections 401(a) and 401(k) of the Code.  The
> Employee Stock Ownership Plan ("ESOP") component of the
> Plan, as set forth in Section 19, is intended to be a stock bonus plan
> that constitutes an employee stock ownership plan qualified under
> Section 4975 of the Code and Section 407(d)(6) of ERISA and is
> maintained to provide eligible employees with an opportunity to
> acquire and hold long-term investment and ownership interests in
> the Corporation.

(*Id.* § 1.2.)[2]  The Plan permitted participants to contribute a percentage of their salaries (up to

16%, depending on salary level), either on a before or after tax basis, into a variety of investment

options.  (*Id.* §§ 3.1, 9.4.)  During the putative Class Period, participants could direct their

contributions among ten to fourteen different investment options.  (*See* 1997 SPD at 5 (attached

as Ex. C to Politte Decl.) (setting forth 11 investment choices); 1999 SPD at 6-7 (attached as Ex.

E to Politte Decl.) (10 investment choices); 2002 SPD at 8-9 (attached as Ex. G to Politte Decl.)

(14 investment choices).)  One of the investment options offered was the Solutia Stock Fund,

which was primarily invested in Solutia common stock, with a small cash component to provide

liquidity for distributions and expenses.  (*See* 2002 Plan, § 9.2; 2002 SPD at 16; Trust

Agreement, § 5.1 (attached as Ex. F to Politte Decl.).)  The Plan's summary plan description

cautioned participants that "[t]he value of the Solutia stock in this fund may rise or fall, so there

is a potential for gain and a potential for loss.  There is no guarantee of repayment of principal."

(2002 SPD at 16; *see also* 1999 SPD at 11; 1997 SPD at 10.)  Participants were prohibited from

investing more than 30% of their contributions in the Solutia Stock Fund.  (2002 Plan, §§ 9.4,

9.7.)

        In addition to a participant's own voluntary contributions, the Plan also provided that

---

[2] The Plan is maintained for the benefit of the employees of Solutia, as well as the employees of the Company's
affiliates and subsidiaries that adopt the Plan.  The Plan refers to the Company and these affiliates and subsidiaries
collectively as "Employers."  (2002 Plan, § 1.8.)

Solutia would match 60% of each participant's contributions to the Plan, up to 8% of his or her eligible pay.  (*See* 2002 Plan, § 6.1; 2002 SPD at 4.)  Company matching contributions were allocated to each participant's Company Matching Account and invested in the Solutia Stock Fund.[3]  (*See* 2002 Plan, § 9.5.)

Participants were fully vested with respect to their voluntary contributions at all times. (*Id.* § 10.1.)  Participants hired on or after January 1, 1999 became vested in the Company matching contributions only after completion of 3 years of service.  (*Id.* § 10.2.)  Participants hired before January 1, 1999 became partially vested pursuant to the following schedule:

| Years of Service | Vesting Percentage |
| --- | --- |
| Less than 1 year | 0% |
| 1 year but less than 2 years | 20% |
| 2 years but less than 3 years | 40% |
| 3 years or more | 100% |

(*Id.*)

Although all Company matching contributions were made into the Solutia Stock Fund, the Plan had very liberal rules allowing vested participants to withdraw these Company contributions.  During the putative Class Period, the Plan allowed participants with five years of participation in the Plan and who were fully vested to withdraw all Company matching contributions from the Plan entirely, regardless of age.  (*Id.* § 11.1.)  Participants with less than 5 years of participation could still withdraw the vested portions of their Company matching contributions, except for those matching contributions made during the preceding 24 months. (*Id.* § 11.2.)  In addition, prior to July 22, 2002, participants who were 50 years old and fully vested could transfer and diversify out of their Company matching contributions and into other

---

[3] The Company match was part of the ESOP component of the Plan.  Section 19.1 provides that "common stock of the Corporation allocated to a participant's Employer Matching Account shall be deemed to be assets of the ESOP." (2002 Plan, § 19.1.)

investment options under the Plan.  (*Id.* § 9.5(b).)  Effective July 22, 2002, the Plan was amended to permit any fully vested participant to transfer all Company matching contributions invested in the Solutia Stock Fund into other investment options.  (*Id*. at Amendment to the Solutia Inc. Savings and Investment Plan (dated July 16, 2003), ¶ 11.)

Following a further Plan amendment effective December 15, 2003, contributions from both participants and the Company to the Solutia Stock Fund were no longer permitted, although the Fund was not eliminated in its entirety.[4]  (2002 Plan at Amendment to Solutia Inc. Savings and Investment Plan (dated December 15, 2003), ¶ 1.)  The amendment further provided that *all* participants could transfer their Company matching contributions into other investment funds (*id.* ¶ 6) and eliminated the ESOP component of the Plan (*id.* ¶ 9).  Furthermore, pursuant to the amendment, Company matching contributions were made in cash, which participants could invest in any of the investment funds, excluding the Solutia Stock Fund, under the Plan.  (*Id.* ¶ 5.)

## II.     PLAN GOVERNANCE

Solutia is the designated Plan administrator.  (*See* 2002 SPD at 66; 1999 SPD at 54; 1997 SPD at 39.)  The Plan also confers discretionary authority on the Employee Benefits Plans Committee (the "Plan Committee"), which "shall consist of three or more members appointed by the Corporation," to manage and administer the Plan.  (*See* 2002 Plan, §§ 1.3, 13.1, 13.2.)  Such administrative duties include the authority to adjudicate benefit claims under the Plan, adopt rules and regulations necessary for the administration of the Plan, direct the Trustee with respect to payments and distributions from the Trust Fund, provide participating employers with Plan

---

[4] Specifically, Section 9.2(j) was amended to provide that the Fund "shall be invested in the common stock of the Corporation, provided, however, new amounts may not be invested in this fund on or after December 15, 2003.  Any cash dividend and other cash contributions shall be invested in the Fixed Income Fund; any distribution in the form of Corporation common stock shall be invested in the Corporation Stock Fund; any other distributions shall be placed in a separate investment fund unless otherwise directed by the Funds Committee[.]"

information for tax or other purposes, and employ agents, attorneys, accountants, or other persons necessary for the proper administration of the Plan.  (*Id.* § 13.2(a)-(f).)  The Plan, however, does not confer any discretionary authority on the Plan Committee with respect to the investment of Plan assets or the selection of the investment options under the Plan.

Prior to January 1, 2002, Solutia had discretionary authority to manage Plan assets, including authority to suspend or terminate an investment option under the Plan.  (1997 Plan, §§ 1.4, 9.2 (attached as Ex. A to Politte Decl.).)  Effective January 1, 2002, the Plan conferred discretionary authority on the Pension and Savings Funds Committee (the "Fund Committee"), whose members are appointed by the Company, to manage and control the assets of the Plan and appoint the Plan's Trustee (2002 Plan, § 1.4), and to "add, suspend or terminate an Investment Fund" at any time under the Plan (*id.* § 9.2).

## <u>ARGUMENT</u>

## I.    STANDARD OF REVIEW

A court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) where the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id*. at 1964-65 (internal quotation marks omitted).  Where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Id*. at 1974.

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may consider outside materials either attached to the complaint or incorporated into the complaint by reference, as well as materials upon which the complaint heavily relies, and materials subject to

judicial notice, without converting the motion to dismiss into a motion for summary judgment. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991); *Ambris v. Bank of N.Y.*, No. 96 Civ. 0061 (LAP), 1997 U.S. Dist. LEXIS 2575, at *4-5 (S.D.N.Y. Mar. 10, 1997) (considering governing plan documents on a motion to dismiss in an ERISA case because they were "integral to the complaint").

## II.    PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff filed this action on June 25, 2007.  Under ERISA § 413, breach of fiduciary duty claims, such as those brought by Plaintiff here, are barred if they are filed after the earlier of:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

29 U.S.C. § 1113.  The Second Circuit has required "strict adherence to limitation periods," as they "serve several important policies, including rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses."  *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999).  In this case, the Complaint should be dismissed in its entirety because the three-year statute of limitations in ERISA § 413(2) bars all of Plaintiff's claims.

Under that provision, a plaintiff has "actual knowledge" of a fiduciary breach "when he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act."  *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).  "Such material facts could include . . . knowledge of a transaction's harmful consequences, or even actual harm."  *Id.* (internal quotation marks and citation omitted). However, "a plaintiff need not have knowledge of the relevant law[,]" *id.*, nor does he need to

"develop a comprehensive understanding of his or her rights under ERISA before the three-year limitation period can begin to run."  *Koert v. GE Group Life Assurance Co.*, No. 05-4892, 2007 U.S. App. LEXIS 4715, at *9 (3d Cir. Feb. 27, 2007).  Furthermore, where an act is "inherently suspect," a plaintiff's knowledge of that act can be sufficient to trigger the limitations period in ERISA § 413(2).  *See Caputo*, 267 F.3d at 193.

