# Exhibit A
# Part 1 of 2

## ANNEX A
## TO
## SOLUTIA INC. SAVINGS AND INVESTMENT PLAN

This Annex A to Solutia Inc. Savings and Investment Plan ("Annex A") is the document identified as Annex A in the document entitled "Solutia Inc. Savings and Investment Plan" (which document, as the provisions of same are applicable to this Annex A, is referred to in this Annex A as the "Wraparound"), into which this Annex A is incorporated by reference.  For purposes of these prefatory provisions only, terms used with initial capital letters, which terms are not specifically defined in these prefatory provisions, shall be given the meanings assigned to such terms in the Wraparound.

This Annex A, together with the Wraparound, sets forth the terms of the Plan as it applies to those persons accruing or entitled to benefits under the Plan by virtue of employment with Employers, excluding any person accruing or entitled to benefits under the Plan who is a member of a unit covered by a collective bargaining agreement with an employer that does not provide for participation in Annex A (an "Annex A Participant").  The employers that adopt the Plan with benefits to be provided under this Annex A, will be referred to hereinafter in this Annex A as the "Employers", with each of them being referred to hereinafter in this Annex A as an "Employer".

Nothing in this Annex A will be construed to affect or modify any of the terms of Annex B. Hereinafter in this Annex A, the provisions of this Annex A, together with those of the Wraparound, are referred to as the "Plan".

April 7, 1998

**Annex A**
**TO**
SOLUTIA INC. SAVINGS AND INVESTMENT PLAN

**(Effective September 1, 1997)**

214426.5

April 7, 1998

# TABLE OF CONTENTS

Page

SECTION 1    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
       1.1    The Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
       1.2    Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
       1.3    Plan Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
       1.4    Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
       1.5    Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       1.6    Accounting Dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       1.7    Plan Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       1.8    Employers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       1.9    Use of Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       1.10   Supplements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
       1.11   Fiscal Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

SECTION 2    Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
       2.1    Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
       2.2    Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
       2.3    Notice of Eligibility, Election of Participation . . . . . . . . . . . . . . .  6
       2.4    Change in Participant's Status . . . . . . . . . . . . . . . . . . . . . .  6
       2.5    Domestic Transferred Employees . . . . . . . . . . . . . . . . . . . .  7
       2.6    Restricted Participation . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

SECTION 3    Form of Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
       3.1    Participant Accounts . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
       3.2    Employer Matching Contribution . . . . . . . . . . . . . . . . . . . .  8
       3.3    Variation of Contributions . . . . . . . . . . . . . . . . . . . . . . . . .  9
       3.4    Discontinuance and Resumption of Contributions . . . . . . . . . .  9
       3.5    Direct Rollover Contributions . . . . . . . . . . . . . . . . . . . . . .  9

SECTION 4    Before-Tax Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . 10
       4.1    Authorization of Before-Tax Contributions . . . . . . . . . . . . . . 10
       4.2    Matched Before-Tax Contributions . . . . . . . . . . . . . . . . . . . 11
       4.3    Supplemental Before-Tax Contributions . . . . . . . . . . . . . . . . 11
       4.4    Limitation on Before-Tax Contributions . . . . . . . . . . . . . . . . 11
       4.5    Eligible Earnings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
       4.6    Deduction of Participant Contributions . . . . . . . . . . . . . . . . . 13
       4.7    Cancellation of Before-Tax Contributions . . . . . . . . . . . . . . . 13
       4.8    Limitation on Before-Tax Contributions . . . . . . . . . . . . . . . . 13

SECTION 5    After-Tax Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       5.1    Authorization of After-Tax Contributions . . . . . . . . . . . . . . . 14

| | 5.2 | Matched After-Tax Contributions | 14 |
|---|---|---|---|
| | 5.3 | Supplemental After-Tax Contributions | 15 |
| | 5.4 | Limitation on After-Tax Contributions | 15 |
| | 5.5 | Deduction of Participant After-Tax Contributions | 15 |
| | 5.6 | Cessation of After-Tax Contributions | 15 |
| SECTION 6 | | Employer Contributions | 16 |
| | 6.1 | Employer Matching Contributions | 16 |
| | 6.2 | Correcting Contribution | 17 |
| SECTION 7 | | Limitations on Contributions | 17 |
| | 7.1 | Limitation on Matching Contributions | 17 |
| | 7.2 | Limitations on Contributions | 17 |
| | 7.3 | Definitions | 19 |
| | | (a) Annual Addition | 19 |
| | | (b) Extended Group | 19 |
| | | (c) Defined Contribution Plans | 20 |
| | | (d) Compensation | 20 |
| | | (e) Contribution Percentage | 20 |
| | | (f) Contribution Percentage Amounts | 20 |
| | | (g) Excess Aggregate Contributions | 21 |
| | | (h) Excess Before-Tax Contributions | 21 |
| | | (i) Highly Compensated Employee | 21 |
| | | (j) Qualified Matching Contributions | 22 |
| | | (k) Qualified Non-elective Contributions | 22 |
| | 7.4 | Actual Deferral Percentage Test | 22 |
| | | (a) Distribution Method | 22 |
| | | (b) Additional Contributions Method. | 23 |
| | | (c) Recharacterization Method. | 23 |
| | 7.5 | Actual Contribution Percentage Test | 24 |
| | | (a) Distribution Method | 24 |
| | | (b) Additional Contributions Method | 25 |
| SECTION 8 | | Accounting | 25 |
| | 8.1 | Participant Accounts | 25 |
| | | (a) Matched Before-Tax Account | 25 |
| | | (b) Supplemental Before-Tax Account | 26 |
| | | (c) Matched After-Tax Account | 26 |
| | | (d) Supplemental After-Tax Account | 26 |
| | | (e) Direct Rollover Account | 26 |
| | 8.2 | Employer Matching Account | 27 |
| | 8.3 | Employee Stock Account | 27 |
| | 8.4 | Other Accounts | 27 |
| | 8.5 | Employer Contributions | 27 |

| | | |
|---|---|---|
| 8.6 | Adjustment of Participants' Accounts | 27 |
| 8.7 | Charging Payments and Distributions | 28 |
| 8.8 | Allocation of Employer Matching Contributions and Forfeitures | 28 |
| 8.9 | Crediting After-Tax Contributions | 29 |
| 8.10 | Crediting Before-Tax Contributions | 29 |
| 8.11 | Allocations Pursuant to Qualified Domestic Relations Order | 30 |
| | | |
| SECTION 9 | The Trust Fund, the Investment Funds and the Loan Fund | 30 |
| 9.1 | The Trust Fund | 30 |
| 9.2 | The Investment Funds | 30 |
| 9.3 | The Loan Fund | 32 |
| 9.4 | Investment Elections | 32 |
| 9.5 | (a) Investment of Employer Contributions | 33 |
| | (b) Diversification Election | 33 |
| | (c) Employer Matching Account Re-Investment Election | 35 |
| 9.6 | Voting Rights. | 36 |
| 9.7 | Transfers Between Investment Funds and/or Pre-Mixed Portfolios | 37 |
| 9.8 | Plan Expenses | 37 |
| | (a) Administrative Expenses | 38 |
| | (b) Investment Fund Expenses | 38 |
| | | |
| SECTION 10 | Payment of Account Balances | 38 |
| 10.1 | Retirement, Disability or Death | 38 |
| 10.2 | Resignation or Dismissal | 39 |
| 10.3 | Forfeitures | 40 |
| 10.4 | Timing of Distributions | 41 |
| 10.5 | Distribution Options | 43 |
| | (a) Lump Sum Distribution | 43 |
| | (b) Installment Payout Option | 43 |
| | (c) Common Stock of Corporation | 44 |
| | (d) Common Stock of Monsanto Company | 45 |
| | (e) Partial Distribution. | 46 |
| | (f) Notice Regarding Distribution Options | 46 |
| 10.6 | Designation of Beneficiaries | 46 |
| 10.7 | Distributions Upon Termination of Employment Due To Divestiture | 48 |
| | | |
| SECTION 11 | Withdrawals | 49 |
| 11.1 | Withdrawals by Participants with Five or More Years of Participation | 49 |
| 11.2 | Withdrawals by Participants with Less than Five Years of Participation | 49 |
| 11.3 | Withdrawals and Distributions from Before-Tax | |

214426.5

April 7, 1998

Accounts and Direct Rollover Accounts Prohibited . . . . . . . . . . . 50
11.4    Age 59-1/2 Withdrawals . . . . . . . . . . . . . . . . . . . . . . . 50
11.5    Charging and Allocations of Withdrawals. . . . . . . . . . . . . . . . 50

SECTION 12    Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
12.1    Loans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
12.2    Loan Administration . . . . . . . . . . . . . . . . . . . . . . . . 50
12.3    Loan Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . 51
12.4    Loan Application . . . . . . . . . . . . . . . . . . . . . . . . . 52
12.5    Terms and Conditions of Loans . . . . . . . . . . . . . . . . . . . 52
12.6    Maximum Loan . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
12.7    Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
12.8    Term of Loan and Repayment . . . . . . . . . . . . . . . . . . . 53
12.9    Source of Loan Funds . . . . . . . . . . . . . . . . . . . . . . . 54
12.10   Accounting for Loans . . . . . . . . . . . . . . . . . . . . . . . 54
12.11   Withdrawals and Distributions While Loan
        Balance is Outstanding . . . . . . . . . . . . . . . . . . . . . . 55
12.12   Unpaid Balances at End of Sixty-Month Period . . . . . . . . . . 56
12.13   Hardship Withdrawal in Bankruptcy . . . . . . . . . . . . . . . . 56
12.14   Failure to Repay Loans . . . . . . . . . . . . . . . . . . . . . . 57
12.15   Loans to Certain Terminated or Retired Participants . . . . . . . . . . 57

SECTION 13    The Plan Committee . . . . . . . . . . . . . . . . . . . . . . 57
13.1    Membership . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
13.2    Plan Committee's General Powers, Rights and Duties . . . . . . . . 57
13.3    Manner of Action . . . . . . . . . . . . . . . . . . . . . . . . . 58
13.4    Information Required by Plan Committee . . . . . . . . . . . . . . 59
13.5    Plan Committee Decision Final . . . . . . . . . . . . . . . . . . . 59
13.6    Review of Benefit Determinations . . . . . . . . . . . . . . . . . . 60
13.7    Delegation of Authority . . . . . . . . . . . . . . . . . . . . . . 60
13.8    Uniform Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

