# Exhibit B
# Part 2 of 3

employee attains age 70-1/2 and ends April 1 of the immediately following calendar year,

(v)     with respect to any participant who attained age 70-1/2 after December 31, 1995 and who was a five percent owner (as defined in Section 416 of the Code), the April 1 following the calendar year in which the participant attains age 70-1/2.

(d)     If the participant dies after distribution of his or her vested Accounts has begun, the remaining portion of such Accounts will continue to be distributed at least as rapidly as under the method of distribution being used prior to the participant's death.

If the participant dies before distribution of his or her vested Accounts begins, distribution of the participant's entire vested Accounts shall be completed by December 31 of the calendar year containing the fifth anniversary of the participant's death. Notwithstanding the foregoing, if the designated beneficiary is the participant's surviving spouse, distributions of the Participant's vested Accounts must begin by the later of (1) December 31 of the calendar year immediately following the calendar year in which the participant died and (2) December 31 of the calendar year in which the participant would have attained age 70-1/2.

(e)     Section 401(a)(9) of the Code is hereby incorporated by reference, and distributions under this Plan shall be made in accordance with such section and the regulations issued by the Secretary of the Treasury interpreting such section. Provisions reflecting Section 401(a)(9) of the Code shall override any other distribution options that may be inconsistent with such section and this Section. Any distributions required under the incidental death benefit requirements of Section 401(a) of the Code shall be treated as distributions required under Section 401(a)(9) of the Code and this Section.

10.5   Distribution Options.  A participant or his beneficiary, as the case may be, may elect to receive distribution of his vested Accounts in one of the methods described below.

(a)     Lump Sum Distribution.  A participant or a beneficiary may elect to receive his vested Accounts in a lump sum as soon as practicable after the date on which a timely distribution election is made ("Lump Sum Distribution")

(b)     Installment Payout Option.  Subject to the conditions and limitations set forth below, if the vested Accounts of a participant, or a surviving spouse beneficiary, exceed $5,000, the participant or surviving spouse beneficiary may direct that the value of his vested Accounts be distributed to him in monthly, quarterly or annual Calculated Installments or Fixed Installments. In no event, however, shall (i) the number of years over which installments are to be made be less than one or exceed the life expectancy of the participant or surviving spouse beneficiary on the date the installments commence (as determined in accordance with Table V of the regulations under Section 72 of the Code), or (ii) the installments begin later than the participant's attainment of age 70-1/2. The participant or surviving spouse beneficiary, as the case may be, may change the frequency of installment payments (monthly, quarterly, or annual) and/or the number of years over which installments

shall be made, up to the life expectancy of the participant or surviving spouse beneficiary when the installments are recalculated (as determined in accordance with Table V of regulations under Section 72 of the Code). If a participant is reemployed as an Employee by an Employer or Affiliate, installment payments for such participant shall be suspended until the participant again terminates employment with all Employers and Affiliates.

Calculated Installments." Payments under this option shall be made over the payment period selected by the participant or surviving spouse beneficiary. Each installment payment under this option shall equal the quotient of (i) the participant's vested Accounts at the time of payment (excluding any outstanding loan balances) divided by (ii) the number of remaining installment payments.

"Fixed Installments." Under this option, the participant or surviving spouse beneficiary elects the amount of each installment payment. Installment payments are then made until his vested Accounts are exhausted. Each installment payment under this option shall equal the amount elected by the participant or surviving spouse beneficiary.

If a participant or surviving spouse beneficiary elects the Installment Payout Option, the participant or surviving spouse beneficiary shall continue to be entitled thereafter to make investment elections under Sections 9.5 and 9.7. Such participant or surviving spouse beneficiary shall not be entitled to make After-Tax Contributions, to have Before-Tax Contributions made on his behalf or to obtain a loan under Section 12 except as provided in Section 12.15.

(c)  Common Stock of Corporation. Any lump sum or partial distribution of the portion of a participant's Accounts invested in the Corporation Stock Fund in accordance with this Section shall be made, at the participant's election, in one of the following manners:

(i)  in cash;

(ii)  in the form of the maximum number of full shares of common stock of the Corporation to the extent any portion of such participant's Accounts are invested in the Corporation Stock Fund, with the value of any fractional shares distributed in cash; or

(iii)  a specified number of full shares of common stock of the Corporation and cash, to the extent any portion of such participant's Accounts are invested in the Corporation Stock Fund.

A participant will make a separate election for his Employee Stock Account and his Employer Matching Account invested in the Corporation Stock Fund. Such election shall be made at the time and in the manner specified by the Plan Committee.

Installment distributions from the portion of a participant's Employer Matching Account invested in the Corporation Stock Fund shall be made, at the participant's election, either:

35

(i)   in the form of the maximum number of full shares of common stock of the Corporation to the extent any portion of such participant's Accounts are invested in the Corporation Stock Fund; or

(ii)  in cash.

Installment distributions from the participant's Employee Stock Account shall be made in cash.

Notwithstanding the foregoing, distributions from a participant's Employee Stock Account and Employer Matching Account shall be paid in cash if the participant fails to make an election to receive such Accounts in common stock of the Corporation in accordance with this Section.

(d)   Common Stock of Monsanto Company. Any lump sum or partial distribution of the portion of a participant's Accounts invested in the Monsanto Stock Fund in accordance with this Section shall be made, at the participant's election, in one of the following manners:

(i)    in cash;

(ii)   in the form of the maximum number of full shares of common stock of Monsanto Company to the extent any portion of such participant's Accounts are invested in the Monsanto Stock Fund, with the value of any factional shares distributed in cash; or

(iii)  a specified number of full shares of common stock of Monsanto Company and cash, to the extent any portion of such participant's Accounts are invested in the Monsanto Stock Fund.

A participant will make a separate election for his Employee Stock Account and the portion of his Employer Matching Accounts invested in the Monsanto Stock Fund. Such election shall be made at the time and in the manner specified by the Plan Committee.

Installment distributions from the portion of a participant's Accounts invested in the Monsanto Stock Fund shall be made in cash.

A terminated participant or surviving spouse may elect to receive all or part of his partial distribution in shares of the Corporation's common stock (to the extend such shares are held in his vested Accounts). If a terminated participant or surviving spouse elects to receive such shares, the order set forth above will apply first to the portion of the partial distribution to be received in shares and second to the portion to be received in cash.

Notwithstanding the foregoing, distributions from a participant's Accounts invested in the Monsanto Stock Fund shall be paid in cash if the participant fails to make an

36

election to receive such Accounts in common stock of Monsanto Company in accordance with this Section.

(e) **Partial Distribution.** Twice each Plan Year, a terminated participant or surviving spouse beneficiary may elect to receive a partial distribution of at least $200 of his vested Accounts under the Plan. A partial distribution shall be made from the participant's vested Accounts in the following order: After-Tax Accounts, Before-Tax Accounts, Direct Rollover Account and Employer Matching Account.

Notwithstanding the preceding, a participant who is deemed to be an officer or director of the Corporation for purposes of Section 16 of the Securities Exchange Act of 1934, as amended, shall not be permitted to make a partial distribution if such partial distribution would violate any applicable federal law or give rise to short swing profit liability under the federal securities laws.

(f) **Notice Regarding Distribution Options.** Each participant shall be provided with a notice of his right to elect a distribution option available under this Section no less than 30 days and no more than 90 days before the date as of which distribution to such participant begins. Notwithstanding the foregoing, a participant may waive in writing the requirement that he receive such a notice at least 30 days prior to the date as of which benefits are paid; provided, that distribution of the participant's Accounts begins at least seven days after the notice is supplied.

10.6 **Designation of Beneficiaries.** Each participant may, from time to time, designate any person or persons (who may be designated concurrently, contingently or successively) to whom any benefits payable on behalf of such participant are to be distributed if he dies before he receives all of his benefits. Such beneficiary designation shall also be effective if a participant dies after his termination of employment but prior to distribution of all of his vested Accounts. A beneficiary designation shall be effective only when it is signed, dated and filed with the Plan Committee while the participant is alive and will cancel all beneficiary forms previously signed and filed by the participant.

Effective for participants who have at least one Hour of Service after August 23, 1984, notwithstanding anything in this Plan to the contrary, in the event of the participant's death prior to distribution of all of his vested Accounts if the participant was married on the date of his death, his beneficiary shall be his surviving spouse unless the participant had made a Qualified Election prior to his death.

A "Qualified Election" shall mean an election made by the participant (on forms provided by and filed with the Plan Committee) providing that the surviving spouse shall not be the sole beneficiary of the participant's vested Accounts, and

(i) the spouse of the participant consents in writing to such election and acknowledges the effect of such election on forms provided by and filed with the Plan Committee and witnessed by a notary public; or

(ii) it is established that there is no spouse, the spouse cannot be located, or such other circumstances exist as may be provided by regulations prescribed under the Code.

Any Qualified Election consented to by a spouse pursuant to this paragraph shall be irrevocable and shall be effective only with respect to such spouse. Any such election may be revoked but not changed by the participant without consent of the participant's spouse in accordance with this paragraph.

Subject to the provision above regarding Qualified Elections, a Former Monsanto Participant's beneficiary designation in effect under the Monsanto Plan on the day before the Plan Effective Date shall be deemed to be a valid beneficiary designation filed with the Plan Committee on and after that date unless and until such participant revokes such beneficiary designation or makes a new beneficiary designation under this Plan. The term "designated beneficiary" as used in the Plan means the person or persons designated by a participant as his beneficiary in the last effective form filed with the Plan Committee under this Section and to whom a deceased participant's benefits are payable under the Plan. The term "beneficiary" as used in the Plan means the person or persons, trust(s), estate(s), or other entity(ies) to whom a deceased participant's benefits are payable under this Section.

If a participant shall fail to designate a beneficiary or if no designated beneficiary survives the participant, the participant's beneficiary shall be his surviving spouse, if any, or, if the participant has no surviving spouse, his estate.

## SECTION 11
### Withdrawals

1.1    Withdrawals by Participants with Five or More Years of Participation. A participant whose combined years of participation in this Plan and, for a Former Monsanto Participant, the Monsanto Plan equals or exceeds five years may elect to withdraw any portion of the following amounts (to the extent not previously withdrawn and not more than the balance credited to his respective accounts), in the following order:

(a)    all of the contributions previously made to his After-Tax Accounts and all earnings credited to such accounts; and

(b)    all of that portion of his Employer Matching Account which is vested at the time of withdrawal in accordance with Section 10.2.

A participant may elect to receive all or part of his withdrawal in shares of the Corporation's common stock (to the extent such shares are held in his After-Tax Accounts or the vested portion of his Employer Match Account). If a participant elects to receive such shares, the order set for above will apply first to the portion of the withdrawal to be received in shares and second, to the portion to be received in cash.

