# Exhibit B
# Part 3 of 3

(b)     Except as provided below, as of the close of its taxable year which ends on or before the close of the most recent Fiscal Year of the Employer described in paragraph (a) above 95 percent or more of its gross income for the immediately preceding three-year period (or for the entire immediately preceding period of its existence if it has not been in existence for three years as of such date) was derived from sources without the United States of America (determined by the Plan Committee in a manner consistent with Sections 861 through 864 of the Code); and

(c)     Except as provided below, 90 percent or more of its gross income for the period described in paragraph (b) above was derived from the active conduct of a trade or business.

If the period described in paragraph (b) above such Subsidiary had no gross income, the provisions of paragraphs (b) and (c) above shall be considered to be satisfied if the Plan Committee determines that it is reasonable to anticipate that such provisions will be satisfied with respect to the period ending on the close of the first taxable year of such Subsidiary ending after the last day of the period described in paragraph (b) above.

Foreign Subsidiary:

A "Foreign Subsidiary" means a foreign corporation or entity in which one of the Employers owns (directly or through one or more entities) not less than 10 percent of the voting stock, in the case of a corporation, or not less than 10 percent of the profits, in the case of any other entity.

Resident:

A "Resident of the United States" means a resident as defined in Section 7701(b) of the Code.

Eligible Earnings:

In the case of a U.S. Foreign Service Employee, a Designated Non-U.S. Citizen Foreign Service Employee, or an Individual or International Assignment, "Eligible Earnings" as defined in Section 5.5 of the Monsanto Plan and in Section 4.4 of the Monsanto Plan (as Conformed and Restated as of January 1, 1981) shall mean base pay without adjustments.

## SUPPLEMENT 4 TO SOLUTIA INC. SAVINGS AND INVESTMENT PLAN FOR THE FOLLOWING EMPLOYEES AND FORMER EMPLOYEES:

## PARTICIPANTS IN THE NUTRASWEET CAPITAL ACCUMULATION PLAN ON DECEMBER 31, 1996

### Purpose:

This Supplement to the Plan modifies the provision as applied to Covered Employees. Unless otherwise expressly qualified by the context of this Supplement, terms used in this Supplement shall have the same meanings given to those terms in the Plan. To the extent there are any conflicts between the provisions of the Plan and this Supplement, the provisions of this Supplement will govern.

### Covered Employee:

A Covered Employee is any Employee who was a participant in the NutraSweet CAP (as defined in the Monsanto Plan on January 1, 1997 and whose Accounts under the Monsanto Plan were transferred to the Plan.

### Investment of Employer Contributions:

A Covered Employee may elect (in whole percentages) to invest his Employer Matching Account as of December 31, 1996 in one or more of the Investment Funds and/or Pre-Mixed Portfolios. A Covered Employee may elect to transfer such amounts among the Investment Funds and/or Pre-Mixed Portfolios as provided in Section 9.7

### Resignation or Dismissal:

If a Covered Employee who had less than three Years or Service under the Monsanto Plan on January 1, 1997, terminates employment with all Employers, Affiliates and Subsidiaries before his date of death, the date he attains his Normal Retirement Age or the date he becomes Disabled, the balance of his Employer Matching Account shall be reduced to an amount determined by multiplying such balance by the "Vesting Percentage" determined in accordance with the following table:

| Years of Service | Vesting Percentage |
|---|---|
| Less than 2 years | 40% |
| 2 but less than 3 years | 60% |
| 3 but less than 4 years | 80% |
| 4 or more years | 100% |

## SUPPLEMENT 5 TO SOLUTIA INC. SAVINGS AND INVESTMENT PLAN FOR THE FOLLOWING EMPLOYEES AND FORMER EMPLOYEES:

## PARTICIPANTS IN THE SEARLE CAPITAL ACCUMULATION PLAN ON DECEMBER 31, 1996

### Purpose:

This Supplement to the Plan modifies the provision of the Plan as applied to Covered Employees. Unless otherwise expressly qualified by the context of this Supplement, terms used in this Supplement shall have the same meanings given to those terms in the Plan. To the extent there are any conflicts between the provisions the Plan and this Supplement, the provisions of this Supplement shall govern.

### Covered Employee:

A Covered Employee is any Employee who was a participant in the Searle CAP (as defined in the Monsanto Plan) on or before December 31, 1996, who became a participant under the Monsanto Plan on January 1, 1997 and whose Accounts under the Monsanto Plan were transferred to the Plan.

### Investment of Employer Contributions:

A Covered Employee may elect (in whole percentages) to invest his Employer Matching Account as of December 31, 1996 in one or more of the Investment Funds and/or Pre-Mixed Portfolios. A Covered Employee may elect to transfer such amounts among the Investment Funds and/or Pre-Mixed Portfolios as provided in Section 9.7.

### Resignation or Dismissal:

If a Covered Employee who had less than three Years of Service under the Monsanto Plan on January 1, 1997, terminates employment with all Employers, Affiliates and Subsidiaries before his date of death, the date he attains his Normal Retirement Agent or the date he becomes Disabled, the balance of his Employer Matching Account shall be reduced to an amount determined by multiplying such balance by the "Vesting Percentage" determined in accordance with the following table:

| Years of Service | Vesting Percentage |
| --- | --- |
| Less than 2 years | 40% |
| 2 but less than 3 years | 60% |
| 3 but less than 4 years | 80% |
| 4 or more years | 100% |

# SUPPLEMENT 6 TO THE SOLUTIA INC. SAVINGS AND INVESTMENT PLAN FOR UNITED STATES CITIZENS TREATED AS RESIDENTS OF PUERTO RICO FOR PURPOSES OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED ("CODE")

1.    **Purposes.**

This Supplement to the Plan modifies the provisions of the Plan as applied to Puerto Rican Participants as herein defined.  Unless otherwise expressly qualified by the context of this Supplement, terms used in this Supplement shall have the same meaning given to those terms under the Plan.

2.    **Definitions.**

Terms used in this Supplement shall have the same meanings given to those terms in the Plan unless expressly provided otherwise in this Appendix.  These terms have the following meanings when used in this Appendix:

2.1    Actual Deferral Percentage:  The ratio of Before-Tax Contributions (and Qualified Matching Contributions and Qualified Nonelective Contributions to the extent treated as Before-Tax Contributions under this Section) on behalf of the Eligible Puerto Rican Employee for the Plan Year to the Eligible Puerto Rican Employee's Compensation for the Plan Year.  In calculating the Actual Deferral Percentage, Before-Tax Contributions include Excess Deferral Amounts of Highly Compensated Employees.  In addition, Before-Tax Contributions do not include Excess Deferral Amounts of Non-Highly Contributions made under the Plan or plans of the Employee.  The Actual Deferral Percentage of an Eligible Puerto Rican Employee who does not make a Before-Tax Contribution is zero.  The amount of Compensation taken into account for an Employee who is an eligible Puerto Rican Employee at any time during the Plan Year, including the first Plan Year, equals the total Compensation received by the Employee for the Plan (whether or not the Participant was an Eligible Puerto Rican Employee for the entire Plan Year).  Notwithstanding the

77

foregoing, if the Plan Committee has elected to have Compensation calculated only for the portion of the Plan Year that an Employee was a Participant in the Plan, then such definition shall be applied thereunder.

2.2     Average Actual Deferral Package:   The average of the Actual Deferral Percentages of the Eligible Puerto Rican Employees in a group.

2.3     Earned Income:  The net earnings from self-employment.  Such net earnings shall be determined:

(a)     Only with respect to a trade or business with respect to which the Plan is established for which personal services of the individual are a material income-producing factor;

(b)     Net earnings are determined without regard to items not included in gross income and the deductions allocable to those items; and

(c)     Net earnings are reduced by contributions by an Employer to a qualified plan to the extent deductible under Puerto Rico Laws Annotated title 13, § 80423(n).

Earned Income includes gains, other than gains that are treated as gains and from the sale or exchange of a capital asset under Puerto Rico Laws Annotated title 13, and net gains from the sale or other disposition of, or the transfer of any interest in, or the licensing of the use of property (other than goodwill) by an individual whose personal efforts created such property.

