# Exhibit G

# SOLUTIA INC.

## DEFINED CONTRIBUTION AND EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

(As Amended and Restated Effective November 1, 1998)

SOLUTIA INC. DEFINED CONTRIBUTION AND
EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

## INDEX

| | | Page |
|---|---|---|
| Introduction | . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| **SECTION 1** | **General** . . . . . . . . . . . . . . . . . . . | 2 |
| 1.1 | Definitions . . . . . . . . . . . . . . . . . . . | 2 |
| 1.2 | Compliance with Law . . . . . . . . . . . . . | 8 |
| 1.3 | Eligibility . . . . . . . . . . . . . . . . . . . | 8 |
| **SECTION 2** | **Establishment of Trust** . . . . . . . | 8 |
| 2.1 | Establishment of Trust . . . . . . . . . . | 8 |
| 2.2 | Contributions to the Trust . . . . . . . | 8 |
| 2.3 | Prior Administration . . . . . . . . . | 8 |
| 2.4 | Fund to be Held in Trust . . . . . . . . | 9 |
| 2.5 | Fund to be Held for Benefit of Plan Participants | 9 |
| 2.6 | Commingling . . . . . . . . . . . . . . | 9 |
| **SECTION 3** | **Disbursement from the Fund** . . . . . . . . | 10 |
| 3.1 | Disbursements by Trustee . . . . . . . . . | 10 |
| 3.2 | Direction to the Trustee . . . . . . . . . | 10 |
| **SECTION 4** | **Allocation of Investment Responsibilities** . . . . | 11 |
| 4.1 | Third Party Named Fiduciaries and Asset Managers | 11 |
| 4.2 | Transfer of Assets to Asset Managers . . . . . . | 13 |
| 4.3 | The Trustee . . . . . . . . . . . . . . . . . | 14 |
| **SECTION 5** | **Investment Funds** . . . . . . . . . . . | 15 |
| 5.1 | Solutia Stock Fund . . . . . . . . . . . . | 15 |
| 5.2 | Growth and Income Equity Fund . . . . . . . . | 18 |
| 5.3 | Fixed Income Fund . . . . . . . . . . . . . | 18 |
| 5.4 | Balanced Fund . . . . . . . . . . . . . . . | 19 |
| 5.5 | International Equity Fund . . . . . . . . . | 19 |
| 5.6 | U.S. Equity Index Fund . . . . . . . . . . | 19 |
| 5.7 | Growth Equity Fund . . . . . . . . . . . . | 20 |
| 5.8 | Monsanto Stock Fund . . . . . . . . . . . | 20 |
| 5.9 | No Purchase of Solutia Common Stock or Other Obligation. . . . . . . . . . . | 20 |
| **SECTION 6** | **Participant Notification and Voting** . . . . . . . | 21 |
| 6.1 | Voting of Corporation Shares . . . . . . . . | 21 |
| 6.2 | Tendering of Corporation Shares . . . . . . . | 22 |
| 6.3 | Rights . . . . . . . . . . . . . . . . | 24 |
| 6.4 | Voting of Monsanto Shares . . . . . . . . . | 26 |
| 6.5 | Tendering of Monsanto Shares . . . . . . . . | 27 |
| 6.6 | Monsanto Rights . . . . . . . . . . . . . | 28 |
| **SECTION 7** | **Fund Transfers** . . . . . . . . . . . . . | 30 |
| **SECTION 8** | **Participant Accounts** . . . . . . . . . . . | 30 |

8.1    Allocation of Contributions . . . . . . . . . . . 30
8.2    Responsibility of Trustee . . . . . . . . . . . . 30

SECTION 9    Investment of the Fund . . . . . . . . . . . 31
9.1    Standard of Care . . . . . . . . . . . . . . . . 31
9.2    Waiver of Investment Restrictions . . . . . . . 31
9.3    Grant of Investment Powers . . . . . . . . . . . 31
       (a)    Growth and Income Equity Fund . . . . . . 32
       (b)    Fixed Income Fund . . . . . . . . . . . . 33
       (c)    Solutia Stock Fund . . . . . . . . . . . 35
       (d)    Balanced Fund . . . . . . . . . . . . . . 39
       (e)    International Equity Fund . . . . . . . . 40
       (f)    U.S. Equity Index Fund . . . . . . . . . 42
       (g)    Growth Equity Fund . . . . . . . . . . . 44
       (h)    Monsanto Stock Fund . . . . . . . . . . . 45

SECTION 10    Powers of the Trustee, Asset Managers
              and Named Fiduciaries . . . . . . . . . . . 47
10.1    General Powers . . . . . . . . . . . . . . . . 47
10.2    Specific Powers of the Trustee . . . . . . . . 51
10.3    Maintenance of Indicia of Ownership . . . . . . 52
10.4    Third Party Transactions . . . . . . . . . . . 53
10.5    Transfers to Other Employee
        Pension Benefit Plans . . . . . . . . . . . . . 53
10.6    Futures . . . . . . . . . . . . . . . . . . . . 54
10.7    Securities Lending . . . . . . . . . . . . . . 55

SECTION 11    Discretionary Powers . . . . . . . . . . . 55

SECTION 12    Prohibited Transactions . . . . . . . . . . 56

SECTION 13    Expenses, Compensation and Taxes . . . . . . 56
13.1    Compensation and Expenses of the Trustee . . . . 56
13.2    Payment from the Fund . . . . . . . . . . . . . 57
13.3    Payment of Taxes . . . . . . . . . . . . . . . 58

SECTION 14    Accounts, Books and Records of the Fund . . . . 58
14.1    Recordkeeping Duty of Trustee. . . . . . . . . . 58
14.2    Periodic Reports . . . . . . . . . . . . . . . 58
14.3    Additional Accounting. . . . . . . . . . . . . 59
14.4    Judicial Determination of Accounts . . . . . . 59
14.5    Filings by the Corporation . . . . . . . . . . 59
14.6    Determination of Fair Market Value . . . . . . 60
14.7    Retention of Records . . . . . . . . . . . . . 60

SECTION 15    Fiduciary Duties of Trustee . . . . . . . . . 60

SECTION 16    Resignation and Removal . . . . . . . . . . 60
16.1    Notice . . . . . . . . . . . . . . . . . . . . 61
16.2    Successor Appointment . . . . . . . . . . . . . 61
16.3    Transfer Cooperation . . . . . . . . . . . . . 61
16.4    Transfer of Fund to Successor . . . . . . . . . 61
16.5    Retention of Nontransferable Assets . . . . . . 62
16.6    Accounting . . . . . . . . . . . . . . . . . . 62

SECTION 17   Actions by the Corporation,
             the Committee or Named Fiduciary . . . . . . . . 62
     17.1    Action by Corporation . . . . . . . . . . . . . 62
     17.2    Delegation . . . . . . . . . . . . . . . . . . 63

SECTION 18   Amendment or Termination . . . . . . . . . . . 63
     18.1    Amendment or Termination . . . . . . . . . . . 63
     18.2    Distribution of Assets . . . . . . . . . . . . 64
     18.3    Retention of Nontransferable Property . . . . . 65
     18.4    Termination in the Absence
             of Directions from the Corporation . . . . . . 65
     18.5    Termination on Corporation Dissolution . . . . 66

SECTION 19   Merger or Consolidation . . . . . . . . . . . 66
     19.1    Merger or Consolidation of Trustee . . . . . . 66
     19.2    Merger or Consolidation of Corporation . . . . 66
     19.3    Merger or Consolidation of Plan . . . . . . . . 66

SECTION 20   Indemnification . . . . . . . . . . . . . . . 67
     20.1    Indemnity. . . . . . . . . . . . . . . . . . . 67
     20.2    Solutia Stock Fund and
             Monsanto Stock Fund Indemnity . . . . . . . . . 68
     20.3    Defense of Action . . . . . . . . . . . . . . . 69
     20.4    Reliance Upon Counsel . . . . . . . . . . . . . 69
     20.5    Year 2000 . . . . . . . . . . . . . . . . . . . 70

SECTION 21   Nonalienation of Trust . . . . . . . . . . . . 70
     21.1    Trust not Subject to Assignment or Alienation . . 70
     21.2    Plans' Interest in Trust not Assignable . . . . 71

SECTION 22   Governing Law . . . . . . . . . . . . . . . . 71

SECTION 23   Parties to Court Proceedings . . . . . . . . . 71

SECTION 24   Subsidiaries and Affiliates . . . . . . . . . . 72
     24.1    Adoption of Trust by Subsidiaries and Affiliates 72
     24.2    Segregation from Further Participation . . . . . 72
     24.3    Segregation of Assets Allocable
             to Specific Employees . . . . . . . . . . . . . 73

SECTION 25   Authorities . . . . . . . . . . . . . . . . . 74
     25.1    Subsidiary or Affiliate . . . . . . . . . . . . 74
     25.2    Named Fiduciary and Committee . . . . . . . . . 74
     25.3    Form of Communications . . . . . . . . . . . . 74
     25.4    Continuation of Authority . . . . . . . . . . . 75
     25.5    No Obligation to Act on Unsatisfactory Notice . . 75

SECTION 26   Counterparts . . . . . . . . . . . . . . . . . 77

SOLUTIA INC. DEFINED CONTRIBUTION AND
EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

THIS SOLUTIA INC. DEFINED CONTRIBUTION AND EMPLOYEE STOCK OWNERSHIP
TRUST AGREEMENT is made and entered into on the ~~1st~~ 30th day of
~~November~~ October, 1998, between SOLUTIA INC. (hereinafter referred to as
the "Corporation"), and THE NORTHERN TRUST COMPANY (hereinafter re-
ferred to as the "Trustee"),

WITNESSETH:

WHEREAS, the Corporation and certain of its subsidiaries and
affiliates have adopted and may hereafter adopt the Solutia Inc.
Savings and Investment Plan (the "Plan") in order to provide
savings opportunities and retirement income for Eligible Employees;

WHEREAS, pursuant to the Plan, a trust was established for the
investment of the Growth and Income Equity Fund, the Fixed Income
Fund, the Balanced Fund, the Solutia Stock Fund, the International
Equity Fund, the U.S. Equity Index Fund, the Growth Equity Fund and
the Monsanto Stock Fund (hereinafter referred to collectively as
the "Investment Funds" or individually as an "Investment Fund");

WHEREAS, the Plan includes a separate component qualifying as an
employee stock ownership plan ("ESOP") within the meaning of
Section 4975(e)(7) of the Code and Section 407(d)(6) of ERISA which
enables the Trust to undertake ESOP Loans from time to time;

WHEREAS, the ESOP consists of all loan proceeds and Employer
Contributions being held by the Trust as of the dates specified in
the Plan and dividends and income thereon and any Employer
Contributions made after such date designated by the Corporation
for contribution to the ESOP, together with any income and
dividends thereon, less loan payments and distributions from the
Plan;

223856.4                         -1-                     October 29, 1998

WHEREAS, it is intended that the Trustee will acquire shares of the common stock of the Corporation or repay existing ESOP Loan(s) with the proceeds of any ESOP Loan;

WHEREAS, the Pension and Savings Funds Committee of the Corporation ("Committee") has been designated as one of the named fiduciaries for purposes of the management and control of the assets of the Investment Funds;

NOW, THEREFORE, the Corporation and the Trustee declare and agree that the Trustee may receive, hold and administer all sums of money and such other property acceptable to the Trustee as shall from time to time be contributed, paid or delivered to it hereunder, IN TRUST, upon all of the following terms and conditions.

### SECTION 1
### General

1.1 <u>Definitions</u>.  Where used in this Agreement, unless the context otherwise requires or unless otherwise expressly provides:

    (a)  "Accounts" shall mean the accounts established for a Member under the Plan to hold his interests in the Plan.

    (b)  "Account Party" shall mean an officer of the Corporation designated to represent the Corporation for this purpose, the Named Fiduciary and any Person to whom the Trustee shall be instructed by the Named Fiduciary to deliver its annual account under Section 10.2.

    (c)  "Accounting Period" shall mean the consecutive twelve-month period coincident with the calendar year or the shorter period in any year in which the Trustee accepts appointment as Trustee hereunder or ceases to act as Trustee for any reason.

(d) "Agreement" shall mean all of the provisions of this instrument and of all other instruments amendatory hereof.

(e) "Asset Manager" shall mean either the Trustee, Named Fiduciary or Investment Manager with respect to those assets held in an Investment Account over which it exercises, or to the extent it is allocated responsibility to exercise, discretionary investment authority or control.

(f) "Bank Business Day" shall mean a day on which the Trustee is open for business.

(g) "Board of Directors" shall mean the Board of Directors of the Corporation.

(h) "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and regulations issued thereunder.

(i) "Directed Fund" shall mean any Investment Account, or part thereof, subject to the discretionary management and control of the Named Fiduciary or any Investment Manager.

(j) "Discretionary Fund" shall mean any Investment Account, or part thereof, subject to the discretionary management and control of the Trustee.

(k) "Distribution Date" shall mean the date Monsanto distributes to holders of its issued and outstanding shares of common stock all of the issued and outstanding shares of common stock of the Corporation.

(l) "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time, and regulations issued thereunder.

(m)  "Fund" shall mean all cash and property contributed, paid or delivered to the Trustee hereunder, all investments made therewith and proceeds thereof and all earnings and profits thereon, less payments, transfers or other distributions which, at the time of reference, shall have been made by the Trustee, as authorized herein. The Fund shall include all evidences of ownership, interest or participation in an Investment Vehicle, but shall not, solely by reason of the Fund's investment therein, be deemed to include any assets of such Investment Vehicle.

