more than $34 million. Indeed, from the year of the spin-off through the merger with Pharmacia, Shapiro made more than $94 million from just his Old Monsanto stock options and more than $119 million in overall compensation. From 1993 through 1996, Old Monsanto's CEOs had made a combined compensation amount of only $21 million.

181.    Management could not have realized these personal profits if Old Monsanto had not spun-off Solutia with the onerous debt and legacy liabilities that doomed Solutia to failure. By structuring the spin-off in the way that they did, Old Monsanto managed to enhance substantially its stock price and the value of management's incentive compensation and stock options, many of which would not have vested but for the spinning off of Solutia.

182.    Old Monsanto's scheme becomes even more apparent by noting the timing of Old Monsanto's changes to its senior management compensation structure that created the possibility for management to realize tremendous value. These compensation incentives were put into effect in 1996, just prior to Old Monsanto publicly moving forward with the Solutia spin-off plan.

**7.    Old Monsanto Continued to Burden Solutia Even After the Spin-Off**

183.    Old Monsanto and Solutia began disagreeing about the meaning and intent of certain provisions of the Distribution Agreement shortly after the spin-off. These disagreements revolved around costs and expenses incurred in connection with the spin-off that Solutia expected Old Monsanto to pay. Instead, Old Monsanto insisted that Solutia was responsible for them.

184.    Even after the spin-off, Old Monsanto, through the pressure of the indemnity and its multitude of relationships with Solutia, coerced Solutia to enter into additional agreements to Old Monsanto's advantage and Solutia's detriment.

185.    Old Monsanto became involved in a litigation that was occurring between Solutia and the retirees of Old Monsanto when Solutia attempted to eliminate and change certain of the benefits that were being provided to the retirees that it was forced to assume. This litigation ultimately resulted in a settlement whereby Solutia retained and confirmed liabilities to the retirees that until that point, it was not required to retain, and Old Monsanto was effectively released from further liability.

186.    In 1998, Solutia terminated the 1997 Non-Union Retiree Plan and the 1997 Union Retiree Plan effective January 1, 2000 and adopted the Solutia Inc. Medical Benefits Plan for Retirees (2000) (the "2000 Retiree Plan").

187.    The 2000 Retiree Plan for the first time would have required its participants to contribute to the premium cost of providing retiree medical benefits.

188.    Solutia subsequently filed a lawsuit entitled *Solutia Inc. v. George Forsberg, et al.*, No. 3:98cv237/RV, in the United States District Court for the Northern District of Florida, Pensacola Division against the participants of the 1997 Non-Union and Union Retiree Plans seeking a declaration that Solutia was free to terminate those plans and replace them with the 2000 Retiree Plan.

189.    On or about September 4, 1998, several Old Monsanto retirees filed a class action lawsuit entitled *Baird v. Monsanto Company*, Case No. 3:99cv168/RV, against Old Monsanto and Solutia in the United States District Court for the Eastern District of Missouri alleging breach of contract, breach of fiduciary duty and violations of the Labor Management Relations Act ("LMRA"). The plaintiffs sought to enforce the promises Old Monsanto made to them to provide vested retiree medical benefits.

-46-

190.    On or about April 27, 1999, Old Monsanto successfully moved to consolidate the Baird lawsuit with the Solutia declaratory judgment action pending before the United States District Court for the Northern District of Florida.

191.    In the consolidated lawsuit, both Old Monsanto and Solutia were represented by the same law firm, which had been a longtime legal advisor to Old Monsanto.

192.    This litigation ultimately resulted in a settlement pursuant to which Solutia adopted the Solutia Inc. Medical Benefits Plan for Retirees (2002) (the "2002 Retiree Plan") effective January 1, 2002.

193.    The 2002 Retiree Plan requires Solutia, at tremendous cost, to maintain for unionized retirees who retired prior to December 1994 and for non-unionized employees who retired prior to June 25, 1992, lifetime medical benefits at a certain level and subject to a cap on the amount participants can be required to contribute for coverage and for later retirees, the identical medical benefits through December 31, 2006.

194.    In contrast, the settlement agreement absolved Old Monsanto from having either to provide any retiree medical benefits or contribute any of the cost of providing such benefits to anyone in the class of retirees involved in the lawsuit, unless Solutia first became insolvent and ceased to provide benefits under the 2002 Retiree Plan.

195.    The settlement agreement absolved Old Monsanto of its obligations, despite the fact that under ERISA Old Monsanto was required to provide vested benefits to some or all of the class plaintiffs or was otherwise estopped from refusing to provide such benefits to them.

196.    Thus, once again, Old Monsanto had managed to eliminate its own liabilities and force them on Solutia while ending Solutia's chance to legally eliminate those liabilities.

-47-

8.    **New Monsanto Seeks Indemnity from Solutia**

197.    When Old Monsanto decided to separate its agriculture business into New Monsanto, Old Monsanto and New Monsanto required Solutia to enter into an amendment of the Distribution Agreement (the "Amendment") to provide New Monsanto with the same broad indemnity for chemicals liabilities that Solutia had given Old Monsanto. Pursuant to section two (2) of the Amendment, the indemnity provided for in Article IV of the Distribution Agreement would now run in favor of both Old Monsanto and New Monsanto. Solutia did not have a meaningful choice as to whether or not to enter into the Amendment, nor as to whether to accept the terms of section two (2).

198.    New Monsanto provided no consideration to Solutia for the granting of the New Monsanto Indemnity. Even though it received no consideration from New Monsanto for entering into the Amendment, Solutia did so, thus obligating it not only to Old Monsanto, but to New Monsanto as well.

199.    As New Monsanto was itself a spin-off from Old Monsanto, New Monsanto knew or should have known that because of the significant liabilities Solutia was required to assume, Solutia had been undercapitalized at the time of its spin-off. Nonetheless, New Monsanto required that Solutia protect it from these same significant liabilities that rendered Solutia undercapitalized.

200.    New Monsanto also knew or should have known that the material risks posed to Solutia by these significant liabilities, especially in light of the capital deprivation prior to the Solutia spin-off, had never been adequately disclosed to the public shareholders of Solutia.

**B.    Solutia Inflates Earnings with Antitrust Violations**

201.    As part of the spin-off, Solutia assumed control of (and liability for) some of Old Monsanto's former businesses. One such business for which Solutia became responsible was

-48-

Flexsys L.P., a 50/50 joint venture with Akzo Nobel that Solutia described as the world's leading supplier of process chemicals to the rubber industry.[6] Solutia knew that the value of this partnership was suspect: two years earlier, Flexsys had entered into an agreement with two other prominent rubber chemicals suppliers, Bayer/Rhein Chemie[7]; and Crompton/Uniroyal[8], to maintain their market position and quash competition by setting prices in the industry.

202.    During the Class Period, Flexsys faced the prospect of declining returns in the rubber chemicals industry. New market entrants threatened to take market share away from Flexsys, Bayer and Crompton while demand remained stable. Thus while it was critical for Flexsys to retain its volume to continue to meet its public projections, it grappled with competition for its market share.

203.    At the very time that smaller market entrants were threatening Flexsys' market share, Solutia faced its own problems, *e.g.*, the daunting prospect of paying for costly environmental clean-ups incurred by Old Monsanto. With no promise of meeting its projections through legitimate means, and the real danger that newcomers might gain toeholds in the market, Solutia ratified and benefitted from Flexsys' agreement to artificially set rubber chemicals prices with Crompton and Bayer.

---

[6]     Flexsys was created in 1995 when Akzo Nobel, based in Arnhem, Netherlands, and Old Monsanto merged their respective rubber chemical businesses in a 50-50 joint ownership venture. Once Solutia was spun-off from Old Monsanto in 1997, Solutia owned the half of Flexsys formerly owned by Old Monsanto.

[7]     Rhein Chemie Rheinau GmbH is a wholly owned subsidiary of Bayer AG. The Rhein Chemie group is a Bayer Group company that operates as an independent unit within Bayer Polymers. These entities are referred to herein as "Bayer."

[8]     Uniroyal Chemical is a wholly owned subsidiary of Crompton Corporation. These entities are referred to herein as "Crompton."

204.    Solutia's first CEO, Defendant Potter, was privy to the problems with Flexsys' pricing.  Potter had previously served as Chief Executive of Old Monsanto's Chemical Division, which oversaw Flexsys until it was passed on to Solutia in the spin-off.  The companies also shared a core of managers since several managers from Old Monsanto's rubber chemicals segment transferred to either Solutia or Flexsys in the wake of the spin-off and maintained close working relationships between the two companies.

