UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

JEREMY DICKERSON, individually and on
behalf of all others similarly situated,

               Plaintiff,

        - against -

SHEILA FELDMAN, HELEN L. NELLING,
SUSAN E. BEVINGTON, NANCY STEMME,
CHRISTOPHER N. AST, EMPLOYEE
BENEFITS PLAN COMMITTEE, PENSION AND
SAVINGS FUND COMMITTEE, JOHN
HUNTER, ROBERT CLAUSEN, ROBERT
POTTER, MICHAEL E. MILLER, PAUL H.
HATFIELD, J. PATRICK MULCAHY, SALLY G.
NARODICK, PAUL DONOVAN, ROBERT H.
JENKINS, FRANK A. METZ, JR., WILLIAM D.
RUCKELSHAUS, JOHN B. SLAUGHTER,
PHILIP R. LOCHNER, JR., ROBERT T.
BLAKELY, NORTHERN TRUST COMPANY,
and JOHN DOES 1-100,

               Defendants.

———————————————————————— x

04 Civ. 7935 (LAP)

**AFFIDAVIT OF ALEX VECCHIET
IN SUPPORT OF THE MOTION OF
DEFENDANT THE NORTHERN
TRUST COMPANY TO DISMISS
THE SECOND AMENDED
COMPLAINT**

STATE OF ILLINOIS      )
                       )
COUNTY OF COOK     )

       ALEX VECCHIET, being duly sworn, deposes and says:

       1.    I am a Vice President in the Corporate & Institutional Services, Large

Corporate division of defendant The Northern Trust Company ("Northern Trust"). I respectfully

submit this affidavit in support of the motion of Northern Trust, pursuant to Fed. R. Civ. P.

12(b)(6), to dismiss the Second Amended Complaint as to it.

2.    Attached as Exhibit A is a true and correct copy of the Solutia Inc. Defined Contribution and Employee Stock Ownership Trust Agreement (as Amended and Restated Effective November 1, 1998), dated October 30, 1998.  To the best of my knowledge, this agreement has not subsequently been amended.

_____
Alex Vecchiet

Sworn to before me this
1st day of July, 2005

_____
Notary Public

OFFICIAL SEAL
LATRICE M PHILLIPS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/04/08

-2-



**Exhibit A**

# SOLUTIA INC.

# DEFINED CONTRIBUTION AND EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

(As Amended and Restated Effective November 1, 1998)

SOLUTIA INC. DEFINED CONTRIBUTION AND
EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

INDEX

|  |  | Page |
|---|---|---|
| Introduction | . . . . . . . . . . . . . . . . . . . . | 1 |
| SECTION 1 | General . . . . . . . . . . . . . . . . | 2 |
| 1.1 | Definitions . . . . . . . . . . . . . . | 2 |
| 1.2 | Compliance with Law . . . . . . . . . . | 8 |
| 1.3 | Eligibility . . . . . . . . . . . . . . | 8 |
| SECTION 2 | Establishment of Trust . . . . . . . . | 8 |
| 2.1 | Establishment of Trust . . . . . . . . | 8 |
| 2.2 | Contributions to the Trust . . . . . . | 8 |
| 2.3 | Prior Administration . . . . . . . . . | 8 |
| 2.4 | Fund to be Held in Trust . . . . . . . | 9 |
| 2.5 | Fund to be Held for Benefit of Plan Participants | 9 |
| 2.6 | Commingling . . . . . . . . . . . . . . | 9 |
| SECTION 3 | Disbursement from the Fund . . . . . . | 10 |
| 3.1 | Disbursements by Trustee . . . . . . . | 10 |
| 3.2 | Direction to the Trustee | 10 |
| SECTION 4 | Allocation of Investment Responsibilities . . . . | 11 |
| 4.1 | Third Party Named Fiduciaries and Asset Managers | 11 |
| 4.2 | Transfer of Assets to Asset Managers . . . . . . | 13 |
| 4.3 | The Trustee . . . . . . . . . . . . . . | 14 |
| SECTION 5 | Investment Funds . . . . . . . . . . . | 15 |
| 5.1 | Solutia Stock Fund . . . . . . . . . . | 15 |
| 5.2 | Growth and Income Equity Fund . . . . . | 18 |
| 5.3 | Fixed Income Fund . . . . . . . . . . . | 18 |
| 5.4 | Balanced Fund . . . . . . . . . . . . . | 19 |
| 5.5 | International Equity Fund . . . . . . . | 19 |
| 5.6 | U.S. Equity Index Fund . . . . . . . . | 19 |
| 5.7 | Growth Equity Fund . . . . . . . . . . | 20 |
| 5.8 | Monsanto Stock Fund . . . . . . . . . . | 20 |
| 5.9 | No Purchase of Solutia Common Stock or Other Obligation. . . . . . . . | 20 |
| SECTION 6 | Participant Notification and Voting . . . . . . | 21 |
| 6.1 | Voting of Corporation Shares . . . . . | 21 |
| 6.2 | Tendering of Corporation Shares . . . . | 22 |
| 6.3 | Rights . . . . . . . . . . . . . . . . | 24 |
| 6.4 | Voting of Monsanto Shares . . . . . . . | 26 |
| 6.5 | Tendering of Monsanto Shares . . . . . | 27 |
| 6.6 | Monsanto Rights . . . . . . . . . . . . | 28 |
| SECTION 7 | Fund Transfers . . . . . . . . . . . . | 30 |
| SECTION 8 | Participant Accounts . . . . . . . . . | 30 |

October 29, 1998

223856.4

8.1   Allocation of Contributions . . . . . . . . . . . 30
8.2   Responsibility of Trustee . . . . . . . . . . . 30

SECTION 9   Investment of the Fund . . . . . . . . . . 31
9.1   Standard of Care . . . . . . . . . . . . . 31
9.2   Waiver of Investment Restrictions . . . . . . . 31
9.3   Grant of Investment Powers . . . . . . . . . 31
      (a)   Growth and Income Equity Fund . . . . 32
      (b)   Fixed Income Fund . . . . . . . . . 33
      (c)   Solutia Stock Fund . . . . . . . . . 35
      (d)   Balanced Fund . . . . . . . . . . 39
      (e)   International Equity Fund . . . . . . . 40
      (f)   U.S. Equity Index Fund . . . . . . . 42
      (g)   Growth Equity Fund . . . . . . . . 44
      (h)   Monsanto Stock Fund . . . . . . . 45

SECTION 10   Powers of the Trustee, Asset Managers
             and Named Fiduciaries . . . . . . . . . . 47
10.1   General Powers . . . . . . . . . . . . . 47
10.2   Specific Powers of the Trustee . . . . . . . 51
10.3   Maintenance of Indicia of Ownership . . . . . 52
10.4   Third Party Transactions . . . . . . . . . . 53
10.5   Transfers to Other Employee
       Pension Benefit Plans . . . . . . . . . . 53
10.6   Futures . . . . . . . . . . . . . . . . 54
10.7   Securities Lending . . . . . . . . . . . . 55

SECTION 11   Discretionary Powers . . . . . . . . . . 55

SECTION 12   Prohibited Transactions . . . . . . . . . 56

SECTION 13   Expenses, Compensation and Taxes . . . . . . 56
13.1   Compensation and Expenses of the Trustee . . . 56
13.2   Payment from the Fund . . . . . . . . . . 57
13.3   Payment of Taxes . . . . . . . . . . . . 58

