the Plan, to use the following to amortize any ESOP Loan: (1) Employer Contributions and dividends, earnings and income thereon; (2) dividends, earnings and income on any assets acquired with an ESOP Loan or assets held as a result of the disposition or conversion of such assets; or (3) any other assets lawfully available for such purpose.

(ix) Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to sell common stock of the Corporation (including a sale to the Corporation) in a transaction which is not prohibited by law and which does not adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code; provided that any proceeds from such a sale shall be applied as directed by the Committee, which direction of the Committee shall be as provided in the Plan.

(x) Power, subject to the requirements of ERISA and the Code, to take any and all actions consistent with the directions of the Named Fiduciary that the Trustee deems necessary, desirable or appropriate in connection with any borrowing, purchase or sale made pursuant to this Section 9.3(c).

(xi) Power to vote in person or by proxy at special or annual meetings of shareholders of the Corporation the shares of common stock of the Corporation held in the Solutia Stock Fund and allocated or credited to Members' accounts in accordance with the written instructions of each Member entitled to direct the voting of such shares, as provided in Section 6, and to vote any allocated shares for which voting instructions have not been timely received from

Members and any other shares not allocated to Members in proportion to the vote of shares for which timely instructions have been received from Members in accordance with Section 6.

(xii)   Power to tender shares of common stock of the Corporation held in the Solutia Stock Fund and allocated or credited to Members' accounts in accordance with the written instructions of each Member entitled to instruct the tender of such shares pursuant to an offer, as provided in Section 6, and to tender any unallocated shares in proportion to the tender of shares for which timely instructions have been received from Members in accordance with Section 6, and to refrain from tendering any allocated shares for which instructions have not been received.

(xiii)  Power to sell, exercise or hold the Rights held in the Solutia Stock Fund and allocated or credited to Members' accounts which have become exercisable according to the instructions of each Member entitled to instruct the sale, exercise or retention of such Rights as provided in Section 6, and to sell, exercise or retain any allocated Rights for which instructions have not been timely received from Members, and any other Rights which have not been allocated to Members in proportion to the sale, exercise or retention of Rights for which instructions have been received in accordance with Section 6.

(xiv)   Power, subject to the direction of the Named Fiduciary, to sell the Rights to the Corporation in the event of a redemption of the Rights by the Corporation, provided such sale does not adversely

affect the qualified status of the Plan or the exempt status of the Trust under the Code.

(d) <u>Balanced Fund</u>. The following powers may be exercised by the Trustee or Asset Manager only with respect to the Balanced Fund:

    (i) Power to invest in fixed-income and equity-type investments in such proportion as the fiduciary with investment responsibility for the fund may deem advisable from time to time, or to invest in a commingled fund which so invests its assets, subject to the right of the Trustee to keep a portion of such Investment Fund in cash or short-term marketable securities, temporarily or for such longer periods, pursuant to guidelines provided the Trustee by the Named Fiduciary.

    (ii) Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

    (iii) Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it shall deem proper. No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

    (iv) Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

(v)   Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issuers thereof, and to make payments in connection therewith.

(vi)   Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to the provisions of the Plan and pursuant to this Agreement.

(vii)   Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts, subject to such terms and conditions as shall be established by the EBPC in accordance with the Plan and applicable laws and regulations.

(viii)   Power to invest in any fund created and administered by it, as the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(e)   International Equity Fund.  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the International Equity Fund:

(i)   Power to invest in securities and other property (including futures contracts) even though the

Trustee does not have physical possession of the securities.

    (ii)  Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

   (iii)  Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it shall deem proper. No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

    (iv)  Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

    (v)  Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issuers thereof, and to make payments in connection therewith.

    (vi)  Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to this Agreement.

   (vii)  Power to make loans, based on the direction of the EBPC, to Plan participants with their accounts subject to such terms and conditions as shall be

established by the EBPC in accordance with applicable laws and regulations.

(viii) Power to invest in any fund created and administered by it, as the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(f)  U.S. Equity Index Fund. The following powers may be exercised by the Trustee or an Asset Manager only with respect to the U.S. Equity Index Fund:

(i)  Power to invest in securities or other property (including futures contracts) within the United States, even though the Trustee does not have physical possession of the securities or property, subject to the right of the Trustee to keep a portion of such Investment Fund in cash or short-term marketable securities, temporarily or for such longer periods, pursuant to guidelines provided to the Trustee by the Named Fiduciary.

(ii) Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

(iii) Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it

shall deem proper.  No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

(iv)  Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

(v)  Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issuers thereof, and to make payments in connection therewith.

(vi)  Power to transfer assets and interests of the Members from this Investment Fund to any other Investment Fund pursuant to this Agreement.

(vii)  Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(viii)  Power to invest in any fund created and administered by it, as the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall

constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(g)  <u>Growth Equity Fund</u>.  The following powers may be exercised by the Trustee or an Asset Manager only with respect to the Growth Equity Fund:

(i)  Power to invest in securities or other property (including futures contracts) within or without the United States, even though the Trustee does not have physical possession of the securities or property, subject to the right of the Trustee to keep a portion of such Investment Fund in cash or short-term marketable securities, temporarily or for such longer periods, pursuant to guidelines provided to the Trustee by the Named Fiduciary.

(ii)  Power to retain any securities or other property received in exchange for, or as a dividend or distribution with respect to, securities or property held by it in such Investment Fund.

(iii)  Power to sell at public or private sale for cash or upon credit or partly for cash and partly upon credit and upon such terms and conditions as it shall deem proper.  No purchaser shall be bound to see to or be liable for the application of the proceeds of any such sale.

(iv)  Power to exchange any securities or property held by it for other securities or property, or partly for such securities or property and partly for cash, and to exercise conversion, subscription, option and similar rights with respect to any securities held by it, and to make payments in connection therewith.

(v)  Power to vote in person or by proxy at corporate or other meetings and to participate in or consent to any voting trust, reorganization, dissolution, merger or other action affecting any securities in its possession or the issues thereof, and to make payments in connection therewith.

(vi)  Power to transfer assets and interests of the Members from this Investment Fund to any other Investment Fund pursuant to this Agreement.

(vii)  Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(viii)  Power to invest in any fund created and administered by it, as the Trustee thereof, for the collective investment of the assets of employee benefit trusts, as long as such collective investment fund is a qualified trust under the applicable provisions of the Internal Revenue Code (and while any portion of the Trust Fund is so invested, such collective investment fund shall constitute part of the Plan, and the instrument creating such fund shall constitute part of this Trust Agreement).

(h)  Monsanto Stock Fund:  The following powers may be exercised by the Trustee only with respect to the Monsanto Stock Fund:

(i)  Power to invest in shares of common stock of Monsanto and to invest dividends and distributions received on such shares in the Solutia Stock Fund.

