UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

ROGER REIFF, individually and on             :
behalf of all others similarly situated,     :
                                             :
            Plaintiff,                       :
                                             :      07 Civ. 6011 (LAP)
            - against -                       :
                                             :      (ECF Matter)
FRANK A. METZ, JR., SHEILA FELDMAN,          :
HELEN L. NELLING, SUSAN E. BEVINGTON,        :
NANCY STEMME, CHRISTOPHER N. AST,            :      ORAL ARGUMENT REQUESTED
EMPLOYEE BENEFITS PLAN COMMITTEE,            :
PENSION AND SAVINGS FUND COMMITTEE,          :
JOHN HUNTER, ROBERT CLAUSEN, ROBERT          :
POTTER, MICHAEL E. MILLER, PAUL H.           :
HATFIELD, J. PATRICK MULCAHY, SALLY G.       :
NARODICK, PAUL DONOVAN, ROBERT H.            :
JENKINS, WILLIAM D. RUCKELSHAUS, JOHN        :
B. SLAUGHTER, PHILIP R. LOCHNER, JR.,        :
ROBERT T. BLAKELY,  NORTHERN TRUST           :
COMPANY, and JOHN DOES 1-100,                :
                                             :
            Defendants.                      :
                                             :
                                             :
                                             :
——————————————————————— x

## MEMORANDUM OF LAW OF DEFENDANT THE NORTHERN TRUST COMPANY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

**Table of Contents**

Page

Table of Authorities ........................................................................................................... ii

Preliminary Statement ........................................................................................................ 1

Statement of Facts .............................................................................................................. 4

    A.  The Parties .................................................................................................. 5

    B.  The Plan and the Solutia Stock Fund ...................................................... 6

    C.  The Trust Agreement ................................................................................ 7

    D.  Plaintiff's Allegations Concerning Northern Trust ................................. 8

Argument ........................................................................................................................... 10

I.     COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFF'S
      ALLEGATIONS ARE INSUFFICIENT TO STATE A BREACH OF
      FIDUCIARY DUTY CLAIM AGAINST NORTHERN TRUST ................................... 11

    A.  Northern Trust was a "directed trustee" without discretionary authority or
        control over the Solutia Stock Fund ........................................................ 11

    B.  The Complaint fails to allege any "limited" or "rare" circumstances that
        could have imposed upon Northern Trust a duty of inquiry and therefore
        does not state a claim ................................................................................ 15

II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST NORTHERN
      TRUST FOR CO-FIDUCIARY LIABILITY .................................................................. 27

III.   COUNTS II AND IV ARE ALSO DEFECTIVE BECAUSE THEY FAIL TO
      ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT NORTHERN TRUST
      CAUSED PLAINTIFF'S LOSSES ................................................................................. 30

IV.   PLAINTIFF'S CLAIMS ARE TIME-BARRED ............................................................ 33

V.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ........................... 35

Conclusion ......................................................................................................................... 36

**Table of Authorities**

## CASES

*ATSI Committee, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................................10

*Ambris v. Bank of New York*,
    No. 96 Civ. 0061 LAP, 1998 WL 702289 (S.D.N.Y. Oct. 7, 1998).................35

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974)......................................................................................34

*Ballone v. Eastman Kodak Co.*,
    109 F.3d 117 (2d Cir. 1997)..........................................................................24

*Beauchem v. Rockford Prods. Corp.*,
    No. 01 C 50134, 2003 WL 1562561 (N.D. Ill. Mar. 24, 2003) ........................19

*Beddall v. State Street Bank & Trust Co.*,
    137 F.3d 12 (1st Cir. 1998)...................................................................3, 5, 14

*Bell Atl. Corp. v. Twombly*,
    ___ U.S. ___, 127 S. Ct. 1955 (2007)..............................................................10

*In re Calpine Corp. ERISA Litig.*,
    2005 WL 1431506 (N.D. Cal. Mar. 31, 2005)..................................................25

*Caputo v. Pfizer, Inc.*,
    267 F.3d 181 (2d Cir. 2001)..........................................................................33

*In re Cardinal Health, Inc. ERISA Litig.*,
    424 F. Supp. 2d 1002 (S.D. Ohio 2006) ...................................15, 16, 18, 22, 23

*Conley v. Gibson*,
    355 U.S. 41 (1957)......................................................................................10

*DiFelice v. US Airways, Inc.*,
    397 F. Supp. 2d 735 (E.D. Va. 2005) ...........................12, 13, 15, 16, 18, 24, 28

*Donovan v. Cunningham*,
    716 F.2d 1455 (5th Cir. 1983) .......................................................................29

*Downes v. JP Morgan Chase & Co.*,
    No. 03 Civ. 8991 (GEL), 2004 WL 1277991 (S.D.N.Y. June 8, 2004) ............34

## Table of Authorities
### (continued)

Page

*Gladman v. Mount Vernon Hosp.*,
No. 02-CV-7082 (DAB), 2004 WL 848225 (S.D.N.Y. 2004)..........................................33

*Grindstaff v. Green*,
133 F.3d 416 (6th Cir. 1998) ............................................................................................13

*Haber v. Brown*,
774 F. Supp. 877 (S.D.N.Y. 1991)..............................................................................10, 29

*Harris Trust and Savings Bank v. Salomon Brothers, Inc.*,
813 F. Supp. 1340 (N.D. Ill. 1992) ..................................................................................29

*Herman v. NationsBank Tr. Co.*,
126 F.3d 1354 (11th Cir. 1997) ..................................................................................13, 19

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995).........................................................................................10, 32

*Keach v. U.S. Trust Co.*,
240 F. Supp. 2d 840 (C.D. Ill. 2002) ...............................................................................29

*Kling v. Fidelity Mgmt. Trust Co.*,
270 F. Supp. 2d 121 (D. Mass. 2003) .................................................................................5

*Kling v. Fidelity Mgmt. Trust Co.*,
323 F. Supp. 2d 132 (D. Mass. 2004) ...............................................................................32

*Koch v. Dwyer*,
No. 98 Civ. 5519 (RPP), 1999 WL 528181 (S.D.N.Y. July 22, 1999).............................33

*Kuper v. Iovenko*,
66 F.3d 1447 (6th Cir. 1995) ............................................................................................20

*Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors*,
173 F.3d 313 (5th Cir. 1999) ............................................................................................15

*Lalonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004)...........................................................................................2-3, 20

*Leeds v. Meltz*,
85 F.3d 51, 53 (2d Cir. 1996)............................................................................................10

KL3 2611213.7

**Table of Authorities**
(continued)

Page

*Maniace v. Commerce Bank*,
    40 F.3d 264 (8th Cir. 1994) ........................................................................13

*In re McKesson HBOC Inc. ERISA Litig.*,
    2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ........................................29

*Mertens v. Hewitt Associates*,
    508 U.S. 248 (1993) .....................................................................................12

*Moench v. Robertson*,
    62 F.3d 553 (3d Cir. 1995) ..........................................................................20

*Munno v. Town of Orangetown*,
    391 F. Supp. 2d 263 (S.D.N.Y. 2005) .........................................................31

*O'Toole v. Arlington Trust Co.*,
    681 F.2d 94 (1st Cir. 1982) ..........................................................................19

*In re Parmalat Sec. Litig.*,
    __ F. Supp. 2d __, 2007 WL 2263893 (S.D.N.Y. 2007) ............................10

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) .....................................................................................12

*In re Polaroid ERISA Litig.*,
    362 F. Supp. 2d 461 (S.D.N.Y. 2005) .........................................................25

*In re RCN Litig.*,
    No. 04-5068 (SRC), 2006 U.S. Dist. LEXIS 12929,
    (D.N.J. March 21, 2006) ........................................ 13, 15, 16-17, 18, 26, 27, 29

*Richardson v. U.S. News & World Report*,
    623 F. Supp. 350 (D.D.C. 1985) .................................................................19

*Robbins v. First American Bank of Virginia*,
    514 F. Supp. 1183 (N.D. Ill. 1981) .............................................................19

*Rothenberg v. Lincoln Farm Camp, Inc.*,
    755 F.2d 1017 (2nd Cir. 1985) ....................................................................14

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000) .............................................................................5

KL3 2611213.7

**Table of Authorities**
(continued)

Page

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*,
    75 F.3d 801 (2d Cir. 1996)..................................................................................5

*Schneider v. Feinberg*, 345 F.3d 135 (2d Cir. 2003) ..............................................16

*In re Sears, Roebuck & Co. ERISA Litig.*,
    2004 WL 407007 (N.D. Ill. Mar. 3, 2004).......................................................29

*Silverman v. Mutual Benefit Life Ins. Co.*,
    138 F.3d 98 (2d Cir. 1998)....................................................................3, 30, 33

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)..........................................................................................16

*Sommers Drug Stores Co. Employee Profit Sharing Tr. v. Corrigan Enter. Inc.*,
    793 F.2d 1456 (5th Cir. 1986) ..........................................................................12

*In re Sprint Corp. ERISA Litig.*,
    388 F. Supp. 2d 1207 (D. Kan. May 27, 2004)............................................5, 29

*Summers v. State Street Bank*,
    453 F.3d 404 (2006).....................................................................................17, 18

*United States v. Mead Corp.*,
    533 U.S. 218 (2001)..........................................................................................16

*Weiner v. Klais & Co.*,
    108 F.3d 86 (6th Cir. 1997) ...............................................................................5

*In re WorldCom, Inc. ERISA Litig.*,
    263 F. Supp. 2d 745 (S.D.N.Y. 2003).........................................................18, 25

*In re WorldCom, Inc. ERISA Litig.*,
    354 F. Supp. 2d 423 (S.D.N.Y. 2005)..................2, 16, 18, 19, 20, 22, 25, 28, 29, 30,fs 32

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ..........................................................................13

**DOCKETED CASES**

*Dickerson v. Feldman*,
    No. 1:04-CIV-07935 (LAP).................................................................4, 31, 34, 35

**Table of Authorities**
<u>(continued)</u>

<u>Page</u>

**STATUTES**

29 U.S.C. § 1002(21) ...................................................................................................12

29 U.S.C. § 1002(7) .....................................................................................................17

29 U.S.C. § 1103(a)(1) ............................................................................................11, 12

29 U.S.C. § 1104(c)(1)(A)(ii) .....................................................................................30

29 U.S.C. § 1105(a) .....................................................................................................29

29 U.S.C. § 1108(c) .....................................................................................................25

29 U.S.C. § 1109(a) .....................................................................................................30

29 U.S.C. § 1113 .........................................................................................................33

29 U.S.C. § 1113(2) ...............................................................................................4, 33

Fed. R. Civ. P. 12(b)(6)................................................................................................1

**OTHER AUTHORITY**

U.S. Dep't of Labor, "In the Context of Publicly Traded Securities, What Are the
    Fiduciary Responsibilities of a Directed Trustee?", Field Assistance Bulletin
    No. 2004-03 (Dec. 17, 2004) ................................................................ *passim*

- vi -

**MEMORANDUM OF LAW OF DEFENDANT THE NORTHERN
TRUST COMPANY IN SUPPORT OF ITS MOTION TO DISMISS THE
COMPLAINT FOR FAILURE TO STATE A CLAIM**

Defendant The Northern Trust Company ("Northern Trust") respectfully submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Complaint for failure to state a claim.

