**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
ROGER REIFF,                                    :
                                                :
                        Plaintiff,              :        Case No. 07-CV-06011 (LAP)
                                                :
vs.                                             :
                                                :
FRANK A METZ, JR., et al.,                      :
                                                :
                        Defendants.             :
--------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**ALL DEFENDANTS' MOTIONS TO DISMISS**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………………………………………………..iv

INTRODUCTION………………………………………………………………………...1

STATEMENT OF FACTS……………………………………………….………….…….2

I.    PARTIES TO THE LITIGATION……………………………………………….2

      A.    Plaintiff…………………………………………………………….………2

      B.    The Fiduciary Defendants………………………………………….………2

      C.    Solutia and The Plan's Unknown Fiduciary Defendants……….…….…………3

II.   THE STRUCTURE OF THE PLAN AND ITS ASSETS……………………….…...…4

III.  NORTHERN TRUST'S OBLIGATIONS
      UNDER THE TRUST AGREEMENT………….……….……….……….…..…….5

IV.   SOLUTIA'S INEVITABLE DOOM
      AND THE IMPRUDENCE OF ITS STOCK………….……….……….……...…..7

V.    THE ONLY PUBLIC INFORMATION ABOUT WHAT
      PLAN FIDUCIARIES DID EVIDENCES THEIR FAILURE
      TO COMPLY WITH THEIR FIDUCIARY DUTIES………….…………....…...…….8

ARGUMENT………….……….……….……….……….……….……….……...….…8

I.    PLAINTIFF SATISFIES RULE 8………………………………………………8

II.   THIS ACTION SHOULD NOT BE DISMISSED
      ON STATUTE OF LIMITATIONS GROUNDS ………….…………….……...…11

      A.    Plaintiff's Claims Are Timely………………….……….……….…………11

            1.    The Actual Knowledge Requirement of ERISA §413(2) ………..…….12

            2.    The Allegations of the Complaint in No Way
                  Establish That §413(2) Bars Plaintiff's Claims……….……….………13

            3.    Pertinent Case Law Rejects Defendants' Position……….……….……17

4.  The Statute of Limitations Was Tolled
    While The Dickerson Action Was Pending…….…….……….…………20

B.  Any Statute of Limitations Concern Will Likely Be Moot…….…….…..……22

III.  PLAINTIFF'S CLAIMS ARE PROPERLY BROUGHT
ON BEHALF OF THE PLAN PURSUANT TO ERISA §502(a)(2) …….…….………24

IV.  PLAINTIFF'S CLAIMS ARE PROPERLY BROUGHT
TO SEEK EQUITABLE RELIEF, AS WELL AS
MONETARY RELIEF, PURSUANT TO ERISA §502(a)(3) …….…….…….……..26

V.  PLAINTIFF HAS ADEQUATELY PLED THAT THE DIRECTOR
DEFENDANTS AND DEFENDANTS NELLING, STEMME, AND AST
ARE PLAN FIDUCIARIES…….………….……….…….…….……….…….………27

A.  Plaintiff has Adequately Pled the Director Defendants' Fiduciary Status……….29

B.  Plaintiff has Adequately Pled the Fiduciary Status
of Defendants Nelling, Stemme and Ast…….………….…….……….………29

VI.  COUNT I OF PLAINTIFF'S COMPLAINT STATES A VALID CLAIM…….……...31

A.  Defendants' "Insider Trading Defense" Has Been
Flatly and Consistently Rejected…….……….…….…….……….…….………31

B.  Defendants Were Required to Disregard Imprudent Plan Directives…….……...33

C.  Plaintiff Has Adequately Stated a Claim for Breach of Fiduciary Duty for
Defendants' Failure to Provide Complete and Accurate Information with
Respect to Investment in Solutia Stock and the Stock Fund…….…….……….35

D.  Plaintiff has Adequately Stated a Conflict of Interest Claim …….…….……38

E.  Plaintiff has Adequately Alleged that the Plan Defendants,
the Plan Committee, and the Director Defendants Had
Sufficient Responsibility to Impose Liability on Them
for Imprudent Investment in Solutia Stock…….………….…….…….……...40

VII.  PLAINTIFF STATES A CLAIM FOR BREACH OF THE DUTY TO MONITOR…...41

VIII.  PLAINTIFF STATES CLAIMS AGAINST NORTHERN TRUST…….…….………43

A.  ERISA Requires That Plan Assets be Held in Trust
By a Trustee Who Serves in a Fiduciary Capacity…….………….…….……43

B.    The Complaint Alleges that Northern Trust Had
Duties as Both a Discretionary and Directed Trustee……………………………44

    1.    The Complaint Alleges that Northern Trust Had
Duties as a Discretionary Trustee and Breached those Duties……………44

    2.    The Complaint Alleges that Northern Trust had
Duties as a Directed Trustee and Breached Those Duties……………..…46

        i.    The Common Law Standard……………………………………47

        ii.    The FAB Standard……………………………………………48

C.    Under any Legal Standard, the Complaint States a Claim that
Northern Trust Breached its Fiduciary Duty of Prudence…...………………….49

    1.    Plaintiff's Factual Allegations State a Claim………………………….50

    2.    Northern Trust's Relies on Unpersuasive
And Distinguishable Authority………………………………………53

D.    Plaintiff Adequately Pleads That
Northern Trust Caused The Plan's Losses………………………………………...55

E.    Plaintiff States a Claim Against Northern Trust
For Co-Fiduciary Liability……………………………………………………57

CONCLUSION……………………………………………………………….............61

# TABLE OF AUTHORITIES

Page

## CASES

*Allison v. Bank One - Denver*,
289 F.3d 1223 (10th Cir. 2002) …………………………………………………………56

*American Federation of Grain Millers, AFL-CIO v. Int'l Multifoods*,
116 F.3d 976 (2d Cir. 1997) ……………………………………………………………...29

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974)……………………………………………………………………...20

*Beam v. HSBC Bank USA*,
No. 02-0682E, 2003 WL 22087589 (W.D.N.Y. Aug. 19, 2003) ……………………….47, 53

*Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*,
12 F.3d 1292 (3d Cir.1993) ……………………………………………………………36

*Bona v. Barasch*,
2003 WL 1395932 (S.D.N.Y. March 20, 2003) …………………………………………13

*Bridges v. American Electric Power*,
498 F.3d 442 (6th Cir. 2007) …………………………………………………………..23

*Brock v. Nellis*,
809 F.2d 753 (11th Cir. 1987) …………………………………………………………12

*Broga v. Northeast Utils.*,
1999 WL 33483581 (D.Conn. Aug. 19, 1999) …………………………………………..19

*Broga v. Northeast Utils.*,
315 F.Supp.2d 212, 220-22 (D.Conn. 2004) …………………………………………….20

*Burstein v. Ret. Account Plan*,
334 F.3d 365 (3d Cir. 2003) ……………………………………………………………38

*Catholic Social Services, Inc. v. I.N.S.*,
232 F.3d 1139 (9th Cir. 2000) …………………………………………………………21

*Central States, Southeast and Southwest Areas Pension Fund v.
Central Transport, Inc.*,
472 U.S. 559 (1985) ……………………………………………………………………..35

*Caputo v. Pfizer, Inc.*,
267 F.3d 181 (2d Cir. 2001) ……………………………………………………… *passim*

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006) ……………………………………………….………22

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) …….……….…….……….…….……….……..11

*Conner v. Mid South Ins. Agency*,
943 F.Supp. 647 (W.D.La. 1995) ……………………………….…….…………18

*Cress v. Wilson*,
2007 WL 1686687 (S.D.N.Y. June 6, 2007) …….……….…….……….…….…...37, 39

*Crimi v. PAS Indus., Inc.*,
1995 WL 272580 (S.D.N.Y. 1995). …………………………………………….…18

*Devlin v. Empire Blue Cross and Blue Shield*,
274 F.3d 76 (2d Cir. 2001). ……………………………………………….………36

*Dickerson v. Feldman*,
426 F.Supp.2d 14 (S.D.N.Y. 2006) …………………….…….…….…………22, 24

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
974 F.2d 270 (2d Cir. 1992) …………….……….…….…….……….…………59

*DiFelice v. US Airways, Inc.*,
397 F.Supp.2d 735 (E.D. Va. 2005) ……………….……….…….…….………53, 54

*DiFelice v. US Airways, Inc.*,
497 F.3d 410 (4th Cir. 2007) …………………….…….…….……….…………..57

*Donovan v. Bierwirth*,
680 F.2d 263 (2d Cir.1982). …………….…….…….…….……….…………...39

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) ……………….…….…….……….…….………56

*Downes v. JP Morgan Chase & Co.*,
2004 WL 1277991 (S.D.N.Y. June 8, 2004) …….……….…….…….……..…20

*Eaves v. Penn*,
587 F.2d 453 (10th Cir. 1978). …….……….…….……….…….……….……...28

*Edes v. Verizon Communications, Inc.*,
417 F.3d 133 (1st Cir. 2005) ……………………………………………………...20

*Edgar v. Avaya, Inc.*,
No. Civ. A. 05-3598 SRC, 2006 WL 1084087 (D.N.J. Apr. 25, 2006). ………………………33

*Fink v. National Sav. & Trust Co.*,
772 F.2d 951 (D.C.Cir. 1985) …………………………………………………….12, 15

*FirsTier Bank v. Zeller*,
16 F.3d 907 (8th Cir. 1994). …………………………………………………….44, 47

*Free v. Briody*,
732 F.2d 1331 (7th Cir. 1984). …………………………………………………...42

*Frommert v. Conkright*,
433 F.3d 254 (2d Cir. 2006) …………………………………………………...13

*Fulk v. Bagley*,
88 F.R.D. 153 (M.D.N.C. 1980) ……………………………………………………28

*Gee v. UnumProvident Corp.*,
2005 WL 534873 (E.D. Tenn. Jan. 13, 2005). …………………………………………25, 32

*Gerosa v. Savasta & Co.*,
329 F.3d 317 (2d Cir. 2003) …………………………………………………...59

*Gluck v. Unisys Corp.*,
960 F.2d 1168 (3d Cir. 1992) …………………………………………………….12

*Graden v. Conexant Sys., Inc.*,
496 F.3d 291 (3d Cir. 2007) …………………………………………………...23

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) …………………………………………………………….26, 27

*Haas v. Pittsburgh Nat'l Bank*,
526 F.2d 1083 (3d Cir. 1975) …………………………………………………….21

*Hamilton v. Carell*,
243 F.3d 992 (6th Cir. 2001). …………………………………………………….28

*Harris Trust and Savings Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000) …………………………………………………………….27, 59

*Harzewski v. Guidant Corp.*,
489 F.3d 799 (7th Cir. 2007) ………………………………………………………………..23

*Heidgerd v. Olin Corp.*,
906 F.2d 903 (2d Cir. 1990) ………………………………………………………………...29

*Henry v. Champlain Enterprises, Inc.*,
445 F.3d 610 (2d Cir. 2006) ………………………………………………………………....14

*Hill v. Bellsouth Corp.*,
312 F. Supp. 2d 1361 (N.D. Ga. 2004) ………………………………………………………25

*Howard v. Shay*,
100 F.3d 1484 (9th Cir. 1996) ………………………………………………………………14

*Howell v. Motorola, Inc.*,
337 F.Supp.2d 1079 (N.D. Ill 2004) …………………………………………………….25, 30

*Hull v. Policy Sys. Corp.*,
No. 00-778-17, 2001 WL 1836286 (D.S.C. 2001) ………………………………………….33

*In re ADC Telecomm. ERISA Litig.*,
No. 03-2989, 2004 WL 1683144 (D. Minn. July 26, 2004) …………………………………25

*In re AEP ERISA Litig.*,
327 F.Supp.2d 812 (S.D. Ohio 2004) ……………………………………………..25, 28, 33, 59

*In re AOL Time Warner Sec. & ERISA Litig.*,
No. 02-8853, 2005 WL 563166 (S.D.N.Y. Mar., 2005) ……………………………………25, 53

*In re Cardinal Health, Inc. ERISA Litig.*,
424 F.Supp.2d 1002 (S.D. Ohio 2006)………………………………………………………..53

*In re CMS Energy ERISA Litig.*,
312 F.Supp.2d 898 (E.D. Mich. 2004) …………………………………………….25, 33, 58, 59

*In re Electronic Data Systems Corp.*,
224 F.R.D. 613 (E.D.Tex. 2004) ……………………………………………………………57

*In re Electronic Data Systems Corp. ERISA Litig.*,
305 F.Supp.2d 658 (E.D.Tex. 2004) ……………………………………………25, 33, 36, 39

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
284 F.Supp.2d 511 (S.D.Tex. 2003) …………………………………………………………*passim*

*In re Enron Corp. Sec. Derivative & ERISA Litig.*,
2006 WL 4381143 (S.D. Tex. Dec. 27, 2006) …………………………………………………...21

*In re Dynegy ERISA Litig.*,
309 F.Supp.2d 861 (S.D. Tex. 2004) …………………………………………………………...25

*In re Ferro Corp. ERISA Litig.*,
422 F. Supp. 2d 850 (N.D. Ohio 2006) ……………………………………………………...34, 35

*In re Flag Telecom Holdings, Inc.*,
352 F.Supp.2d 429 (S.D.N.Y. 2005) …………………………………………………………...21

*In re Honeywell Int'l ERISA Litig.*,
No. 03-1214, 2004 WL 3245931 (D.N.J. June 14, 2004) ……………………………………39, 40

*In re Ikon Office Solutions, Inc., Sec. Litig.*
86 F.Supp.2d 481 (E.D. Pa. 2000) ……………………………………………………………...25

*In re Initial Public Offering Sec. Litig.*,
2004 WL 3015304 (S.D.N.Y. Dec. 27, 2004) ………………………………………………….21

*In re Issuer Plaintiff Initial Public Offering Antitrust Litig.*,
2002 WL 31132906 (S.D.N.Y. Sept. 25, 2002) ………………………………………………21

*In re JDS Uniphase Corp. ERISA Litig.*,
No. 03-04743, 2005 WL 1662131 (N.D. Cal. July 14, 2005) …………………………32, 36, 39

*In re Marsh ERISA Litig.*,
2006 WL 3706169 (S.D.N.Y. Dec. 14, 2006) ………………………………………………….26

*In re McKesson HBOC, Inc. ERISA Litig.*,
No. 00-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) …………………………...33

*In re Polaroid ERISA Litig.*,
362 F.Supp.2d 461 (S.D.N.Y. 2005). …………………………………………………*passim*

*In re RCN Litig.*,
No. 04-5068 (SRC), 2006 U.S. Dist. LEXIS 12929 (D.N.J., Mar. 22, 2006) …………………53

*In re Reliant Energy ERISA Litig.*,
336 F.Supp.2d 646 (S.D. Tex. 2004) ……………………………………………………...25, 30

*In re Schering-Plough Corp. ERISA Litig.*,
420 F.3d 231 (3d Cir. 2005) ……………………………………………………………………26

*In re Sears, Roebuck & Co. ERISA Litig.*,
No. 02-8324, 2004 WL 407007 (N.D.Ill. March 3, 2004). ...............................32, 33, 36, 59

*In re Sprint Corp. ERISA Litig.*,
No. 03-2202, 2004 WL 1179371 (D. Kan. May 27, 2004) ..............................25, 47, 53

*In re Syncor ERISA Litig.*,
351 F. Supp. 2d 970 (C.D. Cal. 2004) ........................................................................25

*In re Unisys Saving Plan Litig.*,
173 F.3d 145 (3d Cir. 1999). ...................................................................................14

*In re WorldCom, Inc. ERISA Litig.*,
263 F.Supp.2d 745 (S.D.N.Y. 2003) .................................................................*passim*

*In re WorldCom, Inc. ERISA Litig.*,
354 F.Supp.2d 423 (S.D.N.Y. 2005) .......................................................................53, 56

*In re Xcel Energy ERISA Litig.*,
312 F.Supp.2d 1165 (D. Minn. 2004) .....................................................................25, 32

*In re Xerox ERISA Litig.*,
483 F.Supp.2d 206 (D.Conn. 2007) ............................................................................26

*In the Matter of Cady, Roberts & Co.*,
Exchange Act Release No. 34-6668, 40 S.E.C. 907, 1961 WL 60638 (Nov. 8, 1961) ............31

*Kelley v. Household Int'l, Inc.*,
No. 02-9281, 2004 WL 723843 (N.D.Ill. March 30, 2004)..........................................33

*Kling v. Fidelity Mgt. Trust Co.*,
270 F.Supp.2d 121 (D.Mass. 2003) ......................................................................25, 26

