**KIRKLAND & ELLIS LLP**
Citigroup Center
153 East 53rd Street
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
Jonathan S. Henes
Colin M. Adams

200 East Randolph Drive
Chicago, Illinois 60601
Tel: (312) 861-2000
Fax: (312) 861-2200
Jeffrey J. Zeiger (*Pro Hac Vice*)

*Attorneys for the Reorganized Debtors*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROGER REIFF, | CIVIL ACT NO. 07-cv-6011 (LAP) (ECF Matter) |
| Plaintiff, | |
| v. | Judge Loretta A. Preska |
| FRANK A. METZ, JR., SHEILA FELDMAN, HELEN L. NELLING, SUSAN E. BEVINGTON, NANCY STEMME, CHRISTOPHER N. AST, EMPLOYEE BENEFITS PLAN COMMITTEE, PENSION AND SAVINGS FUND COMMITTEE, JOHN HUNTER, ROBERT CLAUSEN, ROBERT POTTER, MICHAEL E. MILLER, PAUL H. HATFIELD, J. PATRICK MULCAHY, SALLY G. NARODICK, PAUL DONOVAN, ROBERT H. JENKINS, WILLIAM D. RUCKELSHAUS, JOHN B. SLAUGHTER, PHILIP R. LOCHNER, JR., ROBERT T. BLAKELY, NORTHERN TRUST COMPANY, and JOHN DOES 1-100, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF SOLUTIA INC.'S
## MOTION TO APPROVE CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ iii

BACKGROUND ................................................................................................................... 3

I.      SOLUTIA'S CHAPTER 11 CASES. ....................................................................... 3

II.     THE DICKERSON ACTION. ................................................................................... 4

III.    THE REIFF ACTION. ............................................................................................... 6

IV.     THE SETTLEMENT AGREEMENT. ...................................................................... 6

ARGUMENT ........................................................................................................................ 9

I.      THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS
        "FAIR AND EQUITABLE." ...................................................................................... 9

        A.      A Comparison Of Likely Litigation Outcomes And The Benefits Of
                Settlement Strongly Favors Settlement ........................................................ 10

                1.      The result of the litigation among Solutia and Claimants was
                        uncertain. ......................................................................................... 10

                2.      The Settlement preserves creditor recoveries and eliminates the
                        possibility of years of costly litigation. .......................................... 11

        B.      Continued Litigation Against Claimants Would Be Complex, Protracted,
                And Costly. ................................................................................................... 12

        C.      Solutia's Creditors Support The Settlement. ............................................... 13

        D.      Experienced Counsel Support The Settlement. ........................................... 13

        E.      The Releases Are No Obstacle To Approval Of The Settlement. ............... 14

        F.      The Settlement Is The Product Of Extensive Arm's Length Bargaining. ....... 14

II.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER
        BANKRUPTCY RULE 7023 AND FEDERAL RULE OF CIVIL PROCEDURE
        23 ............................................................................................................................. 15

        A.      Certification Of The Class Will Not Delay Administration Of Solutia's
                Estates. ......................................................................................................... 15

        B.      The Settlement Satisfies Federal Rule Of Civil Procedure 23 .................... 15

C.     The Benefits Of Class Action Litigation Will Be Realized In Solutia's Bankruptcy...................................................................................................17

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Brotherton v. Cleveland,*
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ............................................................ 15, 16

*Dehoyos v. Allstate Corp.,*
   240 F.R.D. 269 (W.D. Tex. 2007) .......................................................................... 15

*Dickerson v. Feldman,*
   426 F. Supp. 2d 130 (S.D.N.Y. 2006) ...................................................................... 5

*Dickerson v. Feldman,*
   Case No. 1:04-cv-07935 (LAP) ...................................................................... passim

*Fidel v. Farley,*
   534 F.3d 508 (6th Cir. 2008) ................................................................................ 15

*In re Adelphia Commc'ns Corp.,*
   327 B.R. 143 (Bankr. S.D.N.Y. 2005) ......................................................... 9, 10, 14

*In re Best Prods. Co.,*
   168 B.R. 35 (Bankr. S.D.N.Y. 1994) .................................................................. 9, 10

*In re Iridium Operating LLC,*
   478 F.3d 452 (2d Cir. 2007) .............................................................................. 9, 10

*In re Linerboard Antitrust Litig.,*
   296 F. Supp. 2d 568 (E.D. Pa. 2003) ..................................................................... 15

*In re Metromedia Fiber Network, Inc.,*
   416 F.3d 136 (2d Cir. 2005) .................................................................................. 14

*In re Musicland Holding Corp.,*
   362 B.R. 644 (Bankr. S.D.N.Y. 2007) .................................................................... 15

*In re N.W. Airlines Corp.,*
   No. 05-17930 (ALG), 2007 WL 2815917 (Bankr. S.D.N.Y. Sept. 26, 2007) ............... 15

