**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
JEREMY DICKERSON,                        :
                                         :
                    Plaintiff,           :       Case No. 04-CV-07935 (LAP)
                                         :
v.                                       :
                                         :
SHEILA FELDMAN, et al.                   :
                                         :
                    Defendants.          :
------------------------------------------------------------x


------------------------------------------------------------x
ROGER REIFF,                             :
                                         :
                    Plaintiff,           :       Case No. 07-CV-06011 (LAP)
                                         :
v.                                       :
                                         :
FRANK A METZ, JR., et al.                :
                                         :
                    Defendants.          :
------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ..................................................................................................... 1

II.     STATEMENT OF THE CASE ................................................................................... 1

        A.      Plaintiffs' Allegations ..................................................................................... 1

        B.      Procedural History .......................................................................................... 2

        C.      Settlement Negotiations And Settlement Terms .............................................. 2

        D.      Preliminary Approval ...................................................................................... 4

        E.      Notice To The Class ........................................................................................ 6

III.    THE CLASS SHOULD BE CERTIFIED ................................................................... 6

IV.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ......................... 8

        A.      General Consideration And Presumption Of Fairness ...................................... 8

        B.      Application Of The *Grinnell* Factors .............................................................. 9

                1.      Complexity .......................................................................................... 9

                2.      Reaction of the Class ......................................................................... 12

                3.      The stage of proceedings and the amount of discovery conducted ........... 12

                4.      The risks of establishing liability ...................................................... 12

                5.      The risks of establishing losses ......................................................... 15

                6.      The risks of maintaining the class action through trial ...................... 16

                7.      Defendants' ability to withstand a greater judgment .......................... 16

                8.      The range of reasonableness of the settlement fund in light of the
                        best possible recovery and all the attendant risks of litigation ............ 17

                9.      Additional factors ............................................................................. 18

V.      CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

Page

**CASES**

*Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002)..........................................................6

*Bridges v. American Electric Power*, 498 F.3d 442 (6th Cir. 2007).............................13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)..............................8-9, 12

*Crowley v. Corning, Inc. Investment Plan*, 234 F.Supp.2d 222 (W.D.N.Y. 2002) ......13

*DiFelice v. US Airways, Inc.*, 436 F.Supp.2d 756 (E.D.Va. 2006)................................10

*Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007)......................................................14

*Graden v. Conexant Sys., Inc.*, 496 F.3d 291 (3d Cir. 2007)......................................13

*Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007) ........................................13

*In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418 (S.D.N.Y. 2001) ............ 17-18

*In re IKON Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94 (E.D.Pa. 2002)................15

*In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588 (N.D.Cal. Sept. 30, 2002).........13

*In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998) ..............17

*In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231 (3d Cir. 2005) .............14

*In re Syncor ERISA Litigation*, 516 F.3d 1095 (9th Cir. 2008) ....................................14

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ...........................................................8

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995)...........................................................13

*LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004) ...................................................14

*Landgraff v. Columbia/HCA Healthcare Corp. of Am.*, 2000 WL 33726564
    (M.D.Tenn. May 24, 2000)...................................................................................10, 14

*Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007) .............14

*LaRue v. DeWolff, Boberg & Associates, Inc.*, 128 S.Ct. 1020 (U.S. 2008) .................13

*Maley v. Del Global Technologies Corp.*, 186 F.Supp.2d 358 (S.D.N.Y. 2002) .............12, 15, 17

*Moench v. Robertson*, 62 F.2d 553 (3d Cir. 1995) ......................................................14

*Nelson v. IPALCO Enterprises, Inc.*, 480 F.Supp.2d 1061 (S.D.Ind. 2007)................10

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008).....................................................14

iii

<u>Page</u>

**<u>CASES (Continued)</u>**

*Rankin v. Rots*, 278 F.Supp.2d 853 (E.D.Mich. 2003) ...................................................14

*Rankin v. Rots*, 2006 WL 1876538 (E.D.Mich. June 27, 2006) ....................................17

*Summers v. State Street Bank & Trust Company*, 453 F.3d 404 (7th Cir. 2006)..................... 14-15

*Tittle v. Enron Corp.*, 2003 WL 22245394 (S.D.Tex. Sept. 30, 2003)........................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................8

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) ........................................14

**<u>STATUTES AND RULES</u>**

28 U.S.C. § 157(d) ....................................................................................................................4

