**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
JEREMY DICKERSON,                       :
                                        :
                    Plaintiff,          :      Case No. 04-CV-07935 (LAP)
                                        :
v.                                      :
                                        :
SHEILA FELDMAN, et al.                  :
                                        :
                    Defendants.         :
------------------------------------------------------------x


------------------------------------------------------------x
ROGER REIFF,                            :
                                        :
                    Plaintiff,          :      Case No. 07-CV-06011 (LAP)
                                        :
v.                                      :
                                        :
FRANK A. METZ, JR., et al.              :
                                        :
                    Defendants.         :
------------------------------------------------------------x
```

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND CASE**
**CONTRIBUTION AWARDS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………………………………..iii

INTRODUCTION……………………………………………………………………….....1

SUMMARY OF THE CASE…………………………………...……………………………1

I.     Plaintiffs' Allegations……………………………………….…………………1

II.    Procedural History …………………………………………….……………………1

III.   Settlement Negotiations and Settlement Terms…………………………..…………………2

ARGUMENT………………………………………………………………..…………….3

I.     Class Counsel's Fee Request Is Fair And Reasonable…………………………………….3

       A.     The Common Fund Doctrine…………………………………………………..3

       B.     Class Counsel's Fee Request Is Reasonable
              Under Second Circuit Law……………………………………………………...5

              1.     Time and Labor Expended by Counsel……………………………………5

              a.     Class Counsel's Lodestar and Multiplier…………………………………7

                     i.     The Reasonableness of Class Counsel's Rates………………….7

                     ii.    The Reasonableness of the Multiplier…………………………..7

              2.     The Magnitude and Complexities of the Litigation………………………9

              3.     The Risk of Litigation…………………………………………………10

                     a.     Liability-Related Risks………………………………………12

                     b.     Risks Associated With Class Certification………………………13

                     c.     Risks Associated With Establishing Losses……………………14

              4.     The Quality of Representation…………………………………………...15

       5.      The Requested Fee in Relation to the Settlement…………………………..16

       6.      Public Policy Considerations……………………………………………17

II.    Class Counsel Are Entitled To Be Reimbursed
For Reasonable Litigation Expenses…………………………………………………..19

III.   Plaintiffs Should Receive Case Contribution Awards…………………………………...19

CONCLUSION……………………………………………………………………………..20

# **TABLE OF AUTHORITIES**

Page

## **CASES**

*Arenson v. Board of Trade*,
372 F. Supp. 1349 (N.D. Ill. 1974)…………………………………………………………16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)……………………….............................................................................18

*Berger v. Xerox Corp. Retirement Income Guarantee Plan*,
2004 WL 287902 (S.D.Ill. Jan. 22, 2004)……………………….……..…………..……....20

*Blum v. Stenson*,
465 U.S. 886 (1984)……………………………………………………………………….3, 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)……………………………………………………………………….3

*Bogosian v. Gulf Oil Corp.*,
621 F. Supp. 27 (E.D.Pa. 1985)……………………………………………………..20

*Bridges v. American Electric Power*,
498 F.3d 442 (6th Cir. 2007) ………..……………….……….………..…………..………12

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ………..……….……….………..……….……..………16

*City of Detroit v. Grinnell Corp.*,
560 F.2d 1093 (2d Cir. 1977) ………..………..……….………..……….…………..………4, 11

*Crowley v. Corning Inc.*,
234 F. Supp. 2d 222 (W.D.N.Y. 2002) ………..……….……….………..……….……...12

*Curry v. Contract Fabricators Inc. Profit Sharing Plan*,
744 F. Supp. 1061 (M.D. Ala. 1988) ………..………….……….………..…………….……9

*Denney v. Jenkens & Gilchrist*,
230 F.R.D. 317 (S.D.N.Y. 2005) ………..………….……….………..……….…………...19, 20

*DiFelice v. U.S. Airways, Inc.*,
436 F.Supp.2d 756 (E.D.Va. 2006), *aff'd*, 497 F.3d 410 (4th Cir. 2007) ………..………...13

*DiGiacomo v. Plains All Am. Pipeline,*
2001 U.S. Dist. LEXIS 25532 (S.D.Tex. Dec. 18, 2001) ……..………….…..………………….8

*Edgar v. Avaya, Inc.,*
503 F.3d 340 (3d Cir. 2007) ……...….…..….….…..………..…….…..………….9

*Eltman v. Grandma Lee's Inc.,*
1986 U.S. Dist. LEXIS 24902 (E.D.N.Y. May 28, 1986). ……..……..……..…..……..18

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,*
137 F.R.D. 240 (S.D.Ohio. 1991) ……..…..……..……..…..……..……..…..……..20

*Fisher v. JPMorgan Chase & Co.,*
230 F.R.D. 370 (S.D.N.Y. 2005)…………………………………………………………....14

*Francis v. Comerica Inc., et al.,*
No. 05-cv-74038 (E.D.Mich) ………………………………………………………….17

*Goldberger v. Integrated Resources, Inc.,*
209 F.3d 43 (2d Cir. 2000) …………………………………………………………*passim*

*Graden v. Conexant Sys., Inc.,*
496 F.3d 291 (3d Cir. 2007) ………………………………………………………….12

*Harman v. Lyphomed,*
945 F.2d 969 (7th Cir. 1991) ………………………………………………………….11

*Harzewski v. Guidant Corp.,*
489 F.3d 799 (7th Cir. 2007) ………………………………………………………....12

