# JOINT DECLARATION OF CLASS COUNSEL

# EXHIBIT A

# GLOBAL SETTLEMENT AGREEMENT

This GLOBAL SETTLEMENT AGREEMENT ("*Settlement Agreement*") is entered into by and between Roger Reiff, on behalf of himself, the *Settlement Class*, and the *Plan*, and Jeremy Dickerson, individually, on the one hand, and the *Defendants* and *Solutia*, on the other.

## RECITALS

WHEREAS, this *Action* commenced on June 25, 2007, asserting various claims for relief under the Employee Retirement Income Security Act of 1974, as amended, against the *Defendants*, who have disputed the claims;

WHEREAS, Jeremy Dickerson and Roger Reiff filed the *Bankruptcy Claim* against *Solutia* in the *Chapter 11 Proceeding*;

WHEREAS, *Defendants* moved to dismiss the *Complaint* in this *Court*, and *Solutia* objected to and sought to subordinate the *Bankruptcy Claim* in the *Bankruptcy Court*;

WHEREAS, counsel for the *Parties* have engaged in extensive, arm's-length negotiations with regard to the possible settlement of the *Action* and the *Bankruptcy Claim*;

WHEREAS, Jeremy Dickerson filed an action (Case No. 1:04-CIV-07935-LAP) that was dismissed by the *Court* and is currently on appeal to the United States Court of Appeals for the Second Circuit (Case No. 06-1616-cv), and is a party to this *Settlement Agreement* in order to settle all claims in the *Dickerson Litigation*, which asserts that *Defendants* and *Solutia* breached their *ERISA* fiduciary duties in connection with the *Plan's* offering of the *Solutia Stock Fund* during the class period;

WHEREAS, the *Parties* desire to promptly and fully resolve and settle with finality all of the *Released Claims* against the *Defendants* and *Solutia* asserted by Roger Reiff on behalf of himself, the *Settlement Class*, and the *Plan*, including all claims by Jeremy Dickerson and other former employees who, like Dickerson, do not currently maintain account balances in the *Plan* but whose claims are being settled under the *Settlement*; and,

WHEREAS, *Solutia*, the *Solutia Defendants*, and/or the *Insurer* have agreed to provide the funds and the *Bankruptcy Allowed Claim* for this *Settlement* in accordance with the terms stated herein;

NOW, THEREFORE, the *Parties*, in consideration of the promises, covenants and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and subject to approval of the *Court,* do hereby mutually agree as follows:

1.    DEFINITIONS

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1    "*Action*" shall mean:  *Reiff, et al., v. Metz, et al.*, 1:07-cv-06011-LAP.

1.2    *"Affiliate"* shall mean: any entity which, directly or indirectly, owns or controls, is owned or controlled by, or is under common ownership or control with a *Person*.  For purposes of this definition, "control" shall mean the possession, directly or indirectly, of the power (whether or not exercised) to direct or cause the direction of the management and policies of such *Person*, whether through the ownership of voting securities or otherwise.

1.3    *"Agreement Execution Date"* shall mean:  the date on which this *Settlement Agreement* is fully executed, as provided in Section 14.12 below.

1.4    *"Bankruptcy Allowed Claim"* shall mean: allowance of the *Bankruptcy Claim* as a single Class 13 General Unsecured Claim (as such term is defined in the *Plan of Reorganization*) in the amount of $6,650,000, which claim is not subject to adjustment, set-off or subordination.

1.5    *"Bankruptcy Claim"* shall mean:  the proofs of claim filed by (i) Jeremy Dickerson on October 19, 2004 (Claim No. 854), and thereafter amended on September 1, 2005 (Claim No. 14735), and then again on June 21, 2007 (Claim No. 14823), and (ii) Roger Reiff on November 23, 2004 (Claim No. 6701) and thereafter amended on June 21, 2007 (Claim No. 14824).

1.5.2   *"Bankruptcy Claim Cap"* shall have the meaning set forth in Section 6.2.

1.6    *"Bankruptcy Court"* shall mean:  the United States Bankruptcy Court for the Southern District of New York.

1.6.2   *"Bankruptcy Notice"* shall mean:  the form of notice appended as Exhibit C to the form of *Preliminary Approval Order* attached hereto as Exhibit 3.1.

1.7    *"Bankruptcy Proceeds"* shall have the meaning set forth in Section 9.4.3.

1.8    *"Cash Amount"* shall have the meaning set forth in Section 9.2.

1.9    *"Chapter 11 Proceeding"* shall mean:  the jointly administered Chapter 11 Proceeding of Solutia bearing Case No. 03-17949 (PCB).

1.10    *"Claims Administrator"* shall mean: Gilardi & Co. LLC.

1.11    *"Class Counsel"* shall mean collectively:  Sarraf Gentile LLP and Stember Feinstein Doyle & Payne, LLC.

1.12    *"Class Exemption"* shall mean:  Prohibited Transaction Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,532.

1.13    *"Class Notice"* shall mean:  the form of notice appended as Exhibit A to the form of *Preliminary Approval Order* attached hereto as Exhibit 3.1.

1.14    *"Complaint"* shall mean:  the Complaint filed June 25, 2007 in the *Action*.

2

1.15    "*Court*" shall mean:  the United States District Court for the Southern District of New York.

1.16    "*Defendants*" shall mean:  Frank A. Metz, Jr., Sheila Feldman, Helen L. Nelling, Susan E. Bevington, Nancy Stemme, Christopher N. Ast, Employee Benefits Plan Committee, Pension And Savings Fund Committee, John Hunter, Robert Clausen, Robert Potter, Michael E. Miller, Paul H. Hatfield, J. Patrick Mulcahy, Sally G. Narodick, Paul Donovan, Robert H. Jenkins, William D. Ruckelshaus, John B. Slaughter, Philip R. Lochner, Jr., Robert T. Blakely and The Northern Trust Company.

1.17    "*Dickerson Litigation*" shall have the meaning set forth in Section 2.5.

1.18    "*Effective Date*" shall mean:  the date on which the *Final Order* becomes *Final* in accordance with Section 1.23 and all conditions set forth in Section 2 have been satisfied or waived as provided therein.

1.19    "*ERISA*" shall mean:  the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.20    "*Escrow Account*" shall mean:  an interest-bearing escrow account established at a financial institution and governed by an escrow agreement acceptable to the *Parties* and the *Insurer,* substantially in the form annexed hereto as Exhibit 1.20.

1.21    "*Escrow Agent*" shall mean:  Gilardi & Co. LLC.

1.22    "*Fairness Hearing*" shall have the meaning set forth in Section 3.9.

1.23    "*Final*" shall mean:  with respect to any judicial ruling or order, the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("*Review Proceeding*") has expired without the initiation of a *Review Proceeding*, or, if a *Review Proceeding* has been timely initiated, that there has occurred a full and final disposition of any such *Review Proceeding* without a reversal or modification, including the exhaustion of proceedings in any remand and/or subsequent appeal after remand. Notwithstanding any other provision hereof, the *Final Order* shall be deemed *Final* without regard to whether (i) the *Court* has entered an order regarding the award of legal fees and expenses; (ii) any order referred to in (i) above, if entered, has become *Final*; or (iii) any order referred to in (i) is reversed or modified on appeal.

1.24    "*Final Order*" shall mean the Order or Judgment entered by the *Court* approving the *Settlement*.

1.24.2  "*Hewitt*" shall mean Hewitt Associates LLC, a human resources company, and any related companies.

1.25    "*Independent Fiduciary*" shall mean:  a *Plan* fiduciary selected and retained at *Solutia's* sole expense that has no "relationship to" or "interest in" (as those terms are used in the *Class Exemption*) any of the *Parties*.

1.26    "*Insurance Policies*" shall mean:  Fiduciary Executive Protection Policy issued by Federal Insurance Company and assigned Policy Number 8147-7436.

1.27    "*Insurer*" shall mean:  Federal Insurance Company.

1.27.2  "*Mercer*" shall mean Mercer LLC, a human resources and financial advisory company, and any related companies.

1.28    "*Net Proceeds*" shall have the meaning set forth in Section 11.1.

1.29    "*Parties*" shall mean:  the *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and *Plan*; Jeremy Dickerson, individually; the *Defendants*; and *Solutia*.

1.30    "*Person*" shall mean:  an individual, partnership, corporation, governmental entity or any other form of entity or organization.

1.31    "*Plaintiffs*" shall mean:  the *Representative Plaintiff*, Jeremy Dickerson, individually, and each member of the *Settlement Class*.

1.32    "*Plan*" shall mean: the Solutia Inc. Savings and Investment Plan and all predecessor and successor plans, individually and collectively, and any trusts created under such *Plan*.

1.33    "*Plan of Allocation*" shall mean:  the *Plan of Allocation* approved by the Court as contemplated by Section 3.9 and described in Section 11.

1.34    "*Plan of Reorganization*" shall mean Solutia's Fifth Amended Plan of Reorganization (as modified) dated November 28, 2007, as confirmed by final order of the *Bankruptcy Court*.

1.35    "*Preliminary Approval Order*" shall have the meaning set forth in Section 3.1.

1.36    "*Preliminary Motion*" shall have the meaning set forth in Section 3.1.

1.37    "*Released Claims*" shall have the meaning set forth in Section 4.1.

1.38    "*Released Parties*" shall have the meaning set forth in Section 4.1.

1.39    "*Releases*" shall mean the releases set forth in Sections 4.1, 4.2, and 4.3.

1.40    "*Representative Plaintiff*" shall mean:  Roger Reiff.

1.41    "*Representatives*" shall mean:  attorneys, agents, directors, officers, and employees.

1.42    "*Settlement*" shall mean:  the settlement to be consummated under this *Settlement Agreement* pursuant to the *Final Order*.

1.43    "*Settlement Agreement*" means this Global Settlement Agreement.

1.44    "*Settlement Class*" shall mean: All persons who were participants in the *Plan* who held Solutia stock in their *Plan* account at any time during the period from September 1, 1997 through and including August 31, 2005 and their beneficiaries, successors, assigns, executors, administrators, estates, heirs and legal representatives.  Excluded from the *Settlement Class* are *Defendants* and any named fiduciary of the *Plan*, members of their immediate families, and their legal representatives, heirs, successors, or assigns unless such individual is a member of the *Settlement Class* in his or her own right.

1.45    "*Settlement Fund*" shall have the meaning set forth in Section 9.1.4.

1.46    "*Solutia*" shall mean:  Solutia Inc., a Delaware corporation, as debtor, debtor-in-possession and as reorganized debtor, each of its *Affiliates*, and each of its predecessors and *Successors-In-Interest*.

1.47    "*Solutia Defendants*" shall mean: Frank A. Metz, Jr., Sheila Feldman, Helen L. Nelling, Susan E. Bevington, Nancy Stemme, Christopher N. Ast, Employee Benefits Plan Committee, Pension and Savings Fund Committee, John Hunter, Robert Clausen, Robert Potter, Michael E. Miller, Paul H. Hatfield, J. Patrick Mulcahy, Sally G. Narodick, Paul Donovan, Robert H. Jenkins, William D. Ruckelshaus, John B. Slaughter, Philip R. Lochner, Jr., and Robert T. Blakely.

1.48    "*Solutia Stock Fund*" shall mean:  the stock fund established under the *Plan* that was designed to invest primarily in Solutia common stock.

1.49    "*Successor-In-Interest*" shall mean:  a *Person's* estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

1.50    "*Summary Notice*" shall mean:  the form of notice appended as Exhibit B to the form of *Preliminary Approval Order* attached hereto as Exhibit 3.1.

1.51    "*Trustee*" shall mean:  The Northern Trust Company.

2.    CONDITIONS TO THE *SETTLEMENT*

This *Settlement* shall be contingent upon each of the following conditions having been (i) satisfied or (ii) waived by all *Parties*:

2.1    <u>Condition #1:  Class Certification for Purposes of Settlement</u>.  The *Court* shall have certified this *Action* as a non opt-out class action for settlement purposes only pursuant to Rule 23(a)(l)-(4), 23(b)(1) and 23(e) of the Federal Rules of Civil Procedure and Bankruptcy Rule 7023, with Roger Reiff as the class representative, and with *Class Counsel* as counsel for the *Representative Plaintiff* and the *Settlement Class*.  If the *Effective Date* of the *Settlement* does not occur, the *Defendants* and *Solutia* will not be deemed to have consented to the certification of any class, and the agreements and stipulations in this *Settlement Agreement* concerning the class definition, class period, or class certification shall not be used in any way to support class certification, the class definition, or any class period, and the *Defendants* and *Solutia* will retain all rights to oppose class certification, including opposition of certification of a class identical to

that provided for in this *Settlement Agreement*.

2.2     Condition #2:  Release by the Independent Fiduciary and Plan.

2.2.1     Not later than thirty (30) business days after the *Agreement Execution Date*, the *Solutia Defendants* or *Solutia* shall retain an *Independent Fiduciary* to evaluate this *Settlement*. The *Settlement* will be contingent upon the *Independent Fiduciary:*  (i)  authorizing the *Settlement* and giving a release to the *Released Parties* in its capacity as a fiduciary of the *Plan* and for and on behalf of the *Plan* that is coextensive with the *Releases* from *Representative Plaintiff* on behalf of himself, the *Plan* and the *Settlement Class*; and (ii) determining that the *Settlement* is exempt under the terms of the Prohibited Transaction Class Exemption 2003-39, and/or finding that the *Settlement* does not constitute a prohibited transaction under *ERISA* section 406(a).

2.2.2     At least twenty-one (21) days before the *Fairness Hearing* is held, the *Plan* (acting by and through the *Independent Fiduciary*) and the *Independent Fiduciary* (in its capacity as a fiduciary of the *Plan*) shall have agreed in writing, in consideration of the terms herein, to grant, upon the *Effective Date*, releases of the *Released Parties*, which releases (i) shall release the same claims as the *Releases* set forth in Section 4 below; and (ii) shall be determined by the *Independent Fiduciary* to meet the requirements of the *Class Exemption*.

2.2.3     If the *Independent Fiduciary* fails to timely grant the releases prescribed in Section 2.2.2 above, the *Settlement* shall terminate and become null and void, and the provisions of Section 12.2 shall apply.

2.2.4     The fees and costs associated with the services of the *Independent Fiduciary* shall be paid solely by *Solutia*.  *Class Counsel* shall be provided with a copy of the *Independent Fiduciary's* retention agreement and final report.  *Solutia,* the *Solutia Defendants*, and/or the *Independent Fiduciary* shall not be required to provide any other information or documentation regarding the *Independent Fiduciary* to *Class Counsel*.

2.3     Condition #3:  District Court Approval.  The *Settlement* shall have been approved by the *Court* following notice to the *Settlement Class*, notice to the members of the approved list pursuant to Bankruptcy Rule 2002, and the *Fairness Hearing*, in accordance with the standards embodied by Federal Rule of Civil Procedure 23 and Bankruptcy Rules 7023 and 9019.

2.4     Condition #4:  Withdrawal of the Reference.  The *Court* shall enter an order based upon the consent of the *Parties* withdrawing the reference as to the *Bankruptcy Claim* and any pending objections thereto solely for the purpose of effectuating this *Settlement Agreement*.  Any such *Order* withdrawing the reference shall state that it will be deemed null and void in the event the *Effective Date* of the *Settlement* does not occur.

2.5     Condition #5:  Remand of the *Dickerson Litigation*.  The case filed by Jeremy Dickerson in the *Court* (Case No. 1:04-CIV-07935-LAP) and the appeal to the United States Court of Appeals for the Second Circuit (Case No. 06-1616-cv) (collectively, the "*Dickerson Litigation*") shall be remanded to the *Court* solely for the purpose of effectuating the *Settlement*. In the event that the *Effective Date* of the *Settlement* does not occur, the remand of the *Dickerson Litigation* shall be of no effect and the *Dickerson Litigation* shall for all purposes with respect to

the *Parties* revert to its status as of the date this *Settlement Agreement* was signed.  The *Parties* shall support seeking remand, but if the *Dickerson Litigation* is not remanded to the *Court* through no fault of *Solutia* or the *Defendants*, the *Parties* agree to negotiate in good faith an alternative to remand that will satisfy this condition.  *Plaintiffs* also may waive this condition and thereafter will agree to (i) not terminate the *Settlement*, (ii) jointly request with *Solutia* and the *Defendants* that the Second Circuit stay the *Dickerson Litigation* until the *Court* issues a *Final* order approving or rejecting the *Settlement*, and (iii) dismiss the *Dickerson Litigation* with prejudice upon the *Effective Date*.

2.6    Condition #6:  Funding of *Cash Amount*.  *Solutia*, the *Solutia Defendants* and/or the *Insurer* shall have deposited the *Cash Amount* into the *Escrow Account* in accordance with Section 9.1.2 and 9.2.

2.7    Condition #7: Funding of *Bankruptcy Proceeds*. *Solutia* shall deliver and/or deposit the *Bankruptcy Proceeds* in accordance with Section 9.4.  This condition shall be deemed satisfied upon the deposit by *Solutia* of the requisite number of shares of Solutia New Common Stock (as defined in the *Plan of Reorganization*) on account of the *Bankruptcy Allowed Claim* so that such distribution is equal to, on a percentage basis, the distribution received by unsecured creditors generally pursuant to the *Plan of Reorganization* on account of allowed general unsecured claims.  The number of shares of Solutia New Common Stock to be deposited which the *Settlement Class* will be entitled to pursuant to the preceding sentence based upon *Solutia's* current calculation is 237,913.  Nothing herein, including but not limited to the release contained in Section 4.1 below as it relates to *Solutia*, shall impact or limit the rights of the *Settlement Class* to the receipt of any additional shares of Solutia New Common Stock beyond the initial deposit described above on account of the *Bankruptcy Allowed Claim* and as contemplated by Section 9.4.2 below.  The *Settlement Class* shall retain the right, subsequent to the *Effective Date*, to pursue any claim to such additional shares, as appropriate and as available to any holder of an allowed general unsecured claim under the *Plan of Reorganization* in the *Chapter 11 Proceeding*.

2.8    Condition #8:  Finality of Final Orders.  The *Final Order* shall have become *Final* in accordance with Section 1.23 above.

3.    PROCEDURES AND SCHEDULE

3.1    Motion for Preliminary Approval of Settlement and of Notices.  As soon as reasonably possible upon the execution of this *Settlement Agreement* by the *Parties,* the *Representative Plaintiff* will file a motion ("*Preliminary Motion*") with the *Court* for an order substantially in the form annexed hereto as Exhibit 3.1, including the exhibits thereto (the "*Preliminary Approval Order*").  *Class Counsel* shall provide a copy of the *Preliminary Motion* to the *Parties* for comment and approval before it is filed, and the *Parties* will cooperate in good faith to obtain the *Preliminary Approval Order*.

