**KIRKLAND & ELLIS LLP**
Citigroup Center
153 East 53rd Street
New York, New York 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
Jonathan S. Henes
Colin M. Adams

200 East Randolph Drive
Chicago, Illinois 60601
Tel: (312) 861-2000
Fax: (312) 861-2200
Jeffrey J. Zeiger (*Pro Hac Vice*)

*Attorneys for the Reorganized Debtors*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ROGER REIFF,<br><br>     Plaintiff,<br><br>v.<br><br>FRANK A. METZ, JR., SHEILA FELDMAN, HELEN L. NELLING, SUSAN E. BEVINGTON, NANCY STEMME, CHRISTOPHER N. AST, EMPLOYEE BENEFITS PLAN COMMITTEE, PENSION AND SAVINGS FUND COMMITTEE, JOHN HUNTER, ROBERT CLAUSEN, ROBERT POTTER, MICHAEL E. MILLER, PAUL H. HATFIELD, J. PATRICK MULCAHY, SALLY G. NARODICK, PAUL DONOVAN, ROBERT H. JENKINS, WILLIAM D. RUCKELSHAUS, JOHN B. SLAUGHTER, PHILIP R. LOCHNER, JR., ROBERT T. BLAKELY, NORTHERN TRUST COMPANY, and JOHN DOES 1-100,<br><br>     Defendants. | CIVIL ACT NO. 07-cv-6011 (LAP)<br>(ECF Matter)<br><br>Judge Loretta A. Preska |

## MEMORANDUM OF LAW IN SUPPORT OF SOLUTIA INC.'S
## MOTION TO APPROVE CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................................... iii

BACKGROUND ................................................................................................................. 3

I.     SOLUTIA'S CHAPTER 11 CASES. ........................................................................ 3

II.    THE DICKERSON ACTION. .................................................................................. 4

III.   THE REIFF ACTION. .............................................................................................. 6

IV.    THE SETTLEMENT AGREEMENT. ...................................................................... 6

ARGUMENT ....................................................................................................................... 9

I.     THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS
       "FAIR AND EQUITABLE." ................................................................................... 9

       A.     A Comparison Of Likely Litigation Outcomes And The Benefits Of
              Settlement Strongly Favors Settlement .................................................... 10

              1.     The result of the litigation among Solutia and Claimants was
                     uncertain. ...................................................................................... 10

              2.     The Settlement preserves creditor recoveries and eliminates the
                     possibility of years of costly litigation. ....................................... 11

       B.     Continued Litigation Against Claimants Would Be Complex, Protracted,
              And Costly. ............................................................................................... 12

       C.     Solutia's Creditors Support The Settlement. ............................................ 13

       D.     Experienced Counsel Support The Settlement. ........................................ 13

       E.     The Releases Are No Obstacle To Approval Of The Settlement. ............. 14

       F.     The Settlement Is The Product Of Extensive Arm's Length Bargaining. ... 14

II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER
       BANKRUPTCY RULE 7023 AND FEDERAL RULE OF CIVIL PROCEDURE
       23 ............................................................................................................................. 15

       A.     Certification Of The Class Will Not Delay Administration Of Solutia's
              Estates. ...................................................................................................... 15

       B.     The Settlement Satisfies Federal Rule Of Civil Procedure 23 ................. 15

C.     The Benefits Of Class Action Litigation Will Be Realized In Solutia's Bankruptcy. ...................................................................................................17

CONCLUSION ..............................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brotherton v. Cleveland,*
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ..................................................... 15, 16

*Dehoyos v. Allstate Corp.,*
    240 F.R.D. 269 (W.D. Tex. 2007) ............................................................ 15

*Dickerson v. Feldman,*
    426 F. Supp. 2d 130 (S.D.N.Y. 2006) ........................................................ 5

*Dickerson v. Feldman,*
    Case No. 1:04-cv-07935 (LAP) ........................................................ passim

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008) ................................................................ 15

*In re Adelphia Commc'ns Corp.,*
    327 B.R. 143 (Bankr. S.D.N.Y. 2005) ................................................ 9, 10, 14

*In re Best Prods. Co.,*
    168 B.R. 35 (Bankr. S.D.N.Y. 1994) ....................................................... 9, 10

*In re Iridium Operating LLC,*
    478 F.3d 452 (2d Cir. 2007) ................................................................. 9, 10

*In re Linerboard Antitrust Litig.,*
    296 F. Supp. 2d 568 (E.D. Pa. 2003) ......................................................... 15

*In re Metromedia Fiber Network, Inc.,*
    416 F.3d 136 (2d Cir. 2005) .................................................................. 14

*In re Musicland Holding Corp.,*
    362 B.R. 644 (Bankr. S.D.N.Y. 2007) ....................................................... 15

*In re N.W. Airlines Corp.,*
    No. 05-17930 (ALG), 2007 WL 2815917 (Bankr. S.D.N.Y. Sept. 26, 2007) ................. 15

*In re Texaco Inc.,*
    84 B.R. 893 (Bankr. S.D.N.Y. 1988) ......................................................... 9

*In re Tower Auto., Inc.,*
    342 B.R. 158 (Bankr. S.D.N.Y. 2006) ........................................................ 9

*In re W.T. Grant Co.,*
    699 F.2d 599 (2d Cir. 1983) .................................................................... 9

*In re Woodward & Lothrop Holdings, Inc.,*
    205 B.R. 365 (Bankr. S.D.N.Y. 1997) .......................................... 15, 17

*In re WorldCom, Inc.,*
    No. 02-13533 (AJG), 2005 WL 3832063 (Bankr. S.D.N.Y. May 11, 2005) ............ 15, 16

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,*
    234 F.R.D. 627 (W.D. Ky. 2006) .......................................................... 15

*Reiff v. Metz,*
    Case No. 1:07-cv-06011 (LAP) .................................................... passim

*U.S. Trust Co. of N.Y. v. Alpert,*
    163 F.R.D. 409 (S.D.N.Y. 1995) .......................................................... 16

*Wright v. Stern,*
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) .................................................. 17

**Statutes**

11 U.S.C. § 510(b) .................................................................................. 6

29 U.S.C. § 1132 .................................................................................... 1

**Rules**

Fed. R. Bank. P. 7023 ........................................................................ 3, 8

Fed. R. Bank. P. 9019 ........................................................................ 3, 9

Fed. R. Civ. P. 23 .......................................................................... passim

In December 2003, Solutia was forced to file for chapter 11 after rising raw material costs, excess capacity in the chemical industry, and a declining economy made the significant legacy liabilities that Solutia inherited when it was spun-off from Pharmacia too great of a burden. For approximately the next four years, Solutia worked with its primary stakeholders to reach a settlement that allowed it to reallocate significant legacy liabilities (which had cost Solutia approximately $100 million per year since the spin-off) and reconfigure its capital structure so that Solutia could emerge from chapter 11 as a viable and competitive company. Following several years of arduous arm's length-negotiations and significant litigation, Solutia achieved a Global Settlement with its primary stakeholders in late summer 2007 that allowed Solutia to accomplish its restructuring goals and emerge from chapter 11.

Several obstacles, however, remained in Solutia's path to emergence. Among the most significant were class proofs of claim filed by Jeremy Dickerson and Roger Reiff (collectively, "Claimants") against Solutia's estates in the amount of $290 million (the "Bankruptcy Claims"). Dickerson and Reiff alleged that Solutia breached its fiduciary duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, by allowing Solutia employees to purchase Solutia common stock in their Solutia Savings and Investment Plan ("SIP") accounts when Solutia should have known that it was a poor investment option.

While Solutia believed that it had strong defenses to the Bankruptcy Claims, their significance to the chapter 11 process could not be understated. If the Bankruptcy Claims were allowed in their stated amount of $290 million, the percentage recovery for Solutia's general unsecured creditors would drop from 83.1% to 61.5%. (*See* Bankr. Dkt. No.4254 at 74-75.) If that occurred, it was highly unlikely that Solutia's primary stakeholders would support the Global Settlement that Solutia had worked nearly four years to achieve.

Following several months of negotiations, counsel for Claimants and Solutia reached a settlement of the Bankruptcy Claims that was read into the record at Solutia's confirmation hearing. None of Solutia's stakeholders objected to the settlement at the confirmation hearing. In addition to the Bankruptcy Claims, Claimants had filed putative class actions in this Court against Solutia's directors, officers, and certain employees (the "Solutia Non-Debtor Defendants") and the Northern Trust Company, Inc. (collectively, the "Non-Debtor Defendants"). *See Dickerson v. Feldman*, Case No. 1:04-cv-07935 (LAP); *Reiff v. Metz*, Case No. 1:07-cv-06011 (LAP). Under Solutia's Plan of Reorganization, Solutia agreed to indemnify and defend its incumbent directors at the time of confirmation from any liabilities arising out of the *Dickerson* or *Reiff* actions. (*See* Bankr. Dkt. No. 4444 ¶ 88.) Thus, Solutia continued working to see if all of the Claimants' actions could be resolved. In December 2007, Solutia, Claimants, and the Non-Debtor Defendants (collectively, the "Parties") reached a settlement of all claims (the "Settlement"). Following five months of additional negotiations, the Parties executed the Settlement Agreement on May 19, 2008.[1]

The Settlement Agreement provides in relevant part:

1.     The class will receive a general unsecured claim in the amount of $6.65 million against Solutia's estates and $4.75 million in cash (of which Solutia is contributing $250,000 with the remainder coming from Solutia's insurer) in full and complete satisfaction of the claims against Solutia and the Non-Debtor Defendants (*See* Ex. 1 §§ 1.4, 2.7, 9 and *id.* at Ex. 3.1A § 9, thereto);[2]

2.     Solutia and the Non-Debtor Defendants will consent to certification of the class for settlement purposes only (*see id.* § 2.1);

3.     In the event the Settlement Agreement is not approved, the Bankruptcy Claims have been capped at $15 million (*see id.* § 6.2);

---

[1]     A copy of the Settlement Agreement is attached hereto as Exhibit 1.

[2]     Based on the closing price of $15.58 on August 26, 2008, the general unsecured claim will be worth approximately $3,667,313. This value will fluctuate based on the price of Solutia's stock.

4.    Claimants and the absent class members shall release Solutia and the Non-Debtor Defendants from all claims that have been, could have been, or could be brought in Solutia's chapter 11 cases or in the actions before this Court (*see id.* § 4); and

5.    Neither Solutia nor the Non-Debtor Defendants admit to any liability or wrongdoing (*see id.* § 8).

In sum, Solutia needed to resolve the Bankruptcy Claims to preserve the Global Settlement with its stakeholders and did so for a fraction of the $290 million asserted claim value. It also was able to settle the actions filed by Dickerson and Reiff before this Court—and eliminate its indemnification obligations—for $250,000 (along with $4.5 million in insurance proceeds).

For reasons set forth below, the Settlement Agreement is fair and equitable when measured against any standard. When measured against the deferential standards required by Bankruptcy Rule 9019 and the strong public policy favoring settlement in bankruptcy, it is not even a close call. Accordingly, Solutia respectfully requests that the Court certify the Class for settlement purposes only pursuant to Federal Rule of Bankruptcy Procedure 7023 and Federal Rule of Civil Procedure 23, and approve the Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019.

## BACKGROUND

## I.    SOLUTIA'S CHAPTER 11 CASES.

In 1997, Pharmacia (then known as the old Monsanto Company) formed Solutia to operate substantially all of the assets and hold substantially all of the environmental, tort, and retiree liabilities related to Pharmacia's chemicals businesses, which had been operating for more than 100 years. On September 1, 1997, Solutia was spun off to Pharmacia's shareholders. From the spin-off until 1999, Solutia was profitable. Beginning in late 1999 and continuing through 2003, however, a general downturn in the economy, increasing raw material costs, and excess capacity in the chemicals industry began to impact Solutia's businesses. As a result, it became

3

increasingly more difficult for Solutia to pay the approximately $100 million per year to service the legacy liabilities that it inherited through the spin-off. Despite efforts to restructure out of court, Solutia continued to face deteriorating liquidity and substantial legacy liabilities. Accordingly, on December 17, 2003, Solutia commenced chapter 11 cases in the U.S. Bankruptcy Court for the Southern District of New York.

A primary focus of Solutia's reorganization strategy was to achieve a reallocation of the significant tort, environmental and retiree legacy liabilities that it assumed as part of the spin-off. Accordingly, Solutia engaged in several years of arduous arms-length negotiations with, among other parties, the new Monsanto Company (which also had been spun-off from Pharmacia and was required to indemnify Pharmacia for these same legacy liabilities if Solutia could not pay), the Creditors' Committee, the Equity Committee, the Retirees Committee, and ad hoc committees of holders of Solutia's unsecured notes and trade claims. On August 14, 2007, these negotiations culminated with the Global Settlement, which settled all litigation among the various parties, reallocated significant legacy liabilities as between Solutia and Monsanto, modified certain on-going operating agreements between Solutia and Monsanto, and allowed for significant distributions to holders of claims and equity interests in Solutia's chapter 11 cases.