As the Complaint makes clear, Plaintiff had actual knowledge of the Solutia Defendants' alleged "imprudent investment of Plan assets in the common stock of Solutia" (Compl. ¶ 1), which is the core of this suit and the underlying basis for all of Plaintiff's breach of fiduciary duty claims, more than three years before the filing of the Complaint (i.e., prior to June 25, 2004).  Indeed, Plaintiff cannot credibly claim otherwise, as Solutia publicly declared bankruptcy on December 17, 2003.  On the same day, the New York Stock Exchange halted trading in Solutia common stock as its price fell to $0.38 per share.  (*Id.* ¶ 234-37.)[5]  Thus, all material facts to support a potential breach of fiduciary duty claim based on the Solutia Defendants' alleged imprudent investment of Plan assets in Solutia stock had occurred and were "patently obvious" by no later than December 17, 2003.  *See Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1551 (3d Cir. 1996) ("[A]ll of the material elements of a breach of fiduciary duty claim were patently obvious on . . . the day PECo announced the pension increase . . . . PECo openly announced that certain employees would receive better benefits, and others would not.  For those who did not qualify, the 'harmful consequences' of the change were obvious") (citation omitted); *Broga v. Northeast Utils.*, No. 3:96CV02114 (DJS), 1999 U.S. Dist. LEXIS 21617, at *14 (D. Conn. Aug. 19, 1999) ("Tangible evidence of a plaintiff's knowledge of all material facts necessary to

---

[5] *See* Price Chart for Solutia stock (SOLUQ), attached hereto as Exhibit 1.  "[T]he district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment," particularly where the movement of a company's stock price is "integral" to the plaintiff's complaint.  *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000).

understand that he or she has a claim for breach of fiduciary duty . . . is not always present. However, such actual knowledge may be patently obvious") (internal quotation marks and citations omitted).

Indeed, Plaintiff vehemently asserts in the Complaint that the Solutia Defendants continued to imprudently invest Plan assets in the Solutia Stock Fund despite the precipitous and obvious decline in the price of Solutia common stock throughout the putative Class Period, and failed to take appropriate measures to stop such investment "until just **two days** before the Company declared bankruptcy." (Compl. ¶ 2 (emphasis in original).) Accepting Plaintiff's allegation as true for argument's sake, the Plan's continued investment in Solutia stock until the brink of the Company's bankruptcy was thus "inherently suspect," and Plaintiff's knowledge of that fact – which he would have had no later than December 17, 2003 when the Company publicly declared bankruptcy – is sufficient to trigger the limitations period in ERISA § 413(2).[6] *Caputo*, 267 F.3d at 193; *see also Wells v. Dean Machs. Prods., Inc.*, No. 3:97cv2603 JBA, 2000 WL 502677, at *3 (D. Conn. Mar. 10, 2000) ("[T]he dramatic decline in share value evidenced by these numbers is sufficient to attribute to plaintiffs actual knowledge of their breach of fiduciary duty claims related to the decline in value of their accounts").

As a long-standing employee of Solutia, Plaintiff cannot credibly argue that he did not learn of the Company's bankruptcy when it was announced. Not surprisingly, Plaintiff has not alleged that he was unaware of Solutia's bankruptcy or its impact on his investment in Solutia stock in his Plan account. The Court need not presume Plaintiff's lack of actual knowledge under these facts. *See, e.g.*, *Downes v. JP Morgan Chase*, No. 03 Civ. 8991 (GEL), 2004 U.S. Dist. LEXIS 10510, at *12 (S.D.N.Y. June 8, 2004) (rejecting plaintiff's assertion in an

---

[6] The Solutia Defendants emphasize that this argument is based upon Plaintiff's own express allegations, and that, if required to litigate this case on the merits, they will vehemently dispute that the investment of Plan assets in the Solutia Stock Fund during the putative Class Period was a breach of fiduciary duty in any way.

opposition to a motion to dismiss that she did not have actual knowledge of her classification as an independent contractor where it was "simply implausible" and "cannot seriously be maintained"); *Edes v. Verizon Comm'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005) ("[W]e do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff"). Indeed, Plaintiff confirmed his knowledge of Solutia's bankruptcy by filing a claim for "retiree benefits" in Solutia's bankruptcy proceeding. In that filing, Plaintiff asserted that the purported debt was incurred on April 10, 2004, which falls outside of the three-year statute of limitations. (*See* Claim of Roger A. Reiff, No. 03-17949 (Bankr. S.D.N.Y.), attached as Ex. 2.)[7]

Accordingly, because Plaintiff filed this action more than three years after he had actual knowledge of the alleged fiduciary breaches in this case, the Court should dismiss the Complaint in its entirety.[8] *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss"); *Daly v. United Ass'n of Plumbers & Pipefitters*, No. 96 Civ. 9096 (DAB), 1997 WL 566186, at *2 (S.D.N.Y. Sept. 11, 1997) ("[I]t is well settled that a defendant's 12(b)(6) motion, based on a statute of limitations defense, is granted where the complaint or integral accompanying documents show that the action was not brought within the statutory period").

## III.    PLAINTIFF CANNOT BRING THIS ACTION UNDER ERISA § 502(a)(2)

Even if Plaintiff's suit is timely, he cannot maintain this action under ERISA § 502(a)(2), which allows a participant to obtain relief for breaches of fiduciary duty authorized by ERISA

---

[7] Because the Complaint references Plaintiff's bankruptcy claim (Compl. ¶ 260), and because the claim is integral to the Complaint, the Court can consider it on a motion to dismiss. *See Cortec Indus., Inc.*, 949 F.2d at 44. "[C]ourts routinely take judicial notice of documents filed in other courts." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

[8] Furthermore, at a minimum, any claim based on alleged fiduciary breaches prior to June 25, 2001 is barred by the six-year statute of limitations set forth in ERISA § 413(1).

§ 409, 29 U.S.C. § 1109.  ERISA § 409(a), in turn, provides that a breaching fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary . . . ."  29 U.S.C. § 1109(a).  In *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), the Supreme Court held that ERISA §§ 409(a) and 502(a)(2) authorize only relief that inures to the benefit of the plan *as a whole*, and not relief for individual participants.  *Id*. at 140.  Likewise, following *Russell*, the Second Circuit has emphasized that individual plaintiffs cannot properly maintain any claim under ERISA § 502(a)(2) where they "are seeking damages on their own behalf, [and] not on behalf of the Plan."  *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993).

Notwithstanding his assertion to the contrary, Plaintiff does not seek to recover losses sustained by the Plan as a whole in this case.  Rather, he brings this action on behalf of a *subset* of Plan participants; namely, those participants who allegedly suffered losses as a result of Defendants' fiduciary breaches.  On identical facts, this Court in *Fisher v. J.P. Morgan Chase & Co.*, 230 F.R.D. 370 (S.D.N.Y. 2005), expressly held that such an action cannot be asserted under ERISA § 502(a)(2).  Like Plaintiff here, the *Fisher* plaintiffs asserted claims under ERISA § 502(a)(2) alleging that defendants breached their fiduciary duties by imprudently investing assets of J.P. Morgan's 401(k) plan in the company's stock.  *Id*. at 373.  Also like Plaintiff in this case, the *Fisher* plaintiffs purported to seek relief on behalf of a subset of plan participants who had held investments in the employer stock fund during the putative class period.  *Id*.  Following the Supreme Court's guidance in *Russell*, this Court held that plaintiffs "may not invoke the right of action contained in section 502(a)(2)" because they "seek recovery on behalf of a specific subclass of participants and not on behalf of the Plan [as a whole] . . . ."  *Id*. at 375 (internal

11

quotation marks and citation omitted). In so holding, the Court refused to "contravene [*Russell*] by accepting plaintiffs' contention that when damages formalistically pass through a plan on their way to individual plan participants, they transmute individual recoveries into a recovery on behalf of the plan as a whole." *Id.* The Court "decline[d] to adopt that strained position, particularly in light of the Second Circuit's admonition that the Supreme Court 'has repeated its belief that ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive.'" *Id.* (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322 (2d Cir. 2003)); *see also Fisher v. J.P. Morgan Chase & Co.*, No. 03 Civ. 3252 (SHS), 2006 U.S. Dist. LEXIS 71850, at *12-15 (S.D.N.Y. Sept. 29, 2006) (reaffirming the Court's August 2005 decision that plaintiffs cannot assert any breach of fiduciary duty claim under ERISA § 502(a)(2), and rejecting contrary case law from other jurisdictions).

The same result should be reached here. Plaintiff cannot properly assert any breach of fiduciary duty claims under ERISA § 502(a)(2) because, as in *Fisher*, any recovery here would be individual in nature and would not inure to the benefit of the Plan as whole. Indeed, Plan participants outside of the putative class would receive no benefit from any recovery. Thus, the Court should reject Plaintiff's attempt to recover individual losses on behalf of a subset of Plan participants, and Plaintiff should not be permitted to bring his breach of fiduciary duty claims under ERISA § 502(a)(2). Such claims should be brought, if at all, for authorized "equitable relief" under ERISA § 502(a)(3), which allows a plaintiff to seek individualized relief for breaches of fiduciary duty. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

## IV.   PLAINTIFF DOES NOT SEEK AUTHORIZED RELIEF UNDER ERISA § 502(a)(3)

Plaintiff also cannot bring this action under ERISA § 502(a)(3) because he does not seek "equitable relief" as is required by that section. Specifically, ERISA § 502(a)(3) authorizes a

participant or beneficiary to bring suit "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan; or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Supreme Court has repeatedly interpreted the relief provisions of ERISA § 502(a)(3) narrowly, holding that "other appropriate equitable relief" excludes damage remedies and includes only those types of relief that were typically available in equity, such as injunction, mandamus, and restitution. *See, e.g., Mertens v. Hewitt Assocs.*, 508 U.S. 248, 243, 255-56, 258-59 & n.8 (1993) (noting that monetary damages are not "equitable relief" within the meaning of ERISA § 502(a)(3)); *Varity*, 516 U.S. at 509-10 (same). More recently, the Supreme Court in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), confirmed that "[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for [non-equitable] money damages." *Id*. at 210 (citation and quotation omitted).