SECTION 14    Relating to the Employers . . . . . . . . . . . . . . . . . . . 60
14.1    Action by Employers . . . . . . . . . . . . . . . . . . . . . . . . 60
14.2    Additional Employers . . . . . . . . . . . . . . . . . . . . . . . 60
14.3    Restrictions as to Reversion of Trust Assets to Employers . . . . . . . . 61

SECTION 15    General Provisions . . . . . . . . . . . . . . . . . . . . . . . 61
15.1    Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
15.2    Waiver of Notice . . . . . . . . . . . . . . . . . . . . . . . . . 61
15.3    Absence of Guaranty . . . . . . . . . . . . . . . . . . . . . . . 61
15.4    Employment Rights . . . . . . . . . . . . . . . . . . . . . . . . 61
15.5    Interests Not Transferable . . . . . . . . . . . . . . . . . . . . . 62
15.6    Facility of Payment . . . . . . . . . . . . . . . . . . . . . . . . 62

| | | |
|---|---|---|
| 15.7 | Gender and Number | 62 |
| 15.8 | Evidence | 62 |
| 15.9 | Indemnity | 62 |
| 15.10 | Controlling State Law | 63 |
| 15.11 | Severability | 63 |
| 15.12 | Headings | 63 |
| 15.13 | Successors | 63 |
| 15.14 | No Reductions for Social Security Increases | 63 |
| 15.15 | Military Service | 63 |
| | | |
| SECTION 16 | Amendment, Termination or Plan Merger | 64 |
| 16.1 | Amendment | 64 |
| 16.2 | Termination | 64 |
| 16.3 | Plan Merger or Consolidation | 65 |
| 16.4 | Notice of Amendment, Termination or Plan Merger | 65 |
| 16.5 | Vesting and Distribution on Termination | 65 |
| 16.6 | Transfer of Assets and Liabilities in Acquisitions and Divestitures | 66 |
| | | |
| SECTION 17 | Definitions | 67 |
| 17.1 | AES Participant | 67 |
| 17.2 | Affiliate | 67 |
| 17.3 | Break in Service | 67 |
| 17.4 | Code | 68 |
| 17.5 | Disability or Disabled | 68 |
| 17.6 | Distribution Date | 68 |
| 17.7 | Employment Commencement Date | 68 |
| 17.8 | ERISA | 68 |
| 17.9 | Flexsys Participant | 68 |
| 17.10 | Former Monsanto Participant | 68 |
| 17.11 | Layoff | 68 |
| 17.12 | Maternity or Paternity Absence | 68 |
| 17.13 | Normal Retirement Age | 69 |
| 17.14 | Parent Group | 69 |
| 17.15 | Pre-Mixed Portfolio | 69 |
| 17.16 | Reemployment Commencement Date | 69 |
| 17.17 | Separation Date | 69 |
| 17.18 | Subsidiary | 70 |
| | | |
| SECTION 18 | Top-Heavy Provisions | 70 |
| 18.1 | Determination of Top-Heavy | 70 |
| 18.2 | Minimum Allocations | 71 |
| 18.3 | Minimum Vesting | 71 |
| 18.4 | Impact on Maximum Benefits | 71 |
| 18.5 | Repeal, Modification or Postponement of Top-Heavy Provisions | 71 |

April 7, 1998

| 18.6 | Non-Key Employee | 72 |
| 18.7 | Compensation | 72 |
| SECTION 19 | Employee Stock Ownership Plan Provisions | 72 |
| 19.1 | Employee Stock Ownership Provisions of the Plan | 72 |
| 19.2 | Definitions | 73 |
| (a) | Allocated Dividends | 73 |
| (b) | Disqualified Person | 73 |
| (c) | Employer Contributions | 73 |
| (d) | ESOP Interim Account | 73 |
| (e) | ESOP Loan | 73 |
| (f) | ESOP Payment Account | 73 |
| (g) | ESOP Suspense Account | 73 |
| (h) | Financed Shares | 73 |
| (i) | Trust Agreement | 74 |
| (j) | Trustee | 74 |
| (k) | Unallocated Dividends | 74 |
| 19.3 | ESOP Loan | 74 |
| (a) | Authority | 74 |
| (b) | Conditions of Loans | 74 |
| (c) | Use of Loan Proceeds | 75 |
| (d) | ESOP Suspense Account | 75 |
| (e) | Liability and Collateral for Loan | 75 |
| 19.4 | Repayment of Loan; ESOP Payment Account | 76 |
| (a) | Payments Generally | 76 |
| (b) | Default Provision | 77 |
| (c) | Sale of Employer Stock in the Suspense Account | 77 |
| (d) | Excess in Suspense Account | 77 |
| (e) | Refinancing | 77 |
| (f) | Investment of Assets Held in ESOP Payment Account | 77 |
| 19.5 | Release from Suspense Account and Allocation Among Participants' Accounts | 78 |
| (a) | Annual Release from Suspense Account | 78 |
| (b) | Allocation of Released Shares | 79 |
| 19.6 | Proceeds of ESOP Loans | 81 |
| 19.7 | Acquisition and Disposition of Common Stock of the Corporation | 82 |
| (a) | General | 82 |
| (b) | Transaction with Disqualified Person | 82 |
| (c) | Expenses | 82 |
| 19.8 | Employer Contributions to Retire Debt | 82 |
| 19.9 | Put Option | 83 |
| (a) | Qualified Holder | 83 |
| (b) | Initial Term | 83 |
| (c) | Subsequent Term | 83 |

214426.5

April 7, 1998

| | | | |
|---|---|---|---|
| (d) | Trustee's Purchase Rights. | | 84 |
| (e) | Exception to Term Limits | | 84 |
| (f) | Effect of Code and Regulations | | 84 |
| (g) | Exercise | | 84 |
| (h) | Survival of Put Option Right | | 84 |
| 19.10 | Valuation | | 84 |
| 19.11 | Forfeiture Rule | | 84 |
| 19.12 | Dividends Paid On Common Stock of the Corporation Other Than Financed Shares | | 85 |
| 19.13 | Changes in Allocation and Forfeiture Formulae | | 85 |
| 19.14 | Status of Delegates | | 85 |
| | | | |
| SECTION 20 | Directed Rollovers | | 85 |
| 20.1 | Directed Rollovers | | 85 |
| 20.2 | Eligible Rollover Distribution | | 86 |
| 20.3 | Eligible Retirement Plan | | 86 |
| 20.4 | Distributee | | 86 |
| 20.5 | Direct Rollover | | 86 |

**Annex A**
**TO**
**SOLUTIA INC. SAVINGS AND INVESTMENT PLAN**

SECTION 1
Introduction

1.1 The Plan. Effective as of September 1, 1997, Solutia Inc. (the "Corporation") hereby establishes the SOLUTIA INC. SAVINGS AND INVESTMENT PLAN (the "Plan"). In connection with the distribution of the Corporation's common stock by Monsanto Company, participants' accounts under the Monsanto Savings and Investment Plan (the "Monsanto Plan") were transferred to this Plan. Pursuant to such transfer, a portion of the assets of the Monsanto Plan became assets of this Plan as of September 1, 1997 and shall be held in the Trust, and the Plan assumed a portion of the liabilities of the Monsanto Plan as of September 1, 1997.

1.2 Purpose. The Plan is maintained by the Employers to provide savings opportunities and supplemental benefits for eligible employees of the Employers. The Plan is intended to be a profit sharing plan qualified under Sections 401(a) and 401(k) of the Code. The Employee Stock Ownership Plan ("ESOP") component of the Plan, as set forth in Section 19, is intended to be a stock bonus plan that constitutes an employee stock ownership plan qualified under Section 4975 of the Code and Section 407(d)(6) of ERISA and is maintained to provide eligible employees with an opportunity to acquire and hold long-term investment and ownership interests in the Corporation.

1.3 Plan Administration. The Plan is administered by a committee known as the Employee Benefits Plans Committee (the "Plan Committee") appointed by the Corporation. The Plan Committee shall constitute the Named Fiduciary under the Plan for the purpose of managing and administering the Plan.

1.4 Trust Agreement. The Corporation shall constitute the Named Fiduciary under the Plan with the power and authority on its own behalf or through its agents to manage and control the assets of the Trust Fund (as defined in Section 9.1 below) including, in addition to the powers and authority not specifically granted to the Corporation by the Trust Agreement (as defined below), all powers and authority necessary or appropriate to the discharge of its duties as such Named Fiduciary. The funds accumulated under this Plan are held and/or invested by one or more corporate trustees (the "Trustee") appointed by the Corporation or by such Trustee and one or

1

more insurance companies (the "Insurance Company") or one or more investment managers (the "Investment Manager") selected by the Corporation. The Trustee acts in accordance with one or more Trust Agreements (the "Trust Agreement") which may, but need not, provide for the appointment of an Investment Manager to make investments of this Trust Fund, and which implement and form a part of this Plan.

1.5     Effective Date. The Effective Date of this Annex A to the Plan is September 1, 1997.

1.6     Accounting Dates. A "Regular Accounting Date" is each business day during which the New York Stock Exchange is open and during which this Plan is in effect. A "Special Accounting Date" is any date so designated by the Plan Committee and any Special Accounting Date occurring under Section 16.5. The term "Accounting Date" includes both a Regular Accounting Date and a Special Accounting Date.

1.7     Plan Year. The Plan is administered on the basis of the calendar year (the "Plan Year"). For 1997, there shall be a short Plan Year beginning on September 1, 1997 and ending on December 31, 1997.

1.8     Employers. The Corporation shall maintain this Plan for the benefit of its employees and the employees of the adopting Affiliates and Subsidiaries. With the approval of the Corporation, any other Affiliate or Subsidiary of the Corporation may adopt this Plan on or after the Effective Date in accordance with the provisions of Section 14.2. The Corporation, Affiliates and Subsidiaries which adopt the Plan are collectively referred to as the "Employers" and individually as the "Employer."