The minimum withdrawal shall be $200 or the balance available, if less. Any election by a participant under this Section must be made in the manner prescribed by the Plan Committee.

1.2    Withdrawals by Participants with Less than Five Years of Participation. A participant whose combined years of participation in this Plan and, for a Former Monsanto Participant, the Monsanto Plan are less than five may elect to withdraw the following amounts (to the

38

extent not previously withdrawn and not more than the balance credited to his respective Accounts), in the following order:

(a)    his After-Tax Accounts; and

(b)    that portion of his Employer Matching Account which is vested at the time of withdrawal in accordance with Section 10.2 (excluding contributions made to that account during the immediately preceding twenty-four months).

The minimum withdrawal shall be $200 or the balance available, if less. Any election by a participant under this Section must be made in the manner prescribed by the Plan Committee.

11.3    Withdrawals and Distributions from Before-Tax Accounts and Direct Rollover Accounts Prohibited. Except as provided in Section 11.4 below, withdrawals and distributions by a participant from his Before-Tax Accounts and his Direct Rollover Account shall be prohibited before retirement, death, Disability or severance from employment.

11.4    Age 59-1/2 Withdrawals. Anytime after a participant attains age 59-1/2, he may elect to receive any portion of his Before-Tax Accounts and his Direct Rollover Account. The withdrawal shall be made from the participant's vested accounts in the order specified in Section 10.5(e) for partial distributions. The minimum withdrawal shall be $200 or the balance available, if less. Any election by a participant under this Section must be made in the manner prescribed by the Plan Committee.

11.5    Charging and Allocations of Withdrawals. All withdrawals under Sections 11.1 through 11.4 shall be charged to the proper account of the participant and prorated among the Investment Funds, Monsanto Stock Fund and Pre-Mixed Portfolios in which such account is invested.

## SECTION 12
## Loans

12.1    Loans. The Plan Committee may, in its sole discretion, direct the Trustee to loan a participant amounts from his Participant Accounts. All loans shall be subject to the terms, conditions, requirements and limitations specified in this Section and in the SIP Loan Procedures document ("Loan Procedures") which Loan Procedures are hereby incorporated by reference and made a part of the Plan. Loans made to participants under this Section shall meet the requirements of Section 72(p) of the Code and the regulations under Section 408(b)(1) of ERISA.

12.2    Loan Administration. The loan provisions of this Plan shall be administered by the Plan Committee, which shall establish the terms and conditions generally applicable to loans made under this Plan.

In administering the loan provisions of this Section, the Plan Committee shall:

(a)    Adopt such rules and regulations as it deems necessary for the proper and efficient administration of loans under the Plan, including but not limited to, appropriate

39

adjustments in the accounting provisions of the Plan as it deems necessary and advisable to facilitate accounting for loans under the Plan;

(b) Establish standards which shall be used to determine if a loan application should be approved;

(c) Prescribe the forms to be used in administering the loan provisions of this Plan;

(d) Determine the method for calculating the interest rate to be charged on outstanding loans and when the rate to be charged for new loans is to be determined;

(e) Determine, from time to time, the minimum loan amount;

(f) Employ agents, attorneys, accountants, and other persons to properly and efficiently administer the loan provisions of this Plan and to collect outstanding loans; and

(g) Take all other actions necessary or advisable to carry out the provisions of this Section.

The rules and standards described in (a) through (e) above shall be set forth in the Loan Procedures.

12.3    Loan Eligibility. Only those participants who are parties-in-interest (as defined in Section 3(14) of ERISA) shall be eligible to request a loan or obtain a loan. Notwithstanding the foregoing, a Flexsys Participant shall be able to request a loan or obtain a loan until the earlier of (i) the date he terminates employment with Flexsys America LP, all Employers and all Affiliates, (ii) the date when Flexsys America LP ceases to be a Subsidiary, or (iii) December 31, 2001.  Notwithstanding the foregoing, an AES Participant shall be able to request a loan or obtain a loan until the earlier of the date he terminates employment with Advanced Elastomer Systems, L.P., all Employers and all Affiliates; (ii) the date when Advanced Elastomer Systems L.P. ceases to be a Subsidiary; or (iii) December 31, 2001.

12.4    Loan Application. A participant must request a loan in the manner prescribed by the Plan Committee. Only two loans per participant may be outstanding at any time. The loan request must be made at the time and in the manner prescribed by the Plan Committee. The request shall be supported by such evidence as the Plan Committee may request. If a participant's termination of employment should occur after the participant has requested a loan but before the loan is made and the participant ceases to be a party-in- interest (as defined in Section 3(14) of ERISA) the participant's request shall automatically be canceled after his termination of employment.

12.5    Terms and Conditions of Loans. From time to time the Plan Committee shall establish rules governing the making of loans, including the minimum amount for which a loan shall be made and the conditions and terms of repayment of principal and interest. Such rules shall be uniformly applied to all participants similarly situated. Such rules will be set forth in the Loan Procedures. Each loan shall be evidenced by a promissory note in a form approved by the Plan Committee, shall provide for a reasonable annual rate of interest, and shall be secured by the Loan Account maintained for that participant under the Plan.

12.6 <u>Maximum Loan</u>. The maximum loan shall be the lesser of the following amounts:

    (a)    50% of the participant's vested Accounts in the Plan, including the Employer Matching Account;

    (b)    100% of the participant's Participant Accounts; or

    (c)    $50,000 reduced by the highest total outstanding loan balances during the one-year period ending on the day before the date on which a loan is made.

The foregoing loan limits shall apply only at the time the loan is requested. The Plan Committee may also establish guidelines relating to the ability of the participant to repay the loan, which shall determine the maximum amount of any loan which can be made to any participant.

12.7 <u>Interest</u>. Each loan shall bear interest at a rate to be fixed by the Plan Committee. The interest rate determined by the Plan Committee shall be the prime rate charged by commercial lending institutions in similar situations effective for the first day of the calendar quarter in which the loan application was received by the Plan Committee. Interest rates shall be fixed for the term of the loan at the time the loan is made. The interest rate determined hereunder shall be a "reasonable rate of interest" within the meaning of regulations by the Department of Labor.

12.8 <u>Term of Loan and Repayment</u>. The Plan Committee shall review each loan request and decide whether or not it shall be approved. The decision of the Plan Committee regarding the approval of the loan request shall be final and binding on all parties. The period of repayment for any loan shall be determined by mutual agreement between the Plan Committee and the participant, but such period shall in no event exceed sixty months; <u>provided</u>, <u>however</u>, that the sixty-month repayment period restriction shall not apply to any principal residence loan, which is a loan used to acquire a dwelling that is to be used within a reasonable period of time as the principal residence of the participant. The Plan Committee shall have discretion to determine when and under what, if any, circumstances principal residence loans shall be made and the loan repayment period for such loans.

A loan to a participant shall be secured by the Loan Account of the participant. Loan payments by a participant who is employed as a full-time or part-time permanent employee shall be required to be made through payroll deductions, and all such participants shall be required, in the manner prescribed by the Plan Committee, to authorize the Employer to deduct the loan payments from the participant's wages or salary, which amounts shall be transmitted to the Trustee and applied against the outstanding loan balance. Loan payments by a participant who is employed other than as a full-time or part-time permanent employee will be made by payroll deduction to the extent possible. If such participant does not receive a paycheck or if the paycheck is less than the loan repayment amount, the participant must repay the loan by personal check. Loan payments by a participant who is employed by an Affiliate or Subsidiary which is not a participating Employer shall be made by payroll deduction unless payroll deduction is not permissible or the Plan Administrator determines such method is not practicable. If loan payments are not made by payroll deduction, the participant must make such loan payments by personal check.

For a Flexsys Participant or an AES Participant, the Plan shall accept as loan payments, amounts paid by the participant on a monthly basis while employed by Flexsys America LP or AES (as the case may be), an Employer or an Affiliate, and the outstanding principal and interest of any such loan will not be treated as a deemed taxable distribution as provided in Section 12.11 until the participant's Accounts are distributed. Loan payments by a retired or terminated vested participant who is a "party-in-interest" (as such term is defined in Section 3(14) of ERISA) shall be made by personal check.

Participants may prepay the entire amount of the remaining unpaid principal balance (and all remaining interest due thereon) other than by payroll deduction at any time without penalty.

12.9    Source of Loan Funds.  Loans shall only be made from a participant's Participant Accounts. A participant's Employer Matching Account shall not under any circumstances be used for a loan.

12.10   Accounting for Loans.  A loan granted to a participant shall be made by liquidating and converting to cash the Before-Tax Accounts, Direct Rollover Account and After-Tax Contributions Accounts, in that order. If the participant's Participant Accounts are invested in two or more of the Investment Funds, the Pharmacia Stock Fund and/or Pre-Mixed Portfolios, the loan proceeds shall be taken pro rata from such Investment Funds, the Pharmacia Stock Fund and/or Pre-Mixed Portfolios. A participant's Accounts shall be debited in the following order: Before-Tax Accounts, Direct Rollover Account and After-Tax Accounts. A Loan Account shall then be established for the participant, which shall reflect the outstanding unpaid balance of the loan from time to time in accordance with Section 9.3. Loan repayments shall be separated into principal and interest payments. Principal payments shall be debited against the participant's Loan Account and credited to his Participant Accounts in the following order:

(a)    First, to the After-Tax Accounts up to the amount that was debited to such accounts to make the loan;

(b)    Second, to the Direct Rollover Account up to the amount that was debited to such account to make the loan; and

(c)    Third, to the Before-Tax Accounts up to the amount that was debited to such accounts to make the loan.

Interest payments shall be debited against the participant's Loan Account and credited to his Participant Accounts in the same manner as the outstanding loan balance. Principal and interest payments shall be invested in the Investment Funds and/or Pre-Mixed Portfolios in accordance with the participant's current investment election for new contributions.

12.11   Withdrawals and Distributions While Loan Balance is Outstanding.  A participant who applies for a withdrawal of his After-Tax Accounts shall be eligible only to the extent that amounts are available in excess of the balance of the participant's Loan Account. Such a withdrawal shall not cancel the loan on an automatic basis.

When a final distribution is made with respect to a participant who has an outstanding loan balance, the participant (or his beneficiary) shall receive a distribution of his vested Accounts. In addition, the participant's promissory note shall be distributed to the participant (or his beneficiary) and the balance in the participant's Loan Account shall be reduced to zero.

If a participant who has an outstanding loan balance terminates employment, he may repay the entire amount of the outstanding unpaid principal and interest prior to his termination of employment. If such amount is not repaid within two months following the participant's termination of employment, the participant's promissory note shall be distributed to the participant (or his beneficiary), unless such participant continues to qualify as a party-in-interest, and the balance in the participant's Loan Account shall be reduced to zero. If such participant continues to qualify as a party-in-interest, he may continue to make loan payments by personal check; however, he may not elect to begin receiving payments under the Installment Payout Option until the entire amount of the outstanding principal and interest is repaid.