2.4.     Eligible Participant:   To determine the Actual Deferral Percentage, any Eligible Puerto Rican Employee who is eligible to have Before-Tax Contributions allocated to his Participant 401(i) Account for the Plan Year.

2.5.     Eligible Puerto Rican Employee:  An Employee of an Employer who is both domiciled in Puerto Rico, except nonresident alien with no earned income from the

Employee or an Affiliate which constitutes income earned from sources within Puerto Rico and satisfies the Plans eligibility requirements.

The Eligible Puerto Rican Employees of a Participating Affiliate are those Employees designated as eligible for the Plan by the Participating Affiliate who are domiciled in Puerto Rico.

2.6.   Excess Before Tax Contributions: For any Plan Year, the excess of :

(a)   the aggregate amount of Before-Tax Contributions (and, if applicable Qualified Matching Contributions and Qualified Nonelective Contributions) actually made on behalf of Highly Compensated Employees for the Plan Year; over

(b)   the maximum amount of those contributions permitted under the Actual Deferral Percentage test in Section 7.2 of this Supplement (determined by reducing contributions made on behalf of Highly Compensated Employees in the order of their Actual Deferral Percentages beginning with the highest dollar amount.)

2.7.   Excess Deferral Amount:  The amount of Before-Tax Contributions for a taxable year that are includible in a Participant's gross income to the extent the Participant's Before-Tax Contributions exceed the limitation contained in Section 7.1 of this Supplement.

2.8.   Highly Compensated Employee.  An Eligible Puerto Rican Employee whose compensation for a Plan Year is among the highest one-third for all Eligible Puerto Rican Employees.

2.9.   Non-Highly Compensated Employee.  An Eligible Puerto Rican Employee who is not a Highly Compensated

2.10.  Owner-Employee:  An Owner-Employee is an employee who:

(a)   owns the entire interest in an unincorporated business; or

79

(b)     in the case of a special partnership or corporation of individuals, is the partner or shareholder, as the case may be, who owns more than a ten percent of either the capital or the profit interest in such partnership or corporation of individuals.

To the extent provided in regulations issued by the Secretary of Treasury of Puerto Rican, Ownership-Employee shall include a former Owner-Employee.

2.11    Puerto Rican Participants:  Each Participant who is domiciled in Puerto Rico.

2.12.   Qualfied Matching Contributions:  Matching Contributions which are subject to the distribution and nonforfeitability requirements of Puerto Rico Laws Annotated title 13, 8565(e)(2) when made.

3.      Qualified Nonelective Contributions

Nonelective Contributions which are subject to the distribution and nonforfeitability requirements of Puerto Rico Laws Annotated title 13 §8565(e)(2).

4.      Payment of Account Balances to Owner-Employees

Notwithstanding anything contained herein to the contrary, no Account Balances in excess of the contributions made by an Owner-Employer may be paid to such Participant before the earlier of the date the Participant attains age 59-1/2 of the date he becomes Disabled.

5.      Commencement of Benefits

The provisions of Section 10.4(c) and (d) of the Plan.

6.      Eligible Rollover Distributions

The provisions of Section 20 of the Plan shall not apply to Eligible Puerto Rican Participants.

7.      Limitations on Before-Tax Contributions

The provisions of Section 4.4, 4.8 and 7.4 of the Plan shall not apply to Puerto Rican Participants.

80

7.1.    **Maximum Amount of Before-Tax Contributions.**  No Eligible Puerto Rican Employee may have Before-Tax Contributions under this Plan, or any other qualified plan of an Employer, during any taxable year in excess of the lesser of ten percent or such employee's Compensation for the Plan Year or seven thousand five hundred dollars.  If an Eligible Puerto Rican Employee participates in two or more plans, such plans shall be treated as one when applying this limitation.  If an Eligible Puerto Rican Employee makes contributions to an individual retirement account under Puerto Rico Laws Annotated title 13, §8569, the seven thousand five hundred dollar limitation described in the first sentence of this paragraph shall be reduced by the amount of any contributions made to the individual retirement account, excluding such contributions attributable to the spouse of the Eligible Puerto Rican Employee if such spouse is living with the employee.  Any Excess Deferral Amount shall be included in the Eligible Puerto Rican Employee's taxable income for the year in which such Excess Deferral Amount was contributed.

7.2    **Actual Deferral Percentage Test.**  The Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees for the Plan Year may not exceed:

(a)    the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by 1.25; or

(b)    the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees for the Plan Year multiplied by two; provided that the Average Actual Deferral Percentage for Eligible Participants who are Highly Compensated Employees does not exceed the Average Actual Deferral Percentage for Eligible Participants who are Non-Highly Compensated Employees by more than two percentage points.

7.3    The Plan Committee shall determine for any Plan Year whether Qualified Matching Contributions and/or Qualified Nonelective Contributions will be treated as Before-Tax Contributions in the Actual Deferral Percentage test under this Section 6.2, and, if so, whether such Qualified Matching Contributions and Qualified Nonelective Contributions will be allocated to all Eligible Puerto Rican Employees or allocated to all Non-Highly Compensated Employees.  The Plan Committee shall also determine whether the amounts treated as Before-Tax Contributions, subject to such other requirements as the Secretary of the Treasury or Puerto Rico may prescribe, are:

(a)    all Qualified Matching Contributions

(b)    all Qualified Nonelective Contributions;

(c)    such Qualified Matching Contributions as are needed to satisfy the Actual Deferral Percentage test; or

(d)    such Qualified Nonelective Contributions as are needed to satisfy the Actual Deferral Percentage test.

7.4    The Actual Deferral Percentage for any Eligible Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to have Before-Tax Contributions allocated to his account under two or more plans or arrangements under Puerto Rican law that are maintained by the Company or an Affiliate is determined as if all Before-Tax Contributions (and, if applicable, Qualified Matching Contributions and Qualified Nonelective Contributions) were made under a single arrangement.

7.5    Before-Tax Contributions, Qualified Matching Contributions, and Qualified Nonelective Contributions are considered made for a Plan Year if made no other than the end of the 12-month period beginning on the day after the close of the Plan Year.

7.6    The determination and treatment of the Before-Tax Contributions, Qualified Matching Contributions, Qualified Nonelective Contributions, and Actual Deferral

82

Percentage of any participant must satisfy other requirements as the Secretary of the Treasury of Puerto Rico may prescribe.

8.    Excess Before-Tax Contributions.

Excess Before-Tax Contributions, adjusted for any income or loss allocable to those contributions, will be distributed no later than the last day of each Plan Year to Participants to whose Account the Excess Before-Tax Contributions were made for the preceding Plan Year.

8.1    The Excess Before-Tax Contributions shall be adjusted for income and losses allocable thereto. The income and loss allocable to Excess Before-Tax Contributions shall be the income or loss allocable to the Participant's Before-Tax Contributions (and, if applicable, Qualified Matching Contributions and Qualified Nonelective Contributions treated as Before-Tax Contributions) for the Plan Year multiplied by a fraction, the numerator of which is the Participant's Excess Before-Tax Contributions for the Plan Year and the denominator of which is the Participant's Account Balances attributable to Before-Tax Contributions (and, if applicable, Qualified Matching Contributions and Qualified Nonelective Contributions) on the last day of the Plan year without regard to any income or loss occurring during that Plan Year.

8.2    The Excess Before-Tax Contributions distributed to a Participant are also reduced by the amount of Excess Deferral Amounts distributed to the Participant.

9.    Limitation of Contributions.

The provisions of Section 7.2 shall not apply to Puerto Rican Participants. Contributions by Employers and Affilates to the Plan during the year with respect to Puerto Rican Participants shall not exceed fifteen percent of the Compensation of such Participants paid or otherwise securing during the year.

10.    Top Heavy Provisions.

83

The provisions of Section 18 shall not apply to Puerto Rican Participants.

11.    Effective Date.

The Effective date of Supplement 4 is July 1, 1999.

84

Exhibit A

## AMENDMENT TO THE
## SOLUTIA INC. SAVINGS AND INVESTMENT PLAN
### (Amended and Restated as of January 1, 2002)

Solutia Inc. ("Sponsor") established the Solutia Inc. Savings and Investment Plan ("Plan") effective as of September 1, 1997.