(n)  "Insurance Contract" shall mean any contract or policy of any kind issued by an insurance company, whether or not providing for the allocation of amounts received by the insurance company thereunder solely to the general account or solely to one or more separate accounts (including separate accounts maintained for the collective investment of qualified retirement plans), or a combination thereof, and whether or not any such allocation may be made in the discretion of the insurance company or the Named Fiduciary.

(o)  "Investment Account" shall mean each pool of assets in the Trust in which one or more Plans has an interest during an Accounting Period.

(p)  "Investment Manager" shall mean any entity that meets the definition of investment manager under Section 3(38) of ERISA.

(q)  "Investment Vehicle" shall mean any common, collective or commingled trust, investment company, corporation functioning as an investment intermediary, insurance contract, partnership, joint venture or other entity or arrangement to which, or pursuant to which, assets of the Trust may be transferred or in which the Trust has an interest, beneficial or otherwise (whether or not the

underlying assets thereof are deemed to constitute "plan assets" for any purpose under ERISA).

(r) "Monsanto" shall mean Monsanto Company, a Delaware corporation, and any successor thereto.

(s) "Monsanto Trust" shall mean the Monsanto Company Defined Contribution and Employee Stock Ownership Trust.

(t) "Monsanto Rights" shall mean any right to purchase Monsanto securities that is issued to holders of common stock in Monsanto upon the terms and conditions set forth in the applicable rights agreement between Monsanto and the rights agent, together with any and all amendments and supplements thereto.

(u) "Named Fiduciary" shall mean the fiduciary with respect to the Plans within the meaning of Section 402(a)(2), 402(c)(3) or 403(a)(1) of ERISA. Each of the following are a Named Fiduciary with respect to the functions specified herein:

   (i) the Employee Benefits Plans Committee ("EBPC") shall be responsible for administration of the Plan;

   (ii) the Committee shall be responsible for (A) establishing and terminating Investment Funds, (B) establishing investment guidelines for each of the Investment Funds, and (C) the management and control of the assets of each Investment Fund, except for an Investment Fund covered by clause (iii) hereof; and

   (iii) the Third Party Named Fiduciary shall be responsible for the management and control of the assets of each Investment Fund the responsibility

223856.4                          -5-                     October 29, 1998

for which has been allocated to such Third Party
Named Fiduciary pursuant to a Third Party Named
Fiduciary Agreement.

(v)   "Plan" shall mean the Solutia Inc. Savings and Investment
Plan or any other plan funded through the Trust under
Section 1.3 below.

(w)   "Person" shall mean a natural person, trust, estate,
corporation of any kind or purpose, mutual company,
joint-stock company, unincorporated organization,
association, partnership, joint venture, employee
organization, committee, board, participant, beneficiary,
trustee, partner, or venturer acting in an individual,
fiduciary or representative capacity, as the context may
require.

(x)   "Qualifying Employer Security" shall mean employer
securities as defined in Section 407(d) of ERISA and
Section 409(l) of the Code, and shall include the "common
stock of the Corporation."

(y)   "Rights" shall mean any right to purchase securities of
the Corporation that is issued to holders of common stock
in the Corporation upon terms and subject to conditions
set forth in the applicable rights agreement, between the
Corporation and the rights agent, together with any and
all amendments and supplements thereto.

(z)   "Third Party Named Fiduciary" shall mean a Named
Fiduciary to which the Funds Committee has allocated
responsibility for the management and control of the
assets of one or more of the Investment Funds.

(aa)  "Third Party Named Fiduciary Agreement" shall mean a
written agreement between the Funds Committee and a Third
Party Named Fiduciary allocating responsibility for the

223856.4                          -6-                    October 29, 1998

management and control of the assets of one or more of the Investment Funds.

(bb) "Trust" shall mean the trust created hereby.

(cc) "Valuation Date" shall mean the last day of the Accounting Period, calendar quarter or any more frequent reporting date agreed to by the Trustee.

(dd) The terms "Balanced Fund," "Solutia Stock Fund," "Eligible Employees," "Employee Stock Account," "ESOP Loan," "ESOP Interim Account," "ESOP Suspense Account," "Financed Shares," "Fixed Income Fund," "Growth and Income Equity Fund," "Growth Equity Fund," "International Equity Fund," "Members," "Monsanto Stock Fund" and "U.S. Equity Index Fund" shall have the same meanings or definitions as provided in the Plan unless otherwise specified herein.

(ee) The terms "Before-Tax Contributions" shall refer to Before-Tax Contributions, RIDA Matched Contributions and/or RIDA Supplemental Contributions; "After-Tax Contributions" shall refer to After-Tax Contributions, Regular SIP Matched Savings and/or, Regular SIP Supplemental Savings; "Employer Contributions" shall refer to Employer Matching Contributions, Employer Regular SIP Contributions and/or Employer RIDA Contributions; and "Employer Contributions Accounts" shall refer to the Employer Matching Contributions Account, the Employer Regular SIP Contributions Account and/or the Employer RIDA Contributions Account.

The plural of any term shall have a meaning corresponding to the singular thereof as so defined and any neuter pronoun used herein shall include the masculine or the feminine, as the context shall require.

223856.4                           -7-                           October 29, 1998

1.2  <u>Compliance with Law</u>.  The Trust hereinafter established is intended to comply with ERISA and to be a "qualified trust" as such term is used in Sections 401 and 501 of the Code.

1.3  <u>Eligibility</u>.  Any employee benefit plan established by the Corporation, or a subsidiary or an affiliate of the Corporation, may be funded, in whole or in part, through the Trust if (i) the plan is qualified under Section 401(a) of the Code, (ii) the Trust is exempt from taxation under Section 501(a) of the Code, and (iii) in the case of the Corporation, this Agreement has been duly adopted by the Committee, and, in the case of a subsidiary or affiliate of the Corporation, by the Board of Directors of the subsidiary or committee of the Board of Directors of the subsidiary authorized to adopt such agreements.

SECTION 2

<u>Establishment of Trust</u>

2.1  <u>Establishment of Trust</u>.  The Corporation hereby establishes with the Trustee the Trust consisting of such sums of money and such property acceptable to the Trustee as shall be paid or delivered to the Trustee from time to time.

2.2  <u>Contributions to the Trust</u>.  The Trustee shall have no duty to determine or collect contributions under any Plan and shall be solely accountable for monies or properties actually received by it.  The Corporation shall have the sole duty and responsibility for determining the accuracy or sufficiency of the contributions made under any of the Plans, the transmittal of the contributions to the Trustee, and compliance with any statute, regulation or rule applicable to contributions.

2.3  <u>Prior Administration</u>.  The Trustee shall not have any duty to inquire into the administration of the Plans or actions taken under any of the Plans by any prior trustee.

2.4  <u>Fund to be Held in Trust</u>.   The Fund shall be held by the Trustee in Trust and dealt with in accordance with this Agreement and to the extent discretionary authority is granted to the Trustee by this Agreement in accordance with ERISA.

2.5  <u>Fund to be Held for Benefit of Plan Participants</u>.   At no time before the satisfaction of all liabilities for benefits under any Plan of which the Trust forms a part shall any part of the Fund be used for or diverted to purposes other than for the exclusive benefit of participants, retired participants, or their beneficiaries under the Plans and for the payment of the reasonable expenses of the Plans, except:

    (i)   as provided by the applicable Plan and by law for the purpose of returning any of the Corporation's contributions, or

    (ii)  if any such Plan provides for the return of the Corporation's contributions in the event such Plan initially fails to qualify under the applicable provisions of the Code.

2.6  <u>Commingling</u>.   Subject to the provisions of Section 4 below, the Trustee may commingle the assets attributable to the Plans for which contributions are made under this Agreement if this Agreement is applicable to more than one Plan, and may commingle the Fund with funds of other trusts of similar nature created by the Corporation for the exclusive benefit of its employees.  When commingling with other trusts maintained by the Corporation occurs, the combined trust, to the extent that assets are attributable to contributions made under this Agreement, shall be the Fund referred to herein.  The Trustee, to the extent agreed to in writing with the Corporation, shall maintain such records as are necessary in order to determine the interest of each trust in the Fund.  The Corporation shall be responsible for causing sufficient records to be maintained to insure that benefits and liabilities payable with respect

to each Plan shall be paid from the assets allocable to each such Plan. Should separation be required, either of the Fund from other trusts maintained by the Corporation or of any Plan for which contributions are made under this Agreement from the Fund, the Trustee shall make such separation as directed by the Corporation.

SECTION 3

Disbursement from the Fund

3.1 <u>Disbursements by Trustee</u>. The Trustee shall make such payments out of the Fund direct from time to time by a Named Fiduciary. In the discretion of the Named Fiduciary, such payments may be made directly to the person specified or deposited in a checking account maintained by the Corporation for the purpose of making payments to the person or persons entitled to such payments under the Plans, or to an account maintained by some other entity which the Named Fiduciary may designate to make payments.

3.2 <u>Direction to the Trustee</u>. Any direction given to the Trustee in accordance with this Section need not state the specific application of the payment to be made, but shall state that the payment is for the purposes of the Plans or the payment of the Plans' expenses.

## SECTION 4
### Allocation of Investment Responsibilities

**4.1**   Third Party Named Fiduciaries and Asset Managers.

(a)   The Committee by written notice to the Trustee may (i) designate a Third Party Named Fiduciary with respect to one or more Investment Funds, and (ii) appoint such Third Party Named Fiduciary as a Named Fiduciary with respect to each such Investment Fund.

(b)   The Named Fiduciary from time to time in its sole discretion will appoint one or more Asset Managers to manage specified portions of the Fund.   Upon the appointment of each Asset Manager, the Named Fiduciary shall so notify the Trustee and instruct the Trustee to allocate and divide into a separate account those assets over which each Asset Manager has discretion and control. Unless the Trustee, by action or failure to act, knowingly participates in or knowingly undertakes to conceal an act or omission of an Asset Manager, knowing such act or omission is a breach of fiduciary responsibility by such other person or entity, upon the separation of the assets in accordance with the instructions of the Named Fiduciary, the Trustee shall not be liable for the acts or omissions of such Asset Manager and shall be under no obligation to invest or otherwise manage any such Directed Funds, and the Trustee shall act as custodian for such Directed Funds.   Except as otherwise directed by the Named Fiduciary from time to time, the Trustee shall take no action with respect to the investment duties or powers in Section 5 or Section 9 without receipt of directions from the Asset Manager. On receipt of directions from an Asset Manager, the Trustee shall promptly execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or

appropriate to carry out such directions. Unless specifically prohibited in writing, the Trustee, as custodian, may hold the assets of such directed funds in the name of a nominee or nominees. For purposes of this Section, the mere preparation of reports or processing investment trades shall not constitute knowledge. Notwithstanding anything to the contrary, the Trustee shall invest cash it holds in a Directed Fund in short-term investments which may include the short-term collective investment fund of the Trustee.

(c) When an Asset Manager other than the Trustee is appointed with respect to any Directed Fund, the Asset Manager shall be charged with the same standard of care, fiduciary responsibility, investment restrictions on the various Investment Funds, and investment powers that are applicable to the Trustee with respect to nondirected investments. Where appropriate, and unless the context clearly otherwise requires, all references to the Trustee shall also refer to an Asset Manager other than the Trustee with respect to the applicable Directed Fund.

(d) Should an Asset Manager at any time elect to place security transactions directly with a broker or dealer, the Trustee shall not recognize such transaction unless and until it has received instructions or confirmation of such fact from the Asset Manager. Should the Asset Manager direct the Trustee to utilize the services of any person with regard to the assets under the Asset Manager's management or control, such instructions shall specifically set forth the actions to be taken by the Trustee with regard to such services.

(e) In the event that an Asset Manager places security transactions directly or directs the utilization of a service, the Asset Manager shall be solely responsible for the acts of such persons. The sole duty of the

Trustee for such transactions shall be incident to its duties as custodian.

4.2  <u>Transfer of Assets to Asset Managers</u>.

(a)  Upon receipt of directions by the Named Fiduciary, the Trustee shall (i) transfer and deliver such part of the assets of the Fund as may be specified to any Asset Manager so appointed, and (ii) accept the transfer back to it of any such assets at any time held by an Asset Manager, provided that the Named Fiduciary may only direct such transfers as are in conformity with the provisions of the Plan, this Agreement, ERISA, and Sections 401(a) and 501(a) of the Code.  Any such direction shall constitute a certification to the Trustee by the Named Fiduciary that the transfer so directed is one which the Named Fiduciary is authorized to direct and is in conformity with the aforesaid provisions.

(b)  If any assets are so transferred to the custody of an Asset Manager, such Asset Manager shall undertake and be responsible for all the custodial duties therefor, and such assets shall remain for all purposes a part of the Fund and the Trust and, as such, subject to all the terms and provisions of this Agreement.  If any Asset Manager receiving such assets is a bank or trust company, it may invest any part or all of such assets in units of any collective, common or pooled trust fund operated or maintained by it exclusively for the commingling and collective investment of monies or other assets held under or as part of a plan which is established in conformity with and qualifies under Section 401(a) of the Code.  Notwithstanding the provisions of this Agreement which place restrictions upon the actions of the Trustee or the Asset Manager, to the extent monies or other assets are utilized to acquire units of any collective trust, the terms of the collective trust indenture shall

solely govern the investment duties, responsibilities and powers of the trustee of such collective trust, and such terms, responsibilities and powers shall be incorporated herein by reference and shall be part of this Agreement. For the purposes of valuation of any interest under the Plans of which this trust forms a part, the value of the interest maintained by the Fund in such collective trust shall be the fair market value of the collective fund units held determined by the trustee of such trust in accordance with generally recognized valuation procedures.