205.    In addition, Flexsys was governed by a Supervisory Board, half of which was staffed by Solutia personnel.  These personnel reported to Solutia executives who had the authority to make decisions about Solutia's finances and operations, including Defendants Hunter, Clausen and Potter. Further, James Sullivan, who was, at various times, Solutia's Vice President and Controller, its Principal Accounting Officer, and its Chief Financial Officer, monitored Flexsys through its Supervisory Board and oversaw various parts of Flexsys' audits.

206.    Solutia relied on the price-fixing agreement to preserve an image of financial health. Flexsys provided from 20 to 25 percent of Solutia's operating earnings from 1997 until approximately October 2002.  In 2002, Solutia was able to complete a $200 million note offering based in part on Flexsys' apparent market dominance.

207.    Solutia needed to maintain this appearance because the Company was laboring under the litigation defense costs Solutia assumed in the spin-off.

208.    On September 26, 2002, European Union ("EU") authorities, as part of a probe into price fixing in the rubber chemicals market,  raided the European subsidiaries of the three companies that dominate the rubber chemicals market, Flexsys, Bayer and Crompton.

209.    In the wake of that investigation, Crompton admitted that it met with Flexsys and Bayer and agreed to set and maintain prices in the rubber chemicals industry.  In its plea before the Commissioner of Competition and attorney general of Canada, Crompton stated that: "The conspiracy affecting certain rubber chemicals lasted from at least July, 1995 to 2001. The participants in this conspiracy included Crompton, Bayer, Flexsys and Duslo." Flexsys, Crompton and Bayer "agreed to coordinate the timing and amounts of price increases for certain rubber chemicals . . . and to allocate customers and sales volumes.  They also exchanged sales data and customer information on a periodic basis in order to monitor and enforce adherence to the agreement." Crompton will pay a $9 million (Canadian) fine, out of a maximum potential liability of $10 million (Canadian).

210.    Both Crompton and Bayer have pled guilty in one of four ongoing grand jury investigations conducted by the DOJ in the Northern District Court of California.  Crompton will pay a $50 million fine while Bayer will pay $66 million.

211.    Because Flexsys is the leading rubber chemical manufacturer in the world, it is inconceivable that Bayer and Crompton could have engaged in such long-term price fixing schemes without Flexsys' involvement.

212.    In fact, after the close of business on October 10, 2002, Solutia announced that it was the target of an investigation by the U.S. Department of Justice ("DOJ"), the European Commission and Canadian authorities.  That investigation is ongoing. *See* Solutia Form 10-K for year end 2004, at 12.

213.    On or around February 18, 2005, Flexsys agreed to settle private charges against it involving its role in the antitrust violations. *See In Re Rubber Chemicals Antitrust Litigation*, No. M:04-cv-01648-MJJ (N.D. Cal.).

**C.    Solutia's Descent into Bankruptcy**

214.    As detailed above, when Solutia was spun-off from Old Monsanto in 1997, Solutia was contractually obligated under the Distribution Agreement with Old Monsanto to bear the responsibility for over a billion dollars of legacy liabilities that accrued to Old Monsanto for over a century of manufacturing. Under the terms of the Agreement, "***Solutia [was] required to manage the litigation and indemnify Monsanto for costs, expenses and judgments arising from the litigation.***" *See* Form 10-K for fiscal year ended December 31, 1997 (emphasis added).

215.    Although Solutia stated in its Form 10-K for the fiscal year ending December 31, 1997 that, "Solutia does not believe these [litigation] matters or their ultimate disposition will have a material adverse effect on Solutia's consolidated financial position, profitability or liquidity in any one year," the Company knew that the inherited litigation would be extensive and costly. In the same 1997 Form 10-K, Solutia acknowledged that questions concerning a Superfund site in Texas had spawned more than a half-dozen cases, and incurred charges of over $10 million while the discharge of polychlorinated biphenyls ("PCBs") from Old Monsanto's Anniston, Alabama site had sparked class actions joined by thousands of plaintiffs.

216.    Throughout the Class Period, these obligations grew increasingly burdensome and gravely undermined Solutia's ability to operate as a going concern.

217.    Solutia revealed the extent of its obligations only gradually. For example, in Solutia's Form 10-K for the year ending December 31, 1999, Solutia mentioned for the first time that Old

-52-

Monsanto was previously named as a defendant in a Pennsylvania case. Solutia also disclosed that in fiscal year 1999, it had agreed to settle one of the Alabama cases for $23 million and a guarantee of $18 million in remediation over six years. In anticipation of settling two more Alabama lawsuits, Solutia recorded an additional charge of $29 million.

218.    In February 2001 one financial analyst listed Solutia among his candidates of stocks to short, noting its "debt amounts to 56 times shareholders' equity." John Dorfman, *Newsday*, Feb. 10, 2001, at F12.

219.    Litigation costs continued to climb in fiscal year 2000. In the Company's Form 10-K for the fiscal year ended December 31, 2000, filed March 8, 2001, the Company revealed that a jury had returned a $90 million verdict (reduced to $45 million by the trial court) in a Pennsylvania PCB case.

220.    In that same document, Solutia acknowledged the likely impact of its growing liabilities. The Company stated:

> Resolution of those Anniston, Alabama cases may have a ***material adverse effect*** on Solutia's net income in a given year, although it is impossible at this time to estimate the range or amount of any such liability.

(emphasis added.)

221.    Aside from indemnification costs, the Company's financial health continued to deteriorate. For fiscal year 2000, Solutia reported a $15 million loss, which grew to $36 million by the end of fiscal year 2001.

222.    On January 1, 2002, the *Washington Post* ran a front-page story detailing how Old Monsanto knew early on about the toxic and likely carcinogenic and mutagenic effects of PCBs, but

-53-

for years concealed this information from the public, as well as concealed the extent of the PCB contamination in Anniston.

223.    Solutia had of course inherited liability for the Anniston PCB contamination from Old Monsanto, so when stocks opened for trading the following day, January 2, 2002, Solutia stock fell 10% from its December 31, 2001 price of $14.02, to close at $12.54. It plummeted another 28% on January 3, 2002 – down all the way to a close of $9 per share.[9]

224.    It was at this point, January 2, 2002, that a prudent fiduciary relying only upon publicly available information would have determined that Solutia Stock, and the Solutia Stock Fund, was an imprudent investment and an imprudent investment option for the Plan and its participants. For the reasons detailed above, Solutia Stock was an imprudent investment from its inception. But it was not until January 2, 2002, that sufficient information had been disclosed to the public about Solutia's undercapitalization, chronic financial problems, and overwhelming legacy liabilities that it became, or should have become, clear even to those without access to material inside information that investment in Solutia Stock was speculative.

225.    Around this time, Moody's Investor Services ("Moody's") downgraded Solutia's debt ratings. On February 4, 2002, for example, Moody's downgraded the rating of Solutia's senior unsecured debt from Baa3 to Ba1. This represented a downgrade to a category of obligations that Moody's considers to have "speculative elements" and a "future [that] cannot be considered as well assured."

---

[9]    On this day, January 3, 2002, Solutia responded to the *Washington Post* article with a press release. Among other things, Solutia stated that facts contained in the *Washington Post* article were "one-sided" and "biased." The investing public disagreed, and the share price of Solutia stock never returned above its January 2, 2002, price.

226.     On July 12, 2002, Moody's further lowered the rating on Solutia's senior unsecured debt from Ba3 to B3. This downgrade indicated that the securities were "speculative," were "subject to high credit risk," and "lack[ed the] characteristics of a desirable investment."

227.     At the same time that Solutia faced skyrocketing losses and expanding litigation costs, its apparently profitable rubber chemicals division came under antitrust scrutiny. When the Company was forced to admit to the public on October 10, 2002, that multiple authorities were investigating Flexsys for collusion and price-fixing in the rubber chemicals industry, Solutia's stock price subsequently dropped roughly 8% to $4.86 per share on the news, and over 81% from its Class Period high of $26.31 per share.

228.     Deprived of Flexsys' apparently stable earnings, the financial toll of Old Monsanto's legacy liabilities further weakened the Company.