SECTION 14   Accounts, Books and Records of the Fund . . . . 58
14.1   Recordkeeping Duty of Trustee. . . . . . . . 58
14.2   Periodic Reports . . . . . . . . . . . . 58
14.3   Additional Accounting. . . . . . . . . . . 59
14.4   Judicial Determination of Accounts . . . . . . 59
14.5   Filings by the Corporation . . . . . . . . . 59
14.6   Determination of Fair Market Value . . . . . . 60
14.7   Retention of Records . . . . . . . . . . . 60

SECTION 15   Fiduciary Duties of Trustee . . . . . . . . 60

SECTION 16   Resignation and Removal . . . . . . . . . 60
16.1   Notice . . . . . . . . . . . . . . . . 61
16.2   Successor Appointment . . . . . . . . . . 61
16.3   Transfer Cooperation . . . . . . . . . . . 61
16.4   Transfer of Fund to Successor . . . . . . . . 61
16.5   Retention of Nontransferable Assets . . . . . . 62
16.6   Accounting . . . . . . . . . . . . . . 62

SECTION 17  Actions by the Corporation,
            the Committee or Named Fiduciary . . . . . . . .  62
    17.1    Action by Corporation . . . . . . . . . . . .  62
    17.2    Delegation  . . . . . . . . . . . . . . . . .  63

SECTION 18  Amendment or Termination  . . . . . . . . . . .  63
    18.1    Amendment or Termination  . . . . . . . . . .  63
    18.2    Distribution of Assets  . . . . . . . . . . .  64
    18.3    Retention of Nontransferable Property . . . . .  65
    18.4    Termination in the Absence
            of Directions from the Corporation  . . . . . .  65
    18.5    Termination on Corporation Dissolution  . . . . .  66

SECTION 19  Merger or Consolidation . . . . . . . . . . . .  66
    19.1    Merger or Consolidation of Trustee  . . . . . .  66
    19.2    Merger or Consolidation of Corporation  . . . . .  66
    19.3    Merger or Consolidation of Plan . . . . . . . .  66

SECTION 20  Indemnification . . . . . . . . . . . . . . . .  67
    20.1    Indemnity. . . . . . . . . . . . . . . . . .  67
    20.2    Solutia Stock Fund and
            Monsanto Stock Fund Indemnity . . . . . . . . .  68
    20.3    Defense of Action . . . . . . . . . . . . . .  69
    20.4    Reliance Upon Counsel . . . . . . . . . . . .  69
    20.5    Year 2000 . . . . . . . . . . . . . . . . . .  70

SECTION 21  Nonalienation of Trust  . . . . . . . . . . . .  70
    21.1    Trust not Subject to Assignment or Alienation . .  70
    21.2    Plans' Interest in Trust not Assignable . . . . .  71

SECTION 22  Governing Law . . . . . . . . . . . . . . . . .  71

SECTION 23  Parties to Court Proceedings  . . . . . . . . .  71

SECTION 24  Subsidiaries and Affiliates . . . . . . . . . .  72
    24.1    Adoption of Trust by Subsidiaries and Affiliates  72
    24.2    Segregation from Further Participation . . . . .  72
    24.3    Segregation of Assets Allocable
            to Specific Employees . . . . . . . . . . . .  73

SECTION 25  Authorities . . . . . . . . . . . . . . . . . .  74
    25.1    Subsidiary or Affiliate . . . . . . . . . . .  74
    25.2    Named Fiduciary and Committee . . . . . . . . .  74
    25.3    Form of Communications  . . . . . . . . . . .  74
    25.4    Continuation of Authority . . . . . . . . . . .  75
    25.5    No Obligation to Act on Unsatisfactory Notice . .  75

SECTION 26  Counterparts  . . . . . . . . . . . . . . . . .  77

SOLUTIA INC. DEFINED CONTRIBUTION AND
EMPLOYEE STOCK OWNERSHIP TRUST AGREEMENT

THIS SOLUTIA INC. DEFINED CONTRIBUTION AND EMPLOYEE STOCK OWNERSHIP
TRUST AGREEMENT is made and entered into on the ~~1st~~ 30th day of
~~November~~ October, 1998, between SOLUTIA INC. (hereinafter referred to as
the "Corporation"), and THE NORTHERN TRUST COMPANY (hereinafter re-
ferred to as the "Trustee"),

WITNESSETH:

WHEREAS, the Corporation and certain of its subsidiaries and
affiliates have adopted and may hereafter adopt the Solutia Inc.
Savings and Investment Plan (the "Plan") in order to provide
savings opportunities and retirement income for Eligible Employees;

WHEREAS, pursuant to the Plan, a trust was established for the
investment of the Growth and Income Equity Fund, the Fixed Income
Fund, the Balanced Fund, the Solutia Stock Fund, the International
Equity Fund, the U.S. Equity Index Fund, the Growth Equity Fund and
the Monsanto Stock Fund (hereinafter referred to collectively as
the "Investment Funds" or individually as an "Investment Fund");

WHEREAS, the Plan includes a separate component qualifying as an
employee stock ownership plan ("ESOP") within the meaning of
Section 4975(e)(7) of the Code and Section 407(d)(6) of ERISA which
enables the Trust to undertake ESOP Loans from time to time;

WHEREAS, the ESOP consists of all loan proceeds and Employer
Contributions being held by the Trust as of the dates specified in
the Plan and dividends and income thereon and any Employer
Contributions made after such date designated by the Corporation
for contribution to the ESOP, together with any income and
dividends thereon, less loan payments and distributions from the
Plan;

WHEREAS, it is intended that the Trustee will acquire shares of the common stock of the Corporation or repay existing ESOP Loan(s) with the proceeds of any ESOP Loan;

WHEREAS, the Pension and Savings Funds Committee of the Corporation ("Committee") has been designated as one of the named fiduciaries for purposes of the management and control of the assets of the Investment Funds;

NOW, THEREFORE, the Corporation and the Trustee declare and agree that the Trustee may receive, hold and administer all sums of money and such other property acceptable to the Trustee as shall from time to time be contributed, paid or delivered to it hereunder, IN TRUST, upon all of the following terms and conditions.

## SECTION 1
### General

1.1  <u>Definitions</u>.  Where used in this Agreement, unless the context otherwise requires or unless otherwise expressly provides:

(a)  "Accounts" shall mean the accounts established for a Member under the Plan to hold his interests in the Plan.

(b).  "Account Party" shall mean an officer of the Corporation designated to represent the Corporation for this purpose, the Named Fiduciary and any Person to whom the Trustee shall be instructed by the Named Fiduciary to deliver its annual account under Section 10.2.

(c)  "Accounting Period" shall mean the consecutive twelve-month period coincident with the calendar year or the shorter period in any year in which the Trustee accepts appointment as Trustee hereunder or ceases to act as Trustee for any reason.

(d)  "Agreement" shall mean all of the provisions of this instrument and of all other instruments amendatory hereof.

(e)  "Asset Manager" shall mean either the Trustee, Named Fiduciary or Investment Manager with respect to those assets held in an Investment Account over which it exercises, or to the extent it is allocated responsibility to exercise, discretionary investment authority or control.

(f)  "Bank Business Day" shall mean a day on which the Trustee is open for business.

(g)  "Board of Directors" shall mean the Board of Directors of the Corporation.

(h)  "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and regulations issued thereunder.

(i)  "Directed Fund" shall mean any Investment Account, or part thereof, subject to the discretionary management and control of the Named Fiduciary or any Investment Manager.