(ii)   Power to transfer assets and interests of the Members from this Fund to one or more of the other Funds pursuant to the direction of the Named Fiduciary, which direction shall be as provided in the Plan.

(iii)  Power to make loans, based on the direction of the EBPC, to Plan participants from their accounts invested in the Monsanto Stock Fund subject to such terms and conditions as shall be established by the EBPC in accordance with applicable laws and regulations.

(iv)   Power, subject to the direction of the Named Fiduciary and subject to the requirements of ERISA and the Code, to sell common stock of Monsanto in a transaction which is not prohibited by law and which does not adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code; provided that any proceeds from such a sale shall be applied as directed by the Named Fiduciary, which direction of the Named Fiduciary shall be as provided in the Plan.

(v)    Power, subject to the requirements of ERISA and the Code, to take any and all actions consistent with the directions of the Named Fiduciary that the Trustee deems necessary, desirable or appropriate in connection with any sale made pursuant to paragraph (iv).

(vi)   Power to vote in person or by proxy at special or annual meetings of shareholders of Monsanto the shares of common stock of Monsanto held in the Monsanto Stock Fund and allocated or credited to Members' Accounts in accordance with the instructions of each Member entitled to direct the

223856.4                          -46-                          October 29, 1998

voting of such shares, as provided in Section 6, and to vote any allocated shares for which voting instructions have not been timely received from Members and any other shares not allocated to Members in proportion to the vote of shares for which timely instructions have been received from Members in accordance with Section 6.

(vii)   Power to tender shares of common stock of Monsanto held in the Monsanto Stock Fund and allocated or credited to Members' Accounts in accordance with the written instructions of each Member entitled to instruct the tender of such shares pursuant to an offer, as provided in Section 6 and to refrain from tendering any allocated shares for which instructions have not been received.

(viii)  Power to sell, exercise or hold the Monsanto Rights held in the Monsanto Stock Fund and allocated or credited to Members' accounts which have become exercisable according to the written instructions of each Member entitled to instruct the sale, exercise or retention of such Rights as provided in Section 6, and to sell, exercise or retain any allocated Monsanto Rights for which instructions have not been timely received from Members in proportion to the sale, exercise or retention of Monsanto Rights for which instructions have been received in accordance with Section 6.

## SECTION 10
### Powers of the Trustee, Asset Managers and Named Fiduciaries

10.1   General Powers.   To the extent the power is consistent with Section 9 as to all assets other than common stock of the Corporation or Monsanto, the Trustee shall have and exercise the following powers and authority in the administration of

the Fund only at the direction of an Asset Manager and the Named Fiduciary except where such powers and authority relate to a Directed Fund, and in its sole discretion where such powers and authority relate to investments made by the Trustee in a Discretionary Fund:

(a)  to purchase, receive or subscribe for any securities or other property and to retain in trust such securities or other property;

(b)  to sell, exchange, convey, transfer, lend, or otherwise dispose of any property held in the Fund and to make any sale by private contract or public auction; and no person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency or propriety of any such sale or other disposition;

(c)  to exercise any rights appurtenant to any such stocks, bonds or other securities for the conversion thereof into other stocks, bonds or securities, or to exercise rights or options to subscribe for or purchase additional stocks, bonds or other securities, and to make any and all necessary payments with respect to any such conversion or exercise, as well as to write options with respect to such stocks and to enter into any transactions in other forms of options with respect to any options which the Fund has outstanding at any time;

(d)  to join in, dissent from or oppose the reorganization, recapitalization, consolidation, sale or merger of corporations or properties of which the Fund may hold stocks, bonds or other securities or in which it may be interested, upon such terms and conditions as deemed wise, to pay any expenses, assessments or subscriptions in connection therewith, and to accept any securities or property, whether or not trustees would be authorized to

invest in such securities or property, which may be issued upon any such reorganization, recapitalization, consolidation, sale or merger and thereafter to hold the same, without any duty to sell;

(e)   to insure, according to customary standards, any property held in the Fund for any amount and to pay any premiums required for such coverage;

(f)   to purchase or otherwise acquire and make payment therefor from the Fund any bond or other form of guarantee or surety required by any authority having jurisdiction over this Trust and its operation, or believed by the Trustee or Asset Manager to be in the best interests of the Fund, except the Trustee or Asset Manager may not obtain any insurance whose premium obligation extends to the Fund which would protect the Trustee or Asset Manager against its liability for breach of fiduciary duty;

(g)   to enter into any type of contract with any insurance company or companies, either for the purposes of investment or otherwise; provided that no insurance company dealing with the Trustee shall be considered to be a party to this Agreement and shall only be bound by and held accountable to the extent of its contract with the Trustee.   Except as otherwise provided by any contract, the insurance company need only look to the Trustee with regard to any instructions issued and shall make disbursements or payments to any person, including the Trustee, as shall be directed by the Trustee. Where applicable, the Trustee shall be the sole owner of any and all insurance policies or contracts issued.   Such contracts or policies, unless otherwise determined, shall be held as an asset of the Fund for safekeeping or custodian purposes only;

(h)  to enter into any type of contract with any bank or banks, either for the purposes of investment or otherwise; provided that no bank dealing with the Trustee shall be considered to be a party to this Agreement and shall only be bound by and held accountable to the extent of its contract with the Trustee.  Except as otherwise provided by any contract, the bank need only look to the Trustee with regard to any instructions issued and shall make disbursements or payments to any person, including the Trustee, as shall be directed by the Trustee.  Where applicable, the Trustee shall be the sole owner of any and all bank contracts issued.  Such contracts, unless otherwise determined, shall be held as an asset of the Fund for safekeeping or custodian purposes only; and

(i)  to lend the assets of the Fund to Plan participants.  The EBPC shall have full and exclusive responsibility for loans made to participants pursuant to the Plan, including, without limitation, full and exclusive responsibility for the following:  development of procedures and documentation for such loans; acceptance of loan applications; approval of loan applications; disclosure of interest rate information required by applicable law; acting as custodian for the physical custody and safekeeping of the promissory notes and other loan documents; enforcement of promissory note terms, including but not limited to directing the Trustee to take specified actions; and maintenance of accounts and records regarding interest and principal payments on notes.

Notwithstanding anything to the contrary in this Agreement, the Trustee shall exercise the power to vote any stocks, bonds or other securities held in the Fund (except for stocks held in the Solutia Stock Fund or the Monsanto Stock Fund) only as directed by the Named Fiduciary, except to the extent that the Named Fiduciary does not direct the Trustee, the Trustee shall

follow the direction of the Asset Manager with respect to the securities in the Asset Manager's account.