**Preliminary Statement**

Plaintiff's Complaint resembles a securities litigation "stock drop" complaint. The central allegations are that the value of Solutia, Inc. ("Solutia") stock was inflated, and then fell, because Solutia (and its predecessor the Monsanto Company ("Monsanto")) concealed the extent of Solutia's legacy liabilities and a Solutia subsidiary participated in an illegal price-fixing conspiracy. The twist is that plaintiff and the class he seeks to represent are investors in the company stock fund component (the "Solutia Stock Fund") of Solutia's Savings and Investment Plan (the "Plan").

The Complaint acknowledges that Northern Trust – an institution unrelated to Solutia that had a narrow contractually-defined business relationship with the Plan – had no role in, or even any knowledge of, the supposed web of deception that brought about Solutia's decline. Nevertheless, in an obvious effort to find "deep pockets" now that Solutia is in bankruptcy, Count II of the Complaint alleges that Northern Trust breached its duty to the Plan by failing to act as a "prudent trustee." Count IV seeks to hold Northern Trust liable for the breaches of its "co-fiduciaries."

We show in Point I that Count II fails to state a claim against Northern Trust. The Complaint concedes that Northern Trust lacked "access to material inside information," and disclaims any attempt to impose liability on Northern Trust for any events prior to January 2,

2002.  (*See* Compl. ¶¶ 224, 241, 269).  However, plaintiff alleges that Northern Trust violated its supposed fiduciary duties under ERISA after January 2, 2002 when it continued to follow the directions of the Plan fiduciaries with respect to the Solutia Stock Fund notwithstanding a newspaper article, and a subsequent decline in the price of Solutia stock, that supposedly put Northern Trust on notice that Solutia stock was not a prudent retirement investment.  Plaintiff is wrong under the plain language of the Trust Agreement and as a matter of law.[1]

Under the facts alleged in the Complaint, the Plan documents and the Trust Agreement, Northern Trust was bound to continue to follow the directions of the Plan fiduciaries, and did not have discretion to make its own investment decisions.  ERISA, Congress, the Department of Labor and the courts have specifically recognized the limited role of a "directed trustee," as Northern Trust was here, and its obligation to carry out the directives of others who are fiduciaries.  The Department of Labor's Employee Benefits Security Administration, in a Field Assistance Bulletin, made clear its view that the kind of publicly available information alleged in the Complaint does not suffice to impose on a directed trustee an obligation to question the prudence of an investment in employer securities.  Judge Cote recently interpreted this standard, and ruled that only "reliable public information that calls into *serious question* the company's *short-term viability* as a going concern" will create a duty of inquiry on the part of a directed trustee.  *In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 449 (S.D.N.Y. 2005) (emphases added).  Several other district courts also have adopted this interpretation.  Nor does a drop in the price of a stock create a duty of inquiry.  A plaintiff must allege *more* than that a fiduciary learned that the stock price was declining "as events were unfolding".  *Lalonde* v.

---

[1]  Plaintiff himself implicitly acknowledges later in his Complaint that the supposed "January 2, 2002" watershed is nothing of the kind, and alleges that Northern Trust's duty to inquire arose "certainly by July 12, 2002." (Compl. ¶¶ 242, 294).  As discussed below, the allegations with respect to July 12, 2002 are no more sufficient than those relating to January 2, 2002.

*Textron*, *Inc.*, 369 F.3d 1, 7 (1st Cir. 2004); *see also* U.S. Dep't of Labor, "In the Context of Publicly Traded Securities, What Are the Fiduciary Responsibilities of a Directed Trustee?," Field Assistance Bulletin No. 2004-03, at 5 (Dec. 17, 2004).[2]

Plaintiff does not allege any facts in the Complaint that even come close to meeting the required standard to impose a duty of inquiry on Northern Trust. Rather, he blatantly seeks to convert the directed trustee into an insurer of the performance of company stock. For good reason, the law does not permit that result. In the words of the First Circuit, it would "create a climate" in which institutions "routinely increase their fees to account for the risk that fiduciary liability might attach to nonfiduciary work." *Beddall* v. *State Street Bank & Trust Co.*, 137 F.3d 12, 21 (1st Cir. 1998) (citation omitted). ERISA's *limits* on fiduciary liability "ensure that solvent companies remain willing to undertake . . . responsibilities with respect to ERISA plans." *Silverman* v. *Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 106 (2d Cir. 1998).

We show in Point II below that plaintiff's Count IV allegations of co-fiduciary liability against Northern Trust also fail to state a claim. Plaintiff offers nothing more than a paraphrase of the statutory language, which does not provide a basis to impose liability upon Northern Trust for conduct purportedly engaged in by the other alleged fiduciaries named as defendants in this case.

In Point III, we establish that Counts II and IV must be dismissed for the independent reason that they fail to allege facts that would establish that the losses plaintiff supposedly suffered were caused by Northern Trust. According to the Complaint and proof of claim documents filed by plaintiff in the Solutia bankruptcy, plaintiff was a fully vested employee who

---

[2] For the Court's convenience, a copy of the Field Assistance Bulletin is attached as Appendix A to this memorandum. The Field Assistance Bulletin is also available at the Department of Labor's website at http://www.dol.gov/ebsa/regs/fab_2004-3.html.

has been entirely free to divest himself of any holdings in the Solutia Stock Fund since 1980, three years after he began employment at Solutia.  Since the Complaint alleges that Northern Trust did not breach its fiduciary duties until *January 2, 2002*, Northern Trust's supposed breaches *could not* have caused plaintiff's alleged losses.

Point IV establishes that plaintiff's claims against Northern Trust are also time-barred. 29 U.S.C. § 1113(2) requires a plaintiff to bring a breach of fiduciary duty claim under ERISA within three years after the date on which he had knowledge of the facts constituting the breach. Plaintiff has not done so.  As a present and long time employee of Solutia, he plainly had knowledge of the events concerning Solutia upon which his allegations against Northern Trust are exclusively premised since the Complaint itself contends those events were a matter of public knowledge.  Even taking into account any potential tolling resulting from the pendency of the *Dickerson v. Feldman* case, plaintiff's time to commence his action expired well before the commencement of this lawsuit.

Finally, Point V shows that the Complaint should be dismissed with prejudice.  The Complaint is identical save for two paragraphs to the *Dickerson* Second Amended Complaint filed by plaintiff's counsel.  Counsel have already amended that complaint twice, and filed this Complaint with full knowledge of the defects in the *Dickerson* complaint that were pointed out in Northern Trust's very similar motion to dismiss in that action.

## Statement of Facts

The following sets forth the allegations of the Complaint except where they are contradicted by the Summary Plan Description dated October 18, 2002 (the "SPD"), the Solutia Inc. Defined Contribution and Employee Stock Ownership Trust Agreement as amended and

restated effective November 1, 1998 (the "Trust Agreement") and the various publicly available documents cited in the Complaint.[3]

## A.    **The Parties**

Plaintiff alleges that he is a Solutia employee and a "participant" in the Plan within the meaning of ERISA. (Compl. ¶ 13).  Defendants are Solutia officers and directors, Solutia committees, Solutia plan administrators, and one entity that is *not* affiliated with Solutia -- Northern Trust.  (Compl. ¶¶ 14-43).  Northern Trust was the Trustee of the Plan.  (Compl. ¶ 99).  Plaintiff purports to bring his action on behalf of "[a]ll participants and beneficiaries" of the Plan "for whose benefit the Plan purchased or held shares of Solutia common stock between September 1, 1997 until December 15, 2003." (Compl. ¶ 279).

---

[3] On a motion to dismiss, the Court may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing suit." *Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).  Here, the complaint quotes extensively from Solutia's SEC filings, various media and analyst reports and the SPD.  *See, e.g.*, Compl. ¶¶ 51, 214, 215, 220, 225.  The Court may therefore consider those documents in their entirety.  *See San Leandro Emergency Med. Group Profit Sharing Plan* v. *Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996) (on Rule 12(b)(6) motion, court can consider full text of document partially quoted in complaint).  Although the complaint does not directly quote the Trust Agreement, plaintiff also plainly relied on that agreement (which was furnished to his counsel) in fashioning his claims.  *See, e.g.,* Compl. ¶ 283 (detailing plaintiff's review of Plan documents, including the Trust Agreement).  The courts have recognized that trust agreements play a central role under ERISA's statutory framework, and are thus an indispensable element of suits alleging breaches of fiduciary duty by ERISA trustees.  *See Kling* v. *Fidelity Mgmt. Trust Co.*, 270 F. Supp. 2d 121, 128 (D. Mass. 2003) ("Although [plaintiff's] complaint does not refer [to plan documents including the Trust Agreement] except in the broadest of terms, they are nevertheless central to his claim because . . . ERISA's provisions relating to fiduciary duty make explicit and repeated reference to plan documents").  *See also, e.g., Beddall*, 137 F.3d at 16-17 (considering trust agreement that had not been appended to the complaint in affirming dismissal of ERISA claims against trustee); *Weiner* v. *Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1217 (D. Kan. 2004) (considering trust agreement that plaintiff did not attach).