*Kling v. Fidelity Mgt. Trust Co.*,
323 F.Supp.2d 132 (D. Mass. 2004) .................................................................*passim*

*Koch v. Dwyer*,
No. 98-5519, 1999 WL 528181 (S.D.N.Y. July 22, 1999). ......................................25, 47, 53

*Krohn v. Huron Mem'l Hosp.*,
173 F.3d 542 (6th Cir.1999) ......................................................................................36

*Kuper v. Iovenko*,
66 F.3d 1447 (6th Cir. 1995) ...............................................................................26, 34

*Kurz v. Philadelphia Elec. Co.*,
96 F.3d 1544 (3d Cir. 1996) ……………………………………………………….19

*LaLonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004) …………………………………………………………..25

*Leigh v. Engle*,
727 F.2d 113 (7th Cir. 1984) ………………………………………………….28, 42

*Liss v. Smith*,
991 F.Supp. 278 (S.D.N.Y. 1998) ……………………………………………..29, 42

*LoPresti v. Terwilliger*,
126 F.3d 34 (2d Cir.1997) ………………………………………………………….28

*Maher v. Strachan Shipping Co.*,
68 F.3d 951 (5th Cir. 1994) …………………………………………………….....18

*Martin v. Consultants & Administrators, Inc.*,
966 F.2d 1078 (7th Cir. 1992) …………………………………………………….19

*Martin v. Feilen*,
965 F.2d 660 (8th Cir. 1992) ……………………………………………………...42

*Mass. Mutual Life Ins. Co. v. Russell*,
473 U.S. 134 (1985). ……………………………………………………………...24

*Mehling v. New York Life Ins. Co.*,
163 F.Supp.2d 502 (E.D. Pa. 2001) ……………………………………………...42

*Mertens v. Hewitt Assoc's*,
508 U.S. 248 (1993) ……………………………………………………………....48

*Moench v. Robertson*,
62 F.3d 553 (3d Cir.1995). ………………………………………………………..34

*Pedraza  v. Coca-Cola Co.*,
456 F. Supp. 2d 1262 (N.D. Ga. 2006) …………………………………………..38

*Pegram v. Herdrich*,
530 U.S. 211 (2000) ……………………………………………………………....40

*Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co.*,
698 F.2d 320 (7th Cir. 1983) …………………………………………………......35

*Presley v. Carter Hawley Hale Profit Sharing Plan*,
No. C 97-4316 SC, (N.D. Cal., June 11, 1998) ……………………………………………17

*Radiology Center, S.C. v. Stifel, Nicholas & Co.*,
919 F.2d 1216 (7th Cir. 1990) ……………………………………………………………12

*Rankin v. Rots*,
278 F. Supp. 2d 853 (E.D. Mich. 2003) ……………………………………………*passim*

*Rose v. Arkansas Valley Environmental & Utility Authority*,
562 F.Supp.2d 1180 (W.D. Mo. 1983) ……………………………………………………21

*Roth v. Sawyer-Cleator Lumber Co.*,
61 F.3d 599 (8th Cir. 1995). ………………………………………………………………26

*Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*,
332 F.3d 1198 (9th Cir. 2003) ……………………………………………………………32

*Sherrill v. Federal Mogul Corp. Retirement Programs Committee*,
413 F.Supp.2d 842 (E.D.Mich. 2006) ……………………………………………………13

*Smith v. Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002) …………………………………………………………………9

*Springate v. Weighmasters Murphy, Inc. Money Purchase Pens. Plan*,
217 F.Supp.2d 1007 (C.D.Cal. 2002) ……………………………………………………58

*Steinman v. Hicks*,
352 F.3d 1101 (7th Cir. 2003) ……………………………………………………………26

*Summers v. State Street Bank & Trust Co.*,
453 F.3d 404 (7th Cir. 2007) …………………………………………………44, 47, 49, 53

*Swierkiewicz v. Sorema, N.A*,
534 U.S. 506 (2002) …………………………………………………………………………8

*Tatum v. R.J. Reynolds Tobacco Co.*,
392 F.3d 636 (4th Cir. 2004) ………………………………………………………………25

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) …………………………………………………………………35, 36

*Vivien v. WorldCom, Inc.*,
No. C02-01329WHA, 2002 WL 31640557 (N.D.Cal. July 26, 2002) ……………………56

*Waller v. Blue Cross of California,*
32 F.3d 1337 (9th Cir. 1994). ……………………………………………………12

*Wells v. Dean Machine Products, Inc.,*
2000 WL 1277991 (S.D.N.Y. June 8, 2004) ……………………………………20

*Wynder v. McMahon,*
360 F.3d 73 (2d Cir. 2004). ………………………………………………………8

## STATUTES, RULES AND REGULATIONS

15 U.S.C. §78l. …………………………………………………………………12

17 C.F.R. §230.144(e)(1)(I). ……………………………………………………46

29 C.F.R. §2509.75-8 at D-4and FR-17. …………………………………………42

29 C.F.R. §2550.404a-1(b)(1)(A)(i). ……………………………………………14

29 C.F.R. §2550.404(c)-1. ………………………………………………………55

29 C.F.R. §2550c-1(d)(2) …………………………………………………………56

29 U.S.C. §1002……………………………………………………………………28

29 U.S.C. §1103…………………………………………………………43, 44, 46, 50

29 U.S.C. §1104…………………………………………………………34, 35, 55, 57

29 U.S.C. §1105……………………………………………………………4, 42, 57

29 U.S.C. §1107…………………………………………………………………45

29 U.S.C. §1024…………………………………………………………………36

29 U.S.C. §1109. …………………………………………………………………24

29 U.S.C. §1110…………………………………………………………………45

29 U.S.C. §1113. …………………………………………………………………11

29 U.S.C. §1132……………………………………………………………24, 25, 26

57 Fed. Reg. 46922………………………………………………………………24, 57

57 Fed. Reg. 46906…………………………………………………………..55, 56

Fed. R. Civ. P. 8 ………………………………………………………………….8

Fed. R. Civ. P. 11 ………………………………………………………………...15

Fed. R. Civ. P. 15 ………………………………………………………………...11

## **OTHER AUTHORITY**

Amended Brief of the Secretary of Labor as Amicus Curiae
Opposing the Motions to Dismiss, August 30, 2002 ……………………………………….49

Bogert & Bogert, *Law of Trusts and Trustees*………………………………………….35

DOL ERISA Opinion Letter 83-6A, 1983 WL 22495 (Jan. 24, 1983). ……………………….45

Field Assistance Bulletin 2004-03……………………………………………………*passim*

*Patricia Wick Hatamyar*, See No Evil? The Role of the Directed Trustee under ERISA,
64 Tenn. L. Rev. 1 (1996) ……………………………………………………………55

Restatement (Second) of Trusts…………………………………………………….37, 47, 59

## INTRODUCTION

This class action is brought to recover losses incurred by the Solutia Inc. Savings and Investment Plan (the "Plan").  Between September 1, 1997 and December 15, 2003 (the "Class Period"), Defendants caused the Plan to invest hundreds of millions of dollars in the common stock of Solutia, Inc. ("Solutia" or the "Company"), by including the Solutia Stock Fund (the "Stock Fund") as one of the investment funds under the Plan, even though Solutia was burdened with enormous debt and its stock was not a prudent retirement investment.  Incredibly, Defendants waited until December 15, 2003 – just two days before Solutia filed for bankruptcy – before they removed Solutia stock as a retirement option and ceased making Company matching contributions in the Stock Fund.  As a result, Defendants – who owe the Plan and its participants the "highest duty known to the law" – caused the Plan to lose hundreds of millions of dollars.  On December 6, 2006, the Department of Labor ("DOL") announced its conclusion that the Plan's fiduciaries violated ERISA and breached their fiduciary obligations with respect to the Plan.

All Defendants have now moved to dismiss this action on a variety of hyper-technical and fact-intensive grounds.  In support thereof, the Solutia Defendants[1] have filed a brief, a declaration and nine exhibits totaling 590 pages.  The Northern Trust Company ("Northern Trust") has filed a separate motion, a brief, a declaration and twelve exhibits totaling an additional 316 pages.  On the basis of nearly a thousand pages – mostly plan documents that fully support Plaintiff's claims – Defendants ask this Court to dismiss this action as a matter of law.  For the reasons that follow, their request should be denied.

---

[1]  The "Solutia Defendants" refer to all the Defendants except Northern Trust.

## STATEMENT OF FACTS

**I.    PARTIES TO THE LITIGATION**

**A.    Plaintiff**

Plaintiff Roger Reiff is a current employee of Solutia and a participant in the Plan.  ¶13.[2]

**B.    The Fiduciary Defendants**

The Complaint describes who the Defendants are and the fiduciary responsibilities each had with respect to the Plan.  The Plan's Employee Benefits Plan Committee (the "Plan Committee") is described as a named fiduciary of the Plan and is charged with administering the Plan.  ¶14; *see also* Trust Agreement,[3] §1.1(u)(i), at 5.  Defendant Sheila Feldman was the Chairman of the Plan Committee from at least June 25, 1999 through December 27, 2002. ¶17.  Defendant Susan E. Bevington was the Chairman of the Plan Committee and signed the Plans' Form 11-K for the year ended 2002 in that capacity.  ¶19.  Defendant Helen L. Nelling identified herself as the Plan Administrator in an October 15, 2002 filing for the Plan.  ¶18.  Defendant Nancy Stemme identified herself as the Plan Administrator in a filing of the Plan's Form 11-K for 2003.  ¶20.  Defendant Christopher N. Ast signed the Plan's 11-K and identified himself as the representative of the Plan.  ¶21.

The Plan's Pension and Savings Fund Committee (the "Fund Committee") is described as "a named fiduciary of the Plan ... charged with the authority to manage and control the Plan assets."  ¶15.  According to the Trust Agreement, the Fund Committee is "responsible for (A) establishing and terminating Investment Funds, (B) establishing investment guidelines for each

---

[2]  "¶__" refers to the Complaint.

[3]  Solutia Inc. Defined Contribution and Employee Stock Ownership Trust Agreement (the "Trust Agreement") attached as Exhibit L to Declaration of Michael J. Dell ("Dell Decl.") and as Exhibit G to Declaration of Jennifer Politte ("Politte Decl.").

of the Investment funds, and (C) the management and control of the assets of each Investment Fund...." Trust Agreement, §1.1(u)(ii), at 5. Plaintiff names the members of the Plan and Fund Committees as well as other fiduciaries not yet known to Plaintiff as John Doe Defendants. ¶43.

The Complaint also names fourteen (14) other Defendants who served on Solutia's Board of Directors during the Class Period (the "Director Defendants"), who along with the Company's Chief Executive Officers appointed and oversaw the Plan Committee. ¶¶14, 23-37. The Director Defendants also appointed and oversaw the Fund Committee. ¶¶15, 23-37, 98.

Finally, Northern Trust served as the Plan's Trustee. ¶42.

## C.    Solutia and The Plan's Unknown Fiduciary Defendants

Non-party Solutia is the Plan's sponsor and a fiduciary with discretionary authority and control over the management and administration of the Plan as well as authority and control with respect to management or disposition of the Plan's assets. ¶48. Solutia is not named as a defendant because of its pending bankruptcy. ¶¶47, 49.

The Trust Agreement provides that:

> Notwithstanding anything herein to the contrary, the Corporation, the [Fund] Committee, the [Plan Committee] or the Third Party Named Fiduciary may in its sole discretion delegate any of its responsibilities hereunder to any person or entity selected by it. Such a delegation shall be in writing and shall specify the identity of the delegate and the responsibilities delegated to such person.

Trust Agreement, §17.2, at 63.

> The Corporation shall furnish the Trustee from time to time with a list of the names and signatures of all Persons (other than the Corporation) authorized to act as the Corporation designee under Section 1.1, as a Named Fiduciary, as members of the Committee, on in any other manner authorized....

Trust Agreement, §25.2, at 74.

3

Similarly, the 1997 Plan Document contained a provision, entitled "Status of Delegates," which states:

> The Fund Committee, as a Named Fiduciary, may delegate its authority, duties and responsibilities to other persons, including the Corporation and its officers, employees or agents.  Such a delegation shall be in writing and specify the identity of the delegate and the responsibilities delegated to such person.

1997 Plan Document, §19.14, at 84 (Politte Decl. Ex. A).  Similar delegation language is contained in the 2002 version of the Plan.  2002 Plan Document, §13.7, at 46 (Politte Decl. Ex. B).  Because of these broad delegation provisions, Plaintiff has made broad allegations with respect to as yet unidentified fiduciaries named as John Doe Defendants.  ¶¶43-44.[4]

## II.    THE STRUCTURE OF THE PLAN AND ITS ASSETS

The Plan is a defined contribution plan established on September 1, 1997.  ¶50.  The purpose of the Plan, as stated in its Summary Plan Description ("SPD"), is to allow participants to save money for their retirement. ¶51; *see also* Trust Agreement, at 1 (stating that the Plan was adopted "to provide savings opportunities and retirement income for Eligible Employees").

The Plan consists of two parts: (1) a 401(k) plan for which the fiduciaries select investment funds for participant contributions; and (2) an Employee Stock Ownership Plan ("ESOP") managed by the Plan's fiduciaries which held additional Solutia stock and was used to satisfy the Company's matching contributions.  From the Plan's inception until December 31, 2001, the Company, through its Board of Directors, officers and employees, had the authority to suspend or terminate an investment fund in the 401(k) plan.  ¶54.  Effective January 1, 2002, the Fund Committee or its delegates had the authority to suspend or terminate an investment fund in the 401(k) plan.  ¶54.  One of the investment funds selected by Plan fiduciaries for the 401(k)

---

[4]  Plaintiff does not concede that delegation of all investment responsibilities of a fiduciary are permissible.  Some may violate ERISA § 405(c)'s prohibition on delegating trustee responsibilities to manage and control the assets of a plan.  29 U.S.C. § 1105(c).

4

plan was the Stock Fund, which invested primarily in Solutia common stock. ¶57. Solutia matched all employee contributions to the Plan with an investment in the Stock Fund, and invested all dividends received from investments in the Monsanto Stock Fund and the Pharmacia Stock Fund in the Stock Fund as well. ¶¶ 55-56, 60-61.

With intimate knowledge of the deteriorating condition of the Company, the Plan's fiduciaries kept the Stock Fund as an investment fund for the 401(k) plan, and forced the Company's matching contributions into the Stock Fund (and prohibited participants from transferring the matching contributions out of the Stock Fund), until December 15, 2003 – just two days before Solutia filed for bankruptcy. ¶62, 76.

In 1997, the Plan held roughly 12.77 million shares of Solutia common stock. By year end 2003 – as the Company's stock value sank to record lows – the Plan held roughly 17.74 million shares of Solutia stock. ¶¶78, 84. During this period the Plan's booked losses on its investment in Solutia stock exceeded $327 million. ¶88. "None of the risks associated with the Plan's extreme concentration of Solutia Stock were disclosed to Plan participants." ¶86.

## III.   NORTHERN TRUST'S OBLIGATIONS UNDER THE TRUST AGREEMENT

Northern Trust served as the Plan's Trustee. ¶42. Among the powers granted to Northern Trust was the:

> Power to invest in shares of common stock of the Corporation and to reinvest dividends and distributions received on such shares in additional shares of common stock of the Corporation.

Trust Agreement, §9.3(c)(i), at 35. With respect to investment of Plan assets in Solutia stock through the Stock Fund, it provides:

> The Solutia Stock Fund, except to the extent used to maintain liquidity for distributions and expenses or as otherwise provided below, shall be invested and reinvested by the Trustee in shares of the common stock of the Corporation:
>
> The primary purpose of this fund shall be to invest in and hold the common stock of the Corporation.  The Trustee may, but shall not be required to, place amounts received by it for the purpose of common stock investment in temporary investments, if, in the opinion of the Trustee, market conditions are such that investment in common stock of the Corporation would be disruptive or could not be accomplished, or if the investment would be prohibited by law, or the Trustee is notified or otherwise should have reasonably known, that the investment would adversely affect the qualified status of the Plan or the exempt status of the Trust under the Code.  In the operation of this account, the Trustee shall have no investment discretion, except as hereinafter provided, and no duty or responsibility to determine the investment quality or prudence of such investment . . .

Trust Agreement, §5.1, at 16-17.