*In re Texaco Inc.,*
   84 B.R. 893 (Bankr. S.D.N.Y. 1988) ........................................................................ 9

*In re Tower Auto., Inc.,*
   342 B.R. 158 (Bankr. S.D.N.Y. 2006) ....................................................................... 9

*In re W.T. Grant Co.,*
    699 F.2d 599 (2d Cir. 1983) ........................................................................ 9

*In re Woodward & Lothrop Holdings, Inc.,*
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) ................................................... 15, 17

*In re WorldCom, Inc.,*
    No. 02-13533 (AJG), 2005 WL 3832063 (Bankr. S.D.N.Y. May 11, 2005) ............ 15, 16

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,*
    234 F.R.D. 627 (W.D. Ky. 2006) .......................................................... 15

*Reiff v. Metz,*
    Case No. 1:07-cv-06011 (LAP) ..................................................... passim

*U.S. Trust Co. of N.Y. v. Alpert,*
    163 F.R.D. 409 (S.D.N.Y. 1995) .......................................................... 16

*Wright v. Stern,*
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ..................................................... 17

**Statutes**

11 U.S.C. § 510(b) ............................................................................... 6

29 U.S.C. § 1132 .................................................................................. 1

**Rules**

Fed. R. Bank. P. 7023 ........................................................................ 3, 8

Fed. R. Bank. P. 9019 ........................................................................ 3, 9

Fed. R. Civ. P. 23 .......................................................................... passim

In December 2003, Solutia was forced to file for chapter 11 after rising raw material costs, excess capacity in the chemical industry, and a declining economy made the significant legacy liabilities that Solutia inherited when it was spun-off from Pharmacia too great of a burden.  For approximately the next four years, Solutia worked with its primary stakeholders to reach a settlement that allowed it to reallocate significant legacy liabilities (which had cost Solutia approximately $100 million per year since the spin-off) and reconfigure its capital structure so that Solutia could emerge from chapter 11 as a viable and competitive company. Following several years of arduous arm's length-negotiations and significant litigation, Solutia achieved a Global Settlement with its primary stakeholders in late summer 2007 that allowed Solutia to accomplish its restructuring goals and emerge from chapter 11.

Several obstacles, however, remained in Solutia's path to emergence.  Among the most significant were class proofs of claim filed by Jeremy Dickerson and Roger Reiff (collectively, "Claimants") against Solutia's estates in the amount of $290 million (the "Bankruptcy Claims"). Dickerson and Reiff alleged that Solutia breached its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, by allowing Solutia employees to purchase Solutia common stock in their Solutia Savings and Investment Plan ("SIP") accounts when Solutia should have known that it was a poor investment option.

While Solutia believed that it had strong defenses to the Bankruptcy Claims, their significance to the chapter 11 process could not be understated.  If the Bankruptcy Claims were allowed in their stated amount of $290 million, the percentage recovery for Solutia's general unsecured creditors would drop from 83.1% to 61.5%.  (See Bankr. Dkt. No.4254 at 74-75.)  If that occurred, it was highly unlikely that Solutia's primary stakeholders would support the Global Settlement that Solutia had worked nearly four years to achieve.

Following several months of negotiations, counsel for Claimants and Solutia reached a settlement of the Bankruptcy Claims that was read into the record at Solutia's confirmation hearing. None of Solutia's stakeholders objected to the settlement at the confirmation hearing. In addition to the Bankruptcy Claims, Claimants had filed putative class actions in this Court against Solutia's directors, officers, and certain employees (the "Solutia Non-Debtor Defendants") and the Northern Trust Company, Inc. (collectively, the "Non-Debtor Defendants"). *See Dickerson v. Feldman*, Case No. 1:04-cv-07935 (LAP); *Reiff v. Metz*, Case No. 1:07-cv-06011 (LAP). Under Solutia's Plan of Reorganization, Solutia agreed to indemnify and defend its incumbent directors at the time of confirmation from any liabilities arising out of the *Dickerson* or *Reiff* actions. (*See* Bankr. Dkt. No. 4444 ¶ 88.) Thus, Solutia continued working to see if all of the Claimants' actions could be resolved. In December 2007, Solutia, Claimants, and the Non-Debtor Defendants (collectively, the "Parties") reached a settlement of all claims (the "Settlement"). Following five months of additional negotiations, the Parties executed the Settlement Agreement on May 19, 2008.[1]

The Settlement Agreement provides in relevant part:

1.      The class will receive a general unsecured claim in the amount of $6.65 million against Solutia's estates and $4.75 million in cash (of which Solutia is contributing $250,000 with the remainder coming from Solutia's insurer) in full and complete satisfaction of the claims against Solutia and the Non-Debtor Defendants (*See* Ex. 1 §§ 1.4, 2.7, 9 and *id.* at Ex. 3.1A § 9, thereto);[2]

2.      Solutia and the Non-Debtor Defendants will consent to certification of the class for settlement purposes only (*see id.* § 2.1);

3.      In the event the Settlement Agreement is not approved, the Bankruptcy Claims have been capped at $15 million (*see id.* § 6.2);

---

[1]    A copy of the Settlement Agreement is attached hereto as Exhibit 1.