29 U.S.C. § 1104(c) ...............................................................................................................14

29 U.S.C. § 1132 .......................................................................................................................1

Fed. R. Civ. P. 23 .............................................................................................................5, 6, 7, 8

## I.    INTRODUCTION

Plaintiff Jeremy Dickerson and Class Representative Roger Reiff respectfully submit this memorandum in support of final approval of the parties' Global Settlement Agreement dated May 20, 2008 (the "Settlement Agreement"). The Settlement Agreement resolves all claims alleged by Dickerson and Reiff in: (1) *Dickerson v. Feldman, et al.*, No. 04-cv-7935 (SDNY) ("Dickerson Action"); (2) *Dickerson v. Feldman, et al.*, No. 06-1616-cv (2d Cir.) ("Dickerson Appeal"); (3) *Reiff v. Metz, et al.*, No. 07-cv-06011 (SDNY) ("Reiff Action"); and (4) *In re Solutia Inc., et al.*, No. 03-17949 (SDNY Bnkr.) ("Bankruptcy Proceeding").

This settlement follows nearly four years of extensive litigation. It provides for a cash payment of $4,750,000.00 ("Cash Payment") as well as an allowed unsecured claim of $6,650,000.00 ("Bankruptcy Allowed Claim") against the bankruptcy estate of Solutia Inc. ("Solutia" or the "Company"). The Bankruptcy Allowed Claim is comprised of shares in the reorganized Solutia.

This settlement is fair, reasonable, and adequate and should be approved by this Court.

## II.    STATEMENT OF THE CASE

### A.    Plaintiffs' Allegations

The Dickerson Action and the Reiff Action were brought pursuant to ERISA, 29 U.S.C. § 1132, to recover losses to the Solutia Inc. Savings and Investment Plan ("Plan") and its participants and beneficiaries (collectively "participants") resulting from Plan fiduciaries' breaches of their ERISA duties. From September 1, 1997 to December 15, 2003, the Plan's fiduciaries—consisting of certain officers, directors and employees of Solutia (the "Solutia Defendants") and Solutia itself—caused the Plan to invest in Solutia common stock ("Solutia Stock") and to offer the Corporation Stock Fund ("Stock Fund") as a retirement investment

1

option for participants when it was imprudent to do so.  Notwithstanding Solutia's overwhelming financial problems, it was not until December 15, 2003, just two days before Solutia filed for bankruptcy, that Plan fiduciaries eliminated the Stock Fund as an investment option and ceased to invest Company matching contributions in Solutia Stock.

**B.    Procedural History**

Solutia filed for Chapter 11 bankruptcy protection on December 17, 2003.  Plaintiff Jeremy Dickerson commenced the Dickerson Action on October 7, 2004.  On October 19, 2004, Dickerson timely filed a proof of claim in the Bankruptcy Proceeding ("Proof of Claim"). Dickerson alleged ERISA violations similar to those alleged in the Dickerson Action.

On March 30, 2006, this Court issued an Opinion granting Defendants' motions to dismiss the Dickerson Action, on the ground that Plaintiff Dickerson lacked standing.  Dickerson appealed this ruling to the United States Court of Appeals for the Second Circuit.  The Second Circuit has not issued a ruling on the Dickerson Appeal.

On June 25, 2007, Class Representative Roger Reiff commenced the Reiff Action, making the same claims as Dickerson.

**C.    Settlement Negotiations And Settlement Terms**

The parties began settlement negotiations roughly three years after Dickerson commenced the Dickerson Action.  Joint Declaration of Class Counsel ("Jt. Decl.") (filed herewith) ¶ 73.  At that time, the parties had fully briefed and argued the Dickerson Appeal and were awaiting decision from the Second Circuit.  Reiff had filed the Reiff Action and the parties had begun briefing on Defendants' motion to dismiss that case.  In the Bankruptcy Proceeding, the parties had completed briefing Solutia's motion that sought to subordinate the Proof of Claim.  *Id*.

2

The parties first broached settlement in connection with the effect that the Bankruptcy Claims could have on Solutia's reorganization. *Id*. ¶ 74. After Solutia moved to subordinate the Proof of Claim, Plaintiffs responded with an exhaustive opposition brief and initiated settlement discussions.[1] *Id*. The parties informed the Bankruptcy Court that settlement discussions were underway, and that court stayed its decision on the pending motion. The parties entered into the Settlement Agreement following exhaustive, arms-length negotiations. *Id*. ¶¶ 74-75.