*Hull v. Policy Management,*
2001 U.S. Dist. LEXIS 22343 (D.S.C. Feb. 9, 2001) …………………………………12

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ………………………………………………...10

*In re APAC Teleservices, Inc. Sec. Litig.,*
1999 U.S. Dist. LEXIS 17908 (S.D.N.Y. Dec. 10, 2001) …………………………………16

*In re Baldwin-United Corp.,*
607 F. Supp. 1312 (S.D.N.Y. 1985). …………………………………………………18

*In re Bristol-Myers Squibb ERISA Litig.,*
No 02-CV-10129 (S.D.N.Y.) …………………………………………………………8, 20

iv

*In re Crazy Eddie Sec. Litig.,*
824 F. Supp 320 (E.D.N.Y. 1993) …………………………………………………....5

*In re Drexel Burnham Lambert Group, Inc.,*
138 B.R. 717 (Bankr. S.D.N.Y. 1992), *aff'd* 140 B.R. 347 (S.D.N.Y. 1992) …………………15

*In re Duke Energy ERISA Litig.,*
281 F. Supp 2d 786 (W.D.N.C. 2003) …………………………………………………...12

*In re Dun & Bradstreet Credit Serv. Customer Litig.,*
130 F.R.D. 366 (S.D. Ohio 1990). …………………………………………………...10, 20

*In re Electronic Data Systems Corp.,*
224 F.R.D. 613 (E.D.Tex.2004) …………………………………………………………14

*In re Ferro Corp. ERISA Litig.,*
No. 05-cv-1594 (N.D. Ohio) …………………………………………………………17

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995). …………………………………………………………...13

*In re Honeywell ERISA Litig.,*
No. 03-CV-1214 (D.N.J. 2005) …………………………………………………………...8

*In re Household Int'l, Inc. ERISA Litig.,*
No. 02-CV-7921 (N.D. Ill. Nov. 22, 2004) …………………………………………...8, 16

*In re Ikon Office Solutions Sec. Litig,*
194 F.R.D. 166 (E.D. Pa. 2000) …………………………………………………14, 15, 16

*In re Lenco*, 116 B.R. 141 (Bankr. E.D.Mo. 1990) ………………………………………...15

*In re Linerboard Antitrust Litig.,*
2004 WL 1221350 (E.D.Pa. June 2, 2004) ………………………………………………20

*In re Lloyd's Am. Trust Fund Litig,*
2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) …………………………………16

*In re Lorazepam & Clorazepate Antitrust Litig.,*
 205 F.R.D. 369 (D.D.C. 2002) …………………………………………………………20

*In re Lucent Technologies, Inc., ERISA Litig.,*
327 F. Supp. 2d 426 (D.N.J. 2004) …………………………………………………………9

v

*In re McKesson HBOC ERISA Litig.,*
2002 WL 31431588 (N.D.Cal. Sept. 30, 2002) ……………………………………………12

*In re Nasdaq Market-Makers Antitrust Litig.,*
187 F.R.D. 465 (S.D.N.Y. 1998) ……………………………………………………………8

*In re Newbridge Networks Sec. Litig.,*
1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 22, 1998) ……………………………………...6

*In re Polaroid ERISA Litig.,*
362 F. Supp. 2d 461 (S.D.N.Y. 2005) ……………………………………………………...12

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
962 F. Supp. 450 (D.N.J. 1997) …………………………………………………………...8

*In re RCN Corp. ERISA Litig.,*
No. 04-cv-5068 (D.N.J.) …………………………………………………………………17

*In re Remeron Antitrust Litig.,*
2005 WL 3008808 (D.N.J. Nov. 9, 2005) ………………………………………………6, 20

*In re Revco Sec. Litig.,*
1992 WL 118800 (N.D.Ohio. May 6, 1992) ……………………………………………20

*In re Rite Aid Corp. Sec. Litig.,*
146 F. Supp. 2d 706 (E.D. Pa. 2001) …………………………………………………...8

*In re Royal Dutch/Shell Transport ERISA Litig.,*
No. 04-1398 (D.N.J. 2005) ………………………………………………………………..8

*In re Unisys Corp. Retiree Medical Benefits ERISA Litig.,*
886 F. Supp. 445 (E.D.Pa. 1995) ………………………………………………………...18

*In re Visa Check/Mastermoney Antitrust Litig.,*
297 F. Supp. 2d 503 (E.D.N.Y. 2003) …………………………………………8, 18, 19

*In re Warfarin Sodium Antitrust Litig.,*
212 F.R.D. 231 (D. Del. 2002) …………………………………………………………15

*In re Warner Communications Sec. Litig.,*
618 F. Supp. 735 (S.D.N.Y. 1985) ………………………………………………………16

*In re Westar Energy, Inc. ERISA Litig.,*
2005 WL 2403832 (D. Kan., Sept. 29, 2005) ……………………………………………16

vi

*In re WorldCom, Inc. ERISA Litig.*,
No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y.  Oct. 18, 2004) ..............4, 18, 20

*In re Xcel Energy, Inc.*,
364 F. Supp 2d 980 (D.Minn 2005) ....................................................................4, 6, 8

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964) ........................................................................................18

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
510 U.S. 86 (1993) ...........................................................................................9

*Kling v. Fidelity Mgt. Trust Co.*,
No. 01-cv-11939 (D.Mass.) ...............................................................................17

*Koch v. Dwyer*,
No. 98-cv-5519 (S.D.N.Y.) ...............................................................................17

*Kurzweil v. Philip Morris Cos.*,
1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 24, 1999) .........................................16

*Lalonde v. Textron, Inc.*,
369 F.3d 1 (1st Cir. 2004). ...............................................................................9

*Landgraff v. Columbia/HCA Healthcare Corp. of Am.*,
2000 WL 33726564 (M.D.Tenn. May 24, 2000) ....................................................13

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
128 S.Ct. 1020 (U.S. 2008) ..............................................................................12

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002). ..........................................................*passim*

*Miltland Raleigh-Durham v. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993) .....................................................................19

*Nelson v. IPALCO Enterprises, Inc.*.