3.2    Issuance of Class Notice.  Upon entry of the *Preliminary Approval Order* by the *Court*, (i) *Class Counsel* shall cause the *Class Notice* to be disseminated to the *Settlement Class* and (ii) *Solutia* shall cause the *Summary Notice* to be published in one newspaper, if so ordered by the *Court* in its *Preliminary Approval Order*.  Subject to Section 10.1, *Plaintiffs* shall bear the

7

cost of disseminating the *Class Notice*. If required by the *Court*, *Solutia* shall bear the cost of the publication of the *Summary Notice* in one newspaper. The *Parties* will utilize their reasonable best efforts to set the *Fairness Hearing* sixty (60) business days from the mailing of the *Class Notice* to the *Settlement Class*.

3.3    Bankruptcy Notice. At least 20 days prior to the *Fairness Hearing*, *Solutia* will provide at its expense the *Bankruptcy Notice* to the members of the approved list pursuant to Bankruptcy Rule 2002 in *Solutia's Chapter 11 Proceeding* of the motion for a *Final Order* approving the *Settlement* under Bankruptcy Rules 7023 and 9019 and section 363 of the Bankruptcy Code, and approving the *Bankruptcy Allowed Claim*. The *Bankruptcy Notice* will include the deadline and relevant procedures for objecting to the *Settlement*.

3.4    Objections. Any *Settlement Class* member who wishes to object to the *Settlement* shall inform the *Court* in writing of his, her, or its intent to object to the *Settlement* and/or to appear at the *Fairness Hearing* by following the procedures set forth in the *Class Notice*, including the requirement that timely notice of intent to object or appear be sent by first-class mail, postage prepaid to the address specified in the *Class Notice*. To be considered timely, the notice must be postmarked at least 21 days prior to the date of the *Fairness Hearing*. The notice must set forth all objections to the *Settlement* and include any supporting papers and arguments. Any *Settlement Class* member who fails to submit such a timely written notice shall be barred from making any statement or objection to the *Settlement*, including at the *Fairness Hearing*, and shall forever waive his, her or its objection, except by permission of the *Court*.

3.5    Report by the *Independent Fiduciary*. No later than 21 days before the *Fairness Hearing*, the *Independent Fiduciary* shall provide copies of its final report pursuant to Section 2.2.

3.6    Motion for Final Approval. No later than 14 days before the *Fairness Hearing*, *Class Counsel* shall file a motion for final approval of the *Settlement,* which motion shall be heard at the time of the *Fairness Hearing* (unless the *Court* directs otherwise).

3.7    Motion for Final Approval of the *Bankruptcy Allowed Claim*. No later than 14 days before the *Fairness Hearing*, *Solutia* shall file a motion for final approval of the *Settlement* under Bankruptcy Rules 7023 and 9019 and section 363 of the Bankruptcy Code, and approving the *Bankruptcy Allowed Claim*, which motion shall be heard at the time of the *Fairness Hearing* (unless the *Court* directs otherwise).

3.8    Motion for Award of Attorney Fees. No later than 14 days before the *Fairness Hearing*, *Class Counsel* shall file a motion for attorneys' fees, costs and expenses, and incentive payments for the *Representative Plaintiff* and Jeremy Dickerson, as contemplated by Section 13 of this *Settlement Agreement*, which motion shall be heard at the time of the *Fairness Hearing* (unless the *Court* directs otherwise).

3.9    The *Fairness Hearing*. The *Court* shall conduct a hearing at which it will consider whether the *Settlement* is fair, reasonable, and adequate ("*Fairness Hearing*"). At the *Fairness Hearing*, the *Court* shall determine whether to: (i) enter judgment that both (a) approves the *Settlement* pursuant to Federal Rule of Civil Procedure 23, section 363 of the

Bankruptcy Code, and Bankruptcy Rules 7023 and 9019 and (b) dismisses the *Action* and the *Dickerson Litigation* with prejudice (which judgment is referred to herein as the "*Final Order*"); (ii) approve the distribution of the *Net Proceeds* as provided in Section 10.3 and as provided in the *Plan of Allocation*; (iii) find that this *Action* satisfies the applicable prerequisites for class action treatment under Federal Rule of Civil Procedure 23(a) and 23(b)(1); (iv) award attorney fees, costs, and expenses to *Class Counsel*, and incentive payments to the *Representative Plaintiff* and Jeremy Dickerson; and (v) decide such other matters as this *Settlement Agreement* contemplates and the *Court* may deem just and proper.

4.    <u>RELEASES</u>

4.1    <u>Releases of the *Released Parties*</u>.  Subject to Section 4.4 below and upon the *Effective Date,* the *Representative Plaintiff*, on behalf of himself, the *Plan*, and the *Settlement Class*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecuting all of the *Defendants* and *Solutia* and any *Person* that at any time served as a named or functional fiduciary or a trustee of the *Plan* (but excluding the *Independent Fiduciary*), as well as any *Representatives* or *Affiliates* of *Defendants* or *Solutia* or any such *Person* (including but not limited to their attorneys, agents, directors, officers, and employees), and the *Insurer* (the "*Released Parties*") from any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, and costs whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that have been, could have been, or could be brought by the *Representative Plaintiff* or Jeremy Dickerson, either individually or by or on behalf of the *Plan* and/or any member of the *Settlement Class*, or by any member of the *Settlement Class* and that arise out of or are related in any way to the acts, omissions, facts, matters, transactions, or occurrences that have been alleged or referred to in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*, including but not limited to claims based on breach of *ERISA* fiduciary duties to the *Representative Plaintiff*, to the *Settlement Class*, to Jeremy Dickerson and to the other participants and beneficiaries of the *Plan* in connection with: (a) the acquisition and direct or indirect holding of *Solutia* common stock and/or units of the *Solutia Stock Fund* by the *Plan*; (b) failure to provide complete and accurate information to the *Plan's* fiduciaries or the *Plan's* participants and beneficiaries regarding *Solutia*, *Solutia* common stock, and/or the *Solutia Stock Fund*; (c) failure to appoint, remove and/or adequately monitor the *Plan's* fiduciaries; (d) the acquisition, disposition, or retention of *Solutia* common stock and/or units of the *Solutia Stock Fund*; and (e) any claim that would be barred by principles of *res judicata* or collateral estoppel had the claims asserted in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim* been fully litigated and resulted in a final judgment or order (collectively, "*Released Claims*").

4.2    <u>Releases of the *Representative Plaintiff,* the *Plan,* the *Settlement Class*, Jeremy Dickerson, and *Class Counsel*</u>.  Subject to Section 4.4 below and upon the *Effective Date*, the *Defendants* and *Solutia* shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of the *Representative Plaintiff*, the *Plan*, the *Settlement Class*, Jeremy

9

Dickerson, and *Class Counsel* from any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees and costs, whether arising under local, state, or federal law, whether by statute, contract, common law, equity or otherwise, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that have been, could have been, or could be brought by the *Defendants* or *Solutia* and arise out of or are related in any way to the acts, omissions, facts, matters, transactions, or occurrences that have been alleged or referred to in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*.

4.3    <u>Release Under California Civil Code § 1542.</u>  The *Parties* intend and agree that the *Releases* granted in this Section 4 shall be effective as a bar to any and all currently unsuspected, unknown, or partially known claims within the scope of their express terms and provisions.  Accordingly, the *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, the *Defendants*, and *Solutia* hereby expressly waive any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common laws of any other State, Territory, or other jurisdiction.  Section 1542 reads in pertinent part:

> A general release does not extend to claims that the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, the *Defendants*, and *Solutia* each hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction was separately bargained for and that neither the *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, on the one hand, nor the *Defendants* and *Solutia*, on the other, would enter into this *Settlement Agreement* unless it included a broad release of unknown claims.  The *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, the *Defendants,* and *Solutia* each expressly agree that all release provisions in this *Settlement Agreement* shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected, and future claims, demands, and causes of action.  The *Representative Plaintiff* assumes for himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class* assumes for himself or herself, Jeremy Dickerson, individually, assumes for himself, the *Defendants* assume for themselves, and *Solutia* assumes for itself the risk of his, her, their or its respective subsequent discovery or understanding of any matter, fact, or law, that if now known or understood, would in any respect have affected his, her, their or its entering into this *Settlement Agreement*.

4.4    <u>Persons and Claims Not Released.</u>

4.4.1    The *Settlement* and dismissal of the *Action* shall not release, bar or waive any *ERISA* section 502(a)(1)(B) claim for vested benefits by any participant or beneficiary of the *Plan* where such claims are unrelated to any matter asserted in this *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*.

4.4.2    The releases set forth in Sections 4.1, 4.2, and 4.3 (the "*Releases*") are not intended to include the release of any rights or duties arising out of this *Settlement* or *Settlement Agreement*, including the express warranties and covenants in this *Settlement Agreement*.

5.    WITHDRAWAL OF BALANCE OF BANKRUPTCY CLAIM

5.1    Subject to the terms of Section 12 below, after the *Court* has entered the *Final Order*: (i) the balance of the *Bankruptcy Claim* (i.e., any amount in excess of $6,650,000), as well as any individual proof of claim related to the subject matter of the *Action*, the *Dickerson Litigation*, or the *Bankruptcy Claim* filed by a member of the *Settlement Class*, shall be deemed withdrawn with prejudice and disallowed; (ii) *Solutia*, on behalf of the estate, waives and releases any right, claim or cause of action to subordinate the *Bankruptcy Allowed Claim* under section 510(b) of the Bankruptcy Code or otherwise; and (iii) the *Final Order* shall be binding on all bankruptcy parties.

6.    COVENANTS

The *Parties* covenant and agree as follows:

6.1    Covenants Not to Sue.

6.1.1    The *Representative Plaintiff* on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, covenant and agree:  (i) not to file against any *Released Party* any additional claim based on, relating to or arising from any *Released Claim*, or refile the claim brought in this *Action*, the *Dickerson Litigation,* or the *Bankruptcy Claim*; (ii) not to file against any *Released Party* any claim released under Section 4.1 or 4.3; (iii) that the foregoing covenants and agreements shall be a complete defense to any such claims against any of the respective *Released Parties*; and (iv) that if any such claims are filed against any *Released Party*, the *Released Party* shall be entitled to reimbursement from the *Person* asserting such claims of any attorneys' fees or costs actually incurred in seeking dismissal of those claims.

6.1.2    *Defendants* and *Solutia* covenant and agree:  (i) not to file against any *Plaintiff*, *Class Counsel*, any *Defendant* or *Solutia* any claim released under Section 4.2 or Section 4.3; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claims against any of the respective *Plaintiffs*, *Class Counsel*, *Defendants* or *Solutia*.

6.2    Maximum Amount of Claim Against Estates.  The *Representative Plaintiff*, each member of the *Settlement Class*, and Jeremy Dickerson covenant and agree that the maximum amount of the *Bankruptcy Claim* shall be no more than $15 million (the "*Bankruptcy Claim Cap*") in the event that the *Settlement Agreement* terminates under Section 12.1; provided, however, that the *Bankruptcy Claim Cap* shall not be binding on the *Representative Plaintiff*, the *Settlement Class*, or Jeremy Dickerson in terms of the amount of any claim asserted against the

11

*Solutia Defendants* and *Trustee* in the event that the *Settlement Agreement* terminates under Section 12.1, and may not be used as evidence in such proceedings or argued to be an admission.

6.3    Taxation of *Escrow Account*.  The *Representative Plaintiff* on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, acknowledge that the *Released Parties* have no responsibility for any taxes due on funds once deposited in the *Escrow Account* or on any payments or fees that the *Representative Plaintiff*, Jeremy Dickerson or *Class Counsel* receive from the *Escrow Account*, should any be awarded pursuant to Section 13 hereof.  Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the *Escrow Account*.

6.4    Cooperation.

6.4.1    The *Parties* covenant and agree that they will reasonably cooperate with one another in obtaining the *Final Order*, substantially in the form annexed hereto as Exhibit 6.4.1, and will not do anything inconsistent with obtaining the *Final Order*.

6.4.2    *Solutia* and the *Defendants* covenant and agree that they will not enter into any agreement that restricts the application or disposition of the *Settlement Fund*.

6.4.3    *Solutia* and the *Solutia Defendants* shall reasonably cooperate with *Class Counsel* by timely responding to reasonable written requests for data in the custody or control of *Solutia* or the *Solutia Defendants* necessary for *Class Counsel* to implement or enforce a proposed *Plan of Allocation*.

6.4.4    The *Parties* shall comply with reasonable requests for information made by the *Independent Fiduciary* that are for the purpose of reviewing this *Settlement Agreement*.

6.4.5    If the *Court* deems it necessary for the *Defendants* and/or *Solutia* to supply information in their possession as part of the *Court's* review of the *Settlement Agreement*, the *Defendants* and *Solutia* agree to reasonably expedite provision of such information as directed by the *Court*.  If the *Representative Plaintiff* deems it necessary for the *Solutia Defendants* and/or *Solutia* to supply information in their possession in order to respond to any timely filed objection, the *Solutia Defendants* and *Solutia* agree to reasonably expedite provision of such information.  To the extent such information is in the possession of a third-party vendor (such as *Hewitt* or *Mercer*), *Solutia* agrees to use reasonable commercial efforts to obtain that information.  Notwithstanding any other provision herein, any costs incurred by *Solutia* in obtaining information under this Section 6.4.5 or any other information from a third-party vendor shall be paid by the *Escrow Account*.  Any disputes regarding requests for information by the *Representative Plaintiff* shall be referred to the *Court*, which shall decide any such issue if it cannot obtain the agreement of the *Parties*.

7.    REPRESENTATIONS AND WARRANTIES

7.1    Representations and Warranties of the *Representative Plaintiff* and Jeremy Dickerson.

7.1.1    The *Representative Plaintiff* on behalf of himself, the *Plan*, and the *Settlement*

*Class*, and Jeremy Dickerson, individually, represent and warrant that they have not assigned or otherwise transferred any interest in any *Released Claims*, and further covenant that they will not assign or otherwise transfer any interest in any *Released Claims*, except as authorized by Section 9.4.1; and

7.1.2    Pursuant to Sections 4 and 6, the *Representative Plaintiff* on behalf of himself, the *Plan*, and the *Settlement Class*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, represent and warrant that, upon the *Effective Date*, they shall have no surviving claim or cause of action against any of the *Released Parties* with respect to the *Released Claims*.

7.2    *Parties'* Representations and Warranties.  The *Parties*, by and through their *Representatives*, each represent and warrant:

7.2.1    That they are voluntarily entering into this *Settlement Agreement* as a result of arm's-length negotiations among their counsel, that in executing this *Settlement Agreement* they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this *Settlement Agreement* by any representations or statements pertaining to any of the foregoing matters by any *Party* or by any *Person* representing any *Party* to this *Settlement Agreement*.  Each of the *Parties* assumes the risk of mistake as to facts or law; and

7.2.2    That they or their *Representatives* have carefully read the contents of this *Settlement Agreement*, and this *Settlement Agreement* is signed freely by each *Person* executing this *Settlement Agreement* on behalf of each of the *Parties*.  Each of the *Parties* further represent and warrant to each other that he, she, it, or his/her/its *Representatives* have made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement* and all of the matters pertaining thereto, as he, she, or it deems necessary.

7.3    Signatories' Representations and Warranties.  Each individual executing this *Settlement Agreement* on behalf of any other *Person* does hereby personally represent and warrant to the other *Parties* that he or she has the authority to execute this *Settlement Agreement* on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

8.    NO ADMISSION OF LIABILITY OR WRONGDOING

The *Parties* understand and agree that this *Settlement Agreement* embodies a compromise and settlement of disputed claims, and that nothing in this *Settlement Agreement*, including the furnishing of consideration for this *Settlement Agreement*, shall be deemed to constitute any finding of fiduciary status under *ERISA* or wrongdoing by any of the *Defendants* or *Solutia*, or give rise to any inference of fiduciary status under *ERISA* or wrongdoing or admission of wrongdoing or liability in this or any other proceeding.  This *Settlement Agreement* and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual.  Moreover, the *Defendants* and *Solutia*

13

specifically deny any such liability or wrongdoing.  Neither the existence of nor the terms of this *Settlement Agreement* shall be offered or received in evidence in any action or proceeding for any purpose, except (i) in an action or proceeding arising under this *Settlement Agreement* or arising out of or relating to the *Preliminary Approval Order* or the *Final Order,* or (ii) in an action or proceeding where the *Releases* provided pursuant to this *Settlement Agreement* may serve as a bar to recovery.  The *Parties* further agree that the *Settlement Class* is for settlement purposes only and *Solutia* and the *Defendants* deny that such class would be appropriate absent settlement.

     9.     THE *SETTLEMENT FUND* AND DELIVERIES INTO THE *SETTLEMENT FUND*

     9.1     The *Settlement Fund*.

     9.1.1    No later than fourteen (14) days after the *Agreement Execution Date*, *Class Counsel* shall cause to establish at a financial institution to be approved by the *Court* in the *Preliminary Approval Order* the *Escrow Account,* which is an interest-bearing account and considered a common fund created as a result of the *Action*, the *Bankruptcy Claim*, and the *Dickerson Litigation*.  *Class Counsel* shall provide to *Solutia*, the *Solutia Defendants* and the *Insurer* (a) written notification of the date of establishment of the *Escrow Account*, (b) written notification of the following information regarding the *Escrow Agent* and the *Escrow Account*: bank name, bank address, ABA number, account number, account name, and taxpayer identification number, and (c) any additional information needed to deposit the *Cash Amount* and/or the *Bankruptcy Proceeds* into the *Escrow Account*.  *Class Counsel* shall direct the *Escrow Agent* to only make distributions from the *Escrow Account* in strict accordance with the *Settlement Agreement* and *Court* orders.  No other disbursements shall be authorized by *Class Counsel*.

     9.1.2    No later than seven (7) business days after the *Court's* entry of the *Preliminary Approval Order, Solutia,* the *Solutia Defendants and/or* the *Insurer* shall deposit the *Cash Amount* into the *Escrow Account.  Solutia,* the *Solutia Defendants* and/or the *Insurer* shall have no further funding obligation to the *Escrow Account* whatsoever after such funding occurs.  Under no circumstance shall *Solutia* be required to pay more than $250,000 toward the *Cash Amount*.  The *Trustee* shall have no funding obligation to the *Escrow Account*.  Nothing in this paragraph shall relieve *Solutia* of its duty to distribute shares of Solutia New Common Stock on account of the *Bankruptcy Allowed Claim*.