On November 29, 2007, a Plan of Reorganization based on the terms of the Global Settlement was confirmed by the Bankruptcy Court. The Plan of Reorganization was declared effective and Reorganized Solutia emerged from chapter 11 on February 28, 2008.

## II.     THE DICKERSON ACTION.

On October 7, 2004, Dickerson, a Solutia employee from 1998 to 2003, filed a purported class action complaint against the Non-Debtor Defendants. (*See* 1:04-cv-07935 (LAP).) The complaint alleged that the Non-Debtor Defendants breached their fiduciary duties under ERISA by making Solutia stock available under the SIP when they should have known it was a poor

4

investment option. (*See* Dickerson Dist. Ct. Dkt. No. 1 ¶¶ 1-9, 15.) Dickerson brought the claim

on behalf of a putative class of all persons who were participants in the SIP and who held Solutia

stock in their SIP accounts between December 16, 1998 and the present. (*See id.* ¶ 115.) On

October 19, 2004, Dickerson filed a parallel class proof of claim in Solutia's chapter 11 cases.

(*See* 10/19/04 Claim No. 854.) Dickerson originally sought $269 million in damages from

Solutia and the Non-Debtor Defendants. He later increased his demand to $290 million. (*See*

9/1/05 Claim No. 14735.) Dickerson also changed the putative class period to September 1,

1997 through December 15, 2003. (*See* Dickerson Dist. Ct. Dkt. No. 17 ¶ 1; 9/1/05 Claim No.

14735.)

On March 30, 2006, this Court dismissed Dickerson's complaint against the Non-Debtor

Defendants with prejudice on the grounds that Dickerson lacked standing to sue under ERISA.

*See Dickerson v. Feldman*, 426 F. Supp. 2d 130 (S.D.N.Y. 2006). The Court reasoned that:

> Plaintiff has not satisfied the redressability element of Article III standing.
> Plaintiff here was a Plan participant up until the time, prior to the commencement
> of this lawsuit, when he took a final distribution of his vested benefits. As a
> former participant, Plaintiff is unable to demonstrate that he has an injury that is
> redressable by this Court because he fails to show either 'a reasonable expectation
> of returning to covered employment or . . . a colorable claim to vested benefits.'

*Id.* at 135. On April 3, 2006, Dickerson filed a notice of appeal with the Second Circuit. (*See*

Dickerson Dist. Ct. Dkt. No. 51.) The appeal was fully briefed and argued.

On June 16, 2006, Solutia objected to Dickerson's class proof of claim on the grounds

that the decision in *Dickerson v. Feldman* was dispositive on the issue of whether Dickerson had

standing to sue in Bankruptcy Court. (*See* Bankr. Dkt. No. 3229.) On June 21, 2007, Solutia

filed a supplemental objection to Dickerson's class proof of claim on the grounds that it was a

claim arising from the purchase of an equity security and, therefore, should be subordinated to

the claims of Solutia's unsecured creditors under 11 U.S.C. § 510(b).  (*See* Bankr. Dkt. No. 3935

at 3-6.)

The Bankruptcy Judge, however, expressed doubt as to whether Solutia's subordination

argument would be successful:

> I don't agree that the claim is subordinated . . . . What Five Ten says is a claim[ ] [to]
> purchase securities is subordinated.  This is not a claim to purchase securities.  It's a
> claim for breach of fiduciary duty. . . . Therefore, if that's the case, it's not a subordinated
> claim in which case it adds to the pool of claims and it therefore lowers your recoveries.

(*See* Bankr. Dkt. No. 4274 at 43:25-44:11.)

## III.    THE REIFF ACTION.

After Dickerson's complaint was dismissed for lack of standing, Reiff, a current

employee of Solutia, filed his own action against the Non-Debtor Defendants in this Court on

June 25, 2007.  (*See* 1:07-cv-06011 (LAP), Dist. Ct. Dkt. No. 1.)  Dickerson and Reiff also filed

a joint amended class proof of claim against Solutia. (*See* Claim No. 14823.)  The allegations in

Reiff's complaint and amended proof of claim are nearly identical to those brought by

Dickerson, except Reiff alleged that he had not taken a final distribution from the SIP.  (*See*

Reiff Dist. Ct. Dkt. No. 1 ¶ 13.)  The Non-Debtor Defendants moved to dismiss Reiff's

complaint in this Court.  (*See* Reiff Dist. Ct. Dkt. No. 20.)

## IV.    THE SETTLEMENT AGREEMENT.

Solutia and counsel for Claimants began discussing settlement of the Bankruptcy Claims

in spring 2007.  In August 2007, Solutia reached a Global Settlement with its primary

stakeholders in the chapter 11 cases that would allow it to successfully emerge from chapter 11.

Solutia, however, still needed to resolve the Bankruptcy Claims.  At Claimants' valuation of

$290 million, the Bankruptcy Claims would have nearly doubled Solutia's estimated general

unsecured claims pool and significantly diluted creditor recoveries.  Because the Global

Settlement was based on certain assumed recoveries, such a dilution likely would have caused Solutia's primary stakeholders to exercise their rights to walk away from the deal.  The importance of the Bankruptcy Claims was underscored in Solutia's Disclosure Statement:

> Dickerson Claim:  In determining the range of General Unsecured Claims, Solutia estimated the Dickerson Claim, which was asserted for $290 million, at $0.  Solutia has objected to the Dickerson Claim, asserting, among other things, that it should be subordinated pursuant to section 510(b) of the Bankruptcy Code.  Dickerson has disputed Solutia's assertion.  If the Dickerson Claim were ultimately allowed in the amount of $290 million as a general Unsecured Claim, recoveries received by unsecured creditors would be significantly reduced.  Specifically, if the General Unsecured Claims pool were to increase by $290 million, then the estimated percentage recovery for General Unsecured Creditors would be reduced from 83.1% to 61.5% (on a post-Rights Offering basis).  The estimated percentage recovery for Noteholders also would be reduced from 88.4% to 66.8% (on a post-Rights Offering Basis).

(*See* Bankr. Dkt. No. 4254 at 74.)  Moreover, even if Solutia was successful on its subordination argument, that would have diluted recoveries to Solutia's equity holders, and the Equity Committee—which had pending litigation against Pharmacia and Monsanto—likely would not have supported the Global Settlement.  (*See id.* at 75.)

Following approximately six months of negotiations, Solutia and Claimants reached a settlement on the night before Solutia's confirmation hearing.  At the November 29, 2007 confirmation hearing, counsel for Solutia read the material terms of the settlement into the record.  (*See* Bankr. Dkt. No. 4505 at 17:21-22:16.)  None of Solutia's creditors or stakeholders objected to the terms of the settlement.  (*See id.* at 22:14-22:16.)

Solutia's Plan was confirmed on November 29, 2007.  (*See* Bankr. Dkt. No. 4444.) Under the Plan, Solutia agreed to indemnify the incumbent members of its Board of Directors at the time of confirmation from any liabilities arising out of or relating to the *Dickerson* or *Reiff* actions.  (*See id.* ¶¶ 85, 88.)

7

Following the confirmation hearing, the Parties continued discussions regarding whether a settlement could be reached that resolved all of Claimants' claims against Solutia, the Solutia Non-Debtor Defendants, and Northern Trust. The Parties reached an agreement in late December 2007 and, following months of further negotiations, executed a final Settlement Agreement on May 19, 2008. (*See generally* Ex. 1.) The material terms of the Settlement Agreement are as follows:

- Plaintiffs shall receive an allowed general unsecured claim in the amount of $6.65 million and $4.75 million in cash (*see id.* §§ 1.4, 2.7, 9). With respect to the cash component, Solutia shall contribute $250,000 and the remaining $4.50 million will come from Solutia's insurer, Federal Insurance Company. Northern Trust did not contribute any financial consideration toward the Settlement (*see id.* §§ 1.8, 2.6, 9). The proceeds shall be distributed to the class members pursuant to the plan of allocation in the Settlement Agreement (*see id.* § 11);

- Solutia and the Non-Debtor Defendants will consent to certification of the class and the class proofs of claim for settlement purposes only (*see id.* § 2.1);

- In the event the Settlement Agreement is not approved, the Bankruptcy Claims have been capped at $15 million (*see id.* § 6.2);

- Solutia and the Non-Debtor Defendants shall be released from all claims that have been, could have been, or could be brought by Reiff or Dickerson (either individually or by or on behalf of the settlement class) or any member of the settlement class in Solutia's chapter 11 cases or in the actions before this Court (*see id.* § 4);

- Solutia and the Non-Debtor Defendants do not admit any liability or wrongdoing (*see id.* § 8); and

- Plaintiffs' counsel may apply to the Court for an award of attorneys' fees of no more than 30% of the settlement fund. Dickerson and Reiff may apply to the Court for incentive payments of no more than $5,000 each (*see id.* § 13.1).

On June 5, 2008, the Court entered an order withdrawing the reference solely with respect to the Bankruptcy Claims and granting preliminary approval of the Settlement Agreement. (*See* Reiff Dist. Ct. Dkt. No. 33.) The Court preliminarily found that the putative settlement class satisfies the requirements of Federal Rule of Bankruptcy Procedure 7023 and Federal Rules of Civil Procedure 23(a), (b)(1), and (e). (*See id.*)

8

## ARGUMENT

I.    **THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS "FAIR AND EQUITABLE."**

Courts favor settlements. *See In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994). Courts in the Second Circuit will approve a settlement under Bankruptcy Rule 9019 where the settlement is found to be "fair and equitable" based on the following factors:

- The balance between the litigation's prospects for success and the settlement's future benefits;

- The likelihood of complex and protracted litigation with its attendant expense, inconvenience and delay;

- The interests of the creditors, including whether the creditors or other parties in interest either do not object to or affirmatively support the proposed settlement;

- The nature and breadth of the releases; and

- Whether the settlement is the product of arm's length bargaining.

*See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *accord In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 158-59 (Bankr. S.D.N.Y. 2005); *In re Texaco Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988). The Court's role is not to conduct its own investigation or a "mini-trial" of the disputed allegations. *See In re Adelphia*, 327 B.R. at 159; *In re Best Prods.*, 168 B.R. at 51. Instead, "the court's responsibility is to familiarize itself with all the facts necessary for an intelligent and objective opinion, canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *See In re Best Prods.*, 168 B.R. at 51; *see also In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). In making this assessment, there is a "general presumption" in favor of settlement. *See In re Tower Auto., Inc.*, 342 B.R. 158, 164 (Bankr. S.D.N.Y. 2006). These standards "reflect the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only

after an exhaustive investigation and determination of the underlying claims." *In re Best Prods.*, 168 B.R. at 51.

The Settlement—which saves the estates from potentially years of costly litigation, potential indemnification obligations, and reduces Claimants' class proofs of claim from $290 million to $6.65 million—satisfies all seven of the *Iridium* factors and should be approved.

### A.    A Comparison Of Likely Litigation Outcomes And The Benefits Of Settlement Strongly Favors Settlement.

The likelihood of success in litigation versus the benefits of settlement is the "most important factor" in determining whether to approve a settlement. *See In re Adelphia*, 327 B.R. at 160. It strongly favors the Settlement here.

### 1.    The result of the litigation among Solutia and Claimants was uncertain.

The outcome of the litigation between Solutia and Claimants was far from certain, and the stakes were high. It was at least possible that Solutia could be found liable for some or all of the $290 million sought by Claimants, which could have dropped creditor recoveries to a point that the Global Settlement in Solutia's chapter 11 cases would not have been viable.

Moreover, the Bankruptcy Claims did not lend themselves to a quick resolution. Solutia objected to the class proofs of claim on two bases. First, following this Court's dismissal of the *Dickerson* suit, Solutia objected on the grounds that Dickerson lacked standing. That objection is still pending. (*See* Bankr. Dkt. No. 3934.) Second, Solutia objected on the grounds that the claims arose from the purchase of an equity security and, therefore, should be subordinated to the claims of Solutia's unsecured creditors. As set forth above, the Bankruptcy Court expressed skepticism with respect to Solutia's subordination argument. (*See* Bankr. Dkt. No. 4274 at 43:25-44:11.) Thus, it appeared that Solutia would need to litigate not only the merits of the Bankruptcy Claims, but also their treatment under Solutia's Plan.

10

While Solutia believed that it had valid defenses to the Bankruptcy Claims, it could not afford to find out.  Based on the terms of the Settlement Agreement, Solutia had nothing to gain by litigation, and potentially could have lost a Global Settlement among its primary stakeholders that took four years to reach, and allowed Solutia to emerge from chapter 11 as a viable and competitive company.