Following *Mertens* and *Great-West*, the Second Circuit has consistently held that an award of lost plan benefits due to a defendant's fiduciary breach or other ERISA violation does not constitute "equitable relief." For example, in *Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003), the Second Circuit rejected the plaintiffs' request for an "order directing 'defendants to reimburse the plaintiffs for the shortfall the Pension Fund will experience as a result of defendants' violation of their duties under ERISA.'" *Id*. at 321. In so holding, the Second Circuit noted that ERISA § 502(a)(3) "permits money awards only in very limited circumstances[,]" and further emphasized that "[c]lassic compensatory and punitive damages are never included within 'other appropriate equitable relief.'" *Id*. (citations omitted).

Similarly, in *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), the Second Circuit held that

the plaintiff's request to recover lost plan benefits caused by the defendant's alleged imprudent investment and mismanagement of plan assets constituted "monetary relief" impermissible under ERISA § 502(a)(3). *Id*. at 263. Furthermore, the Second Circuit noted that "the alternative relief [plaintiff] seeks under section 502(a)(3), an injunction requiring the defendants to restore funds to the defunct 401(k) plan to be distributed to former participants, does not transform what is effectively a money damages request into equitable relief." *Id*. at 264 (internal quotation marks and citation omitted).

Consistent with *Gerosa* and *Coan*, numerous federal courts, including this Court, have held that losses to a plan caused by a defendant's imprudent investment of plan assets are not recoverable as "equitable relief" under ERISA § 502(a)(3). *See*, *e.g.*, *In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (SWK), 2006 U.S. Dist. LEXIS 90631, at *12-13 (S.D.N.Y. Dec. 14, 2006) ("Plaintiffs' request for the recovery of damages allegedly suffered by the Plan on its investment in MMC stock . . . is clearly inappropriate under section 502(a)(3), as legal damages are simply not available under this expressly equitable remedial provision"); *In re Boston Scientific Corp. ERISA Litig.*, No. 06-10105-JLT, 2007 U.S. Dist. LEXIS 62926, at *8 (D. Mass. Aug. 27, 2007) (rejecting plaintiffs' breach of fiduciary duty claims under ERISA § 502(a)(3) seeking recovery of plan losses due to defendants' alleged imprudent investment of plan assets in company stock because such relief is not equitable); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1026 (S.D. Ohio 2006) ("Plaintiffs ask the Court to refund the difference between the artificially inflated price they paid for their Cardinal stock, and the price the stock price was *actually worth*. Consequently, the Court finds that . . . [this relief] is nothing more than 'compensatory damages': monetary relief for the losses their plan sustained as a result of the alleged breach of fiduciary duties") (internal citation omitted) (emphasis in original). Consistent

14

with the foregoing authority, it is clear that Plaintiff's request for damages allegedly suffered by the Plan is unavailable under ERISA § 502(a)(3), and thus should by rejected by the Court.

Likewise, Plaintiff's requests for a "constructive trust" and equitable restitution (Compl. at Prayer for Relief, ¶¶ D & E) also fail because the Supreme Court has limited the availability of these remedies under ERISA § 502(a)(3). Specifically, the Supreme Court has emphasized that claims for restitution are legal rather than equitable in nature, and thus not available under ERISA § 502(a)(3), unless the action generally seeks "a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213. Thus, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 214.

In addition, a claim for equitable restitution or a constructive trust is proper only where the property or funds at issue are "specifically identifiable." *See Sereboff v. Mid Atl. Med. Servs.*, 126 S. Ct. 1869, 1874 (2006) (holding that restitution was equitable where plaintiff "sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [defendant's] assets generally"). The Second Circuit has emphasized that funds are not "specifically identifiable" unless they are segregated in a separate account over which a constructive trust or equitable lien can be imposed. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (holding restitution claim was not equitable because defendant was "under no obligation to segregate [the monies that plaintiff sought]" and plaintiff did not allege that the funds at issue were "segregated in a separate account").[9] As in *Nechis*,

_____

[9] *See also Calhoon v Trans World Airlines, Inc.*, 400 F.3d 593, 597 (8th Cir. 2005) (noting that funds are specifically identifiable only when they are traceable to a "specific amount" in a "particular account"); *Admin. Comm. of the*

Plaintiff here does not allege the existence of any specifically identifiable or traceable property held by the Solutia Defendants in a segregated account over which a constructive trust or equitable lien can be imposed.  *See Coan*, 457 F.3d at 263 (rejecting plaintiff's request to recover purported plan losses through a restitution claim because "she does not attempt to recover a specifically identified fund from the defendants"); *In re Marsh ERISA Litig.*, No. 04 Civ. 8157 (SWK), 2006 U.S. Dist. LEXIS 90631, at *13 ("Ultimately, Plan participants invested funds in the Plan, which were then partially matched in cash by MMC in a proportion corresponding to each participant's status within the Plan.  Plaintiffs now seek recovery from this common fund . . . . Investments of this nature do not create the sort of specifically identified fund contemplated by the Second Circuit").

Indeed, it is abundantly clear that Plaintiff does not seek equitable restitution, as the Complaint is wholly devoid of any allegation that he is seeking to recover any specific funds or property that he, or any other Plan participant, had advanced to the Solutia Defendants.  *See*, *e.g.*, *Gerosa*, 329 F.3d at 321 ("In order to make out a claim for restitution, a plaintiff must show that the defendant has unjustly received from the plaintiff a benefit, such as a payment"); *Sackman v. Teaneck Nursing Ctr.*, 86 Fed. Appx. 483, 485 (3d Cir. 2003) (rejecting equitable restitution claim where plaintiffs "do not identify a specific block of money that passed from [them] to [the defendant]").[10]  As such, it is clear that Plaintiff does not seek to regain any funds belonging to

---

*Wal-Mart Assocs. v. Willard*, 393 F.3d 1119, 1122 (10th Cir. 2004) (holding funds specifically identifiable where they were deposited in the court's registry); *Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 686-87 (7th Cir. 2003) (holding funds specifically identifiable where they were put in a reserve bank account); *Bombardier Aero. Employees Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,, P.C.*, 354 F.3d 348, 350 (5th Cir. 2003) (holding funds specifically identifiable where they were placed in a trust account).

[10] *See also Alexander v. Bosch Auto. Sys., Inc.*, No. 05-6010, 2007 U.S. App. LEXIS 11694, at *27-28 (6th Cir. May 14, 2007) ("[T]he doctrine of equitable restitution is an awkward fit under these circumstances because Plaintiffs did not transfer identifiable funds or property to [the defendant]"); *Honolulu Joint Apprenticeship & Training Comm. of United Assoc. Local Union No. 675 v. Foster*, 332 F.3d 1234, 1238 (9th Cir. 2003) (rejecting restitution claim because "[t]here is no indication that the funds are specific or identifiable . . . . Indeed, no funds were actually transferred to [defendant]").

16

him that are in the Solutia Defendants' possession, but instead seeks to "impose personal liability" on them for their alleged fiduciary breaches. *Great-West*, 534 U.S. at 210. Such a remedy is simply not equitable and this Court should reject it.

Finally, Plaintiff's purported request for injunctive relief to prevent Defendants from committing "any further violations of their ERISA fiduciary obligations" (Compl. at Prayer for Relief, ¶ F) cannot save his ERISA § 502(a)(3) claims from dismissal, as the Second Circuit has rejected such vague requests for injunctive relief as improper. *See*, *e.g.*, *Henrietta D. v. Giuliani*, 246 F.3d 176, 182 (2d Cir. 2001) ("[A]n 'obey the law' order entered in a case arising under statutes . . . would not pass muster under Rule 65(d) of the Federal Rules of Civil Procedure, which requires that injunctions be 'specific in terms' and 'describe in reasonable detail . . . the act or acts sought to be restrained'") (citations omitted); *In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 221 (D. Conn. 2007) (rejecting plaintiffs' request for "[i]njunctive relief enjoining Defendants from continuing to violate their fiduciary duties under ERISA and the plan documents" because "an injunction must be more specific than a simple command that the defendant obey the law") (citation omitted); *O'Reilly v. Cont'l Cas. Co.*, No. 02 C 5214, 2003 U.S. Dist. LEXIS 16396, at *9 n.3 (N.D. Ill. Sept. 17, 2003) (denying request to "enjoin[ ] the defendants . . . from violating ERISA" "because such an injunction is overly broad and would allow a plaintiff to sue for contempt every time the defendants violated ERISA").

Accordingly, because Plaintiff does not seek any "equitable relief" in the Complaint, he cannot maintain any of his breach of fiduciary duty claims under ERISA § 502(a)(3).

## V.    PLAINTIFF FAILS TO SATISFY THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 8(a)

The Complaint should also be dismissed because it fails to comply with the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which requires that a

complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint must be specific enough to place a defendant on "fair notice" of the claims asserted against it. *See Twombly*, 127 S. Ct. at 1964. Plaintiff's conclusory and overly general allegations do not satisfy this pleading requirement. Specifically, Plaintiff fails to plead any facts to support his conclusory assertions as to each Defendant's particular fiduciary responsibility. Furthermore, Plaintiff fails to plead any facts setting forth any details as to what each Defendant did, or did not do, to breach his or her particular fiduciary or co-fiduciary duties under ERISA. Rather, without alleging any facts describing each Defendant's role in the alleged misconduct, Plaintiff broadly asserts that all of the Defendants are liable for all alleged fiduciary and co-fiduciary breaches asserted in the Complaint.