1.9     Use of Terms. Certain terms, as used in this Plan, are defined in Section 17 or elsewhere in the Plan and where so used shall have the meanings so assigned to them.

1.10    Supplements. The succeeding provisions of this Annex A to the Plan may be modified by Supplements. Each such Supplement will specify a group of employees or other persons to which it applies and will supersede the provisions of this Plan to the extent necessary to eliminate any inconsistencies between this Plan and such Supplement.

1.11    Fiscal Year. The term "Fiscal Year" as applied to any Employer means the taxable year of that Employer for federal income tax purposes.

214426.5                                          2                                April 7, 1998

## SECTION 2
### Participation

2.1    Eligibility.  Each Former Monsanto Participant who was a participant in Annex A to the Monsanto Plan on the day before the Effective Date will participate in the Plan as in effect on and after the Effective Date and will participate under this Annex A. Each other employee of an Employer will be eligible to join the Plan and become a participant under this Annex A (in the manner described in Section 2.3) on the date when he meets all of the following requirements:

(a)    The employee is not then contributing to any other thrift and savings plan, profit sharing plan or cash or deferred plan (under Section 401(k) of the Code) maintained by an Employer, Affiliate or Subsidiary nor are any of the Employers, Affiliates or Subsidiaries then contributing to any other non-governmental thrift and savings plan, profit sharing plan or cash or deferred plan (under Section 401(k) of the Code) on such employee's behalf; and

(b)    He is a member of a group of employees to which Annex A of the Plan has been and continues to be extended by his Employer or by agreement.

If an employee does not elect to join the Plan and become a participant as of the first date on which he is eligible to do so, he may join the Plan and become a participant as soon as administratively feasible after he complies with the requirements of Section 2.3.

Notwithstanding the preceding paragraphs, a participant who terminates employment and who is reemployed by an Employer as a member of a group of employees to whom Annex A of the Plan has been and continues to be extended will be eligible to join the Plan and become a participant therein (in the manner described in Section 2.3) on the date he is reemployed by an Employer.

For all purposes of this Plan, a Leased Employee (as defined in Section 414(n)(2) of the Code) shall not be considered to be an employee of an Employer or an Affiliate; provided, however, that if a Leased Employee becomes a common law employee of an Employer or an Affiliate, service while a Leased Employee shall only be credited as required by Section 414(n) of the Code.

April 7, 1998

214426.5                                      3

2.2    <u>Service</u>.  In determining Years of Service, the following rules shall apply:

(a)    A participant shall be credited with a "<u>Year of Service</u>" for each twelve months in (i) the period beginning on the first day of the month containing his Employment Commencement Date and ending on the first day of the month on or after his Separation Date, (ii) any Break in Service that does not exceed twelve months, (iii) the period beginning on the first day of the month containing the participant's Reemployment Commencement Date, if any, and ending on the first day of the month on or after his subsequent Separation Date and (iv) any months of Service under paragraph (b) hereof.

(b)    A Former Monsanto Participant shall be credited with Service hereunder for his Service under the Monsanto Plan on the day before the Effective Date including each Year of Service and any partial years of service under such plan.

(c)    An "<u>Hour of Service</u>" means each hour on or after the Effective Date for which an employee is directly or indirectly compensated by, or entitled to receive compensation from, an Employer or an Affiliate, including hours up to 501 hours in any Plan Year for any period during which he receives compensation without rendering services such as paid holidays, vacations, sick leave, disability leave (other than on account of pregnancy), layoff, jury duty, or leave of absence, and including Hours of Service required to be taken into account to satisfy federal military service laws or regulations or to satisfy any other federal laws.  For purposes of determining the number of Hours of Service to be credited to an employee, "compensation" shall include any back pay, irrespective of mitigation of damages, either awarded to the employee or agreed to by an Employer or an Affiliate.

For a Former Monsanto Participant, Hour of Service shall include such participant's Hours of Service under the Monsanto Plan on the day before the Effective Date.

Notwithstanding the foregoing, an employee who is a Temporary Full-Time Employee, a Cooperative Employee or a Summer Intern shall be credited with 95 Hours of Service for each semi-monthly payroll period in which such

employee is directly or indirectly compensated by an Employer or Affiliate for the performance of duties.

The computation of Hours of Service and the periods to which Hours of Service are to be credited shall be determined in accordance with Department of Labor Regulations Sections 2530.200b-2(b), (c) and (f).

(d)    If an employee's employment with all of the Employers and Affiliates terminates and he is later reemployed without incurring a one year Break in Service, his Years of Service both before his employment termination and after his reemployment shall be aggregated for purposes of this Plan.

(e)    If an employee incurs five or more consecutive one year Breaks in Service ("Five Year Break in Service") and is subsequently reemployed by an Employer or an Affiliate, his Years of Service after such Five Year Break in Service shall not be taken into account when determining his Vesting Percentage (determined in accordance with Section 10.2 or any applicable Supplement) applicable to the portion of his Employer Matching Account attributable to his employment prior to such Five Year Break in Service. However, such an employee's Years of Service before and after his Five Year Break in Service shall be aggregated for purposes of determining his Vesting Percentage applicable to the portion of his Employer Matching Account attributable to his employment subsequent to such Five Year Break in Service.

(f)    The termination of an employee's employment with one Employer will not interrupt the continuity of his employment if, concurrently with or immediately after such termination, he is employed by one or more Employers or Affiliates.

(g)    If and to the extent the Corporation so provides, the last continuous period of an employee's service with a Predecessor Company (as defined below) will be considered as service with the Employers if such employee becomes employed by one or more of the Employers.  For purposes of this subparagraph, a "Predecessor Company" means any corporation or other entity the stock, assets or business of which is acquired by an Employer, whether by merger, consolidation, purchase of assets or otherwise, and any predecessor thereto designated by the Corporation.

214426.5

5

April 7, 1998

(h)   A period of concurrent service with two or more Employers and/or Affiliates will be considered as employment with only one of them during that period.

2.3   Notice of Eligibility, Election of Participation.   The Plan Committee will notify an employee of the circumstances under which he will be eligible to participate in the Plan.   An eligible employee may become a participant in the Plan as of any pay period by enrolling in the Plan in such manner as the Plan Committee may prescribe.

2.4   Change in Participant's Status.   If a participant is transferred to an Affiliate or a Subsidiary which is not an Employer under the Plan or to a group of employees to whom the Plan has not been extended, he shall not be entitled to make After-Tax Contributions or to have Before-Tax Contributions made on his behalf.   In addition, such a participant shall retain his interests in his Accounts.   His Accounts shall continue to be adjusted to reflect earnings, gains and losses, and he shall have the right to receive withdrawals from his Accounts as provided in Section 11.

If a participant is transferred to a Subsidiary which is not an Employer, and if such transfer constitutes a separation from service for purposes of Sections 401 and 402 of the Code, the participant shall be considered for purposes of this Plan to be a participant who has terminated employment and is entitled to receive payment of his Accounts under Section 10.   If a participant is transferred to a Subsidiary which is not an Employer and such transfer does not constitute a separation from service for purposes of Sections 401 and 402 of the Code, the participant shall be treated as if the participant were a participant transferred to an Affiliate which is not an Employer. A participant who was employed at the Rubber Chemicals and Rubber Instruments and Equipment business unit and who accepts employment with Flexsys America LP (a "Flexsys Participant") shall be considered under this paragraph to be a participant who is transferred to a Subsidiary which is not an Employer where such transfer does not constitute a separation from service for purposes of Section 401 and 402 of the Code.   The terms and conditions of a Flexsys Participant's participation in the Plan shall be governed by this paragraph as if that participant were a participant transferred to an Affiliate which is not an Employer.

If an Employer which is an Affiliate or a Subsidiary ceases to be controlled by the Corporation within the meaning of Sections 414(b) and 1563(a) of the Code and ceases to be an Employer under the Plan, a participant who is employed by such Affiliate or Subsidiary shall be considered for purposes of this Plan to be a participant

who has terminated employment and shall be entitled to receive payment of his Accounts under Section 10.

2.5  Domestic Transferred Employees.  Any employee of a member of the Parent Group who is transferred by a member of the Parent Group to a domestic United States Affiliate which has not adopted the Plan ("Domestic Transferred Employees") shall be eligible to continue as a participant hereunder if the Affiliate has adopted the Plan for and on behalf of such of its Domestic Transferred Employees or if such Affiliate adopts the Plan for and on behalf of certain specified groups of Domestic Transferred Employees.

To qualify as a Domestic Transferred Employee, an employee of a member of the Parent Group must satisfy the following requirements:

(a)  He must have been transferred to an Affiliate;

(b)  He must have been employed by a member of the Parent Group immediately prior to his transfer to an Affiliate;

(c)  He must have been designated in writing as a Domestic Transferred Employee by the Plan Committee in accordance with procedures established by the Plan Committee; and

(d)  He does not participate in any defined contribution plan sponsored by the Affiliate.

2.6  Restricted Participation.  A participant shall be a participant under the Plan until his entire vested Accounts are distributed.  A participant who has terminated employment with all Employers, Affiliates and Subsidiaries shall not receive a share of Employer Matching Contributions for any period beginning after his termination of employment nor, except as provided in Section 3.5, shall any other deposit or transfer of monies be accepted for his account after his termination of employment.

## SECTION 3
### Form of Participation

3.1   Participant Accounts.  Each participant who is employed by an Employer during the Plan Year shall have the right to:

   (a)   Make Matched Before-Tax Contributions and Supplemental Before-Tax Contributions by indicating the percentage (in whole percentages) of his Eligible Earnings by which his salary or wages shall be reduced but not in excess of sixteen percent (or such other percentage specified in the applicable Supplement) of his Eligible Earnings and authorizing the Employer to contribute such amount on behalf of the participant to his Before-Tax Accounts; or

   (b)   Make Matched After-Tax Contributions and Supplemental After-Tax Contributions by indicating the percentage (in whole percentages) of his Eligible Earnings to be contributed to the Plan but not in excess of sixteen percent (or such other percentage specified in the applicable Supplement) of his Eligible Earnings and credited to his After-Tax Accounts; or

   (c)   Make both Before-Tax and After-Tax Contributions but in the aggregate not in excess of sixteen percent (or such other percentage specified in the applicable Supplement) of his Eligible Earnings; or

   (d)   Make a Direct Rollover Contribution according to Section 3.5, which shall be credited to his Direct Rollover Account.