In no event shall a participant, his beneficiary, or any other person be paid in cash (or property other than the promissory note of the participant) an amount attributable to a balance in a participant's Loan Account.

12.12  Unpaid Balances at End of Sixty-Month Period.  In the event that any principal or interest on any loan remains outstanding at the end of sixty months, the Trustee, or its delegate, shall declare the remaining unpaid loan balance to be a taxable distribution from the Plan for purposes of Section 72(p) of the Code. The participant's tax basis in this Plan shall be decreased by the amount of such taxable distribution, but not below zero. If the outstanding loan balance is subsequently repaid, the principal payments shall be credited as provided in Section 12.10. For all other purposes, the remaining unpaid loan balance shall remain a legal obligation of the participant, and the Trustee and the Plan Committee shall take all necessary action to ensure its collection.

12.13  Hardship Withdrawal in Bankruptcy.  Upon an adjudication of bankruptcy, as defined below, the Plan Committee shall determine if the bankruptcy has caused the participant to incur a hardship. If the Plan Committee, in its sole discretion, determines that a hardship (within the meaning of Section 401(k)(2)(B) of the Code and the Treasury regulations issued thereunder) exists, the Plan Committee shall declare a hardship distribution, the promissory note shall be distributed to the participant, and the participant's Loan Account shall be reduced by the amount of the outstanding loan balance. In no event shall a participant, his beneficiary or any other person be paid in cash (or property other than the promissory note of the participant) an amount attributable to a balance in his Loan Account. An "adjudication of bankruptcy" means the earlier of:

(a)    An entry of an order for relief with respect to the participant under the United States Bankruptcy Code, as amended; or

(b)    The filing of a petition against the participant in an involuntary case under the United States Bankruptcy Code, as amended.

43

12.14  **Failure to Repay Loans.** The Plan Committee shall establish uniform rules to apply when a participant fails to repay any portion of a loan made to him and accrued interest thereon in accordance with the terms of the loan, or when any portion of a loan and accrued interest thereon remains unpaid on a participant's termination of employment. Such rules shall be set forth in the Loan Procedures.

12.15  **Loans to Certain Terminated or Retired Participants.** Notwithstanding anything to the contrary contained in the Plan, a participant who has terminated employment and who is a party-in-interest (as defined in Section 3(14) of ERISA) shall be eligible to request a loan in accordance with Section 12.4 and to obtain a loan. Notwithstanding the preceding, if a participant who is receiving payments pursuant to the Installment Payout Option and who is a party-in-interest (as defined in Section 3(14) of ERISA) obtains a loan under the Plan, the installment payments to such participant shall be suspended during the term of the loan.

## SECTION 13
## The Plan Committee

13.1  **Membership.** The Plan Committee shall consist of three or more members appointed by the Corporation.

13.2  **Plan Committee's General Powers, Rights and Duties.** The Plan Committee shall have the duty and power to determine whether any party is entitled to any benefit under the Plan and to administer the Plan in all its details. Without limiting the foregoing, the Plan Committee is, given the powers, rights and duties specifically stated elsewhere in the Plan, the Trust Agreement or any other document, and in addition is given the following powers, rights and duties:

   (a)  To determine all questions arising under the Plan, including the power to determine the rights or eligibility of employees or participants and any other persons, and the amounts of their benefits under the Plan, and to remedy ambiguities, inconsistencies or omissions.

   (b)  To adopt such rules of procedure and regulations as, in its opinion, may be necessary for the proper and efficient administration of the Plan and as are consistent with the Plan and Trust Agreement.

   (c)  To enforce the Plan in accordance with terms of the Plan and the Trust Agreement and in accordance with the rules and regulations adopted by the Plan Committee as provided above.

   (d)  To direct the Trustee as respects payments, distributions or loans from the Trust Fund in accordance with the provisions of the Plan.

   (e)  To furnish the Employers with such information as may be required by them for tax or other purposes as respects the Plan.

   (f)  To employ agents, attorneys, accountants or other persons (who also may be employed by the Employers, the Fund Committee or the Trustee), and allocate or delegate to them such powers, rights and duties as the Plan Committee may consider necessary or advisable to properly carry out the administration of the Plan, provided

44

that such allocation or delegation and the acceptance thereof by such agents, attorneys, accountants or other persons, shall be in writing.

13.3   **Manner of Action.** During any period in which two or more Plan Committee members are acting with respect to the Plan, the following provisions apply where the context admits:

(a)   The Plan Committee members may act by meeting or may take action in a writing signed without meeting, and may sign any document by signing one document or concurrent documents.

(b)   An action or a decision of a majority of the members of the Plan Committee as to a matter shall be as effective as if taken or made by all members of the Plan Committee.

(c)   A Plan Committee member by writing may delegate any or all of his rights, powers, duties and discretions to any other Plan Committee member, with the consent of the latter.

(d)   If, because of the number qualified to act, there is an even division of opinion among the Plan Committee members as to a matter, a disinterested party selected by the Plan Committee shall decide the matter and such party's decision shall control.

(e)   Except as otherwise provided by law, no member of the Plan Committee shall be liable or responsible for an act or omission of the other Plan Committee member(s) in which the former has not concurred.

(f)   The certificate of the Secretary of the Plan Committee or of a majority of the Plan Committee members that the Plan Committee has taken or authorized any action shall be conclusive in favor of any person relying on the certificate.

(g)   The Plan Committee, as a Named Fiduciary, may delegate its authority, duties and responsibilities hereunder to other persons, including the Corporation and its officers, employees or agents. Such a delegation shall be in writing and specify the identity of the delegate and the responsibilities delegated to such person.

13.4   **Information Required by Plan Committee.** The Employers shall furnish the Plan Committee with such data and information as the Plan Committee may deem necessary or desirable in order to administer the Plan. The records of the Employers as to an employee's or participant's period or periods of employment, termination of employment and the reason therefor, leave of absence, reemployment and earnings will be conclusive on all persons unless determined to the Plan Committee's satisfaction to be incorrect. Participants and other persons entitled to benefits under the Plan also shall furnish the Plan Committee with such evidence, data or information as the Plan Committee considers necessary or desirable to administer the Plan.

13.5   **Plan Committee Decision Final.** Subject to applicable law and the provisions of Section 13.6, any interpretation of the provisions of the Plan and any decision on any matter within the discretion of the Plan Committee made by the Plan Committee in good faith shall be binding on all persons. A misstatement or other mistake of fact shall be corrected when it

45

becomes known and the Plan Committee shall make such adjustment on account thereof as it considers equitable and practicable.

13.6 **Review of Benefit Determinations.** The Plan Committee will provide notice in writing to any participant, beneficiary or other person whose claim for benefits under the Plan is denied and the Plan Committee shall afford such participant, beneficiary or other person a full and fair review of its decision, if so requested.

13.7 **Delegation of Authority.** Notwithstanding anything herein to the contrary, the Plan Committee or Fund Committee may delegate any of its authority, duties or responsibilities under this Plan to any other person, including the Corporation and its officers, employees or agents. Such a delegation shall be in writing and shall specify the identity of the delegate and the responsibilities delegated to such person.

13.8 **Uniform Rules.** The Plan Committee shall administer the Plan on a reasonable and nondiscriminatory basis and shall apply uniform rules to all participants similarly situated.

## SECTION 14
### Relating to the Employers

14.1 **Action by Employers.** Any action required or permitted of an Employer under the Plan shall be by resolution of its Board of Directors, by a duly authorized committee of its Board of Directors, or by a person or persons authorized by resolution of its Board of Directors or by resolution of such committee.

14.2 **Additional Employers.** Any Affiliate or Subsidiary that is not an Employer may adopt the Plan and become an Employer under the Plan and a party to the Trust Agreement by filing with the Plan Committee certified copies of:

   (a) a resolution of the Board of Directors of the Affiliate or Subsidiary providing for its adoption of the Plan; and

   (b) a resolution of the Corporation's Board of Directors, or the Executive Committee of the Board of Directors of the Corporation, consenting to the adoption of the Plan by such Affiliate or Subsidiary.

14.3 **Restrictions as to Reversion of Trust Assets to Employers.** Except as to contributions and premiums paid as a result of mathematical error, the Employers shall have no right, title or interest in the assets of the Trust Fund nor will any part of the assets of the Trust Fund at any time revert or be repaid to an Employer, unless the Internal Revenue Service initially determines that the Plan, as applied to an Employer that had not previously maintained the Plan, does not meet the requirements of a "qualified plan" under the Code.

## SECTION 15
### General Provisions

15.1 **Notices.** Each person entitled to benefits under the Plan must file in writing with the Plan Committee such person's post office address and each change of post office address. Any

46

communication, statement or notice addressed to any such person at the last post office address filed with the Plan Committee will be binding upon such person for all purposes of the Plan, and the Plan Committee, the Fund Committee, the Employers or the Trustee shall not be obligated to search for or ascertain the whereabouts of any such person. Any notice or document required to be given to or filed with either the Plan Committee or the Fund Committee shall be considered as given or filed if delivered or mailed by registered mail, postage prepaid, to such committee in care of the Corporation, 10300 Olive Blvd., P.O. Box 66760, St. Louis, Missouri 63166.

15.2    Waiver of Notice. Any notice required under this Plan may be waived by the person entitled to notice.

15.3    Absence of Guaranty. Neither the Plan Committee, the Corporation nor any Employer in any way guarantees the Trust Fund or any other fund from loss or depreciation, nor guarantees any payment to any person. The liability of the Employers, the Trustee, the Plan Committee or the Corporation to make any payment under the Plan will be limited to the assets held by the Trustee as a part of the Trust Fund.

15.4    Employment Rights. The Plan does not constitute a contract of employment, and participation in the Plan will not give any participant the right to be retained in the employ of the Employers, nor any right or claim to any benefit under the Plan, unless such right or claim has specifically accrued under the terms of the Plan.

15.5    Interests Not Transferable. Except as may be required by the tax withholding provisions of the Code, Section 401(a)(13)(B) of the Code dealing with Qualified Domestic Relations Orders, or a state's income tax act, and except (to the extent permitted by law) as to any debt owing to the Trustee as a result of participation in the Plan, the interests of participants and their beneficiaries under this Plan and the Trust Agreement are not subject to the claims of their creditors and may not be voluntarily or involuntarily sold, transferred, alienated, assigned or encumbered. This paragraph shall not apply to any offset of a participant's benefits against an amount that the participant is ordered or required to pay to the plan if the offset is permitted by Section 401(a)(13)(C) and (D) of the Code.