The Plan was amended from time to time, most recently in the form of an amendment and restatement as of January 1, 2002, an amendment thereto effective August 16, 2002, an amendment thereto effective various dates as required to comply with the Economic Growth and Tax Relief Reconciliation Act of 2001, and an amendment effective July 16, 2003.

The Sponsor now desires to amend the Plan further to change the manner in which the Employer Matching Contributions are invested, to provide that no additional amounts shall be invested in the Employer Stock Fund, to eliminate the ESOP component of the Plan and to make certain other changes.

NOW, THEREFORE, effective December 15, 2003, the Plan is hereby amended as follows:

1.    Section 9.2(j) of the Plan is amended to read as follows:

"(j)  The "Corporation Stock Fund" which shall be invested in the common stock of the Corporation, provided however, new amounts may not be invested in this fund on or after December 15, 2003. Any cash dividend and other cash distributions shall be invested in the Fixed Income Fund; any distribution in the form of Corporation common stock shall be invested in the Corporation Stock Fund; any other distributions shall be placed in a separate investment fund unless otherwise directed by the Funds Committee;"

2.    Section 9.2(k) of the Plan is amended to read as follows:

"(k)  The "Pfizer Stock Fund" which shall be invested in the common stock of Pfizer Inc; provided, however, new amounts may not be invested in this fund after September 1, 1997. Any cash dividend and other cash distributions shall be invested in the Fixed Income Fund; any distribution in the form of Pfizer common

stock shall remain in the Pfizer Stock Fund; any other distributions shall be placed in a separate investment fund unless otherwise directed by the Funds Committee."

3.    Section 9.2(l) of the Plan is amended to read as follows:

"(l)  The "Monsanto Stock Fund" which shall be invested in the common stock of Monsanto Company; provided, however, new amounts may not be invested in this fund at any time.  Any cash dividend and other cash distributions shall be invested in the Fixed Income Fund; any distribution in the form of Monsanto common stock shall remain in the Monsanto Stock Fund; any other distributions shall be placed in a separate investment fund unless otherwise directed by the Funds Committee."

4.    The last sentence of the first paragraph of Section 9.2 of the Plan is amended to read as follows:  "The Funds Committee or its delegate may from time to time add, suspend or terminate an Investment Fund or suspend or terminate the Corporation Stock Fund, the Monsanto Stock Fund or the Pfizer Stock Fund."  The  fourth sentence of the second paragraph of Section 9.2 of the Plan shall be amended to read as follows:  "The funds described above, excluding the Pfizer Stock Fund, the Monsanto Stock Fund and the Corporation Stock Fund, may be referred to collectively as the 'Investment Funds' and may be referred to individually as the 'Investment Fund.'"

5.    Section 9.4 of the Plan shall be amended to add the words "Employer Matching Contributions" after the words "Before-Tax Contributions" in the first sentence of the first paragraph and the first sentence of the third paragraph.

6.    Section 9.5(a) and (c) of the Plan are deleted and Section 9.5(b)(i) of the Plan shall be renumbered as 9.5(i) and amended to read in its entirety as follows:
        Diversification Election.

        (i)    A Participant who has all or any portion of his Employer Matching Account invested in the Corporation Stock Fund or the Pfizer Stock Fund or the Monsanto Stock Fund may elect to transfer any such portion of his Employer Matching Account from the Corporation Stock Fund or the Pfizer Stock Fund or the Monsanto Stock Fund to the Investment Funds and/or the Pre-Mixed Portfolios pursuant to an election  ("Diversification Election") made as provided in this Section 9.5.

7.    The fourth sentence of Section 9.6(a) of the Plan is amended to read in its entirety as follows:  "The Trustee shall also vote on a pro rata basis shares held under the Accounts of participants from whom voting instructions have not been timely received from the participant."

8.    The first paragraph of Section 9.7 shall be amended to read in its entirety as follows:

2116512.3

"Transfers Between Investment Funds and/or Pre-Mixed Portfolios. A participant may elect to transfer, effective as of an Accounting Date for which the participant has made a timely election, all or a portion of his Participant Accounts and Employer Matching Accounts (pursuant to a Diversification Election if applicable) among the Investment Funds and Pre-Mixed Portfolios.

The second paragraph of Section 9.7 shall be amended to insert the words "the Corporation Stock Fund" before the words "the Pharmacia Stock Fund" in the second sentence and by inserting the words "the Corporation Stock Fund on or after December 15, 2003," before the words "the Pharmacia Stock Fund" in the last sentence. The third sentence of the second paragraph of Section 9.7 is deleted.

9.    Section 19 of the Plan is amended to read in its entirety as follows:

19.1    Employee Stock Ownership Provisions of the Plan. Effective December 15, 2003, the ESOP component of the Plan is eliminated.

19.2    Put Option. Notwithstanding Section 19.1 and to the extent required under the Code and applicable Treasury Regulations, if at the time of distribution, common stock of the Corporation distributed from the Plan is not readily tradable on an established market (within the meaning of Section 409(h) of the Code), such stock shall be subject to a put option in the hands of a Qualified Holder by which such Qualified Holder may sell all or any part of the stock distributed to him from the Plan to the Corporation. The put option shall be subject to the following conditions:

a.    Qualified Holder. The term "Qualified Holder" shall mean the participant or beneficiary receiving the distribution of such stock, or any other party to whom such stock is transferred by gift or by reason of death.

b.    Initial Term. During the 60-day period following any distribution of such stock, a Qualified Holder shall have the right to require the Corporation to purchase all or a portion of the distributed stock held by the Qualified Holder. The purchase price to be paid for any such stock shall be its fair market value determined (i) as of the Accounting Date coinciding with or next preceding the exercise of the put option under this paragraph (b) or (ii) in the case of a transaction between the Plan and a Disqualified Person or a "party in interest" (within the meaning of Section 3(14) of ERISA), as of the date of the transaction.

c.    Subsequent Term. If a Qualified Holder shall fail to exercise his put option right under Section 19.2(b), the option right shall temporarily lapse upon the expiration of the 60-day period. As

soon as practicable following the last day of the Plan Year in which the 60-day option period expires, the Corporation shall notify the non-electing Qualified Holder (if he is then a shareholder of record) of the valuation of the stock as of that date. During the 60-day period following receipt of such valuation notice, the Qualified Holder shall again have the right to require the Corporation to purchase all or any portion of the distributed stock. The purchase price to be paid therefor shall be its fair market value determined (i) as of the Accounting Date coinciding with or next preceding the exercise of the put option under this paragraph (c) or (ii) in the case of a transaction between the Plan and a Disqualified Person or a "party in interest" (within the meaning of Section 3(14) of ERISA), as of the date of the transaction.

d.  Trustee's Purchase Rights. The Trustee may be permitted, but not required, by the Corporation to purchase such stock put to the Corporation under a put option.

e.  Exception of Term Limits. The period during which the put option is exercisable does not include any time when a Qualified Holder is unable to exercise it because the Corporation is prohibited from honoring it by applicable federal or state laws.

f.  Effect of Code and Regulations. Except as otherwise required or permitted by the Code, the put options under this Section shall satisfy the requirements of Section 54.4975-7(b) of the Treasury Regulations to the extent, if any, that such requirements apply to such put options. Nothing in this Section 19.2 shall be interpreted as providing a Qualified Holder with rights greater than those required under the Code and applicable Treasury Regulations.

g.  Exercise. A Qualified Holder must exercise his put option in writing to the Corporation. If a Qualified Holder exercises his put option under this Section, payment for the stock repurchased shall be made, in the case of a distribution of a participant's entire account within one taxable year, in substantially equal annual payments over a period beginning not later than 30 days after the exercise of the put option and not exceeding five years (provided that adequate security and reasonable interest are provided with respect to unpaid amounts) or, in the case of other distributions, not later than 30 days after such exercise.

10.  Section 19.14 "Status of Delegates" shall become the second paragraph of Section 13.7 "Delegation of Authority."

11.  The final two paragraphs of Section 7.2 are deleted.

- 4 -

2116512.3

12.   In Section 6.1(a) the phrase "or Section 19" is deleted and in Section 6.1(b), the phrase "Except as otherwise provided in Section 19," is deleted.