(c)    The Trustee shall have no duty or responsibility for the safekeeping of such assets or for the investment and reinvestment of the same, except that the Trustee shall require such statements and reports from each Asset Manager as may be necessary to enable the Trustee and the Named Fiduciary to carry out their recordkeeping and reporting duties under this Agreement. The Trustee shall enter into and execute such agreements, receipts and releases to the extent directed by the Named Fiduciary with respect to the transfer of any assets of the Fund to or from an Asset Manager in accordance with this Section.

4.3  The Trustee.  Subject to investment policies, objectives and guidelines communicated to the Trustee by the Named Fiduciary as contemplated by this Section 4, the Trustee from time to time shall invest and reinvest any Discretionary Fund and keep it invested in accordance with such policies, objectives and guidelines.

## SECTION 5

## Investment Funds

It shall be the duty of the Trustee to keep the Trust Fund divided into separate Investment Funds which are to be designated and invested as described below.

5.1  **Solutia Stock Fund**.  The Solutia Stock Fund, except to the extent used to maintain liquidity for distributions and expenses or as otherwise provided below, shall be invested and reinvested by the Trustee in shares of the common stock of the Corporation:

(a)  the portion of Accounts of the Members which is designated by them for investment in the Solutia Stock Fund;

(b)  all amounts transferred to the Trust from the Monsanto Trust which are attributable to the proceeds received by the Monsanto Trust pursuant to any ESOP Loan under such trust;

(c)  all proceeds received by the Trust pursuant to any ESOP Loan;

(d)  all Employer Contributions (except such contributions used to amortize an ESOP Loan as directed by the Named Fiduciary, which direction shall be as provided in the Plan); and

(e)  other property received as income, dividends or earnings with respect thereto, except:

(i)  income, dividends or earnings attributable to common stock of the Corporation acquired with an ESOP Loan, and earnings thereon, used to amortize an ESOP Loan as

directed by the Named Fiduciary, which direction shall be as provided in the Plan; and

(ii) the number of shares of common stock of Monsanto transferred from the Monsanto Trust equal to (A) all such shares transferred, multiplied by (B) a fraction (I) the numerator of which is the number of shares of Monsanto common stock held in the Monsanto Trust Solutia Stock Fund immediately before the Distribution Date which were not acquired with an ESOP Loan or the earnings thereon used to amortize an ESOP Loan and (II) the denominator of which is the total number of shares of Monsanto common stock held in the Monsanto Trust Solutia Stock Fund immediately before the Distribution Date.  The shares described in clause (ii) shall be transferred to the Monsanto Stock Fund.

Assets acquired by the Trustee with the proceeds of an ESOP Loan shall be held in the ESOP Suspense Account or the ESOP Interim Account until released and allocated to Members' accounts by the Named Fiduciary.  The portion of this fund relating to the ESOP assets shall be accounted for separately. Pursuant to directions of the Named Fiduciary, which direction shall be as provided in the Plan, certain Employer Contributions and dividends shall be used to amortize any ESOP Loan.

The primary purpose of this fund shall be to invest in and hold the common stock of the Corporation.  The Trustee may, but shall not be required to, place amounts received by it for the purpose of common stock investment in temporary investments, if, in the opinion of the Trustee, market conditions are such that investment in common stock of the Corporation would be disruptive or could not be accomplished, or if the investment would be prohibited by law, or the Trustee is notified, or otherwise should have reasonably known, that the investment would adversely affect the

qualified status of the Plan or the exempt status of the Trust under the Code.  In the operation of this account, the Trustee shall have no investment discretion, except as hereinafter provided, and no duty or responsibility to determine the investment quality or prudence of such investment.

Subject to the directions of the Named Fiduciary and Section 9.3(c) of this Agreement, the Trustee shall acquire or dispose of all common stock of the Corporation for this fund (i) in the open market; (ii) in other transactions not constituting prohibited transactions as defined in Section 406 of ERISA or Section 4975 of the Code; (iii) in prohibited transactions for which an exemption is available under Section 408 of ERISA and Section 4975 of the Code; or (iv) through the method of purchase and sales which is used by the Trustee in the normal course of its security transactions.  The Trustee shall provide the Corporation, and any person or entity designated by the Corporation, with a statement consistent with that customarily provided by the Trustee indicating the stock activity in the Solutia Stock Fund.  The Trustee shall be permitted to net all purchases and sales for an account limited in investment purposes to common stock of the Corporation; provided, however, both sales and purchases will be at the closing market value on the date of the transaction and the books and records of the Trustee shall clearly reflect such fact.  The shares of Monsanto common stock which are ESOP Shares that are transferred from the Monsanto Trust shall be reinvested in shares of common stock of the Corporation. The Committee may direct the Trustee to accomplish this through a transaction that satisfies the requirements of the first sentence of this paragraph or by exchanging with a trust for a plan sponsored by Monsanto that is qualified under Section 401 of the Code shares of Monsanto common stock for shares of the common stock of the Corporation at a price agreed upon by the Committee, or its delegate which may include the Trustee, and the fiduciary of such trust provided such a transaction either does not constitute a prohibited

transaction as defined in Section 406 of ERISA and Section 4975 of the Code or is a prohibited transaction for which an exemption is available under Section 408 of ERISA and Section 4975 of the Code.  If for any reason the Trustee should be unable to acquire or dispose of the common stock of the Corporation in the manner provided by this Section, it shall notify the Named Fiduciary of such fact and thereafter it shall make no purchases or sales of securities until instructions are received from the Named Fiduciary.

5.2    <u>Growth and Income Equity Fund</u>.  The portion of the Accounts of the Members which is designated by them for investment in the Growth and Income Equity Fund ordinarily shall be invested primarily in equity type investments, such as common stocks or other securities convertible into common stock, and including through the medium of a commingled fund.  The Trustee shall have the right to keep such portion of such Fund in cash or short-term marketable securities, pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.3    <u>Fixed Income Fund</u>.  The portion of the Accounts of the Members which is designated by them for investment in the Fixed Income Fund, ordinarily shall be invested in high-quality, fixed-income instruments, including but not limited to U.S. Treasury Securities, and may be transferred by the Trustee to an insurance company or bank, satisfactory to and designated by the Named Fiduciary, pursuant to an agreement satisfactory to the Named Fiduciary between the Trustee and such insurance company or bank, under which the insurance company or bank will guarantee repayment of principal and a fixed annual interest rate thereon for a specified future period or periods.  Any such agreement with an insurance company or bank must be consistent with this Agreement, the Plan and its administration requirements.  The Trustee shall have no duty to question such designation by the Named Fiduciary and shall be fully protected in acting in accordance with the Named Fiduciary's direction.  The Trustee shall have no obligation

for any loss or diminution of such Investment Fund caused by such directions. The Trustee shall have the right to keep such portion of such Investment Fund temporarily in cash or in short-term marketable securities pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.4   Balanced Fund. The portion of the Accounts of the Members which is designated by them for investment in the Balanced Fund ordinarily shall be invested in a combination of fixed income and equity investments including through the medium of a commingled fund or a mutual fund. The Trustee shall have the right to keep such portion of such Balanced Investment Fund in cash or in short-term marketable securities pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.5   International Equity Fund. The portion of the Accounts of the Members which is designated by them for investment in the International Equity Fund ordinarily shall be invested in debt or equity securities of companies or issuers which are principally domiciled outside the United States. Such investments may be, but are not required to be, made through one or more mutual funds or one or more commingled funds which have the foregoing described investment intent or may be made through a combination of such mutual funds and commingled funds. The Trustee shall have the right to keep such portion of such International Equity Fund in cash or in short-term marketable securities pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.6   U.S. Equity Index Fund. The portion of the Accounts of the Members which is designated by them for investment in the U.S. Equity Index Fund ordinarily shall be invested primarily in equity type investments, such as common stocks or other securities convertible into common stock, and including through the medium of a commingled fund or a mutual fund. The Trustee shall have the right to keep such portion of such Investment Fund in cash or short-term marketable securities,

pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.7  <u>Growth Equity Fund</u>.  The portion of the Accounts of the Members which is designated by them for investment in the Growth Equity Fund ordinarily shall be invested in equity type investments such as common stocks or other securities convertible into common stocks, and including through the medium of a commingled fund or a mutual fund.  The Trustee shall have the right to keep such portion of such Investment Fund in cash or in short-term marketable securities pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.8  <u>Monsanto Stock Fund</u>.  Effective as of the Distribution Date, the Trustee shall, pursuant to the Named Fiduciary's direction, retain the portion of the Monsanto common stock that is not transferred to the Solutia Stock Fund in this fund.  The Monsanto Stock Fund shall be invested in shares of Monsanto common stock, except to the extent used to maintain liquidity for distributions.  Any property received as income, dividends or earnings with respect to the Monsanto Stock Fund shall be invested by the Trustee in the Solutia Stock Fund.

5.9  <u>No Purchase of Solutia Common Stock or Other Obligation</u>.  No stocks or obligations issued by the Corporation or its Subsidiaries shall be included in the Investment Funds (excluding the Solutia Stock Fund) or any additional Investment Fund or Funds established pursuant to the provisions of the Plan; <u>provided</u>, <u>however</u>, that any investment of any Investment Fund through the medium of commingled funds maintained by a trustee, by the insurance company pursuant to paragraph 5.3 above, or a mutual fund pursuant to paragraphs 5.2, 5.4, 5.5, 5.6 and 5.7 above, for the purpose of this Agreement, shall not constitute an investment in the stocks or obligations of the Corporation or its Subsidiaries, in the event that the commingled trust funds and/or the mutual funds

should contain stocks or obligations of the Corporation or its Subsidiaries.

## SECTION 6
### Participant Notification and Voting

6.1  <u>Voting of Corporation Shares</u>.  Members shall be entitled to direct the vote at any meeting of shareholders of the Corporation, of all shares of common stock of the Corporation allocated or credited to their Accounts in the Plan as shown on the records of the Plan on the record date for determining shareholders entitled to vote at such meeting.  To enable them to do so, and to be fully informed of all matters on which they are entitled to vote, the Trustee shall deliver or cause to be delivered to each Member who is entitled to direct the vote of any shares a copy of all proxy solicitation materials before each annual or special meeting of shareholders of the Corporation, together with a request for instructions on how the shares which such Member is entitled to direct are to be voted at such meeting.  The Trustee shall vote all shares for which it has received voting instructions from Members by the date established by the Trustee in the manner thus instructed. The Trustee shall also vote on a pro rata basis (i) shares which have been allocated or credited to Members' Accounts for which voting instructions have not been timely received from Members; and (ii) shares in the ESOP Suspense Account or the ESOP Interim Account which have not been allocated or credited to Members' Accounts.  The proration on each voting issue shall be equal to the aggregate number of votes attributable to the shares described in clauses (i) and (ii) of the preceding sentence, multiplied by a fraction, the numerator of which is the number of votes attributable to the allocated shares of all Members who have provided timely instructions to the Trustee to vote for, against or abstain from voting on, as the case may be, the issue on which the vote is taken, and the denominator of which is the total number of votes attributable to allocated shares of all Members who have provided timely

instructions to the Trustee on the issue on which the vote was taken. Voting instructions from individual Members shall be held by the Trustee in confidence, and neither the name of nor the voting instructions given by any Member who chooses to give voting instructions shall be divulged by the Trustee to any of the Employers or to any director, officer or employee thereof; except that, to the extent necessary, such instructions may be relayed by the Trustee to a recordkeeper, auditor or tabulator of votes if such person (including any individual who is an employee of the Corporation) agrees not to divulge such directions to any member of management of the Corporation or its affiliates or any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit or tabulation services. The Corporation shall take all steps required to be taken by it in order to permit the Trustee to comply with the provisions of this paragraph, including but not limited to furnishing the Trustee with sufficient copies of all proxy solicitation materials.

6.2   <u>Tendering of Corporation Shares</u>.  Members shall be entitled to the extent of the Corporation shares allocated or credited to their Accounts in the Plan, as shown on the records of the Plan as of the most recent valuation date for which information is available, to direct the Trustee in writing of the manner in which to respond to a tender or exchange offer, including but not limited to a tender or exchange offer within the meaning of the Securities Exchange Act of 1934, as amended, with respect to such shares, and the Trustee shall respond in accordance with the instructions so received. The Trustee shall utilize its best efforts to timely distribute or cause to be distributed to each Member such information that will be distributed to shareholders of the Corporation in connection with any such tender or exchange offer, together with a form requesting instructions on whether or not such shares shall be tendered or exchanged. The Trustee shall also sell, exchange or transfer a pro rata portion of the aggregate

number of any shares that have not been allocated or credited to any Member's Account, including shares held in the ESOP Suspense Account or the ESOP Interim Account. Such pro rata portion shall be equal to the shares not allocated or credited to any Member's Accounts multiplied by a fraction, the numerator of which is the number of allocated or credited shares of each Member who instructed the Trustee to sell, exchange or transfer the shares allocated or credited to the Member's Accounts, and the denominator of which is the total number of allocated or credited shares of all Members. If the Trustee shall not receive timely instructions from a Member of the manner in which to respond to such a tender or exchange offer, the Member shall be deemed to have directed the Trustee not to tender or exchange the Member's shares and the Trustee shall not tender or exchange the shares with respect to which the Member has the right of direction. The instructions received by the Trustee from individual Members shall be held in confidence and neither the name of nor the instructions given by any individual Member who chooses to give instructions shall be divulged by the Trustee to any of the Employers or to any director, officer or employee thereof, or to the EBPC or the Committee; except that, to the extent necessary, such instructions may be relayed by the Trustee to a recordkeeper, auditor, transfer agent, registrar or other person providing services to the Plan, if such person is not the Corporation or an affiliate and agrees not to divulge such directions to any employee of the Corporation or its affiliates or to any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit, transfer agent, registrar or other services.