229.     The $38 million gain, which Solutia reported in 2002, evaporated in 2003 with a reported loss of $372 million.

230.     In the Company's Form 10-Q for the quarterly period ended June 30, 2003, filed August 14, 2003, the Company admitted that verdicts in certain of the Anniston, Alabama cases were *"far in excess of amounts the Company had accrued* as of June 30, 2003" and that related cases using those verdicts as a basis of valuation "would result in a valuation in excess of *$3 billion*" (emphasis added). The company acknowledged that any appeal in those cases would take years, and predicted that:

> Without a dramatic change in circumstances, the ***continuing overhang of the PCB litigation and other legacy liabilities will significantly restrict the Company's alternatives*** to address both short term and long term liquidity requirements with respect to the refinancing of the credit facility, bond maturities and projected contributions to its pension plans.

-55-

(emphasis added).

231.   On August 8, 2003 Moody's further lowered the rating on Solutia's senior unsecured debt from B1 to Caa3.  This final downgrade represented Moody's conclusion that the Company's bonds were of "poor standing," just slightly above "highly speculative."  The bonds were deemed by Moody's to be "subject to very high credit risk" and near default.

232.   In the Company's Form 10-Q for the quarterly period ended September 30, 2003, filed November 14, 2003, Solutia disclosed that it would have to take action to reduce its current level of legacy liabilities, which by then were costing Solutia approximately $100 million a year. Once again, the Company reviewed its dire financial condition and then emphasized how it had labored under the causes of its demise since its very inception:

> *Due to the prolonged economic slow down, coupled with the prevalence of energy and raw material cost above historic levels, the financial burden of servicing these liabilities has become relatively more significant to the Company.* These legacy liabilities consist primarily of the following:
>
> Retiree healthcare, life insurance costs and disability benefits: Since the spin-off, Solutia has been required to provide retiree healthcare and life insurance benefits to retirees who retired from Pharmacia prior to the spin-off and who never worked for Solutia, as well as disability benefits to individuals who became disabled while working for Pharmacia prior to the spin-off. *Currently Solutia provides retiree and disability benefits to approximately 20,000 pre-spin[-off] retirees and disabled individuals*, their dependents and surviving spouses, roughly five times the number of Solutia retirees, dependents and surviving spouses.
>
> Environmental compliance and remediation costs: *Since the spin-off, Solutia has been required to bear the costs of environmental remediation and associated compliance obligations relating to Pharmacia's historic chemical business* under applicable federal, state and local environmental laws. *In virtually all instances these obligations arise from activities conducted by Pharmacia prior to the spin-off* and fall into two broad categories: (a) obligations related to properties that are not currently owned by Solutia, and (b) obligations related to properties currently owned by Solutia, including clean-up obligations for off-site migration of contaminants. *The vast majority of remediation actions taken to date at properties owned by Solutia*

-56-

*relate to contamination that emanated from the properties prior to Solutia's ownership.*

Litigation defense costs and judgments: Since the spin-off, Solutia has been responsible for bearing the cost associated with various toxic tort lawsuits related to polychlorinated biphenyls ("PCBs"), premises based asbestos and other chemical exposures from the conduct of the historic chemical business of Pharmacia. *Currently Solutia is defending approximately 570 asbestos actions (involving an estimated 3,500 to 4,500 plaintiffs) brought against Pharmacia.* In addition, notwithstanding the recent settlement of cases relating to the Anniston plant site, *Solutia is still defending approximately 30 cases involving alleged exposure from PCB's manufactured by Pharmacia prior to the spin-off.* Solutia also is currently defending approximately 90 general and product liability claims which have been brought against Pharmacia.

(emphasis added).

233.   The Company admitted that its ongoing legacy liabilities compelled it to "consider [ ] all available alternatives to address these matters, including, but not limited to, a potential *reorganization under Chapter 11* of the U.S. bankruptcy code" (emphasis added).  Solutia 10-Q, filed November 14, 2003.

234.   Roughly one month later, Solutia declared bankruptcy on December 17, 2003.

235.   In a press release issued that same day, the Company placed the blame for its bankruptcy on the legacy liabilities inherited from Old Monsanto:

"Solutia has spent approximately $100 million each year to service legacy liabilities that it was required to accept at the time of the spin-off from Monsanto," said John C. Hunter, chairman, president and chief executive officer of Solutia. "We have taken aggressive steps to offset these legacy costs and strengthen our financial health by cutting more than $100 million from our operating costs, working with Monsanto Corporation to resolve the onerous Alabama PCB litigation, refinancing our credit facility and beginning to restructure our broader debt portfolio. Concurrently, we have made every effort to come to an out-of-court resolution with Monsanto regarding these legacy liabilities. However, these negotiations have not been successful.

-57-

236.    On December 17, 2003, following Solutia's bankruptcy filing, the New York Stock Exchange ("NYSE") halted trading in Solutia's common stock.  The NYSE further announced that it would apply to the SEC to remove the common stock from listing on the NYSE.  The SEC granted the application, and Solutia's common stock was delisted on February 27, 2004.  Solutia's common stock, which had traded on the NYSE under the ticker symbol "SOI," was now quoted under the ticker symbol "SOLUQ" on the Pink Sheets Electronic Quotation Service maintained by The Pink Sheets LLC and on the OTC Bulletin Board.

237.    The following chart illustrates the decline in Solutia's common stock during the Class Period.



## VII. DEFENDANTS BREACHED THEIR ERISA FIDUCIARY DUTIES BECAUSE THEY KNEW THAT SOLUTIA STOCK WAS NOT A PRUDENT RETIREMENT INVESTMENT BUT FAILED TO TAKE STEPS TO PROTECT THE PLAN AND ITS PARTICIPANTS FROM CRUSHING LOSSES

238.    Section 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §1104(a)(1)(A) and (B), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan *solely in the interest of the participants* and beneficiaries, for *the exclusive purpose of providing benefits to participants* and their beneficiaries, and *with the care, skill, prudence, and diligence* under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

239.    These fiduciary duties under §404(a)(1)(A) and (B), 29 U.S.C. §1104(a)(1)(A) and (B), are referred to as the duties of *loyalty* and *prudence*. They entail, among other things:

    a.    The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including employer securities, to ensure that each investment is a suitable investment option for the plan;

    b.    A duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor; then

    c.    A duty to disclose and inform, which encompasses (1) a negative duty not to misinform; (2) an affirmative duty to inform when a fiduciary knows or should know that silence might be harmful; and, (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

240.    ERISA fiduciary duties are the "highest known to law," and the ERISA duty requiring the prudent investment of plan assets is judged against that of a prudent expert, a standard markedly different from and higher than the "business judgment rule."

-59-

241.    Throughout the Class Period, all Defendants (except Northern Trust and the Outside Director Defendants) knew or should have known of Solutia's huge legacy liabilities and its involvement in an ongoing antitrust conspiracy. They knew or should have known that Solutia had been undercapitalized from the beginning and the prospects for its survival, because of the many conditions and liabilities with which it had been saddled in the spin-off, were speculative at best. They knew or should have known that Solutia Stock was artificially inflated in value because of the failure to fully disclose these liabilities and improprieties. They also knew or should have known that it was imprudent to offer the Solutia Stock Fund as a Plan investment option and that Solutia Stock was an imprudent retirement investment, but they failed to take steps, as described below, to protect the Plan and its participants from crushing losses.

242.    By January 2, 2002, (and certainly by July 12, 2002) Defendants Northern Trust and the Outside Director Defendants knew or should have known, based on publicly available information, that Solutia Stock was too speculative to serve as a prudent retirement investment.

**A.    Defendants Regularly Communicated With Participants In The Plan Concerning Solutia Stock Offered By The Plan for Participant Investment, Yet Failed To Disclose The Imprudence Of Investment In Solutia Stock**

243.    Defendants and the Company regularly communicated with employees, including participants in the Plan, about the performance, future financial and business prospects of the Company's common stock, one of the largest asset groups in the Plan. During the Class Period, the Company fostered a positive attitude toward Solutia Stock, and/or allowed participants in the Plan to follow their natural bias towards investment in the equities of their employer by not disclosing negative material information concerning investment in Solutia Stock. As such, participants in the

-60-

Plan could not appreciate the true risks presented by investments in Solutia Stock and therefore could not make informed decisions regarding their investments in the Plan.

244.    In addition to the press releases quoted above, Defendants also issued SEC statements containing substantially similar financial results and forecasts regarding the Company's likelihood of financial recovery as those contained in the aforementioned press releases.

245.    The Company's SEC filings, Annual Reports and Proxy statements, press releases, analyst calls, speeches and presentations by Solutia executives were all made readily available to the public at large, and Plan participants in particular, via, among other things, the Company's website, www.solutia.com.

246.    The Defendants also regularly communicated with Plan participants, including through the Solutia Benefits Center located at http://resources.hewitt.com/solutiabenefits which allows participants to access to their accounts and to education screens.