(j)  "Discretionary Fund" shall mean any Investment Account, or part thereof, subject to the discretionary management and control of the Trustee.

(k)  "Distribution Date" shall mean the date Monsanto distributes to holders of its issued and outstanding shares of common stock all of the issued and outstanding shares of common stock of the Corporation.

(l)  "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time, and regulations issued thereunder.

(m)  "Fund" shall mean all cash and property contributed, paid or delivered to the Trustee hereunder, all investments made therewith and proceeds thereof and all earnings and profits thereon, less payments, transfers or other distributions which, at the time of reference, shall have been made by the Trustee, as authorized herein. The Fund shall include all evidences of ownership, interest or participation in an Investment Vehicle, but shall not, solely by reason of the Fund's investment therein, be deemed to include any assets of such Investment Vehicle.

(n)  "Insurance Contract" shall mean any contract or policy of any kind issued by an insurance company, whether or not providing for the allocation of amounts received by the insurance company thereunder solely to the general account or solely to one or more separate accounts (including separate accounts maintained for the collective investment of qualified retirement plans), or a combination thereof, and whether or not any such allocation may be made in the discretion of the insurance company or the Named Fiduciary.

(o)  "Investment Account" shall mean each pool of assets in the Trust in which one or more Plans has an interest during an Accounting Period.

(p)  "Investment Manager" shall mean any entity that meets the definition of investment manager under Section 3(38) of ERISA.

(q)  "Investment Vehicle" shall mean any common, collective or commingled trust, investment company, corporation functioning as an investment intermediary, insurance contract, partnership, joint venture or other entity or arrangement to which, or pursuant to which, assets of the Trust may be transferred or in which the Trust has an interest, beneficial or otherwise (whether or not the

underlying assets thereof are deemed to constitute "plan assets" for any purpose under ERISA).

(r)    "Monsanto" shall mean Monsanto Company, a Delaware corporation, and any successor thereto.

(s)    "Monsanto Trust" shall mean the Monsanto Company Defined Contribution and Employee Stock Ownership Trust.

(t)    "Monsanto Rights" shall mean any right to purchase Monsanto securities that is issued to holders of common stock in Monsanto upon the terms and conditions set forth in the applicable rights agreement between Monsanto and the rights agent, together with any and all amendments and supplements thereto.

(u)    "Named Fiduciary" shall mean the fiduciary with respect to the Plans within the meaning of Section 402(a)(2), 402(c)(3) or 403(a)(1) of ERISA.  Each of the following are a Named Fiduciary with respect to the functions specified herein:

(i)    the Employee Benefits Plans Committee ("EBPC") shall be responsible for administration of the Plan;

(ii)   the Committee shall be responsible for (A) establishing and terminating Investment Funds, (B) establishing investment guidelines for each of the Investment Funds, and (C) the management and control of the assets of each Investment Fund, except for an Investment Fund covered by clause (iii) hereof; and

(iii)  the Third Party Named Fiduciary shall be responsible for the management and control of the assets of each Investment Fund the responsibility

for which has been allocated to such Third Party Named Fiduciary pursuant to a Third Party Named Fiduciary Agreement.

(v)  "Plan" shall mean the Solutia Inc. Savings and Investment Plan or any other plan funded through the Trust under Section 1.3 below.

(w)  "Person" shall mean a natural person, trust, estate, corporation of any kind or purpose, mutual company, joint-stock company, unincorporated organization, association, partnership, joint venture, employee organization, committee, board, participant, beneficiary, trustee, partner, or venturer acting in an individual, fiduciary or representative capacity, as the context may require.

(x)  "Qualifying Employer Security" shall mean employer securities as defined in Section 407(d) of ERISA and Section 409(l) of the Code, and shall include the "common stock of the Corporation."

(y)  "Rights" shall mean any right to purchase securities of the Corporation that is issued to holders of common stock in the Corporation upon terms and subject to conditions set forth in the applicable rights agreement, between the Corporation and the rights agent, together with any and all amendments and supplements thereto.

(z)  "Third Party Named Fiduciary" shall mean a Named Fiduciary to which the Funds Committee has allocated responsibility for the management and control of the assets of one or more of the Investment Funds.

(aa)  "Third Party Named Fiduciary Agreement" shall mean a written agreement between the Funds Committee and a Third Party Named Fiduciary allocating responsibility for the

223856.4                           -6-                      October 29, 1998

management and control of the assets of one or more of the Investment Funds.

(bb) "Trust" shall mean the trust created hereby.

(cc) "Valuation Date" shall mean the last day of the Accounting Period, calendar quarter or any more frequent reporting date agreed to by the Trustee.

(dd) The terms "Balanced Fund," "Solutia Stock Fund," "Eligible Employees," "Employee Stock Account," "ESOP Loan," "ESOP Interim Account," "ESOP Suspense Account," "Financed Shares," "Fixed Income Fund," "Growth and Income Equity Fund," "Growth Equity Fund," "International Equity Fund," "Members," "Monsanto Stock Fund" and "U.S. Equity Index Fund" shall have the same meanings or definitions as provided in the Plan unless otherwise specified herein.

(ee) The terms "Before-Tax Contributions" shall refer to Before-Tax Contributions, RIDA Matched Contributions and/or RIDA Supplemental Contributions; "After-Tax Contributions" shall refer to After-Tax Contributions, Regular SIP Matched Savings and/or, Regular SIP Supplemental Savings; "Employer Contributions" shall refer to Employer Matching Contributions, Employer Regular SIP Contributions and/or Employer RIDA Contributions; and "Employer Contributions Accounts" shall refer to the Employer Matching Contributions Account, the Employer Regular SIP Contributions Account and/or the Employer RIDA Contributions Account.

The plural of any term shall have a meaning corresponding to the singular thereof as so defined and any neuter pronoun used herein shall include the masculine or the feminine, as the context shall require.

1.2   <u>Compliance with Law</u>.   The Trust hereinafter established is intended to comply with ERISA and to be a "qualified trust" as such term is used in Sections 401 and 501 of the Code.

1.3   <u>Eligibility</u>.   Any employee benefit plan established by the Corporation, or a subsidiary or an affiliate of the Corporation, may be funded, in whole or in part, through the Trust if (i) the plan is qualified under Section 401(a) of the Code, (ii) the Trust is exempt from taxation under Section 501(a) of the Code, and (iii) in the case of the Corporation, this Agreement has been duly adopted by the Committee, and, in the case of a subsidiary or affiliate of the Corporation, by the Board of Directors of the subsidiary or committee of the Board of Directors of the subsidiary authorized to adopt such agreements.

### SECTION 2
<u>Establishment of Trust</u>

2.1   <u>Establishment of Trust</u>.   The Corporation hereby establishes with the Trustee the Trust consisting of such sums of money and such property acceptable to the Trustee as shall be paid or delivered to the Trustee from time to time.

2.2   <u>Contributions to the Trust</u>.   The Trustee shall have no duty to determine or collect contributions under any Plan and shall be solely accountable for monies or properties actually received by it.   The Corporation shall have the sole duty and responsibility for determining the accuracy or sufficiency of the contributions made under any of the Plans, the transmittal of the contributions to the Trustee, and compliance with any statute, regulation or rule applicable to contributions.

2.3   <u>Prior Administration</u>.   The Trustee shall not have any duty to inquire into the administration of the Plans or actions taken under any of the Plans by any prior trustee.

2.4  _Fund to be Held in Trust_.  The Fund shall be held by the Trustee in Trust and dealt with in accordance with this Agreement and to the extent discretionary authority is granted to the Trustee by this Agreement in accordance with ERISA.