10.2   <u>Specific Powers of the Trustee</u>.   The Trustee shall have the following powers and authority, to be exercised in its sole discretion with respect to the Fund:

(a)   to appoint agents, custodians, depositories or counsel, domestic or foreign, for part or all of the Fund and functions incident thereto where, in the sole discretion of the Trustee, such delegation is necessary in order to facilitate the operations of the Fund and such delegation is consistent with the purposes of the Fund or with any applicable law.  Upon such delegation, the Trustee may require such reports, bonds or written agreements as it deems necessary to properly monitor the actions of its delegate;

(b)   to cause any investment, either in whole or in part, in the Fund to be registered in, or transferred into, the Trustee's name or the names of a nominee or nominees, including but not limited to that of the Trustee, a clearing corporation, or a depository, or in book entry form, or to retain any such investment unregistered or in a form permitting transfer by delivery, provided that the books and records of the Trustee shall at all times show that such investments are a part of the Fund; and to cause any such investment, or the evidence thereof, to be held by the Trustee, in a depository, in a clearing corporation, in book entry form, or by any other entity or in any other manner permitted by law;

(c)   to make, execute and deliver, as Trustee, any and all deeds, leases, mortgages, conveyances, waivers, releases or other instruments in writing necessary or desirable for the accomplishment of any of the foregoing powers;

(d)  to defend against or participate in any legal actions involving the Fund or the Trustee in its capacity stated herein, in the manner and to the extent it deems advisable, the costs of any such defense or participation to be borne by the Fund, unless paid by the Corporation, provided, however, the Trustee shall notify the Named Fiduciary and the Corporation of all such actions and the Corporation may, in its sole discretion, determine against the incurrence of any such legal fees and expenses which may be incurred beyond those necessary to protect the Fund against default or immediate loss and may participate in the selection of and instructions to legal counsel;

(e)  to form corporations and to create trusts, to hold title to any security or other property, to enter into agreements creating partnerships or joint ventures for any purpose or purposes determined by the Trustee to be in the best interests of the Fund;

(f)  to establish and maintain such separate accounts in accordance with the instructions of the Named Fiduciary for the proper administration of the Plans, or as determined to be necessary by the Trustee. Such accounts shall be subject to the general terms of this Agreement, unless the Trustee is notified of a contrary intent by the Named Fiduciary; and

(g)  to generally take all action, whether or not expressly authorized, which the Trustee may deem necessary or desirable for the protection of the Fund.

10.3  <u>Maintenance of Indicia of Ownership</u>. The Named Fiduciary shall have sole responsibility for the decision to maintain the custody of foreign investments abroad. Except as otherwise directed by the Named Fiduciary, custody of foreign investments shall be maintained with foreign subcustodians

223856.4                          -52-                    October 29, 1998

selected by the Trustee. The Trustee shall prudently select and retain subcustodians within each respective jurisdiction. The Trustee shall have no responsibility for losses to the Fund resulting from the action or omissions of any subcustodian appointed by the Trustee unless due to (a) the Trustee's failure to prudently select a subcustodian, (b) the Trustee's imprudent retention of a subcustodian, or (c) the subcustodian's fraud, negligence or willful misconduct in carrying out its duties hereunder. The Trustee shall maintain custody of foreign investments in any jurisdiction where the Trustee has not selected a subcustodian with one or more custodial agents, solely as directed by the Named Fiduciary. The Trustee shall have no responsibility for the financial condition, acts or omissions of any foreign custodial agent holding assets of the Fund at the direction of the Named Fiduciary.

10.4    Third Party Transactions. With respect to third parties, the Trustee, in addition and not by way of limitation, shall have any and all powers necessary to take title or transfer title or take other actions to effectuate the interests of the Trust in property.

10.5    Transfers to Other Employee Pension Benefit Plans.

(a)    Upon the direction of the Corporation, as part of an acquisition or divestiture, the Trustee shall transfer assets and liabilities of the Trust Fund from the Investment Funds specified in the request (after reserving such reasonable amount as it shall deem necessary to provide for any expenses or taxes then chargeable against the Trust Fund) to the trustee of an employee pension benefit plan maintained by another employer ("Transferee Pension Plan"), provided:

(i)    the Transferee Pension Plan is qualified under Section 401(a) of the Code and the trust maintained

by the Transferee Pension Plan to which the assets and liabilities are transferred is exempt from tax under Section 501(a) of the Code;

    (ii)  the transfer complies with Section 414(l) of the Code; and

    (iii)  where required or advisable, the approval of all necessary governmental agencies is obtained.

(b)  Upon the request of the Corporation, the Trustee shall accept the transfer of assets and liabilities from the Trustee of an employee pension benefit plan maintained by another employer ("Transferor Pension Plan") to the Trust Fund, provided:

    (i)  the Transferor Pension Plan is qualified under Section 401(a) of the Code and the trust maintained by the Transferor Pension Plan from which the assets and liabilities are transferred is exempt from tax under Section 501(a) of the Code;

    (ii)  the transfer complies with Section 414(l) of the Code; and

    (iii)  where required or advisable, the approval of all necessary governmental agencies has been obtained.

The amounts so transferred shall be deposited in the Investment Funds specified in the request submitted by the Corporation. For purposes of this Section, the Trustee may rely upon a direction of the Corporation as a representation that the conditions set forth herein have been met.

10.6  <u>Futures</u>.  The Named Fiduciary may direct the Trustee to (i) enter into such agreements as are necessary to implement investment in futures contracts and options on futures

contracts; (ii) transfer initial margin to a futures commission merchant or third-party safekeeping bank pursuant to directions from an Asset Manager; and (iii) pay or demand variation margin in accordance with industry practice to or from such futures commission merchant based on daily marking to market calculations. The Trustee shall have no investment or custodial responsibility with respect to assets transferred to a futures commission merchant or third-party safekeeping bank.

10.7 _Securities Lending_. The Committee may also direct the Trustee as fiduciary to lend securities of the Fund held by the Trustee, other than common stock of the Corporation or Monsanto, by entering into a written agreement with the Trustee. The terms of the agreement between the Committee and the Trustee shall be consistent with Department of Labor Prohibited Transaction Exemption 81-6 or any successor exemption. The written agreement between the Committee and the Trustee shall direct the Trustee to enter into a loan agreement with a borrower or borrowers. The Trustee shall transfer securities to the borrower and invest or hold on behalf of the Fund the collateral received in exchange for the securities. Notwithstanding anything in this agreement to the contrary, the borrower shall have the authority and responsibility to vote securities it has borrowed. The Trustee shall maintain a record of the market value of the loaned securities.