The documents, including the Complaint, cited in this memorandum are exhibits to the Declaration of Michael J. Dell, sworn to September 17, 2007 (the "Dell Dec.").  The Trust Agreement is Exhibit A to the Affidavit of Alex Vecchiet, sworn to July 1, 2005 (the "Vecchiet Aff."), which is annexed as Exhibit L to the Dell Dec.

**B.**     <u>The Plan and the Solutia Stock Fund</u>

The Plan was a "defined contribution" plan, which means that employees determined how much to invest.  (Compl. ¶ 50).  Participants could choose from a variety of investment options (from 8 to 14 options during the Class Period), one of which was the Employee Stock Account component of the Solutia Stock Fund.  (Compl. ¶¶ 53, 57).  Participants were free to allocate their investments as they chose, but could not invest more than 30% of their contributions in the Solutia Stock Fund.  (Dell Dec. Ex. B. at 8-9).  Solutia matched a certain percentage of employee contributions through investments in the Company Match Account component of the Solutia Stock Fund.  (Compl. ¶ 60).

Plan participants could change their investment allocation or transfer any already-contributed funds, including funds held in the Employee Stock Account component of the Solutia Stock Fund, at *any* time.  (Compl. ¶ 66; Dell Dec. Ex. B at 21-22).  According to the Complaint, participants became 100% vested in *all* matching contributions after three years of service (Compl. ¶¶ 67-68), and could then freely transfer those assets (and any new matching contributions) out of the Company Match Account portion of the Solutia Stock Fund at any time. (Compl. ¶ 60 ("participants who were 100% vested in the Plan could transfer amounts in their Company Match Account out of Solutia Stock Fund and into alternative investments")).[4]  Thus, although the Complaint alleges that "the Plan restricted the trading or selling of Solutia stock provided as the Company match except under limited circumstances" (Compl. ¶ 60), it also alleges that only participants with less than three years of service faced restrictions on divesting any portion of their Solutia stock.  (Compl. ¶¶ 60, 66-69).

---

[4] Participants hired on or after January 1, 1999 became 100% vested after three years of service (Compl.  ¶ 67), while participants hired before January 1, 1999 who were employed with Solutia for less than three years became 20% vested after 1 year, 40 % vested after 2 years, and 100% vested after 3 years.  (Compl. ¶ 68).

The Complaint refers to the "Plan's assets in Solutia stock" (*e.g.*, Compl. ¶ 298(a)) and to the Plan as a whole.  However, plaintiff's allegations concern *only* the Solutia Stock Fund.  Under the Trust Agreement, the other investment funds in the Plan were prohibited from holding Solutia stock (*see* Vecchiet Aff. Ex. A, § 5.9 ["No stocks or obligations issued by the Corporation or its Subsidiaries shall be included in the Investment Funds (excluding the Solutia Stock Fund)"]).

As set forth in the SPD, the Solutia Stock Fund "invest[ed] primarily in Solutia common stock and may hold relatively small amounts of cash."  (Dell Dec. Ex. B at 16).  The SPD further disclosed that "[t]he value of the Solutia stock in this fund may rise or fall, so there is a potential for gain and a potential for loss.  There is no guarantee of repayment of principal" (*id*).  Average annual return data in the SPD allowed participants to compare the returns of the Solutia Stock Fund to other investment options.  (Dell Dec. Ex. B at 18).

## C.    <u>The Trust Agreement</u>

The Trust Agreement sets forth Northern Trust's duties and obligations with respect to the Plan in general and the Solutia Stock Fund in particular.  Section 5.1 of that Agreement *mandates* that:

> The Solutia Stock Fund, except to the extent used to maintain liquidity for distributions and expenses . . . , *shall be* invested and reinvested by the Trustee in shares of the common stock of the Corporation.

(Vecchiet Aff. Ex. A, § 5.1; emphasis added.)  Section 5.1 also specifies that:

> In the operation of this account, the Trustee *shall have no investment discretion*, except as hereinafter provided, *and no duty or responsibility to determine the investment quality or prudence of such investment.*

(*Id.* at p. 17; emphases added.)[5]

---

[5] The balance of the Agreement makes clear that the clause "except as hereinafter provided" does not give the Trustee any investment discretion.  The *preceding* paragraph of § 5.1 outlines the

Section 9.3(c), which outlines the Trustee's powers with respect to the Solutia Stock Fund, reinforces the fact that the Trustee lacks discretion by specifying that the power to sell Solutia stock and all other powers (except the mandatory duty to invest in Solutia stock) are "subject to the direction" of the named fiduciary or the benefits committee. (Vecchiet Aff. Ex. A, § 9.3).

**D.    <u>Plaintiff's Allegations Concerning Northern Trust</u>**

Although the Complaint contains 89 pages and 330 numbered paragraphs, few of its allegations have anything to do with Northern Trust. Plaintiff's central thesis is that Solutia stock was an imprudent investment throughout the "class period" because, allegedly, Monsanto created Solutia as a receptacle for Monsanto's legacy liabilities while concealing Solutia's true financial condition from the public. (Compl. ¶¶ 100-182). According to plaintiff, after Solutia was spun-off from Monsanto, Solutia insiders continued to hide Solutia's true condition in various ways, including inflating earnings through an alleged antitrust conspiracy involving one of its 50%-owned subsidiaries. (Compl. ¶¶ 183-213).

The Complaint does not suggest that Northern Trust had, or should have had, any knowledge of the purported schemes allegedly perpetrated by Monsanto and Solutia insiders and concealed by them from the public and Northern Trust. Instead, plaintiff premises his claim against Northern Trust on the allegation that "[b]y January 2, 2002, (and certainly by July 12, 2002)," Northern Trust "knew or should have known, based on publicly available information,

---

very limited circumstances under which the Trustee may "place amounts received by it for the purpose of common stock investment in temporary investments," *i.e.*, where market conditions are such that the investment "would be disruptive or could not be accomplished, or if the investment would be prohibited by law," or if the investment would "affect the qualified status of the Plan or the exempt status of the Trust under the [Internal Revenue] Code." (Vecchiet Aff. Ex. A, § 5.1, at pp. 16-17). Moreover, if, "for any reason," the Trustee cannot acquire or dispose of Solutia stock as provided in § 5.1, it must notify the Named Fiduciary and "make no purchases or sales of securities until instructions are received from the Named Fiduciary." (*Id.* at p. 18).

KL3 2611213.7

that Solutia Stock was too speculative to serve as a prudent retirement investment." (Compl. ¶ 242). The Complaint does not seek to impose any liability on Northern Trust for events preceding January 2, 2002. (*See* Compl. ¶ 224).

The Complaint alleges that Northern Trust was a "fiduciary" of the Plan because it was the Trustee of the Plan and because it supposedly "served as an investment manager for the Plan" and "exercised discretion and authority over the Plan's assets." (Compl. ¶ 99). However, the Complaint elsewhere alleges only that Northern Trust "may" have served as investment manager for the Plan. (Compl. ¶ 42). Notably, the Complaint does not -- and cannot -- allege anywhere that Northern Trust was an "investment manager" for the Solutia Stock Fund. The Complaint also lacks any substantive allegations related to Northern Trust's supposed role as an "investment manager" or supposed exercise of "discretion." To the contrary, as discussed below at pages 17-18, the Complaint implicitly acknowledges that Northern Trust was in fact a *directed* trustee.

A mere six paragraphs of the Complaint (¶¶ 220-226) address the core of plaintiff's allegations against Northern Trust — that supposed public revelations about Solutia's true condition put Northern Trust on notice that "investment in Solutia Stock was speculative." (Compl. ¶ 224). However, the only public information plaintiff cites in support of its allegation that January 2, 2002 was a "critical turning point" (Compl. ¶ 269) is a Washington Post article and a subsequent drop in Solutia's stock price. (Compl. ¶¶ 222-23). Plaintiff alleges that this was "combined with other public information about the Company's financial condition." (Compl. ¶ 269). But "the other public information" alleged in the Complaint is nothing more than Solutia's 1997, 1999, and 2000 10-Ks and a single Newsday article. (Compl. ¶¶ 217-221).

As discussed *infra* at pages 20-22, none of this information remotely called into question Solutia's viability as a going concern.

Tacitly acknowledging the paucity of these allegations, plaintiff pleads July 12, 2002 as a fall-back turning point date, citing two Moody's ratings reports.  (Compl. ¶¶ 225-226).

### Argument

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007)); *In re Parmalat Sec. Litig*, __ F. Supp. 2d __, 2007, WL 2263893 at *8 (S.D.N.Y. 2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*, 127 S.Ct. at 1964-65 (2007) (citation omitted).  "[B]ald assertions and conclusions of law will not suffice."  *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).  Moreover, a court need not credit "general conclusory allegations" when they are "belied by more specific allegations of the complaint."  *Hirsch* v. *Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).  Rule 8, requiring a "short and plain statement of plaintiff's claim," "is intended to insure that the opposing party receives 'fair notice of what the plaintiff's claim is *and the grounds upon which it rests*.'"  *Haber* v. *Brown*, 774 F. Supp. 877, 878-79 (S.D.N.Y. 1991) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102-03 (1957), and dismissing ERISA claim) (emphasis in original).