Northern Trust "acknowledges that it assumes the fiduciary duties established by this Agreement."  Trust Agreement, §15, at 60; *see also* §2.4 at 9 ("The Fund shall be … dealt with in accordance with this Agreement and to the extent discretionary authority is granted to the Trustee by this Agreement in accordance with ERISA.").  The Trust Agreement requires that funds held by Northern Trust are to be held for the benefit of plan participants.  Trust Agreement, §2.5, at 9.  It describes the "Standard of Care" for the investment of the Stock Fund as follows:

> The Trustee, each Asset Manager and each Named Fiduciary shall discharge their respective investment duties as provided under Sections 4 and 5 hereof with the ***care, skill, prudence and diligence*** under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims....

Trust Agreement, §9.1, at 31 (emphasis added).

## IV.    SOLUTIA'S INEVITABLE DOOM
##          AND THE IMPRUDENCE OF ITS STOCK

Since its inception in 1997, Solutia was saddled with enormous debt.  ¶¶101-123.  This problem was readily known to the Solutia Defendants, and especially the Inside Director Defendants,[5] given their positions within the Company. ¶¶37, 40.  By January 2, 2002, the extent of those liabilities began to be publicly disclosed such that a prudent fiduciary – even one without insider information – would have recognized the imprudence of investing retirement savings in Solutia stock.  ¶224.  The Company's financial condition continued to deteriorate as bad news was disclosed.  Moody's downgraded Solutia's bond ratings to Ba1 and downgraded it again on July 12, 2002.  ¶¶225-226.  On October 10, 2002, Solutia announced an investigation of its rubber chemicals division for collusion and price-fixing resulting in its stock price dropping even lower.  ¶¶227-228.

Further revelations about Solutia's financial problems included its under-reservation for verdicts in various toxic tort litigation.   ¶340.   By August 8, 2003, Moody's downgraded Solutia's senior unsecured debt to Caa3, reflecting Moody's determination that Solutia's bonds were "subject to very high credit risk" and near default.  ¶231.  On November 14, 2003, Solutia admitted in its 10-Q that it was considering filing for bankruptcy. ¶233.  A few weeks later, on the basis of the enormous liabilities with which it had been burdened since its creation and publicly known since 2002, Solutia filed for bankruptcy.  ¶¶234-35.

---

[5]  The Inside Director Defendants include Defendants Hunter, Clausen, Potter, Miller, Hatfield, Mulcahy, Narodick, Donovan, Jenkins, Metz, Ruckelshaus, Slaughter, Lochner and Blakely, because they were either executive officers or members of Solutia's Audit Committee.

## V. THE ONLY PUBLIC INFORMATION ABOUT WHAT PLAN FIDUCIARIES DID EVIDENCES THEIR FAILURE TO COMPLY WITH THEIR FIDUCIARY DUTIES

Because the information and documents necessary to support Plaintiff's allegations are "for the most part solely in the possession of the Defendants, or Solutia," Plaintiff lacks the knowledge and information, and the required discovery, in order to support his claims. ¶8. The only publicly available information regarding what actions the fiduciaries did or did not take in the exercise of their fiduciary duties is that:

> On December 6, 2006, the Department of Labor ("DOL") issued a letter stating that, based on its investigation of the Plan, Solutia – through its fiduciaries – breached its fiduciary obligations and violated provisions of ERISA with respect to the Plan.

¶278.

## ARGUMENT

## I. PLAINTIFF SATISFIES RULE 8

Rule 8 requires that a complaint contain a "short and plain statement of the claim entitling plaintiffs to relief and a demand for judgment." Fed.R.Civ.P. 8(a)(2). The complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema, N.A*, 534 U.S. 506, 512 (2002) (quotation marks and citation omitted). As a result, "rule 8 pleading is extremely permissive." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004). "Dismissal pursuant to [Rule 8] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* at 80 (quotation marks and citations omitted).

Despite this "extremely permissive" standard, Defendants contend that Plaintiff's 90 page, 330 paragraph Complaint is insufficiently detailed. Sol. Def. Mem. at 17-19. First,

Defendants contend that Rule 8 is violated because "without alleging any facts describing each Defendant's role in the alleged misconduct, Plaintiff broadly asserts that all of the Defendants are liable for all alleged fiduciary and co-fiduciary breaches asserted in the Complaint." *Id.* at 18. Even a cursory review of the Complaint reveals that it is divided into four counts, and only one of those counts is directed to all Defendants: Count I is brought against all defendants except Northern Trust; Count II is brought against Northern Trust alone; Count III is brought only against the Director Defendants and John Doe's 1-100; and Count IV, asserting co-fiduciary liability, is brought against all Defendants but contains particularized allegations regarding each class of defendants. Moreover, in ERISA fiduciary breach suits, the mere "fact that most of Plaintiffs' claims apply to all Defendants and that the factual allegations refer to them collectively does not render the Complaint violative of Rule 8." *In re Polaroid ERISA Litig.*, 362 F.Supp.2d 461, 471 (S.D.N.Y. 2005). In addition, "Rule 8 does not require Plaintiffs to identify each of the ... Defendants by name each time the Complaint makes an allegation that applies equally to all." *Id.*

Second, Defendants contend that Rule 8 is violated because "Plaintiff fails to plead any facts to support his conclusory assertions as to each Defendant's particular fiduciary responsibility." Sol. Def. Mem. at 18. Defendants' contention fails as a matter of law because "an ERISA complaint need do little more than track the statutory definition to establish a defendant's fiduciary status in compliance with Rule 8." *Polaroid*, 362 F.Supp.2d at 470; *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir. 2002) (finding that conclusory pleadings adequately alleged fiduciary duty). Defendants' contention is also factually inaccurate

because Plaintiff has pled specific facts to support his allegations of Defendants' fiduciary responsibilities.  ¶¶14-43, 93-99.

Finally, Defendants contend that Rule 8 is violated because "Plaintiff fails to plead any facts setting forth any details as to what each of the Defendants did, or did not do, to breach his or her particular fiduciary or co-fiduciary duties under ERISA."  Sol. Def. Mem. at 18.  This, too, is incorrect.  Plaintiff has made particularized allegations with respect to each of the groups of Defendants regarding their fiduciary and co-fiduciary breaches.  ¶¶256-274, 307-17.  Plaintiff has alleged, for example, that the Inside Director Defendants:

> breached their fiduciary duties of prudence and loyalty by failing to take adequate steps to protect the Plan's investments in Solutia Stock.  These steps should have included, but were not limited to: (i) seeking the elimination of the Solutia Stock Fund as a Plan investment option when it was clear that Solutia Stock was artificially inflated in price and was too speculative to serve as a prudent retirement investment; (ii) seeking to restrict or liquidate Plan investments in Solutia Stock once it became clear that Solutia Stock was not a prudent investment; (iii) seeing that other fiduciaries whom they appoint and monitor were provided with complete and accurate information regarding the risks of investment in Solutia Stock; and, (iv) seeing that an independent fiduciary was appointed to make decisions regarding the Plan's investments in Solutia Stock, once it became clear that there were serious questions regarding the prudence of such investments, so that decisions would be made in the sole interest of Plan participants and would not be influenced by the corporate duties of the Inside Director Defendants or company management to promote the company and boost its stock price.  The Inside Director Defendants should have initiated these steps themselves or should have appointed fiduciaries who took these steps.  But the Inside Director Defendants breached their fiduciary duties by failing to appoint such fiduciaries, and failing to adequately monitor the fiduciaries they did appoint.  Solutia and the Inside Director Defendants breached their ERISA obligations by putting the Company's financial interests ahead of the interests of the Plan's participants.

¶258.  These are highly particularized allegations that amply satisfy Rule 8.  Furthermore, since the facts concerning the actual breaches of fiduciary duty by the Defendants have not yet been

the subject of discovery, liberal amendment of the complaint under Fed. R. Civ. P. 15(a) should

be allowed.  *See Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995).

## II.     THIS ACTION SHOULD NOT BE DISMISSED ON STATUTE OF LIMITATIONS GROUNDS

### A.     Plaintiff's Claims Are Timely

The limitations period for ERISA breach of fiduciary duty claims is governed by ERISA

§413, which provides that an action must be brought within:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

ERISA §413, 29 U.S.C. §1113.  This section thus creates a general six year statute of limitations,

shortened to three years in cases where the plaintiff has actual knowledge, and potentially

extended beyond six years in cases involving fraud or concealment.

Defendants seize upon the exception in §413(2) to argue that Plaintiff's claims are time-

barred "because Plaintiff filed this action more than three years after he had actual knowledge of

the alleged fiduciary breaches in this case…."  Sol. Def. Mem. at 10; N.T. Mem. at 33.  As

explained below, Plaintiff did not have, and could not have had, the requisite actual knowledge

because the actions taken or not taken by Defendants in their fiduciary capacities has never been

made publicly available.

11

### 1.    The Actual Knowledge Requirement of ERISA §413(2)

The Second Circuit first addressed the exception in §413(2) in *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001), holding that a plaintiff has "actual knowledge of the breach or violation" when "he has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated [ERISA]." *Id.* at 193 (citing *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)).  According to the court:

> While a plaintiff need not have knowledge of the relevant law, … he must have knowledge of all facts necessary to constitute a claim.  Such material facts 'could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm.'  *Gluck*, 960 F.2d at 1177.  However, '**[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty … cannot communicate the existence of an underlying breach.**'  *Fink v. National Sav. & Trust Co.*, 772 F.2d 951, 957 (D.C.Cir. 1985); *see also Waller v. Blue Cross of California*, 32 F.3d 1337, 1341 (9th Cir. 1994).

*Caputo*, 267 F.3d at 193 (emphasis added).

To charge a plaintiff with actual knowledge of an ERISA violation, notice that something was awry is not enough; he must have had specific knowledge of the actual breach of duty upon which he sues.  *Id.* (citing *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir. 1987)).  The actual knowledge standard of §413(2) may thus be contrasted to that applicable to securities actions, where the standard is only "discovery of the facts constituting the violation."  15 U.S.C. §78I(e). *See, e.g., Radiology Center, S.C. v. Stifel, Nicholas & Co.*, 919 F.2d 1216, 1222 (7th Cir. 1990) (contrasting §413(2) with the constructive knowledge standard of Illinois' statute of limitations for securities actions).[6]

---

[6] A constructive knowledge provision was removed from §413(2) in 1987.  *See Caputo*, 267 F.3d at 194.  Moreover, other ERISA limitations periods, in contrast to §413, give a plaintiff three years to bring suit after the earliest date on which he "acquired or *should have acquired* actual knowledge of the existence of such cause of action."  ERISA §§ 4003(e)(6)(B), 4070(f)(2)(A), 4301(f)(2) (emphasis added).

*Caputo* concerned allegations that Pfizer breached its fiduciary duties by inducing employees to retire without informing them that it was about to offer an early retirement program. The Second Circuit held that the employees did not have actual knowledge of the alleged breaches when the program was announced, since the offering was neither inherently suspect nor inherently a statutory violation. The court concluded, "By holding that plaintiffs were barred from bringing their action three years after learning of the [offering]—the date on which plaintiffs *should have known* that Pfizer *may have* breached its fiduciary duty—the district court erroneously construed §413(2) as being triggered upon plaintiffs' 'constructive knowledge' of a breach." *Caputo*, 267 F.3d at 193-194. *See also Frommert v. Conkright*, 433 F.3d 254, 272-273 (2d Cir. 2006) (learning method by which benefits would be calculated, or that benefits would be lower than expected, did not constitute actual knowledge when plaintiffs were not informed that method violated the plan terms).

### 2.    The Allegations of the Complaint in No Way Establish That §413(2) Bars Plaintiff's Claims

The Solutia Defendants contend in error that Plaintiff's actual knowledge is established by allegations that: (1) Solutia publicly declared bankruptcy on December 17, 2003; and (2) the New York Stock Exchange halted trading in Solutia stock on the same day as its price fell to $0.38 per share. Sol. Def. Mem. at 8 (citing ¶¶234-37). These allegations do not speak to when Plaintiff gained actual knowledge of these events, and an inference as to when Plaintiff gained that knowledge would be improper when deciding a motion to dismiss. *See Sherrill v. Federal Mogul Corp. Retirement Programs Committee*, 413 F.Supp.2d 842, 857 (E.D.Mich. 2006) (rejecting similar arguments as premature on a motion to dismiss); *Bona v. Barasch*, 2003 WL 1395932 (S.D.N.Y. March 20, 2003) (allegations that defendants' course of conduct took place

13

over many years did not support an inference that plaintiffs' had actual knowledge of the conduct).

More fundamentally, however, Plaintiffs' knowledge of these events alone – without additional knowledge about what Defendants did to monitor the prudence of Solutia stock (or their appointees who had that responsibility) – would not establish that Plaintiff had actual knowledge of the fiduciary breaches alleged in the Complaint.  For example, the Complaint alleges that the Fund Committee breached its fiduciary duties by, *inter alia*, failing to monitor the prudence of Solutia stock as an investment for the Plan.  ¶¶262-264.  An investment fiduciary must give "[a]ppropriate consideration to those facts and circumstances that … the fiduciary knows or should know is relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties."  29 C.F.R. §2550.404a-1(b)(1)(A)(i).  The term "appropriate consideration" is defined to include "a determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio … to further the purposes of the plan."  29 C.F.R. §2550.404a-1(b)(1)(A).

In evaluating whether an investment fiduciary has acted prudently in making an investment decision, "[t]he court's task is to inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment."  *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 618 (2d Cir. 2006); *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983); *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996); *In re Unisys Saving Plan Litig.*,

173 F.3d 145, 153 (3d Cir. 1999). *See also Fink*, 772 F.2d at 957 ("A fiduciary's independent investigation of the merits of a particular investment is at the heart of the prudent person standard").

Even now, Plaintiff has no actual knowledge of any steps taken by the Fund Committee to investigate the continued holding of Solutia stock (or by the Director Defendants to monitor the Fund Committee's performance of its duties).[7] Evidence of this nature will be at the heart of Plaintiff's claims, and Plaintiff will come to know all the pertinent facts only through discovery.[8] Indeed, the only publicly available information regarding what actions the fiduciaries did or did not take in the exercise of their fiduciary duties is that the DOL issued a letter **on December 6, 2006**, stating that based on its investigation of the Plan, Solutia – through its fiduciaries – breached its fiduciary obligations and violated provisions of ERISA with respect to the Plan. ¶278. Accordingly, it cannot be said that Plaintiff had actual knowledge of the Solutia Defendants' alleged breaches more than three years prior to filing his Complaint.

---

[7] Rather, Plaintiff has alleged that "Because the information and documents (including Plan documents) on which Plaintiff's claims are based are for the most part solely in the possession of the Defendants, or Solutia, certain of Plaintiff's allegations are by necessity upon information and belief." ¶8.

[8] This does not mean that Plaintiff commenced this action prematurely. As the Second Circuit recognized in *Caputo*, "[w]e do not hold today that ERISA plaintiffs cannot bring an action until they receive information that would normally be obtained only after discovery. Nor are we saying that the plaintiffs in this case could not in good faith have commenced an action upon learning of the 1991 VSO, as the elements of Pfizer's breach of fiduciary duty were in place at that time. *See* Fed. R. Civ. P. 11(b)(3) (the presentment of a pleading to the court certifies only that the allegations 'have evidentiary support or … are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery'). Rather, we conclude only that the district court erred in holding that, as a matter of law, plaintiffs are barred from filing their action under ERISA's three-year 'actual knowledge' statute of limitations." *Caputo*, 267 F.3d at 194.

Northern Trust's limitations argument is even weaker.  It argues that Plaintiff had actual knowledge of its alleged breaches **nearly two years before Solutia's bankruptcy**, based on allegations that Northern Trust – a sophisticated financial institution in the business of buying and selling securities held in trust for the benefit of others – had constructive knowledge[9] that Solutia stock was an imprudent retirement investment after an article in the *Washington Post* detailed Monsato's concealment of the harmful effects of PCBs.  As with the Solutia Defendants, Plaintiff has no actual knowledge of any steps taken by Northern Trust in light of this information to investigate the Plan's continued holding of Solutia stock, to consider changes to the level of cash within the Stock Fund, or to evaluate the prudence of following instructions to maintain investments in the Stock Fund – evidence that will be at the heart of Plaintiff's claims against Northern Trust.