[2]    Based on the closing price of $15.58 on August 26, 2008, the general unsecured claim will be worth approximately $3,667,313. This value will fluctuate based on the price of Solutia's stock.

4.    Claimants and the absent class members shall release Solutia and the Non-Debtor Defendants from all claims that have been, could have been, or could be brought in Solutia's chapter 11 cases or in the actions before this Court (*see id.* § 4); and

5.    Neither Solutia nor the Non-Debtor Defendants admit to any liability or wrongdoing (*see id.* § 8).

In sum, Solutia needed to resolve the Bankruptcy Claims to preserve the Global Settlement with its stakeholders and did so for a fraction of the $290 million asserted claim value. It also was able to settle the actions filed by Dickerson and Reiff before this Court—and eliminate its indemnification obligations—for $250,000 (along with $4.5 million in insurance proceeds).

For reasons set forth below, the Settlement Agreement is fair and equitable when measured against any standard. When measured against the deferential standards required by Bankruptcy Rule 9019 and the strong public policy favoring settlement in bankruptcy, it is not even a close call. Accordingly, Solutia respectfully requests that the Court certify the Class for settlement purposes only pursuant to Federal Rule of Bankruptcy Procedure 7023 and Federal Rule of Civil Procedure 23, and approve the Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019.

## BACKGROUND

### I.    SOLUTIA'S CHAPTER 11 CASES.

In 1997, Pharmacia (then known as the old Monsanto Company) formed Solutia to operate substantially all of the assets and hold substantially all of the environmental, tort, and retiree liabilities related to Pharmacia's chemicals businesses, which had been operating for more than 100 years. On September 1, 1997, Solutia was spun off to Pharmacia's shareholders. From the spin-off until 1999, Solutia was profitable. Beginning in late 1999 and continuing through 2003, however, a general downturn in the economy, increasing raw material costs, and excess capacity in the chemicals industry began to impact Solutia's businesses. As a result, it became

increasingly more difficult for Solutia to pay the approximately $100 million per year to service the legacy liabilities that it inherited through the spin-off. Despite efforts to restructure out of court, Solutia continued to face deteriorating liquidity and substantial legacy liabilities. Accordingly, on December 17, 2003, Solutia commenced chapter 11 cases in the U.S. Bankruptcy Court for the Southern District of New York.

A primary focus of Solutia's reorganization strategy was to achieve a reallocation of the significant tort, environmental and retiree legacy liabilities that it assumed as part of the spin-off. Accordingly, Solutia engaged in several years of arduous arms-length negotiations with, among other parties, the new Monsanto Company (which also had been spun-off from Pharmacia and was required to indemnify Pharmacia for these same legacy liabilities if Solutia could not pay), the Creditors' Committee, the Equity Committee, the Retirees Committee, and ad hoc committees of holders of Solutia's unsecured notes and trade claims. On August 14, 2007, these negotiations culminated with the Global Settlement, which settled all litigation among the various parties, reallocated significant legacy liabilities as between Solutia and Monsanto, modified certain on-going operating agreements between Solutia and Monsanto, and allowed for significant distributions to holders of claims and equity interests in Solutia's chapter 11 cases.

On November 29, 2007, a Plan of Reorganization based on the terms of the Global Settlement was confirmed by the Bankruptcy Court. The Plan of Reorganization was declared effective and Reorganized Solutia emerged from chapter 11 on February 28, 2008.

## II.    THE DICKERSON ACTION.

On October 7, 2004, Dickerson, a Solutia employee from 1998 to 2003, filed a purported class action complaint against the Non-Debtor Defendants. (*See* 1:04-cv-07935 (LAP).) The complaint alleged that the Non-Debtor Defendants breached their fiduciary duties under ERISA by making Solutia stock available under the SIP when they should have known it was a poor

4

investment option. (*See* Dickerson Dist. Ct. Dkt. No. 1 ¶¶ 1-9, 15.) Dickerson brought the claim

on behalf of a putative class of all persons who were participants in the SIP and who held Solutia

stock in their SIP accounts between December 16, 1998 and the present. (*See id.* ¶ 115.) On

October 19, 2004, Dickerson filed a parallel class proof of claim in Solutia's chapter 11 cases.

(*See* 10/19/04 Claim No. 854.) Dickerson originally sought $269 million in damages from

Solutia and the Non-Debtor Defendants. He later increased his demand to $290 million. (*See*

9/1/05 Claim No. 14735.) Dickerson also changed the putative class period to September 1,

1997 through December 15, 2003. (*See* Dickerson Dist. Ct. Dkt. No. 17 ¶ 1; 9/1/05 Claim No.