The terms of the settlement are set forth in the parties' Global Settlement Agreement dated May 20, 2008 (attached to the Joint Declaration of Class Counsel as Exhibit A). The Settlement provides for a cash payment of $4,750,000.00 and an allowed unsecured claim of $6,650,000.00 (the "Bankruptcy Allowed Claim") against Solutia's bankruptcy estate. The cash payment of $4,750,000 is comprised of a single payment of $250,000 from Solutia and a $4,500,000 payment from Solutia's and the Solutia Defendants' insurer. The Bankruptcy Allowed Claim is comprised of shares in the reorganized Solutia (the "New Solutia Shares"). Pursuant to the terms of Solutia's reorganization plan, and based on the per share values assumed therein, all unsecured claims (including the Bankruptcy Claim) were estimated at roughly 70% of face value. Because Solutia is now a publicly traded company and the New Solutia Shares trade

---

[1] This brief was prepared with the assistance of special bankruptcy counsel. The Bankruptcy Court had advised Class Counsel to retain sophisticated bankruptcy counsel in order to address the complex issues raised in the Bankruptcy Proceeding. In accordance with the Bankruptcy Court's instructions, Class Counsel retained Lowenstein Sandler, P.C. on an hourly basis, and paid that firm approximately $200,000 in fees, costs and expenses out of pocket. *See* Jt. Decl. ¶ 190 and Ex. J.

on the New York Stock Exchange, these shares are subject to market fluctuations. As of August 29, 2008, the Bankruptcy Allowed Claim had a value of $3,996,934.40.[2]

To assist the Court in determining if the settlement is fair, adequate and reasonable and to ensure that the Plan's interests are fully protected, the parties agreed to the appointment of Bank of America, National Association, acting through U.S. Trust Bank of America Private Wealth Management ("U.S. Trust") as an independent fiduciary to review the Settlement Agreement in accordance with the Department of Labor's Class Exemption for the Release of Claims and Extension of Credit in Connection with Litigation, PTE 2003-29 (the "Class Exemption"). After suggesting certain clarifying changes in the language of the Settlement Agreement, which the parties agreed to, U.S. Trust has issued a report approving the terms of the settlement.[3] A copy of U.S. Trust's report is attached to the Joint Declaration of Class Counsel as Exhibit L.

**D.    Preliminary Approval**

On June 5, 2008, at Dkt. #33 in the Reiff Action, the Court entered Findings and an Order Preliminarily Approving Class Action Settlement dated May 28, 2008 ("Preliminary Approval Order"). In its Preliminary Approval Order, the Court withdrew its reference of the Proof of Claim pursuant to 28 U.S.C. § 157(d) and preliminarily concluded that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, Court rules, and any other applicable law had been met.

---

[2] A chart summarizing the total value of the Settlement, including the fluctuating value of the Bankruptcy Allowed Claim broken down month by month, is located at paragraph 89 of the Joint Declaration of Class Counsel.

[3] U.S. Trust filed a limited objection to Class Counsel's fee request because Class Counsel had not yet filed their fee application. U.S. Trust will withdraw this limited objection after the fee application is filed if it determines the requested fees and expenses are appropriate. *See* Jt. Decl. Ex. L at 2.

4

The Court also preliminarily certified a class for settlement purposes ("Settlement Class") under Fed.R.Civ.P. 23(b)(1) and 23(e). The Court defined the Settlement Class as follows:

> All persons who were participants in the Solutia Inc. Savings and Investment Plan (the "Plan") who held Solutia stock in their Plan account at any time during the period from September 1, 1997 through and including August 31, 2005, and their beneficiaries, successors, assigns, executors, administrators, estates, heirs and legal representatives. Excluded from the Settlement Class are Defendants and any named fiduciary of the Plan, members of their immediate families, and their legal representatives, heirs, successors, or assigns unless such individual is a member of the Settlement Class in his or her own right.