480 F.Supp.2d 1061 (S.D.Ind. 2007) ..................................................................13

*Newman v. Caribiner Int'l, Inc.*,
No. 99-CV-2271 (S.D.N.Y. Oct. 19, 2001) ............................................................8

*Rievman v. Burlington N.R.R. Co.*,
118 F.R.D. 29 (S.D.N.Y. 1987) ...........................................................................8

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997) …………………………………………………………..8

*Spann v. AOL Time Warner*,
2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) …………………………………...18

*Steiner v. Williams*,
2001 U.S. Dist. LEXIS 7097 (S.D.N.Y. May 31, 2001) ……………………………10, 16

*Strougo v. Bassini,*
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ……………………………………………………….3

*Stewart v. Thorpe Holding Co. Profit Sharing Plan,*
207 F.3d 1143 (9th Cir. 2000). ……………………………………………………………..17

*Van Vranken v. Atlantic Richfield Co.,*
901 F. Supp. 294 (N.D.Cal. 1995) …………………………………………………………..20

*Varacallo v. Mass. Mut. Life Ins. Co.,*
226 F.R.D. 207 (D.N.J. 2005) ………………………………………………………………..6

*Weil v. Long Island Sav. Bank*,
188 F. Supp. 2d 265 (E.D.N.Y. 2002) ……………………………………………………...11

*Wiseman v. First Citizens Bank & Trust Co.*,
215 F.R.D. 507 (W.D.N.C. 2003) …………………………………………………………..14

*Wright v. Or. Metallurgical Corp.,*
222 F. Supp. 2d 1224 (D.Or. 2002), *aff'd,* 360 F.3d 1090 (9th  Cir. 2004) …………………12

*Wright v. Oregon Metallurgical Corp.,*
390 F.3d 1090 (9th Cir. 2004) ………………………………………………………………..9

*Yap v. Sumitomo Corp. of America,*
1991 WL 29112 (S.D.N.Y. Feb. 22, 1991) ………………………………………………...20

## **STATUTES**

11 U.S.C. § 510(b) ……………………………………………………………………………15

29 U.S.C. § 1001(a) …………………………………………………………………….......17

29 U.S.C. § 1132……………………………………………………………………………1, 17

## INTRODUCTION

This Settlement follows nearly four years of litigation and resolves claims that were pending in multiple courts and which required more than 4,651 hours of professional time and $223,379.07 in expenses. The parties' Global Settlement Agreement, dated May 20, 2008 (the "Settlement Agreement") provides for a cash payment of $4,750,000.00 ("Cash Payment") as well as an allowed unsecured claim of $6,650,000.00 ("Bankruptcy Allowed Claim") against the bankruptcy estate of Solutia Inc. ("Solutia").

Class Counsel respectfully requests an award of attorneys' fees equal to 30% of the Settlement Fund, for the reimbursement of their expenses totaling $223,379.07, and for case contribution awards of $5,000 to each of the two Plaintiffs. The requested fee is in line with similar awards in analogous class action settlements, presents a lodestar multiplier well below those routinely approved, and otherwise meets the applicable *Goldberger* factors. Similarly, the expenses incurred are all reasonable and the incentive awards requested are in line with similar awards. No Class Member has objected to any portion of this request.

## SUMMARY OF THE CASE

### I.    Plaintiffs' Allegations

Plaintiffs brought these claims pursuant to ERISA, 29 U.S.C. § 1132, to recover losses to the Solutia Inc. Savings and Investment Plan ("Plan") and its participants and beneficiaries (collectively "participants") resulting from the Plan fiduciaries' breaches of their ERISA duties. Plaintiffs alleged that Solutia and the other defendants caused the Plan to offer, and invest money in, Solutia common stock at a time when that stock was imprudent.

### II.    Procedural History

Solutia filed for Chapter 11 bankruptcy protection on December 17, 2003. Plaintiff

Jeremy Dickerson commenced the Dickerson Action on October 7, 2004. On March 30, 2006, this Court dismissed the Dickerson Action, on the ground that Plaintiff Dickerson lacked standing. Dickerson appealed that ruling and briefed the appeal. The Second Circuit did not rule on the Dickerson Appeal. On June 25, 2007, while the Dickerson Appeal was pending, Roger Reiff commenced the Reiff Action, alleging the same claims as Dickerson.

Concurrent with District and Circuit Court litigation, Plaintiffs filed proofs of claim in Solutia's bankruptcy proceedings ("Bankruptcy Claim"). Plaintiffs alleged ERISA violations similar to those alleged in the Dickerson and Reiff Actions, but as against Solutia. Plaintiffs amended the Bankruptcy Claim several times, sought to certify it as a class proof of claim, retained Special Bankruptcy Counsel and engaged in extensive dispositive motion practice.

## III.   Settlement Negotiations And Settlement Terms

Settlement negotiations (which lasted several months) began roughly three years after the Dickerson Action commenced. At the time, the parties had fully briefed and argued the Dickerson Appeal, had fully briefed numerous dispositive and non-dispositive motions regarding the Bankruptcy Claim and were about to begin dispositive motion practice in the Reiff Action.

The Settlement Agreement provides for a cash payment of $4,750,000.00 and an allowed unsecured claim of $6,650,000.00 against Solutia's estate (the "Bankruptcy Allowed Claim"). The cash payment of $4,750,000 is comprised of a single payment of $250,000 from Solutia (plus $9,500 to cover Notice mailing) and a $4,500,000 payment from Solutia's and the Solutia Defendant's insurer. The Bankruptcy Allowed Claim is comprised of shares in the reorganized Solutia. Because Solutia is now a publicly traded company, the value of the Bankruptcy Allowed Claim fluctuates with market conditions and remains subject to change.

2

## ARGUMENT

### I.  Class Counsel's Fee Request Is Fair And Reasonable

Class Counsel is entitled to compensation based upon the benefits conferred on the Class and respectfully request an award of attorneys' fees in the amount of 30% of the Settlement Fund.  Based on the fluctuating value of the Settlement Fund, the 30% fee request represents an average amount of $2,545,227.30 or roughly 1.35 times Class Counsel's lodestar.  *See* Joint Declaration of Class Counsel ("Jt. Decl.") ¶ 156.  This fee request is reasonable and appropriate given the extensive work performed, the excellent result achieved, the low multiplier involved, the significant risks undertaken and the lack of any objections from the Class.

### A.  The Common Fund Doctrine

Class Counsel's application for a fee award is based on a percentage of the Settlement Fund.  This form of compensation is consistent with the established precedent that a person who maintains a suit that results in the creation of a benefit in which others have a common interest may obtain fees from that common benefit.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").[1]  This doctrine is designed to prevent the unjust enrichment of class members who benefit from a lawsuit without paying for it.  *Boeing*, 444 U.S. at 478; *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

Payment of attorneys' fees from the common fund created is appropriate in ERISA breach of fiduciary duty class actions.  By their very nature, ERISA class actions such as those brought pursuant to sections 409 and 502(a)(2) of ERISA seek relief on behalf of the retirement

---

[1]  *See also Strougo v. Bassini,* 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' ... a reasonable fee is based on a percentage of the fund bestowed on the class").

pension plan at issue. Any recovery naturally flows to that plan, and concomitantly its adversely affected participants and beneficiaries, thereby benefiting a large group of individuals. Courts have not hesitated to award attorneys' fees based on the common fund doctrine in similar actions. *See In re WorldCom, Inc. ERISA Litig.*, No. 02-CV-4816, 2004 U.S. Dist. LEXIS 20671 (S.D.N.Y. Oct. 18, 2004); *In re Xcel Energy, Inc.*, 364 F. Supp 2d 980 (D.Minn 2005). In this particular case, virtually every Class Member at some time during the class period had Solutia stock held for his or her account because of the way that the Plan was operated.