     9.1.3    If the *Effective Date* of the *Settlement* does not occur, or if the *Settlement* terminates or fails for any reason, the *Cash Amount*, together with the interest earned thereon, less any deductions set forth in this Section 9.1.3, shall be returned to *Solutia*, the *Solutia Defendants* and/or the *Insurer* promptly and the *Parties* will return to their respective positions in this *Action*, the *Bankruptcy Claim*, and the *Dickerson Litigation* as of the date on which this *Settlement Agreement* was signed.  The only deductions from the returned amount shall be fees associated with establishing and maintaining the *Escrow Account* as set forth in Section 9.1.5 below.  Except as provided with respect to *Solutia* in Sections 2.2.4, 3.2, 3.3, 9.2.1 and 10.1, the *Insurer*, *Solutia Defendants* and *Solutia* shall not be responsible for any payments, costs or fees under this paragraph or the *Settlement* beyond those obligations recited above to cause the *Cash*

*Amount* to be deposited in the *Escrow Account*.

9.1.4    The *Cash Amount* and the *Bankruptcy Proceeds*, together with interest earned thereon, shall constitute the "*Settlement Fund*."

9.1.5    The *Settlement Fund* shall be structured and managed to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 through 1.468B-5 of the U.S. Department of Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, and provide reports to *Class Counsel* for tax purposes.  It is intended that the *Settlement Fund* be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with an *ERISA*-qualified Plan.  The *Parties* shall not take a position in any filing or before any tax authority inconsistent with such treatment.  All taxes on the income of the *Settlement Fund* and tax-related expenses incurred in connection with the taxation of the *Settlement Fund* shall be the responsibility of *Plaintiffs* and shall be paid out of the *Settlement Fund*.  The *Defendants* and *Solutia* are not responsible for and shall have no liability for any taxes or related expenses or for any tax reporting requirements.  The *Parties* shall direct the *Escrow Agent* to pay from the *Escrow Account* the reasonable cost of administering the *Settlement Fund* without further order of the *Court*, which expenses shall include (i) expenses associated with the preparation and filing of all tax reports and tax returns required to be filed by the *Settlement Fund*; (ii) payment of any taxes owed by the *Settlement Fund*; (iii) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the *Settlement Fund*; and (iv) reasonable fees charged and expenses incurred by the *Escrow Agent* solely associated with administration of the *Escrow Account*.  The *Parties* may instruct the *Escrow Agent* to reserve any portion of the *Settlement Fund* for the purpose of satisfying future or contingent expenses or obligations, including expenses of *Escrow Account* administration or any disbursement provided under the terms of this *Settlement Agreement*.

9.1.6    The *Settlement Fund* shall not be considered "plan assets" as that term is defined by *ERISA* until such time and in such amounts as they are disbursed from the *Escrow Account* and deposited into the *Plan;* this provision notwithstanding, the *Settlement Fund* remains a "qualified settlement fund" pursuant to Section 9.1.5 above.

9.2    The *Cash Amount*.  In consideration of, and expressly in exchange for, all of the promises and agreements set forth in this *Settlement Agreement*, *Solutia*, the *Solutia Defendants* and/or the *Insurer* shall deposit the sum of $4,750,000 (the "*Cash Amount*") into the *Escrow Account* via wire transfer within the period provided in Section 9.1.2.  Under no circumstance shall *Solutia* be required to pay more than $250,000 toward the *Cash Amount*.

9.2.1    Under no circumstance shall *Solutia*, the *Solutia Defendants*, and/or the *Insurer* collectively be required to pay more than $4,750,000 to the *Settlement Fund*.  Nothing in this paragraph shall relieve *Solutia* of its duty to distribute shares of Solutia New Common Stock on account of the *Bankruptcy Allowed Claim*.

9.3    Sole Monetary Contribution.  Except as set forth in Section 2.2.4 above and as set forth in Section 10.1 below, the *Cash Amount* shall constitute a non-recourse settlement amount, and it shall be the full and sole monetary contribution made by or on behalf of *Solutia*, the

*Solutia Defendants* and/or *Insurer* collectively in connection with the *Settlement*.  There shall not be any monetary contribution by the *Trustee*.  *Solutia* shall be responsible for distribution of shares of Solutia New Common Stock on account of the *Bankruptcy Allowed Claim* pursuant to Section 9.4 below.

      9.4    The *Bankruptcy Proceeds*.

      9.4.1    Upon the *Effective Date*, the *Representative Plaintiff* shall have the authority to transfer or sell the *Bankruptcy Allowed Claim* or to liquidate any shares of Solutia New Common Stock delivered on account of the *Bankruptcy Allowed Claim*, with the proceeds of any such transfer or sale (the "*Bankruptcy Proceeds*") to be deposited into the *Escrow Account* and to become part of the *Settlement Fund*.  Nothing herein shall preclude the *Representative Plaintiff* from negotiating the terms of such transfer or sale prior to the *Effective Date* so long as such transfer or sale is conditioned upon the occurrence of the *Effective Date*.

      9.4.2    If the *Representative Plaintiff* does not transfer or sell the *Bankruptcy Allowed Claim* as authorized by Section 9.4.1, *Solutia* shall be responsible for depositing the requisite number of shares of Solutia New Common Stock on account of the *Bankruptcy Allowed Claim* pursuant to the *Plan of Reorganization* into the *Escrow Account* within 10 days of the *Effective Date* if a distribution of such shares has already been made pursuant to the *Plan of Reorganization* and thereafter as such shares become distributable.

      9.4.3    The proceeds from any transfer or sale of the *Bankruptcy Allowed Claim* and/or any shares of Solutia New Common Stock that become deliverable on account of the *Bankruptcy Allowed Claim* pursuant to the *Plan of Reorganization* shall constitute the "*Bankruptcy Proceeds*" as that term is used in this *Settlement Agreement*.

      10.    PAYMENTS FROM THE *SETTLEMENT FUND*

      10.1    Expenses of Providing Notice To *Settlement Class*.  Notwithstanding 9.2 and 9.3, *Solutia* shall (i) directly pay $9,500 into the *Escrow Account* no later than seven (7) business days after the *Court's* entry of the *Preliminary Approval Order* and (ii) directly pay the costs for the *Bankruptcy Notice* and for publication notice in one newspaper if publication notice is required by the *Court*.  *Solutia* shall not be responsible for any other costs incurred or related to providing notice under this *Settlement Agreement*.

      10.2    Costs of Settlement Administration.  The *Plan, Solutia, Hewitt, Mercer* and the *Claims Administrator* shall be entitled to payment from the *Escrow Account* for costs incurred or reasonably expected to be incurred in providing notice to the *Settlement Class* or in connection with the allocation and/or distribution of the *Net Proceeds* deposited into the *Plan* in accordance with this *Settlement Agreement*, including but not limited to the costs of implementing the *Plan of Allocation*, creating and maintaining new accounts pursuant to the *Plan of Allocation*, and mailing notices or other *Plan* materials to members of the *Settlement Class*.  The *Plan, Solutia, Hewitt* or *Mercer* shall not be entitled to recovery of the usual and customary administrative costs incurred over a similar time period in the administration of the *Plan* without giving effect to the *Settlement*.  In the event that the costs for which the *Plan, Solutia, Hewitt, Mercer* and the *Claims Administrator* shall be entitled to payment from the *Escrow Fund* have not yet been

incurred on the *Effective Date* (including but not limited to the annual costs of maintaining new accounts created pursuant to the *Plan of Allocation*), the *Plan*, *Solutia*, *Hewitt*, *Mercer* and the *Claims Administrator* shall estimate such anticipated costs in good faith and shall provide *Class Counsel* a reasonably detailed explanation of their nature and bases. Total reimbursement payments to the *Plan* or *Solutia* for time spent implementing the *Settlement* shall be based on a rate of $145 per hour and shall be capped for time spent by *Solutia* employees in the aggregate at $10,875.00. The *Escrow Account* shall promptly pay the *Plan*, *Solutia*, *Hewitt*, *Mercer* and the *Claims Administrator* all reasonable costs as described in this provision upon approval of the *Plan of Allocation* but, in any event, prior to the deposit of the *Settlement Fund* into the *Plan*.

10.3    Disbursements from the *Settlement Fund*. Except as provided in Section 12 below, no distribution of any part or all of the *Settlement Fund* shall be paid from the *Settlement Fund* prior to the *Effective Date* until the *Escrow Agent* has received (a) a joint notice signed by *Class Counsel* and by counsel for the *Defendants*, or (b) a court order directing that the *Settlement Fund* be disbursed and designating the appropriate recipient. When the conditions stated in (a) or (b) have been satisfied, *Class Counsel* may direct the *Escrow Agent* to disburse money from the *Settlement Fund* as provided in Section 13.2 and for purposes of the *Plan of Allocation* as provided below in Section 11.

11.    THE *PLAN OF ALLOCATION*

11.1    Preparation of the *Plan of Allocation*. The *Plan of Allocation*, as detailed herein, has been jointly prepared by *Class Counsel* and counsel for the *Solutia Defendants* and shall be submitted to the *Court* for approval in connection with the *Preliminary Motion*. The *Plan of Allocation* provides for the allocation of the "*Net Proceeds*" which shall consist of the *Settlement Fund* net of the disbursements called for in Sections 9.1.5, 10.2 and 13.2. *Solutia* agrees not to take any position, and is not required to take any position, on the *Plan of Allocation* unless ordered to do so by the *Court* (provided that nothing contained herein shall prohibit the *Independent Fiduciary* from taking a position with respect to the *Plan of Allocation*).

11.2    Allocation Formula.

11.2.1    The *Claims Administrator* shall calculate, for each member of the *Settlement Class* ("Class Member"), a "Net Loss" as follows: A + B - C - D, provided that if A + B - C - D is less than zero for a Class Member, such Class Member's Net Loss will be zero. The Net Loss formula shall be calculated where, for each Class Member's account in the *Plan*:

A = the dollar amount in each Class Member's account, if any, held in the *Solutia Stock Fund* on the first day of the class period (September 1, 1997).

B = the dollar amount, if any, of all transactions involving the *Solutia Stock Fund* during the class period (September 1, 1997 through and including August 31, 2005) that increased the value of the *Solutia Stock Fund* in each Class Member's account through Purchase, Transfer-In, Receive, Company Matching Contribution, or the like.

C = the dollar amount, if any, of all transactions involving the *Solutia*

17

*Stock Fund* during the class period (September 1, 1997 through and including August 31, 2005) that decreased the value of the *Solutia Stock Fund* in each Class Member's account through Sale, Transfer-Out, Deliver, Forfeiture, or the like.

D = the dollar amount in each Class Member's account, if any, held in the *Solutia Stock Fund* on the last day of the class period (August 31, 2005).

11.2.2  The *Claims Administrator* shall request and receive from *Solutia*, the *Solutia Defendants*, the *Plan*, *Hewitt* and/or *Mercer* such data regarding each Class Member's account as is reasonably necessary to perform the above calculations.  To the extent data is not available to the *Claims Administrator* to determine the account balances of the Class Members at any time during the class period, the *Claims Administrator* may perform the foregoing calculations using the best available data.

11.2.3  The Net Losses of the Class Members will be totaled to yield a loss to the *Plan* over the class period (the "Plan's Loss").

11.2.4  The *Claims Administrator* shall calculate for each Class Member his or her "Fractional Share" of the Plan's Loss by dividing each Class Member's Net Loss by the Plan's Loss.

11.2.5  The *Claims Administrator* shall then calculate for each Class Member his or her "Preliminary Dollar Recovery" by multiplying the Class Member's Fractional Share by the *Net Proceeds*.

11.2.6  The *Claims Administrator* shall identify all Class Members whose Preliminary Dollar Recovery is less than ten dollars ($10.00) ("De Minimis Claimants").

11.2.7  The *Claims Administrator* shall identify all Class Members who are *Defendants* or named fiduciaries of the *Plan* during the class period ("Excluded Claimants").

11.2.8  All De Minimis Claimants and Excluded Claimants shall receive an allocation from the *Net Proceeds* of zero, and the aggregate Preliminary Dollar Recovery that would have otherwise been allocable to such persons (the "Zero Amounts") shall be redistributed *pro rata* to all other Class Members ("Eligible Claimants").  The *Claims Administrator* shall then calculate a "Final Dollar Recovery" for each Eligible Claimant by adding the Eligible Claimant's *pro rata* share of the redistributed Zero Amounts to his or her Preliminary Dollar Recovery.

11.3    Disbursement of the *Net Proceeds* to the *Plan*.  As soon as practicable after the *Effective Date*, *Class Counsel* shall direct the *Escrow Agent* to disburse the *Net Proceeds* to the trusts of the *Plan* for distribution by the *Plan* in accordance with this *Plan of Allocation*.  *Class Counsel* and/or *Solutia* shall direct the *Plan* to distribute the *Net Proceeds* received by the *Plan* in accordance with this *Plan of Allocation*.  The *Parties* intend and agree that the deposits into the trusts of the *Plan* shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 (or any applicable proceeding or successive guidance promulgated by the Internal Revenue Service) for all purposes.

11.4    Excluded Recipients of the *Settlement Fund*.  No distribution of any part of the *Settlement Fund* may be made to any of the *Defendants* or to any named fiduciary of the *Plan* during the class period.

11.5    Deposit of Settlement Amounts.  Except for those *Plaintiffs* who took a final distribution from the *Plan*, the Plan Administrator of the *Plan* shall allocate to each Eligible Claimant's individual account an amount equal to his or her Final Dollar Recovery and invest such amount in accordance with the existing investment elections then in effect for each such Eligible Claimant.

11.6    Opening Individual Accounts for *Plaintiffs* Who Are Former Employees Who Had Withdrawn Their Account Balance.  With respect to *Plaintiffs* who took a distribution from the *Plan* and who will receive a Final Dollar Recovery, the Plan Administrator of the *Plan* shall restore the individual account in the *Plan* for each such *Plaintiff* for distribution of settlement proceeds only and invest each such *Plaintiff's* Final Dollar Recovery in accordance with the *Plan's* default investment option, pending distribution to the *Plaintiff*.  Any subsequent distributions to such *Plaintiffs* will be treated as qualified distributions from the *Plan* for purposes of *ERISA* and the Internal Revenue Code.

12.    TERMINATION OF THE *SETTLEMENT AGREEMENT*

12.    Termination.  Automatic termination of this *Settlement Agreement*, thereby making the *Settlement Agreement* null and void, will occur under the following circumstances:

12.1.1  If the *Court* declines to approve the *Settlement* and if such order declining approval has become *Final*, then this *Settlement Agreement* shall automatically terminate, and thereupon become null and void on the date that any such order becomes *Final*.

12.1.2  If the Second Circuit reverses the *Court's* order approving the *Settlement*, and if within thirty-one (31) business days after the date of any such ruling the *Parties* have not agreed in writing to proceed with all or part of the *Settlement Agreement* as modified by the *Court* or by the *Parties* then, provided that no appeal is then pending from such ruling, this *Settlement Agreement* shall automatically terminate and thereupon become null and void.

12.1.3  If the Supreme Court of the United States reverses a Second Circuit order approving the *Settlement*, and if within thirty-one (31) business days after the date of any such ruling the *Parties* have not agreed in writing to proceed with all or part of the *Settlement Agreement* as modified by the *Court* or by the *Parties*, then this *Settlement Agreement* shall automatically terminate and thereupon become null and void.

12.1.4  If the *Court* enters an order approving the *Settlement* but any court exercising proper appellate jurisdiction in the matter reverses, vacates or sets aside the *Court*'s approval order and such ruling, order or mandate of the reviewing court has become *Final*, this *Settlement Agreement* shall automatically terminate and thereupon become null and void.

12.1.5  If any or all of the conditions of Section 2 of this *Settlement Agreement* are not fully satisfied or waived by the *Parties* in accordance with their terms and on the timetables set forth in that Section, then this *Settlement Agreement* shall terminate and thereupon become null

and void.

12.2    Consequences of Termination of the *Settlement Agreement*.  If the *Settlement Agreement* is terminated and rendered null and void for any reason specified in Section 12.1, the following shall occur:

12.2.1   *Class Counsel* shall within ten (10) business days after the date of termination of the *Settlement Agreement* instruct the *Escrow Agent* to return to *Solutia*, the *Solutia Defendants* and/or the *Insurer* the amount contributed by them to the *Settlement Fund*, with all net income earned thereon, after deduction of the expenses charged to the *Settlement Fund* pursuant to Section 9.1.5 above.

12.2.2   The *Action*, the *Bankruptcy Claim*, and the *Dickerson Litigation* shall for all purposes with respect to the *Parties* revert to their status as of the *Agreement Execution Date*; provided, however, that Section 6.2 above shall remain binding and in full force and effect. *Solutia* shall maintain a reserve sufficient to satisfy the *Bankruptcy Claim Cap* as a General Unsecured Claim (as defined in the *Plan of Reorganization*) in accordance with the terms of Section VII of the *Plan of Reorganization*.

12.2.3   All provisions of this *Settlement Agreement* shall be null and void except as otherwise provided herein.  Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding arising under this *Settlement Agreement*.

13.    ATTORNEY FEES, COSTS AND EXPENSES

13.1    Motion for Award of Attorneys' Fees, Costs and Expenses.  Pursuant to the common fund doctrine and/or any applicable statutory fee provision, *Class Counsel* may apply to the *Court* for an award of attorneys' fees consisting of no more than 30% of the *Settlement Fund*, and reimbursement of costs and expenses, all of which shall be paid from the *Settlement Fund*. *Class Counsel* may also apply to the *Court* for incentive payments to the *Representative Plaintiff* and Jeremy Dickerson of $5,000 each, and such incentive payments, if any, shall be payable from the *Settlement Fund* to the extent awarded by the *Court*.  *Solutia* and the *Trustee* will not take any position on *Class Counsel's* motion for attorneys' fees, costs, reimbursement of expenses, and incentive payments.  The *Parties* acknowledge and agree that the *Defendants* and *Solutia* shall have no authority, control, or liability in connection with the attorneys' fees, costs, and expenses of *Class Counsel*.