### 2.    The Settlement preserves creditor recoveries and eliminates the possibility of years of costly litigation.

The future benefits of the Settlement are considerable.  As an initial matter, the Settlement eliminates any possibility—no matter how remote—that Solutia will be held liable for the entire $290 million sought by Claimants.  If the Bankruptcy Claims were allowed in their entirety, it would have reduced recoveries to Solutia's general unsecured creditors from 83.1% to 61.5%.  (*See* Bankr. Dkt. No. 4254 at 74-75.)

Moreover, the Settlement was structured so that Solutia could emerge from chapter 11 before it was approved.  Under the Settlement, Reiff, Dickerson and each member of the settlement class agreed that the maximum amount of the Bankruptcy Claims would be $15 million even if the Settlement Agreement was not ultimately approved.  (*See* Ex. 1 § 6.2.)  This ensured that creditor recoveries would not be materially affected by the Bankruptcy Claims.  Solutia set aside stock to make distributions to Claimants and the class based on a maximum $15 million general unsecured claim.  The Settlement was for a general unsecured claim of $6.65 million.  Thus, assuming the Settlement is approved, Solutia's general unsecured creditors will receive additional distributions of stock based on the value of an $8.35 million general unsecured claim (the difference between the $15 million claim cap and the $6.65 million Settlement amount).

11

Because the Settlement allowed Solutia to remove one of the final obstacles in its path toward emergence and do so at a fraction of the stated amount of the Bankruptcy Claims, the benefits of the Settlement significantly outweigh the likely outcome of any litigation.

**B.      Continued Litigation Against Claimants Would Be Complex, Protracted, And Costly.**

When viewed in the context of Solutia's chapter 11 cases, continuing to litigate against Claimants likely would have cost Solutia more than the value of the $6.65 million general unsecured claim (presently approximately $3.6 million) plus the $250,000 in cash that Solutia provided to the Settlement.  The litigation between Claimants and Solutia involves complex legal and factual issues, including standing, class certification, ERISA fiduciary duties, Claimants' right to sue for money damages, and subordination under the Bankruptcy Code.  (*See, e.g.,* Reiff Dist. Ct. Dkt. No. 17; Bankr. Dkt. No. 3934; Dickerson Dist. Ct. Dkt. No. 36.)  These issues would have taken significant time to litigate and, based on the stated value of the Bankruptcy Claims, could have prevented Solutia from emerging from chapter 11 until they were resolved. Moreover, to the extent that the Bankruptcy Claims required Solutia to stay in chapter 11 several months longer than it otherwise would have, the costs in professional fees and expenses alone likely would have exceeded the value Solutia is providing to the Settlement.  Moreover, Claimants had yet to commence discovery, which would have added to Solutia's legal bills in the chapter 11 cases and distracted its management from the task of completing a successful restructuring and running a newly reorganized entity.

Finally, Solutia agreed to indemnify and defend its incumbent directors at the time of confirmation from any liabilities arising out of the *Dickerson* or *Reiff* actions pending before this Court.  (*See* Bankr. Dkt. No. 4444 ¶ 88.)  The Settlement Agreement allows Solutia to satisfy this obligation almost entirely through insurance proceeds.  In short, the $6.65 million general

12

unsecured claim and $250,000 in cash that Solutia contributed to the Settlement is a small price to pay to resolve the Bankruptcy Claims, eliminate any future indemnification obligations based on the *Dickerson* and *Reiff* actions and ensure that Solutia could emerge from chapter 11.

### C.     Solutia's Creditors Support The Settlement.

The fact that none of Solutia's creditors objected to the settlement at Solutia's confirmation hearing is another factor that strongly favors approval of the Settlement Agreement. It is easy to see why Solutia's creditors would not oppose the Settlement Agreement. First, it allowed Solutia to successfully emerge from chapter 11. Second, by reducing what could have been a $290 million claim to a $6.65 million claim, the Settlement Agreement preserves creditor recoveries and, in turn, a Global Settlement Agreement that Solutia and its primary stakeholders worked for nearly four years to achieve. Third, if the Settlement Agreement is approved, the unsecured creditors also will be entitled to their *pro rata* share of the remaining value of the $8.35 million general unsecured claim that Solutia set aside based on the $15 million cap but did not use to settle the Bankruptcy Claims.

### D.     Experienced Counsel Support The Settlement.

The Settlement is supported by competent and experienced counsel. Claimants are represented by two law firms, Sarraf Gentile LLP and Stember Feinstein Doyle & Payne, LLC, both of which have extensive experience litigating ERISA class action cases. Solutia is represented by Kirkland & Ellis LLP, an international law firm with extensive experience representing debtors in major bankruptcy proceedings and in defending class action lawsuits. The Solutia Non-Debtor Defendants are represented by O'Melveny & Myers LLP, an international law firm with extensive bankruptcy and complex litigation and ERISA experience. Northern Trust is represented by Kramer Levin Naftalis & Frankel LLP, which also specializes in ERISA and class action defense. The Court is entitled to rely on the opinions of counsel—all

13

of whom support the Settlement. *See Adelphia Commc'ns. Corp.*, 327 B.R. at 159. Moreover, an Independent Fiduciary has reviewed the Settlement Agreement and, subject to several changes agreed upon by the Parties, has determined that the Settlement is fair, reasonable and adequate.

### E. The Releases Are No Obstacle To Approval Of The Settlement.

Because this Settlement does not involve third-party, non-debtor releases, the traditional concerns regarding releases are not present here. *See, e.g., In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005) (non-debtor releases can be approved where the bankruptcy court finds that "truly unusual circumstances render the release terms important to success of the plan."). Moreover, the releases by Claimants of Solutia and the Solutia Non-Debtor Defendants all inure to the benefit of Solutia. (*See* Ex. 1 § 4.1.) Under the Plan (which has been approved by Solutia's creditors and the Bankruptcy Court), Solutia agreed to indemnify its incumbent directors at the time of confirmation from any liability arising out of the *Dickerson* or *Reiff* actions. (*See* Bankr. Dkt. No. 4444 ¶ 88.) By releasing these Board members from liability, the Settlement eliminates any future indemnification obligations based on these actions to these directors.

### F. The Settlement Is The Product Of Extensive Arm's Length Bargaining.

The Settlement is the product of extensive arm's length bargaining between and among the Parties. Solutia and Claimants first discussed settlement in spring 2007. After approximately six months of negotiations, Solutia and Claimants agreed upon the material terms of a settlement that counsel for Solutia read into the record at Solutia's confirmation hearing. (*See* Bankr. Dkt. No. 4505 at 17:21-22:16.) In December 2007, the Settlement was expanded to include the Non-Debtor Defendants. Following an additional five months of negotiation, a final settlement agreement was executed on May 19, 2008. (*See* Ex. 1.)

14

## II. THE SETTLEMENT CLASS SHOULD BE CERTIFIED UNDER BANKRUPTCY RULE 7023 AND FEDERAL RULE OF CIVIL PROCEDURE 23.

The certification and settlement of class claims in chapter 11 is a three-step process. The court must determine that: (1) allowing a class action to proceed would not unduly delay administration of the estate; (2) the class and the settlement meet the substantive requirements of Federal Rule of Civil Procedure 23; and (3) the benefits that generally support class actions are realizable in the bankruptcy case. *See In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3832063, at *2 (Bankr. S.D.N.Y. May 11, 2005); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (Bankr. S.D.N.Y. 1997). The Settlement satisfies all three requirements.

### A. Certification Of The Class Will Not Delay Administration Of Solutia's Estates.

A court has discretion to apply Rule 23 in a chapter 11 proceeding based on whether certification of the class would unduly delay administration of the estate. *See In re N.W. Airlines Corp.*, No. 05-17930 (ALG), 2007 WL 2815917, at *3 (Bankr. S.D.N.Y. Sept. 26, 2007); *In re Musicland Holding Corp.*, 362 B.R. 644, 654 (Bankr. S.D.N.Y. 2007). Delay is not a concern here. Solutia has emerged from chapter 11 and distributions have been made to its stakeholders. Moreover, certification of the settlement class in the instant action will speed up administration of the estates by resolving the most significant remaining claims while avoiding years of costly litigation.

### B. The Settlement Satisfies Federal Rule Of Civil Procedure 23.

Once a class action settlement has been preliminarily approved by the court, it is entitled to a strong presumption of fairness. *See, e.g., Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd, Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 576 (E.D. Pa. 2003); *Brotherton v.*

15

*Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001). This Court already has preliminarily

found that the class meets the requirements of Rules 23(a) and 23(b)(1), and that the Settlement

is fair, reasonable and adequate under Rule 23(e)(3). (*See* Reiff Dist. Ct. Dkt. No. 33.)

The Court was correct in its initial assessment that the Settlement should be approved.

As the Court has preliminarily determined, the putative settlement class should be certified for

settlement purposes only, and Reiff appointed as the representative plaintiff, on the grounds that:

- with more than seven thousand class members who held Solutia stock in their SIP accounts between September 1, 1997 and August 31, 2005 (the "Settlement Class"), the class is "so numerous that joinder of all the members is impracticable" under Rule 23(a)(1);

- there are one or more questions of fact or law common to the Settlement Class under Rule 23(a)(2), including whether Solutia and the Non-Debtor Defendants (a) breached any fiduciary duties under ERISA by placing Solutia stock in the class members' SIP accounts, (b) failed to provide complete and accurate information to the class members, and (c) caused losses to the Class members' SIP accounts;

- as a person who held Solutia stock in his SIP between September 1, 1997 and August 31, 2005, Reiff's claims are typical of the claims of the Settlement Class under Rule 23(a)(3); and

- Reiff's claims are consistent with those of the Settlement Class and there are no apparent conflicts of interest between Reiff and the Settlement Class, pursuant to Rule 23(a)(4).

*See* Fed. R. Civ. P. 23(a); *In re WorldCom, Inc.*, 347 B.R. at 141-42.

Rule 23(b)(1) is satisfied because the prosecution of claims by individual members of the

Settlement Class could lead to inconsistent or varying adjudications that would establish

incompatible standards of conduct for Solutia and the Non-Debtor Defendants, and an

individual's claims likely would be dispositive of or impair the claims of class members not

party to those adjudications. *See* Fed. R. Civ. P. 23(b)(1); *U.S. Trust Co. of N.Y. v. Alpert*, 163

F.R.D. 409, 418-19 (S.D.N.Y. 1995).

Finally, the terms of the Settlement are "fair, reasonable and adequate" under Rule 23(e) because they are the product of nearly a year's worth of arm's-length negotiations among competent and experienced counsel, and provide class members with a meaningful recovery they might not otherwise have received. *See* Fed. R. Civ. P. 23(e); *Wright v. Stern*, 553 F. Supp. 2d 337, 343-44 (S.D.N.Y. 2008).

### C.   The Benefits Of Class Action Litigation Will Be Realized In Solutia's Bankruptcy.

Benefits of class action litigation, including increased efficiency and compensation to the allegedly injured parties, will be realized by certification of the Settlement Class and approval of the Settlement by saving the Parties from years of costly litigation. *See In re Woodward & Lothrop Holdings*, 205 B.R. at 376. The Settlement also saves Claimants from having to pursue a parallel action against the Non-Debtor Defendants (in which Solutia would have to indemnify certain defendants). With respect to compensation, the Settlement provides class members a recovery that they might not otherwise receive. As with the *Dickerson* action, Claimants' actions might have been dismissed or Claimants could have lost at trial. With respect to the Bankruptcy Claims, Claimants—even if successful—might have received minimal or no recovery if their claims were subordinated. Because the benefits of class action settlement are particularly strong in the instant action, this Court should certify the Settlement Class for settlement purposes only and enter an order approving the Settlement.

### CONCLUSION

For the foregoing reasons, the Settlement Class should be certified for settlement purposes only and the Settlement should be approved.

17

Dated:  August 28, 2008
       New York, New York       Respectfully Submitted,

       */s/ Jonathan S. Henes*
       **KIRKLAND & ELLIS LLP**
       Jonathan S. Henes
       Colin M. Adams
       Citigroup Center
       153 East 53rd Street
       New York, New York 10022-4675
       Telephone: (212) 446-4800
       Facsimile:  (212) 446-4900

       Jeffrey J. Zeiger (*Pro Hac Vice*)
       200 East Randolph Drive
       Chicago, Illinois  60601
       Telephone: (312) 861-2000
       Facsimile:  (312) 861-2200

       *Attorneys for the Reorganized Debtors*

# EXHIBIT 1

## GLOBAL SETTLEMENT AGREEMENT

This GLOBAL SETTLEMENT AGREEMENT ("*Settlement Agreement*") is entered into by and between Roger Reiff, on behalf of himself, the *Settlement Class*, and the *Plan*, and Jeremy Dickerson, individually, on the one hand, and the *Defendants* and *Solutia*, on the other.