Plaintiff's failure to plead sufficient facts regarding each Defendant's fiduciary status under the Plan and his or her role in the alleged fiduciary breaches warrants dismissal of the Complaint under Rule 8(a). Although Plaintiff alleges that he "believes that further specific factual support for his allegations will be produced after a reasonable opportunity for discovery" (Compl. ¶ 286), the Supreme Court has emphasized that a deficient complaint cannot be saved by the "prospect of unearthing" the necessary facts through discovery. *Twombly*, 127 S. Ct. at 1968. Rather, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id*. at 1966 (citations omitted). Thus, courts have not hesitated to dismiss complaints that, like the one here, contain generalized allegations that fail to put the defendants on notice of their alleged wrongdoing. *See, e.g.*, *Appalachian Enters. v. ePayment Solutions Ltd.*, No. 01 CV 11502 (GBD), 2004 U.S. Dist. LEXIS 24657, at *21 (S.D.N.Y. Dec. 7, 2004) ("A plaintiff fails to satisfy rule 8, where the

18

complaint 'lump[s] all the defendants together and fail[s] to distinguish their conduct' because such 'allegations fail to give adequate notice to the[] defendants as to what they did wrong'") (citation omitted); *In re Providian Fin. Corp. ERISA Litig.*, No. C 01-05027, 2002 U.S. Dist. LEXIS 25676, at *3-4 (N.D. Cal. Nov. 14, 2002) (holding ERISA complaint that "lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties . . . . fails to put the various defendants on notice of the allegations against them"); *In re McKesson HBOC, Inc. ERISA Litig.*, No. C00-20030, 2002 U.S. Dist. LEXIS 19473, at *10 (N.D. Cal. Sept. 30, 2002) (dismissing ERISA complaint that was "replete with overly general allegations pursuant to which nearly all defendants are generally alleged to be liable for all breaches of fiduciary duty, all the while failing to identify specific defendants who are liable for specific breaches of specific fiduciary duties").

## VI.    PLAINTIFF HAS NOT SUFFICIENTLY PLED THAT THE DIRECTOR DEFENDANTS, AND DEFENDANTS NELLING, STEMME, AND AST WERE FIDUCIARIES UNDER THE PLAN

In order to state a claim for breach of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, a plaintiff must plead sufficient facts to establish that the defendant was a "fiduciary" under ERISA.  *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint").  A person may be a fiduciary by being designated as such in the applicable plan instrument.  *See* ERISA § 402(a), 29 U.S.C. § 1102(a).  In addition, ERISA "provides that not only the persons named as fiduciaries by a benefit plan but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets is an

ERISA 'fiduciary.'"[11]  *Mertens*, 508 U.S. at 251 (citations omitted).

However, fiduciary status under ERISA "is not an 'all or nothing' concept[.]"  *Trustees of the Health & Welfare v. Schlesinger Bros., Inc.*, 931 F. Supp. 204, 207 (S.D.N.Y. 1996) (citation omitted).  Rather, a person's fiduciary status extends only as far as that person's fiduciary function.  In other words, a person who is named as (or otherwise acts as) a fiduciary to an employee benefit plan will not be considered a fiduciary when acting in corporate roles, even if those roles have some impact on the plan.  *See, e.g.*, *Pegram*, 530 U.S. at 225; *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).  Moreover, the fact that a person performs in one fiduciary function does not make that person a fiduciary with responsibility over other fiduciary functions for the plan.  *See Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) ("[A] person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility") (citation omitted).

### A.    The Director Defendants Were Not Fiduciaries

The Complaint alleges that the fourteen Director Defendants (Metz, Hunter, Clausen, Potter, Miller, Hatfield, Mulcahy, Narodick, Donovan, Jenkins, Ruckelshaus, Slaughter, Lochner, and Blakely) were fiduciaries because they had authority to appoint members of the Plan Committee and the Fund Committee and because they exercised discretionary authority over Plan management and Plan assets.  (Compl. ¶ 98.)  The Plan, however, confers no fiduciary duties on the Board of Directors or its members, who are not identified anywhere in the

---

[11] ERISA § 3(21)(A) provides that a person may be considered a "fiduciary" with respect to a plan "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).

governing plan document as named fiduciaries.  As noted above, the Company is the designated

Plan administrator (2002 SPD at 66), and the Plan Committee also has discretionary authority

over Plan administration (2002 Plan, §§ 1.3, 13.2).  In addition, the plan document expressly

provides that prior to January 1, 2002, the Company, not the Board of Directors, had

responsibility for the management of Plan assets, including the authority to remove or suspend

any investment fund under the Plan.  (1997 Plan, §§ 1.4, 9.2.)  Effective January 1, 2002, the

Fund Committee had control over Plan assets and the selection of investment funds under the

Plan.  (2002 Plan, §§ 1.4, 9.2.)  The Company, not the Board of Directors, was responsible for

the appointment of both the Plan and Fund Committees.  (2002 Plan, §§ 1.4, 13.1; 1997 Plan, §

13.1.)

     Accordingly, as the governing plan documents for the Plan demonstrate, the Director

Defendants did not have any fiduciary responsibility under the Plan, and the Complaint should

be dismissed as against them.  *See*, *e.g.*, *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp.

2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth

conflicting pleadings that . . . are contradicted either by statements in the complaint itself or by

documents upon which its pleadings rely, or by facts of which the court may take judicial

notice").  To the extent Plaintiff asserts, contrary to the Plan documents, that the Director

Defendants were fiduciaries, the Court need not credit that legal conclusion.  *See U.S. v.*

*Bonanno Organized Crime Family of La Cosa Nostra*, 879 F.2d 20, 27 (2d Cir. 1989) (on a

motion to dismiss, "legal conclusions, deductions or opinions couched as factual allegations are

not given a presumption of truthfulness") (quoting 2A J. Moore, Moore's Federal Practice, ¶

12.07[2.-5] at 63-64 (2d ed. 1987)); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d

173, 179 (S.D.N.Y. 2006) ("[T]he Court need not accept as true conclusory allegations and legal

21

conclusions masquerading as facts"); *In re Merck & Co., Inc. Sec. Derivative & ERISA Litig.*, No. 05-2369 (SRC), 2006 U.S. Dist. LEXIS 53729, at *33 (D.N.J. July 11, 2006) (rejecting plaintiffs' conclusory assertion that defendants were *de facto* fiduciaries).

In addition, any argument that that the Director Defendants were fiduciaries because Solutia acted through them should likewise be rejected.  Officers and directors of an employer-fiduciary are not fiduciaries themselves simply because of their corporate positions, "unless it can be shown that these officers have *individual* discretionary roles as to plan administration." *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991) (emphasis in original); *see also In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 757 (S.D.N.Y. 2003) ("[A]n individual cannot be liable as an ERISA fiduciary solely by virtue of her position as a corporate officer, shareholder or manager") (citation omitted); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 8853 (SWK), 2005 U.S. Dist. LEXIS 3715, at *14 (S.D.N.Y. Mar. 10, 2005) ("[A] defendant's role as an executive of the employing company is, standing alone, insufficient co confer fiduciary status").[12]  Accordingly, the Complaint should be dismissed with respect to the Director Defendants because they were not fiduciaries under the Plan.  *See*, *e.g.*, *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d at 761 (dismissing complaint against individual directors because "the Complaint does not sufficiently allege that [they] functioned as ERISA fiduciaries"); *In re Uniphase Corp. ERISA Litig.*, No. C 03-04743 CW (WWS), 2005 U.S. Dist. LEXIS 17503, at *13 (N.D. Cal. July 14, 2005) ("Absent any specific allegations that the Individual Defendants exercised discretionary control or authority regarding the management of the stock fund, there is no basis for finding ERISA fiduciary status").

---

[12] *See also Arevalo v. Herman*, No. 3:01cv512, 2002 U.S. Dist. LEXIS 7076, at *12 (E.D. Va. Apr. 12, 2002) ("A business entity's officer or director who has responsibility for corporate affairs does not also have fiduciary responsibility with regard to an employee benefit plan simply by virtue of that corporate position"), *aff'd*, 128 Fed. Appx. 952 (4th Cir. 2005); 29 C.F.R. § 2509.75-8, D3-Q, D4-Q.

### B.    Defendants Nelling, Stemme, and Ast Were Not Fiduciaries

The Complaint alleges that Defendants Nelling and Stemme signed Forms 5500 filed on behalf of the Plan as the Plan Administrator.  (Compl. ¶¶ 18, 20.)  The Complaint also alleges that each signed one of the Plan's Annual Reports "as the Plan administrator."  (*Id.*)   Similarly, Plaintiff alleges that Defendant Ast signed the Plan's 2003 Form 11-K filed with the Securities and Exchange Commission and was identified as the "representative of the Plan, and Director of Employee Benefits at Solutia."  (*Id.* ¶ 21.)  Based solely on these allegations, Plaintiff asserts in conclusory fashion that Nelling, Stemme, and Ast were fiduciaries under the Plan.  (*Id.* ¶ 93.)