3.2   Employer Matching Contribution.  Each Employer shall make contributions, as specified herein, based on the contributions made by the Employer on behalf of the participant to the Matched Before-Tax Account or by the participant to the Matched After-Tax Account.  Employer contributions shall first be used to match the Matched After-Tax Contributions.  Notwithstanding the foregoing, a participant who is a Per Diem Employee, a Temporary Part-Time Employee, a Retiree Resource Corps Employee, a Temporary Full-Time Employee, a Cooperative Employee or a Summer Intern shall receive an Employer Matching Contribution for a Plan Year only if such participant is credited with 1,000 Hours of Service during the Plan Year.

3.3    <u>Variation of Contributions</u>.  A participant may change his Before-Tax Contributions and After-Tax Contributions rate (but not retroactively) within the limits specified in this Plan (or in the applicable Supplement) and in the manner prescribed by the Plan Committee with the change to be effective as of the first day of the first pay period as soon as administratively feasible following the participant's election.

3.4    <u>Discontinuance and Resumption of Contributions</u>. Effective as of the first day of the first pay period as soon as administratively feasible following the participant's election, a participant may:

(a)    Elect to discontinue making After-Tax Contributions in accordance with Sections 5.2 and 5.3 and/or have his Employer discontinue making Before-Tax Contributions on his behalf in accordance with Section 4.2 or 4.3; or

(b)    Elect to resume making After-Tax Contributions and/or have his Employer resume making Before-Tax Contributions on his behalf.

Such an election must be made by the participant in a manner prescribed by the Plan Committee.  Any such discontinuance shall apply to both the participant's After-Tax Contributions and Before-Tax Contributions made on his behalf by an Employer and cannot apply solely to either the participant's After-Tax Contributions or Before-Tax Contributions made on his behalf.   Any such resumption may apply to the participant's After-Tax Contributions and/or to Before-Tax Contributions made on his behalf by an Employer.  A resumption of contributions may only be made if the participant then meets the eligibility requirements of Section 2.  The participant's investment elections and his beneficiary designation in effect at the time of discontinuance shall remain the same unless the participant elects to change them as provided in the Plan.  A participant may elect to change his investment election under Section 9 during any discontinuance.

3.5    <u>Direct Rollover Contributions</u>.  The Plan Committee may direct the Trustee to accept a Direct Rollover Contribution from or on behalf of:

(a)    a participant who is employed by an Employer; or

(b)    a participant who terminates employment for any reason with all Employers, Affiliates and Subsidiaries with an entitlement to receive an Employer pension

benefit (as determined under the terms of the pension plan in which the participant participates) and who does not receive payment of his benefits under the Plan prior to the rollover; or

(c)  an employee who is eligible to participate in the Plan but who has not elected to start making contributions to the Plan.

For this purpose, a "Direct Rollover Contribution" shall mean any cash, the receipt of which would constitute a direct rollover of an eligible rollover distribution from a plan that is qualified under Section 401(a) of the Code.  A Direct Rollover Contribution must meet the requirements of Section 401(a)(31) of the Code and the regulations thereunder.  Notwithstanding the preceding, with respect to participants described in subparagraph (a) or (c) above, the Trustee shall not accept a Direct Rollover Contribution from a qualified plan maintained by an Employer, an Affiliate or a Subsidiary.  In the case of a participant described in subparagraph (b) above, the Trustee shall only accept a Direct Rollover Contribution from a plan qualified under Section 401(a) of the Code that is maintained by an Employer, an Affiliate or a Subsidiary.  Such amounts shall at all times be fully vested and shall be credited to the participant's Direct Rollover Account.  Such Direct Rollover Contribution will be segregated from the other assets of the Plan until the week following the date the contribution is accepted, and thereafter will share in the allocation of earnings and losses under Section 8.6.  Each participant making a Direct Rollover Contribution to the Plan may elect (in whole percentages) to have such contribution invested in one or more of the Investment Funds and/or Pre-Mixed Portfolios.  If a participant fails to make such an election, such amounts shall be invested in the Fixed Income Fund. A Direct Rollover Contribution is not a participant contribution for purposes of Sections 4.8 or 7.

The Trustee shall not accept a Direct Rollover Contribution from (a) an alternate payee or (b) any beneficiary (including a surviving spouse) of a participant.

## SECTION 4
## Before-Tax Contributions

4.1    Authorization of Before-Tax Contributions.  The participant may authorize, effective as of the first day of the first pay period as soon as administratively feasible following such authorization, that the participant's Eligible Earnings shall be reduced on a

before-tax basis during such pay period in an amount up to sixteen percent (in whole percentages) of his Eligible Earnings for that pay period (or such other percentage as are set forth in the applicable Supplement hereto) less the percentage of his Eligible Earnings contributed as After-Tax Contributions, if any, on his behalf by an Employer. This amount is contributed by the Employer on behalf of the participant to the participant's Before-Tax Accounts. Such authorization must be made in the manner prescribed by the Plan Committee. On the Effective Date, a Former Monsanto Participant's Before-Tax Contribution election shall be the same as his "before-tax contribution" election under the Monsanto Plan as of the day before the Effective Date.

4.2    Matched Before-Tax Contributions. The amount of Before-Tax Contributions elected by the participant not in excess of seven percent (in whole percentages) of the participant's Eligible Earnings (or such other percentage as specified in the applicable Supplement) ("Matched Before-Tax Contributions") less the percentage of his Eligible Earnings contributed as Matched After-Tax Contributions, if any, on his behalf by an Employer shall then be contributed by the Employer on behalf of the participant to the participant's Matched Before-Tax Account. Notwithstanding the foregoing, a participant who is a Per Diem Employee, a Temporary Part-Time Employee, a Cooperative Employee, a Retiree Resource Corps Employee or a Summer Intern may not make Matched Before-Tax Contributions for a Plan Year unless such participant is credited with 1,000 Hours of Service during such year.

4.3    Supplemental Before-Tax Contributions. Except as otherwise provided, if an Employer makes Matched Before-Tax Contributions on behalf of a participant in accordance with Section 4.2 for any pay period which equal the percentage limit on such Matched Before-Tax Contributions for any pay period under that Section, Before-Tax Contributions elected by the participant in excess of the Matched Before-Tax Contribution limits ("Supplemental Before-Tax Contributions") shall then be contributed by the Employer on behalf of the participant to the participant's Supplemental Before-Tax Account.

4.4    Limitation on Before-Tax Contributions. Notwithstanding the foregoing, no Employer may make on behalf of any participant any Before-Tax Contributions under the Plan for any pay period beginning on or after the Effective Date in excess of the highest permissible aggregate contribution percentage under Sections 4.2 and 4.3 which will cause the limitations of Section 4.8, 7.2 or 7.4 to be exceeded.

4.5    Eligible Earnings.  With respect to any period, a participant's "Eligible Earnings" shall mean remuneration received by a participant from an Employer while an employee eligible to participate in the Plan.  Eligible Earnings shall include base compensation, shift differential pay, overtime pay, holiday pay, fire brigade pay, military summer encampment pay, sick leave pay, strike time pay, call-in pay, pay in lieu of base wages (which payments are to be submitted to the person designated by the Committee), achievement awards from an achievement award program maintained by an Employer, contract notice pay, commissions, sales awards, gain sharing, annual Incentive Pay and lump sum amounts paid in lieu of wage increases. Eligible Earnings shall also include any amount which is contributed by an Employer pursuant to a salary reduction agreement and which is not includable in the gross income of the participant under Code Section 125 or 402(e)(3).  Eligible Earnings shall exclude amounts paid under any long-term incentive plan maintained by an Employer, restricted stock and dividends payable thereon granted pursuant to a management incentive plan maintained by an Employer, amounts paid by an Employer for insurance or other welfare plans or benefits, FlexCredits, pay in lieu of vacations, compensation attributable to the exercise of stock options, ad hoc one-time payments, amounts paid after the participant's final regular paycheck and any other amounts identified in the applicable Supplement.  Overtime pay is treated as earned in the month in which it is paid. Other previously deferred compensation or pay that is paid during the Plan Year shall not be included in earnings for this purpose.  Pay or compensation not specifically listed in this paragraph as included in Eligible Earnings shall be excluded.

The maximum "Eligible Earnings" for any participant for any Plan Year beginning on or after January 1, 1989 and before January 1, 1994 shall be $200,000 (as may be adjusted by the Secretary of the Treasury or his delegate).   The maximum "Eligible Earnings" for any participant for any Plan Year beginning on or after January 1, 1994 shall be $150,000 or such other amounts required under Section 401(a)(17) of the Code or any successor provision.  For purposes of determining whether a Former Monsanto Participant's Eligible Earnings for the 1997 Plan Year exceed the maximum amount of Eligible Earnings, such participant's Eligible Earnings shall include his "eligible earnings" under the Monsanto Plan as of the day before the Effective Date.

For this purpose, "Incentive Pay" shall include annual cash bonuses paid under an annual incentive plan established by an Employer.  Notwithstanding the foregoing,

Incentive Pay shall not include 20% ROE bonuses or EVA bonuses. Incentive Pay shall include "banked" annual bonuses paid to the participant during the Plan Year. Incentive Pay shall, however, only include an amount equal to the original amount "banked" by the participant and shall not include any adjustment made to such amounts based on the Corporation's performance.

4.6   Deduction of Participant Contributions.  The contributions made by an Employer on behalf of a participant in accordance with Sections 4.2 and 4.3 shall be made at regular payroll intervals. Contributions agreed to by an Employer shall be paid to the Trustee as soon as practicable after the end of the accounting period for which such contributions were made.  The Employer shall collect and withhold any Social Security, federal or state unemployment taxes, other payroll taxes and any state or local income or earnings taxes which are imposed on Before-Tax Contributions and shall pay such amounts to the applicable government authorities in a timely manner.