15.6    Facility of Payment. When a person entitled to benefits under the Plan is under a legal disability, or, in the Plan Committee's opinion, is in any way incapacitated so as to be unable to manage his financial affairs, the Plan Committee may direct that the benefits to which such person otherwise would be entitled shall be made to such person's legal representative, or to a relative or friend of such person for such person's benefit, or the Plan Committee may direct the application of such benefits for the benefit of such person. If the Plan Committee receives proper authorization by a participant or any other person entitled to benefits under the Plan, and unless and until the Plan Committee is notified or becomes aware that such authorization no longer is in effect, the Plan Committee will direct that periodic deposits of the benefits which otherwise would be payable directly to the participant shall be made into a savings or checking account established in his name at a bank or other financial institution. Any payment made in accordance with the provisions of this Section 15.6 shall be a full and complete discharge of any liability for such payment under the Plan.

47

15.7  **Gender and Number.** Where the context admits, words denoting the masculine gender shall include the feminine and neuter genders, the singular shall include the plural, and the plural shall include the singular.

15.8  **Evidence.** Evidence required of anyone under the Plan may be by certificate, affidavit, document or other information which the person acting on it considers pertinent and reliable, and signed, made or presented by the proper party or parties.

15.9  **Indemnity.** Without in any way limiting the scope of any indemnity agreement entered into in favor of or by and between parties referred to in this Section, the Plan Committee, the members of the committee, the former members of the committee and any persons who are or were directors, officers or employees of the Employers, Affiliates or Subsidiaries and each of them, may be indemnified and saved harmless by the Corporation from and against any and all liability, or allegations of liability, to which the Plan Committee, the members or former members of the committee, such directors, officers, or employees or such former Directors, officers or employees may be subjected by reason of any act done or omitted to be done in good faith in the administration of the Plan or Trust or in the investment of the assets of the Trust, including all expenses reasonably incurred in their defense in the event the Corporation fails to provide such defense after having been requested in writing to do so.

15.10  **Controlling State Law.** To the extent not superseded by the laws of the United States, the laws of Missouri, determined without regard to its conflict of law rules, shall be controlling in all matters relating to the Plan.

15.11  **Severability.** In case any provisions of the Plan shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining provisions of the Plan, and the Plan shall be construed and enforced as if such illegal and invalid provisions had never been set forth in the Plan.

15.12  **Headings.** The headings and sub-headings in the Plan and Trust Agreement are inserted for convenience and reference only and are not to be used in construing this Plan or any provision thereof.

15.13  **Successors.** The provisions of this Plan shall be binding upon the Employers and their successors and assigns and upon the participants and their heirs, beneficiaries, estates and legal representatives.

15.14  **No Reductions for Social Security Increases.** No benefits otherwise payable under the Plan shall be decreased because of increases in Social Security Benefits occurring after the participant's termination of employment.

15.15  **Military Service.** Notwithstanding any other provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

## SECTION 16
### Amendment, Termination or Plan Merger

48

16.1    Amendment. While the Employers expect and intend to continue the Plan, the Corporation reserves the right to amend, retroactively or prospectively, the Plan from time to time, except as follows:

    (a)    Except as may be required by the Internal Revenue Service for the purpose of meeting the conditions for qualification or for tax deduction under Sections 401 through 415 and Section 501 of the Code or as may be required by ERISA or any other state or federal law, no action of the Corporation hereunder shall alter the operation of the Plan as it applies to employees with whom or with whose representatives there exists a written agreement pertaining to retirement income benefits, during the term of any such agreement.

    (b)    Except as provided in Section 14.3, under no condition shall any amendment result in the return or repayment to any Employer of any part of the Trust Fund or the income therefrom, or result in the distribution of the Trust Fund or the Insured Funds for the benefit of anyone other than employees and former employees of the Employers and any other persons entitled to benefits under the Plan.

16.2    Termination. The Plan will terminate as to all Employers on any date specified by the Corporation if 30 days' advance written notice of the termination is given to the Plan Committee, the Corporation, the Trustee and the other Employers. The Plan will terminate as to an individual Employer on the first to occur of the following:

    (a)    The date it is terminated by the Board of Directors of that Employer.

    (b)    The date the Employer completely discontinues its contributions under the Plan.

    (c)    The date that Employer is judicially declared bankrupt or insolvent.

    (d)    The dissolution, merger, consolidation or reorganization of that Employer, or the sale by that Employer of all or substantially all of its assets, except that:

        (i)    In any such event arrangements may be made with the consent of the Corporation whereby the Plan may be continued by any successor to that Employer or any purchaser of all or substantially all of its assets, in which case the successor or purchaser may be substituted for that Employer under the Plan and the Trust Agreement; and

        (ii)    If any Employer is merged, dissolved or in any way reorganized into, or consolidated with, any other Employer, the Plan as applied to the former Employer will automatically continue in effect without a termination thereof.

16.3    Plan Merger or Consolidation. In no event shall there be any merger or consolidation of the Plan with, or transfer of assets or liabilities to, any other plan unless each participant in the Plan would (if the Plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit the participant would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan had then terminated). In the event a qualified plan is merged into the Plan, the

Corporation may establish such rules and procedures as necessary to allocate the assets of accounts transferred to SIP among the Investment Funds.

16.4    Notice of Amendment, Termination or Plan Merger. Affected participants will be notified of any termination, plan merger, consolidation or substantial amendment within a reasonable time.

16.5    Vesting and Distribution on Termination. On termination or partial termination of the Plan, the date of termination or partial termination will be a Special Accounting Date and, after all adjustments then required have been made, the benefits of all affected participants will be fully vested. If, on termination or partial termination of the Plan, an affected participant remains an employee of any Employer or subsidiary, the amount of his benefits shall be retained in the Trust Fund, subject to his right to make withdrawals in accordance with Section 11, until after his termination of employment with such Employer, Affiliate or Subsidiary and as soon as practicable thereafter shall be paid to him in accordance with the provisions of Sections 10.4 and 10.5.

16.6    Transfer of Assets and Liabilities in Acquisitions and Divestitures. The Corporation and the Plan Committee as part of an acquisition, may request the Trustee in writing to accept the transfer of assets and liabilities from the trustee of an employee pension plan maintained by another employer ("Transferor Plan") to the Trust Fund; provided:

(a)    the Transferor Plan is qualified under Section 401(a) of the Code and the trust maintained by the Transferor Plan to which the assets and liabilities are transferred is exempt from tax under Section 501(a) of the Code;

(b)    the transfer complies with Section 414(1) of the Code; and

(c)    where required or advisable, the approval of all necessary governmental agencies has been obtained.

The Corporation and the Plan Committee as part of a divestiture, may request the Trustee in writing to transfer assets and liabilities of the Trust Fund to the trustee of an employee pension benefit plan maintained by another employer ("Transferee Plan"); provided:

(a)    the Transferee Plan is qualified under Section 401 (a) of the Code and the trust maintained by the Transferee Plan to which the assets and liabilities are transferred is exempt from tax under Section 501(a) of the Code;

(b)    the transfer complies with Section 414(1) of the Code; and

(c)    where required or advisable, the approval of all necessary governmental agencies is obtained.

Pending qualification of the Transferee Plan under Section 401(a) of the Code, a participant who terminates employment with the Employers, Affiliates and the Subsidiaries as a result of the divestiture may elect a distribution under Sections 10.4 and 10.5. Upon notification to the Plan Committee that the Transferee Plan is qualified under Section 401(a) of the Code, the participant may elect:

(a)     to have the Trustee transfer the balances of his Accounts in the Plan to the Transferee Plan; or

(b)     to receive a distribution pursuant to Sections 10.4 and 10.5 of the Plan.

Except as provided in the preceding paragraphs, no other transfer of assets and liabilities may be made to or from the Plan.

# SECTION 17
## Definitions

17.1 **AES Participant.** "AES Participant" shall mean any participant who transferred employment directly from an Employer to Advanced Elastomer Systems, Inc. during 1991.

17.2 **Affiliate.** "Affiliate" shall mean:

    (a)    a corporation that is a member of the same controlled group of corporations (within the meaning of Section 414(b) of the Code) as an Employer;

    (b)    a trade or business (whether or not incorporated) under common control (within the meaning of Section 414(c) of the Code) with an Employer;

    (c)    any organization (whether or not incorporated) that is a member of an affiliated service group (within the meaning of Section 414(m) of the Code) that includes an Employer, a corporation described in clause (a) of this subdivision or a trade or business described in paragraph (b) of this Section;

    (d)    any other entity required to be aggregated with the Employer pursuant to regulations issued under Section 414(o) of the Code.

17.3 **Break in Service.** "Break in Service" shall mean with respect to any employee the sum of (a) for a Former Monsanto Participant, any Break in Service under the Monsanto Plan as of the day before the Effective Date, and (b) the period of time commencing on the later of September 1, 1997 or the first day of the month following the participant's Separation Date and ending on the first day of the month containing the participant's Reemployment Commencement Date.

17.4 **Code.** The Internal Revenue Code of 1986, as amended from time to time, or any comparable section or sections of future legislation that amends, supplements, or supersedes any applicable provision of said Internal Revenue Code or any applicable regulations or court decisions thereunder.

17.5 **Disability or Disabled.** An employee shall be considered to be Disabled for purposes of this Plan if he has been deemed, under the terms of the applicable disability income plan maintained by his Employer at the time the participant ceases to perform services as an active Employee, to be totally and permanently disabled or to be disabled for any occupation, as the case may be.

17.6 **Distribution Date.** The term "Distribution Date" shall mean the date all of the issued and outstanding shares of common stock of the Corporation were distributed to holders of Monsanto Company's issued and outstanding shares of common stock.

17.7 **Employment Commencement Date.** The term "Employment Commencement Date" shall mean the later of the participant's Employment Commencement Date under the Monsanto Plan or the date the employee is first credited with an Hour of Service.

17.8   ERISA. Public Law 93-406, the Employee Retirement Income Security Act of 1974, as amended from time to time, or any comparable section or sections of future legislation that amends, supplements, or supersedes any applicable provisions of ERISA or any other applicable regulations or court decisions thereunder.

17.9   Flexsys Participant. "Flexsys Participant" shall mean a participant who transferred employment directly from an Employer, Affiliate or Subsidiary to Flexsys America LP on May 1, 1995.

17.10  Former Monsanto Participant. "Former Monsanto Participant" shall mean a participant whose accounts under the Monsanto Plan were transferred to the Plan as of the Effective Date.