13.   In Section 9.8, the parenthetical (excluding the Corporation Stock Fund) shall be deleted each time it appears.

14.   In section 10.3, the phrase "reduce the Employer Contributions under Section 19," shall be deleted.


IN WITNESS WHEREOF, pursuant to the authority delegated by the Employee Benefits Plans Committee of Solutia Inc., the undersigned hereby adopts this Amendment this ⌐54⌐ day of December, 2003.


SOLUTIA INC.

By:  _Susan E. Bevington_
     Susan E. Bevington, Chair
     Employee Benefits Plans Committee

**FIFTH AMENDMENT TO THE**
**SOLUTIA INC. SAVINGS AND INVESTMENT PLAN**
**(Amended and Restated as of January 1, 2002)**

Solutia Inc. ("Sponsor") established the Solutia Inc. Savings and Investment Plan ("Plan") effective as of September 1, 1997.

The Plan was amended from time to time, most recently in the form of an amendment and restatement as of January 1, 2002; an amendment thereto effective August 16, 2002; an amendment thereto effective various dates as required to comply with the Economic Growth and Tax Relief Reconciliation Act of 2001; an amendment thereto effective various dates as required by the Internal Revenue Service in connection with the issuance of a favorable determination letter and to make certain other changes; and an amendment thereto effective December 15, 2003 to change certain provisions concerning Employer Stock.

The Sponsor now desires to amend the Plan further to adopt the IRS Model Amendment issued with final regulations on required minimum distributions at age 70½ and to make certain other changes.

NOW, THEREFORE, the Plan is hereby amended as follows:

1.    Effective January 1, 2004, the first paragraph of Section 9.7 shall be amended to read in its entirety as follows:

9.7    Transfers Between Investment Funds and/or Pre-Mixed Portfolios.   A participant may elect to transfer, effective as of an Accounting Date for which the participant has made a timely election, all or a portion of his Participant Accounts and Employer Matching Accounts (pursuant to a Diversification Election if applicable) among the Investment Funds and Pre-Mixed Portfolios.   Notwithstanding the preceding, any amounts transferred by a participant into the International Equity Fund on or after January 1, 2004 may not be transferred or reallocated by the participant to another Investment Fund and/or Pre-Mixed Portfolio prior to the expiration of the seven calendar day period commencing with the date of transfer or reallocation into such Fund.

2.    Section 10.4(c) is hereby amended for required distributions for calendar years beginning on or after January 1, 2003:

(c)    *Age 70½ Minimum Distribution Rules.*

    (1)    *General Rules.*  The following provisions of this section will apply for purposes of determining required minimum distributions under Section 401(a)(9) of the Code for calendar years after 2002. The requirements of this section will take precedence over any inconsistent provisions of the Plan. All distributions required under this section will be determined and made in accordance with the Treasury Regulations under Section 401(a)(9) of the Code. Notwithstanding the other provisions of this section, distributions may be made under a designation made before January 1, 1984, in accordance with Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act (TEFRA) and the provisions of the Plan that relate to Section 242(b)(2) of TEFRA.

    (2)    *Required Beginning Date.*  The participant's entire interest will be distributed, or will begin to be distributed, to the participant no later than the participant's Required Beginning Date.

    (3)    *Death of Participant Before Distributions Begin.*  If the participant dies before distributions begin, the participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

        (i)    If the participant's surviving spouse is the participant's sole designated beneficiary, and if the participant or beneficiary elects the life expectancy rule in accordance with Section 10.4(c)(8), then distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the participant died, or by December 31 of the calendar year in which the participant would have attained age 70½, if later.

        (ii)    If the participant's surviving spouse is not the participant's sole designated beneficiary, and if the participant or beneficiary elects the life expectancy rule in accordance with Section 10.4(c)(8), then distributions to the designated beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the participant died.

        (iii)    If there is no designated beneficiary as of September 30 of the year following the year of the participant's death, or if the participant or beneficiary does not elect the life expectancy rule in accordance with Section 10.4(c)(8), the

participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the participant's death.

    (iv)    If the participant's surviving spouse is the participant's sole designated beneficiary and the surviving spouse dies after the participant but before distributions to the surviving spouse begin, this Section 10.4(c)(3), other than Section 10.4(c)(3)(i), will apply as if the surviving spouse were the participant.

For purposes of Sections 10.4(c)(3), 10.4(c)(5) and 10.4(c)(6), unless Section 10.4(c)(3)(iv) applies, distributions are considered to begin on the participant's Required Beginning Date. If Section 10.4(c)(3)(iv) applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under Section 10.4(c)(3)(i). If distributions under an annuity purchased from an insurance company irrevocably commence to the participant before the participant's Required Beginning Date (or to the participant's surviving spouse before the date distributions are required to begin to the surviving spouse under Section 10.4(c)(3)(i)), the date distributions are considered to begin is the date distributions actually commence.

Unless the participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first distribution calendar year distributions will be made in accordance with Sections 10.4(c)(4), 10.4(c)(5) and 10.4(c)(6). If the participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Section 401(a)(9) of the Code and the Treasury Regulations.

    (4)    *Required Minimum Distributions During Participant's Lifetime.* During the participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

    (i)    the quotient obtained by dividing the participant's Account balance by the distribution period in the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, using the participant's age as of the participant's birthday in the distribution calendar year; or

    (ii)    if the participant's sole designated beneficiary for the distribution calendar year is the participant's spouse, the quotient obtained by dividing the participant's Account balance by the number in the Joint and Last Survivor Table set forth in Section 1.401(a)(9)-9 of the Treasury Regulations, using the participant's and spouse's attained

- 3 -

ages as of the participant's and spouse's birthdays in the distribution calendar year.

Required minimum distributions will be determined under this Section 10.4(c)(4) beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the participant's date of death.

(5)    *Required Minimum Distributions After Participant's Death on or After Date Distributions Begin*

(i)    *Participant Survived by Designated Beneficiary.* If the participant dies on or after the date distributions begin and there is a designated beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the participant's death is the quotient obtained by dividing the participant's Account balance by the longer of the remaining life expectancy of the participant or the remaining life expectancy of the participant's designated beneficiary, determined as follows:

(A)    The participant's remaining life expectancy is calculated using the age of the participant in the year of death, reduced by one for each subsequent year.

(B)    If the participant's surviving spouse is the participant's sole designated beneficiary, the remaining life expectancy of the surviving spouse is calculated for each distribution calendar year after the year of the participant's death using the surviving spouse's age as of the spouse's birthday in that year. For distribution calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

(C)    If the participant's surviving spouse is not the participant's sole designated beneficiary, the designated beneficiary's remaining life expectancy is calculated using the age of the beneficiary in the year following the year of the participant's death, reduced by one for each subsequent year.

2227992

(ii)    *No Designated Beneficiary.* If the participant dies on or after the date distributions begin and there is no designated beneficiary as of September 30 of the year after the year of the participant's death, the minimum amount that will be distributed for each distribution calendar year after the year of the participant's death is the quotient obtained by dividing the participant's Account balance by the participant's remaining life expectancy calculated using the age of the participant in the year of death, reduced by one for each subsequent year.

(6)    *Required Minimum Distributions After Participant's Death Before Date Distributions Begin*

(i)    *Participant Survived by Designated Beneficiary.* If the participant dies before the date distributions begin and there is a designated beneficiary, and if the participant or beneficiary elects the life expectancy rule in accordance with Section 10.4(c)(8), the minimum amount that will be distributed for each distribution calendar year after the year of the participant's death is the quotient obtained by dividing the participant's Account balance by the remaining life expectancy of the participant's designated beneficiary, determined as provided in Section 10.4(c)(5). If the participant dies before the date distributions begin and there is a designated beneficiary, and if neither the participant nor beneficiary elects the life expectancy rule in accordance with Section 10.4(c)(8), distribution of the participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the participant's death.

(ii)    *No Designated Beneficiary.* If the participant dies before the date distributions begin and there is no designated beneficiary as of September 30 of the year following the year of the participant's death, distribution of the participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the participant's death.

(iii)    *Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin.* If the participant dies before the date distributions begin, the participant's surviving spouse is the participant's sole designated beneficiary, and the surviving spouse dies before distributions are required to begin to the surviving spouse under Section 10.4(c)(3)(i), this Section 10.4(c)(6)(iii) will apply as if the surviving spouse were the participant.