Any securities received by the Trustee as a result of a tender of shares of common stock which have been allocated or credited to Members' Accounts shall be held by the Trustee and any cash so received shall be invested in short-term investments pending direction as to reinvestment by the Named

Fiduciary.  Any securities or cash received by the Trustee as a result of a tender of shares which have not been allocated or credited to Members' Accounts may be likewise so held, invested or transferred or, subject to the direction of the Named Fiduciary may be used to pay any ESOP Loan.

6.3   Rights.   Should the Rights associated with each share of common stock of the Corporation become exercisable, Members shall be entitled to direct the Trustee on a form furnished by the Trustee whether to sell, exercise, or retain the Rights attributable to the interest of such Members' Accounts.   The Trustee shall use its best efforts to deliver or cause to be delivered to each Member, along with such form, any information distributed to shareholders of the Corporation regarding the Rights.   The Trustee shall follow the directions of the Members who submit instructions by the date established by the Trustee.   If the Trustee shall not receive timely instructions from a Member as to the Rights, the Member shall have been deemed to have directed the Trustee to exercise the Rights and the Trustee shall do so.   If a Member directs the Trustee to exercise, the Trustee shall obtain the consideration for the exercise from among the following sources:  (a) by obtaining appropriate written direction from the Member regarding (i) the transfer and use of funds in the Member's accounts, or (ii) the sale of part of the Rights and the use of the proceeds to exercise the remaining Rights; or (b) in the Trustee's discretion, by borrowing the consideration necessary to exercise; provided that such borrowing is permitted by applicable law and the terms of the Plan and does not adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code.

With respect to Rights associated with unallocated shares, the Trustee shall sell, exercise, or retain and keep unproductive of income a pro rata portion of the applicable Rights.  Such pro rata portion shall be equal to the shares not allocated or credited to any Member's Accounts multiplied by a fraction,

the numerator of which is the number of allocated or credited shares of each Member who instructed the Trustee to sell, exercise or retain the Rights associated with the shares allocated or credited to the Member's accounts, and the denominator of which is the total number of allocated or credited shares of all Members.  In the event of such an exercise by the Trustee, the Trustee shall be deemed to be authorized to accumulate the amount equal to the consideration necessary to exercise from any of the following sources and to hold such acquired securities in the Trust: (i) current Employer Contributions or earnings thereon to the extent such contributions are not needed to make ESOP Loan payments, are not Employer Contributions required to be made by the terms of the Plan and are not needed to satisfy the nondiscrimination tests required by Sections 401(a)(4), 401(k)(3) or 401(m) of the Code, (ii) to the extent necessary, the sale of part of the Rights and the use of the sale proceeds to exercise the remaining Rights, or (iii) in the Trustee's discretion, by borrowing an amount equal to the consideration necessary to exercise the Rights, provided that such borrowing is permitted by applicable law and the terms of the Plan and does not adversely affect the qualified status under the Plan or the exempt status of the Trust under the Code.

The instructions received by the Trustee from individual Members shall be held in confidence and neither the name of, nor the instructions given by, any individual Member who chooses to give instructions shall be divulged by the Trustee to any of the Employers or to any director, officer or employee thereof, or to the EBPC or the Committee; except that such instructions may be relayed by the Trustee to a recordkeeper, auditor, transfer agent, registrar or other person providing services to the Plan if such person is not the Corporation or an affiliate and agrees not to divulge such directions to any employee of the Corporation or its affiliates or to any person other than a person who needs to be aware of such instructions in order to provide the

recordkeeping, audit, transfer agent, registrar or other services.

Any securities received by the Trustee as a result of the sale or exercise of any Rights associated with common stock allocated or credited to Members' accounts shall be held by the Trustee and any cash so received shall be invested in short-term investments pending any reinvestment by the Trustee or transfer into one or more of the Investment Funds, as directed by the Named Fiduciary. Any securities or cash received by the Trustee as a result of the sale or exercise of any Rights associated with common stock not allocated or credited to Members' accounts may be so held or invested or, subject to the direction of the Named Fiduciary may be used to pay any ESOP Loan.

6.4 <u>Voting of Monsanto Shares</u>. Members shall be entitled to direct the vote at any meeting of shareholders of Monsanto, of all shares of common stock of Monsanto allocated or credited to their Accounts in the Plan as shown on the records of the Plan on the record date for determining shareholders entitled to vote at such meeting. To enable them to do so, and to be fully informed of all matters on which they are entitled to vote, the Trustee shall deliver or cause to be delivered to each Member who is entitled to direct the vote of any shares a copy of all proxy solicitation materials before each annual or special meeting of shareholders of Monsanto, together with a request for instructions on how the shares which such Member is entitled to direct are to be voted at such meeting. The Trustee shall vote all shares for which it has received voting instructions from Members by the date established by the Trustee in the manner thus instructed. The Trustee shall also vote on a pro rata basis shares which have been allocated or credited to Members' Accounts for which voting instructions have not been timely received from Members. The proration on each voting issue shall be equal to the aggregate number of votes attributable to shares which have been allocated or

credited to Members' Accounts for which voting instructions
have not been timely received from Members multiplied by a
fraction, the numerator of which is the number of votes
attributable to the allocated shares of all Members who have
provided timely instructions to the Trustee to vote for,
against or abstain from voting on, as the case may be, the
issue on which the vote is taken, and the denominator of which
is the total number of votes attributable to allocated shares
of all Members who have provided timely instructions to the
Trustee on the issue on which the vote was taken.    Voting
instructions from individual Members shall be held by the
Trustee in confidence, and neither the name of nor the voting
instructions given by any Member who chooses to give voting
instructions shall be divulged by the Trustee to Monsanto or
any of the Employers or to any director, officer or employee
thereof;  except  that,  to  the  extent  necessary,  such
instructions may be relayed by the Trustee to a recordkeeper,
auditor or tabulator of votes if such person agrees not to
divulge such directions to any member of management of
Monsanto or its affiliates or any person other than a person
who needs to be aware of such instructions in order to provide
the recordkeeping, audit or tabulation services.

6.5    _Tendering of Monsanto Shares_.    Members shall be entitled to
the extent of Monsanto shares allocated or credited to their
Accounts in the Plan, as shown on the records of the Plan as
of the most recent valuation date for which information is
available, to direct the Trustee in writing of the manner in
which to respond to a tender or exchange offer, including but
not limited to a tender or exchange offer within the meaning
of the Securities Exchange Act of 1934, as amended, with
respect to such shares, and the Trustee shall respond in
accordance with the instructions so received.    The Trustee
shall utilize its best efforts to timely distribute or cause
to be distributed to each Member such information that will be
distributed to shareholders of Monsanto in connection with any
such tender or exchange offer, together with a form requesting

instructions on whether or not such shares shall be tendered or exchanged.  If the Trustee shall not receive timely instructions from a Member of the manner in which to respond to such a tender or exchange offer, the Member shall be deemed to have directed the Trustee not to tender or exchange the Member's shares and the Trustee shall not tender or exchange the shares with respect to which the Member has the right of direction.  The instructions received by the Trustee from individual Members shall be held in confidence and neither the name of nor the instructions given by any individual Member who chooses to give instructions shall be divulged by the Trustee to Monsanto, any of the Employers or to any director, officer or employee thereof, or to the EBPC or the Committee; except that, to the extent necessary, such instructions may be relayed by the Trustee to a recordkeeper, auditor, transfer agent, registrar or other person providing services to the Plan, if such person is not Monsanto or an affiliate and agrees not to divulge such directions to any employee of Monsanto or its affiliates or to any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit, transfer agent, registrar or other services.

Any securities received by the Trustee as a result of a tender of shares of common stock which have been allocated or credited to Members' accounts shall be held by the Trustee and any cash so received shall be invested in short-term investments pending transfer into one or more of the Investment Funds, as directed by the Named Fiduciary.

6.6  <u>Monsanto Rights</u>.  Should the Monsanto Rights associated with each share of common stock of Monsanto become exercisable, Members shall be entitled to direct the Trustee on a form furnished by the Trustee whether to sell, exercise, or retain the Rights attributable to the interest of such Members' Accounts.  The Trustee shall use its best efforts to deliver or cause to be delivered to each Member, along with such form,

any information distributed to shareholders of Monsanto regarding the Rights. The Trustee shall follow the directions of the Members who submit instructions by the date established by the Trustee. If the Trustee shall not receive timely instructions from a Member as to the Rights, the Member shall have been deemed to have directed the Trustee to exercise the Rights and the Trustee shall do so. If a Member directs the Trustee to exercise, the Trustee shall obtain any consideration required for the exercise from among the following sources: (a) by obtaining appropriate written direction from the Member regarding (i) the transfer and use of funds in the Member's Accounts, or (ii) the sale of part of the Rights and the use of the proceeds to exercise the remaining Rights; or (b) in the Trustee's discretion, by borrowing the consideration necessary to exercise; provided that such borrowing is permitted by applicable law and the terms of the Plan and does not adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code.

The instructions received by the Trustee from individual Members shall be held in confidence and neither the name of, nor the instructions given by, any individual Member who chooses to give instructions shall be divulged by the Trustee to Monsanto, any of the Employers or to any director, officer or employee thereof, or to the EBPC or the Committee; except that such instructions may be relayed by the Trustee to a recordkeeper, auditor, transfer agent, registrar or other person providing services to the Plan if such person is not Monsanto or an affiliate and agrees not to divulge such directions to any employee of Monsanto or its affiliates or to any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit, transfer agent, registrar or other services.

Any securities received by the Trustee as a result of the sale or exercise of any Monsanto Rights shall be held by the

Trustee and any cash so received shall be invested in short-term investments pending any reinvestment by the Trustee or transfer into one or more of the Investment Funds, as directed by the Named Fiduciary.

## SECTION 7
## Fund Transfers

Pursuant to the exercise by a Member of his rights under the Plan to request a transfer of his interests from one or more of the Investment Funds to one or more of the other such Investment Funds, the Trustee shall, as expeditiously as practicable, following appropriate directions of the EBPC to the Trustee, carry out such directions and arrange for the appropriate transfer of interests among such Investment Funds. Notwithstanding the foregoing, in no event shall a Member be permitted to transfer his interests from one or more of the Investment Funds into the Monsanto Stock Fund.

## SECTION 8
## Participant Accounts

8.1  <u>Allocation of Contributions</u>.  The EBPC shall, upon the making of any contribution to this Trust by the Corporation, or, if applicable, a Participant, or both, instruct the Trustee of the manner that such contribution is to be allocated among the accounts previously established.

8.2  <u>Responsibility of Trustee</u>.  The Trustee shall not be responsible nor liable to establish or maintain a record or account in the name of any individual Participant.  The Trustee shall not be required to establish the value of any Participant's individual interest in the Fund or any account established hereunder.  Should the Trustee and the EBPC or the Corporation agree that the Trustee shall maintain individual account records, such agreement shall be separate and apart from the terms of this Trust.  Such an agreement shall not be construed as implying any duty upon the Trustee hereunder even

though the Trustee, in its corporate capacity as recordkeeper for the accounts of individual Participants, shall have the right, power or duty to issue instructions or directions as to the disposition or distribution of any assets held hereunder.

## SECTION 9
### Investment of the Fund

9.1    <u>Standard of Care</u>.  The Trustee, each Asset Manager and each Named Fiduciary shall discharge their respective investment duties as provided under Sections 4 and 5 hereof with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims and by diversifying the investments (to the extent required by Section 404 of ERISA) held hereunder consistent with investment policies, objectives and guidelines so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to diversify.

9.2    <u>Waiver of Investment Restrictions</u>.  Such investment and reinvestment shall not be restricted to securities or property of the character authorized for investments by trustees or asset managers under any statute or other laws of any state, district or territory.

9.3    <u>Grant of Investment Powers</u>.  Subject to the provisions of Sections 4 and 5 hereof, in addition to any power granted to trustees or asset managers under any statute or other laws, such laws and statutes, if necessary, being incorporated herein by reference, the Trustee's and each Asset Manager's investment powers may, unless restricted in writing by the Named Fiduciary, include but shall not be limited to investment as described below.

(a)  <u>Growth and Income Equity Fund</u>:  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the Growth and Income Equity Fund:

    (i)  Power to invest in equity-type investments such as common stocks or other securities convertible into common stock, within or without the United States, even though the Trustee does not have physical possession of the securities; subject to the right of the Trustee to keep a portion of such Investment Fund in cash or short-term marketable securities, temporarily or for such longer periods, pursuant to guidelines provided to the Trustee by the Committee.

    (ii)  Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

    (iii)  Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it shall deem proper.  No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

    (iv)  Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

    (v)  Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to

any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issuers thereof, and to make payments in connection therewith.