247.    These SEC filings and related Company statements and releases issued during the Class Period were inaccurate, incomplete and materially misleading, causing Plan participants to purchase, and to hold and maintain, Plan investments in Solutia Stock.

248.    Upon information and belief, Northen Trust also regularly communicated with Plan participants, including through its Benefits Online service, which allows participants access to their accounts and education screens.

249.    Therefore, Defendants, in contravention of their fiduciary responsibilities, failed to provide Plan participants with complete and accurate information regarding Solutia Stock, such that the participants could appreciate the true risks presented by investments in Solutia Stock and could make informed decisions regarding investments in the Plan.

-61-

250.    Moreover, the Committee Defendants, Plan Defendants and Northern Trust, as professional plan managers, knew or should have known certain basic facts about the characteristics and behavior of the Plans' participants, well-recognized in the 401(k) literature and the trade press, concerning investment in company stock, including that:

   a.    Employees tend to interpret a match in company stock as an endorsement of the company and its stock;

   b.    Out of loyalty, employees tend to invest in company stock;

   c.    Employees tend to over-extrapolate from recent returns, expecting high returns to continue or increase going forward;

   d.    Employees tend not to change their investment option allocations in the plan once made;

   e.    No qualified retirement professional would advise rank and file employees to invest more than a modest amount of retirement savings in company stock, and many retirement professionals would advise employees to avoid investment in company stock entirely;

   f.    Lower income employees tend to invest more heavily in company stock than more affluent workers, though they are at greater risk; and,

   g.    Even for risk-tolerant investors, the risks inherent in a concentrated investment in a single company's stock are not commensurate with its rewards.

## B.    Defendants Suffered From Conflicts Of Interest

251.    Solutia's SEC filings, including Proxy Statements, during the Class Period make clear that a significant percentage of corporate officer and director compensation is in the form of stock grants or stock option grants. Indeed, the long-term component of Solutia's incentive compensation

program for officers and directors of the Company consists of equity-based grants in the form of stock options and restricted stock.

252.   Because their compensation was so closely tied to the price of Solutia stock, Defendants had a strong incentive to keep the Plan's assets in Solutia's securities. Defendants may have had no choice in tying their compensation to Solutia stock (because compensation was determined by Solutia), but they did have the choice whether to keep the Plan participants' retirement savings tied to the value of Solutia equity.

253.   These conflicts of interest put the Defendants in the position of having to choose between their own interests as executives and stockholders, and the interests of the Plan participants and beneficiaries, in whose interests the Defendants were obligated to loyally serve with an "eye single." As the value of the Company's stock declined, the Defendants' potential conflict of interest changed into an actual conflict. Defendants never sought the appointment of an independent fiduciary to address this actual conflict.

254.   Likewise, Northern Trust was guided by its own financial interests, and by the draw of continued business, rather than by the fiduciary tenet of protecting the Plan and the Trust. Certain Plan investment options were managed by Northern Trust affiliates. While Northern Trust was required to serve the interests of the Plan and its participants, it was also interested in maintaining good business relations between itself, its affiliates and Solutia.

255.   Indicative of Defendants' conflicted interest, *i.e.*, putting their interests ahead of the Plan and its participants, Defendants failed to take any meaningful steps to protect the Plan and its participants during the bankruptcy proceedings. Indeed, no Plan fiduciary even fulfilled the bare minimum of their obligations by filing a proof of claim on behalf of the Plan. Had they done so, they

-63-

would have had to contend with an additional claim worth many millions of dollars, possibly hampering the Company's ability to emerge from bankruptcy. Despite this clearly conflicted position, Defendants failed to appoint an independent fiduciary or take any other meaningful measure to ameliorate their conflicted status.

## C.    The Defendants' Fiduciary Breaches

256.    By virtue of the foregoing facts and duties, the Defendants, as specified below and commensurate with their fiduciary responsibilities, breached their fiduciary duties under ERISA by, *inter alia,* offering and forcing the Plan and its participants to maintain investments in Solutia Stock when they knew or should have known that such investments were imprudent.

### 1.    The Director Defendants' Fiduciary Breaches

257.    Because of their positions, the Inside Director Defendants had first-hand knowledge of the Company's activities and financial condition. The Inside Director Defendants knew from the Company's very inception that it labored under enormous legacy liabilities and other financial problems that made its long-term survival speculative at best. They knew of its business improprieties and that the Company would be called on to support retiree benefits and serve to indemnify a whole host of liabilities and jury verdicts.

258.    The Inside Director Defendants breached their fiduciary duties of prudence and loyalty by failing to take adequate steps to protect the Plan's investments in Solutia Stock. These steps should have included, but were not limited to: (i) seeking the elimination of the Solutia Stock Fund as a Plan investment option when it was clear that Solutia Stock was artificially inflated in price and was too speculative to serve as a prudent retirement investment; (ii) seeking to restrict or liquidate Plan investments in Solutia Stock once it became clear that Solutia Stock was not a prudent

-64-

investment; (iii) seeing that other fiduciaries whom they appoint and monitor were provided with complete and accurate information regarding the risks of investment in Solutia Stock; and, (iv) seeing that an independent fiduciary was appointed to make decisions regarding the Plan's investments in Solutia Stock, once it became clear that there were serious questions regarding the prudence of such investments, so that decisions would be made in the sole interest of Plan participants and would not be influenced by the corporate duties of the Inside Director Defendants or company management to promote the company and boost its stock price. The Inside Director Defendants should have initiated these steps themselves or should have appointed fiduciaries who took these steps. But the Inside Director Defendants breached their fiduciary duties by failing to appoint such fiduciaries, and failing to adequately monitor the fiduciaries they did appoint. Solutia and the Inside Director Defendants breached their ERISA obligations by putting the Company's financial interests ahead of the interests of the Plan's participants.

259.    Charged with appointing, monitoring and, if necessary, removing the Committee Defendants and its members, the Inside Director Defendants breached their duties to the Plan by allowing investment in Solutia Stock at a time when it knew that the stock was artificially inflated and an imprudent investment.

260.    The Inside Director Defendants also breached their duties of prudence and loyalty by failing to take any steps with respect to bringing any claims or suits against some or all Plan fiduciaries for imprudent investment in Solutia Stock, either in the form of a lawsuit or a claim in Solutia's Chapter 11 bankruptcy proceeding. They not only failed to bring such claims or suits, but based on information and belief, they also failed to even initiate any investigation as to whether such claims or suits should be brought. (Though plaintiff has filed a claim in the bankruptcy proceeding

on behalf of the Plan, Plan fiduciaries clearly knew more about the facts and losses of the Plan and were in a better position to bring such a claim and protect the interests of the Plan).

261.    The Outside Director Defendants breached the same fiduciary duties as the Inside Director Defendants, by taking or failing to take the same actions, but did so only on and after January 2, 2002, at which time they knew or should have known that Solutia Stock was no longer a prudent investment option.

### 2.    The Committee Defendants' Fiduciary Breaches

262.    The Plan Committee (and its members) and the Fund Committee (and its members) who were charged with administering and managing the Plan, respectively, knew or should have known, that the Company's stock was inflated in price and that the Company was laboring under serious, growing financial burdens that made Solutia Stock an imprudent retirement investment during the Class Period.

263.    The Committee Defendants breached their fiduciary duties of prudence and loyalty by failing to take adequate steps to protect the Plan's investments in Solutia Stock. These steps should have included, but were not limited to: (i) eliminating the Solutia Stock Fund as a Plan investment option when it was clear that Solutia Stock was artificially inflated in price and was too speculative to serve as a prudent retirement investment; (ii) restricting or liquidating Plan investments in Solutia Stock once it became clear that Solutia Stock was not a prudent investment; (iii) altering the mix of investments in the Solutia Stock Fund away from Solutia Stock in favor of cash; (iv) providing Plan participants with complete and accurate information regarding the risks of investment in Solutia Stock; and, (v) appointing an independent fiduciary to make decisions regarding the Plan's investments in Solutia Stock, once it became clear that there were serious

questions regarding the prudence of such investments, so that decisions would be made in the sole interest of Plan participants and would not be influenced by the corporate duties of the Committee Defendants to promote the company and boost its stock price.

264.    The Committee Defendants also breached their duties of prudence and loyalty by failing to take any steps with respect to bringing any claims or suits against some or all Plan fiduciaries for imprudent investment in Solutia Stock, either in the form of a lawsuit or a claim in Solutia's Chapter 11 bankruptcy proceeding. They not only failed to bring such claims or suits, they also failed to even initiate any investigation as to whether such claims or suits should be brought.