2.5  _Fund to be Held for Benefit of Plan Participants_.  At no time before the satisfaction of all liabilities for benefits under any Plan of which the Trust forms a part shall any part of the Fund be used for or diverted to purposes other than for the exclusive benefit of participants, retired participants, or their beneficiaries under the Plans and for the payment of the reasonable expenses of the Plans, except:

   (i)  as provided by the applicable Plan and by law for the purpose of returning any of the Corporation's contributions, or

   (ii) if any such Plan provides for the return of the Corporation's contributions in the event such Plan initially fails to qualify under the applicable provisions of the Code.

2.6  _Commingling_.  Subject to the provisions of Section 4 below, the Trustee may commingle the assets attributable to the Plans for which contributions are made under this Agreement if this Agreement is applicable to more than one Plan, and may commingle the Fund with funds of other trusts of similar nature created by the Corporation for the exclusive benefit of its employees.  When commingling with other trusts maintained by the Corporation occurs, the combined trust, to the extent that assets are attributable to contributions made under this Agreement, shall be the Fund referred to herein.  The Trustee, to the extent agreed to in writing with the Corporation, shall maintain such records as are necessary in order to determine the interest of each trust in the Fund.  The Corporation shall be responsible for causing sufficient records to be maintained to insure that benefits and liabilities payable with respect

to each Plan shall be paid from the assets allocable to each such Plan. Should separation be required, either of the Fund from other trusts maintained by the Corporation or of any Plan for which contributions are made under this Agreement from the Fund, the Trustee shall make such separation as directed by the Corporation.

<u>SECTION 3</u>
<u>Disbursement from the Fund</u>

3.1    <u>Disbursements by Trustee</u>.    The Trustee shall make such payments out of the Fund direct from time to time by a Named Fiduciary.    In the discretion of the Named Fiduciary, such payments may be made directly to the person specified or deposited in a checking account maintained by the Corporation for the purpose of making payments to the person or persons entitled to such payments under the Plans, or to an account maintained by some other entity which the Named Fiduciary may designate to make payments.

3.2    <u>Direction to the Trustee</u>.    Any direction given to the Trustee in accordance with this Section need not state the specific application of the payment to be made, but shall state that the payment is for the purposes of the Plans or the payment of the Plans' expenses.

SECTION 4

Allocation of Investment Responsibilities

4.1  Third Party Named Fiduciaries and Asset Managers.

(a)  The Committee by written notice to the Trustee may (i) designate a Third Party Named Fiduciary with respect to one or more Investment Funds, and (ii) appoint such Third Party Named Fiduciary as a Named Fiduciary with respect to each such Investment Fund.

(b)  The Named Fiduciary from time to time in its sole discretion will appoint one or more Asset Managers to manage specified portions of the Fund.  Upon the appointment of each Asset Manager, the Named Fiduciary shall so notify the Trustee and instruct the Trustee to allocate and divide into a separate account those assets over which each Asset Manager has discretion and control.  Unless the Trustee, by action or failure to act, knowingly participates in or knowingly undertakes to conceal an act or omission of an Asset Manager, knowing such act or omission is a breach of fiduciary responsibility by such other person or entity, upon the separation of the assets in accordance with the instructions of the Named Fiduciary, the Trustee shall not be liable for the acts or omissions of such Asset Manager and shall be under no obligation to invest or otherwise manage any such Directed Funds, and the Trustee shall act as custodian for such Directed Funds.  Except as otherwise directed by the Named Fiduciary from time to time, the Trustee shall take no action with respect to the investment duties or powers in Section 5 or Section 9 without receipt of directions from the Asset Manager. On receipt of directions from an Asset Manager, the Trustee shall promptly execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or

appropriate to carry out such directions. Unless specifically prohibited in writing, the Trustee, as custodian, may hold the assets of such directed funds in the name of a nominee or nominees. For purposes of this Section, the mere preparation of reports or processing investment trades shall not constitute knowledge. Notwithstanding anything to the contrary, the Trustee shall invest cash it holds in a Directed Fund in short-term investments which may include the short-term collective investment fund of the Trustee.

(c)    When an Asset Manager other than the Trustee is appointed with respect to any Directed Fund, the Asset Manager shall be charged with the same standard of care, fiduciary responsibility, investment restrictions on the various Investment Funds, and investment powers that are applicable to the Trustee with respect to nondirected investments. Where appropriate, and unless the context clearly otherwise requires, all references to the Trustee shall also refer to an Asset Manager other than the Trustee with respect to the applicable Directed Fund.

(d)    Should an Asset Manager at any time elect to place security transactions directly with a broker or dealer, the Trustee shall not recognize such transaction unless and until it has received instructions or confirmation of such fact from the Asset Manager. Should the Asset Manager direct the Trustee to utilize the services of any person with regard to the assets under the Asset Manager's management or control, such instructions shall specifically set forth the actions to be taken by the Trustee with regard to such services.

(e)    In the event that an Asset Manager places security transactions directly or directs the utilization of a service, the Asset Manager shall be solely responsible for the acts of such persons. The sole duty of the

223856.4                          -12-                      October 29, 1998

Trustee for such transactions shall be incident to its duties as custodian.

4.2   Transfer of Assets to Asset Managers.

    (a)  Upon receipt of directions by the Named Fiduciary, the Trustee shall (i) transfer and deliver such part of the assets of the Fund as may be specified to any Asset Manager so appointed, and (ii) accept the transfer back to it of any such assets at any time held by an Asset Manager, provided that the Named Fiduciary may only direct such transfers as are in conformity with the provisions of the Plan, this Agreement, ERISA, and Sections 401(a) and 501(a) of the Code.   Any such direction shall constitute a certification to the Trustee by the Named Fiduciary that the transfer so directed is one which the Named Fiduciary is authorized to direct and is in conformity with the aforesaid provisions.

    (b)  If any assets are so transferred to the custody of an Asset Manager, such Asset Manager shall undertake and be responsible for all the custodial duties therefor, and such assets shall remain for all purposes a part of the Fund and the Trust and, as such, subject to all the terms and provisions of this Agreement.   If any Asset Manager receiving such assets is a bank or trust company, it may invest any part or all of such assets in units of any collective, common or pooled trust fund operated or maintained by it exclusively for the commingling and collective investment of monies or other assets held under or as part of a plan which is established in conformity with and qualifies under Section 401(a) of the Code.   Notwithstanding the provisions of this Agreement which place restrictions upon the actions of the Trustee or the Asset Manager, to the extent monies or other assets are utilized to acquire units of any collective trust, the terms of the collective trust indenture shall

solely govern the investment duties, responsibilities and powers of the trustee of such collective trust, and such terms, responsibilities and powers shall be incorporated herein by reference and shall be part of this Agreement. For the purposes of valuation of any interest under the Plans of which this trust forms a part, the value of the interest maintained by the Fund in such collective trust shall be the fair market value of the collective fund units held determined by the trustee of such trust in accordance with generally recognized valuation procedures.

(c)  The Trustee shall have no duty or responsibility for the safekeeping of such assets or for the investment and reinvestment of the same, except that the Trustee shall require such statements and reports from each Asset Manager as may be necessary to enable the Trustee and the Named Fiduciary to carry out their recordkeeping and reporting duties under this Agreement. The Trustee shall enter into and execute such agreements, receipts and releases to the extent directed by the Named Fiduciary with respect to the transfer of any assets of the Fund to or from an Asset Manager in accordance with this Section.