## SECTION 11
## Discretionary Powers

Except as otherwise provided with respect to the investment of assets in any Directed Fund, the Trustee is hereby granted any and all discretionary powers not explicitly or implicitly conferred by this Agreement which it may deem necessary or proper for the protection of the property held hereunder.

## SECTION 12
### Prohibited Transactions

Notwithstanding any provision of this Agreement, either appearing before or after this Section, the Trustee, with respect to a Discretionary Fund and an Asset Manager with respect to a Directed Fund, shall not engage in or cause the Trust to engage in any transaction if it knows or should know that such transaction constitutes a direct or indirect non-exempt prohibited transaction, as defined in Section 406 of ERISA or Section 4975 of the Code.

## SECTION 13
### Expenses, Compensation and Taxes

13.1 <u>Compensation and Expenses of the Trustee</u>. The Trustee shall be entitled to such reasonable compensation for services rendered by it in accordance with the schedule of compensation as agreed upon by the Corporation and the Trustee from time to time. From that fee, the Trustee shall pay the expenses incurred as a result of the execution of its duties hereunder, including but not limited to accounting expenses and routine legal expenses incurred in the normal course of Fund administration, and expenses incurred as a result of disbursements and payments made by the Trustee. To the extent the Trustee engages agents or obtains services from third parties which the Trustee believes to be outside of its fee agreement, it shall notify and consult with the Corporation in advance concerning such fees and shall be paid by the Corporation or from the Fund as agreed to from time to time. Notwithstanding the preceding sentence, to the extent the Trustee incurs nonroutine expenses, including legal fees in connection with the Trust, it shall notify and consult with the Corporation in advance concerning such expenses and shall be paid by the Corporation or from the Fund as agreed to from time to time.

If the Corporation objects to the payment of any such third-party fees or nonroutine expenses, and despite the objection, the Trustee determines such fees or expenses are necessary or advisable, the fees or expenses shall be paid from the Fund unless they are paid by the Corporation in a reasonable time, provided that such fees or expenses are of the type that can lawfully be paid from the Fund.

In the event, the Committee directs the Trustee to lend securities of the Fund, the Trustee shall be paid additional reasonable compensation as agreed to by the Trustee and the Committee.

13.2 <u>Payment from the Fund</u>.    Subject to applicable collective bargaining agreements covering any participant or groups of participants in the Fund, the Named Fiduciary shall direct the Trustee to pay from the Fund's assets all expenses, compensation, taxes and assessments attributable to, incurred by or with respect to, or levied upon or assessed against, the Fund, including, but not limited to, fees and expenses of the Trust and the Asset Managers, mutual fund fees and expenses, fees and expenses of administrative service providers to the Fund or to or for the participants, and, to the extent as determined by the Corporation not paid by the Corporation, the compensation of, and travel and related expenses incurred by, such of the Corporation's employees and contract employees who are engaged in activities for or on behalf of the Fund but only to the extent such compensation, travel and related expenses are attributable to activities performed by such employees and contract employees for or on behalf of the Fund. The Trustee shall also be entitled to receive reasonable compensation from the Fund for its services rendered in connection with any tender or exchange or rights offer. Payment from the Fund's assets under this paragraph shall be made and allocated to participants' accounts according to the method specified in guidelines provided to the recordkeeper. Notwithstanding the foregoing to the contrary, the Corporation

shall pay all fees which are "settlor" fees as specified in the Code or ERISA.

13.3  <u>Payment of Taxes</u>.  The Trustee shall notify the Corporation upon receipt of notice with regard to any proposed tax deficiencies or any tax assessments which it receives on any income or property in the Fund and, unless notified to the contrary by the Corporation within thirty (30) days, shall pay any such assessments.  If the Corporation notifies the Trustee within said period that, in its opinion or in the opinion of counsel, such assessments are invalid or that they should be contested, then the Trustee shall take whatever action is indicated in the notice received from the Corporation or counsel, including contesting the assessment or liquidating any claims.

SECTION 14

Accounts, Books and Records of the Fund

14.1  <u>Recordkeeping Duty of Trustee</u>.  The Trustee shall keep accurate and detailed accounts of all investments, receipts and disbursements and other transactions hereunder, and all accounts, books and records relating thereto shall be open at all reasonable times to inspection and audit by any person designated by the Corporation.

14.2  <u>Periodic Reports</u>.  In addition, within sixty (60) days following the close of each fiscal year of the Fund, or following the close of such other period as may be agreed upon between the Trustee and the Corporation, and within one hundred twenty (120) days, or such other agreed-upon period, unless such period be waived, after the removal or resignation of the Trustee as provided for in this Agreement, the Trustee shall file with the Corporation a certified written report setting forth all investments, receipts and disbursements, and other transactions effected during the fiscal year or other annual period or during the period from the close of the

preceding fiscal year or other preceding period to the date of such removal or resignation, including a description of all securities and investment purchases and sales with the cost or net proceeds of such purchases or sales and showing all cash, securities and other property held at the close of such fiscal year or other period, valued currently, and such other information as may be required of the Trustee under any applicable law.

14.3 <u>Additional Accounting</u>. Except as provided below, neither a Named Fiduciary nor the Corporation shall have the right to demand or be entitled to any further accounting different from the normal accounting rendered by the Trustee. Further, no participant, beneficiary or any other person shall have the right to demand or be entitled to any accounting by the Trustee, other than those to which they may be entitled under the law. A Named Fiduciary or the Corporation shall have the right to inspect the Trustee's books and records relating to the Fund during normal business hours or to designate an accountant to make such inspection, study, and/or audit with all expenses related thereto to be paid by the Corporation.

14.4 <u>Judicial Determination of Accounts</u>. Nothing contained herein will be construed or interpreted to deny the Trustee or the Corporation the right to have the Trustee's account judicially determined.

14.5 <u>Filings by the Corporation</u>. For the purposes of this Section, the Trustee shall conclusively presume that the Corporation has made or caused to be made, or will make or cause to be made, all federal filings as of the date required. Should the Trustee incur any liability by reason of failure of the Corporation to timely file, the Corporation shall fully reimburse the Trustee for any and all obligations, including penalties, interest or expenses, so incurred by the Trustee.

14.6  <u>Determination of Fair Market Value</u>.  Using its daily valuation
procedures and as provided in this Section the Trustee will
arrive at a daily value for the Fund.  The Trustee may rely
conclusively upon the determination of the issuing insurance
company, mutual fund or bank with respect to the fair market
value of the contract with such entity or a mutual fund or a
commingled fund for which a bank other than the Trustee serves
as trustee.  In addition, with respect to the fair market
value of an asset which the Trustee does not value, the
Trustee may rely conclusively upon the Asset Manager's
determination with respect to an asset in a Directed Fund
managed by such Asset Manager.