**I.**

**COUNT II SHOULD BE DISMISSED BECAUSE
PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO STATE A
BREACH OF FIDUCIARY DUTY CLAIM AGAINST NORTHERN TRUST**

**A.    Northern Trust was a "directed trustee" without discretionary
authority or control over the Solutia Stock Fund**

Count II seeks to assert a claim against Northern Trust for breach of its fiduciary duty to act as a prudent trustee. The Complaint contends that Northern Trust was a "fiduciary" because it was the Trustee of the Plan and accepted directions to purchase and hold Solutia stock. (Compl. ¶ 99). Plaintiff does not allege that Northern Trust violated the terms of the Plan or failed to carry out instructions. To the contrary, he asserts that "on or after January 2, 2002," Northern Trust, as a "fiduciary," became liable for failing to "*refuse to follow*, or even make inquiries regarding, any *directions from Plan fiduciaries* with respect to investment of Plan assets", "to *alter the mix* of investments in the Solutia Stock Fund away from Solutia Stock in favor of cash", and "to take any *independent steps* to protect the Plan." (Compl. ¶ 298) (emphasis added). But the allegations that Northern Trust should have refused to follow instructions or should have unilaterally altered the investment mix (in violation of the terms of the Trust Agreement and the Plan) fail to state a claim, because Northern Trust had a very limited role under the statutory scheme and the specific Plan documents.

The analysis of what is required to state a claim against a directed trustee starts with the language of ERISA. Directed trustees do not have the full scope of fiduciary duties under ERISA. They are protected from liability when they follow "the proper directions" of the named fiduciary "which are made in accordance with the terms of the plan and which are not contrary to" ERISA. *See* 29 U.S.C. § 1103(a)(1). ERISA defines the scope of the fiduciary duty:

> . . . [A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such a plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).  The statutory phrase "to the extent" "indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Sommers Drug Stores Co. Employee Profit Sharing Tr.* v. *Corrigan Enters. Inc.*, 793 F.2d 1456, 1459-60 (5th Cir. 1986).  Accordingly, the "threshold inquiry" in a case alleging a breach of fiduciary duty under ERISA is whether the defendant was "acting as a fiduciary," *i.e.*, exercising discretionary authority or control, "when taking the action subject to complaint." *Pegram* v. *Herdrich*, 530 U.S. 211, 226, 113 S.Ct. 2063, 2071 (2000).  *See also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (ERISA defines the term fiduciary "in *functional* terms of control and authority") (emphasis in original).

This functional approach to fiduciary status with regard to trustees has been further codified in the statute:  ERISA expressly contemplates the appointment of "directed trustees" who do *not* have authority and discretion but are subject to the direction of a named fiduciary. *See* 29 U.S.C. § 1103(a)(1).  "Although not found in § 403(a) or elsewhere in the statute, the term 'directed trustee' is widely used in common parlance to describe a plan trustee where, as § 403(a) notes ... 'the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee.'" *DiFelice* v. *US Airways, Inc.*, 397 F. Supp. 2d 735, 744 (E.D. Va. 2005) (citation omitted).  Such "directed trustees" do not have the full scope of fiduciary duties under the statute and are protected from liability when they follow "the proper directions" of the named fiduciary "which are made in accordance with the terms of the plan and which are not contrary to" ERISA.  *See* 29 U.S.C. § 1103(a)(1) and (a)(3)(B).  Four Circuits have

held that a directed trustee does not have to make an independent prudence determination, and

cannot be liable, when it follows the directions of a named fiduciary.  *See Wright v. Oregon*

*Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) (a directed trustee "cannot be held liable for

following the investment instructions provided by a plan's fiduciaries") (citation omitted);

*Grindstaff v. Green*, 133 F.3d 416 (6th Cir. 1998) (a directed trustee does not have a duty to

investigate the merits of directions by a named fiduciary, and cannot be held liable for breach of

fiduciary duty when it follows directions); *Herman* v. *NationsBank Tr. Co.*, 126 F.3d 1354, 1361

(11th Cir. 1997) ("insofar as a trustee acts at the direction of a named fiduciary in accordance

with the terms of the plan and ERISA's requirements, he is not subject to the fiduciary

requirement" to make an independent prudence determination); *Maniace* v. *Commerce Bank*, 40

F.3d 264, 268 (8th Cir. 1994) (a directed trustee is "not required to weigh the merits of an

investment in [company] stock against all other investment options every time it is directed to

purchase said stock").

 As one recent opinion dismissing a claim against a directed trustee put it, § 403(a) does

not

> impos[e] on directed trustees an implicit duty of ordinary care and prudence
> to second guess the wisdom of the named fiduciaries' directions as to Plan
> investment options.... To conclude otherwise would effectively eviscerate §
> 403(a) by eliminating any distinction between the duty of a directed trustee
> under § 403 (a) and the duty of the ERISA named fiduciary with investment
> authority, who has the duty of ordinary care and prudence.

*DiFelice*, 397 F. Supp. 2d at 748; *see also In re RCN Litig.*, No. 04-5068 (SRC),  2006 U.S. Dist.

LEXIS 12929, at *14, 37 Employee Benefits Cas. 1824, 1828 (D.N.J. March 22, 2006) ("as long

as the directed trustee is required, by the Plan's terms, to follow the directions of a named

fiduciary, their investment decisions are essentially immune from judicial inquiry.") (quotation

marks and internal citation omitted).

- 13 -

Here, the Trust Agreement makes clear that Northern Trust was a "directed trustee" with no discretion with respect to decisions to buy, hold or sell the Solutia stock in the Solutia Stock Fund. *See Beddall*, 137 F.2d at 19-21 ("The starting point for reasoned analysis of the [directed trustee's] fiduciary status is the [Trust] Agreement."). As described above (pp. 7-8, *supra*), all powers delegated to Northern Trust with respect to the Solutia Stock Fund are expressly made "subject to the direction of the Named Fiduciary" (Vecchiet Aff. Ex. A, § 9.3 (c)). The Trust Agreement further deprives Northern Trust of any discretion by mandating that funds received for the Solutia Stock Fund "*shall*" be invested in Solutia stock (Vecchiet Aff. Ex. A, § 5.1) (emphasis added). Northern Trust had "no investment discretion" in the operation of the Solutia Stock Fund account (Vecchiet Aff. Ex. A, § 5.1).

The only provision of the Trust Agreement that plaintiff contends gave Northern Trust investment discretion is the grant of authority to make "temporary investments" of new cash coming into the Fund if "market conditions [were] such that investment in common stock of [Solutia] would be disruptive or could not be accomplished, or if the investment would be prohibited by law." (Vecchiet Aff. Ex. A, § 5.1). However, the Complaint does not allege the specific, limited and "temporary" circumstances in which that provision would apply. Any effort to extend that extremely narrow grant of authority for a limited purpose to the circumstances actually alleged in the Complaint would impermissibly wrench the language of the Trust Agreement away from its plain meaning and violate the most basic principles of contract construction that *all* provisions of a contract are to be given a "reasonable and effective meaning." *Rothenberg* v. *Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2nd Cir. 1985). This extremely narrow exception is for "temporary" "*market* conditions" that would make purchases of Solutia stock "disruptive" or incapable of "accomplish[ment]", such as during black-out

periods or when trading is suspended.  (Vecchiet Aff. Ex. A, § 5.1) (emphasis added).  *See, e.g.,*

*Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors*, 173 F.3d 313, 320 (5th

Cir. 1999) (terms in ERISA trust documents are to be given their plain meaning); *In re Cardinal*

*Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1036-7 (S.D. Ohio 2006) (cautioning against

"attempt[ing] to infer a broad grant of discretionary investment authority from a few arguably

'ambiguous' terms.").  Any argument to apply it in other contexts would turn a limited exception

into a broad concession of discretionary authority that would conflict with and read out of the

Trust Agreement all of the express provisions of the Trust Agreement that eliminate discretion

except in the narrowest of circumstances, including the agreement that Northern Trust "shall

have no investment discretion" with respect to the Solutia Stock Fund.  *See DiFelice*, 397 F.

Supp. 2d at 745 (plaintiff's reliance on a similar provision was a misplaced "attempt to use a

narrow and limited exception to swallow the general rule, made clear in the Trust Agreement"

that the trustee in question was a "directed trustee.").[6]

**B.    The Complaint fails to allege any "limited" or "rare"
        circumstances that could have imposed upon
        Northern Trust a duty of inquiry and therefore does
        not state a claim**

A December 17, 2004 memorandum of the U.S. Department of Labor's Employee

Benefits Security Administration (the "DOL") elaborates on the limited scope of a directed

trustee's duties.  The DOL issued this memorandum, entitled "Field Assistance Bulletin No.

---

[6]  Nor can plaintiff rely on the SPD's disclosure that the Fund may hold "small amounts of cash." (Dell Dec. Ex. B at 16), because the Trust Agreement specifies that the only portion of the Fund not mandatorily invested in Solutia common stock is the amount of cash "used to maintain liquidity for distributions and expenses." (Vecchiet Aff. Ex. A, § 5.1).  Plainly, this language does not give Northern Trust discretion to "alter the mix" of the Solutia Stock Fund.  *See In re RCN Litig.*, 2006 U.S. Dist. LEXIS 12929, at *11, 37 Employee Benefits Cas. at 1827 (rejecting plaintiffs' attempt to use similar language in plan documents to "infer a broad grant of discretionary investment authority from an explicitly arrow grant of authority for a limited purpose") (quoting *DeFelice*, 397 F. Supp. 2d at 745).

2004-03" ("FAB No. 2004-03" or "the Bulletin," attached as Appendix A hereto), to "provid[e] general guidance to EBSA regional offices regarding the Department's views on the responsibilities of directed trustees under ERISA, particularly with respect to directions involving employer securities."  Appx. A at 1.[7]  Interpretative guidelines, such as the Bulletin, "'bring the benefit of an agency's specialized experience to bear' on the meaning of the statute." *Schneider* v. *Feinberg*, 345 F.3d 135, 143 (2d Cir. 2003) (*quoting United States* v. *Mead Corp.*, 533 U.S. 218, 234 (2001)); *see also Skidmore* v. *Swift & Co.*, 323 U.S. 134, 140 (1944) ("We consider that the rulings, interpretations and opinions of the Administrator under [the] Act . . . constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.").