Moreover, Northern Trust claims that Plaintiff had actual knowledge of its breaches because, "[s]ince Plaintiff was an employee of Solutia itself for decades, he had knowledge of the public information he claims ought to have caused Northern Trust to take action…."  N.T. Mem. at 34.  It is a *non sequitur* to say that Plaintiff had actual knowledge based solely on his employee status.  What Northern Trust is really arguing is that, because he was an employee, Plaintiff should have known about the negative public indicators regarding Solutia stock.  This is nothing more than an argument that §413(2) can be triggered by constructive knowledge, an

---

[9] Plaintiff has alleged that Northern Trust "knew **or should have known**, based on publicly available information, that Solutia Stock was too speculative to serve as a prudent retirement investment" by January 2, 2002.  ¶242 (emphasis added); *see also* ¶224 ("it became, **or should have become**, clear" to Northern Trust that investment in Solutia stock was speculative) (emphasis added); ¶268 ("Northern Trust **knew or should have known** of the many public indicators, extraordinary circumstances, and, clear and compelling evidence that called into question the Company's viability as a going concern and a prudent retirement investment.") (emphasis added).

argument which the Second Circuit has recognized "is repugnant to the plain language of the statute as well as its legislative history." *Caputo*, 267 F.3d at 194.

### 3.    Pertinent Case Law Rejects Defendants' Position

Several ERISA "Company Stock" cases have directly considered and rejected Defendants' position.  In *Kling v. Fidelity Mgt. Trust Co.*, 323 F.Supp.2d 132 (D. Mass. 2004), the defendants argued that §413(2) applied because the plaintiff had actual knowledge based on the employer's public announcement of accounting irregularities, the employer's bankruptcy filing, the delisting of the employer's stock, and a proof of claim filed in the employer's bankruptcy proceedings.  *See id.* at 136-137.  The court disagreed, holding that the plaintiff must have "specific knowledge of the actual breach of duty" upon which he sues, and specifically that:

> the events of 1998-99—[the employer's] announcement of accounting irregularities, its filing for bankruptcy, and the delisting of its stock—do not establish actual knowledge by Kling of either the underlying facts or the legal claims asserted in this action.

*Id.*

Likewise in *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C 97-4316 SC, Slip. Op. (Conti, J.) (N.D. Cal., June 11, 1998) (attached hereto as Exhibit 1), the court held that the plan sponsor's bankruptcy filing was insufficient to give the plaintiffs actual knowledge of their claims that the plan fiduciaries breached their duties by making imprudent investments in the plan sponsor's publicly-traded stock.  *Id.* at *7.  The court held, "[e]ven if Plaintiffs knew that CHH was financially unsound at that time, they did not necessarily know that any of the Defendants had breached their duty with respect to the Plan.  The Court will not infer such knowledge on a motion to dismiss." *Id.*

17

The Fifth Circuit's decision in *Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1994) is also instructive. In *Maher*, the court found no "actual knowledge" where the plaintiffs did not have information about the investigation employed by the fiduciaries in selecting life insurance annuities. *Id.* at 955. The plaintiffs' awareness of the selection of the provider of annuities and of negative publicity surrounding the provider's financial condition, together with their receipt of a letter from management refusing to guarantee the annuities, were not sufficient to find actual knowledge on the part of the plaintiffs. *Id.*

Also on point are *Conner v. Mid South Ins. Agency*, 943 F.Supp. 647 (W.D.La. 1995) and *Crimi v. PAS Indus., Inc.*, 1995 WL 272580 (S.D.N.Y. 1995). In *Conner*, the court found that the plaintiff did not have actual knowledge of the defendants' failure to perform various duties with respect to the purchase of employer stock, despite that he had actively participated in the purchases and knew of many details concerning them. *Conner*, 943 F.Supp. at 653. The court held, "we cannot agree that the quality and quantity of his knowledge meet the stringent requirement of ERISA's actual knowledge test. There is no evidence that Conner had actual knowledge that the negotiation process in 1987 or other fiduciary conduct between 1987 and January 1989 might have been improper." *Id.* In *Crimi*, the defendants argued that the plaintiffs had actual knowledge of the breach because they had consulted with their counsel and investment advisor about the transaction at issue. *Crimi*, 1995 WL 272580 at *7. The court held that mere consultation of the advisors could not be sufficient for a finding of actual knowledge, stating, "General knowledge of the transaction is not enough; rather the knowledge must be of the facts underlying the breach, such as [the plan investment advisor's] failure to investigate the viability of the PAS loan." *Id.*

18

The Seventh Circuit's decision in *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078 (7th Cir. 1992), is instructive as to the type and extent of knowledge required for section 413(2) to bar a failure to monitor claim. In *Martin*, the DOL brought an action against trustees of a health and welfare fund for, among other things, failing to adequately monitor the services of a dental service provider to ensure that the provider's prices were not excessive. *Id.* at 1082. In applying section 413(2) to this claim, the Seventh Circuit stated, "[t]he claim is that the trustees' monitoring was inadequate: once the DOL knew about all the essential procedures used by the trustees in monitoring C & A, the three-year statute of limitations began running." *Id.* at 1088. In contrast to Mr. Reiff here, the DOL had conducted an extensive investigation of the matter in which it had "learned the specific methods by which the trustees monitored [the provider's] performance." *Id.* Among other things, the DOL had reviewed the minutes of the trustees' meetings, copies of Peer Review Committee reports, the provider's utilization reports and the provider's contracts. *Id.*

The cases cited by Defendants are either not persuasive or are not on point. Defendants first cite *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544 (3d Cir. 1996) and *Broga v. Northeast Utils.*, 1999 WL 33483581 (D.Conn. Aug. 19, 1999), for the proposition that actual knowledge can be found where the material facts supporting the claim were "patently obvious." Sol. Mem. at 8. Both decisions addressed the same fact pattern that the Second Circuit subsequently addressed in *Caputo* – the failure to disclose an upcoming enhancement of benefits – but reached the opposite conclusion, i.e., that employees must have had actual knowledge at the time the benefit enhancement was announced. Defendants fail to inform the Court that, after *Caputo* was decided, the *Broga* court vacated its ruling and held that §413(2) as interpreted by the Second

Circuit in *Caputo* did not bar the plaintiffs' claims.  *See Broga v. Northeast Utils.*, 315 F.Supp.2d 212, 220-22 (D.Conn. 2004).

Defendants also cite *Edes v. Verizon Communications, Inc.*, 417 F.3d 133 (1st Cir. 2005) and *Downes v. JP Morgan Chase & Co.*, 2004 WL 1277991 (S.D.N.Y. June 8, 2004).  Neither case is on point as they addressed claims that fiduciaries breached their duties by misclassifying employees as independent contractors, and held that the plaintiffs had actual knowledge because they knew they had been classified as independent contractors.  Such claims are clearly distinguishable from the more complex fiduciary breaches alleged here.  *See Edes*, 417 F.3d at 142 ("Plaintiffs' claim of breach of fiduciary duty arises not from an intricate financial transaction, but from GTE's decision to hire Plaintiffs without rendering them eligible to participate in its ERISA plans.") (internal citation omitted).

Finally, *Wells v. Dean Machine Products, Inc.*, 2000 WL 1277991 (S.D.N.Y. June 8, 2004), is distinguishable because it was before the court on a motion for summary judgment, and the court found that the plaintiffs did not dispute the defendants' evidence or submit affidavits or other evidence that created a material issue of fact as to their actual knowledge of the alleged breaches.  This rationale has no application to Defendants' motions to dismiss here.

### 4.    The Statute of Limitations Was Tolled While The Dickerson Action Was Pending

For more than thirty years, it has been well accepted that the filing of a class action complaint tolls the statute of limitations applicable to the claims of absent class members. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552-53 (1974).  Though class certification was denied in *American Pipe* due to a lack of numerosity, the doctrine set forth in the decision has been applied in a variety of circumstances, including specifically where an

absent class member has filed a new and separate action after an earlier class action was terminated due to the named plaintiff's lack of standing. *See Rose v. Arkansas Valley Environmental & Utility Authority*, 562 F.Supp.2d 1180, 1191-94 (W.D. Mo. 1983).[10]

In *Rose*, the court held that where a prior class action was decertified upon a finding that the class representative lacked standing, the claims of new plaintiffs were tolled during the pendency of the first suit. Analyzing the policies behind statutes of limitations and tolling, the court rejected the defendant's argument that tolling should not apply because a suit dismissed for lack of standing is a "nonexistent" suit. *Id.* at 1193. The court concluded that "a class action denied or terminated because the class representative lacks standing might often be more likely to give a defendant actual notice of the claims of absent class members than one where denial or termination was based upon lack of typicality or commonality." *Id.*

A number of more recent decisions have similarly tolled the statute of limitations notwithstanding a dismissal for lack of standing. *See In re Issuer Plaintiff Initial Public Offering Antitrust Litig.*, 2002 WL 31132906 (S.D.N.Y. Sept. 25, 2002) (where plaintiffs in first class action were held to lack standing, tolling was allowed for subsequent class action); *In re Flag Telecom Holdings, Inc.*, 352 F.Supp.2d 429, 455 (S.D.N.Y. 2005) (limitation period was tolled until first plaintiff's claims were dismissed due to lack of standing); *In re Initial Public Offering Sec. Litig.*, 2004 WL 3015304 (S.D.N.Y. Dec. 27, 2004) (tolling applied to allow substitution of new lead plaintiff where original plaintiff lacked standing); *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 2006 WL 4381143, *45-47 (S.D. Tex. Dec. 27, 2006) (discussing both tolling and

---

[10] *See also Catholic Social Services, Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000) (new class action not time-barred where earlier class action was dismissed upon the enactment of a statute removing jurisdiction over the named plaintiff's claims); *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083 (3d Cir. 1975) (reversing district court's holding that tolling did not apply, and holding that where named plaintiff was dismissed due to lack of standing, amendment of complaint to add new plaintiff related back to the original claim).

relation back under Rule 15, and permitting new plaintiff to intervene where original named plaintiff had lacked standing).

Thus, as Northern Trust essentially concedes, N.T. Mem. at 34, Plaintiff is entitled to tolling of the period from October 7, 2004, when the *Dickerson* putative class action was commenced, through March 30, 2006, when that case was dismissed. Plaintiff filed this action on June 25, 2007. Even assuming *arguendo* that Plaintiff had actual knowledge as of Solutia's bankruptcy filing on December 17, 2003, Plaintiff's claims would still be timely under the under the three-year period of §413(2) because the limitations period was tolled during the 18 months the *Dickerson* action was pending.

### B.    Any Statute of Limitations Concern Will Likely Be Moot

A reversal of this Court's decision in *Dickerson v. Feldman*, 426 F.Supp.2d 14 (S.D.N.Y. 2006) will likely moot any statute of limitations concerns. That appeal has been fully briefed and argued. While it is ordinarily not a useful activity to try to persuade a District Court that its prior decision was incorrectly decided, this case is unique because at the time this Court dismissed Dickerson's complaint for lack of standing, there was no guidance from the Court of Appeals on this subject. After this Court granted dismissal, however, such guidance has become available insofar as the Second Circuit has written on the subject in a manner that supports Dickerson, three Courts of Appeals have found standing for former employees in Dickerson's position, and the DOL has supported the position of former employees to bring such suits.

On July 21, 2006, the Second Circuit issued its decision in *Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006), in which it: (i) recognized that "whether a lump-sum payment terminates a person's status as a participant may depend on whether the plan is a 'defined benefits' or a

'defined contribution' plan;" and (ii) stated its view that a former employee whose account balance in a defined contribution plan was reduced by alleged imprudent management of plan assets – precisely like Dickerson – may have standing under ERISA to bring an action for fiduciary breach to recover losses to a plan.  *Id.* at 255-56.

The Third Circuit held in *Graden v. Conexant Sys., Inc.*, 496 F.3d 291 (2007), that former employees who withdrew their lump sum distributions had standing to pursue ERISA fiduciary breach claims to recover losses to a plan:

> [I]t is not difficult to conclude that Graden has standing as a plan participant.  As an account-holder in the Conexant plan, he was entitled to the net value of his account as it should have been in the absence of any fiduciary mismanagement.... [H]e sued the person liable to make good on the loss.  If successful, this suit will restore assets to the plan that are allocable to Graden's account, and he will then get a distribution from that restored account...."

*Id.* at 297.  The Seventh Circuit also held that a former employee has standing to sue for breach of fiduciary duty when he suffered a loss to his account in a defined contribution plan and asserted breach of fiduciary duty in the management of the assets of the plan.  *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007).  The Seventh Circuit expressly rejected the position of this Court in *Dickerson* that there was any Article III standing issue presented, stating, "Obviously the named plaintiffs have standing to sue in the sense of being entitled to ask for an exercise of the judicial power of the United States as that term in Article III of the Constitution has been interpreted, because if they win they will obtain a tangible benefit."  *Id.* at 803.  The Seventh Circuit went on to uphold a former employee's standing to sue under ERISA stating "Benefits are benefits; in a defined-contribution plan they are the value of the retirement account when the employee retires, and a breach of fiduciary that diminishes that value gives rise to a claim for benefits...."  *Id.* at 807.  Most recently, the Sixth Circuit in *Bridges v. American*

*Electric Power*, 498 F.3d 442 (6th Cir. 2007) held "that a former employee like Bridges has 'participant' standing despite having 'cashed out' his defined contribution plan." *Id.* at 445.

In these and other appellate cases, the DOL appeared as *amicus curiae* and argued that former employees who had withdrawn their lump sum benefits out of a defined contribution plan had standing to pursue fiduciary breach claims alleging mismanagement of plan assets. The DOL's position, interpreting a statute which it has responsibility to enforce, is entitled to deference.

Under these circumstances, Plaintiff respectfully submits that it would be prudent for this Court to consider whether the *Dickerson* complaint is likely to be reinstated, thereby mooting any statute of limitations concerns, or to stay its disposition of the limitations issue until after the Second Circuit rules on the *Dickerson* appeal.

## III.    PLAINTIFF'S CLAIMS ARE PROPERLY BROUGHT ON BEHALF OF THE PLAN PURSUANT TO ERISA §502(a)(2)

ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), grants participants the power to bring an action for "appropriate relief under section 1109 of this title." Section 1109, in turn, states that a breaching fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. §1109. In interpreting this language, courts have held that participants seeking relief for losses caused by a fiduciary breach, must seek that relief on behalf of the plan as a whole, and cannot seek relief for their individual damages only. *See Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140-48 (1985).

Accordingly, Plaintiff has brought this suit not for any individual damages, but on behalf of the Plan and its participants and explicitly seeks relief payable to the Plan in the first instance including "restoration to the Plan for losses resulting from imprudent investment of the Plan's

assets." ¶7 & Prayer for Relief, §D(a). Such a claim is typical in ERISA "Company Stock cases," and at least thirty such cases have proceeded under §502(a)(2) beyond a motion to dismiss on the assumption of everyone that they are brought for plan-wide relief.[11]

Defendants nevertheless contend that Plaintiff's claims cannot properly be brought under §1132(a)(2) because it "does not seek to recover losses sustained by the Plan as a whole" since it seeks to "recover individual losses on behalf of a subset of Plan participants." Sol. Def. Mem. at 11-12. Defendants' argument fails for several reasons.

First, Solutia matched a portion of all participant contributions with Solutia stock, and all plan participants were therefore invested in Solutia Stock. ¶¶57-65. Hence, Plaintiff's class includes all those participating in the Plan during the Class Period. *See, e.g., In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 990 (C.D. Cal. 2004) (where company match was given to all participants in form of company stock, plaintiffs properly sought relief on behalf of the whole plan for fiduciaries' imprudent investment in company stock).

---

[11]   These cases include: *In re AOL Time Warner Sec. & ERISA Litig.*, 2005 WL 563166 (S.D.N.Y. Mar. 10, 2005); *In re WorldCom ERISA Litig.*, 263 F.Supp.2d 745 (S.D.N.Y. 2003); *Koch v. Dwyer*, 1999 WL 528181 (S.D.N.Y. July 22 ,1999); *LaLonde v. Textron, Inc.*, 369 F3d 1 (1st Cir. 2004); *In re Ikon Office Solutions, Inc., Sec. Litig.* 86 F.Supp.2d 481 (E.D. Pa. 2000) (consolidated with ERISA litigation); *Kling v. Fidelity Mgmt Trust Co.*, 270 F. Supp. 2d 121 (D. Mass. 2003); *Rankin v. Rots*, 278 F. Supp. 2d 853 (E.D. Mich. 2003); *Tittle v. Enron Corp.*, 284 F.Supp.2d 511 (S.D. Tex. 2003); *In re Reliant Energy ERISA Litig.*, 336 F.Supp.2d 646 (S.D. Tex. 2004); *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F.Supp.2d 658 (E.D. Tex. 2004); *In re Dynegy ERISA Litig.*, 309 F.Supp.2d 861 (S.D. Tex. 2004); *In re Xcel Energy ERISA Litig.*, 312 F.Supp.2d 1165 (D. Minn. 2004); *Hill v. Bellsouth Corp.*, 312 F. Supp. 2d 1361 (N.D. Ga. 2004); *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d 898 (E.D. Mich. 2004); *In re Sprint Corp. ERISA Litig.*, No. 03-2202, 2004 WL 1179371 (D. Kan. May 27, 2004); *In re ADC Telecomm. ERISA Litig.*, No. 03-2989, 2004 WL 1683144 (D. Minn. July 26, 2004); *In re AEP ERISA Litig.*, 327 F.Supp.2d 812 (S.D. Ohio 2004); *In re Syncor ERISA Litig.*, 351 F.Supp.2d 970 (C.D. Cal. 2004); *Howell v. Motorola, Inc.*, 337 F.Supp.2d 1079 (N.D. Ill. 2004); *Tatum v. R.J. Reynolds Tobacco Co.*, 392 F.3d 636 (4th Cir. 2004); and *Gee v. UnumProvident Corp.*, 2005 WL 534873 (E.D. Tenn. Jan. 13, 2005).