14735.)

On March 30, 2006, this Court dismissed Dickerson's complaint against the Non-Debtor

Defendants with prejudice on the grounds that Dickerson lacked standing to sue under ERISA.

*See Dickerson v. Feldman*, 426 F. Supp. 2d 130 (S.D.N.Y. 2006). The Court reasoned that:

> Plaintiff has not satisfied the redressability element of Article III standing.
> Plaintiff here was a Plan participant up until the time, prior to the commencement
> of this lawsuit, when he took a final distribution of his vested benefits. As a
> former participant, Plaintiff is unable to demonstrate that he has an injury that is
> redressable by this Court because he fails to show either 'a reasonable expectation
> of returning to covered employment or . . . a colorable claim to vested benefits.'

*Id.* at 135. On April 3, 2006, Dickerson filed a notice of appeal with the Second Circuit. (*See*

Dickerson Dist. Ct. Dkt. No. 51.) The appeal was fully briefed and argued.

On June 16, 2006, Solutia objected to Dickerson's class proof of claim on the grounds

that the decision in *Dickerson v. Feldman* was dispositive on the issue of whether Dickerson had

standing to sue in Bankruptcy Court. (*See* Bankr. Dkt. No. 3229.) On June 21, 2007, Solutia

filed a supplemental objection to Dickerson's class proof of claim on the grounds that it was a

claim arising from the purchase of an equity security and, therefore, should be subordinated to

the claims of Solutia's unsecured creditors under 11 U.S.C. § 510(b).  (*See* Bankr. Dkt. No. 3935 at 3-6.)

The Bankruptcy Judge, however, expressed doubt as to whether Solutia's subordination argument would be successful:

> I don't agree that the claim is subordinated . . . . What Five Ten says is a claim[ ] [to] purchase securities is subordinated.  This is not a claim to purchase securities.  It's a claim for breach of fiduciary duty. . . . Therefore, if that's the case, it's not a subordinated claim in which case it adds to the pool of claims and it therefore lowers your recoveries.

(*See* Bankr. Dkt. No. 4274 at 43:25-44:11.)

## III.     THE REIFF ACTION.

After Dickerson's complaint was dismissed for lack of standing, Reiff, a current employee of Solutia, filed his own action against the Non-Debtor Defendants in this Court on June 25, 2007.  (*See* 1:07-cv-06011 (LAP), Dist. Ct. Dkt. No. 1.)  Dickerson and Reiff also filed a joint amended class proof of claim against Solutia. (*See* Claim No. 14823.)  The allegations in Reiff's complaint and amended proof of claim are nearly identical to those brought by Dickerson, except Reiff alleged that he had not taken a final distribution from the SIP.  (*See* Reiff Dist. Ct. Dkt. No. 1 ¶ 13.)  The Non-Debtor Defendants moved to dismiss Reiff's complaint in this Court.  (*See* Reiff Dist. Ct. Dkt. No. 20.)

## IV.     THE SETTLEMENT AGREEMENT.

Solutia and counsel for Claimants began discussing settlement of the Bankruptcy Claims in spring 2007.  In August 2007, Solutia reached a Global Settlement with its primary stakeholders in the chapter 11 cases that would allow it to successfully emerge from chapter 11. Solutia, however, still needed to resolve the Bankruptcy Claims.  At Claimants' valuation of $290 million, the Bankruptcy Claims would have nearly doubled Solutia's estimated general unsecured claims pool and significantly diluted creditor recoveries.  Because the Global

Settlement was based on certain assumed recoveries, such dilution likely would have caused

Solutia's primary stakeholders to exercise their rights to walk away from the deal.  The

importance of the Bankruptcy Claims was underscored in Solutia's Disclosure Statement:

> <u>Dickerson Claim</u>:  In determining the range of General Unsecured
> Claims, Solutia estimated the Dickerson Claim, which was asserted
> for $290 million, at $0.  Solutia has objected to the Dickerson
> Claim, asserting, among other things, that it should be
> subordinated pursuant to section 510(b) of the Bankruptcy Code.
> Dickerson has disputed Solutia's assertion.  If the Dickerson Claim
> were ultimately allowed in the amount of $290 million as a general
> Unsecured Claim, recoveries received by unsecured creditors
> would be significantly reduced.  Specifically, if the General
> Unsecured Claims pool were to increase by $290 million, then the
> estimated percentage recovery for General Unsecured Creditors
> would be reduced from 83.1% to 61.5% (on a post-Rights Offering
> basis).  The estimated percentage recovery for Noteholders also
> would be reduced from 88.4% to 66.8% (on a post-Rights Offering
> Basis).