The Court also preliminarily approved the parties' settlement, preliminarily finding that the proposed Settlement:

(a)    appears to be fair, reasonable and adequate;

(b)    appears to be the product of serious, informed, non-collusive negotiations;

(c)    has no obvious deficiencies;

(d)    does not appear improperly to grant preferential treatment to class representatives or segments of the class;

(e)    appears to fall within the range of possible approval; and

(f)    warrants providing notice to Settlement Class members of the Settlement, the opportunity to object, and the scheduling of fairness Hearing.

The Court also approved the proposed form of Class Notice submitted by the Parties. In addition, the Court scheduled a fairness hearing for September 17, 2008 at 10:00 am. The Court ordered that any member of the Settlement Class who wished to object to class certification, to the fairness, reasonableness or adequacy of the Settlement, to the plan of allocating settlement proceeds, to any term of the Settlement Agreement, to Class Counsel's petition for attorneys' fees and reimbursement of costs and expenses, or to any request for case contribution awards to Roger Reiff and Jeremy Dickerson, could file an objection to the Settlement.

5

**E.    Notice To The Class**

In conformity with the Court Preliminary Approval Order, the parties modified the Class

Notice to reflect the Court's handwritten directions.

To effectuate the notice campaign, Class Counsel, with the Court's approval, retained

Gilardi & Co. LLC ("Gilardi"), an experienced Claims Administrator.  Jt. Decl. ¶ 101.  On July

16, 2008, Gilardi printed and mailed the Class Notice to the last known address of more than

11,000 class members and caused the Class Notice to be published on its website.  *See* Jt. Decl.

Ex. K, Declaration of Jenny Trang (attesting to Gilardi's efforts in connection with the notice

campaign).

## III.    THE CLASS SHOULD BE CERTIFIED

As noted, in its Preliminary Approval Order, this Court preliminarily approved the

maintenance of this case as a class action.  Notice has been provided to the Settlement Class, and

no class member has objected that this action fails to satisfy any of the applicable prerequisites

for class action treatment.

The requirements of Rule 23(a) are easily satisfied.  As the Court preliminarily concluded

in the Preliminary Approval Order, the Settlement Class is ascertainable from Plan records and

other objective criteria.  As the Court further ruled, the Settlement Class consists of more than

seven thousand members and thus is so numerous that joining all of its members before the Court

would be impracticable.  The numerosity requirement in Fed.R.Civ.P. 23(a)(1) thus is satisfied.

In addition, there are "questions of law and fact common to the class."  *See* Fed.R.Civ.P.

23(a)(2).  Notably, "the question of defendants' liability for ERISA violations is common to all

class members because a breach of fiduciary duty affects all participants and beneficiaries."

*Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).  In addition, and as the Court

preliminarily found, there are one or more questions of fact and/or law common to the Settlement Class, including whether the Defendants breached their fiduciary duties with respect to investments in the Stock Fund; whether Defendants breached their fiduciary duties by failing to provide complete and accurate information to participants; and whether the Plan suffered losses.

The typicality requirement of Fed.R.Civ.P. 23(a)(3) is satisfied because the Class Representative's claims arise from the same course of events as the claims of the Settlement Class. Namely, Defendants' conduct in causing the Plan to invest in Solutia Stock and in offering the Stock Fund as a retirement investment option for participants, despite Solutia's overwhelming financial problems, gives rise to the claims of Reiff as well as the claims of the other class members. In its Preliminary Approval Order, the Court preliminarily found that Reiff's claims are typical of the claims of the Settlement Class.

The Court also preliminarily found that Plaintiff Reiff would fairly and adequately protect the interests of the Settlement Class. The Court concluded that: (i) Reiff's interests and the nature of his alleged claims are consistent with those of the Settlement Class; (ii) there appear to be no conflicts between Reiff and the Settlement Class; and (iii) Reiff has retained qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated ERISA class actions. In short, the Court held, Rule 23(a)(4) is satisfied.

In addition, the Court preliminarily found that Rule 23(b)(1) is satisfied because the prosecution of separate actions by individual members of the Settlement Class would create a risk of (i) inconsistent or varying adjudications as to individual class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in the Action; or (ii) adjudications as to individual class members that would, as a practical matter, be

dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede those persons' ability to protect their interests.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

**A.    General Consideration And Presumption Of Fairness**

Fed.R.Civ.P. 23(e)(1)(A) provides that the "court must approve a settlement, voluntary dismissal, or compromise of claims, issues, or defenses of a certified class."  To approve the Settlement Agreement, this Court must hold, "only after a hearing and on finding," that it is "fair, reasonable, and adequate."  Fed.R.Civ.P. 23(e)(1)(C).  The Court has scheduled the hearing for this finding for September 17, 2008.  Plaintiff respectfully submits that for the reasons set forth herein, this Court should find that the Settlement Agreement is fair, reasonable and adequate and approve the settlement.