In determining how to award attorneys' fees from a common fund, the District Court has the authority to decide which approval process to use: the lodestar method or the percentage of the recovery method. *See Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43 (2d Cir. 2000). The "lodestar" method is a mathematical formula by which the court multiplies the number of hours worked by each attorney involved in the case with the prevailing market rate of attorneys with like skills in the area. *See City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977). Once this calculation is complete, the court may then apply a "multiplier" based on "less objective factors, such as the 'risk of litigation', the complexity of the issues, and the skill of the attorneys." *Id.* The percentage of recovery method is a simpler calculation requiring the court to award attorneys' fees based on a mathematical determination of what percentage of the fund the attorneys are entitled to. *See Blum,* 465 U.S. at 900 n. 16.

Class Counsel believe that given the fluctuating value of the Settlement Fund, the percentage of the fund methodology is more appropriate because it aligns Class Counsel's compensation with the benefits obtained and prevents compensation that is either too high or too low. The percentage requested (30%) is well within the range of reasonableness. Alternatively, Class Counsel's lodestar of $1,881,212.50, when compared to the average Settlement value to

date, produces an average lodestar multiplier of 1.35 (based on a 30% fee), which falls well within the range of reasonableness for multipliers. Accordingly, under either methodology, Class Counsel's request is fair, reasonable and should approved.

**B.    Class Counsel's Fee Request Is Reasonable Under Second Circuit Law**

The Second Circuit has articulated six factors to be taken into account when determining the appropriateness of a fee award, irrespective of whether one is using the lodestar or percentage of the fund method. *See Goldberger*, 209 F.3d at 50, setting forth the following factors:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

Before addressing the *Goldberger* factors, however, the reaction of the Class to the 30% fee request bears noting. *See Maley*, 186 F. Supp. 2d at 374 ("The reaction by members of the Class is entitled to great weight by the Court."). To date, no objections to the requested fee (or any other provision of the Settlement) have been served or filed. The absence of any objection supports the inference that Class Counsel's fee request is fair and reasonable. *See Maley*, 186 F. Supp. 2d at 374; *In re Crazy Eddie Sec. Litig.,* 824 F. Supp 320, 327 (E.D.N.Y. 1993) (holding that the lack of objections to the requested fee, with only one class member opposed to the fee, supported its reasonableness).

**1.    Time and Labor Expended by Counsel**

Class Counsel spent 4,651.75 hours prosecuting these claims. *See* Jt. Decl. at ¶ 147 and Exs. B-D. In so doing, Class Counsel sought to keep costs and fees to a minimum and avoid unnecessary duplication of effort. Assignments were regularly delegated to an individual firm and, where appropriate, to individual attorneys within each firm. Nonetheless, the complexity of these actions necessarily required a significant amount of work by a number of attorneys,

including partners with legal expertise and familiarity with the facts.

Class Counsel performed extensive investigations of all the underlying facts, filed multiple complex complaints and proofs of claim, consulted and retained experts as necessary, briefed numerous dispositive motions and an appeal.  In short, Class Counsel's "efforts in posturing this case for trial ... played a role in spurring the settlement, [and] produced a substantial payout to the class." *In re Remeron Antitrust Litig.*, 2005 WL 3008808, *15 (D.N.J. Nov. 9, 2005) (quoting *In re Newbridge Networks Sec. Litig.*, 1998 U.S. Dist. LEXIS 23238, at *11 (D.D.C. Oct. 22, 1998)).

Class Counsel's work will continue after the fairness hearing as they will oversee settlement administration and take additional actions as necessary.  *See Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 253 (D.N.J. 2005) (finding in favor of the $58.2 million fee requested, noting that it will constitute all of the attorneys' fees "despite the continuing responsibilities they will have in responding to Class Member inquiries, assisting the Claim Evaluator, consulting on individual cases, and any post-judgment proceedings and appeals").

The fact that this case settled before trial is evidence of Class Counsel's diligence and supports granting the requested fee.  The court in *Xcel Energy*, 364 F. Supp. 2d at 992, explained the benefit of early resolution of complex ERISA claims in commending counsel on both sides:

> The first observation is a simple one and one of which litigants and their counsel in civil litigation, and especially in complex civil litigation, too often lose sight. The Federal Rules of Civil Procedure "shall be construed and administered to ensure the *just, speedy, and inexpensive determination* of every action." Fed. R. Civ. P. 1 [emphasis added by the court].... Under *Rule 1*, as officers of the court, attorneys share the responsibility with the court of ensuring that cases are "resolved not only fairly, but without undue cost or delay." Fed. R. Civ. P. 1 advisory committee's notes on 1993 amendments.
>
>         *    *    *
>
> This is the type of complex litigation that easily could have dragged on for several more years.  Instead, it had a relatively short stay of two and a half years on the court's docket because counsel litigated the case efficiently and inexpensively.

The lodestar of plaintiffs' counsel could easily have been much higher had not counsel cooperated with one another through the litigation and settlement process. Instead, all plaintiffs' counsel presented a modest lodestar because they moved the case along efficiently to a just result in a remarkably short period of time.

In sum, Class Counsel expended extensive time and resources in these cases, while working efficiently to minimize and avoid unnecessary labor.

### a.    Class Counsel's Lodestar and Multiplier

Class Counsel's lodestar and the range of multiples thereon fully support a 30% fee award.  The number of hours worked (4,651.75) multiplied by the current hourly rates charged by Class Counsel, equates to a lodestar of $1,881,212.5.  *See* Jt. Decl. ¶ 147 and Exs. B-D. Because the Settlement Fund fluctuates based on Solutia's trading price, Class Counsel's fee request of 30% of the fund also fluctuates.  Based on these fluctuations, the range of multiples on Class Counsel's time is between 1.24 and 1.50, for an average multiple of 1.35.  A full analysis and computation of Class Counsel's multiplier can be found in the Joint Declaration at ¶ 156.

### i.    The Reasonableness of Class Counsel's Rates

Class Counsel's rates are at or below the usual and customary hourly rates charged for ERISA breach of fiduciary duty and other complex litigation.  No upward adjustment in billing rate was made, notwithstanding the contingency and risk of the matters involved, the opposition encountered, the preclusion of other employment or the delay in payment.  Class Counsel's rates are at or below the rates charged by defense counsel in these actions, and they are also lower than the rates charged by Plaintiffs' Special Bankruptcy Counsel.  *See* Jt. Decl. ¶ 153 and Ex. G.