13.2    Disbursement of Attorneys' Fees, Costs, and Expenses and Incentive Payments. Upon the later of (i) entry of an order by the *Court* awarding payment of attorneys' fees, costs, and expenses from the *Settlement Fund* and/or payment of incentive payments from the *Settlement Fund* and (ii) the *Effective Date, Class Counsel* may instruct the *Escrow Agent* in writing to disburse such payments from the *Settlement Fund*, which the *Escrow Agent* shall do within five (5) business days of receiving such direction.  If at the time of any disbursement from the *Settlement Fund* pursuant to Sections 10 and 11 there is a pending motion for attorneys' fees, costs, expenses, or incentive payments, there shall be reserved in the *Settlement Fund* an amount equal to the amount of the pending motion until such time as the *Court* shall rule upon such

motion and such ruling shall become *Final*. *Class Counsel* agree to refund any amount of disbursed attorneys' fees, costs, and expenses to the *Settlement Fund* that are later reversed by a final order of a court of competent jurisdiction.

14.    <u>MISCELLANEOUS PROVISIONS</u>

14.1    <u>Exhibits</u>.  All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

14.2    <u>Governing Law</u>.  This *Settlement Agreement* shall be governed by the laws of the State of New York, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

14.3    <u>Severability</u>.  With the exception of Section 6.2 (which shall apply under any circumstance following the *Agreement Execution Date*), the provisions of this *Settlement Agreement* are not severable.

14.4    <u>Amendment</u>.  Before entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties*.  Following entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed on behalf of all *Parties* and approved by the *Court*.

14.5    <u>Construction</u>.  None of the *Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

14.6    <u>Interpretation Principles</u>.  The following interpretation principles apply to this *Settlement Agreement*.

14.6.1    <u>Headings</u>.  The headings of this *Settlement Agreement* are for reference purposes only and do not affect in any way the meaning or interpretation of this *Settlement Agreement*.

14.6.2    <u>Singular and Plural</u>.  Definitions apply to the singular and plural forms of each term defined.

14.6.3    <u>Gender</u>.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

14.6.4    <u>References to a *Person*</u>.  References to a *Person* are also to the *Person's* permitted successors and assigns.

14.6.5    <u>Terms of Inclusion</u>.  Whenever the words "include," "includes" or "including" are used in this *Settlement Agreement*, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.7    <u>Further Assurances</u>.  Each of the *Parties* agrees, without further consideration and as part of finalizing the *Settlement* hereunder, that they will in good faith execute and deliver

such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement*.

14.8    Notices.  Any notice, demand or other communication under this *Settlement Agreement* (other than the *Class Notice*, *Summary Notice* or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the recipients set forth below and personally delivered, sent by mail, email, facsimile, or delivered by reputable express overnight courier.

IF TO *REPRESENTATIVE PLAINTIFF* OR JEREMY DICKERSON:

SARRAF GENTILE LLP
Ronen Sarraf
11 Hanover Square
New York, NY 10005

STEMBER FEINSTEIN DOYLE & PAYNE, LLC
Ellen M. Doyle
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219-1639

IF TO *SOLUTIA*:

KIRKLAND & ELLIS LLP
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022

IF TO THE *SOLUTIA DEFENDANTS*:

O'MELVENY & MYERS LLP
Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

IF TO THE *TRUSTEE*:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Michael J. Dell
1177 Avenue of the Americas
New York, NY 10036

Any *Party* may change the address at which it is to receive notice by written notice delivered to the other *Parties* in the manner described above.

22

14.9    <u>Entire Agreement</u>.  With the sole exception of the stipulation between *Solutia* and the *Trustee* related to the *Trustee's* cure claim in the *Chapter 11 Proceeding*, this *Settlement Agreement* contains the entire agreement among the *Parties* relating to this *Settlement*.  It specifically supersedes any settlement terms or settlement agreements that were previously agreed upon orally or in writing among the *Parties*.  To the extent the terms of any ancillary or related agreements (including the Escrow Agreement) conflict with the terms of this *Settlement Agreement*, the terms of the *Settlement Agreement* shall govern and control in all respects.

14.10    <u>Counterparts</u>.  This *Settlement Agreement* may be executed by exchange of faxed or electronically transmitted (.pdf) executed signature pages, and any signature transmitted by facsimile or .pdf for the purpose of executing this *Settlement Agreement* shall be deemed an original signature for purposes of this *Settlement Agreement*.  This *Settlement Agreement* may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

14.11    <u>Binding Effect</u>.  This *Settlement Agreement* binds and inures to the benefit of the *Parties*, their assigns, heirs, administrators, executors and successors.

14.12    <u>Agreement Execution Date</u>.  The date on which the final signature is affixed below shall be the *Agreement Execution Date*.

14.13    <u>Continuing Jurisdiction</u>.  The administration and consummation of the *Settlement Agreement* as embodied herein shall be under the authority of the *Court*, and the *Court* shall retain jurisdiction for the purpose of entering orders, providing for awards of attorneys' fees and expenses to *Class Counsel* and enforcing the terms of this *Settlement Agreement*.

IN WITNESS WHEREOF, the *Parties* have executed this *Settlement Agreement* on the dates set forth below.

DATED: _May 19, 2008_

SARRAF GENTILE LLP

_Ronen Sarraf_
Ronen Sarraf
Joseph Gentile
11 Hanover Square
New York, NY 10005
(212) 868-3610

**STEMBER FEINSTEIN DOYLE**
**& PAYNE, LLC**
Ellen M. Doyle
Joel R. Hurt
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219-1639
(412) 281-8400

**Counsel for Roger Reiff, the**
**Settlement Class, and Jeremy**
**Dickerson**

**LOWENSTEIN SANDLER PC**
Michael S. Etkin
Ira M. Levee
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700
          and
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500

**Special Bankruptcy Counsel for**
**the Settlement Class**

24

DATED: 5/19/2008

**KIRKLAND & ELLIS LLP**

Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**

DATED: _____

**O'MELVENY & MYERS LLP**

Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia
Defendants**

DATED: _____

**KRAMER LEVIN
 NAFTALIS & FRANKEL LLP**

Michael Dell
1177 Avenue of the Americas
New York, NY 10036

**Counsel for The Northern Trust
Company**

25

DATED: _____

**KIRKLAND & ELLIS LLP**

_____

Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**

DATED: *May 20, 2008*

**O'MELVENY & MYERS LLP**

_____

Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia
Defendants**

DATED: _____

**KRAMER LEVIN
  NAFTALIS & FRANKEL LLP**

_____

Michael Dell
1177 Avenue of the Americas
New York, NY 10036

**Counsel for The Northern Trust
Company**

25

DATED: _____

**KIRKLAND & ELLIS LLP**

_____

Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**

DATED: _____

**O'MELVENY & MYERS LLP**

_____

Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia
Defendants**

DATED: May 19, 2008

**KRAMER LEVIN
  NAFTALIS & FRANKEL LLP**

_____
Michael Dell
1177 Avenue of the Americas
New York, NY 10036

**Counsel for The Northern Trust
Company**

*EXHIBITS TO THE SETTLEMENT AGREEMENT*

Exhibits

1.20     *Escrow Agreement*

3.1     *Preliminary Approval Order* (including: *Class Notice* (exhibit A); *Summary Notice* (exhibit B); and *Bankruptcy Notice* (exhibit C))

6.4.1     *Final Order*

# Global Settlement Agreement
# Exhibit 1.20 (Escrow Agreement)

## ESCROW AGENCY AGREEMENT

This Escrow Agency Agreement ("Escrow Agreement") is entered into in connection with the pending settlement in the actions: *Dickerson v. Feldman*, No. 04-7935 (SDNY), app'd 06-1616 (2d Cir.), *Reiff v. Metz*, No. 07-6011 (SDNY) and *In re Solutia Inc.*, 03-17949 (Bkr. SDNY) (collectively referred to as the "Litigation").

I.     **Recitals**

    A.     The parties to this Escrow Agreement are as follows:

        (1)     Roger Reiff, individually and on behalf of the Settlement Class, and Jeremy Dickerson, individually (collectively, "Claimants"), represented by the undersigned Class Counsel;

        (2)     Solutia, represented by its undersigned counsel;

        (3)     The Solutia Defendants, represented by their undersigned counsel;

        (4)     Gilardi & Co. LLC ("Gilardi") as escrow agent (the "Escrow Agent").

    B.     Claimants, on the one hand, and Solutia, the Solutia Defendants and Northern Trust, on the other hand, have agreed to a settlement (the "Settlement") of the Litigation to be memorialized in the Global Settlement Agreement ("Settlement Agreement"). Capitalized terms used but not otherwise defined herein shall have the meanings given to the terms in the Settlement Agreement. To the extent the terms of this Escrow Agreement conflict with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern and control in all respects.

    C.     The Settlement Agreement provides for, among other things, the establishment of a Settlement Fund which includes $4,750,00.00 to be funded by Solutia, the Solutia Defendants and/or the Insurers (collectively, the "Payors"), which amount shall be disbursed in accordance with the terms of this Escrow Agreement and the Settlement Agreement. The Payors agree to deposit $4,750,000 into an escrow account pursuant to the terms of the Settlement Agreement.

    D.     Pending the Effective Date of the Settlement, the parties hereto have entered into this Escrow Agreement to carry out and effectuate the Settlement.

Now, therefore, in consideration of the foregoing and the mutual covenants and considerations contained herein, the parties agree as follows:

II.     **Appointment of Escrow Agent and Deposits into Escrow**

A.    The parties hereto hereby appoint the Escrow Agent to act as escrow agent hereunder and the Escrow Agent hereby accepts such appointment for the purpose of receiving, safeguarding and disbursing the Escrow Fund (as defined below) in accordance with the terms and conditions set forth herein.

B.    On or before 7 business days after entry of the Preliminary Approval Order, the Payors shall deposit with the Escrow Agent by wire transfer of immediately available funds the amount of $4,750,000.00 in accordance with the wire transfer instructions listed below and the terms of the Settlement Agreement. Payors shall have no funding or payment obligation to the Escrow Fund whatsoever after such funding occurs. The Escrow Agent agrees to further deposit such amounts into an interest bearing account at Bank of the West in the name of the "*Solutia ERISA Litigation Settlement Fund*" (the "Escrow Account").

Bank of the West
Business Services
201 N. Civic Dr., Suite 1900
Walnut Creek, CA 94596

ABA Number: 121100782
Account Number: 756-030532
Account Name:  Solutia ERISA Litigation Settlement Fund
Taxpayer Identification Number: 26-2479004

C.    The proceeds from any transfer or sale of the *Bankruptcy Allowed Claim* and/or any shares that become deliverable on account of the *Bankruptcy Allowed Claim* (the "New Solutia Common Stock") pursuant to the *Plan of Reorganization* shall be deposited with the Escrow Agent, who shall then deposit such amounts into the Escrow Account or maintain the New Solutia Common Stock, as the case may be.

## III.    Interest and Investments

A.    As promptly as possible upon receipt of available funds (or the next business day if funds become available after 12:00 noon), the Escrow Agent shall cause the funds deposited into the Escrow Account to be invested in either short term United States Agency or Treasury securities backed by the full faith and credit of the United States Government ("Debt Obligation") or in money market funds whose portfolio is composed of short-term United States Agency of Treasury securities (which are backed by the full faith and credit of the United States Government), and shall reinvest the proceeds as they mature in similar instruments and/or funds at their then current market rates. However, if bank fees exceed interest to be earned on investments, the Escrow Agent shall not invest the Escrow Fund. The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement. The Escrow Agent shall have no liability for any loss sustained as a result of any investment or as a result of any liquidation of any

investment prior to its maturity.  The Escrow Agent shall not invest any portion of the Escrow Fund in any Debt Obligation having a maturity in excess of thirty (30) days.

B.      The Escrow Agent may sell or present for redemption any investment described in Paragraph III (A) (other than any New Solutia Shares which may be sold only pursuant to the terms of the Settlement Agreement) above whenever it shall be necessary in order to provide funds to meet any payment required pursuant to this Escrow Agreement, and the Escrow Agent shall not be liable or responsible for any loss resulting therefrom.

## IV.  Taxes and Related Matters

A.      The parties to this Escrow Agreement agree to treat the Escrow Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. Section 1.468B-1.  In addition, the parties to this Escrow Agreement shall jointly and timely make such elections as necessary or advisable to carry out the "relation-back election" (as defined in Treas. Reg. Section 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and to cause the appropriate filing to occur.  Notwithstanding anything to the contrary in this Escrow Agreement, the parties agree and acknowledge that, for purposes of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and the Treasury Regulations promulgated thereunder, only the Payors shall be treated as a "transferror" (within the meaning of such term under Treasury Regulations Section 1.468B-1(d)(1)) with respect to the Escrow Fund.

B.      For the purposes of Section 468B of the Code and the Treasury Regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Escrow Fund (including without limitation the returns described in Treas. Reg. Section 1.468B-2(k)).  Such returns (as well as the election described in Paragraph IV(A) of this Escrow Agreement) shall be consistent with this Paragraph IV(B) and, in all events, shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned on the Escrow Fund shall be paid out of the Escrow Fund as provided in Paragraph IV(C)) hereof.

C.      All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Escrow Fund, including any taxes or tax detriments that may be imposed on the parties to this Escrow Agreement or their respective counsel, with respect to any income earned by the Escrow Fund for any period during which the Escrow Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes") and (ii) all expenses and

costs incurred in connection with the operation and implementation of this Section IV (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses related to filing (or failing to file) any necessary returns) ("Tax Expenses") shall be paid solely out of the Escrow Fund; in all events, no party to this Escrow Agreement, nor their respective counsel, except for the Escrow Agent, shall have liability or responsibility for the payment of Taxes from the Escrow Fund and/or Tax Expenses from the Escrow Fund, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority. Plaintiff, Defendants and Solutia are not responsible for Taxes or Tax Expenses, or any amount that may be required to be withheld under Treasury Regulation Section 1.468B-2(l)(2), or any amounts that may be required to be withheld under Treasury Regulation Section 1.468B-2(1)(2), or for any reporting requirements that may relate thereto. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section IV.

## V.    Distribution of the Escrow Fund

A.    Until the Effective Date, the Escrow Agent shall only make disbursements from the Escrow Fund in accordance with a written direction from Class Counsel on behalf of Claimants and counsel for Defendants and Solutia, executed and delivered to the Escrow Agent.

B.    Notwithstanding Paragraph V(A), immediately upon entry of the Preliminary Approval Order, the Escrow Agent, upon authorization from Class Counsel on behalf of Claimants, may disburse monies allocable to the payment of expenses incurred by the Claims Administrator.

C.    In the event that the Effective Date does not occur, or the Order allowing the payment of attorney's fees and expenses is reversed or modified on appeal, and in the event that fees and expenses have been paid to any extent, Class Counsel shall within thirty (30) days from receiving notice from Payors' Counsel, or from the Court of appropriate jurisdiction, refund to the Settlement Fund all of the fees, expenses and costs previously paid to them from the Settlement Fund plus interest thereon at the same rate earned on the Settlement Fund.

## VI.    Termination of the Escrow Agreement

A.    In the event that the Effective Date does not occur, or that the Settlement Agreement is terminated, then upon receipt of joint written direction from all parties to this Escrow Agreement or their counsel, or notice from the Court, the Escrow Agent shall, within ten (10) days and without the necessity of any Court order, refund to the Payors the entire balance of the Escrow Fund (including all interest accrued or earned thereon), less any nonrefundable expenses paid from the Escrow Fund in accordance with Sections 9.1.3 and 9.1.5 of the Settlement

Agreement.  In the event that the accrued interest and earnings of the Escrow Fund are not sufficient to cover the nonrefundable expenses paid from the Escrow Fund in accordance with Sections 9.1.3 and 9.1.5 of the Settlement Agreement (not to include any fees of counsel), those expenses shall be deducted by the Escrow Agent from the amounts returned to the Payors, provided that such deduction shall not exceed $100,000.

## VII.   **Miscellaneous Provisions**

A.    Immediately following the Effective Date, upon notice from Class Counsel, on behalf of Claimants, consistent with the terms of the Settlement Agreement, the Escrow Agreement shall be revised to remove Payors from the Escrow Agreement and the Payors shall no longer be signatories to the Escrow Agreement.  At that time, the Escrow Agent's reporting obligations shall be solely to the Claimants.

B.    The Escrow Agent shall file with Class Counsel, with copies mailed to the Payors, within five business days after the receipt of each periodic (monthly) account statement until the termination of this Escrow Agreement (and within five business days of the receipt of any periodic statement received after the Termination of this Escrow Agreement), a statement of receipts and disbursements, and property on hand pertaining to the Escrow Fund.

C.    The Escrow Agent's acceptance and administration of the Escrow Fund shall constitute its submission to the jurisdiction of the Court in the Litigation for the purposes of carrying out and enforcement of this Escrow Agreement.

D.    The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement.  The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties.  The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document.  The Escrow Agent shall have no duty to solicit any payments which may be due it hereunder.  The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's negligence, gross negligence or willful misconduct was the primary cause of any loss to the Plaintiff and/or Defendants. The Escrow Agent may consult with counsel.  In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in writing by

all of the other parties hereto or by a final order or judgment of a court of competent jurisdiction. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

E.    No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, equipment or transmission failure, or other causes reasonably beyond its control.

F.    No rights or responsibilities under this Escrow Agreement may be assigned or delegated by the Escrow Agent without prior written approval of the parties hereto; provided, however, that if no approval can be obtained after good faith effort, then upon thirty (30) days written notice by the Escrow Agent to the parties hereto, the Escrow Agent shall have the right to apply to the Court for instructions.

G.    All funds held by the Escrow Agent by virtue of this Escrow Agreement shall be deemed and considered to be held in *custodia legis* of the Court until such time as the Effective Date of the Settlement has occurred and the Escrow Funds have been transferred to the Claims Administrator, or the Escrow Funds are returned to the parties hereto consistent with the terms of this Escrow Agreement.

H.    This Escrow Agreement shall be governed by and interpreted according to the laws of the State of New York.

I.    This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed an original and all of which together shall constitute one and the same Escrow Agreement.

J.    This Escrow Agreement is deemed to have been drafted by all parties hereto and no language contained herein shall be construed against any party hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed by them or their duly authorized counsel as of the last date of execution below.