### RECITALS

WHEREAS, this *Action* commenced on June 25, 2007, asserting various claims for relief under the Employee Retirement Income Security Act of 1974, as amended, against the *Defendants*, who have disputed the claims;

WHEREAS, Jeremy Dickerson and Roger Reiff filed the *Bankruptcy Claim* against *Solutia* in the *Chapter 11 Proceeding*;

WHEREAS, *Defendants* moved to dismiss the *Complaint* in this *Court*, and *Solutia* objected to and sought to subordinate the *Bankruptcy Claim* in the *Bankruptcy Court*;

WHEREAS, counsel for the *Parties* have engaged in extensive, arm's-length negotiations with regard to the possible settlement of the *Action* and the *Bankruptcy Claim*;

WHEREAS, Jeremy Dickerson filed an action (Case No. 1:04-CIV-07935-LAP) that was dismissed by the *Court* and is currently on appeal to the United States Court of Appeals for the Second Circuit (Case No. 06-1616-cv), and is a party to this *Settlement Agreement* in order to settle all claims in the *Dickerson Litigation*, which asserts that *Defendants* and *Solutia* breached their *ERISA* fiduciary duties in connection with the *Plan's* offering of the *Solutia Stock Fund* during the class period;

WHEREAS, the *Parties* desire to promptly and fully resolve and settle with finality all of the *Released Claims* against the *Defendants* and *Solutia* asserted by Roger Reiff on behalf of himself, the *Settlement Class*, and the *Plan*, including all claims by Jeremy Dickerson and other former employees who, like Dickerson, do not currently maintain account balances in the *Plan* but whose claims are being settled under the *Settlement*; and,

WHEREAS, *Solutia*, the *Solutia Defendants*, and/or the *Insurer* have agreed to provide the funds and the *Bankruptcy Allowed Claim* for this *Settlement* in accordance with the terms stated herein;

NOW, THEREFORE, the *Parties*, in consideration of the promises, covenants and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and subject to approval of the *Court,* do hereby mutually agree as follows:

1.   DEFINITIONS

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1   "*Action*" shall mean: *Reiff, et al., v. Metz, et al.*, 1:07-cv-06011-LAP.

1.2    "*Affiliate*" shall mean: any entity which, directly or indirectly, owns or controls, is owned or controlled by, or is under common ownership or control with a *Person*. For purposes of this definition, "control" shall mean the possession, directly or indirectly, of the power (whether or not exercised) to direct or cause the direction of the management and policies of such *Person*, whether through the ownership of voting securities or otherwise.

1.3    "*Agreement Execution Date*" shall mean: the date on which this *Settlement Agreement* is fully executed, as provided in Section 14.12 below.

1.4    "*Bankruptcy Allowed Claim*" shall mean: allowance of the *Bankruptcy Claim* as a single Class 13 General Unsecured Claim (as such term is defined in the *Plan of Reorganization*) in the amount of $6,650,000, which claim is not subject to adjustment, set-off or subordination.

1.5    "*Bankruptcy Claim*" shall mean: the proofs of claim filed by (i) Jeremy Dickerson on October 19, 2004 (Claim No. 854), and thereafter amended on September 1, 2005 (Claim No. 14735), and then again on June 21, 2007 (Claim No. 14823), and (ii) Roger Reiff on November 23, 2004 (Claim No. 6701) and thereafter amended on June 21, 2007 (Claim No. 14824).

1.5.2    "*Bankruptcy Claim Cap*" shall have the meaning set forth in Section 6.2.

1.6    "*Bankruptcy Court*" shall mean: the United States Bankruptcy Court for the Southern District of New York.

1.6.2    "*Bankruptcy Notice*" shall mean: the form of notice appended as Exhibit C to the form of *Preliminary Approval Order* attached hereto as Exhibit 3.1.

1.7    "*Bankruptcy Proceeds*" shall have the meaning set forth in Section 9.4.3.

1.8    "*Cash Amount*" shall have the meaning set forth in Section 9.2.

1.9    "*Chapter 11 Proceeding*" shall mean: the jointly administered Chapter 11 Proceeding of Solutia bearing Case No. 03-17949 (PCB).

1.10    "*Claims Administrator*" shall mean: Gilardi & Co. LLC.

1.11    "*Class Counsel*" shall mean collectively: Sarraf Gentile LLP and Stember Feinstein Doyle & Payne, LLC.

1.12    "*Class Exemption*" shall mean: Prohibited Transaction Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,532.

1.13    "*Class Notice*" shall mean: the form of notice appended as Exhibit A to the form of *Preliminary Approval Order* attached hereto as Exhibit 3.1.

1.14    "*Complaint*" shall mean: the Complaint filed June 25, 2007 in the *Action*.

1.15    *"Court"* shall mean:  the United States District Court for the Southern District of New York.

1.16    *"Defendants"* shall mean:  Frank A. Metz, Jr., Sheila Feldman, Helen L. Nelling, Susan E. Bevington, Nancy Stemme, Christopher N. Ast, Employee Benefits Plan Committee, Pension And Savings Fund Committee, John Hunter, Robert Clausen, Robert Potter, Michael E. Miller, Paul H. Hatfield, J. Patrick Mulcahy, Sally G. Narodick, Paul Donovan, Robert H. Jenkins, William D. Ruckelshaus, John B. Slaughter, Philip R. Lochner, Jr., Robert T. Blakely and The Northern Trust Company.

1.17    *"Dickerson Litigation"* shall have the meaning set forth in Section 2.5.

1.18    *"Effective Date"* shall mean:  the date on which the *Final Order* becomes *Final* in accordance with Section 1.23 and all conditions set forth in Section 2 have been satisfied or waived as provided therein.

1.19    *"ERISA"* shall mean:  the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.20    *"Escrow Account"* shall mean:  an interest-bearing escrow account established at a financial institution and governed by an escrow agreement acceptable to the *Parties* and the *Insurer,* substantially in the form annexed hereto as Exhibit 1.20.

1.21    *"Escrow Agent"* shall mean:  Gilardi & Co. LLC.

1.22    *"Fairness Hearing"* shall have the meaning set forth in Section 3.9.

1.23    *"Final"* shall mean:  with respect to any judicial ruling or order, the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review (*"Review Proceeding"*) has expired without the initiation of a *Review Proceeding*, or, if a *Review Proceeding* has been timely initiated, that there has occurred a full and final disposition of any such *Review Proceeding* without a reversal or modification, including the exhaustion of proceedings in any remand and/or subsequent appeal after remand. Notwithstanding any other provision hereof, the *Final Order* shall be deemed *Final* without regard to whether (i) the *Court* has entered an order regarding the award of legal fees and expenses; (ii) any order referred to in (i) above, if entered, has become *Final*; or (iii) any order referred to in (i) is reversed or modified on appeal.

1.24    *"Final Order"* shall mean the Order or Judgment entered by the *Court* approving the *Settlement*.

1.24.2   *"Hewitt"* shall mean Hewitt Associates LLC, a human resources company, and any related companies.

1.25    *"Independent Fiduciary"* shall mean:  a *Plan* fiduciary selected and retained at *Solutia's* sole expense that has no "relationship to" or "interest in" (as those terms are used in the *Class Exemption*) any of the *Parties*.

3

1.26    *"Insurance Policies"* shall mean:  Fiduciary Executive Protection Policy issued by Federal Insurance Company and assigned Policy Number 8147-7436.

1.27    *"Insurer"* shall mean:  Federal Insurance Company.

1.27.2  *"Mercer"* shall mean Mercer LLC, a human resources and financial advisory company, and any related companies.

1.28    *"Net Proceeds"* shall have the meaning set forth in Section 11.1.

1.29    *"Parties"* shall mean:  the *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and *Plan*; Jeremy Dickerson, individually; the *Defendants*; and *Solutia*.

1.30    *"Person"* shall mean:  an individual, partnership, corporation, governmental entity or any other form of entity or organization.

1.31    *"Plaintiffs"* shall mean:  the *Representative Plaintiff*, Jeremy Dickerson, individually, and each member of the *Settlement Class*.

1.32    *"Plan"* shall mean: the Solutia Inc. Savings and Investment Plan and all predecessor and successor plans, individually and collectively, and any trusts created under such *Plan*.

1.33    *"Plan of Allocation"* shall mean:  the *Plan of Allocation* approved by the Court as contemplated by Section 3.9 and described in Section 11.

1.34    *"Plan of Reorganization"* shall mean Solutia's Fifth Amended Plan of Reorganization (as modified) dated November 28, 2007, as confirmed by final order of the *Bankruptcy Court*.

1.35    *"Preliminary Approval Order"* shall have the meaning set forth in Section 3.1.

1.36    *"Preliminary Motion"* shall have the meaning set forth in Section 3.1.

1.37    *"Released Claims"* shall have the meaning set forth in Section 4.1.

1.38    *"Released Parties"* shall have the meaning set forth in Section 4.1.

1.39    *"Releases"* shall mean the releases set forth in Sections 4.1, 4.2, and 4.3.

1.40    *"Representative Plaintiff"* shall mean:  Roger Reiff.

1.41    *"Representatives"* shall mean:  attorneys, agents, directors, officers, and employees.

1.42    *"Settlement"* shall mean:  the settlement to be consummated under this *Settlement Agreement* pursuant to the *Final Order*.

1.43    *"Settlement Agreement"* means this Global Settlement Agreement.

4

1.44    "*Settlement Class*" shall mean: All persons who were participants in the *Plan* who held Solutia stock in their *Plan* account at any time during the period from September 1, 1997 through and including August 31, 2005 and their beneficiaries, successors, assigns, executors, administrators, estates, heirs and legal representatives. Excluded from the *Settlement Class* are *Defendants* and any named fiduciary of the *Plan*, members of their immediate families, and their legal representatives, heirs, successors, or assigns unless such individual is a member of the *Settlement Class* in his or her own right.

1.45    "*Settlement Fund*" shall have the meaning set forth in Section 9.1.4.

1.46    "*Solutia*" shall mean: Solutia Inc., a Delaware corporation, as debtor, debtor-in-possession and as reorganized debtor, each of its *Affiliates*, and each of its predecessors and *Successors-In-Interest*.

1.47    "*Solutia Defendants*" shall mean: Frank A. Metz, Jr., Sheila Feldman, Helen L. Nelling, Susan E. Bevington, Nancy Stemme, Christopher N. Ast, Employee Benefits Plan Committee, Pension and Savings Fund Committee, John Hunter, Robert Clausen, Robert Potter, Michael E. Miller, Paul H. Hatfield, J. Patrick Mulcahy, Sally G. Narodick, Paul Donovan, Robert H. Jenkins, William D. Ruckelshaus, John B. Slaughter, Philip R. Lochner, Jr., and Robert T. Blakely.

1.48    "*Solutia Stock Fund*" shall mean: the stock fund established under the *Plan* that was designed to invest primarily in Solutia common stock.

1.49    "*Successor-In-Interest*" shall mean: a *Person's* estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

1.50    "*Summary Notice*" shall mean: the form of notice appended as Exhibit B to the form of *Preliminary Approval Order* attached hereto as Exhibit 3.1.

1.51    "*Trustee*" shall mean: The Northern Trust Company.

2.    CONDITIONS TO THE *SETTLEMENT*

This *Settlement* shall be contingent upon each of the following conditions having been (i) satisfied or (ii) waived by all *Parties*:

2.1    Condition #1:  Class Certification for Purposes of Settlement.  The *Court* shall have certified this *Action* as a non opt-out class action for settlement purposes only pursuant to Rule 23(a)(l)-(4), 23(b)(1) and 23(e) of the Federal Rules of Civil Procedure and Bankruptcy Rule 7023, with Roger Reiff as the class representative, and with *Class Counsel* as counsel for the *Representative Plaintiff* and the *Settlement Class*.  If the *Effective Date* of the *Settlement* does not occur, the *Defendants* and *Solutia* will not be deemed to have consented to the certification of any class, and the agreements and stipulations in this *Settlement Agreement* concerning the class definition, class period, or class certification shall not be used in any way to support class certification, the class definition, or any class period, and the *Defendants* and *Solutia* will retain all rights to oppose class certification, including opposition of certification of a class identical to

5

that provided for in this *Settlement Agreement*.

2.2      Condition #2: Release by the Independent Fiduciary and Plan.

2.2.1      Not later than thirty (30) business days after the *Agreement Execution Date*, the *Solutia Defendants* or *Solutia* shall retain an *Independent Fiduciary* to evaluate this *Settlement*. The *Settlement* will be contingent upon the *Independent Fiduciary*: (i) authorizing the *Settlement* and giving a release to the *Released Parties* in its capacity as a fiduciary of the *Plan* and for and on behalf of the *Plan* that is coextensive with the *Releases* from *Representative Plaintiff* on behalf of himself, the *Plan* and the *Settlement Class*; and (ii) determining that the *Settlement* is exempt under the terms of the Prohibited Transaction Class Exemption 2003-39, and/or finding that the *Settlement* does not constitute a prohibited transaction under *ERISA* section 406(a).