However, as this Court has explained, signing regulatory filings on behalf of an ERISA plan, including SEC filings, is a ministerial act that does not confer ERISA fiduciary status.  *See*, *e.g.*, *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d at 766 ("Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations"); *In re RCN Litig.*, No. 04-5068 (SRC), 2006 U.S. Dist. LEXIS 12930, at *16-17 (D.N.J. Mar. 21, 2006) (holding defendants signings of SEC filings and the plan's Forms 5500s and annual reports, on some which they were designated as the "plan administrator," was insufficient to establish fiduciary status); *In re Tyco Int'l*, MDL No. 02-1335-PB, 2004 U.S. Dist. LEXIS 24272, at *11-13 (D.N.H. Dec. 2, 2004) (preparing and signing regulatory filings is ministerial, not fiduciary, act).[13]  The Complaint contains no further allegations demonstrating that Defendants Nelling, Stemme, and Ast actually exercised any discretionary authority over Plan administration or possessed any control over Plan assets.  In

---

[13] *See also In re Uniphase Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 17503, at *12 ("Plaintiffs' only specific allegation is that the Individual Defendants signed certain documents under certain titles, but this does not make an individual an ERISA fiduciary"); *Anoka Orthopaedic Assoc., P.A. v. Mutschler*, 709 F. Supp. 1475 (D. Minn. 1989) (preparing plan documents and government reports does not confer fiduciary status), *aff'd sub nom.*, *Anoka Orthopaedic Assoc., P.A. v. Lechner*, 910 F.2d 514 (8th Cir. 1990); 29 C.F.R. § 2509.75-8, D-2 (preparing reports required by government agencies are ministerial functions that are non-fiduciary in nature).

addition, with respect to Defendant Ast, none of the Plan documents during the putative Class Period conferred any discretionary authority on the "Director of Employee Benefits at Solutia" with respect to Plan administration or investment of Plan assets. Accordingly, the Complaint should be dismissed as to these individuals because they were not fiduciaries under the Plan.

## VII.    COUNT I OF THE COMPLAINT SHOULD BE DISMISSED

In Count I of the Complaint, Plaintiff alleges that the Solutia Defendants breached their fiduciary duties to prudently manage the Plan's investment in Solutia stock. Specifically, Plaintiff contends that the Solutia Defendants failed to sell and otherwise continued to invest in Solutia stock, as well as continued to offer Solutia stock as an investment option to participants, when doing so was imprudent. (Compl. ¶ 291(a), (b), (d).) Likewise, Plaintiff asserts that the Solutia Defendants wrongfully continued to invest Company matching contributions in Solutia stock, and failed to alter the investment mix of the Solutia Stock Fund away from Solutia stock in favor of cash. (*Id*. ¶ 291(c), (e).) In addition to these allegations of imprudent investment, Plaintiff also claims that the Solutia Defendants breached their fiduciary duties by misrepresenting and otherwise failing to disclose information concerning Solutia's financial condition. (*Id*. ¶ 291(f).) Further, Plaintiff claims that the Solutia Defendants committed fiduciary breaches by improperly serving as fiduciaries with conflicts of interests, and failing to bring suits against other fiduciaries for breaches of fiduciary duty. (*Id.* ¶ 291(g), (h).) As discussed below, Plaintiff's claims in Count I are legally insufficient and should be dismissed.

### A.    Plaintiff's Claim of Imprudent Investment is Without Merit

1.    Only the Fund Committee had fiduciary responsibility for the investment of Solutia stock under the Plan

As an initial matter, any claim relating to the Plan's investment in Solutia stock should be dismissed with respect to the Director Defendants, the Plan Defendants (Feldman, Nelling,

Bevington, Stemme, and Ast), and the Employee Benefits Plan Committee because they did not have any discretionary authority over Plan investment during the putative Class Period. Only the Fund Committee had discretionary authority to manage Plan assets after January 1, 2002. (2002 Plan, § 1.4; § 9.2 (providing that the Fund Committee "may from time to time add, suspend or terminate an Investment Fund").) Prior to January 1, 2002, Solutia was responsible for the aforementioned fiduciary functions. (1997 Plan, §§ 1.4, 1.8, 9.2, 14.1.) However, at no time did the Plan confer any discretionary authority on the Director Defendants, the Plan Defendants, or on the Employee Benefits Committee with respect to the Plan's investments, including the investment in Solutia stock. Accordingly, Plaintiff's claims should be dismissed as against these Defendants. *See, e.g.*, *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1273 (N.D. Ga. 2006) (dismissing claim against members of benefits committee for imprudent investment of plan assets because "[t]he Trust Agreement and the Plan make clear that the Benefits Committee has no prerogatives regarding selection of the Plan's investments"); *In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d 1328, 1338 (N.D. Okla. 2003) (dismissing claim against company for breach of fiduciary duty for continuing to offer company stock as an investment option because "Williams did not control investment decisions"); *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 229 (W.D.N.Y. 2002) (dismissing claim against board of directors for continuing to offer company stock as an investment option because "the Board did not control investment options").

2.  Selling Solutia stock based on alleged insider information would have violated securities laws

Count I should be dismissed against all Solutia Defendants to the extent the claims are based on a theory that they should have divested the Plan of Solutia stock based on their knowledge of material, non-public information concerning Solutia's financial condition, since such an act would have violated securities laws or would not have avoided the losses that

Plaintiff alleges.  Securities and Exchange Commission Rule 10b-5 specifically prohibits corporate insiders from trading company stock on the basis of material, non-public information. *See United States v. O'Hagan*, 521 U.S. 642, 651-52 (1997).  This prohibition applies to fiduciaries acting on behalf of ERISA plans.  *See* SEC Release No. 33-6188, Employee Benefit Plans, 1980 WL 29482, at *28 & n.168 (Feb. 1, 1980) (stating that the antifraud provisions of Rule 10b-5 apply to sales of an employer's stock by an employer-sponsored plan).  ERISA itself provides that it should not be construed to exempt ERISA plans from other federal laws.  *See* ERISA § 514(d), 29 U.S.C. § 1144(d).

In *In re McKesson HBOC*, the court cited the restrictions that the federal securities laws place on plan fiduciaries in dismissing plaintiffs' claim that the defendants breached their fiduciary duties by failing to divest the plan of its employer stock after a merger.  2002 U.S. Dist. LEXIS 19473, at *24.  The court explained, "Not even a fiduciary acting in its fiduciary capacity is permitted to engage in insider trading. . . .  Fiduciaries are not obligated to violate the securities laws in order to satisfy their fiduciary duties."  *Id.* at *21 (citation omitted).  Under the "efficient capital markets hypotheses," any public disclosure of the information, which would be necessary for any sale to comply with the securities laws, "would have swiftly resulted in a market adjustment."  *Id.* at 20.  "[T]hus, the Plan would not have been able to sell the stock at the artificially high price, and there was no way for the Plan Fiduciaries to have lawfully avoided the drop that occurred . . . ."  *Id.*  The district court therefore held that plaintiffs had failed to state a claim for the failure to divest employer stock, concluding that "[t]here was no lawful action that could have been taken by the fiduciaries that would have avoided the subsequent loss occurring after public disclosure of the accounting problems."  *Id.* at *24.

Assuming for the purposes of this motion that Plaintiff's allegations are true and the

Solutia Defendants were aware of material, non-public information, the Solutia Defendants would have been in the very same position as the defendants in *In re McKesson HBOC*. They could not have legally directed the sale of Solutia stock without publicly disclosing the information. Meanwhile, by the logic of Plaintiff's own allegations, public disclosure of the information would have resulted in the same drop in stock price that Plaintiff contends actual disclosure did in the present case. Because the Solutia Defendants could not have legally avoided the alleged losses, Plaintiff's claims should be dismissed to the extent that they assert a failure to divest the Plan of Solutia stock. *See*, *e.g.*, *Edgar v. Avaya, Inc.*, No. Civ. A. 05-3598 SRC, 2006 WL 1084087, at *9 (D.N.J. Apr. 25, 2006) ("Had the Defendants publicly released any adverse information they had prior to the April 2005 announcement, under the 'efficient capital markets hypothesis,' such a disclosure would have resulted in a swift market adjustment, and the Plans would not have been able to sell their Avaya stock holdings at the higher, pre-announcement price, and the Plans would have sustained the same losses they incurred when the Company publicly announced the quarterly results in April 2005"); *Hull v. Policy Mgmt. Sys. Corp.*, No. CIV. A. 3:00-778-17, 2001 U.S. Dist. LEXIS 22343, at *26 (D.S.C. Feb. 9, 2001) (dismissing claim relating to investment of plan assets in employer stock because fiduciaries could not lawfully avoid losses to the plan).

3.    The design and amendment of the Plan are not fiduciary acts

Notwithstanding that the Plan mandated investment of Company matching contributions in the Solutia Stock Fund during the entire putative Class Period (2002 Plan, § 9.5), Plaintiff claims that the Solutia Defendants breached their fiduciary duties by continuing to invest Company matching contributions in Solutia stock. The Plan did *not* confer discretionary authority on any fiduciary to change the Company match. As such, Plaintiff's complaint here is not with the *administration* of the Plan, but rather with the Plan's *design*. Similarly, although

27

Plaintiff complains that the Solutia Defendants should have altered the investment mix of the Solutia Stock Fund away from Solutia stock in favor of cash, the Plan provided that the Fund "*shall* be invested in the common stock of the Corporation . . . ." (2002 Plan, § 9.2) (emphasis added).[14]  No investment other than Solutia stock was authorized under the Plan, and no fiduciary was granted any discretion to alter the investment mix of the Solutia Stock Fund.