4.7   Cancellation of Before-Tax Contributions.  Except as otherwise provided, no Before-Tax Contributions shall be made for any pay period which begins after a participant fails to satisfy the eligibility requirements of Section 2 of the Plan or after such participant's termination of employment.

4.8   Limitation on Before-Tax Contributions.  Notwithstanding anything in this Section 4 to the contrary, in no event shall a participant's Before-Tax Contributions for any Plan Year exceed $7,000 (as may be adjusted by the Secretary of the Treasury or his delegate).   Any Before-Tax Contributions which exceed such amount shall be recharacterized as After-Tax Contributions.  For purposes of determining whether a Former Monsanto Participant's Before-Tax Contributions for the 1997 Plan Year exceed the limitation provided in this paragraph, such participant's Before-Tax Contributions shall include his "before-tax contributions" for 1997 under the Monsanto Plan as of the day before the Effective Date.

If the sum of a participant's Before-Tax Contributions and other elective deferrals (as defined in Section 402(g)(3) of the Code) in a plan maintained by another employer for any calendar year exceed $7,000 (as may be adjusted by the Secretary of the Treasury or his  delegate), then the participant may file an election form with the Committee designating in writing the amount of such excess Before-Tax Contributions to be distributed from this Plan.  Any such election form must be filed with the Committee no later than March 1 following the close of such calendar year.  If such

an election form is timely filed, the Trustee shall distribute to the participant the amount of such excess Before-Tax Contributions which the participant has allocated to this Plan, adjusted for any income or loss allocable to such amount, on or before April 15 following the close of such calendar year. For purposes of the preceding sentence, the income or loss allocable to such excess amount shall be the income or loss allocable to the participant's Before-Tax Contributions for the taxable year multiplied by a fraction, the numerator of which is such participant's excess Before-Tax Contributions for the year and the denominator of which is the participant's Before-Tax Accounts without regard to any income or loss occurring during such taxable year.

## SECTION 5
### After-Tax Contributions

5.1    Authorization of After-Tax Contributions. A participant may elect, effective as of the first pay period beginning as soon as administratively feasible after such election, to make "After-Tax Contributions" during such pay period in an amount equal to up to sixteen percent (in whole percentages) of his Eligible Earnings for that pay period (or such other percentage set forth in the applicable Supplement hereto). Such election must be made in the manner prescribed by the Plan Committee. In no event shall the percentage of Eligible Earnings contributed as Before-Tax Contributions and After-Tax Contributions exceed sixteen percent (or such other percentage set forth in the applicable Supplement hereto). On the Effective Date, a Former Monsanto Participant's After-Tax Contribution election shall be the same as his "after-tax contribution" election before the Monsanto Plan as of the day before the Effective Date.

5.2    Matched After-Tax Contributions. Except as otherwise expressly provided and effective as of the first day of the first pay period as soon as administratively feasible, a participant, if he so desires, may elect to make After-Tax Contributions under the Plan in an amount not in excess of seven percent (in whole percentages) of his Eligible Earnings (or such other percentage as are set forth in the applicable Supplement hereto) ("Matched After-Tax Contributions"). Such amounts shall be contributed to the participant's Matched After-Tax Account. Notwithstanding the foregoing, a participant who is a Per Diem Employee, a Temporary Part-Time Employee, a Temporary Full-Time Employee, a Cooperative Employee, a Retiree Resource Corps Employee or a Summer Intern may not make Matched After-Tax

Contributions for a Plan Year unless such participant is credited with 1,000 Hours of Service during the Plan Year.

5.3    Supplemental After-Tax Contributions.  Except as otherwise specifically provided, if a participant makes Matched After-Tax Contributions in accordance with Section 5.2 for any pay period which equal the percentage limit on such Matched After-Tax Contributions for such pay period under that Section, any After-Tax Contributions made by the participant in excess of the Matched After-Tax Contribution limits ("Supplemental After-Tax Contributions") shall then be contributed to the participant's Supplemental After-Tax Contributions Account.

5.4    Limitation on After-Tax Contributions.  Notwithstanding the foregoing, no participant may make contributions in accordance with Sections 5.1, 5.2 and 5.3 for any pay period beginning on or after the Effective Date in excess of the highest permissible aggregate contributions percentage under Sections 5.2 and 5.3 which will cause the limitations of either Sections 7.2 or 7.5 to be exceeded.

5.5    Deduction of Participant After-Tax Contributions.  A participant's After-Tax Contributions in accordance with Sections 5.1, 5.2 and 5.3 shall be made by regular payroll deductions.  Participant After-Tax Contributions deducted by an Employer which are to be paid to the Trustee will be paid to the Trustee as soon as practicable after the end of the period for which such After-Tax Contributions were made.

5.6    Cessation of After-Tax Contributions .  Except as otherwise provided, no participant After-Tax Contributions will be accepted on behalf of any participant for any pay period which begins after such participant fails to satisfy the eligibility requirements of Section 2 of the Plan or after such participant's termination of employment.

## SECTION 6
### Employer Contributions

6.1    Employer  Matching Contributions.

(a)    The Employers shall establish an Employer Matching Account for each participant on whose behalf it makes Matching Contributions.  Except as otherwise provided in this Section or Section 19, each Employer will make Employer Matching Contributions in an amount equal to sixty percent (or such

other percentage set forth in the applicable Supplement hereto) of the aggregate Matched Before-Tax Contributions and Matched After-Tax Contributions for such payroll period deducted on behalf of participants employed by such Employer during such payroll period minus the aggregate amount of Forfeitures (as defined in Section 10.3) with respect to such participants. Notwithstanding the foregoing, the Employers may, in their sole discretion, make Employer Matching Contributions in an amount in excess of sixty percent (or such other percentage set forth in the applicable Supplement hereto) of the Matched Before-Tax Contributions and Matched After-Tax Contributions for a period for the participants employed by such Employers during the payroll period. Notwithstanding the foregoing, a participant who is a Per Diem Employee, a Temporary Part-Time Employee, a Temporary Full-Time Employee, a Retiree Resource Corps Employee, a Cooperative Employee or a Summer Intern shall receive an Employer Matching Contribution for a Plan Year only if such participant is credited with 1,000 Hours of Service during the Plan Year.

(b)     Except as provided in Section 19, contributions made in accordance with this Section shall be made only from the Employer's net income (i.e., its net profits before state and federal income taxes), or its accumulated profits (i.e., its net profit after federal and state income taxes have been deducted, which have been accumulated in the business) or both. If any Employer does not have sufficient net income and accumulated profits to permit it to make its Employer Matching Contributions, then one or more of the other Employers, as determined by the Corporation, may make contributions on behalf of such Employer in an amount not exceeding the amount of contributions which such Employer would have otherwise contributed. Except as otherwise provided in Section 19, the Employer Matching Contributions for any month shall be paid to the Trustee as soon as practical after the month for which such contributions are made. Each Employer's total contributions for any Plan Year shall be paid to the Trustee no later than the time required for filing the Employer's federal income tax return for that year, including extensions thereof.

6.2    Correcting Contribution.    In addition to the Employer Matching Contributions described in Section 6.1, the Employers may make such additional contributions to the Plan as may be necessary to correct any error by the Corporation which occurs

in the administration of the Plan. Any such correcting contribution which relates to correction of an investment loss occasioned by the Corporation's administration of the accounts under the Plan shall not constitute an Annual Addition to the Plan under Section 7.3 hereof and shall not be an Employer Matching Contribution. Any such correcting contribution which relates to errors made by the Corporation in crediting the proper amount of Employer Matching Contributions to a participant's account for any Plan Year shall be an Employer Matching Contribution and shall constitute an Annual Addition for the Plan Year to which such correcting contribution relates and which may be a Plan Year other than the year in which such correcting contribution is made.

## SECTION 7
### Limitations on Contributions

7.1    Limitation on Matching Contributions.  Notwithstanding anything in Section 6.1 to the contrary, no Employer during its Fiscal Year shall make Employer Matching Contributions in an amount in excess of the amount which will be deductible by the Employer under Section 404 of the Code.

7.2    Limitations on Contributions.  The total Annual Additions (as defined in Section 7.3(a)) to a participant's Accounts under this Plan and to a participant's accounts in any other Defined Contribution Plan in which he is a participant and which is maintained by an Employer or any member of the Extended Group shall not exceed the lesser of:

(a)    The amount specified in Section 415(c)(1)(A) of the Code as in effect on the last day of the Plan Year; or

(b)    Twenty-five percent of the participant's compensation (as defined in Section 415(c)(3) of the Code) for such Plan Year.

In applying the limit in the preceding sentence, the Annual Addition to a participant's accounts under this Plan will be limited before the Annual Addition to his accounts under a related Defined Contribution Plan, if any, is limited. The requirements of Section 415 of the Code and the regulations promulgated thereunder are hereby incorporated by reference.

214426.5

17

April 7, 1998

Reduction of benefits or contributions to all plans, where required to comply with this Section, shall be accomplished by first reducing the participant's benefit under any defined benefit plans maintained by an Employer or the Extended Group (as defined in Section 7.3(b)) in which the participant participated, such reduction to be made first with respect to the defined benefit plan in which he most recently accrued benefits and thereafter in such priority as shall be determined by the Plan Committee and the plan administrator of such other defined benefit plans and, next, by reducing contributions or allocating excess forfeitures for Defined Contribution Plans (as defined in Section 7.3(c)) in which the participant participated, such reduction to be made first with respect to the Defined Contribution Plan in which he most recently accrued benefits and thereafter in such priority as shall be established by the Plan Committee and the plan administrator of such other Defined Contribution Plans; provided, however, that necessary reductions may be made in a different manner and priority pursuant to the agreement of the Plan Committee and the plan administrator of all other plans covering such participant.

Notwithstanding anything herein to the contrary, if, pursuant to the ESOP component of this Plan, the Plan enters into an ESOP Loan (as defined in Section 19.3(e)), the amounts contributed to the Plan that are used to retire the ESOP Loan will be treated as Annual Additions subject to the last paragraph of this Section 7.2.  Amounts released from the ESOP Suspense Account (as defined in Section 19.3(g)) which are allocated to the participants' accounts shall not constitute Annual Additions for purposes of this Section.