17.11  Layoff. "Layoff" shall mean layoff of the participant from employment with an Employer.

17.12  Maternity or Paternity Absence. "Maternity or Paternity Absence" shall mean any absence due to pregnancy of the individual; birth of a child of the individual; placement of a child with the individual in connection with the adoption of such child by such individual; or caring for such child for a period beginning immediately following such birth or placement.

17.13  Normal Retirement Age. The term "Normal Retirement Age" shall mean age 65.

17.14  Parent Group. The term "Parent Group" shall mean an Employer and all of its directly or indirectly owned Affiliates.

.7.15  Pre-Mixed Portfolio. The term "Pre-Mixed Portfolio" means an investment portfolio under the Plan that (a) is invested in established proportions of the Investment Funds (other than the Corporation Stock Fund), (b) has been approved by the Funds Committee and (c) is offered as an investment alternative under the Plan. Each Pre-Mixed Portfolio shall be rebalanced periodically to maintain the established proportional investments in the respective Investment Funds (other than the Corporation Stock Fund).

17.16  Reemployment Commencement Date. The term "Reemployment Commencement Date" shall mean the first day following a Break in Service on which the participant is credited with an Hour of Service.

17.17  Separation Date. An employee's "Separation Date" shall be the later of (a) for a Former Monsanto Participant, the participant's Separation Date, if any, under the Monsanto Plan or (b) earliest of the following to occur:

(i)    the date the employee retires, dies or terminates employment with all Employers, Affiliates and Subsidiaries;

(ii)   the second anniversary of the first day of the employee's Maternity or Paternity Absence; or

(iii)  the first anniversary of the first day of the employee's absence for any other reason.

The period between the first and second anniversary of the first day of an employee's Maternity or Paternity Absence shall not be counted for purposes of determining an employee's Years of Service or his Breaks in Service.

53

17.18  Subsidiary.  A "Subsidiary" is any subsidiary or affiliate of the Corporation, 50 percent of the stock of which is controlled by the Corporation by application of the attribution rules of Sections 414(b) and 1563(a) of the Code.

## SECTION 18
## Top-Heavy Provisions

18.1  Determination of Top-Heavy.  Except as otherwise provided in this Section, the Plan shall be considered a Top-Heavy Plan with respect to any Plan Year if, as of the last day of the preceding Plan Year:

(a)  The aggregate of the sum of the Accounts of participants who are Key Employees exceeds sixty percent of the aggregate of the sum of the Accounts of all participants (the "60% Test"); or

(b)  The Plan is part of a required aggregation group (defined as (1) each qualified plan of the Employer in which at least one Key Employee participates, and (2) any other qualified plan of the Employer which enables a plan described in (1) to meet the requirements of Sections 401(a)(4) or 410 of the Code) and, as of the last day of the preceding Plan Year:

(i)  The sum of (1) the present value of the accrued benefits for Key Employees under all defined benefit plans included in such group, and (2) the aggregate of the Accounts of Key Employees under all defined contribution plans included in such group,

(ii)  Exceeds sixty percent of the sum, as of the last day of the preceding Plan Year, of the amounts specified in (i) above for all participants.

The accrued benefit of a participant other than a Key Employee shall be determined under (1) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the employer, or (2) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Section 411(b)(1)(C) of the Code.

Notwithstanding anything in this Section 18.1 to the contrary, the Plan shall not be considered a Top-Heavy Plan with respect to any Plan Year if the Plan is a part of a permissive aggregation group (defined as the required aggregation group of plans plus any other plan or plans of the Employer which, when considered as a group with the required aggregation group, would continue to satisfy the requirements of Sections 401(a)(4) and 410 of the Code), which does not satisfy the requirements of Section 18.1(b) above.

Distributions made within the preceding Plan Year and within the four Plan Years immediately preceding such Plan Year shall be added to the Account of any participant in determining whether the Plan shall be considered a Top-Heavy Plan. However, the Accounts and the Accrued Benefits of a participant who is not a Key Employee but who was a Key Employee in a prior Plan Year or who has not performed any services for any Employer maintaining the Plan at any time during such five-year period will be disregarded.

54

The preceding paragraph shall be disregarded and this paragraph shall apply for purposes of determining whether the Plan is a Top-Heavy Plan under Section 416(g) of the Code for Plan Years beginning after December 31, 2001. Distributions made within the preceding Plan Year under the Plan or any plan aggregated within this Plan under Section 416(g)(s) of the Code shall be added to the Account of any participant in determining whether the Plan shall be considered a Top-Heavy Plan. The preceding sentence shall also apply to distributions under a terminated plan which had it not been terminated would have been aggregated with this Plan under Section 416(g)(2)(A)(i) of the Code. In the case of a distribution made for a reason other than severance of employment, death or disability, this paragraph shall be applied by substituting "preceding Plan Year and the four Plan Years immediately preceding such Plan Year" for "preceding Plan Year."

18.2   Minimum Allocations. Notwithstanding the provisions of Section 6 or any other provision of the Plan to the contrary, for any year in which the Plan is deemed a Top-Heavy Plan, the minimum Employer Matching Contributions for a Plan Year for each participant who is a Non-Key Employee shall be equal to the lesser of:

(a)   Three percent of the participant's compensation (as defined in Section 18.9); or

(b)   The percentage at which Before-Tax Contributions and Employer Matching Contributions are made or required to be made under the Plan for the Key Employee for whom such percentage is highest for the Plan Year.

The minimum allocation shall be made even though, under other Plan provisions, the participant would not otherwise be entitled to receive an allocation, or would have received a lesser allocation for the year because of (i) the participants failure to complete 1,000 hours of service (or any equivalent provided in the Plan), or (ii) the participant's failure to make mandatory employee contributions to the plan, or (iii) compensation less than a stated amount. If a participant is also covered by a top-heavy defined benefit plan of an Affiliated Employer, "5%" shall be substituted for "3%" above in determining the minimum contribution.

18.3   Minimum Vesting. If a participant terminates employment with the Employers, Affiliates and Subsidiaries before retirement, payment of his Accounts shall be governed by Section 10.2 of the Plan.

18.4   Impact on Maximum Benefit. In the event that the aggregate of the sum of the Accounts of participants who are Key Employees under the Plan exceeds sixty percent of the aggregate of the sum of the Accounts of all participants, the adjustments to the limits in Section 7.2 set forth in Section 416(h) of the Code shall be applied effective as of the first day of the Plan Year in which the Plan is a Top-Heavy Plan.

18.5  Repeal. Modification or Postponement of Top-Heavy Provisions. In the event that all or any portion of Section 416 of the Code is modified, this Section 18 shall be construed to adopt such modifications. In the event that all or any portion of Section 416 of the Code is repealed, this Section 18 shall have no effect as of the effective date of such repeal. Furthermore, if the effective date of Section 416 of the Code is delayed or postponed, this Section 18 shall have no effect until the effective date of Section 416 of the Code.

18.6  Non-Key Employee. "Non-Key Employee" means any employee who is not a Key Employee (as defined in Section 416(i) of the Code).

18.7  Compensation. For purposes of this Section 18, compensation means the gross amount earned by an employee from an Employer during the Plan Year for services rendered while a participant as reported on Form W-2.

## SECTION 19
## Employee Stock Ownership Plan Provisions

19.1  Employee Stock Ownership Provisions of the Plan. This Section 19 sets forth special provisions applicable to the ESOP component of the Plan. The ESOP shall constitute an employee stock ownership plan within the meaning of Section 4975(e)(2) of the Code and Section 407(d)(6) of ERISA, and the ESOP shall be maintained as a component of the Plan as authorized by Treasury Regulation Section 54.4975-11(a)(5). The ESOP shall hold the following assets:

(a)  all assets acquired by the ESOP with the proceeds of any ESOP Loan (as defined in Section 19.2(e) below) and maintained by the ESOP in the ESOP Suspense Account (as defined in Section 19.2(g) below), the ESOP Interim Account (as defined in Section 19.2(d) below) or allocated among participants' Employer Matching Contributions Accounts;

(b)  all assets held in the ESOP Payment Account (as defined in Section 19.2(f) below);

(c)  all assets held in the Employer Matching Account (other than all common stock of the Corporation and other assets held in the Employer Matching Account under the Monsanto Plan at the time the Monsanto ESOP was adopted) and all subsequent contributions to or earnings of such accounts; and

(d)  all other property acquired by the ESOP.

Subject to the provisions of this Section, common stock of the Corporation allocated to a participant's Employer Matching Account shall be deemed to be assets of the ESOP. From time to time the Corporation may direct the Trustee to enter into an ESOP Loan pursuant to the provisions of this Section and to use the proceeds of an ESOP Loan to acquire common stock of the Corporation or to repay an ESOP Loan.

Unless otherwise specifically stated therein or unless the context otherwise requires, all other sections of the Plan apply to the Plan as a whole, and not solely to the ESOP component or the Savings and Investment Plan component of the Plan. The provisions of this section shall supersede contrary provisions of the Plan.

56

19.2    Definitions.

(a)    Allocated Dividends. "Allocated Dividends" shall mean cash dividends which are paid during the Plan Year on common stock of the Corporation held by the ESOP that (i) has been allocated to participants' Employer Matching Account and (ii) has been acquired with the proceeds of an ESOP Loan.

(b)    Disqualified Person. "Disqualified Person" shall mean a disqualified person within the meaning of Section 4975(e)(2) of the Code.

(c)    Employer Contributions. "Employer Contributions" shall mean all Employer Matching Contributions.

(d)    ESOP Interim Account. "ESOP Interim Account" shall mean the account described in Section 19.5(b).

(e)    ESOP Loan. "ESOP Loan" shall mean a loan described in Section 19.3(a).

(f)    ESOP Payment Account. "ESOP Payment Account" shall mean the account described in Section 19.4.

(g)    ESOP Suspense Account. "ESOP Suspense Account" shall mean the account described in Section 19.3(d).

(h)    Financed Shares. "Financed Shares" shall mean shares of common stock of the Corporation acquired by the Plan with the proceeds of the ESOP Loan, or otherwise held as a result of conversion or other disposition of such shares, or acquired with the proceeds of any indebtedness previously incurred by the Trust, which is refinanced with the proceeds of the ESOP Loan; provided such other shares are Employer Securities (as defined in Section 409(1) of the Code) ("Employer Securities").

(i)    Trust Agreement. "Trust Agreement" shall mean the Solutia Inc. Defined Contribution and Employee Stock Ownership Trust Agreement, as may be amended from time to time.

(j)    Trustee. "Trustee" shall mean the trustee of the Trust Agreement.

(k)    Unallocated Dividends. "Unallocated Dividends" shall mean cash dividends paid on common stock of the Corporation acquired with the proceeds of an ESOP Loan other than Allocated Dividends.