(7)    *Definitions.*

(i)    *Designated Beneficiary*: The individual who is designated as the beneficiary under Section 10.6 of the Plan and is the designated beneficiary under Section 401(a)(9) of the Code and Section 1.401(a)(9)-1, Q&A-4, of the Treasury Regulations.

(ii)    *Distribution calendar year*: A calendar year for which a minimum distribution is required. For distributions beginning before the participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the participant's Required Beginning Date. For distributions beginning after the participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Section 10.4(c)(3). The required minimum distribution for the participant's first distribution calendar year will be made on or before the participant's Required Beginning Date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the participant's Required Beginning Date occurs, will be made on or before December 31 of that distribution calendar year.

(iii)    *Life expectancy*: Life expectancy as computed by use of the Single Life Table in Section 1.401(a)(9)-9 of the Treasury Regulations.

(iv)    *Participant's Individual Account balance*: The participant's Account balance as of the last Valuation Date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the Account balance as of dates in the valuation calendar year after the Valuation Date and decreased by distributions made in the valuation calendar year after the Valuation Date. The Account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

(v)    *Required Beginning Date*: April 1 of the calendar year following the later of (a) the calendar year in which the participant attains 70½ years of age; and (b) if the

- 6 -

participant is not a five percent owner, as defined in Section 416(i) of the Code, the calendar year in which the participant incurs a termination of employment.

(8)    *Election of Life Expectancy Rule.*    If the Plan provides for distribution in the form of an annuity contract or installment payments, and a participant or beneficiary has elected distribution in the form of an annuity contract or installment payments, the participant or beneficiary may elect the life expectancy rule in Sections 10.4(c)(3) and 10.4(c)(6) to apply to distributions after the death of a participant who has a designated beneficiary.  The election must be made no later than the earlier of September 30 of the calendar year in which distribution would be required to begin under Section 10.4(c)(3), or by September 30 of the calendar year which contains the fifth anniversary of the participant's (or, if applicable, surviving spouse's) death.

3.    Section 10.4(d) is hereby deleted in its entirety and Section 10.4(e) is renumbered as Section 10.4(d).

4.    A new Section 12.16 is hereby added effective January 1, 2003 to read in its entirety as follows:

12.16  Military Leaves.  Notwithstanding any other provision of this Section 12 to the contrary, in the event a participant who has one or more outstanding loans commences a leave of absence to perform services in the uniformed services, as defined in 38 USC 4303(13), the following provisions shall apply:

(a)    The annual rate of interest on such outstanding loan(s) for the leave period shall not exceed six percent (6%);

(b)    Loan payments shall be suspended for the duration of the leave;

(c)    On return from military leave, the participant's loan balance(s) shall be reamortized based on the outstanding principal and accrued interest; and

(d)    The term of the loan(s) will be extended by the period of military service.

2227992

IN WITNESS WHEREOF, pursuant to the authority delegated by the Employee Benefits Plans

Committee of Solutia Inc., the undersigned hereby adopts this Amendment this _22nd_ day of

_December_, 2003.

                              SOLUTIA INC.

                              By: _Susan E. Bevington_
                                   Susan E. Bevington, Chair
                                   Employee Benefits Plans Committee

2227992

**AMENDMENT TO THE
SOLUTIA INC. SAVINGS AND INVESTMENT PLAN
(Amended and Restated as of January 1, 2002)**

Solutia Inc. ("Sponsor") established the Solutia Inc. Savings and Investment Plan ("Plan") effective as of September 1, 1997.

The Plan was amended from time to time, most recently in the form of an amendment and restatement as of January 1, 2002, an amendment thereto effective August 16, 2002, an amendment thereto effective various dates as required to comply with the Economic Growth and Tax Relief Reconciliation Act of 2001, an amendment effective July 16, 2003, an amendment effective December 15, 2003, and an amendment adopted December 22, 2003 to adopt the IRS Model Amendment on required minimum distributions at age 70 ½.

The Sponsor now desires to amend the Plan further to eliminate the minimum price election for transfers of Solutia stock and to make certain other changes:

NOW, THEREFORE, effective April 30, 2004, except as otherwise provided, the Plan is hereby amended as follows:

1. Section 9.5 is deleted in its entirety and the remaining sections of Section 9 are renumbered accordingly.

2. Former Section 9.7 (renumbered as Section 9.6 pursuant to paragraph 1 of this Amendment) shall be amended to read in its entirety as follows:

> Transfers Between Investment Funds and/or Pre-Mixed Portfolios.
> A participant may elect to transfer, effective as of an Accounting Date for which the participant has made a timely election, all or a portion of his Participant Accounts and Employer Matching Accounts among the Investment Funds and Pre-Mixed Portfolios. Notwithstanding the preceding, any amounts transferred by a participant into the International Equity Fund on or after April 30, 2004 may not be transferred or reallocated by the participant to another Investment Fund and/or Pre-Mixed Portfolio prior to the

expiration of the fourteen calendar day period commencing with the date of transfer or reallocation into such Fund.

The participant shall elect such transfer in the time and manner prescribed by the Plan Committee. In the case of a transfer from the Corporation Stock Fund, the Pfizer Stock Fund or the Monsanto Stock Fund, the Trustee shall transfer the elected amount on the trading day for which the election is timely made by the eligible participant. The sale price shall be based on the closing price of the common stock of the Corporation or Pfizer, Inc. or Monsanto as the case may be, reported on the New York Stock Exchange on the date on which the shares are sold. In no event may amounts be transferred into the Corporation Stock Fund after December 15, 2003, the Pfizer Stock Fund after the Distribution Date or the Monsanto Stock Fund at any time.

A participant, beneficiary or Alternate Payee who has not received a total distribution of his Accounts may make elections in accordance with this Section.

2.  Section 12.6 is amended to read in its entirety as follows:

12.6  Maximum Loan. The maximum loan shall be the lesser of the following amounts:

(a)    50% of the participant's vested Accounts in the Plan, including the Employer Matching Account, but excluding any amounts invested in the Corporation Stock Fund.

(b)    100% of the participant's Participant Accounts excluding any portion of any Account invested in the Corporation Stock Fund; or

(c)    $50,000 reduced by the highest total outstanding loan balances during the one-year period ending on the day before the date on which a loan is made.

The foregoing loan limits shall apply only at the time the loan is requested. The Plan Committee may also establish guidelines relating to the ability of the participant to repay the loan, which shall determine the maximum amount of any loan which can be made to any participant.

3.  Section 12.9 is amended to read in its entirety as follows:

12.9  Source of Loan Funds. Loans shall only be made from amounts in Accounts (including Participant Accounts and the

Employer Matching Account) that are not invested in the Corporation Stock Fund.

4. Section 16.2 (c) is deleted and Section 16.2(d) shall be redesignated accordingly.

IN WITNESS WHEREOF, pursuant to the authority delegated by the Employee Benefits Plans Committee of Solutia, Inc., the undersigned hereby adopts this Amendment effective the 30th day of April, 2004.

**SOLUTIA INC.**

By: _____
Susan E. Bevington, Chair
Employee Benefits Plans Committee

Date:_____

2308992

## AMENDMENT TO THE

## SOLUTIA INC. SAVINGS AND INVESTMENT PLAN

### (003)

WHEREAS, Solutia, Inc. (the "Corporation") previously adopted the Solutia Inc. Savings and Investment Plan (the "Plan"), which was most recently amended and restated effective January 1, 2002; and

WHEREAS, the Corporation reserved the right to amend the Plan in Section 16.1 of the Plan; and

WHEREAS, one of the investments in the Plan is the Pharmacia Stock Fund, which is invested in the common stock of Pharmacia Corporation, and the Plan provides that any dividend on the common stock of Pharmacia Corporation shall be invested in the Corporation Stock Fund (which invests in Solutia Inc. common stock); and

WHEREAS, Pharmacia Corporation is distributing a stock dividend to its shareholders in the form of Monsanto common stock (the "Monsanto Distribution"), which represents a reallocation of the equity of the Pharmacia Corporation and not a distribution of corporate earnings; and

WHEREAS, because of the nature of the Monsanto Distribution, the Corporation and the Plan fiduciaries have determined that it is in the best interests of Plan participants to maintain a separate Investment Fund for the Monsanto Distribution, under which Plan participants can sell their respective interest at their discretion in accordance with the investment process provided under the Plan; and

WHEREAS, the Corporation now wishes to amend the Plan to clarify the treatment of the Monsanto Distribution and to establish a separate Monsanto Stock Fund.