(vi)  Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to this Agreement.

(vii)  Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(viii)  Power to invest in any fund created and administered by it, as of the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(b)  Fixed Income Fund.  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the Fixed Income Fund:

(i)   Power to enter into a contract with an insurance company or companies or a bank or banks in order to comply with the investment provisions for the Fixed Income Fund of this Agreement, and the transfer of assets from such Investment Fund to such insurance company or bank as provided in Section 4.2.

(ii)  Power to invest in high quality fixed-income securities such as but not limited to U.S. Treasury Securities.

(iii) Power to transfer assets and interests of Members from this Fund to one or more of the Funds pursuant to this Agreement.

(iv)  Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(v)   No insurance company or bank shall be deemed to be a party to this instrument or to be bound in any way by any of the provisions of the Plan which may come to its notice or be bound to do any act or thing or to allow any right, benefit or privilege to any person interested in any policy or contract it has issued which is not provided in such policy or contract.  Any insurance company issuing any policies or contracts hereunder or any bank issuing any contracts hereunder shall be fully discharged

223856.4

affiliate of the Trustee or a party in interest as defined in Section 3(14) of ERISA) on terms and conditions consistent with any directions of the Committee or its delegate to finance the acquisition of Financed Shares or to repay an existing ESOP Loan (including a borrowing by means of the issuance of debt securities of the Trust pursuant to an indenture to which the Trust is a party).

(v) Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to pledge any Financed Shares held in the Solutia Stock Fund (to the extent they have not been allocated or credited to the account of any Member) for the repayment of any such borrowing including an ESOP Loan.

(vi) Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to change the terms of, prepay, accelerate payment of or refinance any ESOP Loan.

(vii) Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to use the proceeds of an ESOP Loan (1) to purchase shares of common stock of the Corporation from the Corporation to the extent the Corporation makes such stock available to the Trustee or, to the extent shares of common stock of the Corporation are not made available by the Corporation, to purchase shares of common stock of the Corporation in the open market or in private transactions; or (2) to repay an ESOP Loan.

(viii) Power, subject to the direction of the Named Fiduciary, which direction shall be as provided in

the Plan, to use the following to amortize any ESOP Loan: (1) Employer Contributions and dividends, earnings and income thereon; (2) dividends, earnings and income on any assets acquired with an ESOP Loan or assets held as a result of the disposition or conversion of such assets; or (3) any other assets lawfully available for such purpose.

(ix) Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to sell common stock of the Corporation (including a sale to the Corporation) in a transaction which is not prohibited by law and which does not adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code; provided that any proceeds from such a sale shall be applied as directed by the Committee, which direction of the Committee shall be as provided in the Plan.

(x) Power, subject to the requirements of ERISA and the Code, to take any and all actions consistent with the directions of the Named Fiduciary that the Trustee deems necessary, desirable or appropriate in connection with any borrowing, purchase or sale made pursuant to this Section 9.3(c).

(xi) Power to vote in person or by proxy at special or annual meetings of shareholders of the Corporation the shares of common stock of the Corporation held in the Solutia Stock Fund and allocated or credited to Members' accounts in accordance with the written instructions of each Member entitled to direct the voting of such shares, as provided in Section 6, and to vote any allocated shares for which voting instructions have not been timely received from

223856.4                    -37-                    October 29, 1998

Members and any other shares not allocated to
Members in proportion to the vote of shares for
which timely instructions have been received from
Members in accordance with Section 6.

(xii)   Power to tender shares of common stock of the
Corporation held in the Solutia Stock Fund and
allocated or credited to Members' accounts in
accordance with the written instructions of each
Member entitled to instruct the tender of such
shares pursuant to an offer, as provided in
Section 6, and to tender any unallocated shares in
proportion to the tender of shares for which timely
instructions have been received from Members in
accordance with Section 6, and to refrain from
tendering any allocated shares for which
instructions have not been received.

(xiii)  Power to sell, exercise or hold the Rights held in
the Solutia Stock Fund and allocated or credited to
Members' accounts which have become exercisable
according to the instructions of each Member
entitled to instruct the sale, exercise or
retention of such Rights as provided in Section 6,
and to sell, exercise or retain any allocated
Rights for which instructions have not been timely
received from Members, and any other Rights which
have not been allocated to Members in proportion to
the sale, exercise or retention of Rights for which
instructions have been received in accordance with
Section 6.

(xiv)   Power, subject to the direction of the Named
Fiduciary, to sell the Rights to the Corporation in
the event of a redemption of the Rights by the
Corporation, provided such sale does not adversely

affect the qualified status of the Plan or the exempt status of the Trust under the Code.

(d)  <u>Balanced Fund</u>.  The following powers may be exercised by the Trustee or Asset Manager only with respect to the Balanced Fund:

(i)  Power to invest in fixed-income and equity-type investments in such proportion as the fiduciary with investment responsibility for the fund may deem advisable from time to time, or to invest in a commingled fund which so invests its assets, subject to the right of the Trustee to keep a portion of such Investment Fund in cash or short-term marketable securities, temporarily or for such longer periods, pursuant to guidelines provided the Trustee by the Named Fiduciary.

(ii)  Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

(iii)  Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it shall deem proper.  No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

(iv)  Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

(v)    Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issuers thereof, and to make payments in connection therewith.

(vi)    Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to the provisions of the Plan and pursuant to this Agreement.

(vii)    Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts, subject to such terms and conditions as shall be established by the EBPC in accordance with the Plan and applicable laws and regulations.

(viii)    Power to invest in any fund created and administered by it, as the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(e)    International Equity Fund.  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the International Equity Fund:

(i)    Power to invest in securities and other property (including futures contracts) even though the

Trustee does not have physical possession of the securities.

(ii)   Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

(iii)  Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it shall deem proper. No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

(iv)   Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

(v)    Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issuers thereof, and to make payments in connection therewith.

(vi)   Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to this Agreement.

(vii)  Power to make loans, based on the direction of the EBPC, to Plan participants with their accounts subject to such terms and conditions as shall be

established by the EBPC in accordance with applicable laws and regulations.

(viii) Power to invest in any fund created and administered by it, as the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(f) U.S. Equity Index Fund.  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the U.S. Equity Index Fund:

(i) Power to invest in securities or other property (including futures contracts) within the United States, even though the Trustee does not have physical possession of the securities or property, subject to the right of the Trustee to keep a portion of such Investment Fund in cash or short-term marketable securities, temporarily or for such longer periods, pursuant to guidelines provided to the Trustee by the Named Fiduciary.

(ii) Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

(iii) Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it

shall deem proper.  No purchaser shall be bound to
see to or be liable for the application of the
proceeds of any such sale.

(iv) Power to exchange any securities or property held
by it for other securities or property, or partly
for such securities or property and partly for
cash, and to exercise conversion, subscription,
option and similar rights with respect to any
securities held by it, and to make payments in
connection therewith.

(v) Power to vote in person or by proxy at corporate or
other meetings and to participate in or consent to
any voting trust, reorganization, dissolution,
merger or other action affecting any securities in
its possession or the issuers thereof, and to make
payments in connection therewith.

(vi) Power to transfer assets and interests of the
Members from this Investment Fund to any other
Investment Fund pursuant to this Agreement.

(vii) Power to make loans, based on the direction of the
EBPC, to Plan participants from their accounts
subject to such terms and conditions as shall be
established by the EBPC in accordance with
applicable laws and regulations.

(viii) Power to invest in any fund created and
administered by it, as the Trustee thereof, for the
collective investment of the assets of employee
benefit trusts, as long as such collective
investment fund is a qualified trust under the
applicable provisions of the Internal Revenue Code
(and while any portion of the Trust Fund is so
invested, such collective investment fund shall

constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(g)  <u>Growth Equity Fund</u>.  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the Growth Equity Fund:

(i)  Power to invest in securities or other property (including futures contracts) within or without the United States, even though the Trustee does not have physical possession of the securities or property, subject to the right of the Trustee to keep a portion of such Investment Fund in cash or short-term marketable securities, temporarily or for such longer periods, pursuant to guidelines provided to the Trustee by the Named Fiduciary.

(ii)  Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

(iii)  Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it shall deem proper.  No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

(iv)  Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

(v) Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issues thereof, and to make payments in connection therewith.

(vi) Power to transfer assets and interests of the Members from this Investment Fund to any other Investment Fund pursuant to this Agreement.

(vii) Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(viii) Power to invest in any fund created and administered by it, as the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(h) <u>Monsanto Stock Fund</u>: The following powers may be exercised by the Trustee only with respect to the Monsanto Stock Fund:

(i) Power to invest in shares of common stock of Monsanto and to invest dividends and distributions received on such shares in the Solutia Stock Fund.

(ii)   Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to the direction of the Named Fiduciary, which direction shall be as provided in the Plan.

(iii)  Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts invested in the Monsanto Stock Fund subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(iv)   Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to sell common stock of Monsanto in a transaction which is not prohibited by law and which does not adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code; provided that any proceeds from such a sale shall be applied as directed by the Named Fiduciary, which direction of the Named Fiduciary shall be as provided in the Plan.

(v)    Power, subject to the requirements of ERISA and the Code, to take any and all actions consistent with the directions of the Named Fiduciary that the Trustee deems necessary, desirable or appropriate in connection with any sale made pursuant to paragraph (iv).

(vi)   Power to vote in person or by proxy at special or annual meetings of shareholders of Monsanto the shares of common stock of Monsanto held in the Monsanto Stock Fund and allocated or credited to Members' Accounts in accordance with the instructions of each Member entitled to direct the

voting of such shares, as provided in Section 6, and to vote any allocated shares for which voting instructions have not been timely received from Members and any other shares not allocated to Members in proportion to the vote of shares for which timely instructions have been received from Members in accordance with Section 6.

(vii)    Power to tender shares of common stock of Monsanto held in the Monsanto Stock Fund and allocated or credited to Members' Accounts in accordance with the written instructions of each Member entitled to instruct the tender of such shares pursuant to an offer, as provided in Section 6 and to refrain from tendering any allocated shares for which instructions have not been received.

(viii)   Power to sell, exercise or hold the Monsanto Rights held in the Monsanto Stock Fund and allocated or credited to Members' accounts which have become exercisable according to the written instructions of each Member entitled to instruct the sale, exercise or retention of such Rights as provided in Section 6, and to sell, exercise or retain any allocated Monsanto Rights for which instructions have not been timely received from Members in proportion to the sale, exercise or retention of Monsanto Rights for which instructions have been received in accordance with Section 6.

## SECTION 10
### Powers of the Trustee, Asset Managers and Named Fiduciaries

10.1    General Powers.   To the extent the power is consistent with Section 9 as to all assets other than common stock of the Corporation or Monsanto, the Trustee shall have and exercise the following powers and authority in the administration of

the Fund only at the direction of an Asset Manager and the Named Fiduciary except where such powers and authority relate to a Directed Fund, and in its sole discretion where such powers and authority relate to investments made by the Trustee in a Discretionary Fund:

(a)   to purchase, receive or subscribe for any securities or other property and to retain in trust such securities or other property;

(b)   to sell, exchange, convey, transfer, lend, or otherwise dispose of any property held in the Fund and to make any sale by private contract or public auction; and no person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency or propriety of any such sale or other disposition;

(c)   to exercise any rights appurtenant to any such stocks, bonds or other securities for the conversion thereof into other stocks, bonds or securities, or to exercise rights or options to subscribe for or purchase additional stocks, bonds or other securities, and to make any and all necessary payments with respect to any such conversion or exercise, as well as to write options with respect to such stocks and to enter into any transactions in other forms of options with respect to any options which the Fund has outstanding at any time;

(d)   to join in, dissent from or oppose the reorganization, recapitalization, consolidation, sale or merger of corporations or properties of which the Fund may hold stocks, bonds or other securities or in which it may be interested, upon such terms and conditions as deemed wise, to pay any expenses, assessments or subscriptions in connection therewith, and to accept any securities or property, whether or not trustees would be authorized to

invest in such securities or property, which may be issued upon any such reorganization, recapitalization, consolidation, sale or merger and thereafter to hold the same, without any duty to sell;

(e)   to insure, according to customary standards, any property held in the Fund for any amount and to pay any premiums required for such coverage;

(f)   to purchase or otherwise acquire and make payment therefor from the Fund any bond or other form of guarantee or surety required by any authority having jurisdiction over this Trust and its operation, or believed by the Trustee or Asset Manager to be in the best interests of the Fund, except the Trustee or Asset Manager may not obtain any insurance whose premium obligation extends to the Fund which would protect the Trustee or Asset Manager against its liability for breach of fiduciary duty;

(g)   to enter into any type of contract with any insurance company or companies, either for the purposes of investment or otherwise; provided that no insurance company dealing with the Trustee shall be considered to be a party to this Agreement and shall only be bound by and held accountable to the extent of its contract with the Trustee.   Except as otherwise provided by any contract, the insurance company need only look to the Trustee with regard to any instructions issued and shall make disbursements or payments to any person, including the Trustee, as shall be directed by the Trustee.  Where applicable, the Trustee shall be the sole owner of any and all insurance policies or contracts issued.  Such contracts or policies, unless otherwise determined, shall be held as an asset of the Fund for safekeeping or custodian purposes only;

(h)  to enter into any type of contract with any bank or banks, either for the purposes of investment or otherwise; provided that no bank dealing with the Trustee shall be considered to be a party to this Agreement and shall only be bound by and held accountable to the extent of its contract with the Trustee.  Except as otherwise provided by any contract, the bank need only look to the Trustee with regard to any instructions issued and shall make disbursements or payments to any person, including the Trustee, as shall be directed by the Trustee.  Where applicable, the Trustee shall be the sole owner of any and all bank contracts issued.  Such contracts, unless otherwise determined, shall be held as an asset of the Fund for safekeeping or custodian purposes only; and

(i)  to lend the assets of the Fund to Plan participants.  The EBPC shall have full and exclusive responsibility for loans made to participants pursuant to the Plan, including, without limitation, full and exclusive responsibility for the following:  development of procedures and documentation for such loans; acceptance of loan applications; approval of loan applications; disclosure of interest rate information required by applicable law; acting as custodian for the physical custody and safekeeping of the promissory notes and other loan documents; enforcement of promissory note terms, including but not limited to directing the Trustee to take specified actions; and maintenance of accounts and records regarding interest and principal payments on notes.