### 3.    The Plan Defendants' Fiduciary Breaches

265.    The Plan Defendants were charged with administering the Plan. They knew or should have known that the Company was laboring under serious, growing financial burdens that made Solutia Stock artificially inflated in price and an imprudent retirement investment during the Class Period.

266.    The Plan Defendants breached their fiduciary duties of prudence and loyalty by failing to take adequate steps to protect the Plan's investments in Solutia Stock. These steps should have included, but were not limited to: (i) eliminating the Solutia Stock Fund as a Plan investment option when it was clear that Solutia Stock was too speculative and artificially inflated in price to serve as a prudent retirement investment; (ii) restricting or liquidating Plan investments in Solutia Stock once it became clear that Solutia Stock was not a prudent investment; (iii) altering the mix of investments in the Solutia Stock Fund away from Solutia Stock in favor of cash; (iv) providing Plan participants with complete and accurate information regarding the risks of investment in Solutia Stock; and, (v) appointing an independent fiduciary to make decisions regarding the Plan's investments in Solutia

Stock, once it became clear that there were serious questions regarding the prudence of such investments, so that decisions would be made in the sole interest of Plan participants and would not be influenced by the corporate duties of the Plan Defendants to promote the company and boost its stock price.

267.    The Plan Defendants also breached their duties of prudence and loyalty by failing to take any steps with respect to bringing any claims or suits against some or all Plan fiduciaries for imprudent investment in Solutia Stock, either in the form of a lawsuit or a claim in Solutia's Chapter 11 bankruptcy proceeding. They not only failed to bring such claims or suits, they also failed to even initiate any investigation as to whether such claims or suits should be brought.

### 4.    Northern Trust's Fiduciary Breaches

268.    Northern Trust knew or should have known of the many public indicators, extraordinary circumstances, and, clear and compelling evidence that called into serious question the Company's viability as a going concern and a prudent retirement investment.

269.    These public indicators reached a critical turning point on January 2, 2002, after the exposé regarding the environmental liabilities in Anniston, Alabama that appeared in the *Washington Post*. At that point, given the information revealed in that article combined with other public information about the Company's financial condition, Northern Trust knew or should have known that the Company faced substantial legacy liabilities and other financial burdens that called into serious question its viability as a going concern and made Solutia Stock a speculative investment that was imprudent for retirement purposes.

270.    Increasingly ominous public indicators of Solutia's impending collapse soon followed. These included Company announcements and filings with the SEC, as well as media and

-68-

analyst reports regarding Solutia's financial health. This culminated in the Company's November 14, 2003, SEC filing on Form 10-Q, wherein the Company announced that it was under serious financial strain and that the nature of its ongoing legacy liabilities compelled it to "consider [ ] all available alternatives to address these matters, including, but not limited to, a potential *reorganization under Chapter 11* of the U.S. bankruptcy code" (emphasis added).

271.    Even though Solutia did as promised and promptly filed for bankruptcy reorganization only a few weeks later, Northern Trust remained silent, took no action and sought no additional information regarding the prudence of Solutia Stock as it was required to do under ERISA.

272.    Moreover, certain Plan investment options were managed by Northern Trust affiliates. While Northern Trust was required to serve the interests of the Plan participants, it was also interested in maintaining good business relations between itself, its affiliates and Solutia.

273.    As of January 2, 2002, Northern Trust knew or should have known that any directions it received as Trustee to offer or continue to offer the Solutia Stock Fund as a Plan investment option and to invest Plan assets in Solutia Stock and not to liquidate the Plan's Solutia Stock holdings were improper and not in the best interests of Plan participants because: (i) there were serious questions as to the viability of Solutia as a going concern that made Solutia Stock an imprudent and speculative retirement investment; and, (ii) the Plan fiduciaries making these directions were conflicted and no independent fiduciary had been appointed to make decisions with respect to Plan investments in Solutia Stock. Northern Trust knew, or should have known, that any such directions were inconsistent with the fiduciaries' obligations to the Plan and its participants. By continuing to accede to directions retaining and/or augmenting the Plan's investment in Solutia Stock, and by allowing Solutia Stock to remain an investment option, or for allowing Solutia Stock rather than cash to

remain the principal investment of the Solutia Stock Fund, Northern Trust breached its duty of prudence under ERISA thereby causing losses to the Plan and its participants.

274.    Northern Trust also breached its fiduciary duties of prudence and loyalty by failing to take any independent steps on or after January 2, 2002 to see to it that: (i) an independent fiduciary was appointed to make decisions regarding the Plan's investments in Solutia Stock; (ii) Plan participants were provided with complete and accurate information regarding the risks of investment in Solutia Stock; (iii) an investigation was made as to the propriety of bringing claims in the Solutia bankruptcy proceedings or suits in court on behalf of the Plan against some or all Plan fiduciaries for breach of fiduciary duty; or, (iv) the Solutia Stock Fund would no longer be offered as a Plan investment option or that the Plan's investments in Solutia Stock be liquidated or converted to cash.

### 5.    Solutia's Fiduciary Breaches

275.    Though Solutia is not currently a defendant in this suit, Solutia, in its role as Plan fiduciary, knew or should have known that its stock was inflated in price and that it was laboring under serious, growing financial burdens that made Solutia Stock an imprudent retirement investment during the Class Period.

276.    Solutia breached its fiduciary duties of prudence and loyalty by failing to take adequate steps to protect the Plan's investments in Solutia Stock. These steps should have included, but were not limited to: (i) eliminating the Solutia Stock Fund as a Plan investment option when it was clear that Solutia Stock was artificially inflated in price and was too speculative to serve as a prudent retirement investment; (ii) restricting or liquidating Plan investments in Solutia Stock once it became clear that Solutia Stock was not a prudent investment; (iii) providing Plan participants with complete and accurate information regarding the risks of investment in Solutia Stock; and, (iv)

-70-

appointing an independent fiduciary to make decisions regarding the Plan's investments in Solutia Stock, once it became clear that there were serious questions regarding the prudence of such investments, so that decisions would be made in the sole interest of Plan participants and would not be influenced by the corporate duties of the Plan Defendants to promote the company and boost its stock price.

277.     Solutia also breached its duties of prudence and loyalty by failing to take any steps with respect to bringing any claims or suits against some or all Plan fiduciaries for imprudent investment in Solutia Stock, either in the form of a lawsuit or a claim in Solutia's Chapter 11 bankruptcy proceeding. Solutia also failed to schedule the Plan as a creditor in its bankruptcy proceedings. Solutia not only failed to bring such claims or suits, it also failed to even initiate any investigation as to whether such claims or suits should be brought.

278.     On December 6, 2006, the Department of Labor ("DOL") issued a letter to Solutia stating that, based on its investigation of the Plan, Solutia – through its fiduciaries – breached its fiduciary obligations and violated provisions of ERISA with respect to the Plan.

## VIII.  CLASS ACTION

279.     Plaintiff brings this class action to recover losses to the Plan pursuant to Rule 23(b)(1)(A) and (B), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure in a representative capacity on behalf of himself and a class ("Class") of all persons similarly situated, defined as follows:

> All participants and beneficiaries of the Solutia Inc. Savings and Investment Plan (the Plan) for whose benefit the Plan held Solutia Stock between September 1, 1997 until December 15, 2003 (the "Class Period").