4.3  <u>The Trustee</u>.  Subject to investment policies, objectives and guidelines communicated to the Trustee by the Named Fiduciary as contemplated by this Section 4, the Trustee from time to time shall invest and reinvest any Discretionary Fund and keep it invested in accordance with such policies, objectives and guidelines.

SECTION 5

Investment Funds

It shall be the duty of the Trustee to keep the Trust Fund divided into separate Investment Funds which are to be designated and invested as described below.

5.1 <u>Solutia Stock Fund</u>.  The Solutia Stock Fund, except to the extent used to maintain liquidity for distributions and expenses or as otherwise provided below, shall be invested and reinvested by the Trustee in shares of the common stock of the Corporation:

    (a)   the portion of Accounts of the Members which is designated by them for investment in the Solutia Stock Fund;

    (b)   all amounts transferred to the Trust from the Monsanto Trust which are attributable to the proceeds received by the Monsanto Trust pursuant to any ESOP Loan under such trust;

    (c)   all proceeds received by the Trust pursuant to any ESOP Loan;

    (d)   all Employer Contributions (except such contributions used to amortize an ESOP Loan as directed by the Named Fiduciary, which direction shall be as provided in the Plan); and

    (e)   other property received as income, dividends or earnings with respect thereto, except:

        (i)  income, dividends or earnings attributable to common stock of the Corporation acquired with an ESOP Loan, and earnings thereon, used to amortize an ESOP Loan as

directed by the Named Fiduciary, which direction shall be as provided in the Plan; and

(ii) the number of shares of common stock of Monsanto transferred from the Monsanto Trust equal to (A) all such shares transferred, multiplied by (B) a fraction (I) the numerator of which is the number of shares of Monsanto common stock held in the Monsanto Trust Solutia Stock Fund immediately before the Distribution Date which were not acquired with an ESOP Loan or the earnings thereon used to amortize an ESOP Loan and (II) the denominator of which is the total number of shares of Monsanto common stock held in the Monsanto Trust Solutia Stock Fund immediately before the Distribution Date. The shares described in clause (ii) shall be transferred to the Monsanto Stock Fund.

Assets acquired by the Trustee with the proceeds of an ESOP Loan shall be held in the ESOP Suspense Account or the ESOP Interim Account until released and allocated to Members' accounts by the Named Fiduciary. The portion of this fund relating to the ESOP assets shall be accounted for separately. Pursuant to directions of the Named Fiduciary, which direction shall be as provided in the Plan, certain Employer Contributions and dividends shall be used to amortize any ESOP Loan.

The primary purpose of this fund shall be to invest in and hold the common stock of the Corporation. The Trustee may, but shall not be required to, place amounts received by it for the purpose of common stock investment in temporary investments, if, in the opinion of the Trustee, market conditions are such that investment in common stock of the Corporation would be disruptive or could not be accomplished, or if the investment would be prohibited by law, or the Trustee is notified, or otherwise should have reasonably known, that the investment would adversely affect the

qualified status of the Plan or the exempt status of the Trust under the Code. In the operation of this account, the Trustee shall have no investment discretion, except as hereinafter provided, and no duty or responsibility to determine the investment quality or prudence of such investment.

Subject to the directions of the Named Fiduciary and Section 9.3(c) of this Agreement, the Trustee shall acquire or dispose of all common stock of the Corporation for this fund (i) in the open market; (ii) in other transactions not constituting prohibited transactions as defined in Section 406 of ERISA or Section 4975 of the Code; (iii) in prohibited transactions for which an exemption is available under Section 408 of ERISA and Section 4975 of the Code; or (iv) through the method of purchase and sales which is used by the Trustee in the normal course of its security transactions. The Trustee shall provide the Corporation, and any person or entity designated by the Corporation, with a statement consistent with that customarily provided by the Trustee indicating the stock activity in the Solutia Stock Fund. The Trustee shall be permitted to net all purchases and sales for an account limited in investment purposes to common stock of the Corporation; provided, however, both sales and purchases will be at the closing market value on the date of the transaction and the books and records of the Trustee shall clearly reflect such fact. The shares of Monsanto common stock which are ESOP Shares that are transferred from the Monsanto Trust shall be reinvested in shares of common stock of the Corporation. The Committee may direct the Trustee to accomplish this through a transaction that satisfies the requirements of the first sentence of this paragraph or by exchanging with a trust for a plan sponsored by Monsanto that is qualified under Section 401 of the Code shares of Monsanto common stock for shares of the common stock of the Corporation at a price agreed upon by the Committee, or its delegate which may include the Trustee, and the fiduciary of such trust provided such a transaction either does not constitute a prohibited

transaction as defined in Section 406 of ERISA and Section 4975 of the Code or is a prohibited transaction for which an exemption is available under Section 408 of ERISA and Section 4975 of the Code.  If for any reason the Trustee should be unable to acquire or dispose of the common stock of the Corporation in the manner provided by this Section, it shall notify the Named Fiduciary of such fact and thereafter shall make no purchases or sales of securities until instructions are received from the Named Fiduciary.

5.2  <u>Growth and Income Equity Fund</u>.  The portion of the Accounts of the Members which is designated by them for investment in the Growth and Income Equity Fund ordinarily shall be invested primarily in equity type investments, such as common stocks or other securities convertible into common stock, and including through the medium of a commingled fund.  The Trustee shall have the right to keep such portion of such Fund in cash or short-term marketable securities, pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.3  <u>Fixed Income Fund</u>  The portion of the Accounts of the Members which is designated by them for investment in the Fixed Income Fund, ordinarily shall be invested in high-quality, fixed-income instruments, including but not limited to U.S. Treasury Securities, and may be transferred by the Trustee to an insurance company or bank, satisfactory to and designated by the Named Fiduciary, pursuant to an agreement satisfactory to the Named Fiduciary between the Trustee and such insurance company or bank, under which the insurance company or bank will guarantee repayment of principal and a fixed annual interest rate thereon for a specified future period or periods.  Any such agreement with an insurance company or bank must be consistent with this Agreement, the Plan and its administration requirements.  The Trustee shall have no duty to question such designation by the Named Fiduciary and shall be fully protected in acting in accordance with the Named Fiduciary's direction.  The Trustee shall have no obligation

for any loss or diminution of such Investment Fund caused by such directions. The Trustee shall have the right to keep such portion of such Investment Fund temporarily in cash or in short-term marketable securities pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.4 <u>Balanced Fund</u>. The portion of the Accounts of the Members which is designated by them for investment in the Balanced Fund ordinarily shall be invested in a combination of fixed income and equity investments including through the medium of a commingled fund or a mutual fund. The Trustee shall have the right to keep such portion of such Balanced Investment Fund in cash or in short-term marketable securities pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.5 <u>International Equity Fund</u>. The portion of the Accounts of the Members which is designated by them for investment in the International Equity Fund ordinarily shall be invested in debt or equity securities of companies or issuers which are principally domiciled outside the United States. Such investments may be, but are not required to be, made through one or more mutual funds or one or more commingled funds which have the foregoing described investment intent or may be made through a combination of such mutual funds and commingled funds. The Trustee shall have the right to keep such portion of such International Equity Fund in cash or in short-term marketable securities pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.6 <u>U.S. Equity Index Fund.</u> The portion of the Accounts of the Members which is designated by them for investment in the U.S. Equity Index Fund ordinarily shall be invested primarily in equity type investments, such as common stocks or other securities convertible into common stock, and including through the medium of a commingled fund or a mutual fund. The Trustee shall have the right to keep such portion of such Investment Fund in cash or short-term marketable securities,

pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.7   Growth Equity Fund.   The portion of the Accounts of the Members which is designated by them for investment in the Growth Equity Fund ordinarily shall be invested in equity type investments such as common stocks or other securities convertible into common stocks, and including through the medium of a commingled fund or a mutual fund.   The Trustee shall have the right to keep such portion of such Investment Fund in cash or in short-term marketable securities pursuant to guidelines provided to the Trustee by the Named Fiduciary.