14.7  <u>Retention of Records</u>.  All records and accounts maintained by
the Trustee with respect to the Fund shall be preserved for
such period as may be required under any applicable law.  Upon
the expiration of any such required retention period, the
Trustee shall have the right to destroy such records and
accounts after first notifying the Corporation in writing of
its intention and to transfer to the Corporation any records
and accounts requested.  The Trustee shall have the right to
preserve all records and accounts in original form, or on
microfilm, magnetic tape, or any other similar process.


## SECTION 15
### Fiduciary Duties of Trustee


The Trustee acknowledges that it assumes the fiduciary duties
established by this Agreement.


## SECTION 16
### Resignation and Removal


The Trustee may be removed with respect to all or a part of the
Fund by the Corporation, upon written notice to the Trustee to that
effect.  The Trustee may resign as Trustee hereunder, upon written
notice to that effect delivered to the Corporation.

16.1    Notice. · Such removal or resignation shall become effective as of the last day of the month which coincides with or next follows the expiration of sixty (60) days from the date of the delivery of such written notice, unless an earlier or later date is agreed upon in writing by the Corporation and the Trustee.

16.2    Successor Appointment.    In the event of such removal or resignation, a successor Trustee, or a separate trustee or trustees, shall be appointed by the Corporation to become Trustee, or a separate trustee or trustees, at the time such removal or resignation becomes effective.    Such successor Trustee, or separate trustee or trustees, shall accept such appointment by an instrument in writing delivered to the Corporation and the Trustee and upon becoming successor Trustee, or separate trustee or trustees, shall be vested with all the rights, powers, duties, privileges and immunities as successor Trustee, or separate trustee or trustees, hereunder as if originally designated as Trustee, or separate trustee or trustees, in this Agreement.

16.3    Transfer Cooperation.    Trustee shall cooperate in good faith with the Corporation and successor, or separate trustee or trustees, to ensure an orderly transition of services and in order to minimize the possibility of loss to the Fund.

16.4    Transfer of Fund to Successor.    Upon such appointment and acceptance, the retiring Trustee shall endorse, transfer, assign, convey and deliver to the successor Trustee, or separate trustee or trustees, all of the funds, securities and other property then held by it in the Fund and the delivery of the Fund to the successor Trustee, or separate trustee or trustees, shall be transferred and paid over to the successor Trustee, or separate trustee or trustees, promptly upon settlement of its accounts, subject to the right of the retiring Trustee to retain any property deemed unsuitable by it for transfer until such time as transfer can be made.

16.5  <u>Retention of Nontransferable Assets</u>.  If the retiring Trustee holds any property unsuitable for transfer, it shall retain such property, and as to such property alone it shall be a co-trustee with the successor Trustee, or separate trustee or trustees, its duties and obligations being solely limited to any such property, and it shall not have fiduciary duties of any nature as to assets transferred.  Should the successor Trustee, or separate trustee or trustees, accept fiduciary responsibility as to such property, the Trustee shall retain only custodian duties as to such property.

16.6  <u>Accounting</u>.  In the event of the removal or resignation of the Trustee hereunder, the Trustee shall file with the Corporation a statement and report of its accounts and proceedings covering the period from its last annual statement and report, and its liability and accountability to anyone with respect to the propriety of its acts and transactions shown in such written statement and report shall be governed by the terms of this Agreement.

<u>SECTION 17</u>

<u>Actions by the Corporation, the Committee or Named Fiduciary</u>

17.1  <u>Action by Corporation</u>.  Any action by the Corporation pursuant to this Agreement shall be evidenced or empowered in writing to the Trustee, and the Trustee shall be entitled to rely on such writing.

Any action of the Corporation (except for actions on behalf of the Corporation by the Committee specifically provided herein) pursuant to any of the provisions of this Agreement shall be evidenced by an instrument in writing signed by the Chairman of the Board, the Vice Chairman of the Board, the President, the Chairman of the Executive Committee, any Executive, Senior, Group or other Vice President of the Corporation, the Secretary, the Treasurer, any Assistant Secretary or Assistant Treasurer thereof, or their delegate, except that in any case

in which this Agreement specifically provides for such action to be taken by another officer of the Corporation, such action shall be evidenced by an instrument in writing signed by such officer. Any resolution adopted by the Board of Directors or other evidence of such authorization shall be certified to the Trustee by the Secretary or an Assistant Secretary of the Corporation under its corporate seal, and the Trustee may rely upon any authorization so certified until revoked or modified by a further action of the Board of Directors similarly certified to the Trustee.

17.2 Delegation. Notwithstanding anything herein to the contrary, the Corporation, the Committee, the EBPC or the Third Party Named Fiduciary may in its sole discretion delegate any of its responsibilities hereunder to any person or entity selected by it. Such a delegation shall be in writing and shall specify the identity of the delegate and the responsibilities delegated to such person. A copy of such written delegation shall be provided to the Trustee and the Trustee may rely upon any such delegation until revoked or modified by further action of the Corporation, the Committee, the EBPC or the Third Party Named Fiduciary, as the case may be, and written notice of such action is provided to the Trustee.

## SECTION 18
### Amendment or Termination

18.1 Amendment or Termination. The Committee shall have the right at any time and from time to time by appropriate action:

(a) to modify or amend in whole or in part any or all of the provisions of this Agreement upon sixty (60) days' prior notice in writing to the Trustee, unless the Trustee agrees to waive such notice; provided, however, that no modification or amendment which affects the rights, duties or responsibilities of the Trustee may be made without the Trustee's consent, or

(b)   to terminate this Agreement upon sixty (60) days' prior notice in writing delivered to the Trustee;

provided, further, that no termination, modification or amendment shall permit any part of the corpus or income of the Fund to be used for or diverted to purposes other than for the exclusive benefit of such participants, retired participants and their beneficiaries, except for the return of Corporation contributions which are allowed by law and permitted under a Plan.

18.2   <u>Distribution of Assets</u>.  Should the Trust form a part of a Plan subject to the jurisdiction of the Pension Benefit Guaranty Corporation ("PBGC") as provided in ERISA, and should the Corporation notify the Trustee of the termination of a Plan, the Trustee shall take no action as to the termination of this Trust with respect to such Plan until it has received notice from the Named Fiduciary or the Corporation that such termination has been approved by the PBGC.  Thereafter, and in the event that this Trust does not form a part of a Plan subject to the jurisdiction of the PBGC, the Trustee shall distribute all cash, securities and other property then constituting the Fund, less any amounts constituting charges and expenses payable from the Fund, on the date or dates specified by the Named Fiduciary to such persons and in such manner as the Named Fiduciary shall direct.  In making such distributions, the Trustee shall be entitled to assume that such distributions are in full compliance with and are not in violation of any applicable law regulating the termination of retirement plans such as the Plan, and the Trustee may require the Corporation or the Named Fiduciary to furnish it with evidence that such distributions do not violate any such applicable law.  The Corporation assumes all liability of any kind whatsoever arising from any distribution made by the Trustee at the direction of the Named Fiduciary as a result of the termination of this Agreement and shall indemnify and save

the Trustee harmless from any attempt to impose any liability on the Trustee with respect to any such distribution.