     Judge Cote rendered the first opinion to consider and apply the Bulletin, and found that its "concrete guidance" was "consistent with prior statements of the law," "well-reasoned" and "flow[ed] from a careful analysis of complex issues."  *In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d at 423, 446 (S.D.N.Y. 2005).  Accordingly, Judge Cote concluded that "[t]he Bulletin . . . reflects *persuasive authority* to which this Court should give at least substantial weight in articulating the standard that should be applied to a directed trustee's responsibilities."  *Id.* (emphasis added) (*citing Skidmore v. Swift)*.  Subsequent opinions analyzing the Bulletin have likewise found it worthy of *Skidmore* deference.  *See, e.g.*, *DiFelice*, 397 F. Supp. 2d at 752 n. 25 (*citing Mead* and *Skidmore* and holding that "the DOL's interpretation is *especially* worthy of deference" and that the "reasoning supporting the DOL's interpretation" is "sound") (emphasis added); *In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d at 1039 (adopting the *DiFelice* analysis of the Bulletin); *In re RCN Litig.*, 2006 U.S. Dist. LEXIS 12929, at *15, 37 Employee

---

[7] The Bulletin can also be found at http://www.dol.gov/ebsa/regs/fab_2004-3.html.

Benefits Cas. at 1828 (quoting *Skidmore* and *DiFelice* and indicating that the Bulletin is "entitled

to respect").[8]

    Plaintiff tacitly acknowledges that the DOL's Bulletin provides the appropriate standard

for evaluating Northern Trust's conduct in this case by parroting the Bulletin's language in the

---

[8] Judge Posner, writing for the Seventh Circuit in *Summers v. State Street Bank*, 453 F.3d 404
(2006), termed the Bulletin a "pamphlet" and found that its standards were not "administrable."
*Id.* at 411. We respectfully submit that Judge Posner got it wrong on that point, although he still
upheld summary judgment for the directed trustee. *First*, he did not engage in a *Skidmore*
analysis to determine the appropriate degree of deference to the Bulletin, as did Judge Cote and
the other district courts that considered the Bulletin, and as U.S. Supreme Court and Second
Circuit precedents require. *Second*, the ability of Judge Cote and the other district judges to
parse and apply the Bulletin's guidelines belies the suggestion that it is "not administrable."
Indeed, the Seventh Circuit grounded its statement that the Bulletin is not administrable on its
use of the word "may", *id.* at 411, but the word "may" is found in many statutory provisions such
as ERISA's definition of a plan "participant" in 29 U.S.C. § 1002(7).

*Third*, Judge Posner did not offer an alternative "more administrable" standard. To the contrary,
he opined "that determining the 'right' point, or even the range of 'right' points for an ERISA
fiduciary to break the plan and start diversifying may be beyond the capacity of the courts to
determine." *Id*. at 411. He also noted that if the directed trustee in that case had sold ESOP
stock in violation of the Plan terms, and then the stock bounced back, the directed trustee would
be subject to suit "by the same plaintiffs." *Id.* Judge Posner concluded by inviting a theoretical
and legislative reassessment of the utility of ESOPs in general. We respectfully submit that
Judge Posner was right in identifying the dilemma that would be faced by a directed trustee if it
risked liability if it breached the Trust Agreement and the Plan and also risked liability if it did
not. But we submit that he was wrong in concluding that the Courts are incapable of
adjudicating such questions. The Bulletin (and the opinions applying it) offer a framework for
doing just that. *Fourth*, Judge Posner addressed an entirely different situation in *Summers* than
the one alleged by plaintiff here. While Solutia employees could not put more than 30% of their
defined contribution plan funds into the Solutia Stock Fund (Dell Dec. Ex. B at 8-9) and had a
choice of at least seven other funds (Compl. ¶ 53), the ESOP in *Summers* allowed only for
investment "exclusively in stock of United Air Lines," and therefore Judge Posner presumed that
"shares of United stock were the principal financial assets of most of United's employee-
shareholders" and noted that the situation would have been completely different and "of little
moment to people who held United stock as part of a diversified portfolio." 453 F. 3d at 406,
409. *Finally*, the Seventh Circuit affirmed the grant of summary judgment in favor of the
directed trustee because the plaintiff in that case had failed to show that the risk borne by
employee shareholders was excessive in light of their overall assets and other factors. The
plaintiff's attempt to show that the directed trustee had failed to second-guess the market was
insufficient to establish liability. *Id.* at 411. The Complaint here too contains no hint of the type
of economic risk analysis that Judge Posner seems to be saying is necessary to maintain a claim
against a directed trustee.

Complaint.  (*See, e.g.,* Compl. ¶¶ 268, 295).  The Bulletin recognizes that ERISA "significantly limits a [directed] trustee's responsibilities as a plan fiduciary" and that "[t]he duties of a directed trustee under [ERISA] are therefore significantly narrower than the duties generally ascribed to a discretionary trustee under common law trust principles."  (FAB 2004-03 at 2). The directed trustee "does not . . . have an independent obligation to determine the prudence of every transaction" and "does not have an obligation to duplicate or second-guess the work of the plan fiduciaries that have discretionary authority over the management of the plan assets."  (FAB 2004-03 at 4).  Moreover, the scope of a directed trustee's "obligation to question market transactions involving publicly traded stock on prudence grounds is quite limited."  *Id.*

The Bulletin provides "specific . . . and example-based guidance" of the extremely limited circumstances in which a directed trustee has a duty to question a direction to invest in employer securities.  *WorldCom,* 354 F. Supp. 2d at 446.[9]  According to the Bulletin, "[t]he directed trustee's obligation to question market transactions" primarily arises "when the directed trustee possesses material non-public information regarding a security." (FAB 2004-3 at 4). "Absent material non-public information, a directed trustee . . . will rarely have an obligation under ERISA to question the prudence of a direction . . . solely on the basis of publicly available information." *(Id.* at 5).  The only possible exceptions might be "limited, extraordinary circumstances, where there are clear and compelling public indicators," such as a Form 8-K

---

[9] In an earlier opinion, prior to the issuance of the Bulletin, Judge Cote denied the motion of the directed trustee, Merrill Lynch, to dismiss.  *In re WorldCom, Inc. ERISA Litig.,* 263 F. Supp. 2d 745, 764  (S.D.N.Y. 2003).  However, after applying the Bulletin and reviewing the "publicly available information" proffered by plaintiff, Judge Cote granted summary judgment in favor of the directed trustee.  *WorldCom,* 354 F. Supp. 2d at 451-2.  Judge Cote's rationale for granting summary judgment applies here on Northern Trust's motion to dismiss because plaintiff has failed to allege any facts that, if true, would give rise to a duty of inquiry.  Other courts that considered motions to dismiss *after* the DOL issued the Bulletin have granted those motions based on the Bulletin.  *See In re RCN Litig.,* 2006 U.S. Dist. LEXIS 12929 at *10-12; *DiFelice,* 397 F. Supp. 2d at 748; *In re Cardinal Health ERISA Litig.,* 424 F. Supp.2d at 1039-41.

KL3 2611213.7

filing with the SEC or a bankruptcy filing "that call into serious question a company's viability as a going concern." *Id.* at 5-6; *see also WorldCom*, 354 F. Supp. 2d at 448 (noting that the Bulletin stresses that a company must be in "extreme financial distress" "before a directed trustee would have a duty to make further inquiry" and that not even a bankruptcy filing necessarily triggers such a duty). As Judge Cote explained, "[k]nowledge that a company's fortunes are declining does not impose a duty of inquiry"; "reliable" public indicators must "call[] into serious question the company's *short-term* viability", *i.e.*, "disclose the impending collapse of the company." *WorldCom*, 354 F. Supp. 2d at 449-50 (emphasis added).

Accordingly, Northern Trust may be held liable only if it failed to question directions in the "limited" and "rare" circumstances in which it had an obligation to do so. *See* FAB 2004-3 at 5; *see also, e.g., Herman*, 126 F.3d at 1361; *O'Toole* v. *Arlington Trust Co.*, 681 F.2d 94, 96 (1st Cir. 1982); *Beauchem* v. *Rockford Prods. Corp.*, No. 01 C 50134, 2003 WL 1562561, at * 2 (N.D. Ill. Mar. 24, 2003) ("plan documents do not vest [the directed trustee] with the authority or responsibility" to investigate the prudence of every ESOP stock purchase); *Richardson* v. *U.S. News & World Report*, 623 F. Supp. 350, 352 (D.D.C. 1985); *Robbins* v. *First American Bank of Virginia*, 514 F. Supp. 1183, 1189-91 (N.D. Ill. 1981).