Second, even if the Class could somehow be read to represent only a "subset" of the Plan or its participants, Defendants ignore that numerous cases have held that such a claim can be properly brought under §1132(a)(2). *See In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 232 (3d Cir. 2005) ("We conclude that the Plaintiffs may seek money damages on behalf of the fund, notwithstanding the fact the alleged fiduciary violations affected only a subset of the saving plan's participants"); *Steinman v. Hicks*, 352 F.3d 1101, 1102 (7th Cir. 2003); *Kuper v. Iovenko*, 66 F.3d 1447, 1453 (6th Cir. 1995); *In re Xerox ERISA Litig.*, 483 F.Supp.2d 206, 220-221 (D.Conn. 2007); *In re Marsh ERISA Litig.*, 2006 WL 3706169 (S.D.N.Y. Dec. 14, 2006); *Kling v. Fidelity Mgt. Trust Co.*, 270 F.Supp.2d 121, 125-27 (D.Mass. 2003).

Finally, the Plan as a whole suffered a loss because Plaintiff alleges the fiduciaries – not the participants – selected and offered an imprudent investment for the entire Plan. ¶¶5(b), 241, 273, 279(b)(iv), 288, 290(b). *See Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 605 (8th Cir. 1995).

## IV. PLAINTIFF'S CLAIMS ARE PROPERLY BROUGHT TO SEEK EQUITABLE RELIEF, AS WELL AS MONETARY RELIEF, PURSUANT TO ERISA §502(a)(3)

Plaintiff's principal claim in this action is for monetary relief pursuant to ERISA §502(a)(2), but he also seeks restitution under ERISA §502(a)(3) to the extent Defendants have been unjustly enriched. Nothing prohibits such limited equitable restitution.

Defendants argue that pursuant to *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), Plaintiff's requests for a "constructive trust" and "equitable restitution" are unavailable under ERISA §502(a)(3). Sol. Def. Mem. at 15-16. As an initial matter, ERISA §502(a)(2) authorizes "equitable relief" pursuant to §409. Since *Great-West* only addresses what

relief is available under §502(a)(3), it cannot be dispositive regarding the propriety of Plaintiff's requested relief.

Moreover, even under *Great-West*, Plaintiff is entitled to the equitable relief he requests under §502(a)(3).  Defendants contend that the relief Plaintiff requests lacks specificity, and cite several cases which stand for the unremarkable proposition that injunctions must be "specific" and "describe in reasonable detail ... the act or acts sought to be restrained."  Sol. Def. Mem. at 15-17.  Plaintiff does not dispute that any injunction entered must say more than "defendants are enjoined from violating the law."  Instead, an injunction should specify the violations enjoined and specifically those ERISA violations set forth in great detail in the Complaint.  ¶¶5(a)-(h), 238-242, 251-278, Counts I-IV.  Plaintiff also specifically requests an "Order imposing a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty."  Complaint, Prayer for Relief, ¶E.  Both *Great-West*, 534 U.S. at 215-16, and *Harris Trust and Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 250-51 (2000), indicate that such relief is available under §502(a)(3).

Finally, because Plaintiff has sought a monetary recovery pursuant to ERISA §502(a)(2), equitable relief under ERISA §502(a)(3) may be necessary to distribute any recovery awarded to the Plan to its participants.  Such a request is thus appropriate.

## V.    PLAINTIFF HAS ADEQUATELY PLED THAT THE DIRECTOR DEFENDANTS AND DEFENDANTS NELLING, STEMME, AND AST ARE PLAN FIDUCIARIES

"[F]iduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives."  *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F.Supp.2d 511, 544 (S.D.Tex. 2003) (citations omitted); *In re WorldCom, Inc. ERISA Litig.*, 263 F.Supp.2d at

757 (citing *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir.1997)). "Under ERISA, a person or entity may be deemed a fiduciary either by assumption of the fiduciary obligations (the functional ... method) or by express designation by the ERISA plan documents." *Enron*, 284 F.Supp.2d at 543. A person is a fiduciary under ERISA to the extent that "he has any discretionary authority or discretionary responsibility in the administration of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. §1002(21)(A)(iii).

Fiduciary status is a mixed question of law and fact. *Hamilton v. Carell*, 243 F.3d 992 (6th Cir. 2001). In determining the extent of a person's discretionary authority or responsibility, courts are directed "to look beyond [directors'] formal authority with respect to the plan, limited to selection and retention of administrators, and to consider what real authority they had over plan investments by virtue of their having appointed [the] administrators." *Leigh v. Engle*, 727 F.2d 113, 135 n.33 (7th Cir. 1984); *Fulk v. Bagley*, 88 F.R.D. 153, 162 (M.D.N.C. 1980); *Eaves v. Penn*, 587 F.2d 453, 458 (10th Cir. 1978). Fiduciary status is, accordingly, "a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss." *In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 827 (S.D. Ohio 2004). As explained by the court in *Rankin v. Rots*, 278 F.Supp.2d 853, 879 (E.D. Mich. 2003):

> the manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to ask at this stage of the case.

Thus, "an ERISA complaint need do little more than track the statutory definition to establish a defendant's fiduciary status in compliance with Rule 8." *Polaroid*, 362 F.Supp.2d at 470.

28

### A.    Plaintiff has Adequately Pled the Director Defendants' Fiduciary Status

Defendants contend that "the Complaint should be dismissed with respect to the Director Defendants because they were not fiduciaries under the Plan." Sol. Def. Mem. at 22. Defendants thus improperly ask the Court to ignore allegations that the Director Defendants exercised discretionary authority over Plan management *and* were specifically charged by Plan documents with appointing the Plan Committee, the Fund Committee, and each committees' respective members.  ¶39, 98; 2002 SPD at 58 (Politte Decl. Ex. F); 1999 SPD at 50 (Politte Decl. Ex. E); 1997 SPD at 38 (Politte Decl. Ex. C); 1997 SPD at 44 (Politte Decl. Ex. D). Furthermore, two of the Director Defendants, Hunter and Potter, had additional independent duties to appoint these Committee members by virtue of being CEO.  ¶¶14, 23, 25; 2002 SPD at 58; 1999 SPD at 50;1997 SPD at 38.[12]

Defendants make no argument that undermines the significance or veracity of these allegations or the provisions in the Plan documents that support them.  Accordingly, Plaintiff has sufficiently alleged that the Director Defendants are Plan fiduciaries. *See Liss v. Smith*, 991 F.Supp. 278, 311 (S.D.N.Y. 1998) (the power to appoint Plan fiduciaries confers fiduciary status); *Rankin*, 278 F.Supp.2d at 871 (finding outside directors were plan fiduciaries in a factually similar case).

### B.    Plaintiff has Adequately Pled the Fiduciary Status
### of Defendants Nelling, Stemme and Ast

Defendants contend that "the Complaint should be dismissed with respect to [Nelling, Stemme, and Ast] because they were not fiduciaries under the Plan." Sol. Def. Mem. at 24.  This

---

[12] If "the terms of a plan and those of a SPD conflict, it is the SPD that controls." *American Federation of Grain Millers, AFL-CIO v. Int'l Multifoods*, 116 F.3d 976, 982 (2d Cir. 1997) (citing *Heidgerd v. Olin Corp.*, 906 F.2d 903, 908 (2d Cir. 1990)).

contention improperly contradicts allegations that Nelling, Stemme, and Ast are Plan fiduciaries, and that they served as Plan Administrator during the Class Period.  ¶97.  Plaintiff also alleges that both Nelling and Stemme are identified as, and sign as, the Plan Administrator in Plan documents, including Form 5500s sent to the IRS, ¶¶18, 20-21, and that Ast was Solutia's Director of Employee Benefits and signed the Plan's Annual Report (Form 11-K) for 2003.  ¶21.

Defendants dismiss these allegations as mere "ministerial" functions – simply the signing and preparing of documents – that do not confer fiduciary status.  Sol. Def. Mem. at 23. Contrary to Defendants' position, the Complaint does not merely allege performance of ministerial duties.  Instead, as described above, the Complaint alleges that these Defendants functioned as Plan Administrators and are identified – by Plan documents – as Plan fiduciaries; and that they failed in their fiduciary capacity to fully disclose information regarding Solutia and the Plan as contained and/or omitted in the substance of those filings – a breach that goes to the heart of their ERISA obligations.  ¶¶5(g), 86, 87, 239(c), 241, 243-250, 291(f), 312.  These allegations are precisely what is required at this stage of the litigation.  *See Howell v. Motorola, Inc.*, 337 F.Supp.2d 1079, 1099-1100 (N.D. Ill 2004) (vice president who signed the plan's Form 11-Ks was a fiduciary for exercising discretionary authority over the substance and omissions in those filings); *In re Reliant Energy ERISA Litig.*, 336 F. Supp.2d 646 (S.D.Tex. 2004) (the company is a fiduciary for signing the plan's securities filings on Form S-8 and thereby exercising discretionary authority regarding the substance and omissions in those filings).

## VI.    COUNT I OF PLAINTIFF'S COMPLAINT STATES A VALID CLAIM

### A.    Defendants' "Insider Trading Defense" Has Been Flatly and Consistently Rejected

The Solutia Defendants seek dismissal of Count I "to the extent the claims are based on the theory that they should have divested the Plan of Solutia stock based on their knowledge of material, non-public information ... since such an act would have violated securities laws or would not have avoided the losses that Plaintiff alleges." Sol. Def. Mem. at 25.

This so-called "Insider Trading Defense" is, by its nature, limited only to the ***selling*** of Solutia stock based on material non-public information. Defendants do not contend, for example, that closing the Stock Fund to new participant investments, ceasing purchases of additional shares of Solutia stock, or informing participants that Solutia stock was imprudent, would have violated the federal securities laws. Indeed, prudent acts that are consistent with ERISA's fiduciary obligations are not at odds with the securities laws. *See Enron*, 284 F.Supp.2d at 565 (holding that compliance with ERISA does not violate the securities laws).

Moreover, Plaintiff has alleged no such theory of liability or even that that Defendants possessed material nonpublic information. Of the eight specific fiduciary breaches listed in Count I, only one even references selling Solutia stock, and it states simply that Defendants breached their duties by "failing to sell shares of Solutia Stock when it was not a prudent retirement investment." ¶291(d). This statement does not imply selling based upon material, nonpublic information, and even if Defendants possessed such information, they could have disclosed the information and then sold the stock consistent with the securities laws. *See In the Matter of Cady, Roberts & Co.*, Exchange Act Release No. 34-6668, 40 S.E.C. 907, 1961 WL

60638 at *3 (Nov. 8, 1961) (incorporating common law rule that insiders should "disclose" material inside information before trading).

As to the possibility of selling after disclosure, Defendants contend that it would have been pointless because "public disclosure of the information would have resulted in the same drop in stock price that Plaintiff contends actual disclosure did in the present case." Sol. Def. Mem. at 27. This raises a question of fact (and highly speculative one at that), namely, the veracity of expert damage analyses on the extent to which Defendants' breaches caused losses to the Plan and whether such testimony may be rebutted by Defendants' hypothetical event of public disclosure. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1182-83 (D. Minn. 2004) (finding that plaintiffs sufficiently pled causation notwithstanding defendants' argument that early disclosure would have caused same harm as ultimately befell the plan).[13] Moreover, Defendants' loss causation argument ignores the fact that Plaintiff has alleged two independent causes of Plan losses: (i) investment in stock that was inflated in value because information was not disclosed; and, (ii) investment in stock that was, based upon information publicly available on and after January 2, 2002, too speculative to serve as a retirement investment. ¶¶2, 224. Defendants' Insider Trading Defense is only relevant, if at all, to the former.[14]

---

[13] *See also In re JDS Uniphase Corp. ERISA Litig.*, No. 03-04743, 2005 WL 1662131 at *9 (N. D. Cal. July 14, 2005) (holding that arguments regarding loss causation are inappropriate on a motion to dismiss); *In re Sears Roebuck & Co. ERISA Litig.*, No. 02-8324, 2004 WL 407007 at *7 (N.D. Ill. Mar. 3, 2004) ("issues of loss causation are factual matters not proper to resolve on a motion to dismiss"); *Gee v. UnumProvident Corp.*, No. 1:03-147, 2005 WL 534873 at *15 (E.D. Tenn. Jan. 13, 2005) (same).

[14] Plaintiff has also requested injunctive and other equitable relief, as was discussed above. His entitlement to such relief under ERISA is not dependent upon proof of loss. *Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003).

Defendants rely primarily on three cases in support of their position: *In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002), *Hull v. Policy Sys. Corp.*, No. 00-778-17, 2001 WL 1836286 (D.S.C. 2001) and *Edgar v. Avaya, Inc.*, No. Civ. A. 05-3598 SRC, 2006 WL 1084087 (D.N.J. Apr. 25, 2006). Sol. Def. Mem. at 26-27. Numerous courts have criticized these cases and/or rejected any notion that the securities laws may be employed as a shield to immunize ERISA fiduciaries from liability for their own fiduciary breaches in imprudently investing in company stock. For example, the *Enron* court, after discussing both *McKesson* and *Hull*, found their rationale "misguided" and emphasized that as "a matter of public policy, the statutes [ERISA and the federal securities laws] should be interpreted to require that persons follow the laws, not undermine them." *Enron*, 284 F.Supp.2d at 565. *See also Worldcom*, 263 F.Supp.2d at 767.[15]

## B.    Defendants Were Required to Disregard Imprudent Plan Directives

Defendants next argue that: (i) Plan documents required that the Company match and the Stock Fund be invested in Solutia stock; (ii) Defendants were required to follow the terms of the Plan documents; (iii) changing the terms of the Plan documents could only be done through amendment, which is a plan sponsor and not a fiduciary act; and therefore, (iv) Defendants could not have breached their fiduciary duties in failing to cease investment of the Company match in Solutia stock or altering the mix of investments in the Solutia Stock Fund from stock to cash. Sol. Def. Mem. at 27-29. Defendants' argument is limited in scope and wrong. It only pertains

---

[15]    *See also AEP*, 327 F.Supp.2d at 823-24; *Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp 2d 132, 143 n. 10 (D.Mass.2004); *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d 898, 915 (E.D.Mich.2004); *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F.Supp.2d 658, 673 (E.D.Tex.2004); *Rankin v. Rots*, 278 F.Supp.2d 853, 873-78 (E.D.Mich.2003); *Kelley v. Household Int'l, Inc.*, No. 02-9281, 2004 WL 723843, *4 (N.D.Ill. March 30, 2004); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-8324, 2004 WL 407007 at*5 (N.D.Ill. March 3, 2004).

to the liability for investing the Company match in Solutia stock and altering the mix of investments in the Stock Fund – i.e., only two of the eight breaches listed in Count I. ¶291(c) and (e). In particular, Defendants have not asserted that this argument relieves them of responsibility for continuing to offer the Stock Fund as an investment fund under the Plan.[16] Even with its limited scope, Defendants' argument is fatally flawed for a number of reasons.