(*See* Bankr. Dkt. No. 4254 at 74.)  Moreover, even if Solutia was successful on its subordination

argument, that would have diluted recoveries to Solutia's equity holders, and the Equity

Committee—which had pending litigation against Pharmacia and Monsanto—likely would not

have supported the Global Settlement.  (*See id.* at 75.)

Following approximately six months of negotiations, Solutia and Claimants reached a

settlement on the night before Solutia's confirmation hearing.  At the November 29, 2007

confirmation hearing, counsel for Solutia read the material terms of the settlement into the

record.  (*See* Bankr. Dkt. No. 4505 at 17:21-22:16.)  None of Solutia's creditors or stakeholders

objected to the terms of the settlement.  (*See id.* at 22:14-22:16.)

Solutia's Plan was confirmed on November 29, 2007.  (*See* Bankr. Dkt. No. 4444.)

Under the Plan, Solutia agreed to indemnify the incumbent members of its Board of Directors at

the time of confirmation from any liabilities arising out of or relating to the *Dickerson* or *Reiff*

actions.  (*See id.* ¶¶ 85, 88.)

7

Following the confirmation hearing, the Parties continued discussions regarding whether a settlement could be reached that resolved all of Claimants' claims against Solutia, the Solutia Non-Debtor Defendants, and Northern Trust. The Parties reached an agreement in late December 2007 and, following months of further negotiations, executed a final Settlement Agreement on May 19, 2008. (*See generally* Ex. 1.) The material terms of the Settlement Agreement are as follows:

- Plaintiffs shall receive an allowed general unsecured claim in the amount of $6.65 million and $4.75 million in cash (*see id.* §§ 1.4, 2.7, 9). With respect to the cash component, Solutia shall contribute $250,000 and the remaining $4.50 million will come from Solutia's insurer, Federal Insurance Company. Northern Trust did not contribute any financial consideration toward the Settlement (*see id.* §§ 1.8, 2.6, 9). The proceeds shall be distributed to the class members pursuant to the plan of allocation in the Settlement Agreement (*see id.* § 11);

- Solutia and the Non-Debtor Defendants will consent to certification of the class and the class proofs of claim for settlement purposes only (*see id.* § 2.1);

- In the event the Settlement Agreement is not approved, the Bankruptcy Claims have been capped at $15 million (*see id.* § 6.2);

- Solutia and the Non-Debtor Defendants shall be released from all claims that have been, could have been, or could be brought by Reiff or Dickerson (either individually or by or on behalf of the settlement class) or any member of the settlement class in Solutia's chapter 11 cases or in the actions before this Court (*see id.* § 4);

- Solutia and the Non-Debtor Defendants do not admit any liability or wrongdoing (*see id.* § 8); and

- Plaintiffs' counsel may apply to the Court for an award of attorneys' fees of no more than 30% of the settlement fund. Dickerson and Reiff may apply to the Court for incentive payments of no more than $5,000 each (*see id.* § 13.1).

On June 5, 2008, the Court entered an order withdrawing the reference solely with respect to the Bankruptcy Claims and granting preliminary approval of the Settlement Agreement. (*See* Reff Dist. Ct. Dkt. No. 33.) The Court preliminarily found that the putative settlement class satisfies the requirements of Federal Rule of Bankruptcy Procedure 7023 and Federal Rules of Civil Procedure 23(a), (b)(1), and (e). (*See id.*)

8

## ARGUMENT

### I.    THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS "FAIR AND EQUITABLE."

Courts favor settlements. *See In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994). Courts in the Second Circuit will approve a settlement under Bankruptcy Rule 9019 where the settlement is found to be "fair and equitable" based on the following factors:

- The balance between the litigation's prospects for success and the settlement's future benefits;

- The likelihood of complex and protracted litigation with its attendant expense, inconvenience and delay;

- The interests of the creditors, including whether the creditors or other parties in interest either do not object to or affirmatively support the proposed settlement;

- The nature and breadth of the releases; and

- Whether the settlement is the product of arm's length bargaining.

*See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *accord In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 158-59 (Bankr. S.D.N.Y. 2005); *In re Texaco Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The Court's role is not to conduct its own investigation or a "mini-trial" of the disputed allegations. *See In re Adelphia*, 327 B.R. at 159; *In re Best Prods.*, 168 B.R. at 51. Instead, "the court's responsibility is to familiarize itself with all the facts necessary for an intelligent and objective opinion, canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *See In re Best Prods.*, 168 B.R. at 51; *see also In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). In making this assessment, there is a "general presumption" in favor of settlement. *See In re Tower Auto., Inc.*, 342 B.R. 158, 164 (Bankr. S.D.N.Y. 2006). These standards "reflect the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only

9

after an exhaustive investigation and determination of the underlying claims." *In re Best Prods.*, 168 B.R. at 51.