Under Fed.R.Civ.P. 23(e), before granting approval, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted).  In the Second Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the "Grinnell factors."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005). These factors are as follows:

(1)    the complexity, expense and likely duration of the litigation;

(2)    the reaction of the class to the settlement;

(3)    the stage of proceedings and the amount of discovery completed;

(4)    the risks of establishing liability;

(5)    the risks of establishing damages;

(6)    the risks of maintaining the class action through trial;

8

(7)    the ability of the defendants to withstand a greater judgment;

(8)    the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)    the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

It also is significant that the parties engaged U.S. Trust to serve as the independent fiduciary for the Plan in connection with the settlement, in accordance with the Class Exemption. Consistent with the Class Exemption, U.S. Trust can authorize the settlement only if it concludes that the settlement is reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone. *See* Class Exemption, 68 FR 75632 (Dec. 31, 2003). After reviewing the pertinent court documents, interviewing Plaintiffs' and defense counsel, independently reviewing the case law and conducting a comparative analysis of similar cases, U.S. Trust has determined that the settlement is reasonable. Jt. Decl. Ex. L. U.S. Trust's approval of the settlement is further evidence that the settlement is very reasonable and more than adequate.

**B.    Application Of The *Grinnell* Factors**

**1.    Complexity**

The complex nature of class members' claims weighs heavily in favor of settlement approval. Plaintiffs alleged that during the class period, Defendants caused the Plan to invest in Solutia Stock and to offer the Stock Fund as a retirement investment option for participants, despite Solutia's overwhelming financial problems. Class actions are inherent complex, and those asserting breach of fiduciary duties under ERISA are particularly demanding. In order to prevail, Class Counsel had to prove that the fiduciaries of the Plan knew or should have known

that the Company was very likely to become insolvent or that the Plan was purchasing shares of the Company at prices that were inflated because of securities law violations or the comparable.

The question of whether Solutia was insolvent at the time of its Chapter 11 filing was the subject of an enormous effort by the Equity Committee, an effort that ultimately resulted in the Bankruptcy Court finding that there was no equity at the time of the Chapter 11 filing. However, those efforts showed that many experts sharply disagreed with the position of the ERISA plaintiffs that bankruptcy was inevitable because of the under-capitalization of the Company from its inception. This also showed the difficulty to ERISA plaintiffs in proving that the Company was not accurately reporting its financial problems, thereby inflating the value of Solutia common stock. The standards for proving fiduciary breach in these circumstances remain difficult. While a number of cases have settled within the range of the settlement here, there have been other cases which have lost on summary judgment and the three major cases that have been tried resulted in losses to the plaintiffs. *See DiFelice v. US Airways, Inc.*, 436 F.Supp.2d 756 (E.D.Va. 2006), *aff'd*, 497 F.3d 410 (4th Cir. 2007); *Nelson v. IPALCO Enterprises, Inc.*, 480 F.Supp.2d 1061 (S.D.Ind. 2007); *Landgraff v. Columbia/HCA Healthcare Corp. of Am.*, 2000 WL 33726564 (M.D.Tenn. May 24, 2000).

Besides the statutory and constitutional standing issues upon which the Dickerson Action was dismissed, there were numerous other legal and factual obstacles to obtaining any recovery for losses to the Plan including:  the circumstances under which a fiduciary should halt new investments and start selling shares of the company's stock when the company's financial condition is deteriorating; what the effects are on the market price of the stock when the market learns that the employer's plan is selling the shares; whether, if there has been any inflating of the price of the securities of the employer, the fiduciaries can sell the shares without violating

10

federal securities laws; and other knotty problems.  The Bankruptcy Judge had the obligation to try to resolve the interests of multiple conflicting parties and develop a workable plan of reorganization and had to determine whether the ERISA claims were more akin to securities claims and thus subject to subordination than to other unsecured claims.  Jt. Decl. ¶ 45-50.