### ii.    The Reasonableness of the Multiplier

Class Counsel's lodestar in this matter totals $1.88 million, representing an average multiplier of 1.35 (based on a 30% fee).  Much higher multipliers have been routinely awarded in ERISA class actions.  Indeed, in an analogous ERISA company stock class action, which

involved significantly less complexity and was settled before a motion to dismiss, this Court found that a multiplier of 3.8 was appropriate. *See In re Bristol-Myers Squibb Co. ERISA Litig.*, No. 02-cv-10129 (LAP).

This Court's prior award of a 3.8 multiple is in line with the range of multiples routinely approved by courts in these particular types of class action settlement. *See In re Honeywell ERISA Litig.,* No. 03-CV-1214 (D.N.J. 2005) (awarding 3.7 multiple); *In re Household Int'l, Inc. ERISA Litig.,* No. 02-CV-7921, (N.D.Ill. Nov. 22, 2004) (awarding 4.65 multiple); *In re Royal Dutch/Shell Transport ERISA Litig.*, No. 04-1398 (D.N.J. 2005) (awarding 3.3 multiple); *In re Xcel Energy, Inc., ERISA Litig.*, 364 F. Supp 2d 980 (D.Minn 2005) (awarding 4.7 multiple); *See also In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ("in recent years multipliers of between 3 and 4.5 have become common"); *Rievman v. Burlington N.R.R. Co.*, 118 F.R.D. 29, 35 (S.D.N.Y. 1987) (same); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (awarding multiplier of 4.5-8.5 on cash and stock settlement); *In re Daimler/Chrysler Sec. Litig.,* Civil Action No. 00-993/00-984/01-004 (JJF), slip op. at 52-53 (awarding multiplier of 4.2); *DiGiacomo v. Plains All Am. Pipeline,* 2001 U.S. Dist. LEXIS 25532 (S.D.Tex. Dec. 18, 2001) (multiplier of 5.3); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450 (D.N.J. 1997) (multiplier of 5.1); *Newman v. Caribiner Int'l, Inc.*, No. 99-CV-2271(GEL) (S.D.N.Y. Oct. 19, 2001) (7.7 multiplier); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier).

When the multiplier is used to cross-check the reasonableness of the percentage requested, courts have routinely awarded much higher multipliers than the multiplier Class Counsel ask to be awarded here. *See In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) ("The lodestar cross-check, which results in a multiplier of

3.5, further convinces me that my award is reasonable").

## 2. The Magnitude and Complexities of the Litigation

ERISA employer stock breach of fiduciary duty class actions, in addition to being novel, are also extremely complex and involve the intricate application of a decidedly complicated statute. "ERISA law is, in general, extremely complex and unsettled...." *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F. Supp. 1061, 1071 (M.D. Ala. 1988). *See also John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 109 (1993) (noting "the complexity of ERISA"). Indeed, at the time that the Dickerson Action was filed the First Circuit described ERISA jurisprudence as an "important and complex area of law" that "is neither mature nor uniform" and described the law pertaining to company stock cases as "based only on the statute's text and history, the sparse pleadings, and the few and discordant judicial decisions discussing the issue...." *See Lalonde v. Textron, Inc.,* 369 F.3d 1, 6 (1st Cir. 2004).

There remain significant differences among the courts of appeals as to the standards for proving these cases. *Compare Wright v. Oregon Metallurgical Corp.*, 390 F.3d 1090, 1996-99 (9th Cir. 2004) (suggesting there may be ***no*** claim for breach of fiduciary duty arising out of investing plan asserts in employer stock); *with Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007) (holding that fiduciaries of eligible individual account plans who invest plan assets in employer stock are presumed to have acted consistently with ERISA); *with Lalonde*, 369 F.3d at 6 (holding that record development and expert testimony are essential to determining what constitutes a breach of fiduciary duty in connection with the investment of plan assets in employer stock).

The circumstances surrounding a difficult settlement are recognized as increasing the complexity of a case. *See In re Lucent Technologies, Inc., ERISA Litig.*, 327 F. Supp. 2d 426, 434 (D.N.J. 2004) ("Additionally, the settlement negotiations were inherently complicated, and ... Lead Counsel performed above and beyond the call of duty in all facets of the negotiations

process"). In *Steiner v. Williams*, 2001 U.S. Dist. LEXIS 7097, at *19 (S.D.N.Y. May 31, 2001), the court awarded attorneys' fees of thirty percent (30%) of a $20,000,000 settlement, in part, because plaintiff's theory of recovery was "novel and risky."

In addition to the complexities present in ERISA cases generally, the circumstances in these cases were extraordinary, involving concurrent litigation in three separate courts against multiple parties. And unlike the majority of ERISA employer stock cases that are filed on the heels of a securities fraud action and involve multiple actions that are later consolidated, Class Counsel was alone in identifying, investigating, filing and prosecuting these claims.

Given (1) the efforts expended identifying and investigating the filing of these claims, (2) the complex nature of the claims themselves, (3) the relative paucity of guiding Circuit or Supreme Court precedent, (4) the magnitude of the prosecution of the claims in multiple courts and (5) the need to brief and argue multiple dispositive motions, the reaching of such a beneficial settlement at this date of the litigation confers a great benefit on the Class.

### 3.    The Risk of Litigation

The Second Circuit has routinely recognized that contingent fee risk must also be considered when assessing the relationship between the complexity and risks of the case and a fee award for counsel that achieves a recovery. As stated by the Court in *Maley*:

> Plaintiffs' Class Counsel have received no compensation during the course of this litigation despite having made a significant time commitment and incurred significant expenses to bring this action to a successful conclusion for the benefit of the Class. Any fee award or expense reimbursement to Plaintiffs' Class Counsel has always been contingent on the result achieved and on this Court's exercise of its discretion in making any award. 'Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.'

186 F. Supp. 2d at 372 (citing *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990)). *See also In re: Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F.

10

Supp. 2d 418, 432 (S.D.N.Y. 2001) (recognizing in securities litigation that for almost two years, Lead Counsel had not been paid, had expended funds, and had been completely at risk); *Detroit v. Grinnell Corp.*, 495 F.2d at 470-71 ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").[2]

Indeed, the Second Circuit has held that the risk of litigation is perhaps the single most important factor in determining the appropriate lodestar multiplier. *See Goldberger*, 209 F.3d at 54 (likelihood of success or contingency risk is "perhaps the foremost factor to be considered" in determining multiplier to lodestar). Further, courts have not hesitated to award a lodestar multiplier where counsel "shouldered the litigation risks for ... years and utilized its skill and experience to resolve complex issues in the Class' favor." *Weil v. Long Island Sav. Bank*, 188 F. Supp. 2d 265, 270 (E.D.N.Y. 2002).