DATED: _May 19, 2008_          **SARRAF GENTILE LLP**

Ronen Sarraf
Joseph Gentile
11 Hanover Square
New York, NY 10005
(212) 868-3610

6

**STEMBER FEINSTEIN DOYLE & PAYNE, LLC**
Ellen M. Doyle
Joel Hurt
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219-1639
(412) 281-8400

**Counsel for Claimants**

DATED: 5/19/2008

**KIRKLAND & ELLIS LLP**

Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**

DATED: _____

**O'MELVENY & MYERS LLP**

Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia Defendants**

DATED: _____

**GILARDI & CO. LLC**

3301 Kerner Boulevard
San Rafael, CA 94901
(415) 461-0410

**Escrow Agent**

**STEMBER FEINSTEIN DOYLE & PAYNE, LLC**
Ellen M. Doyle
Joel Hurt
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219-1639
(412) 281-8400

**Counsel for Claimants**

DATED: _____        **KIRKLAND & ELLIS LLP**

_____

Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**

DATED: _____        **O'MELVENY & MYERS LLP**

_____

Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia Defendants**

DATED: _____        GILARDI & CO. LLC

_____

3301 Kerner Boulevard
San Rafael, CA 94901
(415) 461-0410

**Escrow Agent**

7

**STEMBER FEINSTEIN DOYLE &
PAYNE, LLC**
Ellen M. Doyle
Joel Hurt
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219-1639
(412) 281-8400

**Counsel for Claimants**

DATED: _____    **KIRKLAND & ELLIS LLP**

_____
Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**

DATED: _____    **O'MELVENY & MYERS LLP**

_____
Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia Defendants**

DATED: ___*5/29/08*___    GILARDI & CO. LLC

3301 Kerner Boulevard
San Rafael, CA 94901
(415) 461-0410

**Escrow Agent**

7

# Global Settlement Agreement

# Exhibit 3.1 (Preliminary Approval Order)

**FINDINGS AND ORDER**
**PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT**

WHEREAS, this litigation involves claims for alleged violations of the Employee

Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("*ERISA*"),

with respect to the Solutia Inc. Savings and Investment Plan (the "*Plan*");[1]

WHEREAS, presented to the *Court* for preliminary approval is a settlement of the claims

as against the *Defendants* in this *Court* as well as the *Bankruptcy Claim* asserted against *Solutia*

in the *Chapter 11 Proceeding*.  The terms of the *Settlement* are set out in a Global Settlement

Agreement (the "*Settlement Agreement*") dated _____ ___, 2008, and executed by counsel

for all the *Parties*; and,

WHEREAS, the *Court* preliminarily considered the *Settlement* to determine, among other

things, whether the *Settlement* is sufficient to warrant the issuance of notice to members of the

*Settlement Class* and whether to preliminarily certify the *Settlement Class*.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.      **Withdrawal of Reference.**  The *Court* hereby withdraws the reference of the

*Bankruptcy Claim* pursuant to 28 U.S.C. §157(d), which claim is based upon the proofs of claim

filed by (i) Jeremy Dickerson on October 19, 2004 (Claim No. 854), and thereafter amended on

September 1, 2005 (Claim No. 14735), and then again on June 21, 2007 (Claim No. 14823), and

(ii) Roger Reiff on November 23, 2004 (Claim No. 6701) and thereafter amended on June 21,

2007 (Claim No. 14824) as well as the objections to those claims filed by *Solutia* in the *Chapter*

*11 Proceeding*, solely for the purpose of effectuating the *Settlement Agreement*.  The withdrawal

---

[1] Capitalized and italicized terms not otherwise defined in this Order shall have the same meaning as ascribed to them in the *Settlement Agreement*.

of the reference is conditioned in all respects on the occurrence of the *Effective Date* of the *Settlement*.

2.      **Class Findings.**  The *Court* preliminarily finds that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and any other applicable law have been met as to the *Settlement Class*:

> A.      The *Settlement Class* is defined as:
>
> All persons who were participants in the Solutia Inc. Savings and Investment Plan (the "*Plan*") who held Solutia stock in their *Plan* account at any time during the period from September 1, 1997 through and including August 31, 2005, and their beneficiaries, successors, assigns, executors, administrators, estates, heirs and legal representatives.  Excluded from the *Settlement Class* are *Defendants* and any named fiduciary of the *Plan*, members of their immediate families, and their legal representatives, heirs, successors, or assigns unless such individual is a member of the *Settlement Class* in his or her own right.

> B.      The *Court* preliminarily finds that the *Settlement Class* is ascertainable from records kept with respect to the *Plan* and from other objective criteria and the *Settlement Class*, consisting of more than seven thousand members, is so numerous that joining all of its members before the *Court* would be impracticable.  Rule 23(a)(1) is satisfied.

> C.      The *Court* preliminarily finds that there are one or more questions of fact and/or law common to the *Settlement Class*, including whether the *Defendants* breached their fiduciary duties with respect to investments in the *Stock Fund*; whether *Defendants* breached their fiduciary duties by failing to provide complete and accurate information to participants; and whether the *Plan* suffered losses.  Rule 23(a)(2) is satisfied.

> D.      The Court preliminarily finds that the claims of Roger Reiff (the "*Representative Plaintiff*") are typical of the claims of the *Settlement Class*.  Rule 23(a)(3) is satisfied.

E.    The Court preliminarily finds that the *Representative Plaintiff* will fairly and adequately protect the interests of the *Settlement Class* in that (i) the interests of the *Representative Plaintiff* and the nature of his alleged claims are consistent with those of the members of the *Settlement Class*; (ii) there appear to be no conflicts between the *Representative Plaintiff* and the *Settlement Class;* and (iii) the *Representative Plaintiff* has retained qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated *ERISA* class actions.  Rule 23(a)(4) is satisfied.

F.    The Court preliminarily finds that Rule 23(b)(1) is satisfied because the prosecution of separate actions by individual members of the *Settlement Class* would create a risk of (i) inconsistent or varying adjudications as to individual class members, that would establish incompatible standards of conduct for the parties opposing the claims asserted in the *Action*; or (ii) adjudications as to individual class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede those persons' ability to protect their interests.

G.    The Court preliminarily finds that *Class Counsel* is suitable and appropriate for appointment to represent the *Settlement Class*, in that *Class Counsel* has done extensive work identifying and investigating potential claims in the action, and has vigorously and ably represented the interests of the *Settlement Class* throughout this litigation; *Class Counsel* is experienced in handling class actions, other complex litigation and claims of the type asserted in the *Action*; *Class Counsel* is knowledgeable of the applicable law; and *Class Counsel* has committed the necessary resources to represent the *Settlement Class*.  Rule 23(g) is satisfied.

3.    **Class Certification.**  Based on the findings set forth above, the *Court* PRELIMINARILY CERTIFIES the *Settlement Class* for settlement purposes only under Fed. R.

Civ. P. 23(b)(1) and 23(e) in this litigation.  The *Court* appoints Roger Reiff  as the Class

Representative for the *Settlement Class,* and Sarraf Gentile LLP and Stember Feinstein Doyle &

Payne, LLC as counsel for the *Settlement Class.*

       4.       **Preliminary Findings Regarding Proposed Settlement.**  The *Settlement* is

hereby PRELIMINARILY APPROVED.  The *Court* preliminarily finds that the proposed

*Settlement* (a) appears to be fair, reasonable and adequate; (b) appears to be the product of

serious, informed, non-collusive negotiations; (c) has no obvious deficiencies; (d) does not

appear to improperly grant preferential treatment to class representatives or segments of the

class; (e) appears to fall within the range of possible approval; and (f) warrants providing notice

to *Settlement Class* members of the *Settlement*, the opportunity to object, and the scheduling of a

formal fairness hearing to consider the *Settlement* and any objections to it.

       5.       **Fairness Hearing.**  A fairness hearing is hereby scheduled for _____

___, 2008, at __:00 __.m. (the "*Fairness Hearing*") to consider the *Settlement* and any

objections thereto, and to determine, among other things:

- Whether the *Settlement Class* should be finally certified pursuant to Fed. R.
  Civ. P. 23(a) and (b)(1) and Bankruptcy Rule 7023;

- Whether the *Settlement* should be approved as fair, adequate, reasonable, and
  consistent with the public interest;

- Whether the litigation should be dismissed with prejudice as to the *Defendants*
  and *Solutia* pursuant to the terms of the *Settlement;*

- Whether the *Class Notice*, *Summary Notice* and notice methodology
  implemented pursuant to the *Settlement Agreement* (a) constituted the best
  practicable notice; (b) constituted notice that was reasonably calculated, under

the circumstances, to apprise members of the *Settlement Class* of the pendency of the litigation, their right to object to the *Settlement,* and their right to appear at the *Fairness Hearing*; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to notice; and(d) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law;

- Whether *Class Counsel* adequately represented the *Settlement Class* for purposes of entering into and implementing the *Settlement Agreement*;

- Whether the *Plan of Allocation* should be approved;

- Whether *Class Counsel*'s petition for attorneys' fees and reimbursement of costs and expenses should be approved;

- Whether the application for case contribution awards for Roger Reiff and Jeremy Dickerson should be approved;

- Whether the *Settlement* as it relates to the *Bankruptcy Claim* should be approved pursuant to Bankruptcy Rules 7023 and 9019 and 11 U.S.C. §363; and,

- To consider such other matters as the *Settlement Agreement* contemplates or the Court may deem just and proper.

6.   **Class Notice.**  The *Court* hereby APPROVES the proposed form of *Class Notice* and *Summary Notice* submitted by the *Parties,* which are appended hereto as Exhibits A and B. The *Court* finds that the proposed *Class Notice* and *Summary Notice* fairly and adequately:

(a)   describe the terms and effect of the *Settlement Agreement* and of the *Settlement;*

5

(b)      notify the *Settlement Class* concerning the proposed *Plan of Allocation;*

(c)      notify the *Settlement Class* that *Class Counsel* will seek (i) payments from the *Settlement Fund* to Roger Reiff and Jeremy Dickerson, in an amount not to exceed $5,000 each, relating to their contributions to the *Settlement Class* and (ii) attorneys' fees of *Class Counsel* that do not exceed 30% of the *Settlement Fund*, plus reimbursement of costs and expenses incurred in connection with the prosecution of the *Action*, not to exceed $250,000.00;

(d)      give notice to the *Settlement Class* of the time and place of the *Fairness Hearing;* and

(e)      describe how the recipients of the *Class Notice* may object to any of the relief requested.  The *Parties* have proposed the following manner of communicating the notice to members of the *Settlement Class,* and the *Court* finds that such proposed manner is the best notice practicable under the circumstances, and directs that *Class Counsel* shall:

- By no later than 60 days[2] before the *Fairness Hearing,* cause the *Class Notice,* with such non-substantive modifications thereto as may be agreed upon by the *Parties* and presented to the *Court,* to be mailed, by first-class mail, postage prepaid, to the last known address of each *Person* within the *Settlement Class* who can be identified by reasonable effort.  *Solutia* and/or the *Solutia Defendants* shall provide *Class Counsel* with the names of last known addresses of the members of the *Settlement Class* to the extent such information is within *Solutia's* and the *Solutia Defendants'* custody or control.

- By no later than 60 days before the *Fairness Hearing,* cause the *Class Notice* to be published on the website identified in the *Class Notice.*

- At or before the *Fairness Hearing, Class Counsel* (and *Solutia* with respect to the *Bankruptcy Notice*) shall file with the *Court* a proof of timely compliance with the foregoing requirements.

7.      **Bankruptcy Notice.**  The Court hereby APPROVES the proposed form of the *Bankruptcy Notice*, which is appended hereto as Exhibit C.  The Court finds that serving the

---

[2] All references to days or dates herein are to calendar days, rather than business or Court days.  Should a date fall on a weekend or holiday, the deadline shall be the following business day.

proposed *Bankruptcy Notice* with *Solutia's* motion for approval of the *Settlement* provides

sufficient notice of the motion, the time and place of the *Fairness Hearing*, and the appropriate

procedures for objecting to any of the relief requested.

        8.      **Objections to Settlement.**  Any member of the *Settlement Class* who wishes to

object to certification of the *Settlement Class*, to the fairness, reasonableness or adequacy of the

*Settlement,* to the *Plan of Allocation*, to any term of the *Settlement Agreement,* to *Class*

*Counsel*'s petition for attorneys' fees and reimbursement of costs and expenses, or to any request

for case contribution awards to Roger Reiff and Jeremy Dickerson, may file an objection, to

those aspects of the *Settlement* relevant to them.  An objector must file with the *Court* a

statement of his, her or its objection(s), and such written objection(s) must contain the following

information: (i) a statement certifying that the objector is a member of the Class, (ii) the

objector's name, address, telephone number and, if applicable, the name, address and telephone

number of his, her or its attorney, (iii) a detailed statement of the specific objections to any

matter before the Court and all the reasons for the objection, (iv) all of the documents the

objector wishes the Court to consider, (v) the names, addresses, and telephone numbers of any

witness the objector may call to testify, and (vi) any exhibits that the objector intends to

introduce into evidence at the Settlement Fairness Hearing.  The objector must also mail the

objection and all supporting law and/or evidence to *Class Counsel* and counsel for *Solutia* and

the *Defendants,* who shall be responsible for promptly serving all papers received from objectors

upon all counsel who are entitled to receive notice pursuant to the *Settlement Agreement.*  The

addresses for filing objections with the *Court* and for service upon the *Parties* are as follows:

| **Court** | **Class Counsel** | **Counsel for Solutia, Inc.** |
|---|---|---|
| Clerk, USDC | SARRAF GENTILE LLP | KIRKLAND & ELLIS LLP |
| Southern District of New | Ronen Sarraf | Colin M. Adams |
| York | 11 Hanover Square | Citigroup Center |
| 500 Pearl Street | New York, NY 10005 | 153 East 53rd Street |

New York, NY 10007    (212) 868-3610      New York, NY 10022

|  |  |  |
|---|---|---|
| | **STEMBER FEINSTEIN DOYLE & PAYNE, LLC** | **Counsel for the Solutia Defendants** |
| | Ellen M. Doyle | O'MELVENY & MYERS LLP |
| | 1705 Allegheny Building | Karen M. Wahle |
| | 429 Forbes Avenue | 1625 Eye Street, NW |
| | Pittsburgh, PA 15219-1639 | Washington, DC 20006-4001 |
| | (412) 281-8400 | |

**STEMBER FEINSTEIN
DOYLE & PAYNE, LLC**
Ellen M. Doyle
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219-1639
(412) 281-8400

**Counsel for the Solutia Defendants**
O'MELVENY & MYERS LLP
Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Northern Trust Company**
KRAMER LEVIN NAFTALIS & FRANKEL LLP
Michael Dell
1177 Avenue of the Americas
New York, NY 10036

The objector or his, her or its counsel (if any) must effect service of the objection on counsel listed above and file it with the *Court* by no later than twenty-one (21) days before the date of the *Fairness Hearing*. If an objector hires an attorney to represent him, her or it for the purposes of making such objection pursuant to this paragraph, the attorney must both effect service of a notice of appearance on counsel listed above and file it with the *Court* by no later than twenty-one (21) days before the date of the *Fairness Hearing*. Filing and service may be effected on the *Court* and counsel by mail, provided facsimile service is made on counsel listed above by no later than twenty-one (21) days before the date of the *Fairness Hearing*. Any member of the *Settlement Class* or other *Person* who does not timely file and serve a written objection complying with the terms of this paragraph shall be deemed to have waived, and shall be foreclosed from raising, any objections to the *Settlement*, and any untimely objection shall be barred.

9.      **Appearance at Fairness Hearing.** Any objector who files and serves a timely, written objection in accordance with paragraph 6 above, may also appear at the *Fairness Hearing* either in person or through counsel retained at the objector's expense. Objectors or their attorneys intending to appear at the *Fairness Hearing* must effect service of a notice of intention to appear setting forth, among other things, the name, address and telephone number of the

objector (and, if applicable, the name, address and telephone number of the objector's attorney) on counsel listed above (at the addresses set out above) and file it with the *Court* by no later than twenty-one (21) days before the date of the *Fairness Hearing.*  Filing and service may be effected on the *Court* and counsel by mail, provided facsimile service is made on counsel listed above by no later than twenty-one (21) days before the date of the *Fairness Hearing.*  Any objector who does not timely file and service a notice of intention to appear in accordance with this paragraph shall not be permitted to be heard at the *Fairness Hearing,* except for good cause shown.

10.     **Notice and Administration Expenses.**  Expenses incurred by *Class Counsel* and/or by the *Claims Administrator* in preparing, mailing and publishing the *Class Notice*, *Summary Notice* and *Bankruptcy Notice,* and in preparing, tabulating, calculating and distributing the recovery amounts to the *Settlement Class*, including related expenses or taxes therewith, shall, without further order of this Court, be paid pursuant to the terms of the *Settlement Agreement*.

11.     **Briefing Schedule.**  No later than 14 days before the *Fairness Hearing*, all motions in connection with final approval of the *Settlement Agreement* and all the terms contained therein shall be filed with the *Court*.

12.     **Stay of Proceedings.**  Until further order of this *Court*, all proceedings in this *Action*, except for proceedings to effectuate the terms and conditions of the *Settlement*, are hereby stayed, and all discovery, pre-trial and trial deadlines are suspended.  Nothing in this paragraph shall be construed to prevent a member of the *Settlement Class* from presenting objections to the *Settlement* in accordance with the terms of this Order and the *Class Notice*.

13. **Service of Papers.**  All counsel shall promptly furnish each other with copies of any and all objections and Notices of Intention to Appear at Fairness Hearing that come into their possession.

14. **Claims Administrator.**  The *Claims Administrator* under the *Settlement Agreement* shall be Gilardi & Co. LLC.

15. **Escrow Agent.**  The *Escrow Agent* under the *Settlement Agreement* shall be Gilardi & Co. LLC, which shall hold the *Settlement Fund* pursuant to the *Settlement Agreement* and *Escrow Agreement.*  All payments and disbursements from the *Settlement Fund* shall be made only in accordance with the orders of this *Court* and the directions of counsel for the *Parties* in accordance with the terms of the *Settlement Agreement.*

16. **Termination of Settlement.**  This Order shall become null and void, and shall be without prejudice to the rights of the *Parties*, all of whom shall be restored to their respective positions existing immediately before this *Court* entered this Order, if the *Settlement* is terminated in accordance with the *Settlement Agreement.*  In such event, Section 12.2 of the *Settlement Agreement* shall govern the rights of the *Parties.*

17. **Use of Order.**  In the event this Order becomes of no force or effect, it shall not be offered, construed or used as an admission, concession or declaration by or against *Defendants* of any fault, wrongdoing, breach or liability.  Nor shall the Order be offered, construed or used as an admission, concession or declaration by or against *Named Plaintiffs* or the *Settlement Class* that their claims lack merit or that the relief requested in the *Action* is inappropriate, improper or unavailable, or as a waiver by any party of any defenses or claims he, she or it may have.

SO ORDERED this _____ day of _____, 2008.