2.2.2      At least twenty-one (21) days before the *Fairness Hearing* is held, the *Plan* (acting by and through the *Independent Fiduciary*) and the *Independent Fiduciary* (in its capacity as a fiduciary of the *Plan*) shall have agreed in writing, in consideration of the terms herein, to grant, upon the *Effective Date*, releases of the *Released Parties*, which releases (i) shall release the same claims as the *Releases* set forth in Section 4 below; and (ii) shall be determined by the *Independent Fiduciary* to meet the requirements of the *Class Exemption*.

2.2.3      If the *Independent Fiduciary* fails to timely grant the releases prescribed in Section 2.2.2 above, the *Settlement* shall terminate and become null and void, and the provisions of Section 12.2 shall apply.

2.2.4      The fees and costs associated with the services of the *Independent Fiduciary* shall be paid solely by *Solutia*. *Class Counsel* shall be provided with a copy of the *Independent Fiduciary's* retention agreement and final report. *Solutia*, the *Solutia Defendants*, and/or the *Independent Fiduciary* shall not be required to provide any other information or documentation regarding the *Independent Fiduciary* to *Class Counsel*.

2.3      Condition #3: District Court Approval. The *Settlement* shall have been approved by the *Court* following notice to the *Settlement Class*, notice to the members of the approved list pursuant to Bankruptcy Rule 2002, and the *Fairness Hearing*, in accordance with the standards embodied by Federal Rule of Civil Procedure 23 and Bankruptcy Rules 7023 and 9019.

2.4      Condition #4: Withdrawal of the Reference. The *Court* shall enter an order based upon the consent of the *Parties* withdrawing the reference as to the *Bankruptcy Claim* and any pending objections thereto solely for the purpose of effectuating this *Settlement Agreement*. Any such *Order* withdrawing the reference shall state that it will be deemed null and void in the event the *Effective Date* of the *Settlement* does not occur.

2.5      Condition #5: Remand of the *Dickerson Litigation.* The case filed by Jeremy Dickerson in the *Court* (Case No. 1:04-CIV-07935-LAP) and the appeal to the United States Court of Appeals for the Second Circuit (Case No. 06-1616-cv) (collectively, the "*Dickerson Litigation*") shall be remanded to the *Court* solely for the purpose of effectuating the *Settlement*. In the event that the *Effective Date* of the *Settlement* does not occur, the remand of the *Dickerson Litigation* shall be of no effect and the *Dickerson Litigation* shall for all purposes with respect to

6

the *Parties* revert to its status as of the date this *Settlement Agreement* was signed. The *Parties* shall support seeking remand, but if the *Dickerson Litigation* is not remanded to the *Court* through no fault of *Solutia* or the *Defendants*, the *Parties* agree to negotiate in good faith an alternative to remand that will satisfy this condition. *Plaintiffs* also may waive this condition and thereafter will agree to (i) not terminate the *Settlement*, (ii) jointly request with *Solutia* and the *Defendants* that the Second Circuit stay the *Dickerson Litigation* until the *Court* issues a *Final* order approving or rejecting the *Settlement*, and (iii) dismiss the *Dickerson Litigation* with prejudice upon the *Effective Date*.

2.6    Condition #6: Funding of *Cash Amount*. *Solutia*, the *Solutia Defendants* and/or the *Insurer* shall have deposited the *Cash Amount* into the *Escrow Account* in accordance with Section 9.1.2 and 9.2.

2.7    Condition #7: Funding of *Bankruptcy Proceeds*. *Solutia* shall deliver and/or deposit the *Bankruptcy Proceeds* in accordance with Section 9.4. This condition shall be deemed satisfied upon the deposit by *Solutia* of the requisite number of shares of Solutia New Common Stock (as defined in the *Plan of Reorganization*) on account of the *Bankruptcy Allowed Claim* so that such distribution is equal to, on a percentage basis, the distribution received by unsecured creditors generally pursuant to the *Plan of Reorganization* on account of allowed general unsecured claims. The number of shares of Solutia New Common Stock to be deposited which the *Settlement Class* will be entitled to pursuant to the preceding sentence based upon *Solutia's* current calculation is 237,913. Nothing herein, including but not limited to the release contained in Section 4.1 below as it relates to *Solutia*, shall impact or limit the rights of the *Settlement Class* to the receipt of any additional shares of Solutia New Common Stock beyond the initial deposit described above on account of the *Bankruptcy Allowed Claim* and as contemplated by Section 9.4.2 below. The *Settlement Class* shall retain the right, subsequent to the *Effective Date*, to pursue any claim to such additional shares, as appropriate and as available to any holder of an allowed general unsecured claim under the *Plan of Reorganization* in the *Chapter 11 Proceeding*.

2.8    Condition #8: Finality of Final Orders. The *Final Order* shall have become *Final* in accordance with Section 1.23 above.

3.    PROCEDURES AND SCHEDULE

3.1    Motion for Preliminary Approval of Settlement and of Notices. As soon as reasonably possible upon the execution of this *Settlement Agreement* by the *Parties*, the *Representative Plaintiff* will file a motion ("*Preliminary Motion*") with the *Court* for an order substantially in the form annexed hereto as Exhibit 3.1, including the exhibits thereto (the "*Preliminary Approval Order*"). *Class Counsel* shall provide a copy of the *Preliminary Motion* to the *Parties* for comment and approval before it is filed, and the *Parties* will cooperate in good faith to obtain the *Preliminary Approval Order*.

3.2    Issuance of Class Notice. Upon entry of the *Preliminary Approval Order* by the *Court*, (i) *Class Counsel* shall cause the *Class Notice* to be disseminated to the *Settlement Class* and (ii) *Solutia* shall cause the *Summary Notice* to be published in one newspaper, if so ordered by the *Court* in its *Preliminary Approval Order*. Subject to Section 10.1, *Plaintiffs* shall bear the

7

cost of disseminating the *Class Notice*. If required by the *Court*, *Solutia* shall bear the cost of the publication of the *Summary Notice* in one newspaper. The *Parties* will utilize their reasonable best efforts to set the *Fairness Hearing* sixty (60) business days from the mailing of the *Class Notice* to the *Settlement Class*.

      3.3     <u>Bankruptcy Notice</u>. At least 20 days prior to the *Fairness Hearing*, *Solutia* will provide at its expense the *Bankruptcy Notice* to the members of the approved list pursuant to Bankruptcy Rule 2002 in *Solutia's Chapter 11 Proceeding* of the motion for a *Final Order* approving the *Settlement* under Bankruptcy Rules 7023 and 9019 and section 363 of the Bankruptcy Code, and approving the *Bankruptcy Allowed Claim*. The *Bankruptcy Notice* will include the deadline and relevant procedures for objecting to the *Settlement*.

      3.4     <u>Objections</u>. Any *Settlement Class* member who wishes to object to the *Settlement* shall inform the *Court* in writing of his, her, or its intent to object to the *Settlement* and/or to appear at the *Fairness Hearing* by following the procedures set forth in the *Class Notice*, including the requirement that timely notice of intent to object or appear be sent by first-class mail, postage prepaid to the address specified in the *Class Notice*. To be considered timely, the notice must be postmarked at least 21 days prior to the date of the *Fairness Hearing*. The notice must set forth all objections to the *Settlement* and include any supporting papers and arguments. Any *Settlement Class* member who fails to submit such a timely written notice shall be barred from making any statement or objection to the *Settlement*, including at the *Fairness Hearing*, and shall forever waive his, her or its objection, except by permission of the *Court*.

      3.5     <u>Report by the *Independent Fiduciary*</u>. No later than 21 days before the *Fairness Hearing*, the *Independent Fiduciary* shall provide copies of its final report pursuant to Section 2.2.

      3.6     <u>Motion for Final Approval</u>. No later than 14 days before the *Fairness Hearing*, *Class Counsel* shall file a motion for final approval of the *Settlement,* which motion shall be heard at the time of the *Fairness Hearing* (unless the *Court* directs otherwise).

      3.7     <u>Motion for Final Approval of the *Bankruptcy Allowed Claim*</u>. No later than 14 days before the *Fairness Hearing*, *Solutia* shall file a motion for final approval of the *Settlement* under Bankruptcy Rules 7023 and 9019 and section 363 of the Bankruptcy Code, and approving the *Bankruptcy Allowed Claim*, which motion shall be heard at the time of the *Fairness Hearing* (unless the *Court* directs otherwise).

      3.8     <u>Motion for Award of Attorney Fees</u>. No later than 14 days before the *Fairness Hearing*, *Class Counsel* shall file a motion for attorneys' fees, costs and expenses, and incentive payments for the *Representative Plaintiff* and Jeremy Dickerson, as contemplated by Section 13 of this *Settlement Agreement*, which motion shall be heard at the time of the *Fairness Hearing* (unless the *Court* directs otherwise).

      3.9     <u>The *Fairness Hearing*</u>. The *Court* shall conduct a hearing at which it will consider whether the *Settlement* is fair, reasonable, and adequate ("*Fairness Hearing*"). At the *Fairness Hearing*, the *Court* shall determine whether to: (i) enter judgment that both (a) approves the *Settlement* pursuant to Federal Rule of Civil Procedure 23, section 363 of the

Bankruptcy Code, and Bankruptcy Rules 7023 and 9019 and (b) dismisses the *Action* and the *Dickerson Litigation* with prejudice (which judgment is referred to herein as the "*Final Order*"); (ii) approve the distribution of the *Net Proceeds* as provided in Section 10.3 and as provided in the *Plan of Allocation*; (iii) find that this *Action* satisfies the applicable prerequisites for class action treatment under Federal Rule of Civil Procedure 23(a) and 23(b)(1); (iv) award attorney fees, costs, and expenses to *Class Counsel*, and incentive payments to the *Representative Plaintiff* and Jeremy Dickerson; and (v) decide such other matters as this *Settlement Agreement* contemplates and the *Court* may deem just and proper.

4.     RELEASES

4.1     Releases of the *Released Parties*.  Subject to Section 4.4 below and upon the *Effective Date,* the *Representative Plaintiff*, on behalf of himself, the *Plan*, and the *Settlement Class*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecuting all of the *Defendants* and *Solutia* and any *Person* that at any time served as a named or functional fiduciary or a trustee of the *Plan* (but excluding the *Independent Fiduciary*), as well as any *Representatives* or *Affiliates* of *Defendants* or *Solutia* or any such *Person* (including but not limited to their attorneys, agents, directors, officers, and employees), and the *Insurer* (the "*Released Parties*") from any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, and costs whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that have been, could have been, or could be brought by the *Representative Plaintiff* or Jeremy Dickerson, either individually or by or on behalf of the *Plan* and/or any member of the *Settlement Class*, or by any member of the *Settlement Class* and that arise out of or are related in any way to the acts, omissions, facts, matters, transactions, or occurrences that have been alleged or referred to in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*, including but not limited to claims based on breach of *ERISA* fiduciary duties to the *Plan*, to the *Representative Plaintiff*, to the *Settlement Class*, to Jeremy Dickerson and to the other participants and beneficiaries of the *Plan* in connection with: (a) the acquisition and direct or indirect holding of *Solutia* common stock and/or units of the *Solutia Stock Fund* by the *Plan*; (b) failure to provide complete and accurate information to the *Plan's* fiduciaries or the *Plan's* participants and beneficiaries regarding *Solutia*, *Solutia* common stock, and/or the *Solutia Stock Fund*; (c) failure to appoint, remove and/or adequately monitor the *Plan's* fiduciaries; (d) the acquisition, disposition, or retention of *Solutia* common stock and/or units of the *Solutia Stock Fund*; and (e) any claim that would be barred by principles of *res judicata* or collateral estoppel had the claims asserted in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim* been fully litigated and resulted in a final judgment or order (collectively, "*Released Claims*").

4.2     Releases of the *Representative Plaintiff, the Plan, the Settlement Class*, Jeremy Dickerson, and *Class Counsel*.  Subject to Section 4.4 below and upon the *Effective Date*, the *Defendants* and *Solutia* shall be deemed to have, and by operation of the *Final Order* shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of the *Representative Plaintiff*, the *Plan*, the *Settlement Class*, Jeremy

9

Dickerson, and *Class Counsel* from any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees and costs, whether arising under local, state, or federal law, whether by statute, contract, common law, equity or otherwise, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that have been, could have been, or could be brought by the *Defendants* or *Solutia* and arise out of or are related in any way to the acts, omissions, facts, matters, transactions, or occurrences that have been alleged or referred to in the *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*.