Because the investment of the Company match and the Solutia Stock Fund in Solutia common stock are matters of Plan design, the only way to eliminate or modify those provisions would be through an amendment to the Plan.  It is well-established, however, that decisions regarding a plan's design or amendment of plan terms are not fiduciary functions and cannot give rise to fiduciary liability.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where [the employer] acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan"); *Spink*, 517 U.S. at 890 (holding that when employers or other plan sponsors adopt, modify, or terminate a plan, "they do not act as fiduciaries . . . but are analogous to the settlors of a trust") (internal citation and quotation omitted).  Correspondingly, it also follows that a failure to amend a plan cannot serve as the basis for fiduciary liability.  *See*, *e.g.*, *In re McKesson HBOC*, 2002 U.S. Dist. LEXIS 19473, at *25 n.8 ("Plan amendment is not a fiduciary act within the meaning of ERISA . . . .  Accordingly, plaintiffs' claim for breach of fiduciary duty based upon any allegation that the fiduciaries failed to amend the McKesson Plan necessarily fails to state a claim"); *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1330 n.20 (N.D. Ga. 2006) ("The act of amending the plan . . . is not a fiduciary act; therefore, failure to amend [to alter investment allocations under the plan] would not be a basis for fiduciary liability under ERISA") (internal citation

---

[14]  The Trust Agreement did allow the Solutia Stock Fund to maintain a small cash component, but only to ensure liquidity for distributions and expenses.  (*See* Trust Agreement at § 5.1.)

omitted).[15]  As such, Plaintiff's claim that the Solutia Defendants breached their fiduciary duties by "continuing to invest the Company match and the Fund in Solutia stock should be dismissed.

### B.    Plaintiff's Misrepresentation and Nondisclosure Claims Should Be Dismissed

Plaintiff also asserts in Count I that the Solutia Defendants breached their fiduciary duties by "failing to provide complete and accurate information to the Plan's participants necessary to the participants' informed decisions with regard to investment in Solutia Stock and the Solutia Stock Fund."  (Compl. ¶ 291(f).)  Specifically, Plaintiff alleges that the Solutia Defendants made affirmative misrepresentations and otherwise failed to disclose information concerning "the performance, future financial and business prospects of the Company's common stock" in Company press releases, SEC filings, and other public statements.  (*Id.* ¶¶ 243-47.)  In addition to Plaintiff's failure to comply with Fed. R. Civ. P. 8(a) as discussed in Section V *supra*, these claims should be dismissed for several additional reasons.

First, Plaintiff fails to state cognizable claims for misrepresentation and nondisclosure under ERISA.  Even assuming *arguendo* that Plaintiff has pled sufficient facts to state such claims, he cannot maintain these claims under ERISA § 502(a)(2) because they are individual in nature, and thus the claims must be brought under ERISA § 502(a)(3).  As noted above in Section IV *supra*, however, ERISA § 502(a)(3) only authorizes an individual to obtain "equitable relief," which Plaintiff does not seek.

---

[15] *See also In re RCN Litig.*, 2006 U.S. Dist. LEXIS 12930, at *18 n.4 (rejecting claim based on the allegation that defendants failed to "change the Company's matching percentage" because such an act "do[es] not implicate ERISA's fiduciary duties"); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 859 (N.D. Ohio 2006) ("[T]o the extent that Plaintiff alleges that the individual Defendants breached their fiduciary duties of prudence and loyalty by not amending the Plans to eliminate the Company fund as an investment option, he has not alleged a claim upon which relief can be granted"); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1219 (D. Kan. 2004) ("[P]laintiffs' imprudent investment claim is dismissed to the extent it alleges the Sprint defendants should have amended the express terms of the plans to reduce or eliminate investments in Sprint stock").

    1.    <u>Plaintiff's misrepresentation and nondisclosure claims fail because they rest on non-fiduciary speech or disclosures not required by ERISA</u>

In order to state a breach of fiduciary duty claim based on misrepresentations, a plaintiff must plead the following elements:  (1) the defendant was acting as a fiduciary; (2) the defendant made a misrepresentation or omission; (3) the misrepresentation or omission was material; and, (4) the plaintiff detrimentally relied on the misrepresentation or omission.  *See, e.g.*, *Bell v. Pfizer Inc.*, No. 03 Civ. 9945(KMW), 2007 WL 1610205, at *4 (S.D.N.Y. June 1, 2007); *McMunn v. Pirelli Tire, LLC*, 161 F. Supp. 2d 97, 120 (D. Conn. 2001) (citing *Varity Corp. v. Howe*, 516 U.S. 489 (1996)).  Plaintiff cannot satisfy the elements of this test.

Plaintiff fails the first element of this test because the alleged misrepresentations concerning Solutia's financial status, the viability of the Company's stock, and other corporate matters fall outside the scope of ERISA fiduciary speech.  ERISA's fiduciary obligations are implicated only where an employer acts in its fiduciary, and not corporate, capacity.  *See Pegram*, 530 U.S. at 225; *Spink*, 517 U.S. at 890; *Flanigan v. General Elec. Co.*, 242 F.3d 78, 87-88 (2d Cir. 2001).  Notably, the Supreme Court has rejected the notion that corporate speech on ordinary business issues, such as a company's financial status and projected revenues and earnings, can constitute fiduciary speech, even if such statements incidentally affect plan benefits:  "We do not hold . . . that [the defendant] acted as a fiduciary simply because it made statements about its expected financial condition or because 'an ordinary business decision turned out to have an adverse impact on the plan.'" *Varity*, 516 U.S. at 505 (citation omitted); *see also In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d at 760 ("Although the SPD incorporates SEC filings by reference and is part of the Section 10(a) prospectus, those connections are insufficient to transform those documents into a basis for ERISA claims against their signatories"); *In re Merck & Co. Inc., Sec. Derivative & ERISA Litig.*, 2006 U.S. Dist. LEXIS

53729, at *45-46 (rejecting plaintiffs' claim alleging defendants breached their fiduciary duty because "they determine[ed] or participat[ed] in decisions about the substantive content of Merck's SEC filings which were incorporated into the Plans' communications with participants. This . . . is insufficient to create a fiduciary duty to communicate with the Plans' participants") (internal quotation marks and citations omitted).[16]

Likewise, Plaintiff's nondisclosure claim fails because the Solutia Defendants had no duty to disclose the information that Plaintiff urges here.  ERISA § 104(b)(4) mandates that certain information be disclosed by the plan administrator upon request, including a summary plan description, an annual report, and other "instruments under which the Plan is established or operated."  29 U.S.C. § 1024(b)(4).  Plaintiff does not allege that he requested any information regarding the Plan.  More importantly, ERISA's disclosure obligations are imposed only on the plan administrator.  *See, e.g.*, *Lee*, 991 F.2d at 1010; *Bergquist v. Aetna*, 289 F. Supp. 2d 400, 413 (S.D.N.Y. 2003).  As noted above, Solutia is the designated plan administrator for the Plan, and thus this claim cannot be asserted against the Solutia Defendants.  (2002 SPD at 66; 1999 SPD at 54; 1997 SPD at 39.)

Moreover, ERISA's express disclosure provisions do not impose any duty to disclose information concerning an employer's financial performance or prospects.  Rather, ERISA requires only disclosure of information about the plan, and not about the plan sponsor or employer's financial performance.  *See, e.g.*, *Board of Trustees of the CWA/ITU Negotiated*

---

[16] *See also In re RCN Litig.*, 2006 U.S. Dist. LEXIS 12930, at *36-38 (holding that "various public statements, forecasts, and filings to the Plan participants and others" regarding the company's financial condition, "regardless of truth or falsity," do not constitute fiduciary speech); *In re Williams Cos. ERISA Litig.*, 271 F. Supp. 2d at 1338 (dismissing claims alleging "material misrepresentations and nondisclosures concerning [the employer's] future performance . . . since the record reflects that such statements, regardless of truth or falsity, were not made by [the employer] in any fiduciary capacity regarding the Plan"); *Crowley*, 234 F. Supp. 2d at 225-28 (holding that misrepresentation claims "concerning Corning's future performance . . . fail[ed], since . . . such statements, regardless of truth or falsity, were not made by Corning in any fiduciary capacity regarding the Plan").