Also for purposes of this Section 7.2, during any Plan Year in which allocations are made pursuant to Section 19.6, the following two provisions will apply if no more than one-third of the Employer contributions made pursuant to Section 19 are allocated to Highly Compensated Employees (as defined in Section 414(q) of the Code):

(a)    forfeitures of common stock of the Corporation that are Financed Shares (as defined in Section 19.3(h)) shall not constitute Annual Additions, and

(b)    Employer contributions that are applied to interest payable on an ESOP Loan shall not constitute Annual Additions.

April 7, 1998

7.3    <u>Definitions</u>.    For purposes of this Section, the following terms shall have the following meanings:

(a)    "Annual Addition" means, with respect to any participant, for any Plan Year, the sum of the following amounts:

(i)    The Employers' contributions credited to his accounts under this Plan (including Before-Tax Contributions made by an Employer on behalf of the participant) and under a related Defined Contribution Plan, if any, for such Plan Year; and

(ii)    Any forfeitures which are allocated to such participant's accounts under a related Defined Contribution Plan which reallocates forfeitures among participants, if any, for such Plan Year; and

(iii)    The amount of the participant's After-Tax Contributions under this Plan (excluding Before-Tax Contributions made by an Employer on behalf of the participant) and contributions to a related Defined Contribution Plan for such Plan Year; and

(iv)    For the 1997 Plan Year, a Former Monsanto Participant's "annual additions" under the Monsanto Plan as of the day before the Effective Date.

(b)    "Extended Group" means all Affiliates and Subsidiaries of the Employers. A "member of the Extended Group" means any component member of the Extended Group.

(c)    "Defined Contribution Plans" means all savings, thrift, profit sharing, stock bonus, employee stock ownership, welfare benefits funds, or other plans of the Extended Group which are subject to the requirements of Section 415 of the Code and which constitute defined contribution plans for such purpose as well as any benefit attributable to After-Tax Contributions or Before-Tax Contributions under this Plan or any related pension plan.

(d)    "Compensation" for purposes of this Section shall mean compensation that is actually paid to the participant during the Plan Year. Notwithstanding the

preceding, compensation (except for purposes of Section 7.2) may, as determined by the Committee, include any amount which is contributed by the Employer pursuant to a salary reduction agreement and which is not includible in the gross income of the employee under Sections 125, 402(a)(8), 402(h) or 403(b) of the Code. For the 1997 Plan Year, a Former Monsanto Participant's compensation for purposes of Section 7.2 shall include his "compensation" under Section 7.3(d) of the Monsanto Plan as of the day before the Effective Date.

(e)     "Contribution Percentage" shall mean the ratio (expressed as a percentage) of the participant's Contribution Percentage Amounts to the participant's Compensation for the Plan Year (whether or not the employee was a participant for the entire Plan Year).

(f)     "Contribution Percentage Amounts" shall mean the sum of participant After-Tax Contributions, Employer Matching Contributions and Qualified Matching Contributions (to the extent not taken into account for purposes of the Actual Deferral Percentage test) made under the Plan on behalf of the participant for the Plan Year. Such Contribution Percentage Amounts shall not include Employer Matching Contributions that are forfeited either to correct Excess Aggregate Contributions or because the contributions to which they relate are excess elective deferrals, Excess Before-Tax Contributions or Excess Aggregate Contributions. For the 1997 Plan Year, a Former Monsanto Participant's contribution percentage amounts shall include his 1997 "contribution percentage amounts" under the Monsanto Plan as of the day before the Effective Date. The Employer may include Qualified Non-elective Contributions in the Contribution Percentage Amounts. The Employer may also include participant Before-Tax Contributions in the Contribution Percentage Amounts so long as the Actual Deferral Percentage test is met before the Before-Tax Contributions are used in the Actual Contribution Percentage test and continues to be met following the exclusion of those Before-Tax Contributions used.

(g)     "Excess Aggregate Contributions" shall mean, with respect to any Plan Year, the excess of (i) the aggregate Contribution Percentage Amounts taken into account in computing the numerator of the Contribution Percentage actually made on behalf of Highly Compensated Employees for such Plan Year, over

April 7, 1998

214426.5                                    20

(ii) the maximum Contribution Percentage Amounts permitted by the Actual Contribution Percentage test (effective January 1, 1997, determined by reducing contributions made on behalf of Highly Compensated Employees in order of the amount of such contributions beginning with the highest of such amount). Such determination shall be made after first determining Excess Before-Tax Contributions pursuant to Section 4.8 and then determining Excess Before-Tax Contributions pursuant to Section 7.3(h).

(h)    "Excess Before-Tax Contributions" shall mean, with respect to any Plan Year, the excess of (i) the aggregate amount of Before-Tax Contributions and any Qualified Non-elective Contributions actually taken into account in computing the Actual Deferral Percentage of Highly Compensated Employees for such Plan Year, over (ii) the maximum amount of such contributions permitted by the Actual Deferral Percentage test (determined by reducing contributions made on behalf of Highly Compensated Employees in order of the Before-Tax Contributions, beginning with the highest of such amount).

(i)    "Highly Compensated Employee" includes highly compensated active employees and highly compensated former employees. Highly compensated active employee includes any employee who performs service for the Employer during the determination year and who: (i) during the look-back year received compensation from the Employer in excess of $80,000 (as adjusted pursuant to Section 415(d) of the Code); or (ii) is a 5% owner at any time during the look-back year or determination year.

For this purpose, the determination year shall be the Plan Year. The look-back year shall be the twelve-month period immediately preceding the determination year. Notwithstanding the foregoing, for the 1997 Plan Year, the determination year shall be the 1997 calendar year and the look-back year shall be the 1996 calendar year.

The determination of who is a Highly Compensated Employee will be made in accordance with Section 414(q) of the Code and the regulations thereunder.

(j)    "Qualified Matching Contributions" shall mean matching contributions which are subject to the distribution and nonforfeitability requirements of Section 401(k) of the Code when made.

(k)     "Qualified Non-elective Contributions" shall mean contributions (other than Employer Matching Contributions or Qualified Matching Contributions) made by the Employer and allocated to participants' accounts that the participants may not elect to receive in cash until distributed from the Plan; that are nonforfeitable when made; and that are distributable only in accordance with the distribution provisions that are applicable to Before-Tax Contributions and Qualified Matching Contributions.

7.4     <u>Actual Deferral Percentage Test</u>.  Notwithstanding anything in Section 4 to the contrary, for each Plan Year the Plan shall satisfy the Actual Deferral Percentage nondiscrimination tests in Sections 401(k)(3) and 401(m)(9) of the Code in accordance with Treas. Regs. Section 1.401(k)-1(b) and Treas. Regs. Section 1.401(m)-2, which provisions are hereby incorporated by reference.  The Plan Committee may, to the extent necessary to satisfy the Section 401(k)(3) nondiscrimination tests use the distribution method, additional contributions method, the recharacterization method or a combination of these methods, to avoid or correct excess contributions.

(a)     <u>Distribution Method</u>.  Notwithstanding any other provision of this Plan, if the Plan Committee uses the distribution method, Excess Before-Tax Contributions, adjusted for any income and loss allocable thereto, shall be distributed no later than the last day of each Plan Year to participants whose accounts such Excess Before-Tax Contributions were allocated for the preceding Plan Year.  If such excess amounts are distributed more than 2-1/2 months after the last day of the Plan Year in which such excess amounts arose, a ten percent excise tax will be imposed on the Employers maintaining the Plan with respect to such amounts.  Such distributions shall be made to Highly Compensated Employees on the basis of the respective portions of the Excess Before-Tax Contributions attributable to each such employee.

Excess Before-Tax Contributions (including the amounts recharacterized) shall be treated as Annual Additions.

Determination of Income or Loss: Excess Before-Tax Contributions shall be adjusted for any income and loss allocable thereto.  The income and loss allocable to Excess Before-Tax Contributions is the income and loss allocable to the participant's Before-Tax Account for the Plan Year multiplied by a fraction, the numerator of which is such participant's Excess Before-Tax

Contributions for the year and the denominator of which is the participant's account balance attributable to Before-Tax Contributions (and Qualified Non-elective Contributions or Qualified Matching Contributions, or both, if any of such contributions are included in the Actual Deferral Percentage test) without regard to any income and loss occurring during such Plan Year.

Accounting for Excess Before-Tax Contributions:   Excess Before-Tax Contributions shall be distributed from the participant's Before-Tax Account in proportion to the participant's Before-Tax Contributions for the Plan Year.

(b)   Additional Contributions Method.  In lieu of distributing Excess Before-Tax Contributions, the Plan Committee may elect to make Qualified Non-elective Contributions or Qualified Matching Contributions on behalf of non-highly compensated participants that are sufficient to satisfy the Actual Deferral Percentage test, pursuant to regulations issued under Section 401(k) of the Code.

(c)   Recharacterization Method.   In lieu of distributing Excess Before-Tax Contributions or making additional contributions, the Plan Committee may treat a participant's Excess Before-Tax Contributions as an amount distributed to the participant and then contributed by the participant to the Plan. Recharacterized amounts will remain nonforfeitable and subject to the same distribution requirements as Before-Tax Contributions.  Amounts may not be recharacterized on behalf of a Highly Compensated Employee to the extent that such amount in combination with other After-Tax Contributions made by that participant would exceed any stated limit under the Plan on After-Tax Contributions.

Recharacterization must occur no later than two and one-half months after the last day of the Plan Year in which such Excess Before-Tax Contributions arose and is deemed to occur no earlier than the date the last Highly Compensated Employee is informed in writing of the amount recharacterized and the consequences thereof.   Recharacterized amounts will be taxable to the participant for the participant's tax year in which the participant would have received them in cash.