19.3    ESOP Loan.

(a)    Authority. The Corporation may direct the Trustee to obtain an ESOP Loan or Loans to finance the acquisition of Financed Shares or to repay an existing ESOP Loan. The term "ESOP Loan" means a loan made to the ESOP, including a direct loan of cash, a purchase money transaction, or an assumption of an obligation of the ESOP. An ESOP Loan may be made by a Disqualified Person or may be secured by

57

a guarantee of a Disqualified Person. "Guarantee" includes an unsecured guarantee and the use of the assets of a Disqualified Person as collateral for an ESOP Loan.

(b) Conditions of Loans. An ESOP Loan must be primarily for the benefit of the participants and their beneficiaries. The terms of an ESOP Loan, whether or not between independent parties, must, at the time the ESOP Loan is made, be at least as favorable to the ESOP as the terms of a comparable loan resulting from arm's length negotiations between independent parties. At the time an ESOP Loan is made, the interest rate for the ESOP Loan must not be in excess of a reasonable rate of interest, taking into account the amount and duration of the ESOP Loan, the security and guarantee (if any) involved, and the interest rate prevailing for comparable loans. The term of an ESOP Loan must be definitely ascertainable.

(c) Use of Loan Proceeds. The proceeds of an ESOP Loan must be used within a reasonable time after their receipt by the ESOP and may be used only for one or more of the following purposes:

(i) to acquire common stock of the Corporation,

(ii) to repay such ESOP Loan, or

(iii) to repay a prior ESOP Loan.

Pursuant to terms of the Trust Agreement, the Trustee shall purchase any shares of common stock of the Corporation required for the ESOP, or cause such shares to be purchased, in the open market, by private purchase from the Corporation or any of its Subsidiaries or Affiliates, or by other private transactions.

(d) ESOP Suspense Account. All assets acquired by the ESOP with the proceeds of an ESOP Loan shall be added to and maintained in the ESOP Suspense Account. The ESOP Suspense Account shall also include all assets transferred to this Plan from the "ESOP suspense account" of the Monsanto Plan. Assets shall be withdrawn from the ESOP Suspense Account pursuant to the provisions of Section 19.5 as though all securities in the ESOP Suspense Account were encumbered.

(e) Liability and Collateral for Loan. An ESOP Loan must be without recourse against the ESOP. The only assets of the ESOP which may be used as collateral on an ESOP Loan are common stock of the Corporation acquired with the proceeds of the ESOP Loan and common stock of the Corporation that was used as collateral on a prior ESOP Loan repaid with the proceeds of the current ESOP Loan. Except as permitted pursuant to Section 404(k) of the Code, no person entitled to payment under an ESOP Loan shall have any right to assets of the Plan other than:

(i) any collateral given for the ESOP Loan,

(ii) Employer Contributions that are made to the ESOP and designated to be used to meet its obligations under the ESOP Loan, and

(iii)  earnings attributable to such collateral and the investment of such Employer Contributions.

3.4  Repayment of Loan: ESOP Payment Account.

(a)  Payments Generally.  If an ESOP Loan is undertaken, the Trustee shall cause the ESOP to repay the lender as payments on the ESOP Loan are required pursuant to the terms of the ESOP Loan agreement. Payments shall be made from the ESOP Payment Account. Except as otherwise provided herein, the ESOP Payment Account shall hold an amount equal to:

   (i)  the sum of:

      (A)  Employer Contributions (other than contributions of Employer Securities) that are designated to be made to the Trust to enable the Trust to meet its obligations under the ESOP Loan; plus,

      (B)  earnings received during or prior to that year on such contributions and on any Financed Shares (including Allocated and Unallocated Dividends); plus,

      (C)  any other assets lawfully available for this purpose;

   (ii)  minus, such payments made in all prior Plan Years.

Allocated Dividends that are not used by the end of the Plan Year under subparagraph (i)(B) above to make payments on the ESOP Loan shall be allocated to participants' Accounts.

Notwithstanding the foregoing, such Allocated Dividends may be used within a reasonable time after the close of the Plan Year to make payments on the ESOP Loan, provided the participants' Accounts are then credited with the required amounts under Section 19.5(b)(i).

(b)  Default Provision.  If, at the time a loan payment is required there is a default, and as a result of the default, there are insufficient assets in the ESOP Payment Account to make the required payment, and under the terms of the ESOP Loan, the shares of common stock of the Corporation held in the Suspense Account are pledged as collateral, the Trustee may transfer shares in the ESOP Suspense Account to the ESOP Payment Account that are sufficient, when added to the other assets in the ESOP Payment Account, to make the required loan payment. This provision shall be interpreted consistent with Treasury Regulation Section 54.4975-7(b)(6).

(c)  Sale of Employer Stock in the Suspense Account.  If, in circumstances permitted under Section 4975 of the Code or ERISA, common stock of the Corporation held in the ESOP Suspense Account is sold and is not reinvested within 120 days in Employer Securities, the proceeds from such sale shall be transferred to the ESOP Payment Account and shall be used to satisfy any outstanding obligations under the ESOP Loan (by repayment, defeasance or other means). Notwithstanding anything herein to the contrary, no proceeds attributable to a sale of Financed Shares held by

59

the ESOP Suspense Account shall be released for allocation to a participant's Employer Matching Contributions Accounts until all outstanding ESOP Loans have been repaid.

(d) Excess in Suspense Account. If, at any time after all outstanding ESOP Loans have been retired, assets remain in the ESOP Suspense Account, such assets shall be transferred to an ESOP Interim Account.

(e) Refinancing. If, while one or more ESOP Loan is outstanding, a subsequent ESOP Loan is undertaken to refinance such earlier loan(s), the proceeds of the subsequent ESOP Loan may be transferred from the ESOP Suspense Account to the ESOP Payment Account to the extent such transferred amounts do not exceed the outstanding balance on the earlier ESOP Loan(s), and such amount shall be used to retire the prior ESOP Loan(s). Refinancing of the earlier ESOP Loan(s) shall not cause a release of shares from the ESOP Suspense Account under Section 19.5 below.

(f) Investment of Assets Held in ESOP Payment Account. Assets held in the ESOP Payment Account shall be invested in a manner that is consistent with the provisions of the Trust Agreement.

19.5 Release from Suspense Account and Allocation Among Participants' Accounts.

(a) Annual Release from Suspense Account. With respect to any Plan Year for which one or more payments are made on an ESOP Loan pursuant to Section 19.4(a) (other than by reason of Section 19.4(e)), shares of common stock of the Corporation shall be released from the ESOP Suspense Account in accordance with the General Rule or the Special Rule, as determined with respect to each ESOP Loan by the Corporation at the time the ESOP Loan is taken out. If the Corporation does not specify which rule is to be used, the General Rule shall be used.

(i) General Rule. Under the General Rule, the number of shares released for the Plan Year is equal to the number of shares held in the ESOP Suspense Account immediately before the payment(s) multiplied by a fraction, the numerator of which is equal to the total amount of loan payments made with respect to such Plan Year and the denominator of which is equal to the sum of the numerator and the principal and interest expected to be paid in all future Plan Years. If the collateral includes more than one class of stock of the Corporation, the number of shares of each class to be released for a Plan Year shall be determined by applying the same fraction to each class. If, pursuant to the terms of an ESOP Loan, loan payments are to be made other than annually, the formulae set forth above shall be adjusted in a manner consistent with the General Rule so as to take into account the frequency and timing of the loan payments and the other terms and conditions of the ESOP Loan.

(ii) Special Rule. The Special Rule is based solely on principal payments as follows:

The number of shares released from the ESOP Suspense Account for the Plan Year shall equal the total number of such shares held in the ESOP Suspense Account immediately prior to the release, multiplied by a fraction:

    (A)  the numerator of the fraction is the amount of principal paid for the Plan Year; and

    (B)  the denominator of the fraction is the sum of the numerator plus the principal to be paid for all future Plan Years.

The Corporation may apply the Special Rule only if the ESOP Loan provides for annual payments of principal and interest at a cumulative rate which is not less rapid at any time than level annual payments of such amounts for ten years, and only if the interest included in any payment is disregarded to the extent that it would be determined to be interest under standard loan amortization tables. The Special Rule shall not be applicable from the time that, by reason of a renewal, extension or refinancing, the sum of the expired duration of the ESOP Loan, the renewal period, the extension period and the duration of a new ESOP Loan exceeds ten years.

(iii)  In determining the number of shares to be released for any Plan Year under either the General Rule or the Special Rule:

    (A)  the number of future years under the ESOP Loan must be definitely ascertainable and must be determined without taking into account any possible extensions or renewal periods; and

    (B)  if the ESOP Loan provides for a variable interest rate, the interest to be paid for all future Plan Years must be computed by using the interest rate applicable as of the end of the Plan Year for which the determination is being made.

(b)  <u>Allocation of Released Shares</u>.

Financed Shares shall be allocated to the Employer Matching Accounts of participants as follows:

(i)  <u>Dividend Replacement Allocation</u>. If Allocated Dividends are used to make payments on an ESOP Loan, released common stock of the Corporation (and, if applicable, additional shares of common stock of the Corporation contributed by the Corporation or purchased by the Trustee using cash contributions) having a fair market value equal to the amount of the Allocated Dividends used in making such payments on the ESOP Loan shall be allocated to the Employer Matching Accounts of participants in proportion to the shares of common stock of the Corporation credited to each account with respect to which Allocated Dividends have been paid. Notwithstanding anything herein to the contrary, if Allocated Dividends are used to repay an ESOP Loan, the Accounts which are affected shall be put in the same

position as a result of this section as if such dividends had been immediately used to acquire common stock of the Corporation.

(ii) **Employer Matching Contributions With Respect to Financed Shares.** After the application of subparagraph (i) above, remaining released shares of common stock of the Corporation shall be allocated among participants' Employer Matching Accounts in the same manner and amounts as if they were Employer Matching Contributions (described in Section 6). Allocations under this subparagraph (ii) shall take precedence over Section 6, and allocations hereunder shall reduce, dollar for dollar, the amount of Employer Contributions required in Section 6.

(iii) **ESOP Interim Account.**

    (A) **Release in excess of (b)(i) and (b)(ii) Allocation Requirements.** If, at any time during the Plan Year, the value of shares released from the Suspense Account exceeds the amount of the dividend replacement allocation described in subparagraph (b)(i) above and the amount in subparagraph (b)(ii) above, such excess shares shall be placed in the ESOP Interim Account.