NOW, THEREFORE, effective August 16, 2002, the Plan is hereby amended as follows:

1.  Section 9.2(g) of the Plan is amended to read as follows:

> "(g) The 'Pharmacia Stock Fund,' which shall be invested in the common stock of Pharmacia Corporation; provided, however, new amounts may not be invested in this Investment Fund after September 1, 1997. Any cash dividend and other cash distributions shall be invested in the Corporation Stock Fund; any distribution in the form of Pharmacia common stock shall remain in the Pharmacia Stock Fund; any other distributions shall be placed in a separate Investment Fund unless otherwise directed by the Funds Committee. The distribution of Monsanto common stock shall be placed in a separate Investment Fund."

2.   Section 9.2(h) is added to the Plan to read as follows:

"(h)  The 'Monsanto Stock Fund,' which shall be invested in the common stock of Monsanto Company; provided, however, new amounts may not be invested in this Investment Fund at any time. Any cash dividend and other cash distributions shall be invested in the Corporation Stock Fund; any distribution in the form of Monsanto common stock shall remain in the Monsanto Stock Fund; any other distributions shall be placed in a separate Investment Fund unless otherwise directed by the Funds Committee."

3.   The fourth sentence of the last paragraph of Section 9.2 of the Plan shall be amended to read as follows:

"The funds described above, excluding the Pharmacia Stock Fund and the Monsanto Stock Fund, may be collectively referred to as the "Investment Funds" and may be referred to individually as the "Investment Fund.""

4.   Section 9.5 (b) of the Plan shall be amended to add the words "or the Monsanto Stock Fund" in all places after the phrase "Pharmacia Stock Fund."

5.   The last sentence of Section 9.6 (b) of the Plan shall be amended so that the reference to "Monsanto Company common stock" shall be replaced with "Pharmacia Corporation common stock."

6.   Section 9.6(c) is added to the Plan to read as follows:

"(c)  Monsanto Stock Fund.  The voting, proxy and notification procedures with respect to the holdings of the Monsanto Stock Fund shall be administered in the same way, using the same methodology, as the procedures set forth in Section 9.6(b) with respect to the holdings of the Pharmacia Stock Fund."

7.   The second paragraph of Section 9.7 of the Plan shall be amended to read as follows:

"The participant shall elect such transfer in the time and manner prescribed by the Plan Committee.  Such a transfer shall be made by either (a) specifying the dollar amount or the percentage of the amount invested in the Pharmacia Stock Fund, the Monsanto Stock Fund, an Investment Fund or Pre-Mixed Portfolio to be transferred to the other Investment Funds and/or Pre-Mixed Portfolios, or (b) specifying the dollar amount or percentage to be invested in each Investment Fund and each Pre-Mixed Portfolio.  Except as provided in Section 9.5(c), a participant's Employer Matching Account to the extent of any Diversification Election cannot be transferred into the Corporation Stock Fund.  In no event may amounts be transferred into the Pharmacia Stock Fund after the Distribution Date or the Monsanto Stock Fund at any time."

8. The first sentence of Section 9.8 of the Plan shall be amended to add "Monsanto Stock Fund," after the words, "Pre-Mixed Portfolios."

9. Section 10.5(d) of the Plan shall be revised to read as follows:

"(d) <u>Common Stock of Monsanto Company and Pharmacia Corporation</u>. Any lump sum or partial distribution of the portion of a participant's Accounts invested in the Monsanto Stock Fund and the Pharmacia Stock Fund in accordance with this Section shall be made, at the participant's election, in one of the following manners:

(i) in cash;

(ii) in the form of the maximum number of full shares of common stock of Monsanto Company and Pharmacia Corporation to the extent any portion of such participant's Accounts are invested in the Monsanto Stock Fund and the Pharmacia Stock Fund, with the value of any factional shares distributed in cash; or

(iii) a specified number of full shares of common stock of Monsanto Company, Pharmacia Corporation and cash, to the extent any portion of such participant's Accounts are invested in the Monsanto Stock Fund and the Pharmacia Stock Fund.

A participant will make a separate election for his Employee Stock Account and the portion of his Employer Matching Accounts invested in the Monsanto Stock Fund and the Pharmacia Stock Fund. Such election shall be made at the time and in the manner specified by the Plan Committee.

Installment distributions from the portion of a participant's Accounts invested in the Monsanto Stock Fund and the Pharmacia Stock Fund shall be made in cash.

A terminated participant or surviving spouse may elect to receive all or part of his partial distribution in shares of the Corporation's common stock (to the extend such shares are held in his vested Accounts). If a terminated participant or surviving spouse elects to receive such shares, the order set forth above will apply first to the portion of the partial distribution to be received in shares and second to the portion to be received in cash.

Notwithstanding the foregoing, distributions from a participant's Accounts invested in the Monsanto Stock Fund and the Pharmacia Stock Fund shall be paid in cash if the participant fails to make an election to receive such Accounts in common stock of Monsanto Company and Pharmacia Corporation in accordance with this Section."

10.   Section 11.5 of the Plan shall be amended to read as follows:

> "All withdrawals under Section 11.1 through 11.4 shall be charged
> to the proper account of the participant and prorated among the
> Investment Funds, Monsanto Stock Fund, Pharmacia Stock Fund
> and Pre-Mixed Portfolios in which such account is invested."

11.   Section 12.10 of the Plan shall be amended to add the words "Monsanto Stock Fund,"
after the words, "Investment Funds."

12.   All reference in the Plan prior this Amendment to the "Monsanto Stock Fund" shall be
changed to the "Pharmacia Stock Fund" except with respect to the provisions which have
already been addressed in this Amendment.

13.   All other administrative provisions of the Plan shall be interpreted to treat the Monsanto
Stock Fund in the same manner as the Pharmacia Stock Fund.

14.   The Plan will be reviewed, and if necessary, further amended to conform the treatment of
the Monsanto Stock Fund to the treatment of the Pharmacia Stock Fund.

15.   In all other respects, the provisions of the Plan shall remain in full force and effect.

IN WITNESS WHEREOF, this Amendment has been executed this ___16th___ day of August,
2002.

SOLUTIA INC.

By:   _Sheila Feldman_

Sheila Feldman
Vice President Human Resoursces

PHILA1\1683198\1 103993.000
08/15/02 2:54:00 pm

-4-

## AMENDMENT TO THE
## SOLUTIA INC.
## SAVINGS AND INVESTMENT PLAN
### (Amended and Restated as of January 1, 2002)

Solutia Inc. ("Sponsor") established the Solutia Inc. Savings and Investment Plan ("Plan") effective as of September 1, 1997.

The Plan was amended from time to time, most recently in the form of an amendment and restatement as of January 1, 2002 and an amendment thereto effective August 16, 2002.

The Sponsor now desires to amend the Plan further to comply with the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA") and to make such other changes as the Sponsor deems necessary or desirable.

Now, therefore, effective July 1, 2002 except as otherwise provided, the Plan is hereby amended as follows.

*These amendments are intended as good faith compliance with the requirements of EGTRRA and recent changes in IRS regulations, and are to be construed in accordance with IRS guidance. These amendments shall supersede the provisions of the Plan to the extent those provisions are inconsistent with the provisions of any of these amendments.*

1.    The following paragraph is added at the end of Section 4.1 of the Plan:

All participants who are eligible to make Before-Tax Contributions under this Plan and who have attained age 50 before the close of the Plan Year shall be eligible to make Catch-Up Contributions in accordance with, and subject to the limitations of, Section 414(v) of the Code. Such Catch-Up Contributions shall not be taken into account for purposes of the provisions of the Plan implementing the required limitations of Sections 402(g) and 415 of the Code. The Plan shall not be treated as failing to satisfy the provisions of the Plan implementing the requirements of Sections 401(k)(3), 401(k)(11), 401(k)(12), 410(b), or 416 of the Code, as applicable, by reason of making such Catch-Up Contributions.