Notwithstanding anything to the contrary in this Agreement, the Trustee shall exercise the power to vote any stocks, bonds or other securities held in the Fund (except for stocks held in the Solutia Stock Fund or the Monsanto Stock Fund) only as directed by the Named Fiduciary, except to the extent that the Named Fiduciary does not direct the Trustee, the Trustee shall

follow the direction of the Asset Manager with respect to the securities in the Asset Manager's account.

10.2   <u>Specific Powers of the Trustee</u>.   The Trustee shall have the following powers and authority, to be exercised in its sole discretion with respect to the Fund:

(a)   to appoint agents, custodians, depositories or counsel, domestic or foreign, for part or all of the Fund and functions incident thereto where, in the sole discretion of the Trustee, such delegation is necessary in order to facilitate the operations of the Fund and such delegation is consistent with the purposes of the Fund or with any applicable law.  Upon such delegation, the Trustee may require such reports, bonds or written agreements as it deems necessary to properly monitor the actions of its delegate;

(b)   to cause any investment, either in whole or in part, in the Fund to be registered in, or transferred into, the Trustee's name or the names of a nominee or nominees, including but not limited to that of the Trustee, a clearing corporation, or a depository, or in book entry form, or to retain any such investment unregistered or in a form permitting transfer by delivery, provided that the books and records of the Trustee shall at all times show that such investments are a part of the Fund; and to cause any such investment, or the evidence thereof, to be held by the Trustee, in a depository, in a clearing corporation, in book entry form, or by any other entity or in any other manner permitted by law;

(c)   to make, execute and deliver, as Trustee, any and all deeds, leases, mortgages, conveyances, waivers, releases or other instruments in writing necessary or desirable for the accomplishment of any of the foregoing powers;

(d)  to defend against or participate in any legal actions involving the Fund or the Trustee in its capacity stated herein, in the manner and to the extent it deems advisable, the costs of any such defense or participation to be borne by the Fund, unless paid by the Corporation, provided, however, the Trustee shall notify the Named Fiduciary and the Corporation of all such actions and the Corporation may, in its sole discretion, determine against the incurrence of any such legal fees and expenses which may be incurred beyond those necessary to protect the Fund against default or immediate loss and may participate in the selection of and instructions to legal counsel;

(e)  to form corporations and to create trusts, to hold title to any security or other property, to enter into agreements creating partnerships or joint ventures for any purpose or purposes determined by the Trustee to be in the best interests of the Fund;

(f)  to establish and maintain such separate accounts in accordance with the instructions of the Named Fiduciary for the proper administration of the Plans, or as determined to be necessary by the Trustee. Such accounts shall be subject to the general terms of this Agreement, unless the Trustee is notified of a contrary intent by the Named Fiduciary; and

(g)  to generally take all action, whether or not expressly authorized, which the Trustee may deem necessary or desirable for the protection of the Fund.

10.3  <u>Maintenance of Indicia of Ownership</u>. The Named Fiduciary shall have sole responsibility for the decision to maintain the custody of foreign investments abroad. Except as otherwise directed by the Named Fiduciary, custody of foreign investments shall be maintained with foreign subcustodians

selected by the Trustee.  The Trustee shall prudently select and retain subcustodians within each respective jurisdiction. The Trustee shall have no responsibility for losses to the Fund resulting from the action or omissions of any subcustodian appointed by the Trustee unless due to (a) the Trustee's failure to prudently select a subcustodian, (b) the Trustee's imprudent retention of a subcustodian, or (c) the subcustodian's fraud, negligence or willful misconduct in carrying out its duties hereunder.  The Trustee shall maintain custody of foreign investments in any jurisdiction where the Trustee has not selected a subcustodian with one or more custodial agents, solely as directed by the Named Fiduciary. The Trustee shall have no responsibility for the financial condition, acts or omissions of any foreign custodial agent holding assets of the Fund at the direction of the Named Fiduciary.

10.4    Third Party Transactions.  With respect to third parties, the Trustee, in addition and not by way of limitation, shall have any and all powers necessary to take title or transfer title or take other actions to effectuate the interests of the Trust in property.

10.5    Transfers to Other Employee Pension Benefit Plans.

(a)    Upon the direction of the Corporation, as part of an acquisition or divestiture, the Trustee shall transfer assets and liabilities of the Trust Fund from the Investment Funds specified in the request (after reserving such reasonable amount as it shall deem necessary to provide for any expenses or taxes then chargeable against the Trust Fund) to the trustee of an employee pension benefit plan maintained by another employer ("Transferee Pension Plan"), provided:

    (i)    the Transferee Pension Plan is qualified under Section 401(a) of the Code and the trust maintained

by the Transferee Pension Plan to which the assets and liabilities are transferred is exempt from tax under Section 501(a) of the Code;

(ii)   the transfer complies with Section 414(l) of the Code; and

(iii)  where required or advisable, the approval of all necessary governmental agencies is obtained.

(b)  Upon the request of the Corporation, the Trustee shall accept the transfer of assets and liabilities from the Trustee of an employee pension benefit plan maintained by another employer ("Transferor Pension Plan") to the Trust Fund, provided:

(i)   the Transferor Pension Plan is qualified under Section 401(a) of the Code and the trust maintained by the Transferor Pension Plan from which the assets and liabilities are transferred is exempt from tax under Section 501(a) of the Code;

(ii)   the transfer complies with Section 414(l) of the Code; and

(iii)  where required or advisable, the approval of all necessary governmental agencies has been obtained.

The amounts so transferred shall be deposited in the Investment Funds specified in the request submitted by the Corporation. For purposes of this Section, the Trustee may rely upon a direction of the Corporation as a representation that the conditions set forth herein have been met.

10.6  <u>Futures</u>.  The Named Fiduciary may direct the Trustee to (i) enter into such agreements as are necessary to implement investment in futures contracts and options on futures

contracts; (ii) transfer initial margin to a futures commission merchant or third-party safekeeping bank pursuant to directions from an Asset Manager; and (iii) pay or demand variation margin in accordance with industry practice to or from such futures commission merchant based on daily marking to market calculations. The Trustee shall have no investment or custodial responsibility with respect to assets transferred to a futures commission merchant or third-party safekeeping bank.

10.7 <u>Securities Lending</u>. The Committee may also direct the Trustee as fiduciary to lend securities of the Fund held by the Trustee, other than common stock of the Corporation or Monsanto, by entering into a written agreement with the Trustee. The terms of the agreement between the Committee and the Trustee shall be consistent with Department of Labor Prohibited Transaction Exemption 81-6 or any successor exemption. The written agreement between the Committee and the Trustee shall direct the Trustee to enter into a loan agreement with a borrower or borrowers. The Trustee shall transfer securities to the borrower and invest or hold on behalf of the Fund the collateral received in exchange for the securities. Notwithstanding anything in this agreement to the contrary, the borrower shall have the authority and responsibility to vote securities it has borrowed. The Trustee shall maintain a record of the market value of the loaned securities.

## SECTION 11
### Discretionary Powers

Except as otherwise provided with respect to the investment of assets in any Directed Fund, the Trustee is hereby granted any and all discretionary powers not explicitly or implicitly conferred by this Agreement which it may deem necessary or proper for the protection of the property held hereunder.

## SECTION 12
### Prohibited Transactions

Notwithstanding any provision of this Agreement, either appearing before or after this Section, the Trustee, with respect to a Discretionary Fund and an Asset Manager with respect to a Directed Fund, shall not engage in or cause the Trust to engage in any transaction if it knows or should know that such transaction constitutes a direct or indirect non-exempt prohibited transaction, as defined in Section 406 of ERISA or Section 4975 of the Code.

## SECTION 13
### Expenses, Compensation and Taxes

13.1  <u>Compensation and Expenses of the Trustee</u>.  The Trustee shall be entitled to such reasonable compensation for services rendered by it in accordance with the schedule of compensation as agreed upon by the Corporation and the Trustee from time to time.  From that fee, the Trustee shall pay the expenses incurred as a result of the execution of its duties hereunder, including but not limited to accounting expenses and routine legal expenses incurred in the normal course of Fund administration, and expenses incurred as a result of disbursements and payments made by the Trustee.  To the extent the Trustee engages agents or obtains services from third parties which the Trustee believes to be outside of its fee agreement, it shall notify and consult with the Corporation in advance concerning such fees and shall be paid by the Corporation or from the Fund as agreed to from time to time.  Notwithstanding the preceding sentence, to the extent the Trustee incurs nonroutine expenses, including legal fees in connection with the Trust, it shall notify and consult with the Corporation in advance concerning such expenses and shall be paid by the Corporation or from the Fund as agreed to from time to time.

If the Corporation objects to the payment of any such third-party fees or nonroutine expenses, and despite the objection, the Trustee determines such fees or expenses are necessary or advisable, the fees or expenses shall be paid from the Fund unless they are paid by the Corporation in a reasonable time, provided that such fees or expenses are of the type that can lawfully be paid from the Fund.

In the event, the Committee directs the Trustee to lend securities of the Fund, the Trustee shall be paid additional reasonable compensation as agreed to by the Trustee and the Committee.

13.2 <u>Payment from the Fund</u>.    Subject to applicable collective bargaining agreements covering any participant or groups of participants in the Fund, the Named Fiduciary shall direct the Trustee to pay from the Fund's assets all expenses, compensation, taxes and assessments attributable to, incurred by or with respect to, or levied upon or assessed against, the Fund, including, but not limited to, fees and expenses of the Trust and the Asset Managers, mutual fund fees and expenses, fees and expenses of administrative service providers to the Fund or to or for the participants, and, to the extent as determined by the Corporation not paid by the Corporation, the compensation of, and travel and related expenses incurred by, such of the Corporation's employees and contract employees who are engaged in activities for or on behalf of the Fund but only to the extent such compensation, travel and related expenses are attributable to activities performed by such employees and contract employees for or on behalf of the Fund. The Trustee shall also be entitled to receive reasonable compensation from the Fund for its services rendered in connection with any tender or exchange or rights offer. Payment from the Fund's assets under this paragraph shall be made and allocated to participants' accounts according to the method specified in guidelines provided to the recordkeeper. Notwithstanding the foregoing to the contrary, the Corporation

shall pay all fees which are "settlor" fees as specified in the Code or ERISA.

13.3    Payment of Taxes.    The Trustee shall notify the Corporation upon receipt of notice with regard to any proposed tax deficiencies or any tax assessments which it receives on any income or property in the Fund and, unless notified to the contrary by the Corporation within thirty (30) days, shall pay any such assessments. If the Corporation notifies the Trustee within said period that, in its opinion or in the opinion of counsel, such assessments are invalid or that they should be contested, then the Trustee shall take whatever action is indicated in the notice received from the Corporation or counsel, including contesting the assessment or liquidating any claims.

**SECTION 14**
**Accounts, Books and Records of the Fund**

14.1    Recordkeeping Duty of Trustee.    The Trustee shall keep accurate and detailed accounts of all investments, receipts and disbursements and other transactions hereunder, and all accounts, books and records relating thereto shall be open at all reasonable times to inspection and audit by any person designated by the Corporation.

14.2    Periodic Reports.    In addition, within sixty (60) days following the close of each fiscal year of the Fund, or following the close of such other period as may be agreed upon between the Trustee and the Corporation, and within one hundred twenty (120) days, or such other agreed-upon period, unless such period be waived, after the removal or resignation of the Trustee as provided for in this Agreement, the Trustee shall file with the Corporation a certified written report setting forth all investments, receipts and disbursements, and other transactions effected during the fiscal year or other annual period or during the period from the close of the

preceding fiscal year or other preceding period to the date of such removal or resignation, including a description of all securities and investment purchases and sales with the cost or net proceeds of such purchases or sales and showing all cash, securities and other property held at the close of such fiscal year or other period, valued currently, and such other information as may be required of the Trustee under any applicable law.

14.3 <u>Additional Accounting</u>. Except as provided below, neither a Named Fiduciary nor the Corporation shall have the right to demand or be entitled to any further accounting different from the normal accounting rendered by the Trustee. Further, no participant, beneficiary or any other person shall have the right to demand or be entitled to any accounting by the Trustee, other than those to which they may be entitled under the law. A Named Fiduciary or the Corporation shall have the right to inspect the Trustee's books and records relating to the Fund during normal business hours or to designate an accountant to make such inspection, study, and/or audit with all expenses related thereto to be paid by the Corporation.

14.4 <u>Judicial Determination of Accounts</u>. Nothing contained herein will be construed or interpreted to deny the Trustee or the Corporation the right to have the Trustee's account judicially determined.