280.    Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class because:

a.    **Numerosity.** The Class consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable.

b.    **Commonality.** There are questions of law and fact common to the Class. Such common questions include, but are not limited to:

i.    Whether Solutia, the Committee Defendants, Director Defendants, Plan Defendants and Northern Trust are fiduciaries;

ii.    Whether Solutia Stock was a prudent retirement investment for the Plan on and after September 1, 1997;

iii.    Whether the Solutia Stock Fund was a prudent investment alternative on and after September 1, 1997;

iv.    Whether Solutia, the Committee Defendants, Director Defendants and Plan Defendants breached their fiduciary obligations to Plan participants by continuing to offer the Solutia Stock Fund as an investment option and by continuing to invest Plan assets in Solutia Stock under circumstances in which Solutia, the Plan Defendants and the Committee Defendants knew or should have known that it was not a prudent retirement investment;

v.    Whether Solutia, the Committee Defendants, Director Defendants and Plan Defendants breached their fiduciary obligations to Plan participants by continuing to invest ESOP assets in Solutia Stock when they knew or should have known that it was not a prudent retirement investment;

vi.    Whether Director Defendants breached their fiduciary obligations to Plan participants by failing to prudently monitor the other fiduciaries' conduct to assure that the Plan's and participants' interests were adequately protected and served;

vii.    Whether Director Defendants breached their fiduciary obligations to Plan participants by failing to provide the other fiduciaries with complete and accurate information concerning the Company's financial condition and the specific risks of the Plan's investment in Solutia Stock as a retirement investment;

viii.    Whether Solutia, the Committee Defendants, Director Defendants and Plan Defendants breached their fiduciary obligations to Plan participants to provide them with complete and accurate information concerning the Company's financial

-72-

condition and the specific risks of the Plan's investment in Solutia Stock as a retirement investment;

ix.   Whether Solutia, the Committee Defendants, Director Defendants and Plan Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when they occurred by continuing to allow Solutia Stock as an investment for the Plan;

x.    Whether Solutia, the Committee Defendants, Director Defendants, Plan Defendants or Northern Trust should have investigated, scheduled or brought any claims and/or lawsuits against some or all Plan fiduciaries for the imprudent investment in Solutia Stock.

xi.   Whether Northern Trust breached its duties under ERISA and the Trust Agreement by accepting, after January 2, 2002, directions to invest in Solutia Stock when it knew or should have known that it was no longer prudent to do so;

xii.  Whether any of the Defendants by failing to comply with their specific fiduciary responsibilities under ERISA §404(a), 29 U.S.C. §1104(a)(1), enabled co-fiduciaries to commit violations of their fiduciary duties without making reasonable efforts to prevent or remedy those breaches; and,

xiii. Whether, as a result of fiduciary breaches by Solutia, the Committee Defendants, Director Defendants, Plan Defendants and Northern Trust, the Plan and its participants suffered losses.

c.   **Typicality.** Plaintiff's claims are typical of the claims of the Class.

d.   **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiff has engaged competent counsel experienced in class actions and complex litigation.

281.  This action is maintainable as a class action for the following independent reasons:

a.   Given ERISA's imposition of a uniform standard of conduct on ERISA fiduciaries, the prosecution of separate actions by individual members of the Class would create the risk of inconsistent adjudications which would establish incompatible standards of conduct for the Defendants with respect to their obligations under the Plan. Fed. R. Civ. P. 23(b)(1)(A).

b.   The prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications,

-73-

or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

c.    The Defendants have acted or refused to act on grounds generally applicable to the whole Plan and the entire Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Plan and Class as a whole. Fed. R. Civ. P. 23(b)(2).

d.    Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## IX.  PLAINTIFF'S INVESTIGATION

282.    Plaintiff's investigation included, among other things: (i) a review of the public documents and press releases of Solutia; (ii) review of reports by the media and securities analysts about the Company; (iii) SEC filings including, but not limited to, Forms 11-K, 10-K, and 10-Q; (iv) review of Plan documents; (v) consultation with experts; (vi) review and reliance upon various parties' publicly filed indictments and guilty pleas; and, (vii) review and reliance upon civil complaints filed against Solutia, Old Monsanto and others by various parties including asbestos claimants, Solutia shareholders and Solutia itself.

283.    Plaintiff's investigation also included requests and production of documents pursuant to the Freedom of Information Act, 5 U.S.C. §552, as well as §104 of ERISA, 29 U.S.C. §1024. This included a review of various incomplete Plan documents produced by the Plan Administrator, including, but not limited to: Defined Contribution and Employee Stock Ownership Trust Agreement, dated October 29, 1998; Defined Contribution Plan Agreement, dated October 30, 1998; Annex A to Solutia Inc. Savings and Investment Plan, dated April 7, 1998, and September 1, 1997; Savings and Investment Plan, dated January 1, 2002; Savings and Investment Plan Summary Plan Description, dated

-74-

April 1, 1999; Savings and Investment Plan Summary Plan Description, dated September 1, 1997; Savings and Investment Plan Summary Plan Description, dated October 18, 2002; and the Plan's Annual Reports on Forms 5500 for the years ended 2001, 2002, and 2003.

284.    Plaintiff's investigation also included review and reliance upon pleadings filed by Solutia and others in Solutia's Chapter 11 proceedings. *See In re Solutia Inc., et al.*, 03-B-17949 (PCB) (S.D.N.Y.). This included pleadings filed by the Official Committee of Equity Security Holders of Solutia, Inc. (the "Equity Committee") appointed on March 24, 2004, by the Office of the United States Trustee for the Southern District of New York pursuant to sections 1102(a) and 1102(b) of the Bankruptcy Code. The Equity Committee's pleadings were based upon an extensive investigation that included, among other things, extensive legal analysis and the review of tens of thousands of pages of documents produced by Old Monsanto, New Monsanto, Goldman Sachs and the bankruptcy debtors in response to the Equity Committee's Motions Seeking Examinations Pursuant to Rule 2004 of the Federal Rules of Bankruptcy.[10] The Equity Committee also retained an independent environmental consultant, which was approved over strenuous objections, to assist the Equity Committee in its analysis of the current and historic environmental liabilities of Solutia and the other debtors.

285.    Plaintiff's investigation also included review and reliance on the pleadings filed in the action *In re Solutia Inc., Securities Litigation*, No. 03-3554 (SBA) (N.D. Cal.); and *In Re Rubber Chemicals Antitrust Litigation*, No. M:04-cv-01648-MJJ (N.D. Cal.).

286.    Plaintiff believes that further specific factual support for his allegations will be produced after a reasonable opportunity for discovery.

---

[10]     Based on information and belief, the documents reviewed by the Equity Committee were produced pursuant to a confidentiality agreement.

## X.  CLAIMS FOR RELIEF

### COUNT I
## FAILURE TO PRUDENTLY MANAGE PLAN INVESTMENTS IN SOLUTIA STOCK

**(Breaches Of Fiduciary Duties In Violation Of
ERISA §404(a)(1)(A)-(D), 29 U.S.C. §1104(a)(1)(A)-(D),
Against all Defendants except Northern Trust)**

287.   All previous averments are incorporated herein.

288.   The Committee Defendants, the Plan Defendants, and the Director Defendants all knew, or should have known, that during the Class Period Solutia Stock was too speculative and artificially inflated in price to serve as a prudent retirement investment.

289.   Despite this knowledge, these Defendants continued to offer the Solutia Stock Fund as a Plan investment option, continued to match employee contributions in Solutia Stock, and failed to take any significant steps to protect the Plan and its participants from crushing losses.

290.   In acting and failing to act in this manner, the Committee Defendants, the Plan Defendants, and the Director Defendants all labored under a conflict of interest.  In their roles as corporate directors and officers, they all had an interest in promoting the acquisition of Solutia Stock and increasing or maintaining its share price, particularly since they received compensation and bonuses in the form of Solutia Stock. But they also had an overriding duty as Plan fiduciaries to protect the Plan and its participants from imprudent investments in Solutia Stock.  These Defendants improperly let their interest in promoting Solutia Stock guide their decisions as Plan fiduciaries.

291.   In particular, the Committee Defendants, the Plan Defendants, and the Inside Director Defendants all violated their fiduciary obligations of prudence and loyalty to the Plan under ERISA §404, 29 U.S.C. §1104 by, among other things:

a.      continuing to purchase and hold shares of Solutia Stock when they knew or should have known that Solutia Stock was too speculative and artificially inflated in price to be a prudent retirement investment;

b.      continuing to offer the Solutia Stock Fund as an investment option when Solutia Stock was too speculative and artificially inflated in price to be a prudent retirement investment;

c.      continuing to provide company matching contributions in the form of Solutia Stock and/or shares in the Solutia Stock Fund when Solutia Stock was too speculative and artificially inflated in price to be a prudent retirement investment;

d.      failing to sell shares of Solutia Stock when it was not a prudent retirement investment;

e.      failing to alter the mix of investments in the Solutia Stock Fund away from Solutia Stock in favor of cash;

f.      failing to provide complete and accurate information to the Plan's participants necessary to the participants' informed decisions with regard to investment in Solutia Stock and the Solutia Stock Fund;

g.      failing to avoid conflicts of interests and to resolve them promptly when they occurred by appointing an independent fiduciary to make decisions regarding Plan investments in Solutia Stock; and

h.      failing to bring, or investigating whether to bring, claims or suits against some or all Plan fiduciaries for the breaches of fiduciary duty with respect to Plan investments in Solutia Stock described above, either in Solutia's Chapter 11 bankruptcy proceeding or in district court.

292.    The Outside Director Defendants breached these same duties, by taking and failing to take those same actions on and after January 2, 2002, at which point they knew, or should have known, that Solutia Stock was no longer a prudent retirement investment.