5.8   Monsanto Stock Fund.   Effective as of the  Distribution Date, the  Trustee  shall,  pursuant  to  the  Named  Fiduciary's direction, retain the portion of the Monsanto common stock that is not transferred to the Solutia Stock Fund in this fund.   The Monsanto Stock Fund shall be invested in shares of Monsanto common stock, except to the extent used to maintain liquidity for distributions.   Any property received as income, dividends or earnings with respect to the Monsanto Stock Fund shall be invested by the Trustee in the Solutia Stock Fund.

5.9   No Purchase of Solutia Common Stock or Other Obligation.   No stocks  or  obligations  issued  by  the  Corporation  or  its Subsidiaries  shall  be  included  in  the  Investment  Funds (excluding  the  Solutia  Stock  Fund)  or  any  additional Investment  Fund  or  Funds  established  pursuant  to  the provisions of the Plan; provided, however, that any investment of any Investment Fund through the medium of commingled funds maintained by a trustee, by the insurance company pursuant to paragraph 5.3 above, or a mutual fund pursuant to paragraphs 5.2, 5.4, 5.5, 5.6 and 5.7 above, for the purpose of this Agreement, shall not constitute an investment in the stocks or obligations of the Corporation or its Subsidiaries, in the event that the commingled trust funds and/or the mutual funds

should contain stocks or obligations of the Corporation or its
Subsidiaries.

SECTION 6

Participant Notification and Voting

6.1  Voting of Corporation Shares.  Members shall be entitled to
direct the vote at any meeting of shareholders of the
Corporation, of all shares of common stock of the Corporation
allocated or credited to their Accounts in the Plan as shown
on the records of the Plan on the record date for determining
shareholders entitled to vote at such meeting.  To enable them
to do so, and to be fully informed of all matters on which
they are entitled to vote, the Trustee shall deliver or cause
to be delivered to each Member who is entitled to direct the
vote of any shares a copy of all proxy solicitation materials
before each annual or special meeting of shareholders of the
Corporation, together with a request for instructions on how
the shares which such Member is entitled to direct are to be
voted at such meeting.  The Trustee shall vote all shares for
which it has received voting instructions from Members by the
date established by the Trustee in the manner thus instructed.
The Trustee shall also vote on a pro rata basis (i) shares
which have been allocated or credited to Members' Accounts for
which voting instructions have not been timely received from
Members; and (ii) shares in the ESOP Suspense Account or the
ESOP Interim Account which have not been allocated or credited
to Members' Accounts.  The proration on each voting issue
shall be equal to the aggregate number of votes attributable
to the shares described in clauses (i) and (ii) of the
preceding sentence, multiplied by a fraction, the numerator of
which is the number of votes attributable to the allocated
shares of all Members who have provided timely instructions to
the Trustee to vote for, against or abstain from voting on, as
the case may be, the issue on which the vote is taken, and the
denominator of which is the total number of votes attributable
to allocated shares of all Members who have provided timely

instructions to the Trustee on the issue on which the vote was taken. Voting instructions from individual Members shall be held by the Trustee in confidence, and neither the name of nor the voting instructions given by any Member who chooses to give voting instructions shall be divulged by the Trustee to any of the Employers or to any director, officer or employee thereof; except that, to the extent necessary, such instructions may be relayed by the Trustee to a recordkeeper, auditor or tabulator of votes if such person (including any individual who is an employee of the Corporation) agrees not to divulge such directions to any member of management of the Corporation or its affiliates or any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit or tabulation services. The Corporation shall take all steps required to be taken by it in order to permit the Trustee to comply with the provisions of this paragraph, including but not limited to furnishing the Trustee with sufficient copies of all proxy solicitation materials.

6.2    <u>Tendering of Corporation Shares</u>.  Members shall be entitled to the extent of the Corporation shares allocated or credited to their Accounts in the Plan, as shown on the records of the Plan as of the most recent valuation date for which information is available, to direct the Trustee in writing of the manner in which to respond to a tender or exchange offer, including but not limited to a tender or exchange offer within the meaning of the Securities Exchange Act of 1934, as amended, with respect to such shares, and the Trustee shall respond in accordance with the instructions so received. The Trustee shall utilize its best efforts to timely distribute or cause to be distributed to each Member such information that will be distributed to shareholders of the Corporation in connection with any such tender or exchange offer, together with a form requesting instructions on whether or not such shares shall be tendered or exchanged. The Trustee shall also sell, exchange or transfer a pro rata portion of the aggregate

number of any shares that have not been allocated or credited to any Member's Account, including shares held in the ESOP Suspense Account or the ESOP Interim Account. Such pro rata portion shall be equal to the shares not allocated or credited to any Member's Accounts multiplied by a fraction, the numerator of which is the number of allocated or credited shares of each Member who instructed the Trustee to sell, exchange or transfer the shares allocated or credited to the Member's Accounts, and the denominator of which is the total number of allocated or credited shares of all Members. If the Trustee shall not receive timely instructions from a Member of the manner in which to respond to such a tender or exchange offer, the Member shall be deemed to have directed the Trustee not to tender or exchange the Member's shares and the Trustee shall not tender or exchange the shares with respect to which the Member has the right of direction. The instructions received by the Trustee from individual Members shall be held in confidence and neither the name of nor the instructions given by any individual Member who chooses to give instructions shall be divulged by the Trustee to any of the Employers or to any director, officer or employee thereof, or to the EBPC or the Committee; except that, to the extent necessary, such instructions may be relayed by the Trustee to a recordkeeper, auditor, transfer agent, registrar or other person providing services to the Plan, if such person is not the Corporation or an affiliate and agrees not to divulge such directions to any employee of the Corporation or its affiliates or to any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit, transfer agent, registrar or other services.

Any securities received by the Trustee as a result of a tender of shares of common stock which have been allocated or credited to Members' Accounts shall be held by the Trustee and any cash so received shall be invested in short-term investments pending direction as to reinvestment by the Named

Fiduciary. Any securities or cash received by the Trustee as a result of a tender of shares which have not been allocated or credited to Members' Accounts may be likewise so held, invested or transferred or, subject to the direction of the Named Fiduciary may be used to pay any ESOP Loan.

6.3  <u>Rights</u>.  Should the Rights associated with each share of common stock of the Corporation become exercisable, Members shall be entitled to direct the Trustee on a form furnished by the Trustee whether to sell, exercise, or retain the Rights attributable to the interest of such Members' Accounts.  The Trustee shall use its best efforts to deliver or cause to be delivered to each Member, along with such form, any information distributed to shareholders of the Corporation regarding the Rights.  The Trustee shall follow the directions of the Members who submit instructions by the date established by the Trustee.  If the Trustee shall not receive timely instructions from a Member as to the Rights, the Member shall have been deemed to have directed the Trustee to exercise the Rights and the Trustee shall do so.  If a Member directs the Trustee to exercise, the Trustee shall obtain the consideration for the exercise from among the following sources:  (a) by obtaining appropriate written direction from the Member regarding (i) the transfer and use of funds in the Member's accounts, or (ii) the sale of part of the Rights and the use of the proceeds to exercise the remaining Rights; or (b) in the Trustee's discretion, by borrowing the consideration necessary to exercise; provided that such borrowing is permitted by applicable law and the terms of the Plan and does not adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code.