18.3   <u>Retention of Nontransferable Property</u>.  The Trustee reserves the right to retain such property as is not, in the sole discretion of the Trustee, suitable for distribution at the time of termination of this Agreement and shall hold such property as custodian for those persons or other entities entitled to such property until such time as the Trustee is able to make distribution.    The Trustee's duties and obligations with respect to any property held in accordance with the above shall be purely custodial in nature, and the Trustee shall only be obligated to see to the safekeeping of such property and make a reasonable effort to prevent deterioration or waste of such property prior to its distribution.    Upon complete distribution of all property constituting the Fund, this Agreement shall be deemed terminated.

18.4   <u>Termination in the Absence of Directions from the Corporation</u>.  In the event no direction is provided by the Corporation with respect to the distribution of a Plan's portion of the Fund upon termination of this Agreement, the Trustee shall make such distributions as are specified by the Plan after notice to the Corporation.  In the event the Plan is silent as to the distributions to be made upon termination of the Plan or the terms of the Plan are inconsistent with the then applicable law, the Trustee shall distribute the Fund to participants and their beneficiaries under the Plan in an equitable manner that will not adversely affect the qualified status of the Plan under Section 401(a) of the Code or any other statute of similar import and that will comply with any applicable provisions of ERISA regulating the allocation of assets upon termination of plans such as the Plan.  The Trustee, in such case, reserves the right to seek a judicial and administrative determination as to the proper method of distribution of the Fund upon termination of this Agreement.

18.5    <u>Termination on Corporation Dissolution</u>.    If the Corporation
ceases to exist as a result of liquidation, dissolution or
acquisition in some manner, the Fund shall be distributed as
provided above upon termination of a Plan unless a successor
company elects to continue the Plan and this Agreement.

SECTION 19

Merger or Consolidation

19.1    <u>Merger or Consolidation of Trustee</u>.    Any corporation, or
national association, into which the Trustee may be merged or
with which it may be consolidated, or any corporation, or
national association, resulting from any merger or
consolidation to which the Trustee is a party, or any
corporation, or national association, succeeding to the trust
business of the Trustee, shall become the successor of the
Trustee hereunder, without the execution or filing of any
instrument or the performance of any further act on the part
of the parties hereto.

19.2    <u>Merger or Consolidation of Corporation</u>.    Any corporation into
which the Corporation may be merged or with which it may be
consolidated, or any corporation succeeding to all or a
substantial part of the business interests of the Corporation
may become the Corporation hereunder by expressly adopting and
agreeing to be bound by the terms and conditions of the Plan
and this Agreement and so notifying the Trustee to such effect
by submission to the Trustee of an appropriate written
document.

19.3    <u>Merger or Consolidation of Plan</u>.    In the event that the Named
Fiduciary or the Corporation authorizes and directs that the
assets of another plan be merged or consolidated with or
transferred to a Plan participating in this Trust, the Trustee
shall take no action with regard to such merger, consolidation
or transfer until it has been notified in writing that each
participant covered under the Plan, the assets of which are to

be merged, consolidated or transferred, will immediately after
such merger, consolidation or transfer be entitled to a
benefit either equal to or greater than the benefit to which
he would have been entitled had the Plan been terminated.

SECTION 20

Indemnification

20.1    Indemnity.  The Corporation shall fully indemnify and hold
harmless the Trustee from any liability, loss and expense,
including reasonable legal fees and expenses, incident to:
(a) any act by the Trustee in reliance upon or compliance with
instructions issued by a Named Fiduciary, the Corporation, any
Investment Manager (or any properly approved delegate of any
of the above); or (b) failure to act in any circumstances
where another person or entity has responsibility to direct
the Trustee, provided, however, the Trustee shall not be
indemnified as provided above where the Trustee by its action
or failure to act knowingly participates in or knowingly
undertakes to conceal an act or omission, knowing such act or
omission is a breach of fiduciary responsibility by such other
person.  For purposes of the preceding sentence, processing of
investment trades, making payments or maintaining reports
shall not constitute knowledge.  In the event the Trust Fund
or the Corporation incurs any liability, loss, claim, suit or
expense arising directly from a breach by the Trustee of
responsibilities specifically allocated to it by the terms of
this agreement or the Trustee's negligent or willful
misconduct in performing such responsibilities, the Trustee
shall indemnify and hold the Trust Fund or the Corporation
harmless from and against such liability, loss, claim, suit or
expense.

The provisions of this Section shall not govern
indemnification of actions or failure to act with respect to
the Solutia Stock Fund or the Monsanto Stock Fund.  Such
indemnification shall be exclusively governed by the

provisions of Section 20.2 below.  This Section shall survive
the termination of this agreement.

20.2  <u>Solutia Stock Fund and Monsanto Stock Fund Indemnity</u>.  Except
for the short-term investment of cash, the Corporation has
limited investments in the Solutia Stock Fund to stock or
rights of the Corporation and in the Monsanto Stock Fund to
stock or rights of Monsanto.  The Trustee shall not be liable
for the purchase, voting, retention, tender (or not tendering
pursuant to Section 6.2 or 6.5) or sale of stock or rights of
either the Corporation or Monsanto or for action or inaction
pursuant to direction by the Named Fiduciary as provided in
Section 9.3, and the Corporation agrees to indemnify and hold
harmless the Trustee from any liability, loss and expense,
including reasonable legal fees and expenses, which the
Trustee may sustain by reason of purchase, voting, retention,
tender (or not tendering pursuant to Section 6.2 or 6.5) or
sale of stock or rights of either the Corporation or Monsanto
or for action or inaction pursuant to direction by the Named
Fiduciary as provided in Section 9.3, except that the Trustee
shall not be indemnified and held harmless if:    (a) it is
negligent in carrying out its trade execution responsibilities
with respect to stock of either the Corporation or Monsanto,
or (b) by its action or failure to act, it willfully breaches
its duties under this agreement with respect to the Solutia
Stock Fund and the Monsanto Stock Fund, acts in bad faith or
commits willful misconduct or gross negligence.  The Trustee
shall indemnify and hold the Trust Fund or Corporation
harmless in the event that the Trust Fund or the Corporation
incurs any liability, loss, claim, suit or expense arising
directly from (a) the Trustee's negligence in carrying out its
trade execution responsibilities with respect to stock of
either the Corporation or Monsanto or (b) the Trustee's
willful breach of its duties under this agreement respect to
the Solutia Stock Fund and the Monsanto Stock Fund, or its
willful misconduct, gross negligence or bad faith in the

performance of its obligations under this agreement respect to the Solutia Stock Fund and the Monsanto Stock Fund.