The Complaint acknowledges that Northern Trust did *not* have material non-public information about Solutia stock. (Compl. ¶ 224). Therefore, the Complaint can state a claim against Northern Trust only if plaintiff alleges "extraordinary circumstances" involving "clear and compelling public indicators" that "call[ed] into question [Solutia's] short-term viability as a going concern." *See* FAB No. 2004-03, at 4-5; *WorldCom*, 354 F. Supp. 2d at 448-49. However, the "public indicators" alleged in the Complaint, whether taken singly or together, are plainly insufficient to state a claim that Northern Trust had a duty – as of either January 2, 2002

or July 12, 2002 – to question the prudence of holding or buying Solutia stock.  *See WorldCom*, 354 F. Supp. 2d at 450.[10]

The Complaint alleges that a January 1, 2002 Washington Post article put Northern Trust on notice that it would be imprudent and speculative to invest in Solutia stock (Compl. ¶¶ 222, 224), but that article does not even come close to doing so.  The article simply discusses the alleged impact of PCBs from a particular Monsanto site on Anniston, Alabama, and mentions the then-upcoming trial involving Solutia.  (*See* Dell Dec. Ex. C).  It does not analyze or even mention Solutia's financial condition, viability or potential liability for damages, and certainly does not predict Solutia's collapse nearly *two years* later.  To the contrary, the article notes that EPA and state officials "do not agree that [the] drastic measures" requested by environmental activists are "necessary," and records the statement of a Solutia official that he is "pretty proud" of his company's conduct.  (Dell Dec. Ex. C).   Moreover, under the Bulletin, even a "media report" that *did* speculate on Solutia's continued viability (and this article does not) would not constitute "clear and compelling evidence concerning the company sufficient to give rise to a directed trustee's duty to act."  (FAB No. 2004-03, at 6 n.5).  The drop in Solutia stock in the days following the publication of this article (Compl. ¶ 223) does not change this conclusion, because "even a steep drop in a stock's price would not . . .  indicate that a named fiduciary's direction to purchase or hold such stock is imprudent."  (FAB No. 2004-03, at 5).  *See also Lalonde* v. *Textron, Inc.*, 369 F.3d 1, 7 (1st Cir. 2004) (affirming the dismissal of claims against a trustee, because the allegation that the trustee "learned (as the events were unfolding) that [the

---

[10] It should be also be noted that a presumption of prudence attaches to the Plan's investments in employer securities.  *See, e.g., Kuper* v. *Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995); *Moench* v. *Robertson*, 62 F.3d 553, 571 (3d Cir. 1995)

company's] stock price and profits were declining" "simply is not enough to ground a finding that [the trustee] violated any duties").

Because a single media report and a decline in share price do not constitute "clear and compelling indicators" "similar" to a bankruptcy or 8-K filing calling into question the company's "short-term viability," plaintiff attempts to suggest that it is the combination of "other public information about the Company's financial position" with the "information revealed in the article" that renders January 2, 2002 a "crucial turning point" for Northern Trust.  (Compl. ¶¶ 268-69).  But none of the pre-January 2, 2002 "public information" discussed in the Complaint constitutes a "clear and compelling indicator" of a threat to Solutia's short-term viability.

Plaintiff simply points to the litigation disclosures in Solutia's 1997, 1999, and 2000 public filings (Compl. ¶¶ 214-17), but not one of them calls into questions Solutia's viability as a going concern.  The 10-K filing preceding the Washington Post article -- which dates back to March 8, 2001 -- actually discussed the Anniston, Alabama cases and disclosed that they "*may*" have a "material adverse effect" on "net income" in a "given year" (although the amount of such liability was impossible to determine at that time), a disclosure that completely undermines plaintiff's assertion that the Washington Post article some nine months later constituted a revelatory "turning point."  (*See* Compl. ¶ 220; Dell Dec. Ex. D at 8).  Plainly, the disclosure that "net income" (*not* assets or overall viability) "may" be affected in an unspecified future year does not signal "extreme financial distress" or "impending collapse."  Moreover, although plaintiff omits this crucial language from the Complaint, the 2000 10-K also disclosed that, apart from the Anniston, Alabama cases, "Solutia does not believe that the ultimate resolution of any of [the then pending litigation] . . .  will have a material adverse effect on Solutia's financial

position, liquidity or profitability in any one year" (Dell Dec. Ex. D at 8).  That disclosure clearly points *away from* any suggestion of threatened "viability" and belies the suggestion that Northern Trust "should have known" that "substantial legacy liabilities . . . called Solutia's short-term viability into question."

The only other pre-January 2, 2002 "public information" cited in the Complaint is a Newsday article (Compl. ¶ 218) that in no way constituted a "clear and compelling indicator" of Solutia's "impending collapse."  The article listed nine stocks the author would "consider[]" short-selling.  It contained one short paragraph about Solutia, and disclosed no information not readily available from Solutia's past public filings.  (Dell Dec. Ex. E).  Whether this article is viewed as a media report or an analyst's recommendation, it could not have triggered heightened duties on the part of Northern Trust.  As Judge Cote found in *WorldCom*, an analyst's negative recommendation does not trigger a duty of inquiry on the part of a directed trustee:  "[a]nalyst recommendations to sell WorldCom securities do not represent reliable information regarding the company's viability." *WorldCom*, 354 F. Supp. 2d at 449.

Tacitly acknowledging that the allegations in support of January 2, 2002 as a "turning point" triggering heightened duties on the part of Northern Trust are insufficient, plaintiff offers a fall-back position, alleging that further bad news about Solutia triggered a duty of inquiry as of July 12, 2002.  This effort fares no better.

The only information alleged in support of the July 12, 2002 date are February 4, 2002 and July 12, 2002 Moody's downgrades of Solutia's debts.  (Compl. ¶¶ 225, 226).  These Moody's reports constitute nothing more than "analyst recommendations."  *See In re Cardinal Health ERISA Litig.*, 424 F. Supp. 2d 1002, 1040 (S.D. Ohio 2006) (a Fitch Report -- a credit

analysis similar to a Moody's report -- is "insufficient to trigger a duty under the [Bulletin],
which expressly states that a directed trustee's duty" is not triggered by "outsiders' opinions").

Moreover, the Complaint quotes selectively from the reports. For example, the
Complaint omits the fact that the February 4, 2002 Moody's release states that "several [Solutia]
businesses . . . will likely generate significant revenue growth and enhance margins over the
longer term," and that "[t]he company's ratings outlook is stable, due to Moody's belief that
company will remain cash flow positive in 2002." (Dell Dec. Ex. F). The July 12, 2002
Moody's release notes that the downgrade was due to a delay in the refinancing of a Solutia
credit facility, but explicitly states in the opening paragraph that "[t]hese downgrades *do not
reflect concerns over the future financial performance* of the company's businesses." (Dell Dec.
Ex. G (emphasis added)). It also explains that "[i]f the credit facility is refinanced, Moody's
believes that company's near-term financial performance should improve versus 2001 and that
second quarter results will reflect increased demand in most businesses," and "Moody's also
believes that there will be a modest improvement in 2003 as the US economy slowly recovers."
*Id*.[11]

When read in their entirety, these downgrade reports belie any suggestion of "impending
collapse." *Compare In re Cardinal Health*, 424 F. Supp. 2d at 1040 fn. 41 (an analyst report,
while not relevant under the DOL's standard, in any event "provide[d] a number of observations
precluding a likelihood of collapse"). Indeed, as the Complaint itself acknowledges, Solutia did

---

[11] The Complaint asserts that the July 12, 2002 Moody's downgrade of Solutia's unsecured debt
to B3 "indicated that the securities were 'speculative'" (Compl. ¶ 226), apparently purporting to
quote from the Moody's ratings definition. However, the Moody's rating definition for grade
"B" securities *does not* include the word "speculative." (Dell Dec. Ex. H).

not file for bankruptcy until December 17, 2003, more than 17 months after the last purported "trigger date" alleged in the Complaint.[12]

In discussing Northern Trust's supposed duty of inquiry, plaintiff throws in the allegation that "certain Plan investment options were managed by Northern Trust affiliates," and Northern Trust was therefore "interested in maintaining good business relations between itself, its affiliates and Solutia." (Compl. ¶ 272). However, because Northern Trust did *not* have a duty of inquiry, the allegation that Northern Trust had an interest in maintaining good business relations is simply irrelevant.[13] Beyond that, the Court need not credit an entirely conclusory and speculative allegation such as this one. *See supra* p. 10.

Plaintiff's allegation that Northern Trust "communicated with Plan participants" (Compl. ¶ 248) also does not change the analysis. Plaintiff does not identify any communication from Northern Trust to participants, nor plead whether, or how, such a communication may have been materially misleading. *See, e.g., Ballone* v. *Eastman Kodak Co.*, 109 F.3d 117, 122 (2d Cir. 1997) (to be actionable, a fiduciary's communication with a plan participant must be materially misleading). Although the Complaint alleges that Solutia's SEC filings, company statements and releases were misleading, the Complaint acknowledges that Northern Trust did not have access to insider information (*e.g.*, Compl. ¶¶ 224, 241, 269), and the Complaint could not, and does not

---

[12]Moreover, the Bulletin recognizes that even *an actual bankruptcy filing* would not necessarily require a directed trustee to question the named fiduciaries' directions. To the contrary, the Bulletin indicates that a bankruptcy filing would trigger such a duty only if the "circumstances [made] it unlikely that there would be any distribution to equity-holders," or if the company "publicly stated that it was unlikely to survive the bankruptcy proceedings in a manner that would leave current equity-holders with any value" (FAB No. 2004-03, at p. 6). The Complaint does not allege that such circumstances existed or that such statements were made. *See also DiFelice*, 397 F. Supp. 2d at 755 ("management's public acknowledgements of the possibility of bankruptcy" are not "sufficient to trigger" a directed trustee's duty "to question the prudence of the named fiduciary's directions").

[13] Plainly, the standard established by the Bulletin and *WorldCom* would be eviscerated if plaintiff could change the duty of inquiry analysis simply by alleging -- without more -- that an affiliate of the directed trustee had a business relationship with the Plan.

even attempt to, plead that Northern Trust somehow participated in the creation of these allegedly false SEC filings and releases.

Nor does plaintiff salvage his Complaint with his wholly conclusory allegation that Northern Trust should have refused to follow directions because "the Plan fiduciaries making these directions were conflicted" (Compl. ¶ 273; *see also* ¶ 298(a)).  The supposed conflict amounts to nothing more than the allegation that Solutia officers and directors were partially compensated in Solutia stock.  However, ERISA expressly contemplates the appointment of corporate officers and directors as plan fiduciaries.  *See* 29 U.S.C. § 1108(c).  Courts have routinely rejected claims that the personal financial interest of plan fiduciaries creates an impermissible conflict of interest.  *See, e.g.*, *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 479 (S.D.N.Y. 2005) ("because Plaintiffs' conflict-of-interest claim is based purely on the fact that Defendants' compensation was stock-based, it fails to state a claim for breach of fiduciary duty"); *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d at 767-68 (dismissing claim that executive's personal financial interests created a "conflict of interest" that rendered him unfit to act as a plan fiduciary); *In re Calpine Corp. ERISA Litig.*, 2005 WL 1431506, at *8-9 (N.D. Cal. Mar. 31, 2005) (dismissing conflict of interest claim).