First, Defendants have not cited a single case in which a court dismissed a fiduciary breach claim for imprudent investment simply because a plan document stated that investments were to be made in sponsor-issued stock. The reason is simple. It is well settled that a "fiduciary is not required to blindly follow the Plan's terms." *Polaroid*, 362 F.Supp.2d at 470 (quoting *Rankin*, 278 F.Supp.2d at 879). ERISA itself provides that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants ... and ... in accordance with the documents ... governing the plan insofar as such documents ... are consistent with ... [ERISA]." 29 U.S.C. § 1104(a)(1)(D) (emphasis added). This means that "ERISA commands fiduciaries to obey Plan documents only to the extent they are consistent with other fiduciary duties." *Polaroid*, 362 F.Supp.2d at 473-74. Accordingly, courts have held that plan fiduciaries are required to disregard technical requirements in plan documents to invest in employer stock when it is imprudent and not in the best interests of participants. *Id.* at 474; *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir.1995); *Moench v. Robertson*, 62 F.3d 553 (3d Cir.1995). Hence, Defendants' argument fails because it erroneously assumes that fiduciaries are always required to follow the precise requirements of plan documents.[17]

---

[16]  The DOL itself has recognized that "the act of designating investment alternatives ... is a fiduciary function...." 57 Fed. Reg. at 46922 (1992).

[17]  Defendants' reliance on cases such as *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850 (N.D. Ohio 2006), for the proposition that a failure to amend a plan does not support a viable

Second, the Plan documents do provide considerable discretion with respect to investment in Solutia stock. For example, after describing the various investment funds, including the Stock Fund, the Plan document states that the "Trustee ... may retain all or any portion of any of the Investment Funds and on a temporary or interim basis may invest any of the Investment Funds in property other than that specified as the primary type of investment for such Investment Funds." 2002 Plan, §9.2. It also provides that the "Funds Committee or its delegate may from time to time add, suspend or terminate an Investment Fund." *Id.* Hence, Defendants' contention that the Plan document prohibits diversifying away from Solutia stock is inaccurate.

### C.    Plaintiff Has Adequately Stated a Claim for Breach of Fiduciary Duty for Defendants' Failure to Provide Complete and Accurate Information with Respect to Investment in Solutia Stock and the Stock Fund

Plaintiff has alleged that Defendants breached their ERISA fiduciary duties of loyalty and prudence by "failing to provide complete and accurate information to the Plan's participants necessary to the participants' informed decisions with regard to investment in Solutia Stock and the Solutia Stock Fund." ¶291(f). Such a claim is fully supported by ERISA case law and the common law of trusts, which aids in the interpretation of ERISA fiduciary duties. "Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in [29 U.S.C. §1104(a)(1)]." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (quoting *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983)), *See also Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570-71 (1985) (ERISA fiduciary duty includes common-law duty of loyalty); Bogert & Bogert, *Law of Trusts and Trustees* §543, at 218-219 (duty of loyalty requires trustee to deal fairly and

---

claim, is misplaced. The plaintiff in *Ferro* did not allege a failure to amend the operative plan terms and the Court actually **upheld** plaintiff's claims holding that "a fiduciary is not required to blindly follow the terms of a plan if doing so would be imprudent." *Id* at 860.

honestly with beneficiaries). In addition to this duty not to misrepresent, courts have also recognized an affirmative duty to disclose. *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547-48 (6th Cir.1999); *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir.1993). The Second Circuit has likewise recognized that when "a plan administrator ... fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants." *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 88 (2d Cir. 2001).

Accordingly, numerous cases have held that a plaintiff states a claim upon which relief can be granted when he alleges that plan fiduciaries failed to provide complete and accurate information necessary for plan participants to make informed decisions about investing in Company Stock. *Polaroid*, 362 F.Supp.2d at 477-79; *Worldcom*, 263 F.Supp.2d at 765-67; *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-04743, 2005 WL 1662131 at *10-*12 (N.D. Cal. July 14, 2005); *In re Electronic Data Systems Corp. ERISA Litig.*, 305 F.Supp.2d 658, 672 (E.D.Tex. 2004) ("*EDS*"); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-8324, 2004 WL 407007 at *6-*7 (N.D.Ill. March 3, 2004).

Defendants argue that they have no duty to disclose complete and accurate information related to investment in Solutia Stock because there is no such requirement in the statutory disclosure requirements of ERISA §104(b)(4), 29 U.S.C. §1024(b)(4). Sol. Def. Mem. at 31. However, Plaintiff does not contend that these requirements are the source of the fiduciary disclosure duty at issue here. Instead, the duty arises from ERISA's general fiduciary duties of loyalty, exclusive purpose, and prudence as elucidated by the common law duties that guide their interpretation. *See Varity*, 516 U.S. at 496 (ERISA's "fiduciary duties draw much of their

content from the common law of trusts"). These general duties imply the disclosure requirements at issue here. *Polaroid*, 362 F.Supp.2d at 478 (citing Restatement (Second) of Trusts and holding that ERISA fiduciary has "an affirmative duty to inform when the fiduciary knows that silence might be harmful" (quotation marks and citations omitted)); *Cress v. Wilson*, 2007 WL 1686687, at \*9 (S.D.N.Y. June 6, 2007) (same).

Defendants also mischaracterize Plaintiff's claims as "alleged misrepresentations concerning Solutia's financial status…." Sol. Def. Mem. at 30. Plaintiff has not alleged a fiduciary breach simply on the ground that fiduciaries made any sort of "misrepresentations concerning Solutia's financial status," but on the ground that they failed to provide complete and accurate information to plan participants regarding all matters relevant to investment in Solutia stock. ¶249, 291(f). As the numerous company stock cases indicate, courts have held that misrepresenting or failing to accurately disclose a company's financial status to participants does constitute a basis for fiduciary liability when it is relevant to a participant's decision whether to invest in Company Stock. *See, e.g., Polaroid*, 362 F.Supp.2d at 478-79 (allegations that Defendants "provided incomplete information and created an inaccurate impression of the ... prospects of the Company in Company-wide statements" stated breach of fiduciary duty claim).

Defendants next cite the *WorldCom* decision for the proposition that allegations of false SEC filings do not support failure to disclose claims. Sol. Def. Mem. at 30. In fact, *WorldCom* held the exact opposite:

> Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations. ***Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings.*** Claim Three adequately pleads that Ebbers and Miller, each of whom is alleged to have been a fiduciary through *inter alia* his or her administration of the WorldCom Plan,

breached their fiduciary obligations under ERISA by at the very least transmitting material containing misrepresentations to Plan participants.

*WorldCom*, 263 F. Supp.2d at 766-67 (emphasis added).

Finally, Defendants contend that Plaintiff must show that he detrimentally relied on Defendants' alleged misrepresentations or omissions. Sol. Def. Mem. at 32-33. Contrary to Defendants' position, courts have held that individual reliance need not be alleged to state a fiduciary nondisclosure claim where, as here: (i) the claim is brought on behalf of the Plan; (ii) all plaintiffs are alleged to have held Company Stock; (iii) defendants owed the same fiduciary duty to all participants; and, (iv) defendants breached their duties through the medium of plan-wide communications. *See In re JDS Uniphase Corp. ERISA Litig.*, No. 03-04743, 2005 WL 1662131 at *13 (N.D. Cal. July 14, 2005) (holding that at the motion to dismiss stage, participants are presumed to have relied on fiduciary misrepresentations or omissions to adequately state a claim therewith).[18]

### D.    Plaintiff has Adequately Stated a Conflict of Interest Claim

Plaintiff has brought a claim for "failing to avoid conflicts of interests and to resolve them promptly when they occurred by appointing an independent fiduciary to make decisions

---

[18] Of the nine cases cited by Defendants in support of the position that pleading detrimental reliance is required, Sol. Def. Mem. at 32-33, ns.19-20, seven of them were decided on class certification or summary judgment motions. The first of only two cases that were decided on motions to dismiss, *Pedraza v. Coca-Cola Co.*, 456 F. Supp. 2d 1262 (N.D. Ga. 2006), held that plaintiff failed to adequately specify the "false statements" in connection with her co-fiduciary claims but said nothing about "requiring detrimental reliance with respect to misrepresentation and omissions claim[s]." Sol. Def. Mem. at 32. The second case, *Burstein v. Ret. Account Plan*, 334 F.3d 365, 385-89 (3d Cir. 2003), was not brought to recover losses to a plan under ERISA §409, but rather sought relief for individualized fiduciary breaches in the form of misrepresentations and held that such individual fiduciary breach actions require proof of reliance in order to demonstrate actual harm. Section 409 cases, conversely, are actions seeking to recover losses to the plan where non-disclosures and misrepresentations are alleged to have accompanied the wrongdoing and supported the losses to the plan. *See also JDS*, 2005 WL 1662131, *13 (holding *Burstein* was "not on point" because it was not brought on behalf of the plan under §502(a)(2)).

regarding Plan investments in Solutia Stock."  ¶291(g)).   The Complaint further explains the

conflict of interest as follows:

> In acting and failing to act in this manner, the Committee Defendants, the Plan
> Defendants, and the Director Defendants all labored under a conflict of interest.
> In their roles as ... directors and officers, they all had an interest in promoting the
> acquisition of Solutia Stock and increasing or maintaining its share price,
> particularly since they received compensation and bonuses in...Solutia Stock.  But
> they also had an overriding duty ... to protect the Plan and its participants from
> imprudent investments....    These defendants improperly let their interest in
> promoting Solutia Stock guide their decisions as Plan fiduciaries.

¶290; *see also* ¶¶251-55.

The Second Circuit has held that ERISA fiduciaries have an obligation "to avoid placing

themselves in a position where their acts as directors or officers of the corporation will prevent

their functioning with the complete loyalty to participants demanded of them as trustees."

*Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.1982).  In accordance with this duty to avoid

conflicts of interest, Company Stock cases have held that a plaintiff properly states a claim when

he alleges that defendants followed their own interests in promoting investment in Company

Stock, and/or their interests and the value of their own Company Stock holdings, at the expense

of the Plan and its participants.  *See EDS*, 305 F.Supp.2d at 673 (plaintiffs stated a claim by

alleging that "Defendants breached their duty to avoid conflicts of interest and to promptly

resolve them when they occurred by: continuing to offer EDS stock as a Plan investment, failing

to hire independent fiduciaries and/or advisers who did not face the same conflict of interest is

fiduciaries, and failing to take any other steps necessary to eliminate the inherent conflict of

interest" (quotation marks omitted)); *In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 WL

3245931 at *13 (D.N.J. June 14, 2004); *Cress*, 2007 WL 1686687, at *10.  Hence, courts have

expressly approved the very type of claim Plaintiff makes here.

Defendants contend that "Plaintiff's claim fails in its entirety because ERISA expressly permits the alleged conflict that Plaintiff asserts constitutes a fiduciary breach here – *i.e.*, corporate officers and directors doubling as Plan fiduciaries." Sol. Def. Mem. at 35. But Plaintiff does not contend that Defendants breached their fiduciary duties simply because they were both corporate officers/directors and Plan fiduciaries. Nor does he assert that the mere fact that they might have benefited financially from an increase in Solutia's stock price constituted, in itself, a conflict of interest. Instead, Plaintiff's claim is that once serious doubts arose as to whether Solutia stock remained a prudent retirement investment, these facts created a conflict of interest and Defendants improperly permitted this conflict to influence their decisions with respect to Plan investments in Solutia Stock. ¶¶251-55, 290. Such a claim is not defeated by the propriety of allowing company officers to serve as plan fiduciaries. *See Honeywell*, 2004 WL 3245931 at *13 (rejecting argument that because ERISA permits fiduciaries to be employees of the plan sponsor there could be no conflict of interest in recommending employer stock). *See also Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) (ERISA requires that a "fiduciary with two hats where only one at a time, and wear the fiduciary hat when making fiduciary decisions").

### E.    Plaintiff has Adequately Alleged that the Plan Defendants, the Plan Committee, and the Director Defendants Had Sufficient Responsibility to Impose Liability on Them for Imprudent Investment in Solutia Stock

Defendants contend that neither the Plan Defendants, the Plan Committee, nor the Director Defendants had direct control over the extent of Plan investment in Solutia Stock, so "Plaintiff's claims should be dismissed as against these Defendants." Sol. Def. Mem. at 25. Defendants' argument is flawed for several reasons.

First, Plaintiff has alleged several specific breaches regarding Plan investment in Solutia stock, and many of these do not concern direct control over Plan investment in Solutia Stock: (1) failing to provide complete and accurate information to Plan participants; (2) failing to avoid conflicts of interest; (3) failing to appoint an independent fiduciary; (4) failing to adequately monitor the performance of appointed fiduciaries; (5) breach of co-fiduciary duties; and, (6) failing to protect participants' interests in the bankruptcy court or other court proceedings. ¶¶291, 301-17. Since none of these require direct control over investment in Solutia Stock, Defendants' argument cannot logically serve as a basis for shielding those Defendants from these claims. *See, e.g., Kling v. Fidelity Mgt. Trust Co.*, 323 F. Supp.2d 132, 143 (D.Mass. 2004) ("the alleged failure of these defendants to perform acts falling outside of their own fiduciary responsibilities cannot give rise to liability under ERISA §§404(a) and 406(b) ... [but] ... may be actionable as breach of co-fiduciary duty....").

Second, contrary to Defendants' contention, the Fund Committee is not the only Solutia Defendant with direct control over Plan investments. The Plan Committee is charged with numerous duties involving the Plan's investments. *See, e.g.*, 2002 Plan Document, §§8.2-8.3 (Plan Committee maintains the Employer Matching Account and the Employee Stock Account); §§9.4, 9.5, 10.5 (has authority over investment elections); §10.3 (has authority over forfeitures as applied to matching contributions); §12 (has authority over plan loans); §§13.1-13.8 ("shall have the duty and power to ... administer the plan in all its details").

## VII.    PLAINTIFF STATES A CLAIM FOR BREACH OF THE DUTY TO MONITOR

Defendants contend that the Director Defendants cannot be liable for their monitoring failures, ¶¶257-61, 301-06, because Solutia and not the Director Defendants were responsible for

appointing the Plan and Fund Committees.  Sol. Def. Mem. at 37.  Defendants' contention contradicts not only the Complaint, but also the SPDs, which charge the Director Defendants with appointment duties as to both Committees. ¶39, 98; 2002 SPD at 58 (Politte Decl. Ex. F); 1999 SPD at 50 (Politte Decl. Ex. E); 1997 SPD at 38 (Politte Decl. Ex. C); 1997 SPD at 44 (Politte Decl. Ex. D).

Defendants also contend that the duty to monitor was not breached because "a duty to monitor does not obligate a fiduciary to take any other particular action with respect to a plan other than to appoint, retain, or remove fiduciaries."  Sol. Def. Mem. at 39.  This contention is seriously flawed.  "The duty to monitor carries with it, of course, the duty to take action upon discovery that the appointed fiduciaries are not properly performing."  *Liss v. Smith*, 991 F.Supp. 278, 311 (S.D.N.Y. 1998); *Enron*, 284 F.Supp.2d at 553.  Thus, an appointing fiduciary cannot avoid liability for others' mismanagement by simply doing nothing.  *Free v. Briody*, 732 F.2d 1331, 1335-6 (7th Cir. 1984).  Similarly, a fiduciary is obligated under 29 U.S.C. §1105(a)(3) to make reasonable efforts to remedy any breaches that it knows a co-fiduciary has committed.[19]

Had the Director Defendants properly monitored their appointed fiduciaries, they would have been aware that they were not properly performing their duties, and they would have been obligated to take corrective action.  The precise nature of the corrective action is a question of fact, dependent upon the circumstances.  *Liss*, 991 F.Supp. at 311.  Accordingly, Defendants err when they contend that they were powerless to take any corrective action or "provide information concerning the Company's financial status."  Sol. Def. Mem. at 39.

---

[19]  Courts and the DOL have recognized that "[t]he power to appoint and remove trustees carries with it the concomitant duty to monitor those trustees' performance."  *Liss*, 991 F. Supp. at 311; *Leigh*, 727 F.2d at 135; *Martin v. Feilen*, 965 F.2d 660, 669-70 (8th Cir. 1992); *Mehling v. New York Life Ins. Co.*, 163 F.Supp.2d 502, 510 (E.D. Pa. 2001) ("[I]mplicit in [the appointing fiduciary's] power to select the Plans' named fiduciaries is the duty to monitor the fiduciaries' actions, including their investment of Plan assets"); 29 C.F.R. §2509.75-8 at D-4and FR-17.

## VIII.   PLAINTIFF STATES CLAIMS AGAINST NORTHERN TRUST

Northern Trust seeks dismissal of the claims against it on the ground that it is a "directed trustee" whose only duty was to blindly follow the imprudent directions given to it by Solutia and the Solutia Defendants.   Northern Trust's designation of itself as a "directed trustee," however, is at odds with the Complaint's allegations and the discretionary authority with which Northern Trust was charged under the Trust Agreement.  Moreover, even if the Trust Agreement could somehow be read to designate it a "directed trustee," Northern Trust would retain the fiduciary duty of prudence with respect to the directions it received to invest in Solutia stock. Because those directions were imprudent, Northern Trust's blind adherence to them was a breach of its duties.