The Settlement—which saves the estates from potentially years of costly litigation, potential indemnification obligations, and reduces Claimants' class proofs of claim from $290 million to $6.65 million—satisfies all seven of the *Iridium* factors and should be approved.

### A.    A Comparison Of Likely Litigation Outcomes And The Benefits Of Settlement Strongly Favors Settlement.

The likelihood of success in litigation versus the benefits of settlement is the "most important factor" in determining whether to approve a settlement. *See In re Adelphia*, 327 B.R. at 160. It strongly favors the Settlement here.

### 1.    The result of the litigation among Solutia and Claimants was uncertain.

The outcome of the litigation between Solutia and Claimants was far from certain, and the stakes were high. It was at least possible that Solutia could be found liable for some or all of the $290 million sought by Claimants, which could have dropped creditor recoveries to a point that the Global Settlement in Solutia's chapter 11 cases would not have been viable.

Moreover, the Bankruptcy Claims did not lend themselves to a quick resolution. Solutia objected to the class proofs of claim on two bases. First, following this Court's dismissal of the *Dickerson* suit, Solutia objected on the grounds that Dickerson lacked standing. That objection is still pending. (*See* Bankr. Dkt. No. 3934.) Second, Solutia objected on the grounds that the claims arose from the purchase of an equity security and, therefore, should be subordinated to the claims of Solutia's unsecured creditors. As set forth above, the Bankruptcy Court expressed skepticism with respect to Solutia's subordination argument. (*See* Bankr. Dkt. No. 4274 at 43:25-44:11.) Thus, it appeared that Solutia would need to litigate not only the merits of the Bankruptcy Claims, but also their treatment under Solutia's Plan.

10

While Solutia believed that it had valid defenses to the Bankruptcy Claims, it could not afford to find out. Based on the terms of the Settlement Agreement, Solutia had nothing to gain by litigation, and potentially could have lost a Global Settlement among its primary stakeholders that took four years to reach, and allowed Solutia to emerge from chapter 11 as a viable and competitive company.

### 2. The Settlement preserves creditor recoveries and eliminates the possibility of years of costly litigation.

The future benefits of the Settlement are considerable. As an initial matter, the Settlement eliminates any possibility—no matter how remote—that Solutia will be held liable for the entire $290 million sought by Claimants. If the Bankruptcy Claims were allowed in their entirety, it would have reduced recoveries to Solutia's general unsecured creditors from 83.1% to 61.5%. (*See* Bankr. Dkt. No. 4254 at 74-75.)

Moreover, the Settlement was structured so that Solutia could emerge from chapter 11 before it was approved. Under the Settlement, Reiff, Dickerson and each member of the settlement class agreed that the maximum amount of the Bankruptcy Claims would be $15 million even if the Settlement Agreement was not ultimately approved. (*See* Ex. 1 § 6.2.) This ensured that creditor recoveries would not be materially affected by the Bankruptcy Claims. Solutia set aside stock to make distributions to Claimants and the class based on a maximum $15 million general unsecured claim. The Settlement was for a general unsecured claim of $6.65 million. Thus, assuming the Settlement is approved, Solutia's general unsecured creditors will receive additional distributions of stock based on the value of an $8.35 million general unsecured claim (the difference between the $15 million claim cap and the $6.65 million Settlement amount).

11

Because the Settlement allowed Solutia to remove one of the final obstacles in its path toward emergence and do so at a fraction of the stated amount of the Bankruptcy Claims, the benefits of the Settlement significantly outweigh the likely outcome of any litigation.

**B.      Continued Litigation Against Claimants Would Be Complex, Protracted, And Costly.**

When viewed in the context of Solutia's chapter 11 cases, continuing to litigate against Claimants likely would have cost Solutia more than the value of the $6.65 million general unsecured claim (presently approximately $3.6 million) plus the $250,000 in cash that Solutia provided to the Settlement. The litigation between Claimants and Solutia involves complex legal and factual issues, including standing, class certification, ERISA fiduciary duties, Claimants' right to sue for money damages, and subordination under the Bankruptcy Code. (*See, e.g.,* Reiff Dist. Ct. Dkt. No. 17; Bankr. Dkt. No. 3934; Dickerson Dist. Ct. Dkt. No. 36.) These issues would have taken significant time to litigate and, based on the stated value of the Bankruptcy Claims, could have prevented Solutia from emerging from chapter 11 until they were resolved. Moreover, to the extent that the Bankruptcy Claims required Solutia to stay in chapter 11 several months longer than it otherwise would have, the costs in professional fees and expenses alone likely would have exceeded the value Solutia is providing to the Settlement. Moreover, Claimants had yet to commence discovery, which would have added to Solutia's legal bills in the chapter 11 cases and distracted its management from the task of completing a successful restructuring and running a newly reorganized entity.