Class Counsel also engaged in exhaustive factual research.  This included not only traditional searches in public filings with the SEC and DOL, but also extensive review of plan documents that the Plaintiffs had and that were obtained  through the Bankruptcy Proceeding as a vast amount of factual material regarding Solutia's financial circumstances and history were presented and disputed by and among  the various bankruptcy committees.  Class Counsel were obliged to review an enormous number of declarations, affidavits, disclosure statements, direct examinations, cross-examinations and transcripts.  This required a constant monitoring of Solutia's bankruptcy proceedings and the various adversary proceedings that related to it.  *See* Jt. Decl. ¶ 132.

Each of Plaintiff's claims requires extensive and complex proof, and expert testimony as to, among other things, the actual value of Solutia Stock during the class period, each Defendant's status as a Plan fiduciary, each Defendant's knowledge, each Defendant's actions or inactions with respect to the Plan and class members, losses to the Plan due to investment in Solutia Stock, and causation of losses.  Continued litigation of these claims likely would span several years, would entail thousands of hours of attorney and court time, would require the expenditure of tens of thousands of dollars in litigation-related expenses and expert fees, and would be subject to appeal because there is no settled law on a number of the loss-related issues.

For all these reasons, the complexity factor weighs heavily in favor of approving the settlement.

### 2.      Reaction of the Class

The Settlement Class was given notice of the Settlement Agreement and an opportunity to submit objections.  Out of approximately 11,000 class members, none have objected to the terms of the settlement.  This factor therefore weighs in favor of approving the settlement.

### 3.      The stage of proceedings and the amount of discovery conducted

"To approve a settlement . . . the Court need not find that the parties engaged in extensive discovery."  *Maley v. Del Global Technologies Corp.*, 186 F.Supp.2d 358, 363 (S.D.N.Y. 2002) (internal quotation marks and citations omitted).  Here, the first of the underlying actions, the Dickerson Action, was filed nearly four years ago.  Class Counsel investigated and brought the claims in all three actions; prepared complaints, proofs of claim, and other initiating documents; briefed motions to dismiss and objections to Plaintiffs' proofs of claims; filed numerous motions for various forms of relief; objected to the release of claims in the bankruptcy court; fully briefed an appeal; and settled claims pending in multiple courts.  The litigation is sufficiently advanced.

### 4.      The risks of establishing liability

In assessing whether to approve the settlement, the Court "should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation."  *Maley*, 186 F.Supp.2d at 364 (citing *Grinnell*, 495 F.2d at 463).  The settlement here provides the Class with the certainty of a substantial recovery, and the risks of continuing the litigation are significant.

While Class Counsel believe that Plaintiffs' claims have substantial merit, Plaintiffs would face considerable difficulty in establishing liability.  Many of the pertinent issues have yet

to be addressed by appellate courts,[4] and the Supreme Court has yet to define the standards to which fiduciaries must adhere with respect to investment in stock of the company sponsoring the pension plan.  Additional uncertainty arises, where, as here, the defendant corporation is in bankruptcy.  Plaintiffs also would have to prove many complex issues through expert testimony, including that the Plan fiduciaries knew that the investments were imprudent, and that these fiduciaries caused the Plan to continue investing despite their knowledge.

Defendants might have argued that any duty they may have had to class members to divest holdings in Solutia Stock would be trumped by securities law prohibitions based on non-public information.  The court in *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588 (N.D.Cal. Sept. 30, 2002), dismissed a similar suit based on that defense.  *See also Crowley v. Corning, Inc. Investment Plan*, 234 F.Supp.2d 222 (W.D.N.Y. 2002), where the court dismissed ERISA claims based on similar principles, as well as on the plaintiffs' failure to demonstrate facts establishing the fiduciaries' knowledge of accounting improprieties.  In other cases, plaintiffs have met obstacles to establishing that fiduciaries' investments were imprudent, even where share prices had fallen significantly in the short run.  For example, in *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), the court entered judgment in favor of the defendants because the plaintiffs could not conclusively demonstrate that a reasonable fiduciary would not have

---

[4]   As but one example, at the time the Dickerson Action was dismissed, no appellate court had ruled on the issue of whether someone in Dickerson's position had standing to sue for violations of ERISA and the trial courts were split in their treatment of the issue.  Only recently, after the parties had briefed and argued the appeal and were negotiating the basic terms of settlement, have appellate courts ruled that former employees who had cashed out their plan accounts do have standing to pursue claims for breach of fiduciary duty under ERISA.  *See Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007); *Graden v. Conexant Sys., Inc.*, 496 F.3d 291 (3d Cir. 2007); *Bridges v. American Electric Power*, 498 F.3d 442 (6th Cir. 2007).  *See also LaRue v. DeWolff, Boberg & Associates, Inc.*, 128 S.Ct. 1020, 1026 n. 6 (U.S. 2008).