Here, the contingent fee risk that Class Counsel faced was substantial. From the outset, Class Counsel considered this case to entail a greater financial risk than most. Class Counsel anticipated that they would incur hundreds of thousands, if not millions, of dollars in costs just to complete thorough discovery, with significant additional outlays if the cases went to trial. Significant resources would have been necessary to appropriately frame, execute and present analyses required to prove the Plan's losses. As shown below, Class Counsel faced a real risk that they would be unable to establish liability, certify the class, and establish damages at trial.

---

[2] In assessing the risks undertaken by Class Counsel, the Court should not view those risks from the perspective that a multi-million dollar settlement was ultimately reached. Rather, the Court must assess the risks Class Counsel faced at the *outset* of the litigation. *See Harman v. Lyphomed*, 945 F.2d 969, 976 (7th Cir. 1991) (contingent multiplier "is designed to reflect the riskiness of the case at the outset").

11

a.       **Liability-Related Risks**

Plaintiffs faced significant arguments on the merits at trial.  The state of the law in ERISA employer stock cases is not mature.  Several district courts have dismissed similar ERISA claims, asserting that diversification of employer stock investments is only required in very limited circumstances, such as when the employer/company at issue faces impending collapse or dire financial circumstances. *See, e.g.*, *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 475 (S.D.N.Y. 2005); *In re Duke Energy ERISA Litig.*, 281 F. Supp 2d 786 (W.D.N.C. 2003); *In re McKesson HBOC ERISA Litig.*, 2002 WL 31431588 (N.D.Cal. Sept. 30, 2002); *Crowley v. Corning Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002); *Wright v. Or. Metallurgical Corp.*, 222 F. Supp. 2d 1224 (D.Or. 2002), *aff'd*, 360 F.3d 1090 (9th Cir. 2004); *Hull v. Policy Management*, 2001 U.S. Dist. LEXIS 22343 (D.S.C. Feb. 9, 2001).

This Court's dismissal of the Dickerson Action evidences the uncertainty as to the state of the law when the case was filed, and the potential barriers to recovery that uncertainty presented.  At the time of the dismissal, no appellate court had ruled on the issue of whether someone in Dickerson's position had standing to sue for violations of ERISA and the trial courts were split in their treatment of the issue.  Only recently, after the parties had briefed and argued the appeal and were negotiating the basic terms of settlement, have appellate courts ruled that former employees who had cashed out their plan accounts do have standing to pursue claims for breach of fiduciary duty under ERISA.  *See Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007); *Graden v. Conexant Sys., Inc.*, 496 F.3d 291 (3d Cir. 2007); *Bridges v. American Electric Power*, 498 F.3d 442 (6th Cir. 2007).  *See also LaRue v. DeWolff, Boberg & Associates, Inc.*, 128 S.Ct. 1020, 1026 n. 6 (U.S. 2008).

Moreover, the extremely experienced counsel for Solutia and the other Defendants presented strong and well advocated defenses, and even at the time of settlement, continued to deny liability on behalf of their clients.[3]

Finally, it is important to note that of the ERISA employer stock cases that have actually gone to trial—including a case which Class Counsel tried and appealed—all have favored defendants. *See DiFelice v. U.S. Airways, Inc.*, 436 F.Supp.2d 756 (E.D.Va. 2006), *aff'd,* 497 F.3d 410 (4th Cir. 2007); *Nelson v. IPALCO Enterprises, Inc.*. 480 F.Supp.2d 1061 (S.D.Ind. 2007); *Landgraff v. Columbia/HCA Healthcare Corp. of Am.*, 2000 WL 33726564 (M.D.Tenn. May 24, 2000). This case was extremely risky from the outset, and remained risky throughout.

### b.    Risks Associated With Class Certification

There is no assurance that the litigation could be maintained as a class action through trial. A district court, in approving a settlement in an analogous action, noted that:

> The value of a class action depends largely in the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

*Ikon*, 209 F.R.D. at 105 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995)).

---

[3]  As stated in the Notice, Defendants had asserted the following defenses: (1) they were not fiduciaries; (2) if they were fiduciaries, their fiduciary duties did not extend to the matters at issue in this litigation; (3) if they were fiduciaries, they fully discharged all the duties imposed on them by ERISA; (4) even if they failed to discharge one or more of their fiduciary duties, any such breach did not cause the losses alleged; (5) the relief sought by the Named Plaintiffs is not permitted by ERISA; and (6) the Bankruptcy Claim should be subordinated to the recovery of other creditors and therefore, even if valid, would not be entitled to any distribution. *See* Notice at 3. All of these issues are both legally and factually complex, thereby militating in favor of settlement. *In re Global Crossing Sec.* and *ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (finding "additional factual and legal issues ... would substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval").

Although Plaintiffs believe that the Court would certify their proposed class, they recognized from the outset that there was a substantial risk of failure. Courts have not uniformly certified a proposed class as to all claims in ERISA cases of this nature. *See In re Electronic Data Systems Corp.,* 224 F.R.D. 613, 628 (E.D.Tex.2004) (refusing to certify the misrepresentation claim because it required "individual determinations of materiality and reliance"); *see also Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507 (W.D.N.C. 2003) (denying class certification for a misrepresentation claim). Further, at least one court within this very District has refused *in toto* to certify a class in an analogous company stock case, and rather dismissed the action due to claims purported being for individual as opposed to plan-wide relief. *See Fisher v. JPMorgan Chase & Co.*, 230 F.R.D. 370 (S.D.N.Y. 2005).

Based on Class Counsel's experience in cases of this nature, they are certain that Defendants would have vigorously opposed class certification. *See Global Crossing*, 225 F.R.D. at 460 (concluding settlement was appropriate because defendants may contest class certification "thereby creating appreciable risk to the class members' potential for recovery").