_____
HONORABLE LORETTA A. PRESKA
UNITED STATES DISTRICT JUDGE

# Preliminary Approval Order

# Exhibit A (Class Notice)

## <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

### TO ALL MEMBERS OF THE FOLLOWING CLASS:

All persons who were participants in the Solutia Inc. Savings and Investment Plan (the "Plan") who held Solutia stock in their Plan account at any time during the period from September 1, 1997 through and including August 31, 2005, and their beneficiaries, successors, assigns, executors, administrators, estates, heirs and legal representatives. Excluded from the Class are Defendants and any named fiduciary of the Plan, members of their immediate families, and their legal representatives, heirs, successors, or assigns unless such individual is a member of the Class in his or her own right.

### YOU ARE NOT BEING SUED.
### PLEASE READ THIS NOTICE CAREFULLY.
### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION.

This Notice advises you of a proposed class action settlement (the "Settlement"). The Settlement provides for a cash payment of $4,750,000.00 and an allowed unsecured claim of $6,650,000.00 against Solutia's bankruptcy estate which, pursuant to per share value assumed in Solutia's bankruptcy reorganization plan, amounts to roughly 70% of its face value through the distribution of shares in reorganized Solutia (the "New Solutia Shares") in accordance with the terms of Solutia's bankruptcy reorganization plan. It should be noted that there is no guaranty as to the actual market value of the New Solutia Shares which are now trading on the New York Stock Exchange since said shares are subject to market fluctuation and volatility. The New Solutia Shares, which are currently trading at a price which would yield an approximately ____% recovery on the allowed unsecured claim, may ultimately be worth more or less than the value set forth in the bankruptcy reorganization plan. The total Settlement Fund, which has an estimated potential value based upon the value of the New Solutia Shares as set forth in the bankruptcy reorganization plan of $9,405,000.00, minus attorneys' fees, expenses, taxes, and any case contribution awards to Roger Reiff and Jeremy Dickerson, will be allocated to the accounts of Class Members who had portions of the Plan account invested in the Solutia Stock Fund during the Class Period. The Settlement resolves a lawsuit in which the Plaintiff alleged that the Plan's fiduciaries breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") to the Plan and its participants and beneficiaries. You should read this entire Notice carefully because your legal rights may be affected whether you act or not. The Settlement Agreement and additional information with respect to the Settlement are available at www.gilardi.com.

**QUESTIONS? VISIT <u>www.gilardi.com</u> or CALL _____. Do not call the Court or Solutia. They cannot answer your questions.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| YOU CAN DO NOTHING AND RECEIVE PAYMENT | Under the Settlement, Gilardi & Co. LLC will calculate the portion, if any, of the Settlement you are entitled to receive. You do not need to file a claim form. |
| | <u>Current Participants in the Plan</u>.  If you are entitled to a payment, the payment will be deposited into your Plan account. |
| | <u>Former Participants in the Plan</u>.  If you are entitled to a payment and no longer participate in the Plan, a Plan account will be established for you and you will be notified of such account along with further instructions.<br><br>For more information about how the Settlement will be distributed, please refer to the Settlement Agreement and the Plan of Allocation. A copy of both can be obtained by visiting www.gilardi.com or by calling _____. |
| YOU CAN OBJECT | You can write to the Court about why you don't like the Settlement. |
| YOU CAN GO TO A HEARING | You can ask to speak in Court about the fairness of the Settlement. |

Your rights and options, and the date by which you must object if you are opposed to the Settlement, are explained in this Notice.  Further information regarding this litigation and this Notice may be obtained by contacting Class Counsel:

SARRAF GENTILE LLP
Ronen Sarraf
11 Hanover Square
New York, NY 10005


STEMBER FEINSTEIN DOYLE & PAYNE, LLC
Ellen M. Doyle
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219-1639

**QUESTIONS? VISIT www.gilardi.com or CALL _____.  Do not call the Court or Solutia. They cannot answer your questions.**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ....................................................................................................

1.      Why did I get this notice package? ...........................................................
2.      How do I get more information? ...............................................................
3.      What is this lawsuit about? ......................................................................
4.      Why is this a class action? .......................................................................
5.      Why is there a Settlement? ......................................................................
6.      How do I know if I am part of the Class? .................................................
7.      I'm still not sure if I'm included ...............................................................
8.      Can I exclude myself from the Class? ......................................................

**THE SETTLEMENT BENEFITS-WHAT YOU MAY GET** ...............................................

9.      What does the Settlement provide? ..........................................................
10.     How much will my payment be? ...............................................................

**HOW YOU GET A DISTRIBUTION** ......................................................................

11.     How can I get my distribution? ................................................................
12.     When will I get my distribution? ..............................................................

**THE LAWYERS REPRESENTING YOU** ....................................................................

13.     Do I have a lawyer in this case? ...............................................................
14.     How will the lawyers be paid? .................................................................

**OBJECTING TO THE SETTLEMENT** ......................................................................

15.     What does it mean to object? ...................................................................
16.     How do I tell the Court if I don't like the Settlement? ............................

**THE COURT'S FAIRNESS HEARING** .....................................................................

17.     When and where will the Court decide whether to grant final approve of .........................
        the Settlement ("Fairness Hearing")? ......................................................
18.     Do I have to go to the hearing? ...............................................................
19.     May I speak at the hearing? .....................................................................

**IF YOU DO NOTHING** .......................................................................................

20.     What happens if I do nothing at all? ........................................................

**GETTING MORE INFORMATION** ..........................................................................

21.     Are there more details about the Settlement? ..........................................

## BASIC INFORMATION

**1.    Why did I get this notice package?**

You or someone in your family are or may have been a participant or beneficiary in the Solutia Inc. Savings and Investment Plan at some time between September 1, 1997 and August 31, 2005, and a portion of your account was invested or maintained in the Solutia Stock Fund.

The Court caused this Notice to be sent to you because you have a right to know about a proposed Settlement of a class action lawsuit  in which you are a Class Member, and about all of your options before the Court decides whether to approve the Settlement.  If the Court approves the Settlement and after objections and appeals, if any, are resolved, the Plan will make the distributions that the Settlement allows among Class Members according to a Court-approved Plan of Allocation.

This package summarizes the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

**2.    How do I get more information?**

You can visit www.gilardi.com or call_____ to find out if you are a Class Member and whether you are eligible for a payment.  Do not contact the Court or Solutia. They will not be able to answer your questions.

**3.    What is this lawsuit about?**

The Plan is a defined contribution plan intended to allow Solutia employees to save for their retirement.  Between September 1, 1997 (when the Plan was established) and December 15, 2003 (two days before Solutia declared bankruptcy), the Plan offered as an investment option for all Plan participants the Solutia Stock Fund (aka the Company Stock Fund) which was primarily invested in Solutia stock.  On August 31, 2005, all Solutia stock held in the Solutia Stock Fund in the Plan was sold.

Starting in October 2004, Jeremy Dickerson and Roger Reiff filed class proofs of claim against Solutia in Solutia's bankruptcy proceedings. In October 2004, Dickerson also filed a class action lawsuit in the United States District Court for the Southern District of New York alleging that Defendants breached their fiduciary duties under ERISA.  Dickerson's action was dismissed by the District Court and Dickerson appealed to the United States Court of Appeals for the Second Circuit, where his appeal is currently stayed.  In June 2007, Reiff filed a similar class action lawsuit in the United States District Court for the Southern District of New York.

The two filed class actions (including the instant action brought by Reiff) and the corresponding class proofs of claim in Solutia's bankruptcy proceeding alleged that Defendants and Solutia had fiduciary duties under the Plan, and that Defendants and Solutia breached those fiduciary duties by causing the Plan to purchase and hold shares of Solutia common stock at a time when according to Plaintiffs, the stock was an unsuitable and imprudent investment for the Plan.

**QUESTIONS? VISIT www.gilardi.com or CALL _____.  Do not call the Court or Solutia.  They cannot answer your questions.**

Plaintiffs further alleged that Defendants and Solutia violated ERISA by misrepresenting to Plan participants the financial status of Solutia, and, consequently, the true value of the stock. The Defendants and Solutia were also alleged to have failed to address and resolve conflicts of interest as fiduciaries of the Plan and insiders of Solutia. Plaintiffs sought to recover from the Defendants and Solutia losses to the Plan and indirectly to the Plan's participants and beneficiaries caused by the Defendants' and Solutia's alleged conduct.

The Defendants and Solutia deny that they did anything wrong. The Defendants and Solutia further deny that they have liability to the Plan or to the Plan's participants and beneficiaries. If the litigation were to continue, the Defendants and Solutia would raise numerous defenses to liability, including (1) they were not fiduciaries to the Plan, (2), if they were fiduciaries, their fiduciary duties did not extend to the matters at issue in the lawsuit, (3) to the extent they were fiduciaries, they fully discharged all fiduciary duties imposed on them by ERISA, (4) even if they failed to discharge one or more of their ERISA fiduciary duties, any such breach of fiduciary duty did not cause the losses alleged by Plaintiffs, (5) the relief sought by Plaintiffs is not permitted by ERISA and (6) as to relief sought against Solutia, that the Class Proofs of Claim should be subordinated to the recovery of other creditors and therefore, even if valid, are not entitled to any distribution from Solutia's bankruptcy proceeding.

**4.    Why is this a class action?**

In a class action, one or more persons called Class Representatives sue on behalf of people who have similar claims. Plaintiff Roger Reiff is the Class Representatives in this lawsuit. All of the people who have similar claims make up the Class and are Class Members. One court resolves all of the issues for all Class Members. Because the Class Representative believes that the wrongful conduct alleged in this case affected the Plan and a large group of people in a similar way, he filed his Complaint as a class action.

**5.    Why is there a Settlement?**

The parties have agreed to a Settlement after extensive litigation and negotiations. By agreeing to a Settlement, the parties avoid the costs and risks of a trial, and the Plan and Class will receive compensation. Class Counsel has conducted an extensive review of the evidence in the case and the potential risks and benefits of continued litigation. Plaintiffs and Class Counsel agree that the Settlement is in the best interest of the Plan and the Class. In addition, an Independent Fiduciary has been retained to review the Settlement and determine whether it is the best interests of the Plan and its participants. The Court has not made any finding that Solutia, the Defendants or any fiduciary has engaged in any wrongful conduct or in violation of any law or regulation.

**6.    How do I know if I am part of the Class?**

In the Settlement Agreement, the parties have agreed to the certification of a Class for purposes of the Settlement. Everyone who fits the following description is a Class Member:

> All persons who were participants in the Solutia Inc. Savings and
> Investment Plan (the "Plan") who held Solutia stock in their Plan

**QUESTIONS? VISIT www.gilardi.com or CALL _____. Do not call the Court or Solutia. They cannot answer your questions.**

account at any time during the period from September 1, 1997
through and including August 31, 2005, and their beneficiaries,
successors, assigns, executors, administrators, estates, heirs and
legal representatives.  Excluded from the Class are Defendants and
any named fiduciary of the Plan, members of their immediate
families, and their legal representatives, heirs, successors, or
assigns unless such individual is a member of the Class in his or
her own right.

**7.     I'm still not sure if I'm included.**

If you are still not sure whether you are included, you can ask for free help. Please visit
www.gilardi.com or call _____ .  Do not contact the Court or Solutia.  They will not
be able to answer your questions.

**8.     Can I exclude myself from the Class?**

No, you cannot exclude yourself from the Class.

In some types of cases, Class Members have the opportunity to exclude themselves from a
Settlement.  This is sometimes referred to as "opting out" of a Settlement.  You do <u>not</u> have the
right to exclude yourself from the Settlement in this case.  The Class was preliminarily certified
under Fed. R. Civ. P. 23(b)(1) as a "non opt-out" class action.  Therefore, you will be bound by
any judgments or orders that are entered in the case, and, if the Settlement is approved, you will
be deemed to have released the claims identified in the Settlement Agreement (the "Released
Claims").

The Released Claims include claims which were or could have been brought in the case on
behalf of the Class and the Plan.  The Released Claims also release any unknown claims.
However, claims for individual benefits due under the terms of the Plan will not be released
except as specifically set forth in the Settlement Agreement.  The Released Claims are described
in greater detail in the Settlement Agreement.

Although you cannot opt out of the Settlement, you can object to the Settlement and ask the
Court not to approve the Settlement (see questions 15-16 below).

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET**

**9.     What does the Settlement provide?**

The Solutia Defendants have agreed to pay $4.75 million in cash to resolve the claims alleged
against them and Solutia has agreed to provide the Class an allowed unsecured, $6.65 million
claim in Solutia's bankruptcy.  That claim will yield less than its $6.65 million face value when
it is paid in accordance with Solutia's bankruptcy reorganization plan.  The claim in Solutia's
bankruptcy proceeding is being paid with New Solutia Shares which have been valued for
purposes of the bankruptcy reorganization plan to yield a distribution of approximately 70% of
the face value of the claim.  It should be noted that there is no guaranty as to the actual market
value of the New Solutia Shares which are now trading on the New York Stock Exchange since
**QUESTIONS? VISIT www.gilardi.com or CALL _____.  Do not call the Court
or Solutia.  They cannot answer your questions.**

the shares are subject to market fluctuation and volatility. The New Solutia Shares, which are currently trading at a price which would yield an approximately _____% recovery on the allowed unsecured claim, may ultimately be worth more or less than the value set forth in the bankruptcy reorganization plan. With the Court's approval, Class Counsel may seek to transfer the claim to a third-party institution in order to receive an immediate lump sum payment for the Class. The total payments to be received through the Settlement together will comprise the Settlement Fund. If approved by the Court, attorneys' fees, costs and expenses requested by Class Counsel, case contribution awards to Roger Reiff and Jeremy Dickerson, and any applicable taxes will be deducted from the Settlement Fund. The amount that will be allocated to the Plan accounts of Class Members after the deduction of these items is called the Net Proceeds.

**10.    How much will my payment be?**

Your share of the Net Proceeds will depend on the amount of losses your Plan account suffered through investments in the Stock Fund during the Class Period. The total losses of all Class Members will be aggregated to determine the total losses of the Class. Your share of the Net Proceeds will be approximately equal to your share of the total losses of the Class. However, Class Members whose share of the Net Proceeds is less than $10 will not receive a distribution; their share of the Net Proceeds will instead be reallocated to other Class Members who are entitled to a distribution.

Do not worry if you do not have records of your Plan holdings and losses. You are not responsible for calculating the amount of your losses; they will be determined based on the Plan's records. For more information, please refer to the Section 11 of the Settlement Agreement—the Plan of Allocation.

If you have questions regarding the Settlement or the amount you may receive, do not contact the Court or Solutia. Neither the Court nor Solutia is authorized to answer any questions that you may have. You may visit www.gilardi.com or call _____.

**11.    How can I get my distribution?**

If you are a current participant in the Plan, any payment you are authorized to receive will be deposited into your Plan account. If you are a former employee, an account will be established for you and you will be notified of such account along with further instructions.

**12.    When will I get my distribution?**

The Court has ordered that a hearing be held on _____ at ___:___ __.m.in the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007, to determine whether the proposed Settlement is fair, reasonable, and adequate and whether the Settlement Agreement should be approved by the Court; whether judgment should be entered dismissing the case with prejudice; the amount of attorneys' fees, costs and expenses to be awarded to Class Counsel, and the case contributions awards to be awarded to Roger Reiff and Jeremy Dickerson, if any. If the Court approves the Settlement, appeals may follow. It is always uncertain how these appeals will be resolved, and resolving them can take time, perhaps more than a year. Please be patient.

**QUESTIONS? VISIT www.gilardi.com or CALL _____. Do not call the Court or Solutia. They cannot answer your questions.**

## THE LAWYERS REPRESENTING YOU

**13.    Do I have a lawyer in this case?**

The Court appointed the law firms of Sarraf Gentile LLP and Stember Feinstein Doyle & Payne, LLC to represent you and other Class Members.  These lawyers are called Class Counsel.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**14.    How will the lawyers be paid?**

Class Counsel will petition the Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund plus reimbursement of their costs and expenses not to exceed $250,000.  This award, if approved, will be paid from the Settlement Fund.  This motion will be considered at the Fairness Hearing.  Plaintiffs will also request case contribution awards of $5,000 each for Roger Reiff and Jeremy Dickerson for their contributions to the Class.  Such awards, if approved, will be paid from the Settlement Fund.  Any attorneys' fees awarded by the Court will be distributed, based on mutual agreement and respective contribution to the case, among the following law firms representing Plaintiffs: Sarraf Gentile LLP; Stember Feinstein Doyle & Payne, LLC; Malakoff Doyle & Finberg, P.C.; Richard A. Finberg; Hewitt Law Firm; and, Lowenstein Sandler PC.  You will not have to pay any attorneys' fees, costs or expenses, or any case contribution awards.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement.

**15.    What does it mean to object?**

Objecting is simply telling the Court that you do not like something about the Settlement.  It will not have any bearing on your right to a distribution if the Settlement is approved.

**16.    How do I tell the Court that I don't like the Settlement?**

A Class Member who wants to object to the certification of the Class, the Settlement, the Plan of Allocation, an application for case contribution awards, an award of attorneys' fees, costs and expenses to Class Counsel, or to any other aspect of the Settlement, must file a written objection. Objections and any supporting papers must be filed with the Clerk of the Court, United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007, no later than _____ [21 days before Fairness Hearing].  As stated in the Order granting preliminary approval to the Settlement, written objections must contain the following information: (i) a statement certifying that the objector is a member of the Class, (ii) your name, address, telephone number and, if applicable, the name, address and telephone number of your attorney, (iii) a detailed statement of your specific objections to any matter before the Court and all the reasons for the objection, (iv) all of the documents you wish the Court to consider, (v) the names, addresses, and telephone numbers of any witness you may call to testify, and (vi) any exhibits that you intend to introduce into evidence at the Settlement Fairness Hearing.
**QUESTIONS? VISIT www.gilardi.com or CALL _____.  Do not call the Court or Solutia.  They cannot answer your questions.**

In addition, if you wish to be heard orally, you must state in your written objection(s) your intention to appear at the Fairness Hearing (attendance at the Fairness Hearing, however, is not required).  Your objection must be accompanied by copies of any supporting papers or briefs you intend to submit in support of your objection.  Objections must be served upon Class Counsel and Defendants' Counsel at the addresses listed below on or before _____ [21 days before Fairness Hearing].

| **Court** | **Class Counsel** | **Counsel for Solutia, Inc.** |
|---|---|---|
| Clerk, USDC | SARRAF GENTILE LLP | KIRKLAND & ELLIS LLP |
| Southern District of New | Ronen Sarraf | Jonathan S. Henes |
| York | 11 Hanover Square | Colin M. Adams |
| 500 Pearl Street | New York, NY 10005 | Citigroup Center |
| New York, NY 10007 | | 153 East 53rd Street |
| | STEMBER FEINSTEIN | New York, NY 10022 |
| | DOYLE & PAYNE, LLC | |
| | Ellen M. Doyle | **Counsel for the Solutia Defendants** |
| | 1705 Allegheny Building | O'MELVENY & MYERS LLP |
| | 429 Forbes Avenue | Karen M. Wahle |
| | Pittsburgh, PA  15219-1639 | 1625 Eye Street, NW |
| | | Washington, DC 20006-4001 |

**Counsel for The Northern Trust Company**
KRAMER LEVIN NAFTALIS & FRANKEL LLP
Michael Dell
1177 Avenue of the Americas
New York, NY 10036

ANY CLASS MEMBER WHO DOES NOT OBJECT IN THE WAY DESCRIBED ABOVE SHALL BE DEEMED TO HAVE WAIVED SUCH OBJECTION AND SHALL NOT HAVE ANY RIGHT TO OBJECT TO THE FAIRNESS OR ADEQUACY OF THE SETTLEMENT.