      4.3     Release Under California Civil Code § 1542. The *Parties* intend and agree that the *Releases* granted in this Section 4 shall be effective as a bar to any and all currently unsuspected, unknown, or partially known claims within the scope of their express terms and provisions. Accordingly, the *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, the *Defendants*, and *Solutia* hereby expressly waive any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common laws of any other State, Territory, or other jurisdiction. Section 1542 reads in pertinent part:

        A general release does not extend to claims that the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

      The *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, the *Defendants*, and *Solutia* each hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction was separately bargained for and that neither the *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, on the one hand, nor the *Defendants* and *Solutia*, on the other, would enter into this *Settlement Agreement* unless it included a broad release of unknown claims. The *Representative Plaintiff*, on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, the *Defendants,* and *Solutia* each expressly agree that all release provisions in this *Settlement Agreement* shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected, and future claims, demands, and causes of action. The *Representative Plaintiff* assumes for himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class* assumes for himself or herself, Jeremy Dickerson, individually, assumes for himself, the *Defendants* assume for themselves, and *Solutia* assumes for itself the risk of his, her, their or its respective subsequent discovery or understanding of any matter, fact, or law, that if now known or understood, would in any respect have affected his, her, their or its entering into this *Settlement Agreement*.

      4.4     Persons and Claims Not Released.

10

4.4.1    The *Settlement* and dismissal of the *Action* shall not release, bar or waive any *ERISA* section 502(a)(1)(B) claim for vested benefits by any participant or beneficiary of the *Plan* where such claims are unrelated to any matter asserted in this *Action*, the *Dickerson Litigation* or the *Bankruptcy Claim*.

4.4.2    The releases set forth in Sections 4.1, 4.2, and 4.3 (the "*Releases*") are not intended to include the release of any rights or duties arising out of this *Settlement* or *Settlement Agreement*, including the express warranties and covenants in this *Settlement Agreement*.

5.    WITHDRAWAL OF BALANCE OF BANKRUPTCY CLAIM

5.1    Subject to the terms of Section 12 below, after the *Court* has entered the *Final Order*: (i) the balance of the *Bankruptcy Claim* (i.e., any amount in excess of $6,650,000), as well as any individual proof of claim related to the subject matter of the *Action*, the *Dickerson Litigation*, or the *Bankruptcy Claim* filed by a member of the *Settlement Class*, shall be deemed withdrawn with prejudice and disallowed; (ii) *Solutia*, on behalf of the estate, waives and releases any right, claim or cause of action to subordinate the *Bankruptcy Allowed Claim* under section 510(b) of the Bankruptcy Code or otherwise; and (iii) the *Final Order* shall be binding on all bankruptcy parties.

6.    COVENANTS

The *Parties* covenant and agree as follows:

6.1    Covenants Not to Sue.

6.1.1    The *Representative Plaintiff* on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, covenant and agree:  (i) not to file against any *Released Party* any additional claim based on, relating to or arising from any *Released Claim*, or refile the claim brought in this *Action*, the *Dickerson Litigation,* or the *Bankruptcy Claim*; (ii) not to file against any *Released Party* any claim released under Section 4.1 or 4.3; (iii) that the foregoing covenants and agreements shall be a complete defense to any such claims against any of the respective *Released Parties*; and (iv) that if any such claims are filed against any *Released Party*, the *Released Party* shall be entitled to reimbursement from the *Person* asserting such claims of any attorneys' fees or costs actually incurred in seeking dismissal of those claims.

6.1.2    *Defendants* and *Solutia* covenant and agree:  (i) not to file against any *Plaintiff, Class Counsel*, any *Defendant* or *Solutia* any claim released under Section 4.2 or Section 4.3; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claims against any of the respective *Plaintiffs, Class Counsel, Defendants* or *Solutia*.

6.2    Maximum Amount of Claim Against Estates.  The *Representative Plaintiff*, each member of the *Settlement Class*, and Jeremy Dickerson covenant and agree that the maximum amount of the *Bankruptcy Claim* shall be no more than $15 million (the "*Bankruptcy Claim Cap*") in the event that the *Settlement Agreement* terminates under Section 12.1; provided, however, that the *Bankruptcy Claim Cap* shall not be binding on the *Representative Plaintiff*, the *Settlement Class*, or Jeremy Dickerson in terms of the amount of any claim asserted against the

11

*Solutia Defendants* and *Trustee* in the event that the *Settlement Agreement* terminates under Section 12.1, and may not be used as evidence in such proceedings or argued to be an admission.

      6.3     <u>Taxation of *Escrow Account*</u>. The *Representative Plaintiff* on behalf of himself, the *Settlement Class*, and the *Plan*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, acknowledge that the *Released Parties* have no responsibility for any taxes due on funds once deposited in the *Escrow Account* or on any payments or fees that the *Representative Plaintiff*, Jeremy Dickerson or *Class Counsel* receive from the *Escrow Account*, should any be awarded pursuant to Section 13 hereof. Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the *Escrow Account*.

      6.4     <u>Cooperation</u>.

      6.4.1     The *Parties* covenant and agree that they will reasonably cooperate with one another in obtaining the *Final Order*, substantially in the form annexed hereto as Exhibit 6.4.1, and will not do anything inconsistent with obtaining the *Final Order*.

      6.4.2     *Solutia* and the *Defendants* covenant and agree that they will not enter into any agreement that restricts the application or disposition of the *Settlement Fund*.

      6.4.3     *Solutia* and the *Solutia Defendants* shall reasonably cooperate with *Class Counsel* by timely responding to reasonable written requests for data in the custody or control of *Solutia* or the *Solutia Defendants* necessary for *Class Counsel* to implement or enforce a proposed *Plan of Allocation*.

      6.4.4     The *Parties* shall comply with reasonable requests for information made by the *Independent Fiduciary* that are for the purpose of reviewing this *Settlement Agreement*.

      6.4.5     If the *Court* deems it necessary for the *Defendants* and/or *Solutia* to supply information in their possession as part of the *Court's* review of the *Settlement Agreement*, the *Defendants* and *Solutia* agree to reasonably expedite provision of such information as directed by the *Court*. If the *Representative Plaintiff* deems it necessary for the *Solutia Defendants* and/or *Solutia* to supply information in their possession in order to respond to any timely filed objection, the *Solutia Defendants* and *Solutia* agree to reasonably expedite provision of such information. To the extent such information is in the possession of a third-party vendor (such as *Hewitt* or *Mercer*), *Solutia* agrees to use reasonable commercial efforts to obtain that information. Notwithstanding any other provision herein, any costs incurred by *Solutia* in obtaining information under this Section 6.4.5 or any other information from a third-party vendor shall be paid by the *Escrow Account*. Any disputes regarding requests for information by the *Representative Plaintiff* shall be referred to the *Court*, which shall decide any such issue if it cannot obtain the agreement of the *Parties*.

      7.     <u>REPRESENTATIONS AND WARRANTIES</u>

      7.1     <u>Representations and Warranties of the *Representative Plaintiff* and Jeremy Dickerson</u>.

      7.1.1     The *Representative Plaintiff* on behalf of himself, the *Plan*, and the *Settlement*

12

*Class*, and Jeremy Dickerson, individually, represent and warrant that they have not assigned or otherwise transferred any interest in any *Released Claims*, and further covenant that they will not assign or otherwise transfer any interest in any *Released Claims*, except as authorized by Section 9.4.1; and

      7.1.2   Pursuant to Sections 4 and 6, the *Representative Plaintiff* on behalf of himself, the *Plan*, and the *Settlement Class*, each member of the *Settlement Class*, and Jeremy Dickerson, individually, represent and warrant that, upon the *Effective Date*, they shall have no surviving claim or cause of action against any of the *Released Parties* with respect to the *Released Claims*.

      7.2   <u>*Parties'* Representations and Warranties</u>.  The *Parties*, by and through their *Representatives*, each represent and warrant:

      7.2.1   That they are voluntarily entering into this *Settlement Agreement* as a result of arm's-length negotiations among their counsel, that in executing this *Settlement Agreement* they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this *Settlement Agreement* by any representations or statements pertaining to any of the foregoing matters by any *Party* or by any *Person* representing any *Party* to this *Settlement Agreement*.  Each of the *Parties* assumes the risk of mistake as to facts or law; and

      7.2.2   That they or their *Representatives* have carefully read the contents of this *Settlement Agreement*, and this *Settlement Agreement* is signed freely by each *Person* executing this *Settlement Agreement* on behalf of each of the *Parties*.  Each of the *Parties* further represent and warrant to each other that he, she, it, or his/her/its *Representatives* have made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement* and all of the matters pertaining thereto, as he, she, or it deems necessary.

      7.3   <u>Signatories' Representations and Warranties</u>.  Each individual executing this *Settlement Agreement* on behalf of any other *Person* does hereby personally represent and warrant to the other *Parties* that he or she has the authority to execute this *Settlement Agreement* on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

      8.   <u>NO ADMISSION OF LIABILITY OR WRONGDOING</u>

      The *Parties* understand and agree that this *Settlement Agreement* embodies a compromise and settlement of disputed claims, and that nothing in this *Settlement Agreement*, including the furnishing of consideration for this *Settlement Agreement*, shall be deemed to constitute any finding of fiduciary status under *ERISA* or wrongdoing by any of the *Defendants* or *Solutia*, or give rise to any inference of fiduciary status under *ERISA* or wrongdoing or admission of wrongdoing or liability in this or any other proceeding.  This *Settlement Agreement* and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual.  Moreover, the *Defendants* and *Solutia*

13

specifically deny any such liability or wrongdoing. Neither the existence of nor the terms of this *Settlement Agreement* shall be offered or received in evidence in any action or proceeding for any purpose, except (i) in an action or proceeding arising under this *Settlement Agreement* or arising out of or relating to the *Preliminary Approval Order* or the *Final Order*, or (ii) in an action or proceeding where the *Releases* provided pursuant to this *Settlement Agreement* may serve as a bar to recovery. The *Parties* further agree that the *Settlement Class* is for settlement purposes only and *Solutia* and the *Defendants* deny that such class would be appropriate absent settlement.

  9.  THE *SETTLEMENT FUND* AND DELIVERIES INTO THE *SETTLEMENT FUND*

  9.1  The *Settlement Fund*.

  9.1.1 No later than fourteen (14) days after the *Agreement Execution Date*, *Class Counsel* shall cause to establish at a financial institution to be approved by the *Court* in the *Preliminary Approval Order* the *Escrow Account*, which is an interest-bearing account and considered a common fund created as a result of the *Action*, the *Bankruptcy Claim*, and the *Dickerson Litigation*. *Class Counsel* shall provide to *Solutia*, the *Solutia Defendants* and the *Insurer* (a) written notification of the date of establishment of the *Escrow Account*, (b) written notification of the following information regarding the *Escrow Agent* and the *Escrow Account*: bank name, bank address, ABA number, account number, account name, and taxpayer identification number, and (c) any additional information needed to deposit the *Cash Amount* and/or the *Bankruptcy Proceeds* into the *Escrow Account*. *Class Counsel* shall direct the *Escrow Agent* to only make distributions from the *Escrow Account* in strict accordance with the *Settlement Agreement* and *Court* orders. No other disbursements shall be authorized by *Class Counsel*.

  9.1.2 No later than seven (7) business days after the *Court's* entry of the *Preliminary Approval Order*, *Solutia*, the *Solutia Defendants and/or* the *Insurer* shall deposit the *Cash Amount* into the *Escrow Account*. *Solutia*, the *Solutia Defendants* and/or the *Insurer* shall have no further funding obligation to the *Escrow Account* whatsoever after such funding occurs. Under no circumstance shall *Solutia* be required to pay more than $250,000 toward the *Cash Amount*. The *Trustee* shall have no funding obligation to the *Escrow Account*. Nothing in this paragraph shall relieve *Solutia* of its duty to distribute shares of Solutia New Common Stock on account of the *Bankruptcy Allowed Claim*.

  9.1.3 If the *Effective Date* of the *Settlement* does not occur, or if the *Settlement* terminates or fails for any reason, the *Cash Amount*, together with the interest earned thereon, less any deductions set forth in this Section 9.1.3, shall be returned to *Solutia*, the *Solutia Defendants* and/or the *Insurer* promptly and the *Parties* will return to their respective positions in this *Action*, the *Bankruptcy Claim*, and the *Dickerson Litigation* as of the date on which this *Settlement Agreement* was signed. The only deductions from the returned amount shall be fees associated with establishing and maintaining the *Escrow Account* as set forth in Section 9.1.5 below. Except as provided with respect to *Solutia* in Sections 2.2.4, 3.2, 3.3, 9.2.1 and 10.1, the *Insurer*, *Solutia Defendants* and *Solutia* shall not be responsible for any payments, costs or fees under this paragraph or the *Settlement* beyond those obligations recited above to cause the *Cash*

14

*Amount* to be deposited in the *Escrow Account*.