*Pension Plan v. Weinstein*, 107 F.3d 139, 143-45 (2d Cir. 1997) ("[Section] 104(b)(4) is not

sufficiently broad to require disclosure of any and all 'documents that would assist participants

and beneficiaries in determining their rights under a plan and in determining whether a plan is

being properly administered'") (citation omitted).[17]  Furthermore, consistent with Second Circuit

authority, Plaintiff cannot avail himself of ERISA's general fiduciary provisions to expand the

statute's express disclosure obligations to require disclosure of the type of information that

Plaintiff seeks here.  *See Nechis*, 421 F.3d at 102 ("[Defendant] has no duty to disclose to plan

participants information additional to that required by ERISA"); *Weinstein*, 107 F.3d at 146-47

("[W]e think it [is] inappropriate to infer an unlimited disclosure obligation on the basis of

general provisions [ERISA § 404(a)(1)(A)-(D)] that say nothing about disclosure").[18]

Finally, Plaintiff cannot satisfy the detrimental reliance requirement to maintain a

misrepresentation or nondisclosure claim.  *See, e.g.*, *Bell*, 2007 WL 1610205, at *4 (requiring a

showing of detrimental reliance to establish misrepresentation claim); *Pedraza*, 456 F. Supp. 2d

at 1281 (requiring detrimental reliance with respect to misrepresentation and omissions claim);

*Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 97 (D. Md. 2004) ("Tootle relies primarily on alleged

omissions rather than representations.  It stands to reason that such a claim also should require

---

[17] *See also Young v. Washington Gas Light Co.*, 206 F.3d 1200, 1204 (D.C. Cir. 2000) (stating that no "section of the [ERISA] statute . . . requires disclosures unrelated to the plan; indeed, the disclosure requirements are limited to information about the plan itself"); *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 654-55 (4th Cir. 1996) (holding that ERISA § 104(b)(4) does not require disclosure of information about the plan sponsor's stock or "documents concerning [the employer]'s financial status"); *Hughes Salaried Retirees Action Comm. v. Adm'r of the Hughes Non-Bargaining Ret. Plan*, 72 F.3d 686, 689 (9th Cir. 1995) (*en banc*) (holding that disclosure of information not related to the plan is not required under ERISA § 104(b)(4)); *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 406 (8th Cir. 1995) ("Employer fiduciaries are not required to provide general business information to potential plan participants, and fiduciaries do not violate their duties by failing to disclose such information").

[18] *See also Young*, 206 F.3d at 1204 ("There is nothing in [ERISA § 404(a)(1)(A)] to suggest that an ERISA plan administrator has a fiduciary duty to disclose information unrelated to the plan even if an employee might consider that information important"); *Faircloth*, 91 F.3d at 657 ("We [] decline to use § 404(a)(1)(A) to expand the duties imposed under § 104(b)(4)"); *Taylor v. United Techs. Corp.*, No. 3:06cv1494 (WWE), 2007 U.S. Dist. LEXIS 57807, at *13 (D. Conn. Aug. 9, 2007) ("Congress has already created statutory disclosure obligations.  The Court will not augment ERISA-fiduciary duties where Congress has already created detailed rules governing such obligation") (citation omitted).

some showing of causation or detrimental reliance, necessitating individualized proof") (citing

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Skinner Engine Co.*,

188 F.3d 130, 148 (3d Cir. 1999) (noting that a plaintiff alleging fiduciary breach under ERISA

based on misrepresentations or omissions must prove a resulting harm)).[19]  Indeed, nowhere in

the Complaint does Plaintiff allege that he, or any putative class member, detrimentally relied on

the Solutia Defendants' alleged misrepresentations or omissions.[20]  Because Plaintiff fails to

plead sufficient facts to satisfy the requisite elements to state cognizable claims for

misrepresentation and nondisclosure, these claims should be dismissed.

        2.      <u>Plaintiff's misrepresentation and nondisclosure claims should be
dismissed because he cannot properly bring them under ERISA
§ 502(a)(2) and he does not seek equitable relief under ERISA § 502(a)(3)</u>

As noted above in Section III *supra*, ERISA § 502(a)(2) only authorizes relief that inures

to the benefit of the plan as a whole, and not relief for individual participants.  However,

fiduciary duty claims based on misrepresentations or nondisclosure, by their very nature, depend

on proof that individual plaintiffs reasonably and detrimentally relied on the alleged

misrepresentations or nondisclosure.  *See*, *e.g.*, *Ballone v. Eastman Kodak Co.*, 109 F.3d 117,

126 (2d Cir. 1997) (requiring proof that plaintiff reasonably relied on misrepresentation that

resulted in losses); *Hudson v. Delta Air Lines*, 90 F.3d 451, 457 (11th Cir. 1996) (denying class

certification for ERISA misrepresentation claims because reliance and causation would be

"highly individualized for each potential retiree").  As such, even assuming Plaintiff could

---

[19] *See also Burstein v. Ret. Account Plan*, 334 F.3d 365, 385-89 (3d Cir. 2003) (affirming dismissal of claim for failure to disclose material information on grounds that plaintiff had not pled detrimental reliance); *McCoy v. Bd. of Trs. of the Laborers' Int'l Union, Local No. 222*, 188 F. Supp. 2d 461, 472 (D.N.J. 2002) (rejecting claims based on omissions for failure to demonstrate detrimental reliance), *aff'd*, 60 Fed. Appx. 396 (3d Cir. 2003).

[20] Courts have held that reliance may not be presumed in such situations.  *See*, *e.g.*, *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 630 (E.D. Tex. 2004) (denying class certification of ERISA misrepresentation claim after rejecting argument that securities law "fraud-on-the-market presumption" should be applied in ERISA context); *Thomas v. Aris Corp. of Am.*, 219 F.R.D. 338, 342 (M.D. Pa. 2003) (holding that reliance may not be presumed in the context of an ERISA claim).

succeed in proving a breach based on misrepresentations or nondisclosure, only those Plan

participants who could demonstrate individual detrimental reliance could recover.  This would

mean that two participants whose plan accounts were identically invested could, even assuming

identical proof of misrepresentation, have completely different outcomes from such a showing, if

one could show detrimental reliance and the other could not.

Thus, the relief sought by Plaintiff would necessarily inure only to the benefit of a subset

of Plan participants – i.e., those individual participants who can demonstrate reliance and

resulting harm – and not to the Plan as a whole.  *See supra* at Section III.  As such, to the extent

Plaintiff can assert his misrepresentation and nondisclosure claims under ERISA at all, he must

do so under ERISA § 502(a)(3), which allows a plaintiff to seek individualized relief for

breaches of fiduciary duty.  *See Varity*, 516 U.S. at 515; *In re Unisys Sav. Plan Litig.*, No. 91-

3067, 1997 WL 732473, at *29 (E.D. Pa. Nov. 24, 1997) ("To the extent that these Plaintiffs are

suing for [Defendants'] alleged misrepresentations and/or nondisclosures, these claims are

individual claims actionable only under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3)[,]"

and not ERISA § 502(a)(2)), *aff'd*,173 F.3d 145 (3d Cir. 1999).  However, as noted above,

Plaintiff does not seek "equitable relief" under ERISA § 502(a)(3).  Thus, because he does not

seek any permissible relief under that section, and because he cannot maintain his

misrepresentation and nondisclosure claims under ERISA § 502(a)(2), these claims should be

dismissed.

### C.    Plaintiff's Conflict of Interest Claim Should Be Dismissed

Plaintiff claims that the Solutia Defendants breached their fiduciary and co-fiduciary

duties by failing to avoid conflicts of interest.  Specifically, Plaintiff alleges that the Solutia

Defendants operated under conflicts of interest because they served as officers or directors of the

Company while serving as fiduciaries under the Plan, and failed to appoint independent

fiduciaries to resolve this conflict.  (Compl. ¶¶ 251-55, 289-90.)  Plaintiff contends that because

Defendants "received compensation and bonuses in the form of Solutia Stock," they "improperly

let their interest in promoting Solutia Stock guide their decisions as Plan fiduciaries."  (*Id.*

¶ 290.)  Further, Plaintiff alleges that the Solutia Defendants had a duty to avoid such conflicts

by retaining independent fiduciaries or taking "any other meaningful measure to ameliorate their

conflicted status."  (*Id.* ¶ 255).  These assertions are wholly devoid of merit.

　　　As an initial matter, because Plaintiff's conflict of interest claim is, at its core, based upon

the allegation that the Solutia Defendants failed to take appropriate steps to protect the Plan from

imprudent investment in Solutia Stock, it should be dismissed for all of the reasons set forth

above.  In addition, because the Director Defendants, and Defendants Nelling, Stemme, and Ast

were not fiduciaries as noted above in Section VI *supra*, this claim fails with respect to them.[21]

　　　In any event, Plaintiff's claim fails in its entirety because ERISA expressly permits the

alleged conflict that Plaintiff asserts constitutes a fiduciary breach here – *i.e.*, corporate officers

and directors doubling as Plan fiduciaries.  *See* ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3)

("Nothing in section 406 of this title shall be construed to prohibit any fiduciary from . . . serving

as a fiduciary in addition to being an officer, employee, agent or other representative of a party in

interest").  Likewise, the Second Circuit and other courts have consistently held that ERISA

allows corporate officers and directors to serve as plan fiduciaries without creating an

impermissible conflict of interest.  *See, e.g.*, *Siskind v. Sperry Ret. Program*, 47 F.3d 498, 506

(2d Cir. 1995) (noting that section 408(c)(3) "'expressly contemplates fiduciaries with dual

loyalties'") (quoting *Donovan v. Bierwirth*, 538 F. Supp. 463, 468 (E.D.N.Y. 1981)); *Grindstaff*

---

[21] Likewise, this claim should also be dismissed as to the Plan Committee and the Fund Committee because their fiduciary status is a matter of plan design that cannot serve as a basis for liability.  As discussed above, the Plan confers particular fiduciary responsibilities to the Fund Committee and the Plan Committee.  Therefore, any resolution of an alleged conflict of interest cannot be achieved without violating the Plan or amending its terms.  *See Hughes*, 525 U.S. at 444; *Flanigan*, 242 F.3d at 87-88.