7.5    <u>Actual Contribution Percentage Test</u>.  Notwithstanding anything in Section 5 to the contrary, for each Plan Year the Plan shall satisfy the Actual Contribution Percentage nondiscrimination tests in Sections 401(m)(2) and 401(m)(9) of the Code in accordance with Treas. Regs. Sections 1.401(m)-1(b) and 1.401(m)-2, which provisions are hereby incorporated by reference.  The Plan Committee may, to the extent necessary to satisfy the Section 401(m) nondiscrimination tests, use the distribution method, the additional contributions method, the limitation on contributions method, or a combination of these methods, to avoid or correct excess contributions.

(a)    <u>Distribution Method</u>.  Notwithstanding any other provision of the Plan, if the Plan Committee uses the distribution method, Excess Aggregate Contributions, adjusted for any income and loss allocable thereto, shall be forfeited, if forfeitable, or if not forfeitable, distributed no later than the last day of each Plan Year to participants to whose accounts such Excess Aggregate Contributions were allocated for the preceding Plan Year.  If such Excess Aggregate Contributions are distributed more than 2-1/2 months after the last day of the Plan Year in which such excess amounts arose, a ten percent excise tax will be imposed on the Employer maintaining the Plan with respect to those amounts.  Excess Aggregate Contributions shall be treated as Annual Additions.

Determination of Income or Loss:  Excess Aggregate Contributions shall be adjusted for any income and loss allocable thereto.  The income and loss allocable to Excess Aggregate Contributions is the income and loss allocable to the participant's After-Tax Contributions Account, Employer Matching Account, and, if applicable, recharacterized participant Before-Tax Account for the Plan Year multiplied by a fraction, the numerator of which is such participant's Excess Aggregate Contributions for the year and the denominator of which is such participant's account balance(s) attributable to Contribution Percentage Amounts without regard to any income or loss occurring during such Plan Year.

Forfeitures of Excess Aggregate Contributions:  Forfeitures of Excess Aggregate Contributions will be applied to reduce Employer contributions for the Plan Year in which the excess arose, but allocated as described in the next sentence to the extent the excess exceeds Employer Matching Contributions the

April 7, 1998

214426.5                                  24

Employer has already contributed for such Plan Year. If forfeitures are to be allocated, such forfeitures will be allocated, after all other forfeitures under the Plan to the Employer Matching Account of each non-highly compensated participant who made Before-Tax Contributions or After-Tax Contributions in the ratio which each such participant's Compensation for the Plan Year bears to the total Compensation of all such participants for such Plan Year.

Accounting for Excess Aggregate Contributions:  Excess Aggregate Contributions shall be forfeited, if forfeitable or distributed on a pro-rata basis from the participant's After-Tax Account and Employer Matching Account (and, if applicable, the participant's Before-Tax Account).

(b) <u>Additional Contributions Method</u>. In lieu of distributing Excess Aggregate Contributions the Plan Committee may elect to make Qualified Non-elective Contributions or Qualified Matching Contributions on behalf of non-highly compensated participants that are sufficient to satisfy the Actual Contribution Percentage test, pursuant to regulations under the Code.

### SECTION 8
### Accounting

8.1 <u>Participant Accounts</u>. The Plan Committee shall maintain the following accounts set forth below in the name of each participant:

(a) "<u>Matched Before-Tax Account</u>" to reflect the Matched Before-Tax Contributions made by an Employer on behalf of each participant in accordance with Section 4.2 as well as the income, losses, appreciation and depreciation attributable to such contributions. A Former Monsanto Participant's Matched Before-Tax Account shall include all amounts transferred from his "matched before-tax account" under the Monsanto Plan.

(b) "<u>Supplemental Before-Tax Account</u>" to reflect the Supplemental Before-Tax Contributions, the Qualified Non-elective Contributions and the Qualified Matching Contributions, if any, made by an Employer on behalf of each participant in accordance with Section 4.3, 7.4 or 7.5, as well as the income, losses, appreciation and depreciation attributable to such contributions. A Former Monsanto Participant's Supplemental Before-Tax Account shall include

all amounts transferred from his "supplemental before-tax account" under the Monsanto Plan.

(c)    "Matched After-Tax Account" to reflect the Matched After-Tax Contributions made in accordance with Section 5.2 by a participant who has elected to make such contributions, as well as the income, losses, appreciation and depreciation attributable to such contributions. A Former Monsanto Participant's Matched After-Tax Account shall include all amounts transferred from his "matched after-tax account" under the Monsanto Plan.

(d)    "Supplemental After-Tax Account" to reflect the Supplemental After-Tax Contributions made in accordance with Section 5.3 by each participant who has elected to make such contribution, as well as the income, losses, appreciation and depreciation attributable to such contributions. A Former Monsanto Participant's Supplemental After-Tax Account shall include all amounts transferred from his "supplemental after-tax account" under the Monsanto Plan.

(e)    "Direct Rollover Account" to reflect the Direct Rollover Contributions made in accordance with Section 3.5 by a participant, as well as the income, losses, appreciation and depreciation attributable to such contributions. A Former Monsanto Participant's Direct Rollover Account shall include all amounts transferred from his "direct rollover account" under the Monsanto Plan.

The Matched Before-Tax Account and Supplemental Before-Tax Account shall collectively be referred to as the "Before-Tax Accounts." The Matched After-Tax Account and Supplemental After-Tax Account shall collectively be referred to as the "After-Tax Accounts." The Before-Tax Accounts, After-Tax Accounts and Direct Rollover Account shall collectively be referred to as the "Participant Accounts."

8.2    Employer Matching Account.  The Plan Committee shall maintain an "Employer Matching Account" in the name of each participant to reflect his share of the Employer Matching Contributions and the Forfeitures arising under the Plan which are credited to such Account as a part of the Employer Matching Contributions in accordance with Section 6 as well as the income, losses, appreciation and depreciation attributable thereto. A Former Monsanto Participant's Employer Matching Account

shall include all amounts transferred from his "employer matching account" under the Monsanto Plan.

8.3    <u>Employee Stock Account</u>.  The Plan Committee shall maintain an "<u>Employee Stock Account</u>" in the name of each participant who has elected to have a portion of his Participant Accounts invested in the Corporation Stock Fund.

8.4    <u>Other Accounts</u>.  The Plan Committee may also maintain such other accounts as it deems necessary.  Unless the context indicates otherwise, references to a participant's "<u>Accounts</u>" means the Accounts maintained in accordance with Sections 8.1, 8.2 and 8.3 and all other accounts maintained in his name under the Plan in accordance with this Section.

8.5    <u>Employer Contributions</u>.  The Employer Matching Contributions shall be paid or delivered to the Trustee and will be administered as provided in the Trust Agreement. For purposes of this Section, the Employers' contributions for any payroll period shall be considered to be made on the last day of that payroll period regardless of when paid to the Trustee.

8.6    <u>Adjustment of Participants' Accounts</u>.  As of each Accounting Date, the Plan Committee shall:

(a)    <u>First</u>, credit each participant's Accounts with his pro rata share of any increase, or charge such Accounts with his pro rata share of any decrease, in the value of the "adjusted net worth" of each Investment Fund and/or Pre-Mixed Portfolio in which such Accounts have an interest as of that date;

(b)    <u>Next</u>, credit participants' After-Tax Contributions that are to be credited as of that date in accordance with Section 8.9;

(c)    <u>Next</u>, credit Before-Tax Contributions on behalf of participants that are to be credited as of that date in accordance with Section 8.10;

(d)    <u>Next</u>, allocate and credit any Employer Matching Contributions (including any Forfeitures applied to reduce those contributions) which are to be credited as of that date in accordance with Section 8.8;

April 7, 1998

(e)  <u>Next</u>, charge to the proper Accounts all payments, distributions or loans made since the last preceding Accounting Date that have not been previously charged as provided in Section 8.7; and

(f)  <u>Finally</u>, transfer amounts between the Investment Funds to reflect new investment elections, if any.

The "adjusted net worth" of an Investment Fund or Pre-Mixed Portfolio as of any Accounting Date means the then net worth of that Investment Fund or Pre-Mixed Portfolio as determined by the Trustee less an amount equal to any Employer Matching Contributions and any participants' After-Tax Contributions, Before-Tax Contributions or Direct Rollover Contribution deposited in such Investment Fund or Pre-Mixed Portfolio which have not previously been credited to participants' Accounts in accordance with paragraphs (b), (c) and (d) above. The adjustment of participants' Accounts provided for in this Section shall be made on the basis of the Trustee's valuation of each Investment Fund and each Pre-Mixed Portfolio on a fair market value basis.

8.7  <u>Charging Payments and Distributions</u>.  As of each Accounting Date, all payments or distributions made under the Plan since the last preceding Accounting Date to, or for the benefit of, a participant or his beneficiary will be charged to the proper Account of such participant unless previously charged.

8.8  <u>Allocation of Employer Matching Contributions and Forfeitures</u>.  As soon as administratively feasible following the last day of each payroll period, all Employer Matching Contributions (including any Forfeitures applied to reduce an Employer's Matching Contributions in accordance with Section 10.3) under the Plan for the payroll period ending on that date, will be allocated and credited to the Employer Matching Account of each participant who was employed by that Employer during such payroll period pro rata, according to the Matched Before-Tax Contributions and Matched After-Tax Contributions made by that participant, respectively, during that payroll period; <u>provided</u>, <u>however</u>, the amount of Employer Matching Contributions allocated to a participant during a Plan Year shall not exceed sixty percent (or such other percentage as set forth in the applicable Supplement hereto) of seven percent (or such other percentage as set forth in the applicable Supplement hereto) of that participant's Eligible Earnings. Notwithstanding the foregoing, in the event that the Employers, in their sole discretion, decide to make Employer Matching Contributions

in an amount in excess of sixty percent (or such other percentage set forth in the applicable Supplement hereto), the amount of Employer Matching Contributions allocated to a participant during a Plan Year shall not exceed the percentage determined by the Employers of seven percent (or such other percentage as set forth in the applicable Supplement hereto) of that participant's Eligible Earnings.  For purposes of this Section, the portion of any Forfeiture arising under the Plan during any period which is attributable to the prior contributions of any Employer shall be that proportion of such Forfeitures which the contributions made by that Employer and credited to the Employer Matching Contributions Account of the participant with respect to whom the Forfeiture arose bears to the total contributions of all Employers which were credited to such account.