    (B) **Release insufficient to cover (b)(i) and (b)(ii) Allocation Requirements.** If the value of shares released is less than the amount required under sections (b)(i) and (b)(ii), amounts shall be removed from the ESOP Interim Account, to the extent available, to satisfy the (b)(i) and (b)(ii) requirements. If the assets in the ESOP Interim Account are insufficient when added to the value of shares released to satisfy the dividend replacement allocation of (b)(i) or the matching contribution requirement of (b)(ii), the necessary number of shares of common stock of the Corporation may be released from the ESOP Suspense Account and added to ESOP Interim Account; provided, however, the cumulative number of shares released shall not exceed the number that would otherwise be released by the payment of the remaining ESOP Loan payments projected to be made during the remainder of the Plan Year, and the shares that are released from the ESOP Suspense Account in this manner shall be credited toward the number of shares that must be released pursuant to this section once the ESOP Loan payments for the remainder of the Plan Year are actually made.

In the alternative or as a supplement, the Corporation may direct that the Employer(s) contribute an amount sufficient to cover the shortfall or an amount sufficient to make a loan payment that will cause the release of sufficient shares to cover the shortfall.

    (C) **Excess remaining in ESOP Interim Account.** If, on the last day of the Plan Year, there remains assets in the ESOP Interim Account, such assets shall be allocated among the Employer Matching Accounts of participants in the same proportion that amounts described in

subparagraph (b)(ii) were allocated to Employer Matching Accounts throughout the Plan Year.

9.6 **Proceeds of ESOP Loans.** The proceeds of each ESOP Loan shall be placed in the ESOP Suspense Account and, as soon as practicable, shall be either invested in common stock of the Corporation or used to repay an ESOP Loan. No common stock of the Corporation acquired with the proceeds of an ESOP Loan may be subject to a put, call, or other option, or buy-sell, except for the put option described in Section 19.9 below, or similar arrangement while held by and when distributed from the Plan, whether or not the Plan is then an ESOP within the meaning of Section 4975(e)(7) of the Code.

19.7 **Acquisition and Disposition of Common Stock of the Corporation.**

(a) **General.** Any purchase of common stock of the Corporation by the Trustee shall be made at a price which is not in excess of its fair market value and any sale of common stock of the Corporation shall be made at a price which is not less than its fair market value. The Fund Committee may direct the Trustee to buy from, or sell common stock of the Corporation to, any person, subject to paragraph (b) below.

(b) **Transaction with Disqualified Person.** In the case of any transaction involving the transfer of common stock of the Corporation between the Trustee and a Disqualified Person, or any transaction involving common stock of the Corporation which is subject to ERISA Section 406(b), no commission shall be charged with respect to the transaction and the transaction shall be for adequate consideration (within the meaning of ERISA Section 3(18)).

(c) **Expenses.** No expense relating to the implementation of an ESOP shall be charged to the Plan.

19.8 **Employer Contributions to Retire Debt.** The Corporation shall make (or cause the other Employers to make) cash contributions to the Trust on or prior to the date on which a payment with respect to any outstanding ESOP Loan is scheduled to become due. The amount of such contribution(s) shall be sufficient, when added to earnings received on such contributions and earnings (including Allocated and/or Unallocated Dividends) on Financed Shares, together with any other assets of the Trust lawfully available for this purpose, to timely make such payments. Unless the Corporation shall itself make payments to satisfy the Trust's payment obligations directly to whomever shall be entitled to such payments, the Corporation also agrees to make (or cause the other Employers to make) such additional cash contributions to the Trust as may be necessary to enable the Trust to timely satisfy its other payment obligations thereunder, except to the extent inconsistent with the requirements of ERISA or the Code.

Except as provided in Section 19.4(c), if the payments on an ESOP Loan may be accelerated at the election of the borrower, the Fund Committee shall have sole discretion to direct the Trustee to accelerate repayment of an ESOP Loan.

19.9 **Put Option.** If at the time of distribution, common stock of the Corporation distributed from the ESOP is not readily tradeable on an established market (within the meaning of Section 409(h) of the Code), such stock shall be subject to a put option in the hands of a

Qualified Holder by which such Qualified Holder may sell all or any part of the stock distributed to him from the ESOP to the Corporation. The put option shall be subject to the following conditions:

(a)  Qualified Holder. The term "Qualified Holder" shall mean the participant or beneficiary receiving the distribution of such stock, or any other party to whom such stock is transferred by gift or by reason of death.

(b)  Initial Term. During the 60-day period following any distribution of such stock, a Qualified Holder shall have the right to require the Corporation to purchase all or a portion of the distributed stock held by the Qualified Holder. The purchase price to be paid for any such stock shall be its fair market value determined (i) as of the Accounting Date coinciding with or next preceding the exercise of the put option under this paragraph (b) or (ii) in the case of a transaction between the Plan and a Disqualified Person or a "party in interest" (within the meaning of Section 3(14) of ERISA), as of the date of the transaction.

(c)  Subsequent Term. If a Qualified Holder shall fail to exercise his put option right under Section 19.9(b), the option right shall temporarily lapse upon the expiration of the 60-day period. As soon as practicable following the last day of the Plan Year in which the 60-day option period expires, the Corporation shall notify the non-electing Qualified Holder (if he is then a shareholder of record) of the valuation of the stock as of that date. During the 60-day period following receipt of such valuation notice, the Qualified Holder shall again have the right to require the Corporation to purchase all or any portion of the distributed stock. The purchase price to be paid therefor shall be its fair market value determined (i) as of the Accounting Date coinciding with or next preceding the exercise of the put option under this paragraph (c) or (ii) in the case of a transaction between the Plan and a Disqualified Person or a "party in interest" (within the meaning of Section 3(14) of ERISA), as of the date of the transaction.

(d)  Trustee's Purchase Rights. The Trustee may be permitted, but not required, by the Corporation to purchase such stock put to the Corporation under a put option.

(e)  Exception to Term Limits. The period during which the put option is exercisable does not include any time when a Qualified Holder is unable to exercise it because the Corporation is prohibited from honoring it by applicable federal or state laws.

(f)  Effect of Code and Regulations. Except as otherwise required or permitted by the Code, the put options under this Section shall satisfy the requirements of Section 54.4975-7(b) of the Treasury Regulations to the extent, if any, that such requirements apply to such put options. Nothing in this Section 19.9 shall be interpreted as providing a Qualified Holder with rights greater than those required under the Code and applicable Treasury Regulations.

(g)  Exercise. A Qualified Holder must exercise his put option in writing to the Corporation. If a Qualified Holder exercises his put option under this Section, payment for the stock repurchased shall be made, in the case of a distribution of a participant's entire account within one taxable year, in substantially equal annual

64

payments over a period beginning not later than 30 days after the exercise of the put option and not exceeding five years (provided that adequate security and reasonable interest are provided with respect to unpaid amounts) or, in the case of other distributions, not later than 30 days after such exercise.

(h) Survival of Put Option Right. To the extent required under the Code and applicable Treasury Regulations, the provisions of this Section shall continue to apply to shares of common stock, whether or not the Plan is then an ESOP within the meaning of Section 4975(e)(7) of the Code.

19.10 Valuation. All valuations of common stock of the Corporation which are not readily tradeable on an established securities market shall be made by an independent appraiser meeting requirements similar to the requirements of the regulations prescribed under Section 170(a)(1) of the Code.

19.11 Forfeiture Rule. If a participant forfeits some portion of his ESOP benefits (allocated pursuant to the provisions of this Section), and if any of the benefits attributable to his ESOP benefits consists of assets other than common stock of the Corporation ("Other Assets") Assets"), such forfeiture shall apply first to Other Assets, and, thereafter, to common stock of the Corporation.

19.12 Dividends Paid On Common Stock of the Corporation Other Than Financed Shares. On or before December 31, 2001, the dividends paid on the common stock of the Corporation other than Financed Shares held by the ESOP shall be invested by the Trustee pursuant to Section 8.2. Effective after December 31, 2001, cash dividends paid on common stock of the Corporation held by the ESOP that has been allocated to participants' Employer Matching Accounts [other than such dividends which are used to make payments on an ESOP Loan pursuant to Section 19.4(9)] shall be, at the election of such participants or their beneficiaries,

(a) either paid (i) in cash to the participants or their beneficiaries, or (ii) paid to the Plan and distributed to participants or their beneficiaries not later than 90 days after the close of the Plan Year in which it is paid; or

(b) paid to the Plan and reinvested in common stock of the Corporation. The Plan Administrator shall establish an election procedure which shall comply with Section 404(k)(2)(A) of the Code, as amended by the Economic Growth and Tax Reconciliation Relief Act of 2001, and regulations and guidance issued thereunder.

19.13 Changes in Allocation and Forfeiture Formulae. To the extent necessary to comply with Rule 16b-3 of the Securities Exchange Act of 1934, the formulae for the release of Financed Shares from the ESOP Suspense Account set forth in Section 19.5 above and the formulae for the allocation of forfeitures set forth in Section 6 above may not be amended more than once every six months, other than to comport with changes in or requirements of the Code, ERISA or the rules thereunder.

9.14 Status of Delegates. The Fund Committee, as a Named Fiduciary, may delegate its authority, duties and responsibilities to other persons, including the Corporation and its

65

officers, employees or agents. Such a delegation shall be in writing and specify the identity of the delegate and the responsibilities delegated to such person. When the Fund Committee makes such a delegation designating the delegate as a Named Fiduciary and pursuant to the delegation, the delegate issues instructions to the Trustee concerning the administration and operation of the ESOP, the delegate shall also constitute a Named Fiduciary.

## SECTION 20
### Directed Rollovers

20.1    Directed Rollovers.
Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributor's election under this Section, a Distribute may elect, at the time and in the manner prescribed by the Plan Committee, to have any portion of an Eligible Rollover Distribution (as defined in Section 20.2) paid directly to an Eligible Retirement Plan (as defined in Section 20.3) specified by the Distribute (as defined in Section 20.4) in a Direct Rollover (as defined in Section 20.5). The portion of any distribution which consists of after-tax employee contributions which are not included in gross income may be paid only to an individual retirement account or annuity described in Section 408(a) or (b) of the Code, or to a qualified defined contribution plan described in Section 401(a) or 403(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and for the portion of such distribution which is not so includible.

20.2    Eligible Rollover Distribution. An Eligible Rollover Distribution is any distribution of all or any portion of the balance to the credit of the Distribute, except that an Eligible Rollover Distribution does not include:

(a)    any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life expectancy of the Distribute, or for a specified period of ten years or more;

(b)    any distribution to the extent such distribution is required under Section 401(a)(9) of the Code;

(c)    for distributions prior to January 1, 2002, the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and

(d)    other distributions designated by the IRS in revenue rulings, notices and other guidance of general applicability.

20.3    Eligible Retirement Plan. An Eligible Retirement Plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the Distributor's Eligible Rollover Distribution. However, in the case of an Eligible Rollover Distribution made on or before December 31, 2001 to the surviving spouse, an Eligible Retirement Plan is an individual retirement account or individual retirement annuity.