2.    Section 4.5 of the Plan is amended effective January 1, 2003 to provide that Eligible Earnings shall also include any amounts not available to an Employee in cash in lieu of group health insurance coverage because the Employee is unable to prove that the Employee has other health coverage.

3.    The following paragraph is added at the end of Section 4.8 of the Plan:

No participant shall be permitted to have Before-Tax Contributions made under the Plan, or any other qualified plan maintained by the Employer during any taxable year, in excess of the dollar limitation contained in Section 402(g) of the Code in effect for such taxable year, except to the extent permitted under Section 4.1 of the Plan and Section 414(v) of the Code, if applicable. For purposes of correction of excess contributions in accordance with the immediately preceding paragraph, elective deferrals shall first be treated as Catch-Up Contributions to the extent permitted by Section 4.1.

4.     The following sentence is added at the end of Section 6.1(a) of the Plan:

Catch-Up Contributions described in Section 4.1 shall not be considered for purposes of Employer Matching Contributions.

5.     Effective for limitation years beginning after December 31, 2001, the first paragraph of Section 7.2 of the Plan is amended to read as follows:

7.2     *Limitation on Contributions*. Except to the extent permitted under Section 4.1 of the Plan and Section 414(v) of the Code, the total Annual Additions (as defined in Section 7.3(a)) to a participant's accounts under the Plan and to a participant's accounts in any other Defined Contribution Plan in which he is a participant and which is maintained by an Employer or any member of the Extended Group for any limitation year shall not exceed the lesser of:

(a)     $40,000, as adjusted for increases in the cost-of-living under Section 415(d) of the Code, and

(b)     100 percent of the participant's compensation, within the meaning of Section 415(c)(3) of the Code, for the limitation year.

The compensation limit referred to in (b) shall not apply to any contribution for medical benefits after separation from service (within the meaning of Section 401(h) or Section 419A(f)(2) of the Code) which is otherwise treated as an annual addition. In applying the above limit, the Annual Addition to a participant's accounts under this Plan will be limited before the Annual Addition to his accounts under a related Defined Contribution Plan, if any, is limited. The requirements of Section 415 of the Code and the regulations thereunder are hereby incorporated by reference.

2029128

6.     The following paragraph is added at the end of Section 7.4(a) of the Plan:

Before-Tax Contributions otherwise classified as Excess Before-Tax Contributions shall be treated as Catch-Up Contributions for participants eligible to make Catch-Up Contributions in accordance with Section 4.1. Before-Tax Contributions treated as Catch-Up Contributions because they exceed the average deferral percentage test of Section 401(k)(3) of the Code must be retained by the Plan before any Excess Before-Tax Contributions may be refunded.

IN WITNESS WHEREOF, pursuant to the authority delegated by the Employee Benefits Plans Committee of Solutia Inc., the undersigned hereby adopts this Amendment this _27th_ day of December, 2002.

**SOLUTIA INC.**

By:     _Sheila B. Feldman_
        Sheila B. Feldman, Chair
        Employee Benefits Plans Committee

- 3 -

2029128

## AMENDMENT TO THE
## SOLUTIA INC. SAVINGS AND INVESTMENT PLAN
### (Amended and Restated as of January 1, 2002)

Solutia Inc. ("Sponsor") established the Solutia Inc. Savings and Investment Plan ("Plan") effective as of September 1, 1997.

The Plan was amended from time to time, most recently in the form of an amendment and restatement as of January 1, 2002, an amendment thereto effective August 16, 2002, and an amendment thereto effective various dates as required to comply with the Economic Growth and Tax Relief Reconciliation Act of 2001.

The Sponsor now desires to amend the Plan further as required by the Internal Revenue Service in connection with the issuance of a favorable determination letter to the Plan and to make certain other changes.

NOW, THEREFORE, effective September 1, 1997, except as otherwise provided, the Plan is hereby amended as follows:

1.      The last paragraph of Section 2.1 is hereby amended to read in its entirety as follows:

> For all purposes of this Plan, the following individuals shall not be considered to be employees of an Employer or an Affiliate:  (1) a Leased Employee; (2) a person whose services are provided to an Employer or Affiliate pursuant to an agreement with a leasing company or other third party entity; and (3) a person who has not been classified by the Corporation as an employee under Section 3121(d) of the Code or who has been classified by the Corporation as an employee of an entity other than the Corporation, a Subsidiary or Affiliate, whether such classification is later determined to be erroneous or is retroactively changed.  The term "Leased Employee" means any person (other than an employee) who pursuant to an agreement between the Corporation or an Affiliate and any other person ("leasing organization") has performed services for such Corporation or any Affiliate (or for any related persons determined in accordance with Section 414(n)(6) of the Code) on a substantially full-time basis for a period or at least one year, and such services are performed under the primary direction or control of such Corporation or Affiliate.  Notwithstanding the foregoing, if a Leased Employee becomes a regular employee of an Employer or an Affiliate,

service while a Leased Employee shall be credited only for purposes of eligibility to participate and vesting as required by Section 414(n) of the Code.

2.      Section 2.3 is amended to read in its entirety as follows:

2.3    <u>Notice of Eligibility, Election of Participation</u>. The Plan Committee will notify an employee who satisfies the requirements of Section 2.1 of the employee's eligibility. An eligible employee may become a participant in the Plan as of any pay period by making an election in a form acceptable to the Plan Committee prior to the commencement of such period.

3.      Section 7.3(d) is amended effective January 1, 2003 to read in its entirety as follows:

(d)    "Compensation" for purposes of this Section shall mean compensation that is actually paid to the participant during the Plan Year and shall also include (except for purposes of Section 7.2 in Plan Years ending prior to December 31, 1999) any amount which is contributed by the Employer pursuant to a salary reduction agreement and which is not includable in the gross income of the employee under Sections 125, 402(g)(3), or 457 of the Code, and, effective January 1, 2001, Section 132(f) of the Code.

4.      Section 7.3(g) is amended to read in its entirety as follows:

(g)    "Excess Aggregate Contributions" shall mean, with respect to any Plan Year, the excess of (i) the aggregate Contribution Percentage Amounts taken into account in computing the numerator of the Contribution Percentage actually made on behalf of Highly Compensated Employees for such Plan Year, over (ii) the maximum Contribution Percentage Amounts permitted by the Actual Contribution Percentage test, which shall be applied by using the prior year method. Excess Aggregate Contributions shall be determined by reducing the Contribution Percentage of Highly Compensated Employees beginning with the individuals with the highest contribution percentage, to the extent necessary to cause the actual contribution ratio to equal the highest permitted actual contribution ratio, in accordance with Treas. Reg. §1.401(m)-1(e)(2). The aggregate dollar amount of Excess Aggregate Contributions shall be equal to the total amount of such Contribution Percentage Amount reductions. The Excess Aggregate Contribution so determined shall be forfeited or distributed to Highly Compensated Employees on the basis of the amount of contributions by each such Employee, reducing the highest dollar amount of the respective Highly Compensated Employees as necessary to refund or forfeit such aggregate amount, as provided in Section 7.5(a). After such refunds and forfeitures are made, the Plan is treated as meeting the actual contribution percentage test regardless of whether the Plan would satisfy such test if recalculated.

21165123

The determination of Excess Aggregate Contributions shall be made after first determining Excess Before-Tax Contributions pursuant to Section 4.8 and then determining Excess Before-Tax Contributions pursuant to Section 7.3(h).

5. Section 7.3(h) is amended to read in its entirety as follows:

(h) "Excess Before-Tax Contributions" shall mean, with respect to any Plan Year, the excess of (i) the aggregate amount of Before-Tax Contributions and any Qualified Non-elective Contributions actually taken into account in computing the Actual Deferral Percentage of Highly Compensated Employees for such Plan Year, over (ii) the maximum amount of such contributions permitted by the Actual Deferral Percentage test, which shall be applied by using the prior year method. Excess Before-Tax Contributions shall be determined by reducing the Before-Tax Contributions of Highly Compensated Employees beginning with the Highly Compensated Employee with the highest deferral ratio ("ADR") in accordance with Treas. Reg. §1.401(a)-1(f)(2). The Before-Tax Contributions of the Highly Compensated Employee with the highest ADR shall be reduced to the extent necessary to reduce the ADR of such participant so that the actual deferred test is satisfied or so that such participant's ADR is equal to the ADR of the Highly Compensated Employee with the next-highest ADR. This reduction shall be repeated until the actual deferral percentage test is satisfied. The aggregate dollar amount of Excess Before-Tax Contributions shall be equal to the total amount of such Before-Tax Contribution reductions.