14.5 <u>Filings by the Corporation</u>. For the purposes of this Section, the Trustee shall conclusively presume that the Corporation has made or caused to be made, or will make or cause to be made, all federal filings as of the date required. Should the Trustee incur any liability by reason of failure of the Corporation to timely file, the Corporation shall fully reimburse the Trustee for any and all obligations, including penalties, interest or expenses, so incurred by the Trustee.

14.6  <u>Determination of Fair Market Value</u>.  Using its daily valuation procedures and as provided in this Section the Trustee will arrive at a daily value for the Fund.  The Trustee may rely conclusively upon the determination of the issuing insurance company, mutual fund or bank with respect to the fair market value of the contract with such entity or a mutual fund or a commingled fund for which a bank other than the Trustee serves as trustee.  In addition, with respect to the fair market value of an asset which the Trustee does not value, the Trustee may rely conclusively upon the Asset Manager's determination with respect to an asset in a Directed Fund managed by such Asset Manager.

14.7  <u>Retention of Records</u>.  All records and accounts maintained by the Trustee with respect to the Fund shall be preserved for such period as may be required under any applicable law.  Upon the expiration of any such required retention period, the Trustee shall have the right to destroy such records and accounts after first notifying the Corporation in writing of its intention and to transfer to the Corporation any records and accounts requested.  The Trustee shall have the right to preserve all records and accounts in original form, or on microfilm, magnetic tape, or any other similar process.

<u>SECTION 15</u>

<u>Fiduciary Duties of Trustee</u>

The Trustee acknowledges that it assumes the fiduciary duties established by this Agreement.

<u>SECTION 16</u>

<u>Resignation and Removal</u>

The Trustee may be removed with respect to all or a part of the Fund by the Corporation, upon written notice to the Trustee to that effect.  The Trustee may resign as Trustee hereunder, upon written notice to that effect delivered to the Corporation.

16.1 <u>Notice</u>. Such removal or resignation shall become effective as of the last day of the month which coincides with or next follows the expiration of sixty (60) days from the date of the delivery of such written notice, unless an earlier or later date is agreed upon in writing by the Corporation and the Trustee.

16.2 <u>Successor Appointment</u>. In the event of such removal or resignation, a successor Trustee, or a separate trustee or trustees, shall be appointed by the Corporation to become Trustee, or a separate trustee or trustees, at the time such removal or resignation becomes effective. Such successor Trustee, or separate trustee or trustees, shall accept such appointment by an instrument in writing delivered to the Corporation and the Trustee and upon becoming successor Trustee, or separate trustee or trustees, shall be vested with all the rights, powers, duties, privileges and immunities as successor Trustee, or separate trustee or trustees, hereunder as if originally designated as Trustee, or separate trustee or trustees, in this Agreement.

16.3 <u>Transfer Cooperation</u>. Trustee shall cooperate in good faith with the Corporation and successor, or separate trustee or trustees, to ensure an orderly transition of services and in order to minimize the possibility of loss to the Fund.

16.4 <u>Transfer of Fund to Successor</u>. Upon such appointment and acceptance, the retiring Trustee shall endorse, transfer, assign, convey and deliver to the successor Trustee, or separate trustee or trustees, all of the funds, securities and other property then held by it in the Fund and the delivery of the Fund to the successor Trustee, or separate trustee or trustees, shall be transferred and paid over to the successor Trustee, or separate trustee or trustees, promptly upon settlement of its accounts, subject to the right of the retiring Trustee to retain any property deemed unsuitable by it for transfer until such time as transfer can be made.

16.5  Retention of Nontransferable Assets.  If the retiring Trustee
      holds any property unsuitable for transfer, it shall retain
      such property, and as to such property alone it shall be a
      co-trustee with the successor Trustee, or separate trustee or
      trustees, its duties and obligations being solely limited to
      any such property, and it shall not have fiduciary duties of
      any nature as to assets transferred.  Should the successor
      Trustee, or separate trustee or trustees, accept fiduciary
      responsibility as to such property, the Trustee shall retain
      only custodian duties as to such property.

16.6  Accounting.  In the event of the removal or resignation of the
      Trustee hereunder, the Trustee shall file with the Corporation
      a statement and report of its accounts and proceedings
      covering the period from its last annual statement and report,
      and its liability and accountability to anyone with respect to
      the propriety of its acts and transactions shown in such
      written statement and report shall be governed by the terms of
      this Agreement.

## SECTION 17
### Actions by the Corporation, the Committee or Named Fiduciary

17.1  Action by Corporation.  Any action by the Corporation pursuant
      to this Agreement shall be evidenced or empowered in writing
      to the Trustee, and the Trustee shall be entitled to rely on
      such writing.

      Any action of the Corporation (except for actions on behalf of
      the Corporation by the Committee specifically provided herein)
      pursuant to any of the provisions of this Agreement shall be
      evidenced by an instrument in writing signed by the Chairman
      of the Board, the Vice Chairman of the Board, the President,
      the Chairman of the Executive Committee, any Executive,
      Senior, Group or other Vice President of the Corporation, the
      Secretary, the Treasurer, any Assistant Secretary or Assistant
      Treasurer thereof, or their delegate, except that in any case

in which this Agreement specifically provides for such action to be taken by another officer of the Corporation, such action shall be evidenced by an instrument in writing signed by such officer. Any resolution adopted by the Board of Directors or other evidence of such authorization shall be certified to the Trustee by the Secretary or an Assistant Secretary of the Corporation under its corporate seal, and the Trustee may rely upon any authorization so certified until revoked or modified by a further action of the Board of Directors similarly certified to the Trustee.

17.2 <u>Delegation</u>. Notwithstanding anything herein to the contrary, the Corporation, the Committee, the EBPC or the Third Party Named Fiduciary may in its sole discretion delegate any of its responsibilities hereunder to any person or entity selected by it. Such a delegation shall be in writing and shall specify the identity of the delegate and the responsibilities delegated to such person. A copy of such written delegation shall be provided to the Trustee and the Trustee may rely upon any such delegation until revoked or modified by further action of the Corporation, the Committee, the EBPC or the Third Party Named Fiduciary, as the case may be, and written notice of such action is provided to the Trustee.

SECTION 18

Amendment or Termination

18.1 <u>Amendment or Termination</u>. The Committee shall have the right at any time and from time to time by appropriate action:

(a) to modify or amend in whole or in part any or all of the provisions of this Agreement upon sixty (60) days' prior notice in writing to the Trustee, unless the Trustee agrees to waive such notice; provided, however, that no modification or amendment which affects the rights, duties or responsibilities of the Trustee may be made without the Trustee's consent, or

(b)  to terminate this Agreement upon sixty (60) days' prior notice in writing delivered to the Trustee;

provided, further, that no termination, modification or amendment shall permit any part of the corpus or income of the Fund to be used for or diverted to purposes other than for the exclusive benefit of such participants, retired participants and their beneficiaries, except for the return of Corporation contributions which are allowed by law and permitted under a Plan.

18.2   Distribution of Assets.  Should the Trust form a part of a Plan subject to the jurisdiction of the Pension Benefit Guaranty Corporation ("PBGC") as provided in ERISA, and should the Corporation notify the Trustee of the termination of a Plan, the Trustee shall take no action as to the termination of this Trust with respect to such Plan until it has received notice from the Named Fiduciary or the Corporation that such termination has been approved by the PBGC.  Thereafter, and in the event that this Trust does not form a part of a Plan subject to the jurisdiction of the PBGC, the Trustee shall distribute all cash, securities and other property then constituting the Fund, less any amounts constituting charges and expenses payable from the Fund, on the date or dates specified by the Named Fiduciary to such persons and in such manner as the Named Fiduciary shall direct.  In making such distributions, the Trustee shall be entitled to assume that such distributions are in full compliance with and are not in violation of any applicable law regulating the termination of retirement plans such as the Plan, and the Trustee may require the Corporation or the Named Fiduciary to furnish it with evidence that such distributions do not violate any such applicable law.  The Corporation assumes all liability of any kind whatsoever arising from any distribution made by the Trustee at the direction of the Named Fiduciary as a result of the termination of this Agreement and shall indemnify and save

the Trustee harmless from any attempt to impose any liability on the Trustee with respect to any such distribution.

18.3    <u>Retention of Nontransferable Property</u>.  The Trustee reserves the right to retain such property as is not, in the sole discretion of the Trustee, suitable for distribution at the time of termination of this Agreement and shall hold such property as custodian for those persons or other entities entitled to such property until such time as the Trustee is able to make distribution.    The Trustee's duties and obligations with respect to any property held in accordance with the above shall be purely custodial in nature, and the Trustee shall only be obligated to see to the safekeeping of such property and make a reasonable effort to prevent deterioration or waste of such property prior to its distribution.   Upon complete distribution of all property constituting the Fund, this Agreement shall be deemed terminated.

18.4    <u>Termination in the Absence of Directions from the Corporation</u>. In the event no direction is provided by the Corporation with respect to the distribution of a Plan's portion of the Fund upon termination of this Agreement, the Trustee shall make such distributions as are specified by the Plan after notice to the Corporation.  In the event the Plan is silent as to the distributions to be made upon termination of the Plan or the terms of the Plan are inconsistent with the then applicable law, the Trustee shall distribute the Fund to participants and their beneficiaries under the Plan in an equitable manner that will not adversely affect the qualified status of the Plan under Section 401(a) of the Code or any other statute of similar import and that will comply with any applicable provisions of ERISA regulating the allocation of assets upon termination of plans such as the Plan.  The Trustee, in such case, reserves the right to seek a judicial and administrative determination as to the proper method of distribution of the Fund upon termination of this Agreement.

18.5  <u>Termination on Corporation Dissolution</u>.  If the Corporation
ceases to exist as a result of liquidation, dissolution or
acquisition in some manner, the Fund shall be distributed as
provided above upon termination of a Plan unless a successor
company elects to continue the Plan and this Agreement.

SECTION 19

<u>Merger or Consolidation</u>

19.1  <u>Merger or Consolidation of Trustee</u>.  Any corporation, or
national association, into which the Trustee may be merged or
with which it may be consolidated, or any corporation, or
national association, resulting from any merger or
consolidation to which the Trustee is a party, or any
corporation, or national association, succeeding to the trust
business of the Trustee, shall become the successor of the
Trustee hereunder, without the execution or filing of any
instrument or the performance of any further act on the part
of the parties hereto.

19.2  <u>Merger or Consolidation of Corporation</u>.  Any corporation into
which the Corporation may be merged or with which it may be
consolidated, or any corporation succeeding to all or a
substantial part of the business interests of the Corporation
may become the Corporation hereunder by expressly adopting and
agreeing to be bound by the terms and conditions of the Plan
and this Agreement and so notifying the Trustee to such effect
by submission to the Trustee of an appropriate written
document.

19.3  <u>Merger or Consolidation of Plan</u>.  In the event that the Named
Fiduciary or the Corporation authorizes and directs that the
assets of another plan be merged or consolidated with or
transferred to a Plan participating in this Trust, the Trustee
shall take no action with regard to such merger, consolidation
or transfer until it has been notified in writing that each
participant covered under the Plan, the assets of which are to

be merged, consolidated or transferred, will immediately after such merger, consolidation or transfer be entitled to a benefit either equal to or greater than the benefit to which he would have been entitled had the Plan been terminated.

## SECTION 20
### Indemnification

20.1  Indemnity.  The Corporation shall fully indemnify and hold harmless the Trustee from any liability, loss and expense, including reasonable legal fees and expenses, incident to: (a) any act by the Trustee in reliance upon or compliance with instructions issued by a Named Fiduciary, the Corporation, any Investment Manager (or any properly approved delegate of any of the above); or (b) failure to act in any circumstances where another person or entity has responsibility to direct the Trustee, provided, however, the Trustee shall not be indemnified as provided above where the Trustee by its action or failure to act knowingly participates in or knowingly undertakes to conceal an act or omission, knowing such act or omission is a breach of fiduciary responsibility by such other person.  For purposes of the preceding sentence, processing of investment trades, making payments or maintaining reports shall not constitute knowledge.  In the event the Trust Fund or the Corporation incurs any liability, loss, claim, suit or expense arising directly from a breach by the Trustee of responsibilities specifically allocated to it by the terms of this agreement or the Trustee's negligent or willful misconduct in performing such responsibilities, the Trustee shall indemnify and hold the Trust Fund or the Corporation harmless from and against such liability, loss, claim, suit or expense.

The provisions of this Section shall not govern indemnification of actions or failure to act with respect to the Solutia Stock Fund or the Monsanto Stock Fund.  Such indemnification shall be exclusively governed by the

provisions of Section 20.2 below.  This Section shall survive
the termination of this agreement.