293.    As a proximate result of these breaches of fiduciary duty, the Plan suffered tens, possibly hundreds, of millions of dollars in losses.

## COUNT II
## FAILURE TO ACT AS A PRUDENT TRUSTEE

### (Breaches Of ERISA's Prudent Trustee Duties In Violation Of
ERISA §404(a)(1)(A)-(D), 29 U.S.C. §1104(a)(1)(A)-(D), against Defendant Northern Trust)

294.    All previous averments are incorporated herein.

295.    As of January 2, 2002, (and certainly by July 12, 2002) Northern Trust knew, or should have known, that Solutia Stock was a speculative investment, and not a prudent retirement investment. As of that date, Solutia's public disclosure of enormous legacy liabilities, undercapitalization, and other financial problems described above, raised serious questions as to the company's viability as a going concern.

296.    Defendant Northern Trust, among other things, had fiduciary duties under ERISA to distinguish between proper and improper directions received from the Plan's fiduciaries and to disregard any directions that were contrary to ERISA, the terms of the Plan, or both.  As a fiduciary, Northern Trust was not allowed to blindly follow plan directives or documents that would lead to an imprudent result or that would harm Plan participants.

297.    By virtue of all the facts and events alleged herein, Northern Trust failed in its fiduciary capacity to discharge its ERISA fiduciary duties solely in the interests of participants for the exclusive purpose of providing benefits to participants, and with the skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §404(a)(1)(A) and (B), 29 U.S.C. §1104(a)(1)(A) and (B).

298.    In particular, Defendant Northern Trust breached its ERISA fiduciary duties to the 401(k) Plan and its participants by, among other things, on or after January 2, 2002:

-78-

a.      failing to refuse to follow, or even make inquiries regarding, any directions from Plan fiduciaries with respect to investment of Plan assets in Solutia Stock as improper and inconsistent with ERISA and/or the terms of the Plan when there were serious questions as to Solutia's viability as an ongoing concern, Solutia Stock was a speculative investment and an imprudent retirement investment, and the Plan fiduciaries issuing the directions were conflicted;

b.      failing to alter the mix of investments in the Solutia Stock Fund away from Solutia Stock in favor of cash; and

c.      failing to take any independent steps to protect the Plan and its Participants from the ERISA fiduciary breaches described in Count I, such as recommending the appointment of an independent fiduciary to make decisions regarding investments of Plan assets in Solutia Stock.

299.    As a proximate result of these breaches of fiduciary duty, the Plan suffered tens, possibly hundreds, of millions of dollars in losses.

## COUNT III
## FAILURE TO MONITOR

**(Breaches Of Fiduciary Duties in Monitoring Plan Fiduciaries in Violation Of ERISA §404, 29 U.S.C. §1104, against the Director Defendants and John Does 1-100)**

300.    All previous averments are incorporated herein.

301.    Under §404 of ERISA, 29 U.S.C. §1104, an appointing fiduciary has an ongoing obligation to monitor the actions of fiduciaries which he or she appoints to ensure that the appointed fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets and the administration of the plan, and to take prompt and effective action to protect the plan and participants when the appointed fiduciaries are not performing their fiduciary duties. In addition, a monitoring fiduciary must provide the other fiduciaries with accurate information in their possession that they know or reasonably should know that the other fiduciaries must have in order to prudently manage the Plan and its assets.

-79-

302. The Director Defendants were appointing fiduciaries. They were responsible for appointment of the Committee Defendants, and had power to appoint additional fiduciaries such as an independent fiduciary. All the Director Defendants breached their fiduciary duties of loyalty and prudence by failing to adequately monitor the performance of the appointed fiduciaries to prevent or stop the continuation of the fiduciary breaches described above with respect to Plan investments in Solutia Stock.

303. The Inside Director Defendants breached their duty to monitor the performance of Plan fiduciaries throughout the Class Period.

304. The Outside Director Defendants breached their duty to monitor the Plan fiduciaries on and after January 2, 2002, at which time they knew or should have known that Solutia Stock was an imprudent retirement investment.

305. The Director Defendants further breached their monitoring duties by failing to provide their appointed fiduciaries with accurate information that they knew or should have known would have apprised those fiduciaries of the Company's dire financial condition and the imprudence of continued investment in Solutia Stock. As appointing fiduciaries, the Director Defendants breached their fiduciary duties by allowing others to follow Plan directives and documents when to do so was imprudent and harmed Plan participants.

306. As a proximate result of these breaches of fiduciary duty, the Plan suffered tens, possibly hundreds, of millions of dollars in losses.

## COUNT IV
## CO-FIDUCIARY LIABILITY

### (Breaches Of Co-Fiduciary Duties In Violation Of
### ERISA §405, 29 U.S.C. §1105, against All Defendants)

307.     All previous averments are incorporated herein.

308.     Each Defendant was a co-fiduciary of the other Defendants as well as co-fiduciaries of other Plan fiduciaries, under 29 U.S.C.§1105, with respect to the Plan and its participants.  As co-fiduciaries, each of the Defendants is liable for the others' conduct under the terms of ERISA §405(a), 29 U.S.C. §1005(a).

309.     Section 405(a) of ERISA, 29 U.S.C. §1105(a), imposes liability upon a fiduciary if the fiduciary: (i) participates knowingly in, or knowingly undertakes to conceal, an act or omission of another fiduciary; (ii) by failing to comply with obligations imposed by ERISA, enables a co-fiduciary to commit a breach; or, (iii) fails to take reasonable steps to remedy the breach of another fiduciary, knowing that the other fiduciary has engaged in a breach.

310.     All defendants, by failing to comply with their specific fiduciary responsibilities under §404(a)(1) of ERISA, 29 U.S.C. §1104(a)(1), in connection with the administration of the Plan and the investment of Plan assets during the Class Period, enabled their co-fiduciaries to commit violations of ERISA and, with knowledge of such breaches, failed to make reasonable efforts to remedy the breach. Accordingly, all Defendants, are each liable for the others' violations pursuant to §405(a)(2) and (3) of ERISA, 29 U.S.C. §1105(a)(2) and (3).  (This paragraph applies to acts or omissions of Northern Trust only on or after January 2, 2002).

311.     The Committee Defendants participated knowingly in and concealed breaches of the other Defendant fiduciaries.  The Committee Defendants knew, or should have known, that investment

-81-

in Solutia Stock was imprudent, but failed to disclose all information in their possession regarding Solutia's financial conditions and prospects. The Committee Defendants also knew or should have known that the other defendant fiduciaries were failing to take appropriate steps to protect the Plan and its participants with respect to Plan investments in Solutia Stock, but failed to disclose information revealing this fact. The Committee Defendants, despite knowledge of these breaches, also enabled the breaches and failed to take reasonable steps to remedy the breaches, such as appointing an independent fiduciary when the other Defendant fiduciaries failed to fulfill their duties.

312.    The Plan Defendants participated knowingly in and concealed breaches of the other Defendant fiduciaries. The Plan Defendants knew, or should have known, that investment in Solutia Stock was imprudent, but failed to disclose all information in their possession regarding Solutia's financial conditions and prospects. The Plan Defendants also knew or should have known that the other defendant fiduciaries were failing to take appropriate steps to protect the Plan and its participants with respect to Plan investments in Solutia Stock, but failed to disclose information revealing this fact. The Plan Defendants, despite knowledge of these breaches, also enabled the breaches and failed to take reasonable steps to remedy the breaches, such as appointing an independent fiduciary when the other Defendant fiduciaries failed to fulfill their duties.

313.    The Inside Director Defendants participated knowingly in and concealed breaches of the other Defendant fiduciaries.  The Inside Director Defendants knew, or should have known, that investment in Solutia Stock was imprudent, but failed to disclose all information in their possession regarding Solutia's financial conditions and prospects. The Inside Director Defendants also knew or should have known that the other defendant fiduciaries were failing to take appropriate steps to protect the Plan and its participants with respect to Plan investments in Solutia Stock, but failed to disclose

information revealing this fact. The Inside Director Defendants, despite knowledge of these breaches, also enabled the breaches and failed to take reasonable steps to remedy the breaches, such as appointing new fiduciaries when the other Defendant fiduciaries failed to fulfill their duties.