With respect to Rights associated with unallocated shares, the Trustee shall sell, exercise, or retain and keep unproductive of income a pro-rata portion of the applicable Rights.  Such pro rata portion shall be equal to the shares not allocated or credited to any Member's Accounts multiplied by a fraction,

the numerator of which is the number of allocated or credited
shares of each Member who instructed the Trustee to sell,
exercise or retain the Rights associated with the shares
allocated or credited to the Member's accounts, and the
denominator of which is the total number of allocated or
credited shares of all Members.  In the event of such an
exercise by the Trustee, the Trustee shall be deemed to be
authorized to accumulate the amount equal to the consideration
necessary to exercise from any of the following sources and to
hold such acquired securities in the Trust: (i) current
Employer Contributions or earnings thereon to the extent such
contributions are not needed to make ESOP Loan payments, are
not Employer Contributions required to be made by the terms of
the Plan and are not needed to satisfy the nondiscrimination
tests required by Sections 401(a)(4), 401(k)(3) or 401(m) of
the Code, (ii) to the extent necessary, the sale of part of
the Rights and the use of the sale proceeds to exercise the
remaining Rights, or (iii) in the Trustee's discretion, by
borrowing an amount equal to the consideration necessary to
exercise the Rights, provided that such borrowing is permitted
by applicable law and the terms of the Plan and does not
adversely affect the qualified status under the Plan or the
exempt status of the Trust under the Code.

The instructions received by the Trustee from individual
Members shall be held in confidence and neither the name of,
nor the instructions given by, any individual Member who
chooses to give instructions shall be divulged by the Trustee
to any of the Employers or to any director, officer or
employee thereof, or to the EBPC or the Committee; except that
such instructions may be relayed by the Trustee to a
recordkeeper, auditor, transfer agent, registrar or other
person providing services to the Plan if such person is not
the Corporation or an affiliate and agrees not to divulge such
directions to any employee of the Corporation or its
affiliates or to any person other than a person who needs to
be aware of such instructions in order to provide the

recordkeeping, audit, transfer agent, registrar or other services.

Any securities received by the Trustee as a result of the sale or exercise of any Rights associated with common stock allocated or credited to Members' accounts shall be held by the Trustee and any cash so received shall be invested in short-term investments pending any reinvestment by the Trustee or transfer into one or more of the Investment Funds, as directed by the Named Fiduciary. Any securities or cash received by the Trustee as a result of the sale or exercise of any Rights associated with common stock not allocated or credited to Members' accounts may be so held or invested or, subject to the direction of the Named Fiduciary may be used to pay any ESOP Loan.

6.4    <u>Voting of Monsanto Shares</u>.  Members shall be entitled to direct the vote at any meeting of shareholders of Monsanto, of all shares of common stock of Monsanto allocated or credited to their Accounts in the Plan as shown on the records of the Plan on the record date for determining shareholders entitled to vote at such meeting.  To enable them to do so, and to be fully informed of all matters on which they are entitled to vote, the Trustee shall deliver or cause to be delivered to each Member who is entitled to direct the vote of any shares a copy of all proxy solicitation materials before each annual or special meeting of shareholders of Monsanto, together with a request for instructions on how the shares which such Member is entitled to direct are to be voted at such meeting.  The Trustee shall vote all shares for which it has received voting instructions from Members by the date established by the Trustee in the manner thus instructed. The Trustee shall also vote on a pro rata basis shares which have been allocated or credited to Members' Accounts for which voting instructions have not been timely received from Members.  The proration on each voting issue shall be equal to the aggregate number of votes attributable to shares which have been allocated or

credited to Members' Accounts for which voting instructions have not been timely received from Members multiplied by a fraction, the numerator of which is the number of votes attributable to the allocated shares of all Members who have provided timely instructions to the Trustee to vote for, against or abstain from voting on, as the case may be, the issue on which the vote is taken, and the denominator of which is the total number of votes attributable to allocated shares of all Members who have provided timely instructions to the Trustee on the issue on which the vote was taken. Voting instructions from individual Members shall be held by the Trustee in confidence, and neither the name of nor the voting instructions given by any Member who chooses to give voting instructions shall be divulged by the Trustee to Monsanto or any of the Employers or to any director, officer or employee thereof; except that, to the extent necessary, such instructions may be relayed by the Trustee to a recordkeeper, auditor or tabulator of votes if such person agrees not to divulge such directions to any member of management of Monsanto or its affiliates or any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit or tabulation services.

6.5    <u>Tendering of Monsanto Shares</u>.   Members shall be entitled to the extent of Monsanto shares allocated or credited to their Accounts in the Plan, as shown on the records of the Plan as of the most recent valuation date for which information is available, to direct the Trustee in writing of the manner in which to respond to a tender or exchange offer, including but not limited to a tender or exchange offer within the meaning of the Securities Exchange Act of 1934, as amended, with respect to such shares, and the Trustee shall respond in accordance with the instructions so received.   The Trustee shall utilize its best efforts to timely distribute or cause to be distributed to each Member such information that will be distributed to shareholders of Monsanto in connection with any such tender or exchange offer, together with a form requesting

instructions on whether or not such shares shall be tendered or exchanged. If the Trustee shall not receive timely instructions from a Member of the manner in which to respond to such a tender or exchange offer, the Member shall be deemed to have directed the Trustee not to tender or exchange the Member's shares and the Trustee shall not tender or exchange the shares with respect to which the Member has the right of direction. The instructions received by the Trustee from individual Members shall be held in confidence and neither the name of nor the instructions given by any individual Member who chooses to give instructions shall be divulged by the Trustee to Monsanto, any of the Employers or to any director, officer or employee thereof, or to the EBPC or the Committee; except that, to the extent necessary, such instructions may be relayed by the Trustee to a recordkeeper, auditor, transfer agent, registrar or other person providing services to the Plan, if such person is not Monsanto or an affiliate and agrees not to divulge such directions to any employee of Monsanto or its affiliates or to any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit, transfer agent, registrar or other services.

Any securities received by the Trustee as a result of a tender of shares of common stock which have been allocated or credited to Members' accounts shall be held by the Trustee and any cash so received shall be invested in short-term investments pending transfer into one or more of the Investment Funds, as directed by the Named Fiduciary.

6.6    <u>Monsanto Rights</u>. Should the Monsanto Rights associated with each share of common stock of Monsanto become exercisable, Members shall be entitled to direct the Trustee on a form furnished by the Trustee whether to sell, exercise, or retain the Rights attributable to the interest of such Members' Accounts. The Trustee shall use its best efforts to deliver or cause to be delivered to each Member, along with such form,

any information distributed to shareholders of Monsanto regarding the Rights. The Trustee shall follow the directions of the Members who submit instructions by the date established by the Trustee. If the Trustee shall not receive timely instructions from a Member as to the Rights, the Member shall have been deemed to have directed the Trustee to exercise the Rights and the Trustee shall do so. If a Member directs the Trustee to exercise, the Trustee shall obtain any consideration required for the exercise from among the following sources: (a) by obtaining appropriate written direction from the Member regarding (i) the transfer and use of funds in the Member's Accounts, or (ii) the sale of part of the Rights and the use of the proceeds to exercise the remaining Rights; or (b) in the Trustee's discretion, by borrowing the consideration necessary to exercise; provided that such borrowing is permitted by applicable law and the terms of the Plan and does not adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code.