This Section shall survive the termination of this agreement and be in addition to Section 21.1.

20.3  Defense of Action.  Promptly after receipt by the Trustee of notice of its involvement in any action, proceeding or investigation (an "Action"), the Corporation shall be notified in writing of such Action if a claim of indemnification is to be made against the Corporation with respect thereto.  The Corporation shall be entitled to participate in or assume the defense of any such Action, but any settlement of an Action shall require consent of the Trustee, which consent will not be unreasonably withheld.  If the Corporation elects to assume the defense, the Trustee shall have the right to participate in such defense and to retain its own counsel, but the Corporation shall not be liable for any legal fees or legal expenses subsequently incurred by the Trustee in connection with the defense thereof unless (a) the Corporation has agreed to pay such fees and expenses; (b) the Trustee has reasonably concluded that defenses are available to it that are not available to the Corporation, justifying retention of separate counsel; (c) unless assumption of the defense by the Corporation or use of counsel chosen by the Corporation would result in a conflict of interest between the Corporation and the Trustee or for such counsel; or (d) the Corporation shall not have employed counsel reasonably satisfactory to the Trustee within a reasonable time after the commencement of the Action.  This provision shall survive the termination of this agreement.

20.4  Reliance Upon Counsel.  The Trustee may consult with legal counsel with respect to its responsibilities under this Agreement and may reasonably rely upon written advice of such legal counsel.  To the extent legal advice is sought by the Corporation or a fiduciary other than the Trustee concerning

responsibilities that are primarily the responsibility of the Corporation or such other fiduciary, the Trustee shall be fully protected in acting or refraining from acting based on such advice.

20.5 <u>Year 2000</u>.   The Trustee represents and warrants that it is using, and will continue to use, commercially reasonable efforts to cause its computer systems, to the extent they operate on or use logic or processes pertaining to date/time data, to be Year 2000 Compliant and believesthat such systems will be Year 2000 Complaint in a timely manner.  For purposes of this paragraph, "Year 2000 Compliant" means capable of accurately, correctly and consistently processing date/time data (ncluding, but not limited to, accepting, calculating, comparing, sorting, sequencing and returning) prior to, during and after the calendar year 2000 A.D., including leap year calculations and, when used in combination with other Year 2000 Compliant information technology, will accurately accept, exchange and process date/time data without special processing, special devices or technology or extra costs to the Company without error.  The Trustee further agrees that no Year 2000 non-compliance that delays, hinders or otherwise interferes with its performance under this Agreement shall be deemed an event of force majeure or otherwise operate to excuse the Trustee from its obligations thereunder.

SECTION 21

<u>Nonalienation of Trust</u>

21.1   <u>Trust not Subject to Assignment or Alienation</u>.   Except as heretofore provided, no company, participant or beneficiary of the Plans to which the Trust applies shall have any interest in or right to the assets of this Trust, and to the full extent of all applicable laws, the assets of this Trust shall not be subject to any form of attachment, garnishment, sequestration or other actions of collection afforded creditors of the Corporation, participants or beneficiaries.

The Trustee shall not recognize any assignment or alienation of benefits unless, and then only to the extent, written notices are received from the Committee.

21.2 _Plans' Interest in Trust not Assignable_. Except to the extent required by applicable law, the equity or interest of any participating Plan in the Fund shall not be assignable.

## SECTION 22
## Governing Law

To the extent not superseded by ERISA, this Agreement shall be construed and enforced, to the extent possible, according to the laws of the State of Illinois, and all provisions hereof shall be administered according to the laws of said State and any federal laws, regulations or rules which may from time to time be applicable; provided, however, that the provisions of Section 6 of the Trust Agreement and any other provisions relating to voting and tendering of common stock of either the Corporation or Monsanto or the distribution, sale or exercise of Rights or Monsanto Rights shall be construed and enforced, to the extent possible, according to the laws of the State of Delaware and any federal laws, regulations or rules which may from time to time be applicable. In case of any conflict between the provisions of the Plan and this Agreement, the provisions of this Agreement shall govern.

## SECTION 23
## Parties to Court Proceedings

To the extent permitted by law, only the Trustee and the Corporation shall be necessary parties in any application to the courts for an interpretation of this Agreement or for an accounting by the Trustee, and no participant under any Plan or other person having an interest in the Fund shall be entitled to any notice or service of process. Any final judgment entered in such an action or proceeding, to the extent permitted by law, shall be conclusive upon all persons claiming under this Agreement or any Plan.

SECTION 24
Subsidiaries and Affiliates

24.1   <u>Adoption of Trust by Subsidiaries and Affiliates</u>.   Any
       Corporation which is a subsidiary of the Corporation or which
       may be affiliated with the Corporation in any way, and which
       is now or may hereafter be organized under the laws of the
       United States of America, or of any State or Territory
       thereof, with the approval of the Corporation, by resolution
       of its own Board of Directors, may adopt this Agreement, if
       such subsidiary or affiliate shall have adopted one or more
       Plans qualified under Section 401(a) of the Code, as amended.
       If any such subsidiary or affiliate so adopts this Agreement,
       this Agreement shall establish the trust for such Plans as are
       specified by such subsidiary or affiliate, and shall
       constitute a continuation, amendment and restatement of any
       prior trust for any such Plans.   Furthermore, the assets of
       any such Plans may be commingled with the assets of other
       Plans held in the Fund pursuant to Section 2.6 hereof.
       However, the assets of any Plan so held in the Fund shall not
       be subject to any claim arising under any other Plan, the
       assets of which are commingled therewith by the Trustee for
       investment purposes, and under no circumstances shall any of
       the assets of one Plan be available to provide the benefits
       under another Plan.   A separate trust shall be deemed to have
       been created with respect to each Plan of such subsidiary or
       affiliate.