Moreover, plaintiff alleges that this "conflict" was disclosed in Solutia's SEC filings. (Compl. ¶ 252).  The alleged conflict was therefore public information and accordingly, under the *WorldCom*/Bulletin standard, would have triggered heightened duties on the part of Northern Trust only if it called into serious question Solutia's viability as a going concern.  But the Complaint is devoid of any allegation that the alleged conflict called into question Solutia's viability.  Thus, Northern Trust's "understanding" of other fiduciaries' "performance of [their] fiduciary functions is *beside the point*."  *WorldCom*, 354 F. Supp. 2d at 450 (emphasis added).

The recent decision in *In re RCN Litig.*, No. 04-5068 (SRC), 2006 U.S. Dist. LEXIS 12929, 37 Employee Benefits Cas. 1824 (D.N.J. March 22, 2006), is particularly instructive as to several of plaintiff's arguments.  In *RCN*, plaintiffs, who were participants in RCN's defined contribution employee pension benefit plan, brought a claim against the Merrill Lynch Trust Company ("MLTC"), the trustee appointed by the Administrative Committee.  *Id*. at *2-3. RCN's stock experienced a precipitous decline in price from 2000 until 2004, when RCN filed for Chapter 11 bankruptcy.  *Id*. at *6.  "The basis of the Plaintiffs' allegations against MLTC is that they breached the 'duties and mandates of ERISA' by following the directions of the Plan's named fiduciaries and 'continuing to allow investment of Plan assets in the RCN stock fund when it was clearly imprudent to do so.'"  *Id*. at *18.  In granting MLTC's Rule 12(b)(6) motion to dismiss, the district court found that the plan's governing documents demonstrated that MLTC "was a directed trustee, pursuant to Section 403(a) of ERISA, who was subject to the directions of the Committee and individual Plan participants regarding the selection of investment options for Plan funds."  *Id*. at *12.

Like plaintiff here, the plaintiffs in *RCN* attempted to evade dismissal by arguing that language in the plan permitting MLTC to invest a portion of the RCN stock fund contributions in cash -- as a reserve for the payment of expenses and distributions -- granted MLTC control over plan assets.  The court rejected that argument, characterizing it as an attempt to "infer a broad grant of discretionary investment authority from an explicitly narrow grant of authority for a limited purpose."  *Id*. at *10 (citation omitted).  The court noted that the DOL's Bulletin, which was "entitled to respect," actually reflected a "broader view of the fiduciary duties of a directed trustee" than existing Third Circuit precedent which provided for more limited duties.  *Id*. at *14-15.  However, even under that broader view, the plaintiffs' claim in *RCN* could not survive

because, like here, the complaint did "not allege that MLTC was in possession of any non-public information regarding RCN's financial performance" and "none of the 'extraordinary circumstances' are alleged to have existed which would have imposed a duty on MLTC not to follow the directions of the Plan's named fiduciaries to invest in and hold RCN stock as a Plan investment." *Id*. at *21. Thus, MLTC "was under no duty to disclose publicly available information to Plan participants regarding RCN's financial state or the prudence of investing in RCN stock." *Id*. at *22. Finally, the court rejected plaintiffs' argument that MLTC had an actionable conflict of interest due to its relationship with the RCN Committee members or its interest in compensation. *Id*. at *29-30. "The only way for a professional trustee such as MLTC, who is selected and retained by a company to administer a savings and retirement plan that invests in that company's stock, to affirmatively avoid the conflict of interest that the Plaintiffs' are implying, however, would be to provide their services for free. ERISA clearly did not intend for such a consequence." *Id*. at *29. [14]

In sum, the Complaint is devoid of factual allegations that, if true, would impose on Northern Trust a duty to question a direction to purchase Solutia stock for the Solutia Stock Fund. Accordingly Count II should be dismissed.

## II.

### THE COMPLAINT FAILS TO STATE A CLAIM AGAINST NORTHERN TRUST FOR CO-FIDUCIARY LIABILITY

Count IV seeks to hold Northern Trust liable for the actions of all other defendants, who were plan fiduciaries. However, as *DiFelice* reasoned, "[a] limitation on a directed trustee's duties under ERISA § 403(a) would have little effect if the directed trustee's co-fiduciary

---

[14]  The court also dismissed a claim against MLTC for co-fiduciary duty liability because "Plaintiffs make no effort to allege any scenario where MLTC participated or knowingly concealed any known breach of fiduciary duties of any other Plan fiduciary." *Id*. at 1830. The Complaint here also suffers from this failure. *See infra* Point II.

liability was not similarly limited." *DiFelice,* 397 F. Supp. 2d at 757. Accordingly, where as here, the gravamen of the allegations is that the directed trustee failed to object to the directions of the named fiduciary, "a directed trustee's primary liability as a fiduciary, and its secondary liability as a co-fiduciary are essentially co-extensive." *Id.* The imposition of co-fiduciary liability on Northern Trust on the basis of the facts alleged in the Complaint would be completely inconsistent with – and undermine the validity of – the principles set forth in ERISA and in the Bulletin regarding the rare circumstances in which a directed trustee may be subjected to liability under ERISA. *See WorldCom*, 354 F. Supp. 2d at 450.

In addition, the allegations of the Complaint as to co-fiduciary liability are too skeletal to state a claim. The Complaint's sole assertion against Northern Trust concerning co-fiduciary liability is that:

> On and after January 2, 2002, Northern Trust participated knowingly in and concealed breaches of the other Defendant fiduciaries. During that period, Northern Trust knew or should have known that the other Defendant fiduciaries were failing to take appropriate steps to protect the Plan and its participants with respect to Plan investments in Solutia Stock, but failed to disclose information revealing this fact. Northern Trust, despite knowledge of these breaches, also enabled the breaches, e.g. by following directions to continue to invest Plan assets in Solutia Stock, and failed to take reasonable steps to remedy the breaches, such as seeking the appointment of an independent fiduciary when the other Defendant fiduciaries failed to fulfill their duties. (Compl. ¶ 315).

That is *all* plaintiff alleges on the subject of co-fiduciary liability.

These allegations merely track the ERISA statutory language establishing co-fiduciary liability:

> (1) if [a fiduciary] participates knowingly in . . . an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title, in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).  However, parroting statutory language does not suffice to state a claim for co-fiduciary liability.  *See In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1230 (D. Kan. May 27, 2004) (co-fiduciary allegations that "simply parrot the language of the co-fiduciary liability statute" are insufficient to withstand a motion to dismiss).   Moreover, by failing to identify *how* Northern Trust allegedly "enabled" the breaches by each of the other defendants, or what "knowledge" Northern Trust had of the supposed breaches by each of the other defendants, the Complaint fails to put Northern Trust "on notice of the particular charges" against it.  *See In re Sears, Roebuck & Co. ERISA Litig.*, 2004 WL 407007, at *8 (N.D. Ill. Mar. 3, 2004) (dismissing co-fiduciary claims as insufficient under Rule 8); *In re McKesson HBOC Inc. ERISA Litig.*, 2002 WL 31431588, at *17 (N.D. Cal. Sept. 30, 2002) (same); *see also Harris Trust and Savings Bank* v. *Salomon Bros., Inc.*, 813 F. Supp. 1340, 1344 (N.D. Ill. 1992) ("[b]y neglecting to describe a particular breach by a particular fiduciary," allegations of co-fiduciary liability "fail[] to state a claim").

Plaintiff's co-fiduciary liability claims are also defective for another reason.  Both the first and the third prongs of § 1105(a) require *actual*, not constructive, knowledge of a co-fiduciary's breach.  *See, e.g., Donovan* v. *Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983); *Keach* v. *U.S. Trust Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002).  Accordingly, the Complaint's allegation that Northern Trust "knew or should have known" that other fiduciaries were breaching their duty of prudence and loyalty is facially inadequate.  *See, e.g., Haber* v. *Brown*, 774 F. Supp. 877, 879 (S.D.N.Y 1991) ("no facts are alleged to provide grounds for the claim that [defendant] knowingly participated in [another's] fiduciary breaches"); *In re RCN Litig.*, 2006 U.S. Dist. LEXIS 12929 at *24, 37 Employee Benefits Cas. at 1828 (dismissing

claim because "Plaintiffs [made] no effort to allege any scenario where [defendant] participated or knowingly concealed any known breach of fiduciary duties of any other Plan fiduciary.").[15]

## III.

### COUNTS II AND IV ARE ALSO DEFECTIVE BECAUSE THEY FAIL TO ALLEGE FACTS SUFFICIENT TO ESTABLISH THAT NORTHERN TRUST CAUSED PLAINTIFF'S LOSSES

Plaintiff's breach of fiduciary duty claims against Northern Trust suffer from another fatal shortcoming:  his Complaint fails to allege facts establishing that Northern Trust caused his losses, whether with respect to employee contributions or with respect to vested employer matching contributions.  Even fiduciaries are not liable for investment decisions made by a Plan participant in the exercise of his own discretion.  Under ERISA, "no person who is otherwise a fiduciary shall be liable . . .  for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c)(1)(A)(ii).  Moreover, under the statutory scheme, a fiduciary is liable only for losses "*resulting from*" its breach of duty.  29 U.S.C. § 1109(a) (emphasis added).  As the Second Circuit has pointed out, the statutory phrase "resulting from" places the burden of showing causation "on the *plaintiff*."  *Silverman* v. *Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 106 & n.1 (2d Cir. 1998) (emphasis added) (the causation requirement acts as a "check" on liability under ERISA "to ensure that solvent companies remain willing to undertake fiduciary responsibilities with respect to ERISA plans").