### A.     ERISA Requires That Plan Assets be Held in Trust By a Trustee Who Serves in a Fiduciary Capacity

The underlying purpose of ERISA is to provide a uniform federal structure for securing employee retirement income from, among other things, fiduciary misconduct.  To do so, ERISA requires plan assets to be held in trust by a trustee with the authority to control and manage those assets.  29 U.S.C. §1103(a).  ERISA establishes the scope of a trustee's duties, stating that once a trustee has accepted its appointment by a named fiduciary of the plan, the trustee:

> shall have the exclusive authority and discretion to manage and control the assets of the plan, except to the extent that
>
> (1)    the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to [the fiduciary provisions of ERISA] or
>
> (2)    authority to manage, acquire, or dispose of assets of the plan is delegated to one or more investment managers pursuant to [29 U.S.C. § 1102(c)(3)].

29 U.S.C. §1103(a).

Thus, ERISA places all of the fiduciary responsibility for managing plan assets on the trustee unless the trustee is subject to the directions of a named fiduciary, or an investment manager has been appointed.  But even trustees subject to the directions of a named fiduciary retain their fiduciary status, and must follow only "proper directions" that are not contrary to the fiduciary provisions of ERISA.  29 U.S.C. §1103(a); *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 406-407 (7th Cir. 2007); *FirsTier Bank v. Zeller*, 16 F.3d 907, 911 (8th Cir. 1994).

**B.    The Complaint Alleges that Northern Trust Had Duties as Both a Discretionary and Directed Trustee[20]**

**1.    The Complaint Alleges that Northern Trust Had Duties as a Discretionary Trustee and Breached those Duties**

The Complaint states that Northern Trust "is a fiduciary because it was the Trustee of the Plan..., exercised discretion and authority over the Plan's assets, and accepted directions to purchase and hold Solutia Stock."  ¶99.  The Complaint thus clearly alleges both that Northern Trust had discretion and served as a discretionary trustee, and that it also served as a directed trustee in certain respects.

The Trust Agreement confirms that Northern Trust had discretionary responsibilities.  Its general provisions note that in executing the agreement Northern Trust "acknowledges that it assumes the fiduciary duties established by this Agreement," §15, and that:

> Except as otherwise provided with respect to the investment of assets in any Directed Fund, the Trustee is hereby granted any and all discretionary powers not explicitly or implicitly conferred by this Agreement which it may deem necessary or proper for the protection of the property held hereunder.

---

[20] Though Plaintiff alleges that Northern Trust served both as a discretionary and a directed trustee, discovery is essential to determine the nature of those duties and whether any directions from the named fiduciary exist at all to support Northern Trust's claim that it was directed. *See supra* section V.

44

§11.[21]  The general provisions also make clear that Northern Trust has the authority to invest the Stock Fund's assets in something other than Solutia stock, noting that the Fund need not be invested in Solutia stock "to the extent used to maintain liquidity for distributions and expenses or as otherwise provided below."[22]  *Id.*   And the Trust Agreement specifically grants discretionary authority to Northern Trust to:

> place amounts received by it for the purpose of common stock investment [in the Solutia Stock fund] in temporary investments, if, in the opinion of the Trustee, market conditions are such that investment in common stock of the Corporation would be disruptive or could not be accomplished, or if the investment would be prohibited by law....

Trust Agreement, §5.1.

Plaintiff has alleged that one of the ways that Northern Trust breached its fiduciary duties was by failing to invest the Stock Fund's assets in "temporary investments," i.e. cash or cash-equivalents, rather than Solutia stock.  ¶298(b).  Such an action would fall within Northern Trust's discretionary authority because as Solutia neared bankruptcy the Stock Fund was

---

[21] It should be noted that any provision of the trust agreement that purports to relieve Northern Trust of its fundamental ERISA fiduciary duties is void, since ERISA, 29 U.S. C. §1110(a), provides:

> [A]ny provision in an agreement or an instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation or duty under this part shall be void as against public policy.

[22] ERISA does not require that a plan intended for investment in employer securities be invested exclusively in company stock.  To the contrary, the statute authorizes individual account plans and ESOPs which invest "*primarily* in qualifying employer securities."  *See, e.g.*, 29 U.S.C. §§1107(d)(3)(A) and (d)(6) (emphasis added).  According to the DOL, the Stock Fund would have been invested "primarily" in Solutia stock even if 49% of its assets were in other investments.   DOL ERISA Opinion Letter 83-6A, 1983 WL 22495 (January 24, 1983). Furthermore, because "[i]nstances may arise where an investment of more than 50 percent of plan assets in qualifying employer securities would not satisfy the fiduciary requirements imposed by section 404 of ERISA," the DOL has advised that an ESOP must only satisfy the "primarily" requirement "over the life of the plan."  *Id.*

acquiring a rapidly increasing concentration of the total market capitalization of Solutia stock, so that it held over 15% of the outstanding shares by the end of 2003.  ¶¶78-87.  Specifically, Northern Trust held 10.67 million shares of Solutia stock in the Stock Fund by the end of 2001, ¶82, and it continued to purchase and hold Solutia stock so that it held 17.74 million shares by year end 2003.  ¶84.  Northern Trust continued to purchase Solutia stock until December 15, 2003, two days before Solutia's bankruptcy filing.  ¶¶60-63.  This concentration created an illiquidity risk in that it prevented Plan fiduciaries from being able to quickly liquidate the Stock Fund's holdings in the event it became necessary.  ¶86.[23]  Since this illiquidity risk was a result of market conditions, Northern Trust had the authority – and obligation – under the Trust Agreement to eliminate it by increasing the amount of cash in the Stock Fund, and it breached its fiduciary duties by failing to do so.[24]

### 2.     The Complaint Alleges that Northern Trust had Duties as a Directed Trustee and Breached Those Duties

ERISA prohibits directed trustees from blindly following a named fiduciary's directions that are not "proper," violate the terms of the plan, or are "contrary to" ERISA.  29 U.S.C. §1103(a).  Accordingly, virtually all legal authorities require that ERISA directed trustees exercise their fundamental fiduciary duty of prudence when determining whether to follow such directions.  Northern Trust breached those duties by blindly following directions that were imprudent and not in the best interest of participants.

---

[23]  Moreover, SEC regulations may have imposed additional legal restrictions or requirements on the sale of stock held by the Plan that required a gradual sale over many months.  *See* SEC Rule 144, 17 C.F.R. §230.144(e)(1)(I).  This also made it imprudent to hold such a large block of Solutia Stock without an effective early exit strategy.

[24]  Northern Trust ignores Plaintiff's allegation that it breached its fiduciary duties by failing to exercise its discretionary authority in this respect.

### i.    The Common Law Standard

ERISA is based on the law of trusts and the Restatement (Second) of Trusts addresses the situation presented here in which one fiduciary with authority gives directions to another:

> If a trustee has reason to suspect that the holder of a power is attempting to exercise it in violation of a fiduciary duty ... the trustee is under a duty not to comply and may be liable if he does comply.

Restatement (Second) of Trusts, §185, cmt. e (1959) (emphasis added).  Numerous courts have thus concluded that, in the ERISA context, a directed trustee is under a duty not to comply with directions, including directions to invest in company stock, when it knows or should know that such directions are imprudent.  *See Summers*, 453 F.3d at 406-07 (holding that directed trustees have "an express statutory duty of prudence" and since the "trustee physically controls the trust assets; knowingly to invest them imprudently or let them remain invested imprudently is irresponsible behavior for a trustee, whose fundamental duty is to take as much care with the trust assets as he would take with his own property"); *FirsTier*, 16 F.3d at 911 (citing common law of trusts and concluding "that Congress adopted this standard in ERISA").[25]  In adopting the common law view, these courts followed Supreme Court guidance:

> ERISA abounds with the language and terminology of trust law and must be construed against the background of the common law of trusts.  Indeed, absent some express statutory departure – such as ERISA's broader definition of a responsible 'fiduciary,' ... Congress intended that the courts would look to the settled experience of the common law in giving shape to a federal common law of rights and obligations under ERISA-regulated plans.

---

[25]    *See also Enron*, 284 F.Supp.2d. 511, 589 (S.D.Tex. 2003) at 589-91 (following, and extensively discussing, common law standard for ERISA directed trustees in context of decision to invest in company stock);  *In re Sprint Corp. ERISA Litig.*,388 F. Supp. 2d 1207, 1236 (D. Kan. 2004) (following common law standard for ERISA directed trustee in company stock case); *Beam v. HSBC Bank USA*, No. 02-0682, 2003 WL 22087589 at *2 (W.D.N.Y. Aug. 19, 2003) (same); *Koch v. Dwyer*, No. 98 Civ. 5519 (RPP), 1999 WL 528181 at *10 (S.D.N.Y. July 22, 1999) (same).

*Mertens v. Hewitt Assoc's*, 508 U.S. 248, 264 (1993) (internal quotation marks and citations omitted).

### ii.    The FAB Standard

An internal memorandum written by Robert J. Doyle, Director of Regulations and Interpretations at the DOL, entitled Field Assistance Bulletin 2004-03 (the "FAB"),[26] largely agrees with applying the common law standard to ERISA directed trustees. It states that "a directed trustee may not follow a direction that the trustee knows or should know is contrary to ERISA." FAB at 3. Since ERISA requires that fiduciaries act prudently, and the FAB agrees with the courts that directed trustees are fiduciaries,[27] this statement appears equivalent to the common law standard that a directed trustee cannot follow directions that it knows or should know are imprudent. However, when it comes to acting upon public information regarding the prudence of investing in company stock, the author of the FAB departs from the common law standard and views the duty of prudence owed by directed trustees as more limited. Its author agrees that there are circumstances in which a directed trustee has a duty to refuse to follow, or at least inquire regarding the appropriateness of, directions to invest in company stock. However, this duty is limited to situations in which "there are clear and compelling public indicators, as evidenced by an 8-K filing with the ... SEC, a bankruptcy filing or similar public indicator, that call into serious question a company's viability as a going concern." FAB at 5-6. This standard

---

[26]    This memorandum, dated December 17, 2004, is available at www.dol.gov/ebsa/regs/fab_2004-3.html. Its stated purpose is to "provide general guidance to ... regional offices." *Id.* at 1.

[27]    The FAB states that a "plan trustee . . . will, by definition, always be a 'fiduciary' under ERISA as [a] result of its authority or control over the plan assets," regardless of whether that trustee is a "directed trustee." FAB at 1.

permits a directed trustee to acquiesce in investment directions that it knows, or should know are imprudent, so long as the company's viability as a going concern is not in doubt.

The only Circuit Court to have considered the views expressed by the author of the FAB has criticized those views in so far as they concern company stock.  *See Summers*, 453 F.3d at 411 (finding that the FAB fails to supply an "administrable" standard).  Just as Judge Posner found in *Summers*, this Court should find that the portion of the FAB addressing a directed trustee's duty to evaluate directions to invest in company stock based upon public information must be rejected and that the views of its author are not worthy of deference.  Indeed, the FAB has never been published or filed by the DOL with any court, and it has never been subjected to notice and comment procedures.  Its views on this subject conflict with DOL authority on this issue.[28]  The author of the FAB fails to give any sound reason for its departure from the common law standard that virtually every court had adopted prior to the FAB and that the Supreme Court has indicated should guide ERISA interpretation.  And finally, the FAB provides no explanation of how it could possibly be consistent with ERISA, and its goal of protecting participant interests, to permit an ERISA fiduciary to follow directions that it knows, or should know, are imprudent.

### C.    Under any Legal Standard, the Complaint States a Claim that Northern Trust Breached its Fiduciary Duty of Prudence

Regardless of what standard is applied to Northern Trust's duties, Plaintiff has adequately pled a violation by Northern Trust of its ERISA duties.

---

[28]   The DOL specifically adopted the common law standard in *Enron* and stated: "Certainly where, as here, the trustee allegedly already has actual knowledge of the facts and circumstances that cause the direction to violate the prudence or loyalty requirements ... the trustee has the ... duty to disregard the direction...."  Amended Brief of the Secretary of Labor as Amicus Curiae Opposing the Motions to Dismiss, August 30, 2002, at 47-49 (available at http://www.dol.gov/sol/media/briefs/enronbrief-8-30-02.pdf).

First, the Trust Agreement specifies that Northern Trust will be required to "discharge" its "investment duties," including those pertaining to the Stock Fund in §5 of the agreement, in accordance with the ordinary "prudent man" duty of care specified in ERISA.  Trust Agreement, §9.1 (reciting relevant excerpts from, and specifically referencing the text of, ERISA §404 as governing the Trustee's conduct).  Hence, the Trust Agreement itself makes clear that under the terms of the Plan the ordinary duty of care, and not the minimal limited duty that the author of the FAB suggests is at issue in 29 U.S.C. §1103, are to guide Northern Trust's actions.

Second, the Complaint alleges facts, sufficient under Rule 8's liberal pleading standards, to state a claim that Northern Trust violated both standards.  The Complaint satisfies the common law standard because the facts alleged detail why investment in Solutia stock was not prudent and why Northern Trust knew, or should have known, that it was not.  SAC ¶¶100-236.  The Complaint also satisfies the FAB standard because it alleged the existence of various "red flags" that called into serious question Solutia's "viability as a going concern."  FAB at 6.

### 1.      Plaintiff's Factual Allegations State a Claim

The Complaint alleges that Northern Trust knew, or should have known, that Solutia stock was an imprudent retirement investment when, after three years and $200 million of losses to the Plan, the Anniston PCB material risks were disclosed on January 2, 2002, and thereafter.  ¶¶268-71.  Despite these disclosures, Northern Trust continued to invest and purchase additional shares of Solutia stock until two days before Solutia's Chapter 11 filing.  ¶¶62, 77, 87.

Plaintiff also alleged that "certainly by July 12, 2002," Northern Trust "knew, or should have known, that Solutia stock was a speculative investment, and not a prudent retirement investment."  ¶294.  July 12, 2002, was the date of Moody's second downgrade in that year of

Solutia's debt rating on senior unsecured debt, from Ba3 to B3, evidencing that it considered the debt not only "speculative," but lacking the "characteristics of a desirable investment."  ¶226.[29] These "red flags" should have put Northern Trust on notice that directions to invest retirement assets in 10 million shares of Solutia stock were of doubtful prudence.

More "red flags" continued to wave at Northern Trust as Solutia's financial condition unraveled.  On October 10, 2002, there was a public announcement that Solutia was being investigated for price-fixing in the rubber chemicals industry.  SAC ¶227.  On June 30, 2003, Solutia admitted that the verdicts in certain of the Anniston cases were "far in excess of amounts the Company had accrued" and use of the verdicts as a basis for valuations "would result in a valuation in excess of $3 billion."  ¶230.  That filing conceded that "[w]ithout a dramatic change in circumstances, the continuing overhang of the PCB litigation and other legacy liabilities will significantly restrict the Company's alternatives to address both short term and long term liquidity requirements."  *Id.*  On August 8, 2003, Moody's again lowered the rating on Solutia's senior unsecured debt from B1 to Caa3 ("subject to very high credit risk").  ¶231.

Finally, on November 14, 2003, Solutia filed its Form 10-Q for the quarterly period ended September 30, 2003. In that public filing, Solutia disclosed that it was operating under enormous liabilities, costing it approximately $100 million a year.  The Company's 10-Q then stated that Solutia's ongoing legacy liabilities compelled it to "consider [ ] all available

---

[29]  Northern Trust improperly disputes the Complaint's allegations by stating that "the Moody's rating definition for grade 'B' securities *does not* include the word 'speculative'."  N.T. Mem. at 23 n. 11 (emphasis in original). Moody's "B" rating definition in fact *does* contain the term "speculative," and states that: "Obligations rated B are considered speculative and are subject to high credit risk."  *See Moody's Ratings Definitions* (attached hereto as Exhibit 2).  The so-called "definition" on which Northern Trust relies and cites is not authored by Moody's but is instead a Bloomberg description of Moody's ratings.  *See* Dell Decl. Ex. H.  Northern Trust's representation to the Court is thus improper and misleading.

alternatives to address these matters, including, but not limited to, *a potential reorganization under Chapter 11 of the U.S. bankruptcy code*." ¶233 (emphasis added).[30]

Despite these very public warnings, Northern Trust continued to invest in Company Stock as a retirement investment option until December 15, 2003, just two days before the Company declared bankruptcy, nearly two years after it was placed on notice that the Company's legacy liabilities had critically weakened its ability to proceed independently, four months after the Company admitted severe restrictions on its liquidity, and more than a month after the Company announced that it was considering bankruptcy.