Finally, Solutia agreed to indemnify and defend its incumbent directors at the time of confirmation from any liabilities arising out of the *Dickerson* or *Reiff* actions pending before this Court. (*See* Bankr. Dkt. No. 4444 ¶ 88.) The Settlement Agreement allows Solutia to satisfy this obligation almost entirely through insurance proceeds. In short, the $6.65 million general

unsecured claim and $250,000 in cash that Solutia contributed to the Settlement is a small price

to pay to resolve the Bankruptcy Claims, eliminate any future indemnification obligations based

on the *Dickerson* and *Reiff* actions and ensure that Solutia could emerge from chapter 11.

### C.    Solutia's Creditors Support The Settlement.

The fact that none of Solutia's creditors objected to the settlement at Solutia's

confirmation hearing is another factor that strongly favors approval of the Settlement Agreement.

It is easy to see why Solutia's creditors would not oppose the Settlement Agreement.  First, it

allowed Solutia to successfully emerge from chapter 11.  Second, by reducing what could have

been a $290 million claim to a $6.65 million claim, the Settlement Agreement preserves creditor

recoveries and, in turn, a Global Settlement Agreement that Solutia and its primary stakeholders

worked for nearly four years to achieve.  Third, if the Settlement Agreement is approved, the

unsecured creditors also will be entitled to their *pro rata* share of the remaining value of the

$8.35 million general unsecured claim that Solutia set aside based on the $15 million cap but did

not use to settle the Bankruptcy Claims.

### D.    Experienced Counsel Support The Settlement.

The Settlement is supported by competent and experienced counsel.  Claimants are

represented by two law firms, Sarraf Gentile LLP and Stember Feinstein Doyle & Payne, LLC,

both of which have extensive experience litigating ERISA class action cases.  Solutia is

represented by Kirkland & Ellis LLP, an international law firm with extensive experience

representing debtors in major bankruptcy proceedings and in defending class action lawsuits.

The Solutia Non-Debtor Defendants are represented by O'Melveny & Myers LLP, an

international law firm with extensive bankruptcy and complex litigation and ERISA experience.

Northern Trust is represented by Kramer Levin Naftalis & Frankel LLP, which also specializes

in ERISA and class action defense.  The Court is entitled to rely on the opinions of counsel—all

13

of whom support the Settlement. *See Adelphia Commc'ns. Corp.*, 327 B.R. at 159. Moreover, an Independent Fiduciary has reviewed the Settlement Agreement and, subject to several changes agreed upon by the Parties, has determined that the Settlement is fair, reasonable and adequate.

### E.    The Releases Are No Obstacle To Approval Of The Settlement.

Because this Settlement does not involve third-party, non-debtor releases, the traditional concerns regarding releases are not present here. *See, e.g., In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005) (non-debtor releases can be approved where the bankruptcy court finds that "truly unusual circumstances render the release terms important to success of the plan."). Moreover, the releases by Claimants of Solutia and the Solutia Non-Debtor Defendants all inure to the benefit of Solutia. (*See* Ex. 1 § 4.1.) Under the Plan (which has been approved by Solutia's creditors and the Bankruptcy Court), Solutia agreed to indemnify its incumbent directors at the time of confirmation from any liability arising out of the *Dickerson* or *Reiff* actions. (*See* Bankr. Dkt. No. 4444 ¶ 88.) By releasing these Board members from liability, the Settlement eliminates any future indemnification obligations based on these actions to these directors.

### F.    The Settlement Is The Product Of Extensive Arm's Length Bargaining.

The Settlement is the product of extensive arm's length bargaining between and among the Parties. Solutia and Claimants first discussed settlement in spring 2007. After approximately six months of negotiations, Solutia and Claimants agreed upon the material terms of a settlement that counsel for Solutia read into the record at Solutia's confirmation hearing. (*See* Bankr. Dkt. No. 4505 at 17:21-22:16.) In December 2007, the Settlement was expanded to include the Non-Debtor Defendants. Following an additional five months of negotiation, a final settlement agreement was executed on May 19, 2008. (*See* Ex. 1.)

14

## II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER BANKRUPTCY RULE 7023 AND FEDERAL RULE OF CIVIL PROCEDURE 23.

The certification and settlement of class claims in chapter 11 is a three-step process.  The court must determine that:  (1) allowing a class action to proceed would not unduly delay administration of the estate; (2) the class and the settlement meet the substantive requirements of Federal Rule of Civil Procedure 23; and (3) the benefits that generally support class actions are realizable in the bankruptcy case.  *See In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3832063, at *2 (Bankr. S.D.N.Y. May 11, 2005); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997).  The Settlement satisfies all three requirements.