13

continued the allegedly imprudent investments.  In *Landgraff v. Columbia/HCA Healthcare Corp. of America*, No. 3-98-0090 (M.D.Tenn. 2000), the plaintiffs were denied relief after trial based upon similar findings.

It also is noteworthy that the controlling standards of proof are not clearly established for cases of this sort and, indeed, are difficult to sort out.  *Compare, e.g.*, *Moench v. Robertson*, 62 F.2d 553, 571-572 (3d Cir. 1995) *with Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004).  *See also In re Syncor ERISA Litigation*, 516 F.3d 1095 (9th Cir. 2008); *In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231 (3d Cir. 2005); *Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007); *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007); *Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008).

Defendants may also have argued that they were not liable for losses based on ERISA § 404(c), 29 U.S.C. § 1104(c), which provides that fiduciaries are not liable for investments made by "individual account plan" participants if the participant can and does exercise control over the assets allocated to his or her account.  *See, e.g.*, *Rankin v. Rots*, 278 F.Supp.2d 853, 872 (E.D.Mich. 2003).  Defendants may also have argued that they had no obligation to disclose information about Solutia Stock to participants.

While Plaintiffs believe that they would have had strong arguments to counter these defenses, and certain precedent upon which to rely, these issues are subject to substantial debate and are areas of "developing and controversial law."  *See Tittle v. Enron Corp.*, 2003 WL 22245394 at *24 (S.D.Tex. Sept. 30, 2003); *see also LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004).  Judge Posner pointed out the difficulty in an ESOP case of proving the precise point in time at which a fiduciary should divest company stock in *Summers v. State Street Bank & Trust Company*, 453 F.3d 404 (7th Cir. 2006):

14

> [A]t *every* point in the long slide of United's stock price, that price was the best
> estimate available either to State Street or to the Committee of the company's
> value … and so neither fiduciary was required to act on the assumption that the
> market was overvaluing United….  What is true, however, though largely (and
> fatally) ignored by the plaintiffs and mistakenly denied by State Street's lawyers
> in this court (State Street itself we assume knows better), is that the fall in the
> market price of United was increasing the risk borne by the owners of the stock,
> the participants in the ESOP.

*Id*. at 408.  That court continued:

> [T]the plaintiffs can take some solace from the fact that determining the "right"
> point, or even range of "right" points, for an ESOP fiduciary to break the plan and
> start diversifying may be beyond the practical capacity of the courts to determine.
> The Department of Labor pamphlet that we cited earlier states that a directed
> trustee may have a duty to sell "where there are clear and compelling public
> indicators, as evidenced by an 8-K filing with the Securities and Exchange
> Commission (SEC), a bankruptcy filing or similar public indicator, that call into
> serious question a company's viability as a going concern." U.S. Dept. of Labor,
> *supra,* at 5-6. That is not an administrable standard; note the hedge in "may" and
> the fact that selling when bankruptcy is declared will almost certainly be too late.

*Id*. at 411.

Because this area of the law is developing, there is considerable risk and uncertainty

associated with the outcome.  These substantial risks that Plaintiffs face in establishing liability

weigh in favor of approving the settlement.

### 5.    The risks of establishing losses

If Plaintiffs were able to establish liability, proving the amount of losses sustained would

be difficult, and any trial would involve complicated and conflicting expert damages testimony.

"The determination of damages, like the determination of liability, is a complicated and

uncertain process, typically involving conflicting expert opinions."  *Maley*, 186 F.Supp.2d at

365; *see also In re IKON Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 106-107 (E.D.Pa.