### c.    Risks Associated With Establishing Losses

Proving that certain ascertainable losses were caused by fiduciary breaches rather than a general downturn in financial markets and conditions is a complex task. Class Counsel also faced a very substantial risk that they would be unable to establish any, far less substantial losses attributable to Defendants' breaches of fiduciary duty, even if they successfully certified the Class and established liability. As a court in this District has previously explained: "The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions." *Maley*, 186 F.Supp.2d at 365; *see also, In re Ikon*, 209 F.R.D. at 106-107 (recognizing the risks associated with establishing losses in

connection with ERISA fiduciary breach claims).  Establishing losses in this case would have required not only competing expert testimony but would have been complicated further by the volatile market conditions that surrounded Solutia stock during the relevant period.[4]

### 4.    The Quality of Representation

Class Counsel has years of experience prosecuting ERISA class actions and other complex multi-party actions.[5]  The quality of Class Counsel's representation in these actions is reflected not only in the identification and filing of these claims, but in the work product and results obtained.  *See Goldberger*, 209 F.3d at 55 (noting that "the quality of representation is best measured by results").  Those results, in particular, are the clearest reflection of counsel's skill and expertise, obtaining not only a sizeable cash award, but also a sizeable bankruptcy claim.  *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"); *see also In re Ikon Office Solutions Sec. Litig*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("the most significant factor in this case is the quality of representation, as measured by the 'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel'").

The quality of opposing counsel is also relevant to the evaluation of class representation.

---

[4]  There were additional risks to recovery with regard to the Bankruptcy Claim.  Solutia invoked a bankruptcy code provision under which the Class's claim against it, even if judged meritorious, could have been relegated to a status in which it would not have been compensated in the distribution of Solutia's estate.  The applicability of that provision, 11 U.S.C. § 510(b), to ERISA claims of this nature is a novel issue that has yet to be determined by the courts.  *Compare In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717 (Bankr. S.D.N.Y. 1992), *aff'd* 140 B.R. 347 (S.D.N.Y. 1992) (questioning applicability of 510(b) to ERISA claims), *with In re Lenco*, 116 B.R. 141 (Bankr. E.D.Mo. 1990) (subordinating ERISA claims under 510(b)).

[5]  See the firm resumes attached as Exhibits H and I to the Joint Declaration.

*See, e.g., Ikon*, 194 F.R.D. at 194; *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work"); *Arenson v. Board of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Here, Defendants were represented vigorously by experienced and able counsel from some of the most prominent firms in the county: Kirkland & Ellis LLP, O'Melveny & Myers LLP and Kramer Levin Naftalis & Frankel LLP. The fact that Class Counsel was able to negotiate such a favorable settlement when Defendants were being represented by such high caliber legal advocates militates in favor of awarding the requested fee.

### 5.    The Requested Fee in Relation to the Settlement

The requested fee award here represents 30% of the Settlement Fund or roughly 1.35 times the amount of work expended by Class Counsel. As the court noted in *In re Lloyd's Am. Trust Fund Litig*, 2002 U.S. Dist. LEXIS 22663, at *76 (S.D.N.Y. Nov. 26, 2002) "in this district alone, there are scores of common fund cases where fees alone were awarded in the range of 33-1/3% of the settlement fund." *See also Maley*, 186 F. Supp. 2d at 368 (awarding 33-1/3% of an $11.5 million settlement fund and noting that courts in this and nearby districts have recently awarded 33-1/3% in class actions with significant monetary recovery early on in the litigation); *Steiner*, 2001 U.S. Dist. LEXIS 7097, at *19 (awarding 30% of a $20 million settlement).[6]

Class Counsel themselves have received 30% fee awards – or higher – in analogous ERISA employer stock class action settlements. For example, both SG and SFD&P (serving as

---

[6] *See also In re Westar Energy, Inc. ERISA Litig.*, 2005 WL 2403832 (D. Kan., Sept. 29, 2005) (awarding 30% of $9.25 million fund); *In re Household Int'l, Inc. ERISA Litig.*, No. 02-CV-7921, (N.D. Ill. Nov. 22, 2004) (awarding 30% of $46.5 million fund with a 4.65 multiple); *In re APAC Teleservices, Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 17908, at *2 (S.D.N.Y. Dec. 10, 2001) (awarding 33-1/3% of an all cash $21 million settlement); *Kurzweil v. Philip Morris Cos.*, 1999 U.S. Dist. LEXIS 18378, at *8 (S.D.N.Y. Nov. 24, 1999) (awarding 30% of $124 million settlement fund, even though plaintiffs' access to documents was assisted by the efforts of the Minnesota Attorney General); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992) (noting that courts in this circuit grant awards as high as 50% in class actions).

co-lead counsel) recently received a fee award of 30% in *In re RCN Corp. ERISA Litig.,* No. 04-cv-5068 (D.N.J.) ($5,375,000 settlement).  In addition, SG has received fee awards of 33.3% in two other similar ERISA employer stock class actions:  *In re Ferro Corp. ERISA Litig.*, No. 05-cv-1594 (N.D.Ohio) ($4 million settlement); and *Francis v. Comerica Inc., et al.*, No. 05-cv-74038 (E.D.Mich) ($2.02 million settlement).  Likewise, prior to forming SFD&P, Ms. Doyle had received fee awards of 30% in several ERISA employer stock cases: *Koch v. Dwyer*, No. 98-cv-5519 (S.D.N.Y.) ($6,400,000 settlement); *Kling v. Fidelity Mgt. Trust Co.*, No. 01-cv-11939 (D.Mass.) ($10,850,000 settlement); *Blyler v. Agee*, No. 97-cv-332 ($21,000,000 settlement).

### 6.    Public Policy Considerations

Public policy considerations also favor encouraging skilled attorneys to bring ERISA suits such as this one.  ERISA itself was passed by Congress as a means of promoting an important and essential public policy — protecting and preserving the retirement savings of American workers.[7]  ERISA's "most important purpose" was to "assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society."  *Stewart v. Thorpe Holding Co. Profit Sharing Plan,* 207 F.3d 1143, 1148 (9th Cir. 2000).  Private enforcement of the ERISA laws is specifically encouraged in the statute itself.  *See, e.g.*, 29 U.S.C. § 1132(a) (specifically empowering participants and beneficiaries to bring civil actions to redress violations and/or enforce provisions of ERISA).

Indeed, the Supreme Court itself has noted that private actions provide "'a most effective weapon in the enforcement'" of federal statutes that provide for both governmental and private

---

[7]  *See* 29 U.S.C. § 1001(a) and (b) (Introduction to ERISA) (describing the important public policies underlying ERISA, providing that "the policy of this Act [is] to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility for fiduciaries of employee benefit plans, and for providing for appropriate remedies, sanctions, and ready access to the Federal Courts").