ALL PAPERS SUBMITTED MUST INCLUDE THE CASE NUMBER 07-CV-06011 ON THE FIRST PAGE.

**THE COURT'S FAIRNESS HEARING**

The Court will hold a Fairness Hearing to decide whether to grant final approval to the Settlement.  You may attend and you may ask to speak, but you are not required to do so.

**17.    When and where will the Court decide whether to grant final approval of the Settlement ("Fairness Hearing")?**

The Court will hold a Fairness Hearing on _____ in the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007, at ___:___ __.m.  At this hearing, the Court will determine whether the Class should be certified; whether the Settlement Agreement (including the Plan of Allocation) is fair, reasonable, and adequate and whether it should be finally approved by the Court; whether judgment should be entered dismissing the Litigation and the Defendants with prejudice; the amount of attorneys' fees, costs

**QUESTIONS? VISIT www.gilardi.com or CALL _____.  Do not call the Court or Solutia.  They cannot answer your questions.**

and expenses to be awarded to Class Counsel, if any; and whether Roger Reiff and Jeremy Dickerson will receive a case contribution award.  If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long the Court will take to make its decision.

**18.    Do I have to go to the hearing?**

No.  You are, however, welcome to attend at your own expense.  If you file an objection to the Settlement, you do not have to go to Court to talk about it.  As long as your objection is postmarked by _____ [21 days before Fairness Hearing], and you comply with the requirements in answer to question 16 above, the Court will consider it.  You also may pay your own lawyer to attend the Fairness Hearing.

**19.    May I speak at the hearing?**

You may ask the Court for permission to speak at the hearing.  Any person wishing to appear must state in their written objection(s) their intention to appear at the Fairness Hearing.

**IF YOU DO NOTHING**

**20.    What happens if I do nothing at all?**

If you are entitled to a Settlement distribution, you will receive a distribution as discussed in question 10 and in the Plan of Allocation.

**GETTING MORE INFORMATION**

**21.    Are there more details about the Settlement?**

This Notice is intended only as a summary of the Action and proposed Settlement.  All capitalized terms shall have the same meaning in this Notice as they have in the Settlement Agreement.  This Notice is not a complete description of the Action or the proposed Settlement.  You may inspect the pleadings and other papers (including the Settlement Agreement) that have been filed in this lawsuit at the office of the Clerk of the Court, United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York 10007.  If you have any questions about this notice or the proposed settlement, you may contact Class Counsel (listed in Answer 16) or the Claims Administrator by visiting www.gilardi.com or calling _____.

DO NOT CONTACT THE COURT FOR INFORMATION.

**QUESTIONS? VISIT www.gilardi.com or CALL _____.  Do not call the Court or Solutia.  They cannot answer your questions.**

# Preliminary Approval Order

# Exhibit B (Summary Notice)

**COURT-ORDERED LEGAL NOTICE**
**(Summary)**

IF YOU WERE A PARTICIPANT IN OR BENEFICIARY OF THE SOLUTIA INC. SAVINGS AND INVESTMENT PLAN (THE "PLAN"), AT ANY TIME BETWEEN SEPTEMBER 1, 1997 AND AUGUST 31, 2005, AND YOUR ACCOUNTS INCLUDED INVESTMENTS IN THE SOLUTIA STOCK FUND, YOU MAY BE ELIGIBLE TO RECEIVE A PAYMENT AS A RESULT OF A CLASS ACTION SETTLEMENT.

A Settlement has been preliminarily approved by the federal court in a class action lawsuit alleging breaches of fiduciary duties under the Employee Retirement Income Security Act ("ERISA") in connection with the Plan's investments in the Solutia Stock Fund.

This Settlement provides for payments to be made to the Plan from several sources which will then be allocated to the accounts of the Class Members (after deducting Court-approved fees, costs and expenses, and case contributions awards). First, the Solutia Defendants, Insurers, and/or Solutia will deposit $4.75 million in cash into the Settlement Fund. Second, subject to Court approval of the Settlement of the Bankruptcy Claim, the Settlement Class will be granted an allowed unsecured claim of $6.65 million against Solutia's bankruptcy estate, which will be paid by the distribution of shares in reorganized Solutia (the "New Solutia Shares") valued under Solutia's bankruptcy reorganization plan that was estimated by Solutia to yield roughly 70% of the face value of the Bankruptcy Claim in accordance with the terms of Solutia's bankruptcy reorganization plan. It should be noted that there is no guaranty as to the actual market value of the New Solutia Shares which are now trading on the New York Stock Exchange since the shares are subject to market fluctuation and volatility. The New Solutia Shares, which are currently trading at a price which would yield an approximately _____% recovery on the allowed unsecured claim, may ultimately be worth more or less than the value set forth in the bankruptcy reorganization plan.

If you qualify as a member of the Class, you may receive a portion of such funds. You do not need to send in a claim or take any other action unless you object to the Settlement. The United States District Court for the Southern District of New York has authorized this Notice.

THE COURT WILL HOLD A HEARING ON _____, 2008 AT _____ TO DECIDE WHETHER TO APPROVE THE SETTLEMENT.

**What Is This Case About?**
The Plaintiffs in this case allege that the Defendants and Solutia violated their fiduciary duties under the federal law known as ERISA by (i) maintaining investments in the Solutia Stock Fund at a time when these investments were allegedly imprudent because of Solutia's financial situation; and (ii) failing to provide complete and accurate information to Plan participants about the risks of investing in Solutia stock in light of that financial situation. Solutia and all of the Defendants deny they did anything wrong. The Court has not ruled in favor of either side.

**How Will the Settlement Money Be Allocated?**
If you are a Class Member, you will be allocated a share of the Settlement money paid into the Plan based on your proportionate share of the losses alleged to have been sustained by

the Plan as a result of investments in the Solutia Stock Fund. You are not responsible for calculating your share of the Settlement funds; it will be determined based on the Plan's records.

### What Fees and Expenses Are Being Sought By the Attorneys?

The lawyers who have prosecuted this case for the Named Plaintiffs and the Class on a contingent fee basis will apply to the Court for fees of no more than 30% of the Settlement Fund, plus reimbursement of costs and expenses incurred in connection with the prosecution of the Action. The Court must approve any fees, costs and expenses to be paid to the attorneys. Class Members may file objections to the attorneys' applications for fees, costs and expenses.

### Are There More Details to the Settlement?

The Settlement includes a number of other important details. These include, but are not limited to, provisions relating to (1) releases of Released Claims against the Defendants and Solutia by the Class and (2) how the payment to the Plan will be allocated among Class Members' accounts.

### How Do I Get More Information?

If you are a member of the Class, you should be receiving a Notice of Proposed Class Action Settlement regarding the Settlement in the mail. You should read that document for more information. It is more detailed than this summary notice. If you do not receive a Notice of Proposed Class Action Settlement in the mail, you may request one by visiting **www.gilardi.com** or calling _____.

The following attorneys and law firms are Class Counsel in this action. You may write to any of the firms listed below if you have any questions about the Settlement:

SARRAF GENTILE LLP
Ronen Sarraf
Joseph Gentile
11 Hanover Square
New York, NY 10005

STEMBER FEINSTEIN DOYLE & PAYNE, LLC
Ellen M. Doyle
Joel R. Hurt
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA

### What Are My Options?

You cannot "opt out" or exclude yourself from the Settlement Class. If you object to the Settlement, certification of the Settlement Class, Class Counsel's request for payment of attorneys' fees, costs and expenses, or the Plan of Allocation, you may file a written objection as described in the Notice of Proposed Class Action Settlement, which objection must be postmarked no later than _____, 2008 [21 days before Fairness Hearing]. If you do not want to object to the Settlement, you do not have to do anything.

### What Happens Next?

The Court will hold a Fairness Hearing on _____, 2008 at_____. At that hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, whether it is proper to certify the Settlement Class, and whether to grant Class Counsel's request for

attorneys' fees, costs and expenses.  If there are objections, the Court will consider them.  After the Fairness Hearing, the Court will decide whether to approve the Settlement.

# Preliminary Approval Order

# Exhibit C (Bankruptcy Notice)

### NOTICE OF HEARING ON SOLUTIA INC.'S
### MOTION FOR ENTRY OF AN ORDER PURSUANT TO
### SECTION 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY
### RULES 7023 AND 9019 APPROVING SETTLEMENT OF THE PROOFS
### OF CLAIM FILED BY ROGER REIFF AND JEREMY DICKERSON

PLEASE TAKE NOTICE that a hearing on Solutia Inc.'s Motion for an Order

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rules 7023 and 9019

Approving Settlement of the Proofs of Claim Filed By Roger Reiff and Jeremy Dickerson (the

"Motion") will be held before the Honorable Loretta A. Preska, United States District Court

Judge, in Room 12A of the United States District Court for the Southern District of New York

(the "District Court"), Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., Room

1320, New York, NY 10007 on _____, 2008 at ___ _.m. or as soon thereafter as counsel may

be heard.

PLEASE TAKE FURTHER NOTICE that the hearing may be adjourned

thereafter from time to time without further notice to claimants and other parties in interest other

than the announcement of the adjourned date at the hearing or any other hearing thereafter.

PLEASE TAKE FURTHER NOTICE that the Motion may be examined and

inspected by interested parties between the hours of 9:00 a.m. and 4:30 p.m. at the office of the

Clerk of the Court, United States District Court for the Southern District of New York, Daniel

Patrick Moynihan United States Courthouse, 500 Pearl St., New York, NY 10007, or viewed

online at <www.nysd.uscourts.gov>.

PLEASE TAKE FURTHER NOTICE that objections, if any, must be in writing,

shall conform to the Federal Rules of Civil Procedure and the Local Rules for the Southern

District of New York and shall be filed with the District Court electronically by registered users

of the District Court's case filing system (the rules for the Electronic Case Filing System can be

found at <www.nysd.uscourts.gov>, the official website for the District Court) and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format and shall be served upon (i) Kirkland & Ellis LLP, Citigroup Center, 153 East 53rd Street, New York, New York 10022 (Attn: Jonathan S. Henes, Esq.), counsel for Solutia Inc., (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st floor, New York, New York, 10004 (Attn: Greg Zipes, Esq.), (iii) Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 (Attn: Timothy R. Pohl, Esq. and Samuel S. Ory, Esq.), counsel for the agents for the Solutia's postpetition secured lenders, (iv) Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York, 10036 (Attn: Bennett S. Silverberg, Esq.), counsel for the agents for the Solutia's postpetition secured lenders, (v) Akin, Gump, Strauss, Hauer & Feld, LLP, 590 Madison Avenue, New York, New York 10022 (Attn: Daniel H. Golden, Esq.), counsel for the official committee of unsecured creditors, (vi) White & Case, LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida, 33131 (Attn: John K. Cunningham, Esq.), counsel for the prepetition ad hoc committee of Solutia senior secured noteholders, (vii) Spencer Fane Britt Browne LLP, 1 North Brentwood Boulevard, Tenth Floor, St. Louis, Missouri 63105 (Attn: Nicholas A. Franke, Esq.), counsel to the official committee of retirees, (viii) Haskell Slaughter Young & Rediker LLC, 1400 Park Place Tower, 2001 Park Place North, Birmingham, Alabama 35203 (Attn: R. Scott Williams, Esq.), counsel to the official committee of retirees, (ix) Pillsbury Winthrop LLP, 650 Town Center Drive, Seventh Floor, Costa Mesa, California 92626 (Attn: Craig A. Barbarosh, Esq.), counsel to the official committee of equity security holders, (x) Brown Rudnick Berlack Israels, LLP, 120 West 45th Street, New York, New York 10036 (Attn: Steven B. Smith, Esq.),

counsel to the ad hoc Trade Committee, (xi) Brown Rudnick Berlack Israels, LLP, One Financial

Center, Boston, Massachusetts 02111 (Attn: Steven B. Levine, Esq.), counsel to the *ad hoc* Trade

Committee, (xii) Hennigan, Bennett & Dorman, LLP, 865 S. Figueroa St., Suite 2900, Los

Angeles, California 90017 (Attn: Bennett Murphy), counsel to the *ad hoc* committee of

Noteholders and (xiii) all other entities set forth in the Debtors' Master Service List established

pursuant to that certain Order Establishing Notice Procedures, dated December 18, 2003, so as to

be received no later than _____, 2008 at _____ _.m. (prevailing Eastern Time) (the

"Objection Deadline").  Only those objections that are timely filed, served and received will be

considered at the Hearing.  Failure to file a timely objection may result in entry of an order

granting the Motion as requested by Solutia.

# Global Settlement Agreement

# Exhibit 6.4.1 (Final Order)

## <u>ORDER AND FINAL JUDGMENT</u>[1]

WHEREAS, the Court having preliminarily approved this Settlement (the "Preliminary Approval Order");

WHEREAS, upon consideration of all documents filed in support of final approval of the Settlement Agreement; and,

WHEREAS, a hearing having been held before this Court (the "Fairness Hearing") to determine whether to grant final approval of the Settlement Agreement;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.    **Jurisdiction.**  The Court has jurisdiction over the subject matter of this action, all members of the Settlement Class, and all Defendants pursuant to 29 U.S.C. § 1132(e).  Without affecting the finality of this Order, jurisdiction is hereby retained over this Action and the Parties, the Plan, and the Settlement Class members for all matters relating to the Action, including (without limitation) the administration, interpretation, effectuation or enforcement of the Settlement Agreement and this Final Order and Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to the members of the Settlement Class.

2.    **Class Notice.**  In accordance with Federal Rule of Civil Procedure 23 and the requirements of due process, the Settlement Class has been given proper and adequate notice of the Settlement Agreement including the Plan of Allocation, the Fairness Hearing and the motion by Class Counsel for fees and expenses in accordance with the Preliminary Approval Order. The notice, summary notice and notice methodology implemented pursuant to the Settlement Agreement and the Preliminary Approval Order: (a) constituted the best practicable notice; (b)

---

[1] Italicized terms not otherwise deferred in this Order shall have the same meaning as ascribed to them in the Settlement Agreement.

constituted notice that was reasonably calculated, under the circumstances, to apprise members of the *Settlement Class* of the pendency of the litigation, their right to object to the *Settlement*, and their right to appear at the *Fairness Hearing*; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law.

3.    **Bankruptcy Notice.**  In accordance with the requirements of due process, the Court finds that the *Bankruptcy Notice* was reasonable and constituted due, adequate and sufficient notice of the *Settlement* and *Fairness Hearing* to all persons entitled to notice, and that no further or other notice needed to be provided.

4.    **Approval of Settlement.**  The *Settlement Agreement* in this Action is hereby APPROVED in that it warrants final approval pursuant to Federal Rule of Civil Procedure 23(e)(1)(A) and (C) because it is fair, adequate, and reasonable to those it affects, is in the best interests of the *Plan* and *Settlement Class* members based upon (a) the likelihood of success on the merits weighed against the amount and form of relief offered in the *Settlement*; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the fairness of the *Settlement* to the unnamed class members; (e) the number of objections to the *Settlement Agreement* by *Settlement Class* members and the lack of objection by the *Independent Fiduciary*; (f) the fact that the *Settlement* is the product of extensive arm's length negotiations; and (g) the fact that this *Settlement* is consistent with the public interest.  The *Settlement Agreement*, and the *Bankruptcy Allowed Claim,* is also approved under Bankruptcy Rules 7023 and 9019 and section 363 of the Bankruptcy Code in that the *Settlement* is in the best interest of *Solutia*. The *Parties* are directed to consummate the *Settlement* in accordance with the terms of the *Settlement Agreement*.

5.      **Approval of Plan of Allocation.**  The *Plan of Allocation* set forth in the

*Settlement Agreement* is hereby APPROVED as fair, adequate, and reasonable.  Upon this Order

becoming *Final*, *Class Counsel* shall direct the *Escrow Agent* to disburse the *Net Proceeds* to

trusts of the *Plan* in accordance with the *Settlement Agreement,* subject to any amounts withheld

by *Class Counsel* for the payment of taxes and related expenses as authorized by the *Settlement*

*Agreement*.

6.      **Class Certification.**  The *Court* hereby APPROVES the maintenance of this

*Action* as a mandatory non-opt-out class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1) and

Bankruptcy Rule 7023.  The *Settlement Class* consists of the following individuals:

> All persons who were participants in the *Plan* who held Solutia
> stock in their *Plan* account at any time during the period from
> September 1, 1997 through and including August 31, 2005 and
> their beneficiaries, successors, assigns, executors, administrators,
> estates, heirs and legal representatives.  Excluded from the
> *Settlement Class* are *Defendants* and any named fiduciary of the
> *Plan*, members of their immediate families, and their legal
> representatives, heirs, successors, or assigns unless such individual
> is a member of the *Settlement Class* in his or her own right.