      9.1.4    The *Cash Amount* and the *Bankruptcy Proceeds*, together with interest earned thereon, shall constitute the "*Settlement Fund*."

      9.1.5    The *Settlement Fund* shall be structured and managed to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 through 1.468B-5 of the U.S. Department of Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, and provide reports to *Class Counsel* for tax purposes.  It is intended that the *Settlement Fund* be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with an *ERISA*-qualified Plan.  The *Parties* shall not take a position in any filing or before any tax authority inconsistent with such treatment.  All taxes on the income of the *Settlement Fund* and tax-related expenses incurred in connection with the taxation of the *Settlement Fund* shall be the responsibility of *Plaintiffs* and shall be paid out of the *Settlement Fund*.  The *Defendants* and *Solutia* are not responsible for and shall have no liability for any taxes or related expenses or for any tax reporting requirements.  The *Parties* shall direct the *Escrow Agent* to pay from the *Escrow Account* the reasonable cost of administering the *Settlement Fund* without further order of the *Court*, which expenses shall include (i) expenses associated with the preparation and filing of all tax reports and tax returns required to be filed by the *Settlement Fund*; (ii) payment of any taxes owed by the *Settlement Fund*; (iii) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the *Settlement Fund*; and (iv) reasonable fees charged and expenses incurred by the *Escrow Agent* solely associated with administration of the *Escrow Account*.  The *Parties* may instruct the *Escrow Agent* to reserve any portion of the *Settlement Fund* for the purpose of satisfying future or contingent expenses or obligations, including expenses of *Escrow Account* administration or any disbursement provided under the terms of this *Settlement Agreement*.

      9.1.6    The *Settlement Fund* shall not be considered "plan assets" as that term is defined by *ERISA* until such time and in such amounts as they are disbursed from the *Escrow Account* and deposited into the *Plan;* this provision notwithstanding, the *Settlement Fund* remains a "qualified settlement fund" pursuant to Section 9.1.5 above.

      9.2    The *Cash Amount*.  In consideration of, and expressly in exchange for, all of the promises and agreements set forth in this *Settlement Agreement*, *Solutia*, the *Solutia Defendants* and/or the *Insurer* shall deposit the sum of $4,750,000 (the "*Cash Amount*") into the *Escrow Account* via wire transfer within the period provided in Section 9.1.2.  Under no circumstance shall *Solutia* be required to pay more than $250,000 toward the *Cash Amount*.

      9.2.1    Under no circumstance shall *Solutia*, the *Solutia Defendants*, and/or the *Insurer* collectively be required to pay more than $4,750,000 to the *Settlement Fund*.  Nothing in this paragraph shall relieve *Solutia* of its duty to distribute shares of Solutia New Common Stock on account of the *Bankruptcy Allowed Claim*.

      9.3    Sole Monetary Contribution.  Except as set forth in Section 2.2.4 above and as set forth in Section 10.1 below, the *Cash Amount* shall constitute a non-recourse settlement amount, and it shall be the full and sole monetary contribution made by or on behalf of *Solutia*, the

*Solutia Defendants* and/or *Insurer* collectively in connection with the *Settlement*. There shall not be any monetary contribution by the *Trustee*. *Solutia* shall be responsible for distribution of shares of Solutia New Common Stock on account of the *Bankruptcy Allowed Claim* pursuant to Section 9.4 below.

9.4    The *Bankruptcy Proceeds*.

9.4.1    Upon the *Effective Date*, the *Representative Plaintiff* shall have the authority to transfer or sell the *Bankruptcy Allowed Claim* or to liquidate any shares of Solutia New Common Stock delivered on account of the *Bankruptcy Allowed Claim*, with the proceeds of any such transfer or sale (the "*Bankruptcy Proceeds*") to be deposited into the *Escrow Account* and to become part of the *Settlement Fund*. Nothing herein shall preclude the *Representative Plaintiff* from negotiating the terms of such transfer or sale prior to the *Effective Date* so long as such transfer or sale is conditioned upon the occurrence of the *Effective Date*.

9.4.2    If the *Representative Plaintiff* does not transfer or sell the *Bankruptcy Allowed Claim* as authorized by Section 9.4.1, *Solutia* shall be responsible for depositing the requisite number of shares of Solutia New Common Stock on account of the *Bankruptcy Allowed Claim* pursuant to the *Plan of Reorganization* into the *Escrow Account* within 10 days of the *Effective Date* if a distribution of such shares has already been made pursuant to the *Plan of Reorganization* and thereafter as such shares become distributable.

9.4.3    The proceeds from any transfer or sale of the *Bankruptcy Allowed Claim* and/or any shares of Solutia New Common Stock that become deliverable on account of the *Bankruptcy Allowed Claim* pursuant to the *Plan of Reorganization* shall constitute the "*Bankruptcy Proceeds*" as that term is used in this *Settlement Agreement*.

10.    PAYMENTS FROM THE *SETTLEMENT FUND*

10.1    Expenses of Providing Notice To *Settlement Class*. Notwithstanding 9.2 and 9.3, *Solutia* shall (i) directly pay $9,500 into the *Escrow Account* no later than seven (7) business days after the *Court's* entry of the *Preliminary Approval Order* and (ii) directly pay the costs for the *Bankruptcy Notice* and for publication notice in one newspaper if publication notice is required by the *Court*. *Solutia* shall not be responsible for any other costs incurred or related to providing notice under this *Settlement Agreement*.

10.2    Costs of Settlement Administration. The *Plan, Solutia, Hewitt, Mercer* and the *Claims Administrator* shall be entitled to payment from the *Escrow Account* for costs incurred or reasonably expected to be incurred in providing notice to the *Settlement Class* or in connection with the allocation and/or distribution of the *Net Proceeds* deposited into the *Plan* in accordance with this *Settlement Agreement*, including but not limited to the costs of implementing the *Plan of Allocation*, creating and maintaining new accounts pursuant to the *Plan of Allocation*, and mailing notices or other *Plan* materials to members of the *Settlement Class*. The *Plan, Solutia, Hewitt* or *Mercer* shall not be entitled to recovery of the usual and customary administrative costs incurred over a similar time period in the administration of the *Plan* without giving effect to the *Settlement*. In the event that the costs for which the *Plan, Solutia, Hewitt, Mercer* and the *Claims Administrator* shall be entitled to payment from the *Escrow Fund* have not yet been

16

incurred on the *Effective Date* (including but not limited to the annual costs of maintaining new accounts created pursuant to the *Plan of Allocation*), the *Plan*, *Solutia*, *Hewitt*, *Mercer* and the *Claims Administrator* shall estimate such anticipated costs in good faith and shall provide *Class Counsel* a reasonably detailed explanation of their nature and bases. Total reimbursement payments to the *Plan* or *Solutia* for time spent implementing the *Settlement* shall be based on a rate of $145 per hour and shall be capped for time spent by *Solutia* employees in the aggregate at $10,875.00. The *Escrow Account* shall promptly pay the *Plan*, *Solutia*, *Hewitt*, *Mercer* and the *Claims Administrator* all reasonable costs as described in this provision upon approval of the *Plan of Allocation* but, in any event, prior to the deposit of the *Settlement Fund* into the *Plan*.

       10.3    Disbursements from the *Settlement Fund*. Except as provided in Section 12 below, no distribution of any part or all of the *Settlement Fund* shall be paid from the *Settlement Fund* prior to the *Effective Date* until the *Escrow Agent* has received (a) a joint notice signed by *Class Counsel* and by counsel for the *Defendants*, or (b) a court order directing that the *Settlement Fund* be disbursed and designating the appropriate recipient. When the conditions stated in (a) or (b) have been satisfied, *Class Counsel* may direct the *Escrow Agent* to disburse money from the *Settlement Fund* as provided in Section 13.2 and for purposes of the *Plan of Allocation* as provided below in Section 11.

       11.    THE *PLAN OF ALLOCATION*

       11.1    Preparation of the *Plan of Allocation*. The *Plan of Allocation*, as detailed herein, has been jointly prepared by *Class Counsel* and counsel for the *Solutia Defendants* and shall be submitted to the *Court* for approval in connection with the *Preliminary Motion*. The *Plan of Allocation* provides for the allocation of the "*Net Proceeds*" which shall consist of the *Settlement Fund* net of the disbursements called for in Sections 9.1.5, 10.2 and 13.2. *Solutia* agrees not to take any position, and is not required to take any position, on the *Plan of Allocation* unless ordered to do so by the *Court* (provided that nothing contained herein shall prohibit the *Independent Fiduciary* from taking a position with respect to the *Plan of Allocation*).

       11.2    Allocation Formula.

       11.2.1    The *Claims Administrator* shall calculate, for each member of the *Settlement Class* ("Class Member"), a "Net Loss" as follows: A + B - C - D, provided that if A + B - C - D is less than zero for a Class Member, such Class Member's Net Loss will be zero. The Net Loss formula shall be calculated where, for each Class Member's account in the *Plan*:

       A = the dollar amount in each Class Member's account, if any, held in the *Solutia Stock Fund* on the first day of the class period (September 1, 1997).

       B = the dollar amount, if any, of all transactions involving the *Solutia Stock Fund* during the class period (September 1, 1997 through and including August 31, 2005) that increased the value of the *Solutia Stock Fund* in each Class Member's account through Purchase, Transfer-In, Receive, Company Matching Contribution, or the like.

       C = the dollar amount, if any, of all transactions involving the *Solutia*

*Stock Fund* during the class period (September 1, 1997 through and including August 31, 2005) that decreased the value of the *Solutia Stock Fund* in each Class Member's account through Sale, Transfer-Out, Deliver, Forfeiture, or the like.

D = the dollar amount in each Class Member's account, if any, held in the *Solutia Stock Fund* on the last day of the class period (August 31, 2005).

11.2.2  The *Claims Administrator* shall request and receive from *Solutia*, the *Solutia Defendants*, the *Plan*, *Hewitt* and/or *Mercer* such data regarding each Class Member's account as is reasonably necessary to perform the above calculations. To the extent data is not available to the *Claims Administrator* to determine the account balances of the Class Members at any time during the class period, the *Claims Administrator* may perform the foregoing calculations using the best available data.

11.2.3  The Net Losses of the Class Members will be totaled to yield a loss to the *Plan* over the class period (the "Plan's Loss").

11.2.4  The *Claims Administrator* shall calculate for each Class Member his or her "Fractional Share" of the Plan's Loss by dividing each Class Member's Net Loss by the Plan's Loss.

11.2.5  The *Claims Administrator* shall then calculate for each Class Member his or her "Preliminary Dollar Recovery" by multiplying the Class Member's Fractional Share by the *Net Proceeds*.

11.2.6  The *Claims Administrator* shall identify all Class Members whose Preliminary Dollar Recovery is less than ten dollars ($10.00) ("De Minimis Claimants").

11.2.7  The *Claims Administrator* shall identify all Class Members who are *Defendants* or named fiduciaries of the *Plan* during the class period ("Excluded Claimants").

11.2.8  All De Minimis Claimants and Excluded Claimants shall receive an allocation from the *Net Proceeds* of zero, and the aggregate Preliminary Dollar Recovery that would have otherwise been allocable to such persons (the "Zero Amounts") shall be redistributed *pro rata* to all other Class Members ("Eligible Claimants"). The *Claims Administrator* shall then calculate a "Final Dollar Recovery" for each Eligible Claimant by adding the Eligible Claimant's *pro rata* share of the redistributed Zero Amounts to his or her Preliminary Dollar Recovery.

11.3     Disbursement of the *Net Proceeds* to the *Plan*. As soon as practicable after the *Effective Date*, *Class Counsel* shall direct the *Escrow Agent* to disburse the *Net Proceeds* to the trusts of the *Plan* for distribution by the *Plan* in accordance with this *Plan of Allocation*. *Class Counsel* and/or *Solutia* shall direct the *Plan* to distribute the *Net Proceeds* received by the *Plan* in accordance with this *Plan of Allocation*. The *Parties* intend and agree that the deposits into the trusts of the *Plan* shall constitute "restorative payments" within the meaning of Revenue Ruling 2002-45 (or any applicable proceeding or successive guidance promulgated by the Internal Revenue Service) for all purposes.

18

11.4    Excluded Recipients of the *Settlement Fund*.  No distribution of any part of the *Settlement Fund* may be made to any of the *Defendants* or to any named fiduciary of the *Plan* during the class period.

11.5    Deposit of Settlement Amounts.  Except for those *Plaintiffs* who took a final distribution from the *Plan*, the Plan Administrator of the *Plan* shall allocate to each Eligible Claimant's individual account an amount equal to his or her Final Dollar Recovery and invest such amount in accordance with the existing investment elections then in effect for each such Eligible Claimant.