*v. Green*, 133 F.3d 416, 422 (6th Cir. 1998) ("[N]ot only has Congress specifically recognized and approved of corporate managers serving as ESOP fiduciaries, but also this practice is quite prevalent in the corporate sector"); *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995) (ERISA "provides specifically that employers may appoint their own officers to administer ERISA plans even if the company is a 'party in interest'").[22]

Furthermore, as this Court has recognized, even if the Solutia Defendants had received compensation and bonuses in Solutia stock, such a fact would nevertheless be insufficient to establish any conflict of interest. *See*, *e.g.*, *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 479 (S.D.N.Y. 2005) (dismissing conflict of interest claim notwithstanding plaintiffs' allegation that "a significant percentage of corporate Director and Executive Officer compensation is in the form of stock grants or stock option grants"); *Pedraza*, 456 F. Supp. 2d at 1282 (rejecting argument that defendants' stock-based compensation created a conflict of interest); *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 987-88 (C.D. Cal. 2004) (dismissing conflict of interest claim based on allegations that a significant portion of defendants' compensation was in company stock; "Under this theory corporate defendants would always have a conflict of interest").

Accordingly, because Plaintiff fails to allege sufficient facts to establish an impermissible conflict of interest on the part of the Solutia Defendants, this claim should be dismissed.

### D.    Plaintiff's Claim that the Solutia Defendants Failed to Bring Suits Against Other Fiduciaries Should Be Dismissed

Plaintiff also asserts in Count I that the Solutia Defendants breached their fiduciary duties by "failing to bring, or investigating whether to bring, claims or suits against some or all Plan fiduciaries for the breaches of fiduciary duty with respect to Plan investments in Solutia Stock

---

[22] *See also CWA v. AT&T*, 40 F.3d 426, 433 (D.C. Cir. 1994) ("ERISA specifically contemplates that employers may act as the fiduciaries and administrators of employee pension plans"); *Bidwill v. Garvey*, 943 F.2d 498, 508 (4th Cir. 1991) ("ERISA explicitly permits" corporate officers and directors to serve as fiduciaries).

described above, either in Solutia's Chapter 11 bankruptcy proceeding or in district court." (Compl. ¶ 291(h).)  Because, as discussed above, no underlying breach occurred with respect to the Plan's investment in Solutia stock, there is no basis on which this claim can stand.  Even assuming *arguendo* that such a breach occurred, the Solutia Defendants had no fiduciary duty to bring suit against the Plan's fiduciaries.  *See, e.g.*, *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 80 (2d Cir. 1986) (holding trustees' "refusal to file a suit to recover contributions allegedly due does not constitute . . . a breach"); *Henderson v. Casciato-Northrup*, No. MO-00-CA-079, 2001 WL 681578, at *5 (W.D. Tex. Jan. 10, 2001) (noting that where participants have standing to sue for breach of fiduciary duty, "a fiduciary is not obligated to pursue a legal remedy for injuries suffered by the plan").  Accordingly, this claim should be dismissed.

## VIII.   PLAINTIFF'S MONITORING CLAIM (COUNT III) SHOULD BE DISMISSED

In Count III, Plaintiff contends that the Director Defendants "breached their fiduciary duties of loyalty and prudence by failing to adequately monitor the performance of the appointed fiduciaries [the Fund Committee and the Plan Committee] to prevent or stop the continuation of the fiduciary breaches . . . with respect to Plan investments in Solutia Stock."  (Compl. ¶ 302.) Further, Plaintiff alleges that the Director Defendants "fail[ed] to provide their appointed fiduciaries with accurate information that they knew or should have known would have apprised those fiduciaries of the Company's dire financial condition and the imprudence of continued investment in Solutia Stock."  (*Id.* ¶ 305.)  Plaintiff's allegations, however, are devoid of merit.

Plaintiff's monitoring claim fails because the Company, not the Board of Directors, had authority over the appointment of the Plan and Fund Committees.[23]  (2002 Plan, §§ 1.4, 13.1;

---

[23] A duty to monitor exists only to the extent that a fiduciary holds power to appoint and remove the other fiduciaries to be monitored.  *See* 29 C.F.R. § 2509.75-8 ("At reasonable intervals the performance of the trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure

1997 Plan, § 13.1.)  In addition, this claim also fails because there was no underlying breach.
*See supra* at Section VII.  As discussed above, the Plan's continued investment in Solutia Stock
was not a breach of fiduciary duty.  As such, any alleged failure to monitor or provide accurate
information to the monitored fiduciaries did not result in any fiduciary breach.  *See*, *e.g.*, *Smith*,
422 F. Supp. 2d at 1333 ("Plaintiff cannot maintain a claim of failure to monitor when those to
be monitored were acting prudently"); *In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005
U.S. Dist. LEXIS 9719, at \*19-20 (N.D. Cal. Mar. 30, 2005) (dismissing monitoring claim for
failure to sufficiently allege underlying breach of fiduciary duty); *In re Duke Energy ERISA
Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003) (dismissing monitoring claims where plaintiffs
failed to establish "an underlying breach of fiduciary duty cognizable under ERISA").

Furthermore, "the duty to monitor . . . is not breached without the monitoring party
having 'notice of possible misadventure by [the] appointees.'"  *Pedraza*, 456 F. Supp. 2d at 1278
(quoting *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1132 (N.D. Ind. 1991)).  Here, the
Complaint is wholly devoid of any allegation that the Solutia Defendants were on notice of any
breach by the other Plan fiduciaries, and thus Plaintiff's monitoring claim should be dismissed
on this ground.  *See id.* (dismissing monitoring claim where plaintiff did not allege "that the
Officer Defendants had notice of any appointee conduct that would warrant removal"); *Schied v.
Dynegy, Inc.*, 309 F. Supp. 2d 861, 904 (S.D. Tex. 2004) (dismissing monitoring claim where
plaintiff does not "allege that the corporate defendants had notice that any specific appointees
were incompetent or otherwise subject to replacement for cause").

Moreover, Plaintiff's monitoring claim also fails to the extent that it is based on the
Director Defendants' alleged failure to monitor the performance of the Plan Committee with

---

that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the
needs of the plan").

respect to the investment of Plan assets in Solutia stock.  As discussed in Section VII.A.1 *supra*, the Plan Committee did not have any responsibility and did not exercise any discretion over the investment of Plan assets in Solutia stock.  Thus, any claim that the Director Defendants failed to monitor the Plan Committee must be dismissed because the Plan Committee had no fiduciary responsibility for Plan investment.  *See Pedraza*, 456 F. Supp. 2d at 1278 ("The Benefits Committee had no role in determining investment choices.  This precludes Plaintiff's claim that the Officer Defendants failed to monitor the [Benefits] Committee Defendants properly, thereby causing the Plan to be overinvested in Coke stock").

Finally, Plaintiff's allegation that the Director Defendants breached their fiduciary duty by failing to provide information concerning the Company's financial status is unavailing, as a duty to monitor does not obligate a fiduciary to take any other particular action with respect to a plan other than to appoint, retain, or remove fiduciaries.  *See Indep. Ass'n of Publrs. Employees, Inc. v. Dow Jones & Co.*, 671 F. Supp. 1365, 1367 (S.D.N.Y. 1987) ("The only power that Dow Jones retains with respect to managing or administering the Plan is the authority to appoint, retain and remove members of the Advisory Committee . . . .  Therefore, Dow Jones' fiduciary obligations can extend only to those acts"); *Hull*, 2001 U.S. Dist. LEXIS 22343, at *20 ("[T]he Plan itself imposes no duties whatsoever on [the defendant] except to the extent he, as a member of the Board, may participate in the appointment or removal of Committee members").

## IX.    PLAINTIFF'S CO-FIDUCIARY LIABILITY CLAIM (COUNT IV) SHOULD BE DISMISSED

In Count IV, Plaintiff alleges generally that all Defendants breached their duties as co-fiduciaries under ERISA § 405(a), 29 U.S.C. § 1105(a), by "enabl[ing] their co-fiduciaries to commit violations of ERISA and, with knowledge of such breaches, fail[ing] to make reasonable efforts to remedy the breach."  (Compl. ¶ 310.)  The existence of co-fiduciary liability is

premised on the existence of an underlying breach of fiduciary duty.  *See* 29 U.S.C. § 1105(a)

("[A] fiduciary with respect to a plan shall be liable *for a breach of fiduciary responsibility by*

*another fiduciary* with respect to the same plan in the following circumstances . . . .") (emphasis

added).  Accordingly, because Plaintiff has failed to state any direct claim for breach of fiduciary

duty, his co-fiduciary liability claim is similarly without merit.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Solutia Defendants respectfully request that their Motion

to Dismiss Plaintiff's Class Action Complaint be granted.

Dated:  September 17, 2007                      Respectfully submitted,

/s/ Karen M. Wahle
Karen M. Wahle (KW 0716)
Robert M. Stern (RS 3005)
Khuong G. Phan (KP 7014)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006-4001
T: (202) 383-5300
F: (202) 383-5414

*Attorneys for Defendants Metz, Feldman,*
*Nelling, Bevington, Stemme, Ast, Employee*
*Benefits Plan Committee, Pension and Savings*
*Fund Committee, Hunter, Clausen, Potter,*
*Miller, Hatfield, Mulcahy, Narodick, Donovan,*
*Jenkins, Ruckelshaus, Slaughter, Lochner, and*
*Blakely*

**CERTIFICATE OF SERVICE**

I certify that on September 17, 2007, I electronically filed the foregoing Memorandum of Law in Support of the Solutia Defendants' Motion to Dismiss Plaintiff's Class Action Complaint and Declaration of Jennipher Politte with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF.


                                    /s/ Karen M. Wahle

                                    Karen M. Wahle