8.9    Crediting After-Tax Contributions.    Each participant's Matched After-Tax Contributions will be credited to his Matched After-Tax Account as soon as administratively feasible following the last day of the payroll period for which such contributions were made.  Each participant's Supplemental After-Tax Contributions will be credited to his Supplemental After-Tax Account as soon as administratively feasible following the last day of the payroll period for which such contributions were made.  Notwithstanding the foregoing, such contributions shall be contributed to the Plan by the Employers on or before the date such contributions become plan assets pursuant to regulations issued by the Department of Labor.

8.10    Crediting Before-Tax Contributions.    The Matched Before-Tax Contributions made by an Employer on behalf of a participant shall be credited to his Matched Before-Tax Account as soon as administratively feasible following the last day of the payroll period for which such contributions were made.    The Supplemental Before-Tax Contributions made by an Employer on behalf of a participant shall be credited to his Supplemental Before-Tax Account as soon as administratively feasible following the last day of the payroll period for which such contributions were made. Notwithstanding the foregoing, such contributions shall be contributed to the Plan by the Employers on or before the date such contributions become plan assets pursuant to regulations issued by the Department of Labor.

8.11    Allocations Pursuant to Qualified Domestic Relations Order.    If a Qualified Domestic Relations Order ("QDRO") under Section 414(p) of the Code provides for a distribution of a portion of a participant's Accounts to an Alternate Payee (as defined in Section 414(p)(8) of the Code), the Plan Committee may, in its discretion, make

April 7, 1998

a distribution proportionately from each of the participant's Accounts, in order to comply with the terms of the QDRO. The Plan Committee may also make an immediate payment of all or a portion of a participant's Accounts to an Alternate Payee pursuant to a QDRO even though such a distribution would otherwise not be available to the participant under the terms of the Plan.

If the amount allocated to an Alternate Payee pursuant to a QDRO exceeds $3,500, the Alternate Payee may elect not to have such amount immediately distributed. If an Alternate Payee elects not to receive an immediate distribution, such Alternate Payee shall be eligible to make elections under the Plan as if such Alternate Payee were a participant who has terminated employment. However, the surviving spouse of an Alternate Payee may not elect to defer distribution until December 31 of the calendar year in which the Alternate Payee would have attained age 70-1/2 (or December 31 immediately following the calendar year in which the Alternate Payee died, if later).

## SECTION 9
### The Trust Fund, the Investment Funds
### and the Loan Fund

9.1   The Trust Fund.  The "Trust Fund" includes all assets of the Plan which are held by the Trustee in accordance with the Plan and the Trust Agreement.

9.2   The Investment Funds.  The Trust Fund shall consist of the following Investment Funds:

(a)   The "Growth & Income Equity Investment Fund" which ordinarily will be invested in common stocks, or other securities convertible into common stock, subject to the right of the Trustee to invest such portion of the Growth & Income Equity Fund in cash or short-term marketable securities as the Trustee may deem advisable from time to time;

(b)   A "Corporation Stock Fund" which shall be invested in the common stock of the Corporation, except as provided below;

(c)   A "Fixed Income Fund" which shall be invested in a contract with the Insurance Company (as described in Section 1.4) guaranteeing repayment of

214426.5

30

April 7, 1998

the principal of the fund and guaranteeing a fixed annual interest rate thereon for a specified future period, or in a Bank Investment Contract or other high quality securities including, but not limited to, U.S. Treasury Securities;

(d)    A "Balanced Fund" which shall be invested in both equity and fixed income securities in such proportion as the Fund Committee may deem advisable;

(e)    An "International Equity Fund" consisting of the commingled fund(s) and/or mutual fund(s) selected by the Fund Committee which shall invest primarily in the common stocks of companies based outside the United States;

(f)    A "U.S. Equity Index Fund" which shall be invested in securities of each company included in the S&P 500 index in proportion to its market capitalization weight;

(g)    The "Growth Equity Fund" which shall be invested in securities of smaller, less-known companies in new and emerging areas of the economy and companies in mature and declining industries that have been revitalized and hold a strong market position; and

(h)    The "Monsanto Stock Fund" which shall be invested in the common stock of Monsanto Company; provided, however, new amounts may not be invested in this Investment Fund after the Effective Date. Any dividend on the common stock of Monsanto Company shall be invested in the Corporation Stock Fund.

The Corporation may from time to time add, suspend or terminate an Investment Fund.

The Trustee, pursuant to any discretion given it by its Trust Agreement, may retain all or any portion of any of the Investment Funds and on a temporary or interim basis may invest any of the Investment Funds in property other than that specified as the primary type of investment for such Investment Funds. Pursuant to the preceding sentence, any Investment Fund may be partially or entirely invested in any common or commingled fund maintained by the Trustee which is invested in property of the type specified for that Investment Fund. Following the Effective Date, a portion of the Corporation Stock Fund shall be invested in common stock of Monsanto Company until it is administratively feasible and prudent to liquidate those shares and reinvest

April 7, 1998

the proceeds in common stock of the Corporation. The funds described above, excluding Monsanto Stock Fund, may be referred to collectively as the "Investment Funds" and may be referred to individually as the "Investment Fund". No stocks or obligations issued by the Corporation, its Affiliates or its subsidiaries shall be included in any of the Investment Funds (excluding the Corporation Stock Fund); provided, however, that any investment of any such Investment Fund through the medium of commingled funds and/or mutual funds shall not constitute an investment in the stocks or obligations of the Corporation, its Affiliates or its subsidiaries even though the commingled funds and/or mutual funds may contain such stocks or obligations.

9.3   The Loan Fund. The "Loan Fund" is maintained by the Plan Committee and shall constitute a part of the Trust Fund. The Loan Fund shall include the notes executed by each participant to whom a loan has been made under Section 12, which are reflected in the Loan Account of such participants. As of the time the loan is made, the participant's other Accounts shall be debited to reflect the amount of the loan to the participant in the manner specified in Section 12.10 and the amount of such loan shall be credited to the participant's Loan Account. As payments of principal and interest are made on the loan, the Loan Account shall be debited as specified in Section 12.10 hereof.

9.4   Investment Elections. A participant in this Plan may elect (in whole percentages) to invest his After-Tax Contributions, Before-Tax Contributions and his Participant Accounts in one or more of the Investment Funds and/or Pre-Mixed Portfolios. Notwithstanding the foregoing, a participant may not elect to have more than thirty percent of his Participant Accounts in the Employee Stock Account.

The investment election must be made in the time and manner prescribed by the Plan Committee.

A participant's After-Tax Contributions, Before-Tax Contributions and Direct Rollover Contributions shall be invested, as soon as practicable after the Accounting Date for which such contributions were made, in the Investment Funds and/or the Pre-Mixed Portfolios, in accordance with the participant's investment election then in effect. A participant may change his investment election in the time and manner prescribed by the Plan Committee. A participant may change his election in accordance with this Section on any Accounting Date.

9.5    (a)    <u>Investment of Employer Contributions</u>.    Except as provided in Subsection 9.5(b), a participant's Employer Matching Account shall be invested in the Corporation Stock Fund or the Monsanto Stock Fund.

(b)    <u>Diversification Election</u>.

(i)    A Participant who either:

(A)    is an active employee of an Employer, who has attained age 50 and is fully vested in his Employer Matching Account; or

(B)    has terminated employment and has not received a total distribution of his vested Employer Matching Account,

shall be eligible to make a voluntary election ("<u>Diversification Election</u>") to transfer any portion of his Employer Matching Account from the Corporation Stock Fund or the Monsanto Stock Fund to the Investment Funds (other than the Corporation Stock Fund) and/or the Pre-Mixed Portfolios.

(ii)    An eligible participant's decision to make a Diversification Election must be voluntary.    Each Diversification Election shall be made in the time and manner prescribed by the Plan Committee.

(iii)    Notwithstanding the foregoing, a participant shall be eligible at any time after the Distribution Date to make a Diversification Election with respect to the portion of his Employer Matching Account invested in the Monsanto Stock Fund; <u>provided</u>, <u>however</u>, that any portion of such amounts a participant elects to invest in the Corporation Stock Fund shall be subject to the Diversification Election requirements described in paragraph (i) hereof.

(iv)    Each Diversification Election shall specify:    (A) either the equivalent dollar amount or one hundred percent of the Employer Matching Account invested in the Corporation Stock Fund or Monsanto Stock Fund, as the case may be, to be transferred; (B) the percentage (in whole percentages) of the amount transferred from the Corporation

Stock Fund or Monsanto Stock Fund, as the case may be, that shall be transferred to the Investment Funds (other than the Corporation Stock Fund) and/or the Pre-Mixed Portfolios; and (C) with respect to the Corporation Stock Fund only, whether it is a Market Price Election or a Minimum Price Election. A Diversification Election with respect to the Monsanto Stock Fund must be a Market Price Election.

(v)     Market Price Election. If either the eligible participant designates the Diversification Election to be a "Market Price Election" or the Diversification Election is with respect to the Monsanto Stock Fund, the Trustee shall transfer the selected amount on the trading day for which the election is timely made by the eligible participant. The sale price shall be based on the closing price of the common stock of the Corporation or Monsanto Company, as the case may be, reported as the New York Stock Exchange on the date on which the shares are sold.

(vi)    Minimum Price Election. If the Diversification Election is designated by the participant to be a "Minimum Price Election", it shall be effective on the trading day for which the election is timely made by the eligible participant.

Each Minimum Price Election shall specify the minimum market price of the common stock of the Corporation below which the Trustee shall not transfer the selected amount ("Minimum Market Price").

If the closing price of the common stock of the Corporation, as reported on the New York Stock Exchange on the trading day for which a Minimum Price Election is timely made, equals or exceeds the Minimum Market Price, the Trustee shall transfer the selected amount on such date. The sale price shall be based on the closing price of the common stock of the Corporation reported as the New York Stock Exchange on that date.

If the closing price of the common stock of the Corporation, as reported on the New York Stock Exchange for the trading day for which the Minimum Price Election is timely made, is below the Market

April 7, 1998