For distributions made after December 31, 2001 an eligible retirement plan shall also mean an annuity contract described in Section 403(b) of the Code and an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this plan. The definition of Eligible Retirement Plan shall also apply in the case of a distribution made under December 31, 2001 to a surviving spouse or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order as defined in Section 414(p).

20.4    Distributee.  A Distributee includes an employee or former employee. In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the Alternate Payee under a QDRO are Distributees with regard to the interest of the spouse or former spouse.

20.5    Direct Rollover. A direct rollover is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

# SUPPLEMENT 1 TO SOLUTIA INC.
## SAVINGS AND INVESTMENT PLAN FOR 1979 PARTICIPANTS

A.    Supplemental Participant. Any participant in the Plan who had his contributions and interest thereon transferred from the Variable and Extended Benefit portions of the Monsanto Company Salaried Employees' Pension Plan (1976) ("Pension Plan") to the Monsanto Plan and whose Accounts in the Monsanto Plan were transferred to this Plan shall be a "Supplemental Participant" hereunder.

B.    Supplemental Savings Account II. In addition to any other Accounts maintained under the Plan on his behalf, each Supplemental Participant shall have had established under the Plan a Supplemental Savings Account II to receive and hold his contributions and interest thereon attributable to the Variable Benefits and/or Extended Benefit portion of the Pension Plan, if any.

No additional funds may be deposited by the employee in his Supplemental Savings Account II. The Plan Committee shall maintain a Supplemental Savings Account II as well as the income, losses, appreciation and depreciation attributable thereto in the same manner as is provided under Section 8.1 of the Plan for each Supplemental Participant.

C.    Investment of Supplemental Savings Account II. Changes in the investment of the funds in the Supplemental Savings Account II shall be made pursuant to Section 9.4 of the Plan.

D.    Termination of Employment. A Supplemental Participant's Supplemental Savings Account II shall be fully vested and non-forfeitable at all times and subject to distribution upon termination of employment pursuant to the terms and conditions of the Plan.

E.    In-Service Withdrawal.

(1)    A Supplemental Participant may elect, in the manner prescribed by the Plan Committee, to withdraw one-half or all of his contributions held in his Supplemental Savings Account II (but not more than the value of his entire Supplemental Savings Account II, after all investment losses and depreciation thereon have been taken into account) which have not been previously withdrawn. Interest and/or savings on such contributions may not be withdrawn from a Supplemental Participant's Supplemental Savings Account II until termination of employment pursuant to Section 10 of the Plan or as provided in the next paragraph.

(2)    Notwithstanding the provisions of paragraph 1 of this Section, if a Supplemental Participant is actually making contributions to the Plan and is thus an active participant in the Plan as of any date on which he elects a Withdrawal as provided for in Section 11, he shall also receive distribution of the entirety of his Supplemental Savings Account II including interest and earnings, pursuant to the terms and conditions of such Section.

F.   **Loans.**   Loans can be made from a participant's Supplemental Savings Account II provided that the participant's loan request is approved and all of the terms, conditions, requirements and instructions of Section 12 of the Plan are met.

If a participant's Supplemental Savings Account II is used as a source of loan funds, the participant's account shall be debited as follows (pursuant to Section 12.10 of the Plan) to satisfy a loan request: Before-Tax Contribution Accounts, then After-Tax Contribution Accounts and Supplemental Savings Account II.

69

## SUPPLEMENT 2 TO SOLUTIA INC.
## SAVINGS AND INVESTMENT PLAN FOR 1981 SUPPLEMENTAL
## PARTICIPANTS

A.   Supplemental Participant. Any participant in the Plan who had his contributions and interest thereon transferred from the Monsanto Company Hourly-Paid Employees' Pension Plan (1976) ("Pension Plan") to the Monsanto Plan and whose Accounts in the Monsanto Plan were transferred tot his Plan shall be a "Supplemental Participant" hereunder.

B.   Supplemental Savings Account II. In addition to any other Accounts maintained under the Plan on his behalf, each Supplemental Participant shall have had established under the Plan a Supplemental Savings Account II to receive and hold his contributions and interest attributable to the Pension Plan, if any.

No additional funds may be deposited by the employee in his Supplemental Savings Account II. The Plan Committee shall maintain a Supplemental Savings Account II as well as the income, losses, appreciation and depreciation attributable thereto in the same manner as is provided under Section 8.1 of the Plan for each Supplemental Participant.

C.   Investment of Supplemental Savings Account II.

(a)   The Supplemental Savings Account II contributions and interest shall be initially invested in the Fixed Income Fund.

(b)   Changes in the investment of the funds in the Supplemental Savings Account II shall be made pursuant to Section 9.4 of the Plan.

D.   Termination of Employment. A Supplemental Participant's Supplemental Savings Account II shall be fully vested and non-forfeitable at all times and subject to distribution upon termination of employment pursuant to the terms and conditions of the Plan.

E.   In-Service Withdrawal.

(1)   A Supplemental Participant may elect, in the manner prescribed by the Plan Committee to withdraw one-half or all of his contributions held in his Supplemental Savings Account II (but not more than the value of his entire Supplemental Savings Account II, after all investment losses and depreciation thereon have been taken into account) which have not been previously withdrawn. Interest and/or earnings on such contributions may not be withdrawn from a Supplemental Participant's Supplemental Savings Account II until termination of employment pursuant to Section 10 of the Plan or as provided in the next paragraph.

(2)   Notwithstanding the provisions of paragraph 1 of this Section, if a Supplemental Participant is actually making contributions to the Plan and is thus an active participant in the Plan as of any date on which he elects a

70

Withdrawal as provided for in Sections 11, he shall also receive distribution of the entirety of his Supplemental Savings Account II, including interest and earnings, pursuant to the terms and conditions of such Section.

F.  Loans. Loans can be made from a participant's Supplemental Savings Account II provided that the participant's loan request is approved and all of the terms, conditions, requirements and instructions of Section 12 of the Plan are met.

If a participant's Supplemental Savings Account II is used as a source of loan funds, the participant's accounts shall be debited as follows (pursuant to Section 12.10 of the Plan) to satisfy a loan request:  Before-Tax Contributions Accounts, then After-Tax Contributions Accounts and Supplemental Savings Account II.

## SUPPLEMENT 3 TO THE SOLUTIA INC.
## SAVINGS AND INVESTMENT PLAN FOR U.S. FOREIGN SERVICE EMPLOYEES, DESIGNATED NON-U.S. CITIZEN FOREIGN SERVICE EMPLOYEES AND INDIVIDUALS ON INTERNATIONAL ASSIGNMENT TO THE UNITED STATES

**Purpose:**

This Supplement to the Plan modifies the provisions of the Plan as applied to covered employees. Unless otherwise expressly qualified by the context of this Supplement, terms used in this Supplement shall have the same meaning given to those terms in the Plan.

**Eligibility:**

The Plan shall continue to apply, in accordance with its terms, to covered employees on and after September 1, 1997. As used in this Supplement, the term "covered employee" means a U.S. Foreign Service Employee or a Designated Non-U.S. Citizen Foreign Service Employee, as defined below. A person who is not an employee of an Employer shall not be eligible to participate in the Plan unless he is either a U.S. Foreign Service Employee or a Designated Non-U.S. Foreign Service Employee.

**U.S. Foreign Service Employees:**

A "U.S. Foreign Service Employee" is a person employed for a Foreign Subsidiary (as defined below) or a Foreign Operating Subsidiary (as defined below) who satisfies all of the following requirements:

(a)    He is a Citizen or Resident of the United States of America;

(b)    He is not covered or participating in any funded plan of deferred compensation maintained by or otherwise provided by any party other than the Corporation and its subsidiaries with respect to the remuneration paid to him by such Foreign Subsidiary or Foreign Operating Subsidiary;

(c)    If he is an employee of a Foreign Subsidiary, such Foreign Subsidiary and one of the Employers has entered into an agreement with the Secretary of the Treasurer or his delegate under Section 3121(1) of the Code; and

(d)    He is on international assignment from one of the Employers.

Notwithstanding the foregoing, the Plan Committee, or its delegate, may preclude participation or impose such terms, conditions, and restrictions on the participation of a U.S. Foreign Service Employee as the Committee or its delegate, in the exercise or its sole discretion, deems necessary or desirable in order to comply with U.S. or foreign law, (including but not limited to tax reporting and withholding, securities registration or currency law requirements imposed by law or treaty) as it affects the U.S. Foreign Service Employee, the Corporation, any Employer, any Foreign Subsidiary, any Foreign Operating Subsidiary, the Plan Committee, the Trustee or any agent of any of the foregoing.

72

**Designated Non-U.S. Citizen Foreign Service Employees:**

A "Designated Non-U.S. Citizen Foreign Service Employee" is a person employed by a Subsidiary who satisfies all of the following requirements:

(a)     He is not a Citizen or Resident of the United States of America;

(b)     He is not covered by or participating in any funded plan or deferred compensation maintained by or otherwise provided by any party other than the Corporation and its subsidiaries with respect to the remuneration paid to him by such Subsidiary;

(c)     He is on international assignment from an Employer and is employed at a location outside the United States; and

(d)     He has been designated by the Plan Committee, or its delegate, as a Designated Non-U.S. Citizen Foreign Service Employee.

Notwithstanding the foregoing, the Plan Committee or its delegate may preclude participation or impose such terms, conditions, and restrictions on the participation of a Designated Non-U.S. Citizen Foreign Service Employee as the Committee, or its delegate, in the exercise of its sole discretion, deems necessary or desirable in order to comply with U.S. or foreign law (including but not limited to tax reporting and withholding securities registration or currency law requirements imposed by law or treaty) as it affects the Designated Non-U.S. Citizen Foreign Service Employee, the Corporation, any Employer, any Subsidiary, the Plan Committee, the Trustee or any agent of any of the foregoing.

**Individual on International Assignment to the United States:**

An "Individual on International Assignment" is person on international assignment from a Foreign Subsidiary (as defined below), a Foreign Operating Subsidiary (as defined below), a Subsidiary or the foreign operations f the Corporations or any subsidiary to the domestic operations of the Corporation or one of the other Employers. An Individual on International Assignment shall not be eligible to participate in the Plan; provided, however, that if an Individual on International Assignment was a participant in the Monsanto Plan on August 31, 1983, such individual shall continue to be eligible to participate under this Plan until he no longer is an Individual on International Assignment; provided, however, that the terms and conditions of such individual's participation shall be governed by the provisions of the Monsanto Plan (as Conformed and Restated as of January 1, 1981).

**Foreign Operating Subsidiary:**

A "Foreign Operating Subsidiary" means a domestic corporation which is a Subsidiary and which satisfies the following requirements:

(a)     80 percent or more of its outstanding voting stock is owned by an Employer; and

73