6. Section 7.3(i) is amended effective January 1, 1998 to read in its entirety as follows:

(i) "Highly Compensated Employee" includes highly compensated active employees and highly compensated former employees. Highly compensated active employee includes any employee who performs service for the Employer during the determination year and who: (i) during the look-back year received compensation from the Employer in excess of the amount specified in Section 414(q)(1) of the Code (as adjusted pursuant to Section 415(d) of the Code); or (ii) is a 5% owner at any time during the look-back year or determination year. For this purpose, the determination year shall be the Plan Year. The look-back year shall be the twelve-month period immediately preceding the determination year. Notwithstanding the foregoing, for the 1997 Plan Year, the determination year shall be the 1997 calendar year and the look-back year shall be the 1996 calendar year. For purposes of this Section 7.3(i), the term "compensation" has the meaning given such term by Section 415(c)(3) of the Code.

- 3 -

21165123

7.    Section 7.4(b) is amended to read in its entirety as follows:

(b)    Additional Contributions Method.    In lieu of distributing Excess Before-Tax Contributions, the Plan Committee may elect to make Qualified Non-elective Contributions or Qualified Matching Contributions on behalf of non-highly compensated participants that are sufficient to satisfy the Actual Deferral Percentage test, pursuant to Treas. Reg. Section 1.401(k)-1(b)(5); provided that such contributions are made on or before the last day of the testing year.

8.    Section 7.5(b) is amended to read in its entirety as follows:

(b)    Additional Contributions Method.    In lieu of distributing Excess Aggregate Contributions the Plan Committee may elect to make Qualified Non-elective Contributions or Qualified Matching Contributions on behalf of non-highly compensated participants that are sufficient to satisfy the Actual Contribution Percentage test, pursuant to Treas. Reg. Section 1.401(m)-1(b)(5); provided such contributions are made on or before the last day of the testing year.

9.    Effective October 18, 2002, the first full paragraph (including the lettered subparagraphs) of Section 9.2 is hereby amended to read in its entirety as follows:

9.2.    The Investment Funds.    The Trust Fund shall consist of the following investment funds:

(a)    A "Large Cap Growth Equity Fund" which ordinarily will be invested in common stocks, or other securities convertible into common stock, in the large-capitalization growth equity market sector, subject to the right of the Trustee to invest such portion of the fund in cash or short-term marketable securities as the Trustee may deem advisable from time to time;

(b)    A "Large Cap Value Equity Fund" which ordinarily will be invested in common stocks, or other securities convertible into common stock, in the large-capitalization equity market sector, subject to the right of the Trustee to invest such portion of the fund in cash or short-term marketable securities as the Trustee may deem advisable from time to time;

(c)    A "Mid Cap Growth Equity Fund" which ordinarily will be invested in common stocks, or other securities convertible into common stock, in the mid-capitalization growth equity market sector, subject to the right of the Trustee to invest such portion of the fund in cash or short-term marketable securities as the Trustee may deem advisable from time to time;

21165123

(d)     A "Mid Cap Value Equity Fund" which ordinarily will be invested in common stocks, or other securities convertible into common stock, in the mid-capitalization equity market sector, subject to the right of the Trustee to invest such portion of the fund in cash or short-term marketable securities as the Trustee may deem advisable from time to time;

(e)     A "Small Cap Equity Fund" which ordinarily will be invested in common stocks, or other securities convertible into common stock, in the small-capitalization equity market sector, subject to the right of the Trustee to invest such portion of the fund in cash or short-term marketable securities as the Trustee may deem advisable from time to time;

(f)     A "Balanced Fund" which shall be invested in both equity and fixed income securities in such proportion as the appropriate Named Fiduciary or investment manager may deem advisable;

(g)     An "International Equity Fund" consisting of the commingled fund(s) and/or mutual fund(s) selected by the appropriate Named Fiduciary which shall invest primarily in the common stocks of companies based outside of United States;

(h)     A "U.S. Equity Index Fund" consisting of the commingled fund(s) and/or mutual fund(s) selected by the appropriate Named Fiduciary which shall invest in securities of each company included in the S&P 500 index in proportion to its market capitalization weight;

(i)     A "Fixed Income Fund" which shall be invested in a contract with the Insurance Company (as described in Section 1.4) guaranteeing repayment of the principal of the fund and guaranteeing a fixed annual interest rate thereon for a specified future period, or in a Bank Investment Contract or other high quality securities including, but not limited to, U.S. Treasury Securities;

(j)     The "Corporation Stock Fund" which shall be invested in the common stock of the Corporation, except as provided below;

(k)     The "Pharmacia Stock Fund" which shall be invested in the common stock of Pharmacia Corporation; provided, however, new amounts may not be invested in this fund after September 1, 1997. Any cash dividend and other cash distributions shall be invested in the Corporation Stock Fund; any distribution in the form of Pharmacia common stock shall remain in the Pharmacia Stock Fund; any other distributions shall be placed in a separate investment fund unless otherwise directed by the Funds

2116512.3

Committee. The distribution of Monsanto common stock shall be placed in a separate investment fund; and

(l)    The "Monsanto Stock Fund" which shall be invested in the common stock of Monsanto Company; provided, however, new amounts may not be invested in this fund at any time. Any cash dividend and other cash distributions shall be invested in the Corporation Stock Fund; any distribution in the form of Monsanto common stock shall remain in the Monsanto Stock Fund; any other distributions shall be placed in a separate investment fund unless otherwise directed by the Funds Committee.

The Funds Committee or its delegate may from time to time add, suspend or terminate an Investment Fund or suspend or terminate the Monsanto Stock Fund or the Pharmacia Stock Fund.

10.    Effective January 1, 2002, Section 9.5(a) is hereby amended to add the words "or the Pharmacia Stock Fund" after the words "Corporation Stock Fund."

11.    Effective July 22, 2002, Section 9.5(b)(i) is hereby amended to read in its entirety as follows:

(b)    <u>Diversification Election.</u>

(i)    A Participant who is fully vested in his Employer Matching Account shall be eligible to make a voluntary election ("<u>Diversification Election</u>") to transfer any portion of his Employer Matching Account from the Corporation Stock Fund or the Pharmacia Stock Fund or the Monsanto Stock Fund to the Investment Funds (other than the Corporation Stock Fund) and/or the Pre-Mixed Portfolios.

12.    Effective January 1, 2002, Section 9.5(b)(v) is amended to add the words "or Monsanto Company" after the words "Pharmacia Corporation."

13.    Effective for distribution years beginning on or after January 1, 2002, Section 10.4(e) of the Plan is amended to add the following as a new first paragraph:

With respect to distributions under the Plan made for calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Code in accordance with the regulations under Section 401(a)(9) that were proposed on January 17, 2001, notwithstanding any provision of the Plan to the contrary. This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final

regulations under Section 401(a)(9) of the Code or such other date as may be specified in guidance published by the Internal Revenue Service.

14.    Effective January 1, 2003 the first paragraph of Section 12.8 is amended to read in its entirety as follows:

The Plan Committee shall review each loan request and decide whether or not it shall be approved. The decision of the Plan Committee regarding the approval of the loan request shall be final and binding on all parties. The period of repayment for any loan shall be determined by mutual agreement between the Plan Committee and the participant, but such period shall in no event exceed sixty months.

15.    Effective for limitation years beginning after December 31, 1999, Section 18.4 of the Plan is hereby deleted in its entirety.

16.    Effective April 16, 2003, the Plan is hereby amended to substitute "Pfizer Inc." for each reference to "Pharmacia" or "Pharmacia Corporation."

IN WITNESS WHEREOF, pursuant to the authority delegated by the Employee Benefits Plans Committee of Solutia, Inc., the undersigned hereby adopts this Amendment this _16th_ day of _July_, 2003.

SOLUTIA INC.

By: _Susan E. Bevington_
Susan E. Bevington, Chair
Employee Benefits Plans Committee