20.2    <u>Solutia Stock Fund and Monsanto Stock Fund Indemnity</u>.  Except
        for the short-term investment of cash, the Corporation has
        limited investments in the Solutia Stock Fund to stock or
        rights of the Corporation and in the Monsanto Stock Fund to
        stock or rights of Monsanto.  The Trustee shall not be liable
        for the purchase, voting, retention, tender (or not tendering
        pursuant to Section 6.2 or 6.5) or sale of stock or rights of
        either the Corporation or Monsanto or for action or inaction
        pursuant to direction by the Named Fiduciary as provided in
        Section 9.3, and the Corporation agrees to indemnify and hold
        harmless the Trustee from any liability, loss and expense,
        including reasonable legal fees and expenses, which the
        Trustee may sustain by reason of purchase, voting, retention,
        tender (or not tendering pursuant to Section 6.2 or 6.5) or
        sale of stock or rights of either the Corporation or Monsanto
        or for action or inaction pursuant to direction by the Named
        Fiduciary as provided in Section 9.3, except that the Trustee
        shall not be indemnified and held harmless if:   (a) it is
        negligent in carrying out its trade execution responsibilities
        with respect to stock of either the Corporation or Monsanto,
        or (b) by its action or failure to act, it willfully breaches
        its duties under this agreement with respect to the Solutia
        Stock Fund and the Monsanto Stock Fund, acts in bad faith or
        commits willful misconduct or gross negligence.  The Trustee
        shall indemnify and hold the Trust Fund or Corporation
        harmless in the event that the Trust Fund or the Corporation
        incurs any liability, loss, claim, suit or expense arising
        directly from (a) the Trustee's negligence in carrying out its
        trade execution responsibilities with respect to stock of
        either the Corporation or Monsanto or (b) the Trustee's
        willful breach of its duties under this agreement respect to
        the Solutia Stock Fund and the Monsanto Stock Fund, or its
        willful misconduct, gross negligence or bad faith in the

performance of its obligations under this agreement respect to the Solutia Stock Fund and the Monsanto Stock Fund.

This Section shall survive the termination of this agreement and be in addition to Section 21.1.

20.3    <u>Defense of Action</u>.   Promptly after receipt by the Trustee of notice of its involvement in any action, proceeding or investigation (an "Action"), the Corporation shall be notified in writing of such Action if a claim of indemnification is to be made against the Corporation with respect thereto.   The Corporation shall be entitled to participate in or assume the defense of any such Action, but any settlement of an Action shall require consent of the Trustee, which consent will not be unreasonably withheld.   If the Corporation elects to assume the defense, the Trustee shall have the right to participate in such defense and to retain its own counsel, but the Corporation shall not be liable for any legal fees or legal expenses subsequently incurred by the Trustee in connection with the defense thereof unless (a) the Corporation has agreed to pay such fees and expenses; (b) the Trustee has reasonably concluded that defenses are available to it that are not available to the Corporation, justifying retention of separate counsel;   (c)   unless   assumption of   the   defense   by   the Corporation or use of counsel chosen by the Corporation would result in a conflict of interest between the Corporation and the Trustee or for such counsel; or (d) the Corporation shall not have employed counsel reasonably satisfactory to the Trustee within a reasonable time after the commencement of the Action.   This provision shall survive the termination of this agreement.

20.4    <u>Reliance Upon Counsel</u>.   The Trustee may consult with legal counsel with respect to its responsibilities under this Agreement and may reasonably rely upon written advice of such legal counsel.   To the extent legal advice is sought by the Corporation or a fiduciary other than the Trustee concerning

responsibilities that are primarily the responsibility of the Corporation or such other fiduciary, the Trustee shall be fully protected in acting or refraining from acting based on such advice.

20.5 <u>Year 2000</u>.  The Trustee represents and warrants that it is using, and will continue to use, commercially reasonable efforts to cause its computer systems, to the extent they operate on or use logic or processes pertaining to date/time data, to be Year 2000 Compliant and believesthat such systems will be Year 2000 Complaint in a timely manner.  For purposes of this paragraph, "Year 2000 Compliant" means capable of accurately, correctly and consistently processing date/time data (ncluding, but not limited to, accepting, calculating, comparing, sorting, sequencing and returning) prior to, during and after the calendar year 2000 A.D., including leap year calculations and, when used in combination with other Year 2000 Compliant information technology, will accurately accept, exchange and process date/time data without special processing, special devices or technology or extra costs to the Company without error.  The Trustee further agrees that no Year 2000 non-compliance that delays, hinders or otherwise interferes with its performance under this Agreement shall be deemed an event of force majeure or otherwise operate to excuse the Trustee from its obligations thereunder.

### SECTION 21
### Nonalienation of Trust

21.1 <u>Trust not Subject to Assignment or Alienation</u>.  Except as heretofore provided, no company, participant or beneficiary of the Plans to which the Trust applies shall have any interest in or right to the assets of this Trust, and to the full extent of all applicable laws, the assets of this Trust shall not be subject to any form of attachment, garnishment, sequestration or other actions of collection afforded creditors of the Corporation, participants or beneficiaries.

The Trustee shall not recognize any assignment or alienation of benefits unless, and then only to the extent, written notices are received from the Committee.

21.2  <u>Plans' Interest in Trust not Assignable</u>.  Except to the extent required by applicable law, the equity or interest of any participating Plan in the Fund shall not be assignable.

### SECTION 22
### Governing Law

To the extent not superseded by ERISA, this Agreement shall be construed and enforced, to the extent possible, according to the laws of the State of Illinois, and all provisions hereof shall be administered according to the laws of said State and any federal laws, regulations or rules which may from time to time be applicable; provided, however, that the provisions of Section 6 of the Trust Agreement and any other provisions relating to voting and tendering of common stock of either the Corporation or Monsanto or the distribution, sale or exercise of Rights or Monsanto Rights shall be construed and enforced, to the extent possible, according to the laws of the State of Delaware and any federal laws, regulations or rules which may from time to time be applicable.  In case of any conflict between the provisions of the Plan and this Agreement, the provisions of this Agreement shall govern.

### SECTION 23
### Parties to Court Proceedings

To the extent permitted by law, only the Trustee and the Corporation shall be necessary parties in any application to the courts for an interpretation of this Agreement or for an accounting by the Trustee, and no participant under any Plan or other person having an interest in the Fund shall be entitled to any notice or service of process.  Any final judgment entered in such an action or proceeding, to the extent permitted by law, shall be conclusive upon all persons claiming under this Agreement or any Plan.

## SECTION 24
### Subsidiaries and Affiliates

24.1    **Adoption of Trust by Subsidiaries and Affiliates**.    Any
Corporation which is a subsidiary of the Corporation or which
may be affiliated with the Corporation in any way, and which
is now or may hereafter be organized under the laws of the
United States of America, or of any State or Territory
thereof, with the approval of the Corporation, by resolution
of its own Board of Directors, may adopt this Agreement, if
such subsidiary or affiliate shall have adopted one or more
Plans qualified under Section 401(a) of the Code, as amended.
If any such subsidiary or affiliate so adopts this Agreement,
this Agreement shall establish the trust for such Plans as are
specified by such subsidiary or affiliate, and shall
constitute a continuation, amendment and restatement of any
prior trust for any such Plans.    Furthermore, the assets of
any such Plans may be commingled with the assets of other
Plans held in the Fund pursuant to Section 2.6 hereof.
However, the assets of any Plan so held in the Fund shall not
be subject to any claim arising under any other Plan, the
assets of which are commingled therewith by the Trustee for
investment purposes, and under no circumstances shall any of
the assets of one Plan be available to provide the benefits
under another Plan.    A separate trust shall be deemed to have
been created with respect to each Plan of such subsidiary or
affiliate.

24.2    **Segregation from Further Participation**.    Any subsidiary or
affiliate of the Corporation, at any time, with the consent of
the Corporation, may segregate a Plan's trust from further
participation in this Agreement.    In such event, such
subsidiary or affiliate shall file with the Trustee a document
evidencing the segregation of the Plan from the Fund and its
continuance of a separate trust in accordance with the
provisions of this Agreement as though such subsidiary or
affiliate were the sole creator thereof.    In such event, the

Trustee shall deliver to itself as Trustee of such separate trust such share of the Fund as may be determined by the Trustee to constitute the appropriate share of the Fund, as confirmed by the Corporation, then held in respect of the participating employees of such subsidiary or affiliate. Such subsidiary or affiliate may exercise thereafter, in respect of such separate trust, all of the rights and powers reserved to the Corporation under the provisions of this Agreement. The equitable share of any Plan participating in the Fund shall be segregated immediately and withdrawn from the Fund if the Plan ceases to be qualified under Section 401(a) of the Code, and the Corporation shall promptly notify the Trustee of any determination by the Internal Revenue Service that any such Plan has ceased to be so qualified.

24.3    <u>Segregation of Assets Allocable to Specific Employees</u>. The Committee, at any time, may direct the Trustee to segregate and withdraw the equitable share of any such Plan, or that portion of such equitable share as may be certified to the Trustee by the Committee as allocable to any specified group or groups of employees or beneficiaries. Whenever segregation is required, the Trustee shall withdraw from the Fund such assets as it shall deem, in its absolute discretion, to be equal in value to the equitable share to be segregated. Such withdrawal from the Fund shall be in cash or in any property held in such Fund, or in a combination of both, in the absolute discretion of the Trustee. The Trustee shall hold thereafter the assets so withdrawn as a separate trust fund in accordance with the provisions of this Agreement, which shall be construed in respect of such assets, as if the employer maintaining such Plan (determined without regard to whether any subsidiaries or affiliates of such employer have joined in such Plan) has been named as the Corporation hereunder. Such segregation shall not preclude later readmission to the Fund.

## SECTION 25
## Authorities

25.1   <u>Subsidiary or Affiliate</u>.  Any action required or permitted to be taken under this Agreement by a subsidiary or affiliate of the Corporation shall be given by the board of directors thereof in the manner described in Section 17.1.

25.2   <u>Named Fiduciary and Committee</u>.  The Corporation shall furnish the Trustee from time to time with a list of the names and signatures of all Persons (other than the Corporation) authorized to act as the Corporation designee under Section 1.1, as a Named Fiduciary, as members of the Committee, or in any other manner authorized to issue orders, notices, requests, instructions and objections to the Trustee pursuant to the provisions of this Agreement.  Any such list shall be certified by the Secretary or an Assistant Secretary of the Corporation (or by the Secretary or an Assistant Secretary of any subsidiary or affiliate of the Corporation with respect to members of the Committee of the Participating Plans), and may be relied upon for accuracy and completeness by the Trustee. Each such Person thereupon shall furnish the Trustee with a list of the names and signatures of those individuals who are authorized, jointly or severally, to act for such Person hereunder, and the Trustee shall be fully protected in acting upon any notices or directions received from any of them or any person the Trustee reasonably believes to be acting on behalf of an Investment Manager.

25.3   <u>Form of Communications</u>.  Any agreement between the Corporation and any Person (including an Investment Manager), or any other provision of this Agreement to the contrary notwithstanding, all notices, directions and other communications to the Trustee shall be in writing or in such other form, including transmission by electronic means through the facilities of third parties or otherwise, specifically agreed to in writing

by the Trustee, and the Trustee shall be fully protected in acting in accordance therewith.

Any notice, direction or other communication between the Trustee and the Corporation required or permitted to be given under this Agreement shall be sufficiently given if delivered in person or when deposited in the United States mail, postage prepaid (by certified or registered mail in case of any such notice), or by any other means specifically agreed to by the parties (including electronic transmission), as follows:

If to the Corporation, delivered or addressed to:

```
Solutia Inc.
10300 Olive Boulevard
P.O. Box 66760
St. Louis, Missouri 63166-6760
Attention:  Treasurer
```

If to the Trustee, delivered or addressed to:

```
The Northern Trust Company
50 South LaSalle St.
Chicago, Illinois  60675
Attention:  Ann M. Chamberlain
            or current Solutia Administrator
```

25.4    <u>Continuation of Authority</u>.  The Trustee shall have the right to assume, in the absence of written notice to the contrary, that no event constituting a change in the Named Fiduciary or membership of the Committee or terminating the authority of any Person, including any Investment Manager, has occurred.

25.5    <u>No Obligation to Act on Unsatisfactory Notice</u>.  The Trustee shall incur no liability under this Agreement for any failure to act pursuant to any notice, direction or any other communication from any Asset Manager, the Corporation, the Committee, or any other Person, or the designee of any of them, unless and until it shall have received instructions in form satisfactory to it.

## SECTION 26
### Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument and may be sufficiently evidenced by any one counterpart.

WITNESS the due execution hereof on the date first above written:

ATTEST:                                         SOLUTIA INC.

_D. A. Winchell_                    By _R L Bishop_

ATTEST:                                         THE NORTHERN TRUST COMPANY

_John H St. James_            By _Chs. Chamberlain._
     Asst Secretary                                  Vice President

Examined As To
Form _memo_

223856.4                          -76-                          October 29, 1998

STATE OF MISSOURI     )
                      ) SS
COUNTY OF ST. LOUIS   )

On this _____30th_____ day of _October_____, 19_98_, before me personally came _Rodney L. Bishop_____, to me known, who being by me duly sworn, did depose and say that he is _Vice President & Treasurer_ of Solutia Inc., a Delaware corporation described in and which executed the foregoing instrument, that he knows the seal of said corporation, that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_Patricia A. Facea_
Notary Public
PATRICIA A FACEA
NOTARY PUBLIC STATE OF MISSOURI
ST LOUIS COUNTY
MY COMMISSION EXP. FEB. 21,2001

[NOTARIAL SEAL]


STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

On this _30th_____ day of _October_____, 19_98_, before me personally came _ANN M. CHAMBERLAIN_, to me known, who, being by me duly sworn, did depose and say that he is a Vice President of The Northern Trust Company, an Illinois corporation described in and which executed the foregoing instrument, that he knows the seal of said corporation, that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_Julia J. Adams_
Notary Public

[NOTARIAL SEAL]

OFFICIAL SEAL
JULIA I ADAMS
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JAN. 27,1999