314.    On and after January 2, 2002, the Outside Director Defendants knew or should have known that Solutia Stock was an imprudent retirement investment, and they participated knowingly in and concealed breaches of the other Defendant fiduciaries. During that period, the Outside Director Defendants knew or should have known that the other Defendant fiduciaries were failing to take appropriate steps to protect the Plan and its participants with respect to Plan investments in Solutia Stock, but failed to disclose information revealing this fact. The Outside Director Defendants, despite knowledge of these breaches, also enabled the breaches and failed to take reasonable steps to remedy the breaches, such as appointing new fiduciaries when the other Defendant fiduciaries failed to fulfill their duties.

315.    On and after January 2, 2002, Northern Trust participated knowingly in and concealed breaches of the other Defendant fiduciaries. During that period, Northern Trust knew or should have known that the other Defendant fiduciaries were failing to take appropriate steps to protect the Plan and its participants with respect to Plan investments in Solutia Stock, but failed to disclose information revealing this fact. Northern Trust, despite knowledge of these breaches, also enabled the breaches, e.g. by following directions to continue to invest Plan assets in Solutia Stock, and failed to take reasonable steps to remedy the breaches, such as seeking the appointment of an independent fiduciary when the other Defendant fiduciaries failed to fulfill their duties.

316.     As a result of breaching their fiduciary responsibilities, obligations, and duties as described in Counts I through III, all Defendants have caused the Plan to suffer financial loss for which they are jointly and severally liable, pursuant to §409(a) of ERISA, 29 U.S.C. §1109(a).

317.     As a proximate result of these breaches of fiduciary duty and co-fiduciary duty, the Plan suffered tens, possibly hundreds, of millions of dollars in losses.

## XI. SECTION 404(C) AFFIRMATIVE DEFENSE INAPPLICABLE

318.     ERISA §404(c), 29 U.S.C. §1104(c), provides a limited exception to fiduciary liability for losses that result from participants' exercise of control over investment decisions. None of the losses to the Plan resulted from participants' exercise of control over their investment decisions. Instead, as has been detailed above, these losses resulted from Plan fiduciary decisions that resulted in offering imprudent investment options and imprudent investment of Plan assets in Solutia Stock. Hence, the §404(c) defense is inapplicable to these claims.

319.     Moreover, in order for the affirmative defense of §404(c) to apply, many conditions must be met. In particular, *all* of the over 20 requirements spelled out in the DOL regulations issued pursuant to §404(c) at 29 C.F.R. §2550.404c-1 *must* be satisfied. These include the requirements that the risks of investment options be adequately disclosed to Plan participants, that participants' holdings in transactions in Solutia Stock be kept confidential, and that participants be informed that "the Plan is intended to constitute a plan described in §404(c) and the regulations, and that fiduciaries of the plan may be relieved of liability for any losses which are the direct and necessary result of investment instructions given by such participants or beneficiaries," 29 C.F.R. §2550.404c-1(b)(2)(B)(*1*)(*i*).

320.     The affirmative defense of §404(c) is unavailable to Defendants because, among other reasons, the Plan did not comply with the various requirements of §404(c) and its associated

regulations. For instance, the participants were not adequately informed that the Plan was intended to be a §404(c) plan because the SPD failed to identify what portions of the Plan were intended to comply with §404(c). Nor were participant's adequately informed of the risks of investing in the Solutia Stock Fund, including the risk of investing in a non-diversified fund limited to a single stock or the risk of total loss in the event of Solutia's bankruptcy.

321.    Moreover, as alleged above, Defendants failed to provide participants with complete and accurate information regarding Solutia Stock in the Plan and the financial condition of the company. The DOL's §404(c) regulations note, significantly, that participants do not exercise control over their investment decisions sufficient to justify application of a §404(c) defense where a "plan fiduciary has concealed material non-public facts regarding the investment from the participant." Accordingly, participants failed to exercise the independent control over their investment in Solutia Stock in the Plan that is necessary for the §404(c) defense to apply.

322.    In addition, §404(c) does not apply to any portion of the Plan deemed an ESOP in that the Secretary of Labor has interpreted the provision to apply only to plans that provide plan participants with a full range of investment options, which an ESOP by its very nature does not. 29 C.F.R. §2550.404c-1. *Herman v. Nationsbank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997). Nor can §404(c) apply to any losses that result from the Company's matching contributions in the Company Match Account, as participants did not exercise any control over those investments.

## XII. CAUSATION

323.    The Plan suffered hundreds of millions of dollars in losses because substantial assets of the Plan were imprudently invested, or allowed to be invested by Defendants, in Solutia Stock

during the Class Period, in breach of Defendants' fiduciary duties. These losses were reflected in the diminished account balances of the Plan's participants.

324.    The Committee Defendants, Plan Defendants, Director Defendants, and Northern Trust are responsible for losses in the Employee Stock Account because they failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder. Among other things, the Director Defendants failed to apprise other Plan fiduciaries, and the Committee Defendants, Plan Defendants and Northern Trust failed to apprise the Class, of the increasingly precarious financial state of the Company, thereby misrepresenting its soundness as an investment vehicle. As a consequence, participants did not exercise independent control over Plan investments in Solutia Stock, and Defendants remain liable under ERISA for losses caused by such investment.

325.    The Committee Defendants, Plan Defendants, Director Defendants, and Northern Trust are also responsible for all losses caused by the investment of the Plan's Company Match Account in Solutia Stock during the Class Period, as Defendants controlled the investment, participants were not permitted to transfer their investment out of their Company Match Account, and the investment was imprudent.

326.    Had the Committee Defendants, Plan Defendants, Director Defendants, and Northern Trust properly discharged their fiduciary and/or co-fiduciary duties, including the provisions of full and accurate disclosure of material facts concerning the financial viability of the Company and the corresponding prudence of investment in Solutia Stock, the elimination of Solutia Stock as an investment alternative, the divestiture of the Plan from Solutia Stock, or the reduction of investments

-86-

in Solutia Stock in favor of cash, the Plan and Class would have avoided a substantial portion of the losses that they suffered through their continued investment in Solutia Stock.

## XIII. REMEDY FOR BREACHES OF FIDUCIARY DUTIES

327.     ERISA §502(a)(2), 29 U.S.C. §1132(a)(2) authorizes a Plan participant to bring a civil action for appropriate relief under ERISA §409, 29 U.S.C. §1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such Plan any losses to the Plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

328.     With respect to calculation of the losses to a Plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable investment available.  In this way, the remedy restores the value of the Plan's assets to what they would have been if the Plan had been properly and prudently administered.

329.     Plaintiff and the Class are therefore entitled to relief from the Defendants in the form of:

    a.     monetary payment from the Defendants to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as required by ERISA §409(a), 29 U.S.C. §1109(a);

    b.     injunctive, monetary, and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §502(a)(2) & (3), 29 U.S.C. §1132(a)(2) & (3);

    c.     reasonable attorney's fees and expenses as provided by ERISA §502(g), 29 U.S.C. §1132(g), the common fund doctrine, and other applicable law;

-87-

    d.      taxable costs; and,

    e.      interest on some or all of these amounts as provided by law.

## XIV. JURY DEMAND

330.    Plaintiff demands a trial by jury on all issues so triable.

## XV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.    An Order appointing Plaintiff lead in this and any other subsequently filed action and the undersigned counsel as Co-Lead Counsel for the Class;

C.    A Declaration that each Defendant breached their ERISA fiduciary duties to the Plan participants;

D.    An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from these breaches of fiduciary duty, including:

    a.      restoration to the Plan for losses resulting from imprudent investment of the Plan's assets;

    b.      restoration to the Plan of all profits that the Plan would have made had the Defendants fulfilled their fiduciary obligations; and,

    c.      other equitable restitution and appropriate equitable monetary relief.

E.    An Order imposing a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

F.    An Order enjoining all Defendants from any further violations of their ERISA fiduciary obligations;

G.    An Order awarding costs pursuant to 29 U.S.C. §1132(g);

H.    An Order awarding attorneys' fees pursuant to 29 U.S.C. §1132(g) and the Common Fund Doctrine; and,

I.    An Order awarding such other and further relief as the Court deems equitable and just.

Dated: New York, New York
       June 25, 2007

SARRAF GENTILE LLP

Ronen Sarraf (RS 7694)
Joseph Gentile
485 Seventh Avenue, Suite 1005
New York, New York 10018
T: 212-868-3610
F: 212-918-7967

MALAKOFF DOYLE & FINBERG, P.C.
Ellen M. Doyle
Richard A. Finberg
200 Frick Building
437 Grant Street
Pittsburgh, PA 15219
T: 412-281-8400
F: 412-281-3262

*Counsel for Representative and Class Plaintiffs*

-89-