The instructions received by the Trustee from individual Members shall be held in confidence and neither the name of, nor the instructions given by, any individual Member who chooses to give instructions shall be divulged by the Trustee to Monsanto, any of the Employers or to any director, officer or employee thereof, or to the EBPC or the Committee; except that such instructions may be relayed by the Trustee to a recordkeeper, auditor, transfer agent, registrar or other person providing services to the Plan if such person is not Monsanto or an affiliate and agrees not to divulge such directions to any employee of Monsanto or its affiliates or to any person other than a person who needs to be aware of such instructions in order to provide the recordkeeping, audit, transfer agent, registrar or other services.

Any securities received by the Trustee as a result of the sale or exercise of any Monsanto Rights shall be held by the

Trustee and any cash so received shall be invested in short-term investments pending any reinvestment by the Trustee or transfer into one or more of the Investment Funds, as directed by the Named Fiduciary.

## SECTION 7
## Fund Transfers

Pursuant to the exercise by a Member of his rights under the Plan to request a transfer of his interests from one or more of the Investment Funds to one or more of the other such Investment Funds, the Trustee shall, as expeditiously as practicable, following appropriate directions of the EBPC to the Trustee, carry out such directions and arrange for the appropriate transfer of interests among such Investment Funds. Notwithstanding the foregoing, in no event shall a Member be permitted to transfer his interests from one or more of the Investment Funds into the Monsanto Stock Fund.

## SECTION 8
## Participant Accounts

8.1  <u>Allocation of Contributions</u>.  The EBPC shall, upon the making of any contribution to this Trust by the Corporation, or, if applicable, a Participant, or both, instruct the Trustee of the manner that such contribution is to be allocated among the accounts previously established.

8.2  <u>Responsibility of Trustee</u>.  The Trustee shall not be responsible nor liable to establish or maintain a record or account in the name of any individual Participant.  The Trustee shall not be required to establish the value of any Participant's individual interest in the Fund or any account established hereunder.  Should the Trustee and the EBPC or the Corporation agree that the Trustee shall maintain individual account records, such agreement shall be separate and apart from the terms of this Trust.  Such an agreement shall not be construed as implying any duty upon the Trustee hereunder even

though the Trustee, in its corporate capacity as recordkeeper
for the accounts of individual Participants, shall have the
right, power or duty to issue instructions or directions as to
the disposition or distribution of any assets held hereunder.

<u>SECTION 9</u>
<u>Investment of the Fund</u>

9.1    <u>Standard of Care</u>.   The Trustee, each Asset Manager and each
Named Fiduciary shall discharge their respective investment
duties as provided under Sections 4 and 5 hereof with the
care, skill, prudence and diligence under the circumstances
then prevailing that a prudent man acting in like capacity and
familiar with such matters would use in the conduct of an
enterprise of a like character with like aims and by
diversifying the investments (to the extent required by
Section 404 of ERISA) held hereunder consistent with
investment policies, objectives and guidelines so as to
minimize the risk of large losses, unless under the
circumstances it is clearly prudent not to diversify.

9.2    <u>Waiver of Investment Restrictions</u>.    Such investment and
reinvestment shall not be restricted to securities or property
of the character authorized for investments by trustees or
asset managers under any statute or other laws of any state,
district or territory.

9.3    <u>Grant of Investment Powers</u>.    Subject to the provisions of
Sections 4 and 5 hereof, in addition to any power granted to
trustees or asset managers under any statute or other laws,
such laws and statutes, if necessary, being incorporated
herein by reference, the Trustee's and each Asset Manager's
investment powers may, unless restricted in writing by the
Named Fiduciary, include but shall not be limited to
investment as described below.

(a) <u>Growth and Income Equity Fund</u>:  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the Growth and Income Equity Fund:

    (i)  Power to invest in equity-type investments such as common stocks or other securities convertible into common stock, within or without the United States, even though the Trustee does not have physical possession of the securities; subject to the right of the Trustee to keep a portion of such Investment Fund in cash or short-term marketable securities, temporarily or for such longer periods, pursuant to guidelines provided to the Trustee by the Committee.

    (ii)  Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

    (iii)  Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it shall deem proper.  No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

    (iv)  Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

    (v)  Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to

any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issuers thereof, and to make payments in connection therewith.

(vi) Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to this Agreement.

(vii) Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(viii) Power to invest in any fund created and administered by it, as of the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(b)  _Fixed Income Fund_.  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the Fixed Income Fund:

(i)   Power to enter into a contract with an insurance company or companies or a bank or banks in order to comply with the investment provisions for the Fixed Income Fund of this Agreement, and the transfer of assets from such Investment Fund to such insurance company or bank as provided in Section 4.2.

(ii)  Power to invest in high quality fixed-income securities such as but not limited to U.S. Treasury Securities.

(iii) Power to transfer assets and interests of Members from this Fund to one or more of the Funds pursuant to this Agreement.

(iv)  Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(v)   No insurance company or bank shall be deemed to be a party to this instrument or to be bound in any way by any of the provisions of the Plan which may come to its notice or be bound to do any act or thing or to allow any right, benefit or privilege to any person interested in any policy or contract it has issued which is not provided in such policy or contract.  Any insurance company issuing any policies or contracts hereunder or any bank issuing any contracts hereunder shall be fully discharged

from any and all liability for any amount paid in accordance with the direction of the Trustee or the Committee or for any change made or action taken by such insurance company or bank upon any direction of the Trustee or the Committee. This subsection shall not, however, have any effect on the obligation of the Trustee pursuant to this Agreement.

(c) <u>Solutia Stock Fund</u>: The following powers may be exercised by the Trustee only with respect to the Solutia Stock Fund:

(i) Power to invest in shares of common stock of the Corporation and to reinvest dividends and distributions received on such shares in additional shares of common stock of the Corporation.

(ii) Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to the direction of the Named Fiduciary, which direction shall be as provided in the Plan.

(iii) Power to make loans, based on the direction of the EBPC, to Plan participants from their Employee Stock Account in the Solutia Stock Fund subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(iv) Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to purchase existing loans (at a premium or at a discount) and pay any appropriate and proper expenses related thereto, and to borrow money from any lender or lenders (including an

affiliate of the Trustee or a party in interest as defined in Section 3(14) of ERISA) on terms and conditions consistent with any directions of the Committee or its delegate to finance the acquisition of Financed Shares or to repay an existing ESOP Loan (including a borrowing by means of the issuance of debt securities of the Trust pursuant to an indenture to which the Trust is a party).

(v)    Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to pledge any Financed Shares held in the Solutia Stock Fund (to the extent they have not been allocated or credited to the account of any Member) for the repayment of any such borrowing including an ESOP Loan.

(vi)    Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to change the terms of, prepay, accelerate payment of or refinance any ESOP Loan.

(vii)    Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to use the proceeds of an ESOP Loan (1) to purchase shares of common stock of the Corporation from the Corporation to the extent the Corporation makes such stock available to the Trustee or, to the extent shares of common stock of the Corporation are not made available by the Corporation, to purchase shares of common stock of the Corporation in the open market or in private transactions; or (2) to repay an ESOP Loan.

(viii)    Power, subject to the direction of the Named Fiduciary, which direction shall be as provided in