24.2   <u>Segregation from Further Participation</u>.   Any subsidiary or
       affiliate of the Corporation, at any time, with the consent of
       the Corporation, may segregate a Plan's trust from further
       participation in this Agreement.   In such event, such
       subsidiary or affiliate shall file with the Trustee a document
       evidencing the segregation of the Plan from the Fund and its
       continuance of a separate trust in accordance with the
       provisions of this Agreement as though such subsidiary or
       affiliate were the sole creator thereof.   In such event, the

Trustee shall deliver to itself as Trustee of such separate trust such share of the Fund as may be determined by the Trustee to constitute the appropriate share of the Fund, as confirmed by the Corporation, then held in respect of the participating employees of such subsidiary or affiliate. Such subsidiary or affiliate may exercise thereafter, in respect of such separate trust, all of the rights and powers reserved to the Corporation under the provisions of this Agreement.  The equitable share of any Plan participating in the Fund shall be segregated immediately and withdrawn from the Fund if the Plan ceases to be qualified under Section 401(a) of the Code, and the Corporation shall promptly notify the Trustee of any determination by the Internal Revenue Service that any such Plan has ceased to be so qualified.

24.3    Segregation of Assets Allocable to Specific Employees.  The Committee, at any time, may direct the Trustee to segregate and withdraw the equitable share of any such Plan, or that portion of such equitable share as may be certified to the Trustee by the Committee as allocable to any specified group or groups of employees or beneficiaries.  Whenever segregation is required, the Trustee shall withdraw from the Fund such assets as it shall deem, in its absolute discretion, to be equal in value to the equitable share to be segregated.  Such withdrawal from the Fund shall be in cash or in any property held in such Fund, or in a combination of both, in the absolute discretion of the Trustee.  The Trustee shall hold thereafter the assets so withdrawn as a separate trust fund in accordance with the provisions of this Agreement, which shall be construed in respect of such assets, as if the employer maintaining such Plan (determined without regard to whether any subsidiaries or affiliates of such employer have joined in such Plan) has been named as the Corporation hereunder.  Such segregation shall not preclude later readmission to the Fund.

## SECTION 25
## Authorities

25.1   Subsidiary or Affiliate.  Any action required or permitted to be taken under this Agreement by a subsidiary or affiliate of the Corporation shall be given by the board of directors thereof in the manner described in Section 17.1.

25.2   Named Fiduciary and Committee.  The Corporation shall furnish the Trustee from time to time with a list of the names and signatures of all Persons (other than the Corporation) authorized to act as the Corporation designee under Section 1.1, as a Named Fiduciary, as members of the Committee, or in any other manner authorized to issue orders, notices, requests, instructions and objections to the Trustee pursuant to the provisions of this Agreement.  Any such list shall be certified by the Secretary or an Assistant Secretary of the Corporation (or by the Secretary or an Assistant Secretary of any subsidiary or affiliate of the Corporation with respect to members of the Committee of the Participating Plans), and may be relied upon for accuracy and completeness by the Trustee. Each such Person thereupon shall furnish the Trustee with a list of the names and signatures of those individuals who are authorized, jointly or severally, to act for such Person hereunder, and the Trustee shall be fully protected in acting upon any notices or directions received from any of them or any person the Trustee reasonably believes to be acting on behalf of an Investment Manager.

25.3   Form of Communications.  Any agreement between the Corporation and any Person (including an Investment Manager), or any other provision of this Agreement to the contrary notwithstanding, all notices, directions and other communications to the Trustee shall be in writing or in such other form, including transmission by electronic means through the facilities of third parties or otherwise, specifically agreed to in writing

by the Trustee, and the Trustee shall be fully protected in acting in accordance therewith.

Any notice, direction or other communication between the Trustee and the Corporation required or permitted to be given under this Agreement shall be sufficiently given if delivered in person or when deposited in the United States mail, postage prepaid (by certified or registered mail in case of any such notice), or by any other means specifically agreed to by the parties (including electronic transmission), as follows:

If to the Corporation, delivered or addressed to:

        Solutia Inc.
        10300 Olive Boulevard
        P.O. Box 66760
        St. Louis, Missouri 63166-6760
        Attention:  Treasurer

If to the Trustee, delivered or addressed to:

        The Northern Trust Company
        50 South LaSalle St.
        Chicago, Illinois  60675
        Attention:  Ann M. Chamberlain
                    or current Solutia Administrator

25.4    Continuation of Authority.  The Trustee shall have the right to assume, in the absence of written notice to the contrary, that no event constituting a change in the Named Fiduciary or membership of the Committee or terminating the authority of any Person, including any Investment Manager, has occurred.

25.5    No Obligation to Act on Unsatisfactory Notice.  The Trustee shall incur no liability under this Agreement for any failure to act pursuant to any notice, direction or any other communication from any Asset Manager, the Corporation, the Committee, or any other Person, or the designee of any of them, unless and until it shall have received instructions in form satisfactory to it.

223856.4                                          October 29, 1998

## SECTION 26
### Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument and may be sufficiently evidenced by any one counterpart.

WITNESS the due execution hereof on the date first above written:

ATTEST:                                  SOLUTIA INC.

D. A. Winchell _____    By _R L Bishop_____

ATTEST:                                  THE NORTHERN TRUST COMPANY

John H St James _____          By _Arnold A. Chamberlin_____
_Asst Secretary_                           Vice President

                                   Examined As To
                                   Form _J mene_____

223856.4                          -76-                    October 29, 1998

STATE OF MISSOURI        )
                         )  SS
COUNTY OF ST. LOUIS      )


On this _____30th_____ day of _Octoder_____, 19 98 , before me
personally came _Rodney L. Bishop_____, to me known, who being
by me duly sworn, did depose and say that he is _Vice President & Treasurer_
of Solutia Inc., a Delaware corporation described in and which
executed the foregoing instrument, that he knows the seal of said
corporation, that the seal affixed to said instrument is such
corporate seal, that it was so affixed by order of the Board of
Directors of said corporation, and that he signed his name thereto
by like order.

                                        _Patricia A. Facea_____
                                        Notary Public
                                        PATRICIA A FACEA
                                        NOTARY PUBLIC STATE OF MISSOURI
                                        ST LOUIS COUNTY
[NOTARIAL SEAL]                         MY COMMISSION EXP FEB. 21,2001



STATE OF ILLINOIS     )
                      )  SS
COUNTY OF COOK        )


On this 30th _____ day of _October_____, 199 8 , before me
personally came _Ann H. Chamberlain_, to me known, who, being by
me duly sworn, did depose and say that he is a Vice President of
The Northern Trust Company, an Illinois corporation described in
and which executed the foregoing instrument, that he knows the seal
of said corporation, that the seal affixed to said instrument is
such corporate seal, that it was so affixed by order of the Board
of Directors of said corporation, and that he signed his name
thereto by like order.

                                        _Julia J. Adams_____
                                        Notary Public


[NOTARIAL SEAL]

OFFICIAL SEAL
JULIA I ADAMS
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JAN. 27,1999