---

[15] Even if a fiduciary has actual knowledge of a co-fiduciary's breach, as Judge Cote held in *WorldCom* co-fiduciary liability does not attach absent a showing that a directed trustee knew or should have known that the investment was imprudent.  *See WorldCom*, 354 F. Supp. 2d at 450. As set forth above, the Complaint does not adequately allege that Northern Trust knew or should have known that an investment in Solutia stock was imprudent; the co-fiduciary liability allegations are therefore inadequate as well.

The Complaint and documents referenced in it establish that, as of January 1999 – three years before the earliest time that Northern Trust is alleged to have breached its fiduciary duties – plaintiff's investments in the Solutia Stock Fund were under his control.  The Complaint alleges that plaintiff is currently "an employee of Solutia" and "continues to have an account balance in the Plan."  (Compl. ¶ 13).  While the Complaint omits the date that plaintiff started employment with Solutia (perhaps because plaintiff was aware of Northern Trust's causation argument in its motion to dismiss in *Dickerson*), his proof of claim documents in the Solutia bankruptcy demonstrate that he has been working at Solutia for more than 30 years.  Indeed, he alleges that Solutia became indebted to him as of June 27, 1977, for wages and contributions to an employee benefit plan.  (Dell Dec. Ex. I.)  The Court may take judicial notice of documents filed by a party in a related action that, as here, are also referenced in the Complaint.  (Compl. ¶ 49 ("Plaintiff is asserting his claims against Solutia in the bankruptcy proceeding...")).  *See, e.g.*, *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) (on a motion to dismiss, "the court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings'") (citation omitted).  The Complaint also alleges that Plan participants became immediately vested in their own voluntary contributions (Compl. ¶ 66), participants who had been employed for more than three years were vested as of January 1, 1999 (Compl. ¶ 68), and 100% vested employees could transfer their investments, including employer matching contributions, out of the Solutia Stock Fund.  (Compl. ¶ 60).  Accordingly, at all relevant times, plaintiff was free to transfer any investments he had in the Solutia Stock Fund out of that Fund.  Since any losses arising from investments that plaintiff could have transferred out of the Solutia Stock Fund were not caused

by Northern Trust's alleged breaches of fiduciary duty, but by plaintiff's decision not to make the transfer, Northern Trust cannot be liable for such losses.

Plaintiff alleges that Northern Trust is nevertheless "responsible" for his losses because it "failed to apprise the Class, of the increasingly precarious financial state of the Company, thereby misrepresenting its soundness as an investment vehicle." (Compl. ¶ 324). However, this allegation is refuted by other allegations in the Complaint which establish that Northern Trust had only public information that was equally available to plaintiff. For example, the Complaint alleges that "the Director Defendants failed to apprise other Plan fiduciaries" of Solutia's true financial state (Compl. ¶ 324), and specifically acknowledges that Northern Trust did not have access to non-public information about Solutia's financial condition (Compl. ¶ 224). Moreover, the Complaint specifically pleads that Solutia's SEC filings, press releases and analyst calls were "made readily available to . . . Plan participants in particular." (Compl. ¶ 245). Thus, Plan participants had access to exactly the same information that Northern Trust did. The Court need not credit the general conclusory allegation about Northern Trust's so-called responsibility when it is "belied by more specific allegations of the complaint." *Hirsch* v. *Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).

Furthermore, as discussed at pages 6-8 above, Northern Trust had a limited set of responsibilities under the Plan documents and the Trust Agreement. Those documents do not contain any language making Northern Trust responsible for communicating with participants about the suitability of investments. *See WorldCom*, 354 F. Supp. 2d at 449 ("A directed trustee has no . . . obligation to render advice regarding" investment options.). Northern Trust's alleged failure to perform "acts falling outside of [its] own fiduciary responsibilities cannot give rise to liability." *Kling* v. *Fidelity Mngmt. Trust Co.*, 323 F. Supp. 2d 132, 143 (D. Mass. 2004) (a

"court must ask whether a person is a fiduciary with respect to the particular activity in question").

In short, plaintiff has not pleaded facts sufficient to establish that Northern Trust caused plaintiff's losses, and the Complaint should be dismissed for that reason as well. *See Silverman*, 138 F.3d at 106.

## IV.

## **<u>PLAINTIFF'S CLAIMS ARE TIME-BARRED</u>**

Plaintiff's claims against Northern Trust must be dismissed for the additional independent reason that they are time-barred by the applicable ERISA statute of limitations. The relevant portion of 29 U.S.C. § 1113 provides that "[n]o action may be commenced . . . . after . . . . three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2).[16] In order to start the running of the limitations period, "[a] plaintiff need not have knowledge of the relevant law" but rather "knowledge of all facts necessary to constitute a claim." *Caputo v. Pfizer, Inc*., 267 F.3d 181, 193 (2d Cir. 2001); *see also Gladman v. Mount Vernon Hosp*., No. 02-CV-7082(DAB)(DF), 2004 WL 848225 at *4 (S.D.N.Y. 2004) ("all that is required is for the plaintiff to 'have knowledge of all facts necessary to constitute a claim") (quoting *Caputo*); *Koch v. Dwyer*, No. 98 Civ. 5519(RPP), 1999 WL 528181 at *4 (S.D.N.Y. July 22, 1999) ("[T]he relevant knowledge for triggering the statute of limitations is knowledge of the facts or transaction that constituted the alleged violation. Consequently, it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality."). Courts have dismissed ERISA claims pursuant

---

[16] Plaintiff is clearly ineligible for any fraud or concealment exception to this section, as he has not pleaded any facts suggesting that Northern Trust engaged in fraud or fraudulent concealment. *See, e.g*., *Caputo*, 267 F.3d at 190-91 (exception applies in cases of "fraud or fraudulent concealment" and in order to survive dismissal, "'the circumstances constituting fraud or mistake shall be stated with particularity'") (citation omitted).

KL3 2611213.7

to Section 1113(2) where the plaintiff's knowledge is clear from the complaint and related papers.  For example in *Downes v. JP Morgan Chase & Co.*, No. 03 Civ. 8991(GEL), 2004 WL 1277991 at *4 (S.D.N.Y. June 8, 2004), the Court dismissed a claim where it was "simply implausible" from the circumstances that plaintiff did not know of the alleged breach or violation.  That is equally true here.

Plaintiff's allegations against Northern Trust are premised entirely on information that was public knowledge.  (Compl. ¶¶ 224, 242, 268, 269 (referring to "publicly available information," "information [that] had been disclosed to the public," "public information" and "public indicators")).  Since plaintiff was an employee of Solutia itself for decades, he had knowledge of the public information he claims ought to have caused Northern Trust to take action, and that Northern Trust did not take such action as of January 2, 2002 when he claims it should have acted.  Indeed, plaintiff specifically alleges that "Defendants and the Company regularly communicated with employees, including participants in the Plan, about the performance, future financial and business prospects of the Company's common stock, one of the largest asset groups in the Plan."  (Compl. ¶ 243; *see also id.* ¶¶ 245, 246, 248).

However, plaintiff did not commence this lawsuit until June 25, 2007, more than five years after January 2, 2002, the date on which he claims Northern Trust should have acted.  During a portion of the five-year period, the *Dickerson* case was pending as a putative class action for the same alleged wrongs.  However, even if plaintiff were entitled to tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), during the period in which the *Dickerson* case was pending in this Court, his claim would still be time-barred because the remaining time periods (in which the limitations period was not suspended) exceed three years.  The *Dickerson* action was commenced on October 7, 2004, and was dismissed by this Court on

March 30, 2006.  The period between January 2, 2002 and October 7, 2004 is more than 33 months, and the period between March 30, 2006 and June 25, 2007 is nearly 15 months, for a total of 48 months (*four years*).[17]

**V.**

**<u>THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE</u>**

Plaintiff's 330-paragraph Complaint is identical save for two paragraphs to the Second Amended Complaint in *Dickerson v. Feldman et al.*, No. 1:04-CIV-07935 (LAP), that was dismissed by this Court on March 30, 2006, due to Dickerson's lack of standing.  (Dell Dec. Ex. A).  Reiff's attorneys, who also represent Dickerson, amended the *Dickerson* complaint twice, pursuant to a Stipulation and Order that allowed an amendment "one last time ... with the understanding that no further amendments will be permitted."  (Dell Dec. Ex. J).  Nevertheless, on June 2, 2005, Dickerson's counsel sought leave from this Court to file a third amended *Dickerson* complaint, and the Court denied that request.  (Dell Dec. Ex. K.)  Yet now, two years later, counsel has filed a virtually identical complaint on behalf of a new plaintiff (and has moved up the name of one of the defendants in the caption, so as to make the case appear distinct).  Counsel has had ample opportunity to plead its clients' putative class-action claims. Accordingly, any request for leave to amend the Complaint should be denied.

---

[17] If the Court were to find that there is any question as to whether plaintiff was aware of the relevant facts constituting his claims on a date that makes them time-barred, and in the event that the Complaint is not dismissed on other grounds, Northern Trust respectfully requests that it be permitted to proceed first with limited document discovery and depositions of the plaintiff (and any other relevant witnesses) on this issue in order to resolve this portion of the motion (or to file a separate motion for summary judgment).  *See, e.g., Ambris v. Bank of New York*, No. 96 Civ. 0061 LAP, 1998 WL 702289 (S.D.N.Y. Oct. 7, 1998) (Preska, J.) (finding ERISA action time-barred and granting summary judgment after plaintiff's deposition revealed her knowledge of the underlying facts more than seven years before commencement).

## Conclusion

For the forgoing reasons the Complaint should be dismissed as to Northern Trust in all respects with prejudice.

Dated:  New York, New York
       September 17, 2007

                          Respectfully submitted,

                          KRAMER LEVIN NAFTALIS & FRANKEL LLP

                          By:    /s/ Michael J. Dell
                                Michael J. Dell (MD-7714)
                                Brendan M. Schulman (BS-5589)

                          Attorneys for Defendant The Northern Trust
                            Company
                        1177 Avenue of the Americas
                        New York, NY  10036
                        (212) 715-9100