Plaintiff has alleged that Northern Trust knew that the directing fiduciaries, who were Solutia executives and/or directors, continued to make investment decisions regarding the investment of Plan assets despite their conflicts of interest arising from the Company's serious financial decline.   ¶273.   Courts have recognized that changing the investment or hiring an independent fiduciary may be necessary where "the financial state of the company deteriorates [and] ESOP fiduciaries who double as directors of the corporation often begin to serve two masters...."  *Moench*, 62 F.3d at 572.

Given the allegations of Solutia's severely distressed financial situation and Northern Trust's compliance with imprudent directions despite its actual or constructive knowledge of the imprudence of investing substantial assets in Solutia stock, ¶¶4, 242, 250, 268-74, Plaintiff has more than met the standard for alleging improper conduct by Northern Trust as a directed trustee for purposes of either the common law or FAB standard.

---

[30]   The author of the FAB listed "a bankruptcy filing or similar public indicator, that calls into serious question a company's viability as a going concern" as one factor that might require the directed trustee to reject directions "without further inquiry."  *See* FAB at 5-6.

Courts have repeatedly found allegations like those made here sufficient to state a claim that an ERISA directed trustee has breached its fiduciary duties by following directions to invest in company stock. *In re AOL Time Warner Sec. & ERISA Litig.*, No. 02-8853, 2005 WL 563166 at \*3 (S.D.N.Y. Mar., 2005); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp.2d 1207, 1236 (D. Kan. 2004); *Kling*, 323 F.Supp.2d at 150; *Enron*, 284 F.Supp.2d. at 589-91; *Beam v. HSBC Bank USA*, No. 02-0682E, 2003 WL 22087589 at \*2 (W.D.N.Y. Aug. 19, 2003); *Koch v. Dwyer*, No. 98-5519, 1999 WL 528181 at \*10 (S.D.N.Y. July 22, 1999).

## 2.  Northern Trust's Relies on Unpersuasive And Distinguishable Authority

In support of its contention that the Complaint fails to state a claim against it, Northern Trust insists that Judge Posner in *Summers* "got it wrong," N.T. Mem. at 17 n.8, and relies instead on a few unpersuasive and distinguishable district court cases.

*In re WorldCom, Inc. ERISA Litig.*, 354 F.Supp.2d 423 (S.D.N.Y. 2005), which was decided on summary judgment after discovery and a mature record, misconstrues the FAB by interpreting it in regard to when a directed trustee has a duty of inquiry, *see* 354 F.Supp.2d at 446, 449, rather than when it should act "without further inquiry." *WorldCom* also weakens the already weak FAB standard by impermissibly adding the notion of "impending collapse" – a term found nowhere in the FAB's standard. *Id.*

In *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d 1002 (S.D. Ohio 2006), the plaintiffs made "no allegation of any clear and compelling public indicator calling into serious question Cardinal's viability as a going concern." *Id.* at 1040. Moreover, like *Cardinal Health*, neither *DiFelice v. US Airways, Inc.*, 397 F.Supp.2d 735 (E.D. Va. 2005), nor *In re RCN Litig.*, No. 04-5068 (SRC), 2006 U.S. Dist. LEXIS 12929 (D.N.J., Mar. 22, 2006), involved trust

agreements in which the trustee expressly agreed to abide by the ordinary person standard of care, and none of the cases involved trust agreements that had the language at issue here specifically granting Northern Trust broad discretionary authorization.

*DiFelice* was also wrongly decided as it contracts the FAB's plain language.    The decision states that "where ... the directed trustee possesses only publicly available information, the DOL's standard [as expressed in the FAB] imposes liability on a directed trustee only after the named fiduciary has filed for bankruptcy." *DiFelice*, 397 F.Supp.2d at 752.  The FAB states nothing of the kind.   It states that where a directed trustee possesses only publicly available information and:

> where there are clear and compelling public indicators, as evidenced by an 8-K filing with the ... SEC, a bankruptcy filing or similar public indicator, that call into serious question a company's viability as a going concern, the directed trustee may have a duty not to follow the named fiduciary's instruction without further inquiry.

FAB at 5-6.  This language clearly indicates that circumstances other than a bankruptcy filing may trigger a directed trustee's duty to reject instructions (i.e., an 8-K filing with the SEC or a "similar public indicator" that calls "into serious question a company's viability as a going concern"). *Id.*  Moreover, the FAB only states a directed trustee's duty to reject instructions "without further inquiry," and thus necessarily implies that a directed trustee may have different duties after it has made an inquiry – as well as a duty to inquire under different circumstances. Plaintiff has alleged that Northern Trust not only never refused any instruction to invest in Solutia stock, but also that it never even made so much as any inquiry regarding such directions.

Also clearly erroneous is the *DiFelice* court's contention that to require a directed trustee to follow a "duty of ordinary care and prudence" when evaluating directions would "effectively eviscerate [ERISA §403(a)'s directed trustee provision] by eliminating any distinction between

the duty of a directed trustee under [that section] and the duty of the ERISA named fiduciary with investment authority." *Id.* at 748. In contrast to the directing fiduciary, the extent of a directed trustee's duty of inquiry with respect to determining whether an investment in company stock is prudent is limited to basic research and investigation of obvious red flags such as a downgrade of the company's debt to junk status or a sharp drop in the company's stock price – both of which occurred here. *See, e.g., Patricia Wick Hatamyar*, See No Evil? The Role of the Directed Trustee under ERISA, 64 Tenn. L. Rev. 1, 86 (1996) ("an ESOP directed trustee [or trustee otherwise engaged in investment in company stock] should remain conversant enough with the employer's financial condition to be able to make an informed judgment about whether the stock is and remains a good investment. Certainly, annual review of the company's financial statements does not seem particularly onerous"). Thus, requiring a directed trustee to abide by ERISA's ordinary "prudent man" duty of care when evaluating the prudence of directions from a named fiduciary is not inconsistent with the more limited duties of a directed trustee.

**D.    Plaintiff Adequately Pleads That Northern Trust Caused The Plan's Losses**

Northern Trust asserts that pursuant to ERISA §404(c), 29 U.S.C. §1104(c), it did not cause, and cannot be held liable for, Plaintiff's own investment decisions. N.T. Mem. at 33. Such a defense, however, is available only when: (a) the relevant plan meets all the regulatory requirements to qualify for 404(c) plan status; and, (b) the fiduciary demonstrates that an individual participant exercised full control regarding a particular transaction. *See* 29 C.F.R. §2550.404(c)-1. These regulations apply to transactions in company stock funds. 57 Fed.Reg. 46906, 46928 (Oct. 13, 1992).

The burden of proving entitlement to the affirmative 404(c) defense lies squarely with the fiduciaries seeking its protection. *See, e.g., Allison v. Bank One - Denver*, 289 F.3d 1223, 1238 (10th Cir. 2002); *AEP*, 327 F.Supp.2d at 829-30; 57 Fed.Reg. at 46906 (citing *Donovan v. Cunningham*, 716 F.2d 1455, 1465, 1467-68 (5th Cir. 1983)). As a "defense," moreover, it is not subject to resolution on a motion to dismiss because it raises numerous factual determinations as to what, if anything, was done to meet the regulatory requirements for 404(c) plans. *See Rankin*, 278 F.Supp.2d at 872; *WorldCom*, 263 F.Supp.2d at 764 n.12; *Vivien v. WorldCom, Inc.*, No. C02-01329WHA, 2002 WL 31640557 (N.D.Cal. July 26, 2002). Thus, a court cannot properly decide 404(c) compliance issues without sufficient evidence.

Despite the impropriety of raising a 404(c) defense on a motion to dismiss, Northern Trust argues that Plaintiff was able to exercise control over his account: "Since any losses arising from investments that plaintiff could have transferred out of the Solutia Stock Fund were not caused by Northern Trust's alleged breaches of fiduciary duty, but by plaintiff's decision not to make the transfer, Northern Trust cannot be liable for such losses." N.T. Mem. at 31-32. This analysis misconstrues section 404(c). A fiduciary is absolved of liability only when losses are "the direct and necessary result of that participant's or beneficiary's exercise of control." 29 C.F.R. §2550c-1(d)(2) (emphasis added). As the preamble to section 404(c) states:

> the act of designating investment alternatives ... in an ERISA Section 404(c) plan is a fiduciary function to which the limitation on liability provided by Section 404(c) is not applicable. All of the fiduciary provisions of ERISA remain applicable to both the initial designation of investment alternatives and investment managers and the ongoing determination that such alternatives and managers remain suitable and prudent investment alternatives for the plan. Therefore, the particular plan fiduciaries responsible for performing these functions must do so in accordance with ERISA.

56

57 Fed.Reg. at 46922.  *See also DiFelice v. US Airways, Inc.*, 497 F.3d 410, 418 n. 3 (4th Cir. 2007) (Section 404(c) limits fiduciary liability when participants make poor choices from a *satisfactory* menu of options, not when the menu assembled is imprudent in the first instance.).

Thus, a fiduciary is immune from liability *only if* the loss would have occurred exclusively due to the participant's choice of investment.  A participant's losses are not a "direct and necessary" result of his or her investment choices if a trustee could have either directly prevented the choice or informed the participant of the folly of that choice.  *See In re Electronic Data Systems Corp.*, 224 F.R.D. 613, 626 (E.D.Tex. 2004) (finding that 404(c) does not immunize fiduciaries for losses resulting from their breaches, only for losses that result directly from participant direction).  As such, by identifying the factual detail of Northern Trust's duties and how it breached those duties, Plaintiff has fully rebutted the application of section 404(c) and has adequately connected Plaintiff's loss to Northern Trust's misconduct.

### E.    Plaintiff States a Claim Against Northern Trust For Co-Fiduciary Liability

The Complaint sufficiently alleges that Northern Trust is subject to co-fiduciary liability under all three provisions of ERISA's co-fiduciary liability provision. ERISA §405(a), 29 U.S.C. §1105(a).[31]  Plaintiff's factual allegations amply describe the basis for these claims, putting Northern Trust on notice of their nature sufficient to satisfy the liberal standards of Rule 8.

---

[31]  ERISA § 405(a), 29 U.S.C. § 1105, provides that a fiduciary shall be liable for a co-fiduciary's breach in any of the following three situations:

(1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)    if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

Under §405(a)(1), a plaintiff must show "(1) that a co-fiduciary breached a duty to the plan, (2) that the fiduciary knowingly participated in the breach or undertook to conceal it, and (3) damages resulting from the breach." *Enron*, 284 F.Supp.2d at 581. Plaintiff alleges that Solutia breached its fiduciary duties, ¶¶294-99, and that on and after January 2, 2002, Northern Trust "participated knowingly in and concealed the breaches of the other Defendant fiduciaries." ¶315 Plaintiff also alleges that Northern Trust knew that Solutia and the Plan's other fiduciaries were breaching their fiduciary duties by continuing to invest in Solutia stock as Solutia's financial condition deteriorated towards bankruptcy, ¶¶268-71, 273, and that Northern Trust participated in these other Defendants' breaches by continuing to invest in Solutia stock rather than cash, ¶297(b), and by continuing to follow the named fiduciaries' directions and investing substantial Plan assets in what it knew was an imprudent investment. ¶¶273-74, 315. Plaintiff specifically alleges that Northern Trust had "knowledge of these [other Defendants'] breaches," ¶314, and that these imprudent investments caused losses to the Plan and its participants, ¶273. The Complaint, therefore, states a claim under §405(a)(1).

Under §405(a)(2), a pleading need only show that a fiduciary has breached its own duties and that it thereby enabled another fiduciary to breach its duties. *Enron*, 284 F.Supp.2d at 581. Plaintiff alleges that Northern Trust "also enabled the breaches, *e.g.*, by following directions to continue to invest Plan assets in Solutia Stock." ¶315. Many courts have refused to dismiss claims of a trustee's co-fiduciary liability under this "enabling" prong where, as here, a claim is stated that the trustee has breached its own fiduciary duties. *See, e.g., Kling*, 323 F.Supp.2d at 151; *Enron*, 284 F.Supp.2d at 663-64; *Springate v. Weighmasters Murphy, Inc. Money Purchase Pens. Plan*, 217 F.Supp.2d 1007, 1025 (C.D.Cal. 2002); *see also In re CMS Energy ERISA Litig.*,

_____

(3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

312 F.Supp.2d 898, 910 (E.D.Mich. 2004) (refusing to dismiss co-fiduciary claims where claim stated for fiduciary liability); *AEP*, 327 F.Supp.2d at 833 (same).[32] The Complaint, therefore, states a claim under §405(a)(2).

Under §405(a)(3), a plaintiff must show that a fiduciary had knowledge of another fiduciary's breaches and failed to make reasonable efforts to remedy the breach. The Complaint alleges that, rather than taking any action to remedy known breaches of other fiduciaries, Northern Trust merely continued to follow imprudent directions, allowing these breaches to continue. ¶¶273-74, 297, 315 (alleging that Northern Trust, "despite knowledge of these breaches ... failed to take reasonable steps to remedy the breaches, such as seeking the appointment of an independent fiduciary when the other Defendant fiduciaries failed to fulfill their duties"). The Complaint therefore states a claim under §405(a)(3).

Northern Trust ignores Plaintiff's allegations in stating that the Complaint does not allege that Northern Trust knew Solutia and others were breaching their fiduciary duties by directing it to invest in Solutia stock.[33] N.T. Mem. at 29. The Complaint alleges that Northern Trust knew

---

[32]  Northern Trust argues that the Complaint "fail[s] to identify *how* Northern Trust 'enabled' the breaches by each of the other defendants." N.T. Mem.. at 29. The Complaint, however, provides ample allegations of how Northern Trust abetted the other defendants and explains at some length the charges against Northern Trust. ¶140-236, 268-74. *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-8324, 2004 WL 407007 (N.D.Ill. Mar. 3, 2004), and *Harris Trust and Sav. Bank v. Salomon Bros., Inc.*, 813 F.Supp. 1340 (N.D.Ill. 1992), do not support Northern Trust's contention. N.T. Mem. at 29. In both cases, the plaintiffs failed to put the defendants on notice of the particular charges against each. Here, Plaintiff makes extensive allegations identifying Northern Trust's breaches and the breaches of its co-fiduciaries.

[33]  The Second Circuit, relying principally on the *Restatement (Second) of Trusts*, has held that a "defendant who is on notice that conduct violates a fiduciary duty is chargeable with constructive knowledge of the breach if a reasonably diligent investigation would have revealed the breach." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 283 (2d Cir. 1992), *recognized as partially abrogated on other grounds*, *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322-23, 327-28 (2d Cir. 2003).

that the Plan fiduciaries directing Northern Trust to continue investing in Solutia stock were conflicted and no independent fiduciary had been appointed to make decisions with respect to Plan investments in Solutia stock.  ¶273.  During that period, Northern Trust knew, or should have known, that the other Defendant fiduciaries were failing to take appropriate steps to protect the Plan and its participants with respect to Plan investments in Solutia stock, but failed to disclose that information.  ¶¶273-74, 314.  Northern Trust, despite knowledge of these breaches, also enabled the breaches by following directions to continue to invest Plan assets in Solutia stock and failed to take reasonable steps to remedy the breaches, such as seeking the appointment of an independent fiduciary when the other Defendant fiduciaries failed to fulfill their duties.  ¶315.

Northern Trust's contention that the Complaint merely "parrots" the language of the statute is belied by the detailed factual allegations of the Complaint which, as previously explained, provide ample notice to Northern Trust of the facts behind the co-fiduciary claim against it.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.

Dated: New York, New York
      November 16, 2007

                             Respectfully submitted,

                             **SARRAF GENTILE LLP**

                             __/s/ Ronen Sarraf__
                             Ronen Sarraf (RS-7964)
                             Joseph Gentile
                             11 Hanover Square, 2nd Floor
                             New York, NY 10005
                             Tel: (212) 868-3610
                             Fax: (212) 918-7967

                             **STEMBER FEINSTEIN DOYLE**
                               **& PAYNE, LLC**
                             Ellen M. Doyle
                             Joel Hurt
                             Pamina Ewing
                             1705 Allegheny Building
                             429 Forbes Avenue
                             Pittsburgh, PA  15219-1639
                             Tel: (412) 281-8400
                             Fax: (412) 232-3730

**CERTIFICATE OF SERVICE**

I certify that on November 16, 2007, the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will notify all counsel of record in this matter who are registered with the CM/ECF system to receive such notification.


_____/s/ Ronen Sarraf_____