### A.    Certification Of The Class Will Not Delay Administration Of Solutia's Estates.

A court has discretion to apply Rule 23 in a chapter 11 proceeding based on whether certification of the class would unduly delay administration of the estate.  *See In re N.W. Airlines Corp.*, No. 05-17930 (ALG), 2007 WL 2815917, at *3 (Bankr. S.D.N.Y. Sept. 26, 2007); *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007).  Delay is not a concern here.  Solutia has emerged from chapter 11 and distributions have been made to its stakeholders.  Moreover, certification of the settlement class in the instant action will speed up administration of the estates by resolving the most significant remaining claims while avoiding years of costly litigation.

### B.    The Settlement Satisfies Federal Rule Of Civil Procedure 23.

Once a class action settlement has been preliminarily approved by the court, it is entitled to a strong presumption of fairness.  *See, e.g., Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd, Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 576 (E.D. Pa. 2003); *Brotherton v.*

15

*Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001). This Court already has preliminarily found that the class meets the requirements of Rules 23(a) and 23(b)(1), and that the Settlement is fair, reasonable and adequate under Rule 23(e)(3). (*See* Reiff Dist. Ct. Dkt. No. 33.)

The Court was correct in its initial assessment that the Settlement should be approved. As the Court has preliminarily determined, the putative settlement class should be certified for settlement purposes only, and Reiff appointed as the representative plaintiff, on the grounds that:

- with more than seven thousand class members who held Solutia stock in their SIP accounts between September 1, 1997 and August 31, 2005 (the "Settlement Class"), the class is "so numerous that joinder of all the members is impracticable" under Rule 23(a)(1);

- there are one or more questions of fact or law common to the Settlement Class under Rule 23(a)(2), including whether Solutia and the Non-Debtor Defendants (a) breached any fiduciary duties under ERISA by placing Solutia stock in the class members' SIP accounts, (b) failed to provide complete and accurate information to the class members, and (c) caused losses to the Class members' SIP accounts;

- as a person who held Solutia stock in his SIP between September 1, 1997 and August 31, 2005, Reiff's claims are typical of the claims of the Settlement Class under Rule 23(a)(3); and

- Reiff's claims are consistent with those of the Settlement Class and there are no apparent conflicts of interest between Reiff and the Settlement Class, pursuant to Rule 23(a)(4).

*See* Fed. R. Civ. P. 23(a); *In re WorldCom, Inc.*, 347 B.R. at 141-42.

Rule 23(b)(1) is satisfied because the prosecution of claims by individual members of the Settlement Class could lead to inconsistent or varying adjudications that would establish incompatible standards of conduct for Solutia and the Non-Debtor Defendants, and an individual's claims likely would be dispositive of or impair the claims of class members not party to those adjudications. *See* Fed. R. Civ. P. 23(b)(1); *U.S. Trust Co. of N.Y. v. Alpert*, 163 F.R.D. 409, 418-19 (S.D.N.Y. 1995).

Finally, the terms of the Settlement are "fair, reasonable and adequate" under Rule 23(e) because they are the product of nearly a year's worth of arm's-length negotiations among competent and experienced counsel, and provide class members with a meaningful recovery they might not otherwise have received. *See* Fed. R. Civ. P. 23(e); *Wright v. Stern*, 553 F. Supp. 2d 337, 343-44 (S.D.N.Y. 2008).

### C.     The Benefits Of Class Action Litigation Will Be Realized In Solutia's Bankruptcy.

Benefits of class action litigation, including increased efficiency and compensation to the allegedly injured parties, will be realized by certification of the Settlement Class and approval of the Settlement by saving the Parties from years of costly litigation. *See In re Woodward & Lothrop Holdings*, 205 B.R. at 376. The Settlement also saves Claimants from having to pursue a parallel action against the Non-Debtor Defendants (in which Solutia would have to indemnify certain defendants). With respect to compensation, the Settlement provides class members a recovery that they might not otherwise receive. As with the *Dickerson* action, Claimants' actions might have been dismissed or Claimants could have lost at trial. With respect to the Bankruptcy Claims, Claimants—even if successful—might have received minimal or no recovery if their claims were subordinated. Because the benefits of class action settlement are particularly strong in the instant action, this Court should certify the Settlement Class for settlement purposes only and enter an order approving the Settlement.

## CONCLUSION

For the foregoing reasons, the Settlement Class should be certified for settlement purposes only and the Settlement should be approved.

Dated:  August 28, 2008
       New York, New York        Respectfully Submitted,

           */s/ Jonathan S. Henes*

           **KIRKLAND & ELLIS LLP**
           Jonathan S. Henes
           Colin M. Adams
           Citigroup Center
           153 East 53rd Street
           New York, New York 10022-4675
           Telephone: (212) 446-4800
           Facsimile:  (212) 446-4900

           Jeffrey J. Zeiger (*Pro Hac Vice*)
           200 East Randolph Drive
           Chicago, Illinois  60601
           Telephone: (312) 861-2000
           Facsimile:  (312) 861-2200

           *Attorneys for the Reorganized Debtors*