2002) (recognizing the risks associated with establishing losses in connection ith ERISA

fiduciary breach claims).  Recovery would be based on the difference between the Plan's

financial condition as a result of continued investment in Solutia Stock and the Stock Fund, as compared to what the Plan's investment would have been worth if class members' accounts were invested in other suitable alternative investments. This analysis would be subject to substantial conflicting expert evidence. The determination would be further complicated by the fact that market conditions were volatile during the class period. *See* Jt. Decl. ¶¶ 110-117 (explaining the difficulties in calculating—much less proving—the Plan's losses, including comments from Judge Beatty regarding the difficulty in determining when Solutia Stock became an imprudent investment).

This factor strongly favors approval of the Settlement.

**6.    The risks of maintaining the class action through trial**

As discussed above, Plaintiffs believe that this action is highly suitable for class action treatment, and classes have been certified in similar ERISA actions. However, is it likely that any class certification motion would be heavily contested. This factor has little weight here.

**7.    Defendants' ability to withstand a greater judgment**

Defendants' ability to withstand a greater judgment was an important factor in Class Counsel's assessment of whether the proposed settlement is fair, adequate, and reasonable. Jt. Decl. ¶¶ 119-121. In this regard, the monetary portion of the settlement is being funded in its entirety by insurance. The insurance policy that is paying the cash portion of the settlement is a wasting policy which covers both litigation costs *and* any resulting settlement or judgment. *Id*. Hence, as Defendants' litigation costs increase, the funds available to cover a settlement or judgment decrease. Therefore, even if Plaintiffs were able to secure a greater judgment following trial on the merits than they would secure in this settlement, there is a risk that insufficient funds would be available under Defendants' insurance policy to satisfy that

16

judgment.  Moreover, given the maximum potential liability, it is doubtful that any of the

individual Defendants could meaningfully contribute to a settlement fund once the insurance

proceeds were expended.

**8.    The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation**

"[T]he exact amount of damages need not be adjudicated for the purpose of settlement

approval . . . A just result is often no more than an arbitrary point between competing notions of

reasonableness."  *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 478

(S.D.N.Y. 1998) (internal quotation marks and citations omitted).  Further, "The enormous risks

of litigation are why settlement is frequently preferred.  Settling avoids delay as well as uncertain

outcome at summary judgment, trial and on appeal."  *Maley*, 186 F.Supp.2d at 366.

Class members' recovery here is substantial:  11,000 class members will share in

settlement fund consisting of a cash payment of $4,750,000.00 and an allowed unsecured claim

of $6,650,000.00 against Solutia's estate.  *Compare*, *e.g.*, *Rankin v. Rots*, 2006 WL 1876538

(E.D.Mich. June 27, 2006) (100,000 class members sharing in $10 million settlement).

Before entering into the settlement, Class Counsel considered the uncertain outcome and

the risk of any litigation, especially in a complex action such as this one, as well as the

difficulties and delays inherent in such litigation.  Class Counsel were mindful of the risks that

would attend continued litigation, including inherent problems of proving liability and damages,

potential limitations on recovery due to Solutia's bankruptcy, and the fact that continued

litigation would deplete the insurance coverage that would also fund a settlement or judgment.

These factors all weigh in favor of approving the final settlement.

17

9.    **Additional factors**

Finally, it is noteworthy that Class Counsel have determined that the proposed settlement is in the best interests of the Class.  "[T]he opinion of experienced and informed counsel is entitled to considerable weight."  *In re American Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 430 (S.D.N.Y. 2001).  Here, the firms of Sarraf Gentile LLP and Stember Feinstein Doyle & Payne, LLC, have prosecuted these actions and represented the Class in settlement negotiations.  Both these firms have extensive experience in prosecuting similar suits.  *See* Jt. Decl. Exs. H and I (firm resumes).

### V.    CONCLUSION

For all the foregoing reasons, this Court should grant final approval of this class action settlement.

Dated: September 3, 2008                                    Respectfully submitted,

                                                           **SARRAF GENTILE LLP**

                                                            /s/ Ronen Sarraf
                                                           Ronen Sarraf
                                                           Joseph Gentile
                                                           11 Hanover Square
                                                           New York, NY 10005
                                                           (212) 868-3610

                                                           **STEMBER FEINSTEIN DOYLE**
                                                             **& PAYNE, LLC**
                                                           Ellen M. Doyle
                                                           Joel R. Hurt
                                                           1705 Allegheny Building
                                                           429 Forbes Avenue
                                                           Pittsburgh, PA  15219-1639
                                                           (412) 281-8400

                                                           **Counsel for Plaintiffs**

18