rights of action. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (discussing private actions in the context of securities class actions) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). Naturally, there is a strong policy favoring complex litigation settlements in that they free limited judicial resources. *See, e.g., WorldCom,* 2004 U.S. Dist. LEXIS 20671, at *24 ("public policy favors settlement"); *In re Baldwin-United Corp.*, 607 F. Supp. 1312, 1320 (S.D.N.Y. 1985).

"To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Eltman v. Grandma Lee's Inc.*, 1986 U.S. Dist. LEXIS 24902, at *25 (E.D.N.Y. May 28, 1986). *See also Maley*, 186 F. Supp. 2d at 374 ("Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis . . . on behalf of those who otherwise could not afford to prosecute."); *Visa Check/Mastermoney*, 297 F. Supp. 2d at 524 (citing *Goldberger*, 209 F.3d at 51 ) ("There is ... commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."); *Spann v. AOL Time Warner*, 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7, 2005) (awarding 33-1/3%, noting that lawsuits such as this create incentives for plan administrators to comply with ERISA requirements.). Further, courts have recognized the importance of providing an incentive for attorneys to bring suits which seek to protect benefit plans and their employees. *See, e.g., WorldCom,* 2004 U.S. Dist. LEXIS 20671 at *40 (plaintiffs' counsel should be "appropriately rewarded as an incentive for the further protection of employees and their pension plans not only in this litigation but in all ERISA actions"); *In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 886 F. Supp. 445, 485 (E.D.Pa. 1995) (A "court must adequately compensate counsel to ensure that ERISA continues to be vigorously enforced.").

Also, because the Department of Labor has not taken any action to recover losses from Defendants, the Class Members would not have obtained adequate (or any) relief from any governmental action – much less relief of this magnitude – absent the efforts of Class Counsel. Finally, this Settlement spares the parties and the Court from expending the costs associated with continued litigation and trial. This Court, in light of the public benefit factor, should find that this militates in favor of granting Class Counsels' request for fees and costs.

## II.    Class Counsel Are Entitled To Be Reimbursed For Reasonable Litigation Expenses

It is axiomatic that "[c]ounsel are entitled to be reimbursed for the reasonable expenses advanced in class litigation." *In re Global Crossing Securities and ERISA Litig.*, 2004 U.S. Dist. LEXIS 23946, at *116 (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993). Reimbursable expenses include those associated with the retention of specialized counsel. *See Visa Check/Mastermoney,* 297 F. Supp. 2d at 525 (common practice in Second Circuit is to grant expense requests).

Class Counsel, in the prosecution of this complex case, expended $223,379.07, as documented in the Joint Declaration and the exhibits thereto. These expenses reflect costs expended for purposes of investigating, filing and prosecuting this litigation, including substantial fees for special bankruptcy counsel, research, travel, copying, telephone and mail. Class Counsel respectfully submits that the Court should award the expenses requested.

## III.    Plaintiffs Should Receive Case Contribution Awards

Plaintiffs respectfully request that the Court approve the payment of $5,000 case contribution awards to each of the two Plaintiffs (Jeremy Dickerson and Roger Reiff). The Notice disclosed this request and no objections have been filed.

As is recognized by many courts, the efforts of named plaintiffs in class actions should not go unrecognized. *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005)

19

(identifying the personal risk associated with acting as a named plaintiff as a factor justifying incentive awards, and awarding $10,000 each to several plaintiffs).[8]  The amount of an award to a named plaintiff is within the sound discretion of the Court.  *See Denney* 230 F.R.D. at 355, n. 248 (citing cases approving awards ranging from $336 to $303,000, with most awards being in the $10,000 to $50,000 range).   The requested awards here are well within the range of comparable ERISA actions and other commercial class actions.  *See WorldCom,* 2004 U.S. Dist. Lexis 20671 at *41-42 (awarding $5,000 to each named plaintiff); *In re Bristol-Myers Squibb ERISA Litig.,* No 02-CV-10129 (S.D.N.Y.) (awarding $5,000 to each named plaintiff).[9]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court award Class Counsel attorneys' fees in the amount of 30% of the Settlement Fund, permit their reimbursement for expenses in the amount of $223,379.07 and provide incentive awards of $5,000 to each of the two Plaintiffs.

---

[8]  *See also In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 400 (D.D.C. 2002) ("[c]ourts routinely approved incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation") (internal quotations and citation omitted).

[9]  *See also Berger v. Xerox Corp. Retirement Income Guarantee Plan,* 2004 WL 287902, *3 (S.D.Ill. Jan. 22, 2004) (awarding named plaintiffs incentive fees of $20,000 each for their time and effort in pursuing the litigation); *In re Remeron Antitrust Litig.*, 2005 WL 3008808, at *17-18 (granting incentive awards to two named plaintiffs that totaled $60,000.00); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350, *18 (E.D.Pa. June 2, 2004) (approving $25,000 to each representative of the classes); *Yap v. Sumitomo Corp. of America,* 1991 WL 29112, *9 (S.D.N.Y. Feb. 22, 1991) ($30,000 incentive awards to the named plaintiffs); *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 300 (N.D.Cal. 1995) ($50,000 incentive award to named plaintiff); *In re Dun & Bradstreet Credit Services Customer Litig.,* 130 F.R.D. 366 at 373-74 (two incentive awards of $55,000 and three incentive awards of $35,000 [settlement of $18 million]); *In re Revco Sec. Litig.,* 1992 WL 118800, *7 (N.D.Ohio. May 6, 1992) ($200,000 incentive award to named plaintiff); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 250-51 (S.D.Ohio. 1991) ($50,000 incentive awards to each of the six named plaintiffs); *Bogosian v. Gulf Oil Corp.,* 621 F. Supp. 27, 32 (E.D.Pa. 1985) (incentive awards of $20,000 to each of two named plaintiffs).

Dated: September 3, 2008                    Respectfully submitted,

                                            **SARRAF GENTILE LLP**

                                             /s/ Ronen Sarraf
                                            Ronen Sarraf
                                            Joseph Gentile
                                            11 Hanover Square
                                            New York, NY 10005
                                            (212) 868-3610

                                            **STEMBER FEINSTEIN DOYLE
                                              & PAYNE, LLC**
                                            Ellen M. Doyle
                                            Joel R. Hurt
                                            1705 Allegheny Building
                                            429 Forbes Avenue
                                            Pittsburgh, PA  15219-1639
                                            (412) 281-8400

                                            **Counsel for Plaintiffs**