The *Court* further finds that the prerequisites for a class action under Fed. R. Civ. P. 23 and

Bankruptcy Rule 7023 have been satisfied in that:

a.      The *Settlement Class*, consisting of more than seven thousand members, is

so numerous that joinder all of its members would be impracticable;

b.      There are questions of fact and law common to the *Settlement Class*,

including whether *Solutia* and the *Defendants* breached their fiduciary duties with respect to

investments in the *Solutia Stock Fund*;

c.      The *Representative Plaintiff* is a member of the *Settlement Class* and his

claims are typical of the claims of the *Settlement Class*;

3

d.     The *Representative Plaintiff* is suitable for appointment as representative of the *Settlement Class* and has and will fairly and adequately protect the interests of the *Settlement Class* in that (i) the interests of the *Representative Plaintiff* and the nature of his alleged claims are consistent with those of the members of the *Settlement Class*; (ii) there appear to be no conflicts between or among the *Representative Plaintiff* and the *Settlement Class;* and (iii) the *Representative Plaintiff* has retained qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated *ERISA* class actions;

e.     The prosecution of separate actions by individual members of the *Settlement Class* would create a risk of inconsistent or varying adjudications as to individual class members, that would establish incompatible standards of conduct for the parties opposing the claims asserted in the *Action*;

f.     The prosecution of separate actions by individual members of the *Settlement Class* would create a risk of inconsistent or varying adjudications as to individual class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede those persons' ability to protect their interests;

g.     The definition of the *Settlement Class* is sufficiently precise and proper notice was provided to the *Settlement Class*; and

h.     *Class Counsel* is appropriately qualified and suitable for appointment to represent the *Settlement Class*, in that *Class Counsel* has done extensive work identifying and investigating potential claims in the action, and has vigorously and ably represented the interests of the *Settlement Class* throughout this litigation; *Class Counsel* is experienced in handling class actions, other complex litigation and claims of the type asserted in the *Action*; *Class Counsel* is

4

knowledgeable of the applicable law; and *Class Counsel* has committed the necessary resources to represent the *Settlement Class.*

7.     **Class Counsel's Fees and Expenses.**  Based on the work performed by *Class Counsel* and the results achieved, the motion by *Class Counsel* for fees and expenses is GRANTED.  *Class Counsel* requested a fee award of _____% of the *Settlement Fund* and the reimbursement of expenses.  *Class Counsel* are hereby awarded attorneys' fees in the amount of _____% of the *Settlement Fund*, which the *Court* finds to be reasonable under the circumstances of this case in light of (a) the value of the benefit rendered to the *Settlement Class*; (b) the value of the services on an hourly basis; (c) the fact that the services were undertaken on a contingent fee basis; (d) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (e) the complexity of the litigation; and (f) the professional skill and standing of counsel involved on both sides.  *Class Counsel* are further awarded the sum of $_____ from the *Settlement Fund* as reimbursement of costs and expenses, which the *Court* finds were reasonably incurred for the benefit of the *Settlement Class* in prosecuting the *Settlement Class's* claims and in obtaining the *Settlement*, including expenses incurred in connection with experts and consultants, travel and other litigation-related expenses.  The awards of attorneys' fees, costs and expenses shall be allocated among *Class Counsel* as such counsel mutually agree for their respective contributions in the prosecution of the *Action*.

8.     **Case Contribution Awards.**  *Class Counsel's* request for case contribution awards of $5,000 each for Roger Reiff and Jeremy Dickerson is fair and reasonable in light of their substantial contribution to the litigation on behalf of the *Settlement Class*, including providing information to *Class Counsel*, reviewing and approving pleadings, and participating in

settlement discussions.  Accordingly, Roger Reiff and Jeremy Dickerson are awarded

_____ each, all payable from the *Settlement Fund*.

9.    **Bankruptcy Allowed Claim.**  Upon this Order becoming *Final*, *Class Counsel* is

authorized, but not required, to transfer or sell the *Bankruptcy Allowed Claim* and deposit the

proceeds of such transfer or sale into the *Escrow Account* for distribution in accordance with the

terms of the *Settlement Agreement*.

10.    **Releases.**  Pursuant to Section 4 of the *Settlement Agreement*, the *Released*

*Parties,* the *Representative Plaintiff,* the *Settlement Class*, Jeremy Dickerson and *Class Counsel*

are hereby released and all other provisions of Section 4 of the *Settlement Agreement* are hereby

APPROVED.

11.    **Finality.**  Upon this Order becoming *Final*, the *Settlement Class* and the *Plan*

shall be deemed to have, and by operation of this *Final Order* and Judgment shall have, fully,

finally, and forever released and are forever barred from the prosecution of, any and all *Released*

*Claims*.  In the event that the *Settlement Agreement* is terminated in accordance with its terms,

however:  (a) this Judgment shall be null and void and shall be vacated nunc pro tunc, and (b)

this action shall proceed as provided in the *Settlement Agreement*.

12.    **Further Extensions.**  Without further order of the *Court*, the parties may agree to

reasonable extensions of time to carry out any of the provisions of the *Settlement Agreement.*

WHEREFORE, There being no just reason for delay in the entry of this *Final Order* and

Judgment and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _____ day of _____, 2008.

_____
HONORABLE LORETTA A. PRESKA
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ROGER REIFF,

      Plaintiff,

v.

FRANK A. METZ, JR., SHEILA FELDMAN,
HELEN L. NELLING, SUSAN E.
BEVINGTON, NANCY STEMME,
CHRISTOPHER N. AST, EMPLOYEE
BENEFITS PLAN COMMITTEE, PENSION
AND SAVINGS FUND COMMITTEE, JOHN
HUNTER, ROBERT CLAUSEN, ROBERT
POTTER, MICHAEL E. MILLER, PAUL H.
HATFIELD, J. PATRICK MULCAHY, SALLY
G. NARODICK, PAUL DONOVAN, ROBERT
H. JENKINS, WILLIAM D. RUCKELSHAUS,
JOHN B. SLAUGHTER, PHILIP R. LOCHNER,
JR., ROBERT T. BLAKELY, NORTHERN
TRUST COMPANY, and JOHN DOES 1-100,

      Defendants.

CIVIL ACT NO. 07-cv-6011 (LAP)
(ECF Matter)

Judge Loretta A. Preska

## STIPULATION AND ORDER REGARDING
## AMENDMENT TO CLASS ACTION SETTLEMENT AGREEMENT

      Roger Reiff (on behalf of himself, the Settlement Class, and the Plan), Jeremy Dickerson

(individually), Defendants, and Solutia Inc. (collectively, the "Parties"), by and through their

respective counsel, hereby stipulate and agree as follows[1]:

      WHEREAS, the Parties entered into the "Global Settlement Agreement" dated May 19,

2008 (the "Settlement Agreement");

      WHEREAS, on June 5, 2008, the Court entered its Findings and Order Preliminarily

Approving Class Action Settlement;

---

[1]    Capitalized terms not otherwise defined herein shall have the definitions ascribed to them in the Settlement
Agreement. Bank of America, National Association joins this Stipulation and Order as the Independent
Fiduciary retained in connection with the approval of this Settlement.

WHEREAS, under Section 2.2 of the Settlement Agreement, an Independent Fiduciary was retained to evaluate the Settlement Agreement;

WHEREAS, the Independent Fiduciary has conducted its evaluation of the Settlement Agreement and has requested certain clarifications and modifications to be made;

WHEREAS, the Parties have agreed to make the changes requested by the Independent Fiduciary;

WHEREAS, the Parties and the Independent Fiduciary agree that the amended terms are not material to the Settlement Agreement, do not require any additional notice to be published or sent, and provide no reason to delay the Fairness Hearing, which is scheduled for September 17, 2008 at 10 a.m.;

NOW THEREFORE, in consideration of the mutual agreements contained herein and other consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby stipulated and agreed to by and between the Parties and hereby ordered by the Court as follows:

1.    Section 1.25 of the Settlement Agreement is amended to define the Independent Fiduciary as Bank of America, National Association.

2.    Section 4.1 of the Settlement Agreement is amended to clarify the Parties' intent that the release applies only to matters which took place during the Class Period, and to clarify that released claims concerning the failure to appoint, remove or adequately monitor fiduciaries were limited to those claims regarding the Plan's investment in Solutia common stock and the Solutia Stock Fund.

3.    Section 4.4.1 of the Settlement Agreement is amended to clarify the Parties' intent as to which claims for vested benefits are carved out of the release – i.e., those claims for vested benefits under the terms of the Plan.

4.    Section 6.6.1 of the Settlement Agreement is amended to clarify Plaintiffs' covenant to not file Released Claims against any of the Released Parties.

5.    Section 11.2.6 of the Settlement Agreement is amended to provide that the $10 de minimis threshold with respect to settlement allocations shall apply only to distributions to former employees who have withdrawn their account balances from the Plan.

6.     The above-referenced sections of the Settlement Agreement are replaced with those sections contained in Exhibit 1. A redlined version of the changes to the above-referenced sections of the Settlement Agreement are contained in Exhibit 2.

7.     Each person who executes this stipulation represents that he or she is counsel for his or her respective client(s) and has the requisite authority to execute this document on behalf of his or her client(s).

8.     This stipulation may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this stipulation to present any copy, copies or facsimiles signed by the Parties hereto be charged.

9.     The Court shall retain jurisdiction to hear any disputes relating to or arising from this stipulation.

IN WITNESS WHEREOF, the *Parties* and the Independent Fiduciary have executed this stipulation on the dates set forth below.

DATED: _August 28, 2008_

**SARRAF GENTILE LLP**

Ronen Sarraf
Joseph Gentile
11 Hanover Square
New York, NY 10005
(212) 868-3610

**STEMBER FEINSTEIN DOYLE
   & PAYNE, LLC**
Ellen M. Doyle
Joel R. Hurt
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219-1639
(412) 281-8400

**Counsel for Roger Reiff, the
Settlement Class, and Jeremy
Dickerson**

**LOWENSTEIN SANDLER PC**
Michael S. Etkin
Ira M. Levee
1251 Avenue of the Americas

3

New York, New York 10020
(212) 262-6700
                     and
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500

**Special Bankruptcy Counsel for
the Settlement Class**

DATED: *August 29, 2008*

**KIRKLAND & ELLIS LLP**

*Jonathan S. Henes*
Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**

DATED: *August 29, 2008*

**O'MELVENY & MYERS LLP**

*Karen M. Wahle*
Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia
Defendants**

4

DATED: _August 28, 2008_

**KRAMER LEVIN
NAFTALIS & FRANKEL LLP**

Michael Dell
1177 Avenue of the Americas
New York, NY 10036

**Counsel for The Northern Trust
Company**

DATED: _____

**BANK OF AMERICA,
NATIONAL ASSOCIATION,**

Norman Goldberg
600 14th Street, NW
Washington, D.C. 20005

**Independent Fiduciary**

**SO ORDERED.**

HON. LORETTA A. PRESKA
UNITED STATES DISTRICT JUDGE

Dated: _____, 2008
New York, New York

5

DATED: _____

**KRAMER LEVIN
NAFTALIS & FRANKEL LLP**


_____
Michael Dell
1177 Avenue of the Americas
New York, NY 10036

**Counsel for The Northern Trust
Company**

DATED: _August 28, 2008_

**BANK OF AMERICA,
NATIONAL ASSOCIATION,**

_____
Norman Goldberg
600 14th Street, NW
Washington, D.C. 20005

**Independent Fiduciary**

**SO ORDERED.**


_____
HON. LORETTA A. PRESKA
UNITED STATES DISTRICT JUDGE

Dated: _____, 2008
New York, New York

5

# EXHIBIT 1

Section 1.25: "*Independent Fiduciary*" shall mean: Bank of America, National Association, successor to United States Trust Company, National Association.

Section 4.1: <u>Releases of the *Released Parties*</u>. Subject to Section 4.4 below and upon the *Effective Date*, the *Representative Plaintiff*, on behalf of himself, the *Plan*, and the *Settlement Class*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever, released, relinquished, and discharged, and shall forever be enjoined from prosecuting any of the *Defendants*, *Solutia* or any *Person* that at any time served as a named or functional fiduciary or a trustee of the *Plan* (but excluding the *Independent Fiduciary*), as well as any *Representatives* or *Affiliates* of *Defendants* or *Solutia* or any such *Person* (including but not limited to their attorneys, agents, directors, officers and employees), and the *Insurer* (the "*Released Parties*") from any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, and costs whether arising under local, state, or federal law, whether by statute, contract, common law, equity or otherwise, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that have been, could have been, or could be brought by the *Representative Plaintiff* or Jeremy Dickerson, either individually or by or on behalf of the *Plan* and/or any member of the *Settlement Class*, or by any member of the *Settlement Class* and that arise out of or are related in any way to the acts, omissions, facts, matters, transactions or occurrences which took place between September 1, 1997 through and including August 31, 2005 that have been alleged or referred to in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*, including but not limited to claims based on breach of *ERISA* fiduciary duties to the *Plan*, to the *Representative Plaintiff*, to the *Settlement Class*, to Jeremy Dickerson and to the other participants and beneficiaries of the *Plan* in connection with: (a) the acquisition and direct or indirect holding of *Solutia* common stock and/or units of the *Solutia Stock Fund* by the *Plan*; (b) failure to provide complete and accurate information to the *Plan's* fiduciaries or the *Plan's* participants and beneficiaries regarding *Solutia*, *Solutia* common stock, and/or the *Solutia Stock Fund*; (c) failure to appoint, remove and/or adequately monitor the *Plan's* fiduciaries regarding the *Plan's* investment in *Solutia* common stock, and/or the *Solutia Stock Fund*; (d) the acquisition, disposition, or retention of *Solutia* common stock and/or units of the *Solutia Stock Fund*; and (e) any claim that would be barred by principles of *res judicata* or collateral estoppel had the claims asserted in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim* been fully litigated and resulted in a final judgment or order (collectively, the "*Released Claims*").

Section 4.4.1: The *Settlement* and dismissal of the *Action* shall not release, bar or waive any *ERISA* section 502(a)(1)(B) claim for vested benefits under the terms of the *Plan* by any participant or beneficiary of the *Plan* where such claims are unrelated to any matter asserted in this *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*.

Section 6.6.1:  The *Representative Plaintiff* on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, covenant and agree: (i) not to file against any *Released Party* any additional *Released Claim*, or refile the claim brought in this *Action*, the *Dickerson Litigation*, or the *Bankruptcy Claim*; (ii) not to file against any *Released Party* any claim released under section 4.1 or 4.3; (iii) that the foregoing covenants and agreements shall be a complete defense to any claims released under section 4.1 or 4.3 brought against any of the respective *Released Parties*; and (iv) that if any claims are filed against any *Released Party* that are finally adjudged by a court of competent jurisdiction to be claims described in 4.1 or 4.3, the *Released Party* shall be entitled to reimbursement from the *Person* asserting such claims of any attorneys' fees or costs actually incurred in seeking dismissal of those claims.

Section 11.2.6:  The *Claims Administrator* shall identify all Class Members (a) who are former *Solutia* employees who have withdrawn their account balances from the *Plan* and (b) whose Preliminary Dollar Recovery is less than ten dollars ($10.00) ("De Minimis Claimants").

# EXHIBIT 2

Section 1.25: "*Independent Fiduciary*" shall mean: ~~a Plan fiduciary selected and retained at Solutia's sole expense that has no "relationship to" or "interest in" (as those terms are used in the Class Exemption) any of the Parties~~ **Bank of America, National Association, successor to United States Trust Company, National Association.**

Section 4.1: <u>Releases of the *Released Parties*</u>.  Subject to Section 4.4 below and upon the *Effective Date*, the *Representative Plaintiff*, on behalf of himself, the *Plan*, and the *Settlement Class*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever, released, relinquished, and discharged, and shall forever be enjoined from prosecuting ~~all~~ **any** of the *Defendants*, ~~and~~ *Solutia* **or** ~~and~~ any *Person* that at any time served as a named or functional fiduciary or a trustee of the *Plan* (but excluding the *Independent Fiduciary*), as well as any *Representatives* or *Affiliates* of *Defendants* or *Solutia* or any such *Person* (including but not limited to their attorneys, agents, directors, officers and employees), and the *Insurer* (the "*Released Parties*") from any an**d** all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, and costs whether arising under local, state, or federal law, whether by statute, contract, common law, equity or otherwise, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that have been, could have been, or could be brought by the *Representative Plaintiff* or Jeremy Dickerson, either individually or by or on behalf of the Plan and/or any member of the *Settlement Class*, or by any member of the *Settlement Class* and that arise out of or are related in any way to the acts, omissions, facts, matters, transactions or occurrences **which took place between September 1, 1997 through and including August 31, 2005** that have been alleged or referred to in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*, including but not limited to claims based on breach of *ERISA* fiduciary duties to the *Plan*, to the *Representative Plaintiff*, to the *Settlement Class*, to Jeremy Dickerson and to the other participants and beneficiaries of the *Plan* in connection with: (a) the acquisition and direct or indirect holding of *Solutia* common stock and/or units of the *Solutia Stock Fund* by the *Plan*; (b) failure to provide complete and accurate information to the *Plan's* fiduciaries or the *Plan's* participants and beneficiaries regarding *Solutia*, *Solutia* common stock, and/or the *Solutia Stock Fund*; (c) failure to appoint remove and/or adequately monitor the *Plan's* fiduciaries **regarding the Plan's investment in *Solutia* common stock, and/or the *Solutia Stock Fund*;** (d) the acquisition, disposition, or retention of *Solutia* common stock and/or units of the *Solutia Stock Fund*; and (e) any claim that would be barred by principles of *res judicata* or collateral estoppel had the claims asserted in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim* been fully litigated and resulted in a final judgment or order (collectively, the "*Released Claims*").

Section 4.4.1: The *Settlement* and dismissal of the *Action* shall not release, bar or waive any *ERISA* section 502(a)(1)(B) claim for vested benefits **under the terms of the Plan** by any participant or beneficiary of the *Plan* where such claims are unrelated to any matter asserted in this *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*.

Section 6.6.1:  The *Representative Plaintiff* on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, covenant and agree: (i) not to file against any *Released Party* any additional claim based on, relating to or arising from any *Released Claim*, or refile the claim brought in this *Action*, the *Dickerson Litigation*, or the *Bankruptcy Claim*; (ii) not to file against any *Released Party* any claim released under section 4.1 or 4.3; (iii) that the foregoing covenants and agreements shall be a complete defense to any such claims **released under section 4.1 or 4.3 brought** against any of the respective *Released Parties*; and (iv) that if any such claims are filed against any *Released Party* **that are finally adjudged by a court of competent jurisdiction to be claims described in 4.1 or 4.3**, the *Released Party* shall be entitled to reimbursement from the *Person* asserting such claims of any attorneys' fees or costs actually incurred in seeking dismissal of those claims.

Section 11.2.6:  The *Claims Administrator* shall identify all Class Members **(a) who are former *Solutia* employees who have withdrawn their account balances from the *Plan* and (b)** whose Preliminary Dollar Recovery is less than ten dollars ($10.00) ("De Minimis Claimants").