11.6    Opening Individual Accounts for *Plaintiffs* Who Are Former Employees Who Had Withdrawn Their Account Balance.  With respect to *Plaintiffs* who took a distribution from the *Plan* and who will receive a Final Dollar Recovery, the Plan Administrator of the *Plan* shall restore the individual account in the *Plan* for each such *Plaintiff* for distribution of settlement proceeds only and invest each such *Plaintiff's* Final Dollar Recovery in accordance with the *Plan's* default investment option, pending distribution to the *Plaintiff*.  Any subsequent distributions to such *Plaintiffs* will be treated as qualified distributions from the *Plan* for purposes of *ERISA* and the Internal Revenue Code.

12.    TERMINATION OF THE *SETTLEMENT AGREEMENT*

12.    Termination.  Automatic termination of this *Settlement Agreement*, thereby making the *Settlement Agreement* null and void, will occur under the following circumstances:

12.1.1  If the *Court* declines to approve the *Settlement* and if such order declining approval has become *Final*, then this *Settlement Agreement* shall automatically terminate, and thereupon become null and void on the date that any such order becomes *Final*.

12.1.2  If the Second Circuit reverses the *Court's* order approving the *Settlement*, and if within thirty-one (31) business days after the date of any such ruling the *Parties* have not agreed in writing to proceed with all or part of the *Settlement Agreement* as modified by the *Court* or by the *Parties* then, provided that no appeal is then pending from such ruling, this *Settlement Agreement* shall automatically terminate and thereupon become null and void.

12.1.3  If the Supreme Court of the United States reverses a Second Circuit order approving the *Settlement*, and if within thirty-one (31) business days after the date of any such ruling the *Parties* have not agreed in writing to proceed with all or part of the *Settlement Agreement* as modified by the *Court* or by the *Parties*, then this *Settlement Agreement* shall automatically terminate and thereupon become null and void.

12.1.4  If the *Court* enters an order approving the *Settlement* but any court exercising proper appellate jurisdiction in the matter reverses, vacates or sets aside the *Court's* approval order and such ruling, order or mandate of the reviewing court has become *Final*, this *Settlement Agreement* shall automatically terminate and thereupon become null and void.

12.1.5  If any or all of the conditions of Section 2 of this *Settlement Agreement* are not fully satisfied or waived by the *Parties* in accordance with their terms and on the timetables set forth in that Section, then this *Settlement Agreement* shall terminate and thereupon become null

19

and void.

12.2    Consequences of Termination of the *Settlement Agreement*. If the *Settlement Agreement* is terminated and rendered null and void for any reason specified in Section 12.1, the following shall occur:

12.2.1  *Class Counsel* shall within ten (10) business days after the date of termination of the *Settlement Agreement* instruct the *Escrow Agent* to return to *Solutia*, the *Solutia Defendants* and/or the *Insurer* the amount contributed by them to the *Settlement Fund*, with all net income earned thereon, after deduction of the expenses charged to the *Settlement Fund* pursuant to Section 9.1.5 above.

12.2.2  The *Action*, the *Bankruptcy Claim*, and the *Dickerson Litigation* shall for all purposes with respect to the *Parties* revert to their status as of the *Agreement Execution Date*; provided, however, that Section 6.2 above shall remain binding and in full force and effect. *Solutia* shall maintain a reserve sufficient to satisfy the *Bankruptcy Claim Cap* as a General Unsecured Claim (as defined in the *Plan of Reorganization*) in accordance with the terms of Section VII of the *Plan of Reorganization*.

12.2.3  All provisions of this *Settlement Agreement* shall be null and void except as otherwise provided herein. Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding arising under this *Settlement Agreement*.

13.     ATTORNEY FEES, COSTS AND EXPENSES

13.1    Motion for Award of Attorneys' Fees, Costs and Expenses. Pursuant to the common fund doctrine and/or any applicable statutory fee provision, *Class Counsel* may apply to the *Court* for an award of attorneys' fees consisting of no more than 30% of the *Settlement Fund*, and reimbursement of costs and expenses, all of which shall be paid from the *Settlement Fund*. *Class Counsel* may also apply to the *Court* for incentive payments to the *Representative Plaintiff* and Jeremy Dickerson of $5,000 each, and such incentive payments, if any, shall be payable from the *Settlement Fund* to the extent awarded by the *Court*. *Solutia* and the *Trustee* will not take any position on *Class Counsel's* motion for attorneys' fees, costs, reimbursement of expenses, and incentive payments. The *Parties* acknowledge and agree that the *Defendants* and *Solutia* shall have no authority, control, or liability in connection with the attorneys' fees, costs, and expenses of *Class Counsel*.

13.2    Disbursement of Attorneys' Fees, Costs, and Expenses and Incentive Payments. Upon the later of (i) entry of an order by the *Court* awarding payment of attorneys' fees, costs, and expenses from the *Settlement Fund* and/or payment of incentive payments from the *Settlement Fund* and (ii) the *Effective Date, Class Counsel* may instruct the *Escrow Agent* in writing to disburse such payments from the *Settlement Fund*, which the *Escrow Agent* shall do within five (5) business days of receiving such direction. If at the time of any disbursement from the *Settlement Fund* pursuant to Sections 10 and 11 there is a pending motion for attorneys' fees, costs, expenses, or incentive payments, there shall be reserved in the *Settlement Fund* an amount equal to the amount of the pending motion until such time as the *Court* shall rule upon such

motion and such ruling shall become *Final*. *Class Counsel* agree to refund any amount of disbursed attorneys' fees, costs, and expenses to the *Settlement Fund* that are later reversed by a final order of a court of competent jurisdiction.

14.    <u>MISCELLANEOUS PROVISIONS</u>

14.1    <u>Exhibits</u>. All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

14.2    <u>Governing Law</u>. This *Settlement Agreement* shall be governed by the laws of the State of New York, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

14.3    <u>Severability</u>. With the exception of Section 6.2 (which shall apply under any circumstance following the *Agreement Execution Date*), the provisions of this *Settlement Agreement* are not severable.

14.4    <u>Amendment</u>. Before entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Parties*. Following entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed on behalf of all *Parties* and approved by the *Court*.

14.5    <u>Construction</u>. None of the *Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

14.6    <u>Interpretation Principles</u>. The following interpretation principles apply to this *Settlement Agreement*.

14.6.1    <u>Headings</u>. The headings of this *Settlement Agreement* are for reference purposes only and do not affect in any way the meaning or interpretation of this *Settlement Agreement*.

14.6.2    <u>Singular and Plural</u>. Definitions apply to the singular and plural forms of each term defined.

14.6.3    <u>Gender</u>. Definitions apply to the masculine, feminine, and neuter genders of each term defined.

14.6.4    <u>References to a *Person*</u>. References to a *Person* are also to the *Person's* permitted successors and assigns.

14.6.5    <u>Terms of Inclusion</u>. Whenever the words "include," "includes" or "including" are used in this *Settlement Agreement*, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.7    <u>Further Assurances</u>. Each of the *Parties* agrees, without further consideration and as part of finalizing the *Settlement* hereunder, that they will in good faith execute and deliver

such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement*.

    14.8   Notices. Any notice, demand or other communication under this *Settlement Agreement* (other than the *Class Notice, Summary Notice* or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the recipients set forth below and personally delivered, sent by mail, email, facsimile, or delivered by reputable express overnight courier.

    IF TO *REPRESENTATIVE PLAINTIFF* OR JEREMY DICKERSON:

SARRAF GENTILE LLP
Ronen Sarraf
11 Hanover Square
New York, NY 10005

STEMBER FEINSTEIN DOYLE & PAYNE, LLC
Ellen M. Doyle
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219-1639

    IF TO *SOLUTIA*:

KIRKLAND & ELLIS LLP
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022

    IF TO THE *SOLUTIA DEFENDANTS*:

O'MELVENY & MYERS LLP
Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

    IF TO THE *TRUSTEE*:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Michael J. Dell
1177 Avenue of the Americas
New York, NY 10036

    Any *Party* may change the address at which it is to receive notice by written notice delivered to the other *Parties* in the manner described above.

14.9    Entire Agreement.  With the sole exception of the stipulation between *Solutia* and the *Trustee* related to the *Trustee's* cure claim in the *Chapter 11 Proceeding*, this *Settlement Agreement* contains the entire agreement among the *Parties* relating to this *Settlement*.  It specifically supersedes any settlement terms or settlement agreements that were previously agreed upon orally or in writing among the *Parties*.  To the extent the terms of any ancillary or related agreements (including the Escrow Agreement) conflict with the terms of this *Settlement Agreement*, the terms of the *Settlement Agreement* shall govern and control in all respects.

14.10    Counterparts.  This *Settlement Agreement* may be executed by exchange of faxed or electronically transmitted (.pdf) executed signature pages, and any signature transmitted by facsimile or .pdf for the purpose of executing this *Settlement Agreement* shall be deemed an original signature for purposes of this *Settlement Agreement*.  This *Settlement Agreement* may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

14.11    Binding Effect.  This *Settlement Agreement* binds and inures to the benefit of the *Parties*, their assigns, heirs, administrators, executors and successors.

14.12    Agreement Execution Date.  The date on which the final signature is affixed below shall be the *Agreement Execution Date*.

14.13    Continuing Jurisdiction.  The administration and consummation of the *Settlement Agreement* as embodied herein shall be under the authority of the *Court*, and the *Court* shall retain jurisdiction for the purpose of entering orders, providing for awards of attorneys' fees and expenses to *Class Counsel* and enforcing the terms of this *Settlement Agreement*.

IN WITNESS WHEREOF, the *Parties* have executed this *Settlement Agreement* on the dates set forth below.

DATED: _May 19, 2008_                    **SARRAF GENTILE LLP**

                                         Ronen Sarraf
                                         Joseph Gentile
                                         11 Hanover Square
                                         New York, NY 10005
                                         (212) 868-3610

                                         **STEMBER FEINSTEIN DOYLE
                                         & PAYNE, LLC**
                                         Ellen M. Doyle
                                         Joel R. Hurt
                                         1705 Allegheny Building
                                         429 Forbes Avenue
                                         Pittsburgh, PA  15219-1639
                                         (412) 281-8400

                                         **Counsel for Roger Reiff, the
                                         Settlement Class, and Jeremy
                                         Dickerson**

                                         **LOWENSTEIN SANDLER PC**
                                         Michael S. Etkin
                                         Ira M. Levee
                                         1251 Avenue of the Americas
                                         New York, New York 10020
                                         (212) 262-6700
                                                    and
                                         65 Livingston Avenue
                                         Roseland, New Jersey 07068
                                         (973) 597-2500

                                         **Special Bankruptcy Counsel for
                                         the Settlement Class**

DATED: 5/19/2008 _____

**KIRKLAND & ELLIS LLP**

_____
Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**

DATED: _____

**O'MELVENY & MYERS LLP**

_____
Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia
Defendants**

DATED: _____

**KRAMER LEVIN
 NAFTALIS & FRANKEL LLP**

_____
Michael Dell
1177 Avenue of the Americas
New York, NY 10036

**Counsel for The Northern Trust
Company**

25

DATED: _____          **KIRKLAND & ELLIS LLP**


_____
Richard M. Cieri
Jonathan S. Henes
Colin M. Adams
Citigroup Center
153 East 53rd Street
New York, NY 10022
(212) 446-4800

**Counsel for Solutia Inc.**


DATED: *May 20, 2008*          **O'MELVENY & MYERS LLP**

_____
Karen M. Wahle
1625 Eye Street, NW
Washington, DC 20006-4001

**Counsel for The Solutia
Defendants**


DATED: _____          **KRAMER LEVIN
  NAFTALIS & FRANKEL LLP**


_____
Michael Dell
1177 Avenue of the Americas
New York, NY 10036

**Counsel for The Northern Trust
Company**


25

DATED: _____        **KIRKLAND & ELLIS LLP**

                                       _____
                                       Richard M. Cieri
                                       Jonathan S. Henes
                                       Colin M. Adams
                                       Citigroup Center
                                       153 East 53rd Street
                                       New York, NY 10022
                                       (212) 446-4800

                                       **Counsel for Solutia Inc.**

DATED: _____        **O'MELVENY & MYERS LLP**

                                       _____
                                       Karen M. Wahle
                                       1625 Eye Street, NW
                                       Washington, DC 20006-4001

                                       **Counsel for The Solutia
                                       Defendants**

DATED: May 19, 2008                    **KRAMER LEVIN
                                        NAFTALIS & FRANKEL LLP**

                                       _Michael Dell_
                                       Michael Dell
                                       1177 Avenue of the Americas
                                       New York, NY 10036

                                       **Counsel for The Northern Trust
                                       Company**

25

*EXHIBITS TO THE SETTLEMENT AGREEMENT*

Exhibits

1.20    *Escrow Agreement*

3.1    *Preliminary Approval Order* (including: *Class Notice* (exhibit A); *Summary Notice* (exhibit B); and *Bankruptcy Notice* (exhibit C))

6.4.1    *Final Order*

26